1

1          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
2                    ATLANTA DIVISION


3


4    IN RE:                            )
                                       )
5    THE HOME DEPOT, INC., CUSTOMER    )
     DATA SECURITY BREACH LITIGATION,  ) Case No. 1:14-MD-2583-TWT
6                                      )
                                       ) January 16, 2015
7                                      ) 10:22 a.m.
     _____) Atlanta, Georgia
8

9

          TRANSCRIPT OF THE STATUS CONFERENCE PROCEEDINGS
10       BEFORE THE HONORABLE THOMAS W. THRASH, JR.,
                 U.S. DISTRICT COURT JUDGE
11

12
     APPEARANCES OF COUNSEL:
13
     On behalf of the Plaintiffs:   Ken Canfield
14                                  Roy Barnes
                                    W. Pitts Carr
15
     On behalf of the Defendant:    Phyllis Sumner
16                                  Cari Dawson

17

18

19

20
          Proceedings recorded by mechanical stenography
21        and computer-aided transcript produced by

22            SUSAN C. BAKER, RMR, CRR
                2194 U.S. COURTHOUSE
23            75 SPRING STREET, S.W.
               ATLANTA, GA  30303
24               (404) 215-1558

25

2

1          (Proceedings held in Atlanta, Georgia, January 16,

2    2015, 10:22 a.m., in open court.)

3          THE COURT:  All right.  This is the case of In Re:

4    Home Depot, Inc. Customer Data Security Breach Litigation, Case

5    Number 14-MD-2583.

6          Given the number of people in here, I don't think

7    I'll do what I usually do which is have everybody introduce

8    yourself.  That would take a while.  I think what I'll do is

9    just if you get up and need to talk you can introduce yourself

10   at that time, and please introduce yourself each time that you

11   get up and talk.  I understand we had technical problems with

12   the phone hookup, so anybody that's on the phone that wants to

13   talk you also need to introduce yourself by name and do so each

14   time that you speak.

15         This is the initial case management conference being

16   held at my request.  I received and appreciate the proposed

17   agenda for the initial conference.  That's a welcome indication

18   to me that there's been at least some initial cooperation, and

19   I hope that's the start of a very happy relationship in this

20   case.  Otherwise, it's going to be the biggest disaster in the

21   history of the world.

22         Has anybody been informally designated to speak for

23   the Plaintiffs today?

24         MR. CANFIELD:  Your Honor, Ken Canfield from

25   Doffermyre, Shields, Canfield & Knowles in Atlanta.  I am going

3

1   to be the primary spokesperson for the financial institutions

2   cases.  And as I understand it, Mr. Barnes will be the primary

3   spokesperson for the consumer cases.  And Mr. Worley also may

4   speak and the -- obviously, there are other people who may

5   speak depending on whether there are issues that come up that

6   they have a particular interest in.

7          THE COURT:  Well, thank you, Mr. Canfield.

8          Governor Barnes, glad to see you here.

9          MR. BARNES:  Thank you, Your Honor.

10         THE COURT:  This must be an important and solemn

11  occasion if you two appear under your own name unlike the alias

12  you used last year when you went down to that seminar in

13  Florida to learn how to artificially inseminate a cow.  So we

14  are all glad to have you here.

15         MR. BARNES:  Thank you, Your Honor.  And I can

16  demonstrate at any time what I learned if you give --

17         THE COURT:  It probably will be more entertaining

18  than anything else we will do here today, Governor Barnes.

19         All right.  The first item on the agenda is the

20  status of the filings and related actions.

21         MR. CANFIELD:  Judge, this seems to be a bit of a

22  moving target because cases keep getting filed and transferred

23  around.  But as best we can tell at the moment, there are 25

24  financial institution cases in federal court.  Twenty-four were

25  identified on the list that was provided to the Court last

4

1    Friday.  And there has since been to our knowledge one

2    additional filing that has been assigned -- it was in the

3    Northern District and assigned to this Court.

4             There may be a case or two that also was filed in

5    this district and assigned to this Court that hasn't formally

6    been transferred to the MDL, and we're working on that and will

7    provide the information to Ms. Sewell as to the identity of

8    those cases that may need a further order.

9             With regard to the consumer cases, there are 26 --

10   there were 26 cases on our list of last week.  I understand

11   that one case, the Laverne case which was filed in the District

12   of Columbia Superior Court, was removed but has been

13   voluntarily dismissed.  So there should be 25 cases at this

14   point.  That's the report on the filings unless defense has

15   some additional information.

16             THE COURT:  Ms. Sumner?

17             MS. SUMNER:  Your Honor, Phyllis Sumner with King &

18   Spalding on behalf of the Home Depot Defendants.  And just for

19   clarification and proceeding, our firm represents the Home

20   Depot Defendants with respect to the consumer class actions;

21   and I will be speaking with respect to that.

22             Cari Dawson with Alston & Bird is here and will be

23   representing the Home Depot Defendants with respect to the

24   financial institution actions.  And our understanding, though,

25   with the current status of the cases is consistent with what

5

1   was just reported.

2           THE COURT:  All right.  Next is the report on the

3   initial conference of counsel and issues agreed upon by the

4   parties.  And I'll intend to take up all five of those issues

5   and a couple more individually.

6           MR. CANFIELD:  Okay.  Let me begin by reporting on

7   the initial conference.  It took place last Friday at Alston &

8   Bird.  There were 18 or 19 Plaintiffs' lawyers in attendance

9   and 6 defense lawyers.  If that sounds a bit unwieldy, it was

10  at times.  But we've made a lot of progress on the Plaintiffs'

11  side in moving this case along.

12          Since the Court entered the first case management

13  order, we have identified more than 145 Plaintiffs' lawyers

14  involved in these cases.  But we have whittled things down by

15  agreeing upon a particular person to speak for each case, and

16  the process is actually working pretty well.  I think we have a

17  good group of Plaintiffs' lawyers, and largely we have been

18  able to reach agreement on most issues that have been before us

19  so far.

20          There was one issue where we had two diametrically

21  opposed views, neither one of which could prevail without the

22  other one losing.  And until we have leadership structure

23  appointed, we may have a few more of those issues.  But it's

24  remarkable how well the Plaintiffs' lawyers have been working

25  together to date.

6

1          We started working with the lawyers for Home Depot

2     even before the initial conference.  Cari Dawson took the lead

3     in circulating a lengthy proposal that sort of is the basis for

4     discussion.  That resulted in further drafts and further

5     negotiations until everything was finalized and the filings

6     were made with the Court yesterday.

7          So we reached agreement on a number of things that we

8     believe are appropriate for the Court to address immediately,

9     and then we have agreement on a general framework for how the

10    case should proceed from this point forward that we are

11    prepared to present to the Court.

12         THE COURT:  Ms. Sumner, Ms. Dawson?

13         MS. DAWSON:  Your Honor, Mr. Canfield has captured

14    accurately our discussions.  I would also add that Mr. Canfield

15    has been extraordinarily cooperative.  And to your first point,

16    Your Honor, we have worked very well together to date in having

17    our discussions, having fruitful discussions and coming

18    together to have an agreed-upon agenda and Proposed CMO Number

19    2.

20         THE COURT:  Well, very good.  I appreciate that.

21         I'm going to change the order of the next two items.

22    I am going to go to captions and docketing and come back to the

23    master consolidated complaints.

24         I got your Proposed Case Management Order Number 2

25    yesterday afternoon; and I reviewed it with my courtroom

7

1   deputy, Mr. Hatten, the docketing clerk who will be handling

2   this case who is Dennis Richardson, his supervisor who is Denza

3   Bankhead.  And it appears that what y'all are suggesting in

4   paragraph four and paragraph five is workable with some

5   modifications.

6            So what you're proposing as I understand it is that

7   there will be one caption, the Home Depot, Inc. Customer Data

8   Security Breach Litigation, Case Number 1:14-MD-2583, that all

9   the other individual cases will be closed administratively.

10  And all filings will be designated to be relating to either all

11  cases, consumer cases or financial institution cases.

12           Now, we can do that.  What we can't do is have

13  separate dockets within the MDL docket.  But the clerk's people

14  are going to set up a prompt for you so that when your people

15  file a document they are going to have to designate it --

16  before they can do anything else, they are going to have to

17  designate it as either all cases, consumer cases or financial

18  institution cases so that later if we needed to pull out one or

19  more of those categories we would have a way to search the

20  filings and to do so.

21           So that's what we can do.  What we can't do, as I

22  said, is have separate dockets; and I can't do what you say

23  under paragraph two where you say at the same time it is the

24  Court's intent that pleadings and motions proceed separately in

25  each track.  I can't do that.  They can be linked, and they

8

1    will be linked; but it's only going to be one docket.  I can't

2    do separate dockets.  So --

3              MR. CANFIELD:  Our intent, Judge, I don't think was

4    that there would be separate dockets.  But when we said that

5    the tracks would proceed separately, the parties envisioned

6    that there will be different briefing schedules for the motions

7    to dismiss and the other substantive motions.  Discovery

8    deadlines would be all the same.  But there are some reasons

9    why from the parties' standpoint it makes sense to -- for

10   example, when the Defendants are going to be filing motions to

11   dismiss that the deadlines be staggered between the two tracks

12   and --

13             THE COURT:  That's fine.  We can do that easily

14   enough.  That's not a problem.

15             MR. CANFIELD:  Okay.

16             THE COURT:  But what is in the 14-MD-2583 right now

17   is very little.  It has virtually nothing other than the

18   transfer orders, a bunch of applications to appear pro hac

19   vice.  It has nothing that was contained in the individual case

20   filings.  For example, it has no motions to dismiss.

21             Now, you could re-file the motions to dismiss in the

22   MDL docket; but I don't see the point in doing that if y'all

23   have agreed that there's going to be a master complaint filed

24   in each of the different categories of cases.  What's the

25   point?

9

1      Because all those motions to dismiss are going to be

2   moot if there's an amended master complaint filed.

3      MS. SUMNER:  Your Honor, we agree with that; and

4   that's why we proposed the schedule that we did in order to put

5   leadership in place, to get the master consolidated complaints

6   on file and then for us to prepare and file our motions to

7   dismiss.

8      THE COURT:  Okay.  Just so it's understood, anything

9   that is in any of the pending individual cases is going to have

10  to be re-filed if you want it to appear on the docket because

11  nothing is in the MDL docket now except what I have already

12  mentioned.  And you can't do anything like that until Wednesday

13  at noon.  That gives the court's people time to set up this

14  process of putting in the prompt for the three different labels

15  that are going to be attached to your filings, the all cases,

16  financial, consumer.  So you can't file anything else that

17  needs that designation until Wednesday.

18      As I've said, if your people have questions about

19  docketing in this case, they can contact Ms. Sewell or Dennis

20  Richardson or Denza Bankhead.  And I think this will work and

21  avoid some of the problems we have had like in the Stand 'N

22  Seal MDL where at one time we had 700 motions for summary

23  judgment pending at one time.  I would like to avoid that.

24      As far as the Item 2, the master complaints for each

25  track and briefing that you have identified in your Proposed

10

1   Case Management Order Number 2, that looks fine to me.  It's

2   going to require, I think, a very aggressive process of

3   designating leadership on the Plaintiffs' side to do that which

4   I'm happy to do.  But it may mean you don't have as much time

5   to do some of the things you want to do as you might otherwise.

6         MR. CANFIELD:  The parties discussed whether we

7   should have the deadlines run from the date of the Court's

8   order appointing leadership as opposed to a specific set of

9   deadlines, specific dates.  And for a variety of reasons,

10  mostly efficiency, we decided to go with specific dates.

11        We have the concern that if for whatever reason

12  leadership is not appointed quickly that we are going to get

13  squeezed in our time for filing the amended complaint or the

14  master consolidated complaints.  We hope that it moves quickly.

15  But as we put in the proposed CMO, if it doesn't move as

16  quickly as possible or at least it doesn't move quickly enough

17  then we might have to come back to the Court and ask for more

18  time.  Basically, we're envisioning that leadership will be

19  appointed before the end of February.

20        THE COURT:  Well, that's fine.

21        Ms. Dawson?

22        MS. DAWSON:  And, Your Honor, we would have no

23  objection.  If, again, the deadlines were such that they need

24  to be revisited, we are open to that.

25        THE COURT:  Very good.

11

1          So how big a fight is it going to be over leadership,

2     Mr. Canfield?

3          MR. CANFIELD:  That's hard to say.  There have been

4     discussions both -- we are envisioning that the Court will

5     appoint separate leadership in each track, and there have been

6     discussions between counsel in both tracks.  To my knowledge,

7     there are no agreements, overall agreements at this point.

8     Some groups are affiliated with each other and working

9     together.  Whether we will have an agreement or not I would

10    hate to try to predict.

11         THE COURT:  Well, I think the idea of appointing

12    separate Plaintiffs' leadership for both tracks is a good idea.

13    And as I said in my initial case management order, my intent is

14    to appoint lead counsel, liaison counsel and a steering

15    committee for each.  I thought about asking just everybody to

16    identify yourself if you are going to seek one of those

17    positions, but I think in thinking that over that's not a good

18    idea.  I don't want to get anybody's ego involved or put them

19    in a position where they would have to defer to somebody else

20    having publicly exposed themselves as a seeker of leadership,

21    so I'm not going to do that.

22         So I guess we need to go on to Item 4 under B which

23    is the process for appointing Plaintiffs' leadership.  This is

24    going to be pretty much a new experience for me.  All the MDLs

25    I've ever handled, all the class actions I've ever handled

1    except one there's been agreement.  So I've never really been

2    through this whole process of applying and having a hearing and

3    making a decision among competing lawyers before.  So if

4    anybody thinks I'm about to do something stupid, let me know.

5              MR. CANFIELD:  We will let Governor Barnes do that,

6    Your Honor.

7              MR. BARNES:  Yes, I am the designated one.

8              THE COURT:  Fine.

9              MR. CARR:  Judge, I'm Pitts Carr.  Could I just raise

10   one issue on the leadership structure?

11             THE COURT:  Yes, sir.

12             MR. CARR:  By the way, it's my view that we have

13   worked very well together to this point.  And I'm more

14   optimistic than Ken is that we can agree on a structure and not

15   trouble the Court with it, but I did have this question.  Does

16   the Court have sort of a mindset as to the number of counsel

17   that would serve in a particular role?  Do you in your thought

18   process have sort of an ironclad rule that we should be aware

19   of?

20             THE COURT:  Not really.  I have always done it where

21   I have one lawyer and one firm as lead counsel.  For example,

22   in ConAgra it was the Cabraser firm.  And then I have a local

23   lawyer and his firm as liaison counsel.  That was Robert

24   Smalley.  But with a case this big, I'm not absolutely

25   committed to that.  If I had co-lead counsel, co-liaison, I can

13

1    probably live with that.  And I will have a steering committee.

2              MR. CARR:  Thank you, Judge.

3              THE COURT:  So at least at this point, there's no

4    agreement.  So I probably should set a deadline for you -- for

5    applications for all those positions in each track.

6              MR. CANFIELD:  The case management order proposes a

7    deadline of February 2nd for applications which gives the

8    parties some additional time to discuss structure and see if

9    agreements can be reached.

10             THE COURT:  That's fine with me.  Anybody have a

11   problem with that?

12             MR. BARNES:  We have all agreed to it.

13             THE COURT:  As far as the content of the application,

14   again, I haven't done this before.  I was thinking maybe limit

15   it to 25 pages double-spaced, 50 pages of attachments, other

16   orders, letters of commendation from your second grade grammar

17   school teacher and that sort of thing.

18             MR. BARNES:  For perfect attendance.

19             THE COURT:  Eagle Scout awards.

20             Anybody have a different suggestion than that?

21             MR. CANFIELD:  Sounds reasonable, Judge.

22             THE COURT:  Fine.  That's what it'll be, 25 pages

23   double-spaced for the application, no more than 50 pages of

24   attachments.

25             I'm inclined to think that the application should

14

1    identify how you propose that any fees be awarded if the

2    Plaintiffs prevail and how you are going to handle financing of

3    litigation expenses, whether you are going to seek any

4    assessment from other Plaintiffs' counsel and then just

5    generally the factors set forth in Section 10.224 of the Manual

6    for Complex Litigation 4th Edition on the factors to be

7    considered in selecting lead counsel in a case like this.

8            Any other suggestions about the content of the

9    application or objections to it?

10           MR. BARNES:  Your Honor, the only thing -- Roy

11   Barnes.  The only thing I would say is you don't expect -- when

12   you say fees, I think that could complicate things until we get

13   started and see who's going to work and everything else.

14   Financing of the litigation, I completely agree.  But you don't

15   mean for there to be some full agreement about how fees would

16   be --

17           THE COURT:  No, just a general statement of how you

18   expect fees would be --

19           MR. BARNES:  I got you.

20           THE COURT:  -- awarded.  I'm more concerned about the

21   cost of litigation than I am fees at this point.

22           MR. BARNES:  And we have had conversations about

23   that.  And if you are in a leadership position or steering or

24   executive committee steering position, you got to kick in.

25           THE COURT:  That's going to be up to y'all.

15

1           MR. CANFIELD:  That's the way it's typically done,

2    Judge.

3           THE COURT:  All right.  As far as a steering

4    committee, how many people for each committee?  Ten?

5           MR. CANFIELD:  That number would work.

6           THE COURT:  All right.  Anybody have a problem with

7    that?

8           All right.  Ten-member steering committee for each

9    track, the consumer and the financial.

10          If there's going to be a big fight, I guess I'm going

11   to have to have a hearing.  When would that be?

12          I have a trial calendar February the 9th, that week

13   and the following week.

14          MR. CANFIELD:  I think in -- I mean, would it be

15   possible for the Court to have time to review the applications

16   and have a hearing before the February 9 trial calendar?

17          THE COURT:  I'll try.

18          MR. CANFIELD:  We appreciate it, Judge.

19          THE COURT:  In any event, I'll definitely do it

20   before the end of February; and we will make every effort to

21   have made a decision before the end of February so that you can

22   keep on the schedule that you've proposed for filing the master

23   complaint and for the Defendants to be filing their motions to

24   dismiss.

25          MR. CANFIELD:  Does the Court intend to set a date

16

1    once if we had some more time to consider it before the

2    hearing, or should the parties get with Ms. Sewell and try to

3    reach some agreements on times?

4              THE COURT:  For the hearing?

5              MR. CANFIELD:  The hearing on the leadership

6    structure.

7              THE COURT:  Let me talk with her and review my

8    schedule.  And you and Governor Barnes, Ms. Sumner, Ms. Dawson

9    call her this afternoon and see if we can figure it out

10   sometime to do that.

11             MR. CANFIELD:  That may be tough, Your Honor.  I

12   think the governor is planning on being out on his farm this

13   afternoon.

14             THE COURT:  Inseminating cows?

15             MR. CANFIELD:  Exactly.

16             MR. BARNES:  It's that time of year, Judge.

17             THE COURT:  Well, he can delegate that to Mr. Worley,

18   inseminating the cows I mean.

19             MR. CANFIELD:  I have been worried about

20   cross-breeds, Judge.  But Governor Barnes assures me that's not

21   an issue with him.

22             THE COURT:  Whoever wants to do it, call Ms. Sewell

23   this afternoon and see if you have been able to figure out a

24   time for the hearing.  Of course, it would be nice if everybody

25   kind of worked it out.

17

1          Anything else we need to talk about for that process

2    of appointing the Plaintiffs' leadership?

3          MR. CANFIELD:  Not from my standpoint.

4          MR. BARNES:  No, Your Honor.  I believe you have

5    covered it, covered it for us.

6          THE COURT:  All right.  Then if we stay on track,

7    then I will go along with your schedule in Item 3 of your

8    proposed case management order for the filing of the master

9    complaint and the motions to dismiss.

10          I will have monthly status conferences in this case.

11    I won't have another status conference until this issue of

12    leadership has been resolved, however.  Anybody can attend the

13    status conference in person, but I discourage that and would

14    much prefer that most people involved in the case just monitor

15    them over the telephone to save time and expense and money.

16          Of course, defense counsel is local.  I would expect

17    you to attend in person.  And I expect at least one lead

18    counsel for each group to appear and each liaison counsel to

19    appear in person.  But anybody else can just monitor it over

20    the phone, including Plaintiffs' steering committee members.

21          There's a law professor over at Georgia, Jamie Dodge,

22    who is teaching a complex litigation class; and she would like

23    very much to have her class over here sometime this semester to

24    see what goes on in an MDL case.  If we can set up one or more

25    conferences either on a Tuesday afternoon at 2:00 or a Friday

18

1   afternoon at 2:00, that would allow her to get her class over

2   here.  If that's not practical, it just won't happen.  But I'd

3   like to do that if I can do it without causing too much

4   inconvenience to y'all and your clients.

5           Any question about the status conferences?

6           MR. CANFIELD:  No, Your Honor.

7           MR. BARNES:  No.

8           THE COURT:  All right.  Next item is the Item C, the

9   next steps in the litigation, further meet-and-confers, CMOs

10  and the joint preliminary report and discovery plan.

11          Anything else to say about that, Mr. Canfield?

12          MR. CANFIELD:  Nothing other than that the parties

13  have each committed to each other that we will try to

14  expeditiously lay in place the framework that's necessary to do

15  the discovery in the case -- discovery scheduling orders,

16  discovery protocols, electronic discovery protocols and things

17  of that nature.

18          THE COURT:  Next item is document preservation.

19          Ms. Dawson?

20          MS. DAWSON:  Your Honor, I just wanted to point to

21  the Court that in paragraph eight we did contemplate having

22  further meet-and-confers after the appointment of the

23  Plaintiffs' steering committee so as you note having that

24  leadership in place so that we can have meaningful discussions

25  is very important.  So we do contemplate having those post

19

1    appointment of the Plaintiffs' steering committee and

2    leadership.

3              THE COURT:  Okay.

4              MR. CANFIELD:  Plaintiffs agree with that.

5              THE COURT:  All right.

6              Next item is document preservation.

7              MR. CANFIELD:  The parties are agreed that we ought

8    to have an order that directs everybody to -- all the parties

9    to preserve their documents that are in their possession,

10   custody or control.  And I don't think that's a problem.  The

11   larger problem is how to deal with third parties that have

12   relevant documents and may not be aware of the litigation or

13   may not be aware of their obligation to or the need to maintain

14   documents.

15             And so because we've -- I believe both sides believe

16   that's an important thing that needs to get done, we have

17   agreed that within 14 days we will meet and confer to identify

18   the third parties that are at issue and to come up with a plan

19   for dealing with the parties' concerns.  And we have agreed we

20   will do that before leadership structure is appointed.  I don't

21   think we will have any problems on the Plaintiffs' side in

22   agreeing to a plan, but it's important to move that along

23   quickly before we lose the benefit of any documents.

24             THE COURT:  Well, I agree with that, Mr. Canfield.

25   And that's fine.

20

1          And I guess this is as good a time as any to talk
2     about the next problem which is sealing.  Just to give a little
3     background here, the first ten years I was on the bench pretty
4     much we just went along with whatever y'all wanted to do about
5     sealing documents.  At least I did.  And then in these big
6     commercial cases it became clear that things were just getting
7     out of hand, and the lawyers were wanting to seal virtually
8     everything.
9          That's a problem.  The law in the 11th Circuit is
10    very clear that court records are presumptively public and that
11    individualized showing must be made that matters that are
12    sought to be filed under seal are truly trade secrets, personal
13    identifying data, things of that nature that must and should be
14    kept confidential.  It's not enough just to show, well, this
15    might be embarrassing if it becomes public and I want it
16    sealed.  That's not good enough.  Or this may show somebody
17    messed up something -- well, that's not enough.
18          And in the MDLs, in the big commercial cases that I
19    have been handling the last few years, it's been just a
20    nightmare trying to deal with this issue of sealing.  And it's
21    consumed an enormous amount of my time, and we really haven't
22    come up with a solution that's very good.
23          Ms. Sumner, Ms. Dawson, I anticipate you are going to
24    want a lot of the stuff you produce sealed when it's filed.
25    And I'm sure given the nature of this case there's going to be

1    stuff that needs to be filed under seal.  But just this

2    wholesale practice of designating everything and every page of

3    deposition testimony as confidential or super confidential or

4    attorneys' eyes only I'm not going to accept, and

5    individualized showing is going to have to be made that things

6    should be filed under seal.

7              I anticipate it's your side that's going to be

8    wanting most of that because you are the one with the

9    documents.  They don't have anything to speak of probably.  One

10   possible way of addressing that would be for me just at the

11   outset to go ahead and appoint a special master to deal with

12   all issues of filing documents under seal, somebody like C.B.

13   Rogers, John Marshall, that the Defendant will pay for to just

14   short-circuit these issues of sealing.  And the special master

15   would have to make a Report and Recommendation to me before any

16   party could file anything under seal.  Just an idea.

17             MS. SUMNER:  Your Honor, Phyllis Sumner.

18             We understand Your Honor's position with respect to

19   sealing, and we will be very thoughtful in our approach to

20   this.  What I would ask is that you allow us to work together

21   and address this issue and then come back to you on the issue

22   of a special master.  I do anticipate that there will be some

23   sensitive information involved like you mentioned, significant

24   PIIs that we will need to deal with that would be appropriate

25   to seal and where we shouldn't be putting that kind of

22

1   information on the public record.  And I suspect we will need

2   to come up with a process to deal with those specific items,

3   but what I would ask Your Honor is that you give us a little

4   time to work through those issues before we proceed to the

5   appointment of a special master.

6          THE COURT:  Another possibility would be a committee,

7   you know, one Plaintiffs' lawyer, one defense lawyer and then

8   one outside lawyer like a C.B. Rogers or a John Marshall who

9   would -- by majority vote could either say this can be filed

10  under seal or this can't.

11         Sure, I'll be glad to give you some time; but I'm

12  just raising the problem now because I foresee it as being a

13  big problem down the road when y'all start filing motions for

14  summary judgment, motions for class certification and the

15  Plaintiffs are using all kinds of documents that they've

16  received from the Defendant and y'all have designated every

17  single one of them as confidential.  And they then have to file

18  a motion -- under my procedure they are the ones that have to

19  file the motion asking that the matter be filed under seal.

20         And, of course, they don't really want it filed under

21  seal.  They don't care.  But you have designated it as

22  confidential, and so they can't file it without filing a motion

23  under seal.  And then I have to spend the time reviewing it

24  page by page, e-mail by e-mail to decide what to do about it;

25  and it's just been a huge problem.

1          MR. CANFIELD:   Judge, we got the message in the

2    AndroGel case after what happened with the clerk's office and

3    the summary judgment filings that the extent to which this

4    issue imposes a burden on the Court.   And one of the CMOs that

5    the parties anticipated working on in the next 30, 60 days is a

6    confidentiality order that would propose a procedure to address

7    this issue.   And I had been envisioning that we would use a

8    procedure that was similar to the ones that you have used in

9    recent MDLs, but what I hear the Court saying now is even with

10   that revised procedure that's burdensome.   And I think that

11   this should be an issue that we can work with the Defendants on

12   to come up with a way to make it easy on -- or easier on

13   everybody.

14          THE COURT:   Yeah.   None of it's really worked.

15   Nothing I have tried so far has worked to my satisfaction.

16          But y'all talk about it and see if you can come up

17   with some solution that does a better job of addressing this

18   than anything I have been able to think up so far.

19          Next item is communicating with putative class

20   members.

21          MR. CANFIELD:   In accordance with the local rules,

22   the parties have talked about that issue.   And there's some

23   disagreement more on the Plaintiffs' side than on the

24   Defendant's side as to what needs to happen in that regard; and

25   what we all have agreed to do subject to the Court's approval

1    is to have a meet-and-confer process and see if we can come up

2    with an agreement as to what limitations, if any, there should

3    be on communications with class members.  And we will report at

4    the next status conference on that issue.

5            MS. DAWSON:  And, Your Honor, Mr. Canfield again has

6    captured accurately our discussions.  We are proceeding

7    consistent with Local Rule 23.1(c) following that process,

8    meeting and conferring to determine if we can come to an

9    agreement.

10           THE COURT:  Ms. Sewell has reminded me that the

11   procedure for filing sealed materials has changed a little bit.

12   I don't know whether we did that in AndroGel or not.  But,

13   anyway, once an order is entered that allows you to file stuff

14   under seal, you can do it yourself.  We don't have to be the

15   ones that file stuff under seal now.  You can actually do it

16   yourself.

17           Do they need to get the designation to do that, or

18   can anybody do that?

19           THE CLERK:  Once there's an order in place, there

20   will be permissions granted by the systems people that allows

21   them to electronically file the document -- the document or

22   attachment or whatever it is under seal as it relates to

23   whatever it's in support of or opposition to.

24           THE COURT:  I'm still a little fuzzy on how that

25   works in practice.  If y'all have any questions about that,

25

1    talk to Ms. Sewell or Denza Bankhead or Dennis Richardson.

2            I'm fine with just signing the Proposed Case

3    Management Order Number 2 as y'all have submitted it if that's

4    what you want me to do.

5            MR. CANFIELD:  The parties have agreed to it, Judge.

6    My notes may not be totally accurate as to whether there's

7    anything that needs to be changed as a result of what the Court

8    has said today, but I don't recall anything.

9            THE COURT:  The only thing that I would mention again

10   is the sentencing in paragraph two about pleas and motions

11   proceeding separately in each track.  I'm fine with that as

12   long as y'all understand that doesn't mean they're going to be

13   separate dockets.  They will be flagged as whether they apply

14   to all cases, consumer cases or financial cases; but they are

15   all going to be in one single document.  But I don't have a

16   problem going ahead and signing the order with that in there.

17   If somebody will give me a clean copy.

18           MS. DAWSON:  Yes, Your Honor.  The only note that I

19   made was the prompt for the filings and if you wanted anything

20   added to current paragraph four to reflect that there will be a

21   single docket and that the prompt will require the parties to

22   designate all cases, financial and consumer.  But if Your Honor

23   is fine with as it's currently written, we can give you a clean

24   copy.

25           THE COURT:  I'm fine with it the way it is as long as

26

1    y'all understand that's what's going to have to happen.

2              MS. DAWSON:  Thank you, Your Honor.

3              THE COURT:  All right.  I have signed the order.

4              Anything else we need to talk about today,

5    Mr. Canfield?

6              MR. CANFIELD:  Not from the financial institution

7    Plaintiffs, Your Honor.

8              MR. BARNES:  No, Your Honor.

9              MS. SUMNER:  Not from the Defendants, Your Honor.

10   Thank you.

11             THE COURT:  Anybody on the phone that wants to be

12   heard on anything?

13             Well, very good.  I'm frankly encouraged that it

14   appears to me y'all are trying to work together both within the

15   Plaintiffs and between the Plaintiffs and the Defendants.  I

16   hope you will continue to do it.  We will get together every

17   month.  Hopefully problems can get addressed and don't just

18   fester and create additional problems down the road.

19             And I guess that's about all I can say for now until

20   we do get the Plaintiffs' leadership in place and prepared and

21   able to make decisions after consultation with the group.  But

22   I see the Plaintiffs' leadership as having extremely important

23   responsibilities in a case like this.  And, otherwise, this

24   whole case is going to be totally unmanageable.

25             So thank you very much for all being here, and that

27

1    concludes the status conference.

2              (Proceedings adjourned at 11:10 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1                        C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6            I hereby certify that the foregoing pages, 1 through

7    27, are a true and correct copy of the proceedings in the case

8    aforesaid.

9            This the 26th day of January, 2015.

10

11

12

13                    _____

14                    Susan C. Baker, RMR, CRR
                      Official Court Reporter
15                    United States District Court

16

17

18

19

20

21

22

23

24

25