# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re:  The Home Depot, Inc., Customer Data Security Breach<br><br>This document relates to:<br><br>CONSUMER CASES | Case No.: 1:14-md-02583-TWT |

## MEMORANDUM OF LAW IN SUPPORT OF
## HOME DEPOT'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

    A.    Payment Card Breach ..........................................................................3

    B.    The Named Plaintiffs' Alleged Injuries ..............................................5

          1.    Generalized Intangible Harms ................................................6

          2.    Annoyances and Inconveniences ............................................7

          3.    Alleged Unreimbursed Expenses .............................................9

    C.    Plaintiffs' Claims ................................................................................10

STANDARD OF REVIEW ................................................................................11

ARGUMENT ....................................................................................................12

I.    PLAINTIFFS LACK ARTICLE III STANDING.......................................12

    A.    Plaintiffs' Alleged Injuries Do Not Confer Standing..........................12

          1.    Seventy-seven of the 85 named plaintiffs do not allege any concrete, particularized, and actual or imminent injuries.......................................................................................15

          2.    None of the 85 named plaintiffs have plausibly alleged that they suffered harms that are fairly traceable to Home Depot. ...........................................................................21

          3.    The purported injuries of the 64 named plaintiffs who allege non-monetary harms are not redressable by a favorable ruling. .......................................................................25

    B.    Plaintiffs Lack Standing To Bring Claims under the Laws of States and Territories in which No Plaintiff Resides or Claims To Have Entered into a Transaction with Home Depot......................26

II.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF. .......29

    A.    Plaintiffs Fail to State A Claim for Violation of State Consumer Fraud And Unfair and Deceptive Acts and Practices Laws. ...............29

        1.    Plaintiffs have not plausibly alleged that they suffered any actual injury as a result of the alleged violation of a consumer fraud statute. ...........................................................30

        2.    Plaintiffs have not plausibly alleged a deceptive act or practice. .....................................................................31

        3.    Plaintiffs allege no facts sufficient to establish the existence of a duty to disclose. .................................................32

        4.    Plaintiffs cannot pursue consumer fraud claims under statutes that permit only injunctive relief. .................................32

        5.    Plaintiffs' consumer fraud claims fail to satisfy additional state-specific pleading requirements. ........................................33

    B.    Plaintiffs Fail to State a Claim Under State Data Breach Statutes. ..............................................................................36

        1.    Plaintiffs cannot assert claims under data breach statutes that do not provide a private right of action. .............................36

        2.    Plaintiffs cannot assert claims under many of the data breach statutes because they do not allege any cognizable harm as a result of the purportedly delayed notification. .........37

    C.    Plaintiffs' Negligence Claims Fail Because They Have Not Alleged Damages Compensable in Tort or That Home Depot Breached Any Duty To Plaintiffs. ........................................38

    D.    Plaintiffs' Breach of Implied Contract Claims Fail Because There Was No Meeting of the Minds and No Cognizable Injury Caused by Home Depot. ......................................................42

    E.    Plaintiffs' Unjust Enrichment Claims Fail Because Home Depot Did Not Unjustly Receive Any Benefit From Plaintiffs. ....................44

F.    Plaintiff's Declaratory Judgment Claim Should Be Dismissed
      Because It Is An Attempt To Obtain A Breach of Contract
      Remedy Without Alleging A Breach of Contract. ............................46

G.    Plaintiffs' California Unfair Competition Law Claim Should Be
      Dismissed Because Plaintiffs Have Alleged No Injury. ....................48

H.    Plaintiffs' Maryland Personal Information Protection Act and
      Consumer Protection Act Claims Fail Because Plaintiffs Have
      Alleged No Injury. ...............................................................................49

CONCLUSION ....................................................................................................50

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009) ..........................................27, 39, 41, 42

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................11, 12

*In re Barnes & Noble Pin Pad Litig.*,
2013 WL 4759588 (N.D. Ill. Sept. 3, 2013)............................................3, 16, 17

*Bates & Assoc., Inc. v. Romei*,
426 S.E.2d 919 (Ga. Ct. App. 1993)....................................................................39

*Bates v. JPMorgan Chase Bank, NA*,
768 F.3d 1126 (11th Cir. 2014) ..........................................................................44

*Bearden v. Honeywell Int'l, Inc.*,
2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010)................................................35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................11

*Boorstein v. CBS Interactive, Inc.*,
222 Cal. App. 4th 456 (2013) .............................................................................49

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ...............................................................................7

*Brown v. Sibley*,
650 F.2d 760 (5th Cir. 1981) ..............................................................................28

*Burrows v. Purchasing Power, LLC*,
2012 WL 9391827 (S.D. Fla. Oct. 18, 2012) .....................................................46

*Burton v. MAPCO Exp., Inc.*,
47 F. Supp. 3d 1279 (N.D. Ala. 2014)...................................................................3

*Citizens Bank of Pa. v. Reimbursement Techs., Inc.*,
2014 WL 2738220 (E.D. Pa. June 17, 2014)................................................41, 42

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013)................................................................*passim*

*Clas v. Torres*,
549 F. App'x 922 (11th Cir. 2013)................................................47

*Donaldson v. Olympic Health Spa, Inc.*,
333 S.E.2d 98 (Ga. Ct. App. 1985)................................................43

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009)..........................................27

*Galaria v. Nationwide Mut. Ins. Co.*,
998 F. Supp. 2d 646 (S.D. Ohio 2014)......................................3, 15, 16, 20, 46

*GMAC Mort., LLC v. Pharis*,
761 S.E.2d 480 (Ga. Ct. App. 2014)............................................44, 45

*Goldstein v. Home Depot U.S.A., Inc.*,
609 F. Supp. 2d 1340 (N.D. Ga. 2009)..........................................33

*Grand Ventures, Inc. v. Whaley*,
632 A.2d 63 (Del. 1993)..........................................................33

*Green v. eBay, Inc.*,
No. 14-1688, Doc. 38 (E.D. La. May 4, 2015)..................................3

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1987)................................................27, 28

*Hallowell v. Citaramanis*,
594 A.2d 591 (Md. App. 1991)..................................................50

*Hammer v. Sam's E., Inc.*,
2013 WL 3756573 (D. Kan. July 16, 2013).....................................3

*In re Hannaford Brothers Co. Customer Data Security Breach Litig.*,
613 F. Supp. 2d 108 (D. Me. 2009)............................................18, 40, 41

*Haskins v. Symantec Corp.*,
  2013 WL 6234610 (N.D. Cal. Dec. 2, 2013).....................................................49

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*,
  2015 WL 1472483 (D.N.J. Mar. 31, 2015) ........................................................3

*Householud Fin. Servs., Inc. v. N. Trade Mortg. Corp.*,
  1999 WL 782072 (N.D. Ill. Sept. 27, 1999).....................................................48

*Infrasource, Inc. v. Hahn Yalena Corp.*,
  613 S.E.2d 144 (Ga. Ct. App. 2005).................................................................32

*John Crane, Inc. v. Jones*,
  604 S.E.2d 822 (Ga. 2004) ...............................................................................38

*Koziara v. City of Casselberry*,
  392 F.3d 1302 (11th Cir. 2004) ........................................................................47

*Krottner v. Starbucks Corp.*,
  406 F. App'x 129 (9th Cir. 2010) ................................................................39, 43

*Laird v. Tatum*,
  408 U.S. 1 (1972)..............................................................................................28

*Lewert v. P.F. Chang's China Bistro, Inc.*,
  2014 WL 7005097 (N.D. Ill. Dec. 10, 2014)................................................3, 18

*Lewis v. Casey*,
  518 U.S. 343 (1996)..........................................................................................28

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..........................................................................................11

*Malowney v. Fed. Collection Deposit Grp.*,
  193 F.3d 1342 (11th Cir. 1999) ........................................................................47

*Marrone v. Philip Morris USA, Inc.*,
  850 N.E.2d 31 (Ohio 2006) ..............................................................................34

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................ 29, 35, 36

*MCI Commc's Servs. v. CMES, Inc.*,
   728 S.E.2d 649 (Ga. Ct. App. 2012).....................................................................39

*McMaster v. United States*,
   177 F.3d 936 (11th Cir. 1999) ...........................................................................11

*In re Michaels Stores Pin Pad Litig.*,
   830 F. Supp. 2d 518 (N.D. Ill. 2011)....................................................18, 31, 40

*Miller v. Basic Research, LLC*,
   285 F.R.D. 647 (D. Utah 2010) ..........................................................................34

*Morris v. Osmose Wood Preserving*,
   667 A.2d 624 (1995)...........................................................................................50

*Morrison v. Allstate Indem. Co.*,
   228 F.3d 1255 (11th Cir. 2000) .........................................................................11

*Moyer v. Michaels Stores, Inc.*,
   2014 WL 3511500 (N.D. Ill. July 14, 2014) ......................................................44

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011) .............................................................31

*Peters v. St. Joseph Servs. Corp.*,
   2015 WL 589561 (S.D. Tex. Feb. 11, 2015).....................................3, 22, 25, 26

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).............................................................................................27

*Pisciotta v. Old Nat'l Bancorp*,
   499 F.3d 629 (7th Cir. 2007) .................................................................36, 38, 44

*Prado-Steiman ex. rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) .........................................................................28

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007)...............................................................45

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3rd Cir. 2011) ...............................................................................14

vii

*Remijas v. Neiman Marcus Grp., LLC*,
2014 WL 4627893 (N.D. Ill. Sept. 16, 2014)..............................................*passim*

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .............................................................19, 23, 24

*In re Science Apps. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
45 F. Supp. 3d 14 (D.D.C. 2014).......................................................3, 17, 20, 23

*In re Sony Gaming Network & Customer Data Security Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) (*Sony I*)..............................................35, 39

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
996 F. Supp. 2d 942 (S.D. Cal. 2014) (*Sony II*) ..........................................*passim*

*In re Sony PS3 "Other OS" Litig.*,
551 F. App'x 916 (9th Cir. 2014) ........................................................................45

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
533 F.3d 162 (3d Cir. 2008) ...............................................................................40

*Stalvey v. Am. Bank Holdings, Inc.*,
2013 WL 6019320 (D.S.C. Nov. 13, 2013)........................................................34

*Storm v. Paytime, Inc.*,
2015 WL 1119724 (M.D. Pa. Mar. 13, 2015) .....................................................3

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014).................................................................3, 17

*In re Target Corp. Customer Data Security Breach Litig.*,
2014 WL 7192478 (D. Minn. Dec. 18, 2014) .............................................14, 15

*Teets v. Chromalloy Gas Corp.*,
83 F.3d 403 (Fed. Cir. 1996) .......................................................................42, 43

*Thomas v. Metro. Life Ins. Co.*,
540 F. Supp. 2d 1212 (W.D. Okla. 2008)...........................................................33

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) .........................................................................45

*Willingham v. Global Payments, Inc.*,
    2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ........................................3, 40, 41, 42

*Wooden v. Bd. of Regents of Univ. Sys. of Georgia*,
    247 F.3d 1262 (11th Cir. 2001) ..........................................................................33

*Worix v. MedAssets, Inc.*,
    869 F. Supp. 2d 893 (N.D. Ill. 2012) .................................................................41

*In re Zappos.com, Inc.*,
    2013 WL 4830497 (D. Nev. Sept. 9, 2013) ..................................35, 43, 44, 45

**Statutes**

Alabama's Deceptive Trade Practices Act ............................................................35

Arizona Rev. Stat. § 44-1698(K) ....................................................................9, 20

California Customer Records Act .........................................................................48

California Data Breach Notification Act ..............................................................49

California Unfair Competition Law and Unfair Competition Law ........................48

Declaratory Judgment Act. ..................................................................................48

Mass. G.L. ch. 93 § 62A ...............................................................................9, 20

Maryland Consumer Protection Act. ....................................................................50

Maryland Personal Information Protection Act.....................................................50

New York Gen. Bus. Law § 349...........................................................................31

Delaware's Uniform Deceptive Trade Practices Act.............................................33

Oklahoma's Deceptive Trade Practices Act .........................................................33

South Carolina Unfair Trade Practices Act .........................................................35

Tennessee Consumer Protection Act ....................................................................35

## INTRODUCTION

All of the claims alleged in the Complaint suffer from the same fatal defect found in the vast majority of other breach cases — Plaintiffs lack Article III standing because they have suffered no actual or imminent economic injury that is fairly traceable to Home Depot's alleged conduct. Therefore, Plaintiffs' claims fail under the Supreme Court's decision in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) and the Complaint should be dismissed with prejudice.

The length of the Complaint and the number of named plaintiffs does not mask this simple conclusion. No two of these plaintiffs' alleged experiences are alike, much less would any of their claims predominate across the alleged classes. Consistent with Home Depot's promise that its customers would not be liable for any fraudulent charges on their payment cards arising from the breach, most of the named plaintiffs admit that they have been fully reimbursed for their losses and do not even allege any monetary loss. The few plaintiffs who allege some economic harm fail to explain why the losses they allege were not reimbursed. Plaintiffs' purported injuries fall far short of *Clapper's* requirement that alleged injuries must be "concrete, particularized, and actual or imminent."

In addition, none of the named plaintiffs' purported injuries are traceable to Home Depot's conduct. The Complaint speculates about "potential fraud"

involving the future conduct of independent criminal third parties, but there is no plausible allegation that such crimes are imminent or Home Depot's fault. Most of the payment cards involved were promptly cancelled and replaced, and Home Depot offered credit monitoring and identity theft protection services to its customers free of charge. More importantly, Plaintiffs concede their claims are dependent on the hypothetical future acts of third parties, which the Supreme Court held in *Clapper* is insufficient to establish Article III standing because such conduct is not "fairly traceable" to the defendant.

Plaintiffs also have not — and cannot — plausibly assert any claim for recovery. Their statutory claims fail because they have not identified any deceptive act by Home Depot and do not allege any actual damage flowing from Home Depot's purported delay in providing notice. Plaintiffs' common law claims all fail for want of actual injury caused by Home Depot and additional claim-specific reasons such as their failure to allege the duty necessary for their negligence claims, the meeting of the minds necessary for their implied contract claims, and the "unjust benefit" necessary for their unjust enrichment claims.

Finally, Plaintiffs' demands for a declaratory judgment or injunctive relief fail. Those claims are based on the disclosure of payment card information used in transactions at least nine months ago. Information such as social security numbers

or birth dates is not alleged to have been compromised, and most of the named plaintiffs allege that their payment cards have been cancelled. No ongoing dispute involving Home Depot's current security practices exists to support a declaratory judgment or injunctive relief.

The Court should follow the lead of the vast majority of district courts across the country faced with similar data-breach claims[1] and dismiss the Complaint.

## **BACKGROUND**

### A. **Payment Card Breach**

To facilitate purchases using payment cards,[2] Home Depot utilizes standard

---

[1] *Green v. eBay, Inc.*, No. 14-1688, Doc. 38 (E.D. La. May 4, 2015); *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, 2015 WL 1472483 (D.N.J. Mar. 31, 2015); *Peters v. St. Joseph Servs. Corp.*, —F. Supp. 3d—, 2015 WL 589561 (S.D. Tex. Feb. 11, 2015); *Storm v. Paytime, Inc.*, —F. Supp. 3d—, 2015 WL 1119724 (M.D. Pa. Mar. 13, 2015); *Lewert v. P.F. Chang's China Bistro, Inc.*, 2014 WL 7005097, at *4 (N.D. Ill. Dec. 10, 2014), *appeal docketed*, No. 14-3700 (7th Cir. Dec. 12, 2014); *Remijas v. Neiman Marcus Grp., LLC*, 2014 WL 4627893 (N.D. Ill. Sept. 16, 2014), *appeal docketed*, 14-3122 (7th Cir. Sept. 26, 2014); *Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279 (N.D. Ala. 2014); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646 (S.D. Ohio 2014); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871 (N.D. Ill. 2014); *In re Science Apps. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14 (D.D.C. 2014); *In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013); *Hammer v. Sam's E., Inc.*, 2013 WL 3756573, at *2 (D. Kan. July 16, 2013); *Willingham v. Global Payments, Inc.*, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013).

[2] The Payment Card Industry Security Standards Council defines a "payment card" as "any payment card/device that bears the logo of the founding members of

cash registers and self-checkout terminals that transmit financial information to a third party for payment. Compl., Doc. 93, ¶¶ 107, 230. Plaintiffs allege that Home Depot collects customers' names, account numbers, card expiration dates, card verification values, and PINs for debit cards, which Plaintiffs define as "payment card data" or "PCD." *Id.* ¶ 230. Plaintiffs also allege that Home Depot generally collects customers' mailing addresses, phone numbers, driver's license numbers and email addresses, which Plaintiffs define as "personally identifying information" or "PII." *Id.* The focus of the allegations, however, is that the named plaintiffs allegedly provided their PCD to Home Depot by swiping their payment cards through Home Depot point-of-sale devices. *See, e.g.*, *id.* ¶ 5.

Plaintiffs allege that, beginning around April 2014, hackers accessed Home Depot's payment data systems and installed malware on its self-checkout registers that was designed to siphon off information when customers swiped their payment cards.[3] *Id.* ¶¶ 176–79. Plaintiffs claim that, from September 2 to 7, 2014, the

---

PCI SSC, which are American Express, Discover Financial Services, JCB International, MasterCard, or Visa, Inc."
*See* *https://www.pcisecuritystandards.org/security_standards/glossary.php#P* (last visited May 30, 2015).

[3] The named plaintiffs do not specify whether they swiped their payment cards at self-checkout registers or other point-of-sale devices.

hackers attempted to sell the stolen payment card information on the website Rescator.cc, a foreign-based illegal online market. *Id.* ¶¶ 184, 187, 192, 194. According to Plaintiffs, the information for sale on Rescator.cc included the customer's name and payment card number as well the ZIP code and state of the Home Depot store from which it was allegedly stolen. *See id.* ¶ 187. Plaintiffs do not allege that any Home Depot customer's birth date, social security number, mailing address, phone number, or e-mail address was sold on Rescator.cc.

News of the criminal activity became public on September 2, the same day Home Depot learned of it. *Id.* ¶¶ 184–85. Home Depot announced it had confirmed a breach on September 8, explaining that customers would not be responsible for fraudulent charges and offering a year of free credit monitoring and identity protection services. *Id.* ¶¶ 196–97, 201. On September 18, Home Depot confirmed elimination of the malware. *Id.* ¶ 208. Home Depot also e-mailed notice of the breach to customers for whom it had e-mail addresses. *Id.* ¶ 223.

**B.     The Named Plaintiffs' Alleged Injuries**

In the Complaint, Plaintiffs attempt to link the Home Depot payment card breach to a wide variety of future, individualized misconduct by unknown third parties. For example, they speculate that criminals might use the stolen payment card information to commit debit card PIN fraud, immigration fraud, driver's

license fraud, government benefits fraud, medical services fraud, fraud to obtain a job or housing, or to provide false information to police during an arrest. *Id.* ¶ 204–05, 257–58. Plaintiffs concede, however, that these types of crimes require additional information, such as social security numbers and dates of birth, that Plaintiffs do not allege was stolen in the payment card breach. *Id.* ¶ 205. None of the 85 named plaintiffs claim to have experienced these types of criminal conduct.

Instead, the named plaintiffs allege that they suffered widely varying purported harms relating to the replacement of their payment cards. They allege their payment card numbers were cancelled, the cards were replaced, or they were inconvenienced in various ways while waiting for their replacement cards. With limited exceptions, the named plaintiffs acknowledge that they were reimbursed for any fraudulent card charges. Their alleged injuries fall into three main categories: (1) generalized intangible harms; (2) annoyance and inconvenience; and (3) unreimbursed expenses. None of these alleged injuries establish standing.

### 1. Generalized Intangible Harms

The Complaint asserts that "Plaintiffs" have suffered several categories of generalized harms as a result of the payment card breach, but none of these are the concrete injury required by Article III. Moreover, no named plaintiff claims to have suffered these harms. This attempt to piece together a "perfect plaintiff" for

class litigation who does not exist has been uniformly rejected. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). For example, the Complaint conclusorily asserts that Plaintiffs suffered "damages to and diminution in value of their personal and financial information," Compl. ¶ 2.g. But the named plaintiffs have not alleged that they intended to sell their information or otherwise explain how the breach diminished its purported value. Similarly, the Complaint alleges that Plaintiffs have suffered "[l]oss of privacy," *id.* ¶ 265.e, but no named plaintiff makes any individualized allegations quantifying the supposed harm stemming from this purported loss of privacy.

## 2. Annoyances and Inconveniences

The named plaintiffs allege they have suffered various annoyances and inconveniences as a result of the payment card breach. *See, e.g.*, Compl. ¶ 2.e. Almost all of the named plaintiffs allege they spent time dealing with the breach. *See, e.g.*, Compl. ¶ 18 ("Plaintiff Champion spent about five hours addressing issues arising from the Home Depot breach."). In fact, 25 of them allege nothing more. *Id.* ¶¶ 18, 19, 23, 25, 26, 29, 34, 44, 45, 46, 48, 50, 52, 53, 54, 59, 61, 68, 69, 70, 72, 74, 75, 76, 93.[4]

---

[4] One named plaintiff, Richard Bergeron, does not even allege that he spent any time addressing the breach or suffered any specific injury. *Id.* ¶ 52.

Thirty-six named plaintiffs allege that they spent time addressing the breach and suffered some other inconvenience as a result of fraudulent charges or attempted fraudulent charges on their payment card accounts, but they do not allege that they suffered any monetary harm. *Id.* ¶¶ 7, 20, 22, 24, 28, 30, 32, 33, 35, 36, 37, 38, 39, 41, 42, 43, 47, 56, 57, 58, 63, 64, 71, 73, 77, 78, 79, 81, 82, 85, 86, 88, 89, 91, 92, 94. The purported injuries alleged by these 36 named plaintiffs generally consist of the activities inherent in having a payment card replaced. For example, some allege that they were temporarily denied access to their account funds, *id.* ¶ 20, borrowed money from friends and family to pay bills, *id.* ¶¶ 7, 20, and made trips to the bank to withdraw cash, *id.* ¶ 32. Others allege they had checks bounce, *id.* ¶ 57, had a payment card declined, *id.* ¶ 64, or missed automatic bill payments, *id.* ¶ 22. The named plaintiffs in this category, however, do not allege that they incurred any unreimbursed fees or charges. *See, e.g.*, *id.* ¶ 22.

Finally, three named plaintiffs allege that they were the targets of identity theft, although they do not allege that the type of PII necessary to carry out identity theft was compromised in the breach. *Id.* ¶¶ 6, 10, 65. Nor do they allege that they suffered any monetary harm as a result of the supposed attempted identity theft, thus bringing the total number of named plaintiffs who do not allege that they suffered any monetary loss as a result of the payment card breach to 64.

### 3. Alleged Unreimbursed Expenses

Twenty-one named plaintiffs allege that they have incurred some form of monetary harm as a result of the payment card breach. *Id.* ¶¶ 4, 5, 8, 9, 11, 21, 27, 31, 40, 49, 51, 55, 60, 62, 66, 67, 80, 83, 84, 87, 90. Thirteen of these named plaintiffs voluntarily incurred expenses to guard against the possibility of future misconduct, allegedly purchasing credit freezes, credit monitoring, and similar services that were available free of charge.[5] *Id.* ¶¶ 4, 5, 9, 11, 21, 31, 40, 49, 51, 55, 84, 87, 90. Credit reporting agencies may not charge victims of identity theft a fee for placing a credit freeze. *See, e.g.*, Arizona Rev. Stat. § 44-1698(K); Mass. G.L. ch. 93 § 62A. And as Plaintiffs acknowledge, Home Depot offered credit monitoring and identity theft protection services to its customers free of charge. Compl. ¶ 201.

The remaining eight named plaintiffs who allege monetary harm claim that their banks, insurance companies, and other unspecified vendors failed to reimburse them for fees or fraudulent charges that should have been reimbursed. *Id.* ¶¶ 8, 27, 60, 62, 66, 67, 80, 83. These named plaintiffs allege no facts to

---

[5] This group includes the three named plaintiffs who claim that they were the targets of identity theft, but do not allege any monetary harm other than paying for credit reports, credit freezes, and credit monitoring. *Id.* ¶¶ 4, 5, 55.

plausibly explain why these charges were not reimbursed.[6]

### C. Plaintiffs' Claims

Plaintiffs assert eight counts, consisting of the following claims: (I) violation of 51 consumer fraud statutes; (II) violation of 28 data breach notification statutes; (III) negligence under the common law of 53 states and territories; (IV) breach of implied contract under the common law of 53 states and territories; (V) unjust enrichment under the common law of 53 states and territories; (VI) declaratory judgment; (VII) violation of the California Customer Records Act and the California Unfair Competition Law; and (VIII) violation of the Maryland Personal Information Protection Act and Consumer Protection Act.

---

[6]  Allegations to the contrary are not plausible given the fraud policies of the major card brands.  MasterCard's Zero Liability Protection policy promises cardholders they won't be held "responsible for 'unauthorized transactions.'  As a MasterCard cardholder, zero liability applies to your purchases made in the store, over the telephone, online, or via a mobile device." *See* https://www.mastercard.us/en-us/about-mastercard/what-we-do/terms-of-use/zero-liability-terms-conditions.html (last visited May 30, 2015). Visa's Zero Liability Policy likewise guarantees cardholders "won't be held responsible for unauthorized charges made with your account or account information.  You're protected if your Visa credit or debit card is lost, stolen or fraudulently used, online or offline." *See* http://usa.visa.com/personal/security/zero-liability.jsp (last visited May 30, 2015).  American Express also assures its cardholders that "when you use your American Express® Card, you are not liable for fraudulent purchases." https://www.americanexpress.com/us/content/fraud-protection-center/types-of-fraud.html  (last visited May 30, 2015).

## STANDARD OF REVIEW

Home Depot moves to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Although the Court should take the allegations of the complaint as true in reviewing such motions, *see McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999), it need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Plaintiffs bear the burden of proof that subject-matter jurisdiction exists. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000). That burden includes pleading sufficient factual information to support a finding of Article III standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (Article III standing is a component of subject-matter jurisdiction).

Under Rule 12(b)(6), the Court should dismiss the action when the plaintiff fails to plead sufficient factual allegations "to raise [his] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Claims have "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."
*Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.  PLAINTIFFS LACK ARTICLE III STANDING.

### A.  Plaintiffs' Alleged Injuries Do Not Confer Standing.

To establish Article III standing, a plaintiff must plausibly demonstrate that he has suffered an injury that is (1) "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Clapper*, 133 S. Ct. at 1147 (internal quotation omitted). The claims of all 85 named plaintiffs should be dismissed for lack of standing because no named plaintiff can meet all three prongs of the constitutional standing analysis:

- The 64 named plaintiffs who allege no monetary harm fail to meet all three prongs of the standing analysis (concrete injury, traceability, and redressability);

- The 13 named plaintiffs who allege that they voluntarily incurred expenses to prevent potential future harm fail to meet the first two prongs (concrete injury and traceability); and

- The remaining eight named plaintiffs who implausibly allege that they were not reimbursed by their financial institutions for fraudulent charges and other fees cannot meet the second prong of the standing analysis (traceability).

While Plaintiffs parade numerous speculative crimes — debit card PIN fraud, immigration fraud, driver's license fraud, government benefits fraud,

medical services fraud, among others — none of the named plaintiffs have experienced any of these things. Instead, they allege that they may someday experience the crimes catalogued in the Complaint. As the Supreme Court emphasized in the recent *Clapper* decision, it has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient" to confer standing. *Clapper*, 133 S. Ct. at 1147 (internal quotations marks omitted). Accordingly, the potential future criminal conduct alleged in the Complaint is not a concrete injury sufficient to confer standing, as recognized by numerous other data breach cases.

Moreover, for these future crimes to happen, criminals would need to independently obtain personal information, such as the named plaintiffs' social security numbers, that Plaintiffs do not allege was stolen from Home Depot. *See* Compl. ¶ 204 (acknowledging that criminals would need date of birth and/or a social security number to commit PIN fraud). *Clapper* also makes clear that where, as here, the plaintiffs' theory of harm rests on a "speculative chain of possibilities" involving the conduct of independent third parties, the plaintiffs cannot establish that they will suffer a certainly impending injury fairly traceable

to the defendant's conduct. 133 S. Ct. at 1150.[7] The named plaintiffs cannot plausibly allege that criminals will imminently perpetrate the types of identity theft identified in the Complaint using payment card numbers that many of the named plaintiffs concede have already been replaced. Thus, even if any such crimes eventually occurred, they would not be fairly traceable to Home Depot's conduct.

Nearly all consumer data breach cases decided in the wake of *Clapper* have held that plaintiffs alleging injuries similar to those alleged by the named plaintiffs do not have standing. One recent exception to this majority position is *In re Target Corp. Customer Data Security Breach Litig.*, 2014 WL 7192478 (D. Minn. Dec. 18, 2014). The named plaintiffs in this case claim to have suffered many of the same types of injuries as the *Target* plaintiffs. In *Target*, the court summarily rejected the defendant's standing argument in two paragraphs that failed to mention, much less distinguish, *Clapper*. The *Target* court likewise did not analyze the alleged injuries in any detail or explain why, unlike the majority of data breach cases decided in the wake of *Clapper*, the court found those alleged injuries somehow satisfied the constitutional test for standing. The *Target* court's

---

[7]  *See also Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3rd Cir. 2011) ("[W]e cannot now describe how [plaintiffs] will be injured in this case without beginning our explanation with the word 'if': if the hacker read, copied, and understood the hacked information, and if the hacker attempts to use the information, and if he does so successfully, only then will [plaintiffs] have suffered an injury.").

14

cursory treatment of the standing issue is unpersuasive and should not be followed here. For the reasons below, the injuries the named plaintiffs allege are insufficient to establish standing under *Clapper* and the numerous decisions that have correctly applied it to a consumer data breach.

      1.    <u>Seventy-seven of the 85 named plaintiffs do not allege any concrete, particularized, and actual or imminent injuries.</u>

As explained above, the named plaintiffs' alleged injuries fall into three broad categories: (1) generalized intangible harms; (2) annoyance and inconvenience; and (3) unreimbursed expenses. None of these alleged injuries are sufficiently concrete, particularized, and actual or imminent to confer standing.

***Generalized intangible harms are insufficient to confer standing.*** The complaint asserts that Plaintiffs have suffered generalized intangible harms such as loss of the value of their "personal and financial information" and loss of privacy. Compl. ¶¶ 2.g, 265.e. Yet none of the named plaintiffs allege any particularized facts in support of these claims. And even if they had, these harms are insufficient to confer standing as a matter of law.

Courts have routinely held that alleged diminution in the value of personal and financial information is not a cognizable injury. *See Nationwide*, 998 F. Supp. 2d at 660 (holding that allegations of diminution in or deprivation of value of PII does not confer standing where plaintiffs merely allege there is a black market for

their personal information without alleging that they could access the black market or explaining how the breach decreased the value for which they could sell their PII); *Barnes & Noble*, 2013 WL 4759588, at *5 ("The Plaintiffs' claim of injury in the form of deprivation of the value of their PII is insufficient to establish standing. Actual injury of this sort is not established unless a plaintiff has the ability to sell his own information and a defendant sold the information."). Here, the named plaintiffs do not allege that they intended to sell their PII or payment card information or that Home Depot instead sold it. Thus, Plaintiffs' claim for diminution in the value of their personal and financial information fails.

Similarly, courts have held an allegation of loss of privacy is insufficient to confer standing in a data breach case. *See, e.g.*, *Nationwide*, 998 F. Supp. 2d at 658 (holding loss of privacy was insufficient to confer standing because otherwise the mere exposure of PII would create standing regardless of whether plaintiffs suffered any harm as a result). The generalized, intangible harms alleged by Plaintiffs are not cognizable injuries.

***The named plaintiffs who allege annoyance and inconvenience as a result of the breach do not have standing.*** The overwhelming majority of the named plaintiffs — 64 out of 85 — allege no monetary injury. These named plaintiffs allege nothing more than that they have been inconvenienced by the breach. Some

of these named plaintiffs simply allege that they spent time addressing the breach, while others allege that criminals attempted to make or made fraudulent charges with their payment card information (for which they were reimbursed) and that they experienced various forms of inconvenience as a result. These allegations of inconvenience do not confer standing.

**First,** the 25 plaintiffs who allege only that they spent time addressing the breach lack standing because allegations "of actual injury in the form of time spent mitigating an increased risk of identity theft or fraud is insufficient to establish standing." *Barnes & Noble*, 2013 WL 4759588, at \*4; *see also Trustwave*, 27 F. Supp. 3d at 875 (same); *SAIC*, 45 F. Supp. 3d at 25–26 (same).

**Second**, the 36 named plaintiffs who claim some other inconvenience as a result of fraudulent or attempted fraudulent activity on their payment card accounts do not have standing. These named plaintiffs acknowledge that any fraudulent charges were reimbursed, but allege, among other things, that they had to make trips to the bank to withdraw cash, borrow money from friends and family, or missed payments — purportedly as a result of the breach. None of these named plaintiffs allege that they suffered any monetary harm. At bottom, they allege lack of access to a payment card for a short period of time, which is not a cognizable injury for standing purposes. *See, e.g.*, *Neiman Marcus*, 2014 WL 4627893, at \*3

(where plaintiff has "not alleged that any of the fraudulent charges were unreimbursed," there can be no "concrete" injury-in-fact for Article III standing); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 527 (N.D. Ill. 2011) (same); *P.F. Chang's*, 2014 WL 7005097, at *3 ("Simply being without a debit card between 'learning of the fraudulent charge[s] and receiving a new credit card' is not a cognizable injury."); *Neiman Marcus*, 2014 WL 4627893, at *3 ("Generally, when one sees a fraudulent charge on a credit card, one is reimbursed for the charge, and the threat of future charges is eliminated by the issuance of a new card, perhaps resulting in a brief period where one is without its use. If the complaint is to credibly claim standing on this score, it must allege something that goes beyond such *de minimis* injury."); *In re Hannaford Brothers Co. Customer Data Security Breach Litig.*, 613 F. Supp. 2d 108, 134 (D. Me. 2009) (a "consumer's temporary lack of access to funds or credit … and the embarrassment or annoyance of obtaining a family loan" are "the ordinary frustrations and inconveniences that everyone confronts in daily life with or without fraud or negligence."), *rev'd on other grounds*, *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 167 (1st Cir. 2011).

  ***Third,*** the three named plaintiffs who allege that they have been the targets of identity theft, but who do not allege that they have suffered any monetary harm

(Plaintiffs Castleberry, Adams, and McGehee), likewise do not have standing. Compl. ¶¶ 6, 10, 65.[8]   For example, while Plaintiff Castleberry asserts that criminals attempted to open accounts in his name, the only harm he alleges as a result is that he had to spend time monitoring his accounts.  *Id.* ¶ 6.  Similarly, Plaintiff McGehee alleges that criminals filed a fraudulent tax return using her identity, but the only harm she alleges is the inconvenience of having to file paper tax returns.  *Id.* ¶ 65.[9]   The time spent by the named plaintiffs dealing with these issues is not an injury and does not confer standing.  *Cf. Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1322–24 (11th Cir. 2012) (holding that plaintiffs had standing where they plausibly alleged *both* identity theft and monetary harm).

The 64 named plaintiffs who allege nothing more than that they spent time addressing the breach or suffered annoyance and inconvenience as the result of the breach do not have standing.  Their claims should be dismissed.

***The named plaintiffs who allegedly incurred expenses for credit monitoring and similar services have not alleged a cognizable injury.***  Only 21 of the 85 named plaintiffs allege that they have suffered monetary harm of any kind.

---

[8]   The claims of the three named plaintiffs who say they incurred monetary harm as the result of attempted identity theft are addressed below.

[9]   Plaintiff McGehee does not plausibly allege how a criminal used her payment card information to file a fraudulent tax return.

Thirteen of these 21 plaintiffs allege that they incurred expenses for credit freezes, credit monitoring, and similar services to prevent potential future harm. *See* Compl. ¶¶ 4, 5, 9, 11, 21, 31, 40, 49, 51, 55, 84, 87, 90. But courts have repeatedly held that these types of "self-inflicted injuries," *Clapper*, 133 S. Ct. at 1152, do not confer standing in a data breach case.

Under *Clapper*, plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Id.* at 1143. Courts have applied this principle in holding that incurring credit monitoring expenses and similar fees to protect against the risk of *possible future harm* is insufficient to confer standing in a data breach case. *See, e.g.*, *SAIC*, 45 F. Supp. 3d at *26 ("The cost of credit monitoring and other preventive measures … cannot create standing."); *Nationwide*, 998 F. Supp. 2d at 657 (same); *Neiman Marcus*, 2014 WL 4627893, at *4 (same).

Moreover, these 13 named plaintiffs could have obtained the services they purchased for free. For example, Plaintiffs Holdridge and Ridenti allege that they paid to have a credit freeze placed on their accounts. Compl. ¶¶ 4, 9. But Arizona and Massachusetts, the states in which these named plaintiffs reside, require credit reporting agencies to place a credit freeze on the accounts of victims of identity theft for free. *See* Arizona Rev. Stat. § 44-1698(K); Mass. G.L. ch. 93 § 62A.

Similarly, as Plaintiffs concede, Home Depot has made credit monitoring and identity theft protection services available to its customers free of charge.[10]

When combined with the 64 named plaintiffs who do not allege any monetary harm, the 13 named plaintiffs who allege they incurred avoidable expenses to prevent future harm brings the total number of named plaintiffs who have not alleged a cognizable injury to 77. Further, as demonstrated below, all of the plaintiffs, including the remaining eight plaintiffs, have not plausibly alleged that their purported injuries are fairly traceable to Home Depot. Thus, none of the 85 named plaintiffs have established standing under Article III.

2.      <u>None of the 85 named plaintiffs have plausibly alleged that they suffered harms that are fairly traceable to Home Depot.</u>

All of the harms alleged in the Complaint are fairly traceable to the actions or potential actions of third parties independent from Home Depot. Courts should be "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 133 S. Ct. at 1150. Indeed, in a recent data breach case, the Southern District of Texas determined that allegations of

---

[10] Plaintiffs take inconsistent positions on credit monitoring. In deriding Home Depot's response to the payment card breach, Plaintiffs claim that credit monitoring "is of no actual value to customers as a preventative measure because it is reactionary—it does nothing to prevent fraud in the first instance." Compl. ¶ 201. Yet the cost of credit monitoring is the economic harm most frequently alleged by the named plaintiffs.

identity theft did not meet the causation element of standing because these allegations "fail[ed] to account for the sufficient break in causation caused by opportunistic third parties." *St. Joseph*, 2015 WL 589561, at \*7. That reasoning applies with equal force here. Accordingly, if the Court determines that any named plaintiffs alleged a concrete injury, the first prong of the *Clapper* standard, their claims still must be dismissed because they fail to meet the second *Clapper* prong — the purported injuries are not fairly traceable to Home Depot's conduct.

***First***, any harm allegedly suffered by the named plaintiffs who claim that fraudulent charges were made or attempted using their payment card information was caused by the criminals who stole their payment card information and the criminals who allegedly purchased and then used it — not by Home Depot.

***Second***, the chain of causation is even more speculative and attenuated for the claims of the named plaintiffs who allege that they were the targets of identity theft. These plaintiffs allege that criminals took out or attempted to take out lines of credit and other accounts in their names. Compl. ¶¶ 4, 5, 6, 10, 55, 65. But for this to have happened, these criminals would have had to not only purchase the named plaintiffs' payment card information, but also take the independent additional step of somehow wrongfully obtaining other information needed to apply for credit — such as their social security numbers or dates of birth, which is

information none of these plaintiffs allege was provided to or stolen from Home Depot. Indeed, Plaintiffs concede that access to their payment card information is only a preliminary step in obtaining the type of information that could actually be used to commit identity theft. *See* Compl. ¶ 205.

The named plaintiffs' allegations of identity theft, therefore, are based on exactly the type of "speculative chain of possibilities" involving the conduct of independent third parties that the Supreme Court has held forecloses a finding that an alleged injury is fairly traceable to the defendant's conduct. *Clapper*, 133 S. Ct. at 1150; *see also SAIC*, 45 F. Supp. 3d at 31–32 (holding that plaintiffs did not plausibly allege that purported identity theft was fairly traceable to data breach where information needed to commit identity theft was not disclosed in breach and plaintiffs merely alleged that breach made it more likely that criminals would steal necessary information); *Neiman Marcus*, 2014 WL 4627893, at *3–4 (holding that to assert that consumers faced "a 'certainly impending' risk of identity theft" on the basis of alleged fraudulent credit card charges was "a leap too far.").[11]

---

[11] Even if these alleged identity theft plaintiffs had standing (and they do not), their claims still should be dismissed. The Eleventh Circuit has explained that "[g]enerally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence" and that the plaintiffs must plead a logical connection between the two incidents that demonstrates that "the type of information stolen was the same type of information needed to open the fraudulent accounts." *AvMed*, 693

***Third***, the harm suffered by the eight named plaintiffs who claim that they incurred unreimbursed expenses is fairly traceable to the banks and other vendors who refused to reimburse those expenses, not to Home Depot. *See* Compl. ¶¶ 8, 27, 60, 62, 66, 67, 80, 83.[12] For example, two named plaintiffs claim that they incurred fraudulent charges as a result of the breach and that their financial institutions refused to reimburse them, but no explanation for this refusal is offered. *Id.* ¶ 27, 62. These allegations are implausible and are inconsistent with the allegations of the named plaintiffs who allege that their financial institutions reimbursed any fraudulent charges, as payment card rules require. *See supra* n.6.[13] Similarly, the five named plaintiffs who allege that they incurred unreimbursed late payment fees fail to explain why their banks or other vendors failed to reimburse

---

F.3d at 1326–27. Here, unlike in *AvMed*, the information that was purportedly stolen was *not* the same type of information needed to open fraudulent accounts.

[12] The harm alleged by the 13 named plaintiffs who voluntarily incurred charges for services that were available for free likewise is not traceable to Home Depot.

[13] These allegations are also inconsistent with the allegations of the Financial Institution Plaintiffs, who allege that "[c]onsumers are ultimately protected from most fraud loss" and that "the Financial Institution Plaintiffs and class members have been forced to cancel and reissue payment cards, change or close accounts, notify customers that their cards were compromised, investigate claims of fraudulent activity, refund fraudulent charges, increase fraud monitoring on potentially impacted accounts, and take other steps to protect themselves and their customers." Fin. Inst. Pls.' Consol. Class Action Compl., Doc. 104, ¶¶ 186–87.

fees that plainly should have been reimbursed if these plaintiffs' allegations of fraudulent activity are true. *Id.* ¶¶ 8, 60, 66, 67, 83.[14] These alleged unreimbursed expenses are fairly traceable not to Home Depot's alleged failure to safeguard payment card data, but to the independent actions of criminals and the independent decisions of banks and other third parties over whom Home Depot has no control. As a result, they do not confer standing. *See, e.g.*, *Clapper*, 133 S. Ct. at 1150; *St. Joseph Services*, 2015 WL 589561, at *7.

3. The purported injuries of the 64 named plaintiffs who allege non-monetary harms are not redressable by a favorable ruling.

Finally, the 64 named plaintiffs who allege non-monetary harms cannot satisfy the third prong of the constitutional standing analysis under *Clapper* — that any injuries they claim to have suffered would be redressable by a ruling against Home Depot. In *St. Joseph*, after determining that the plaintiff could not meet the causation element of the Supreme Court's standing analysis, the court went on to explain that it "[was] not likely that a favorable decision from this Court would redress the harm [plaintiff] has experienced" because the plaintiff had not suffered any quantifiable damage or loss and the court could not control or predict the decisions of third parties that were not before the court and were independent of

_____

[14] These inconsistent allegations of purportedly unreimbursed expenses are just one example of the individualized proof that will foreclose class treatment.

the defendant in any event. *St. Joseph*, 2015 WL 589561, at *7 .

Here, too, the 64 named plaintiffs who allege non-monetary harms have failed to allege any facts that suggest that the Court could remedy any of the injuries they claim to have suffered. For example, the Court cannot remedy the inconveniences, such as time spent monitoring accounts and trips to the bank to withdraw cash, that the named plaintiffs claim to have suffered. Nor can the Court compel the IRS to accept electronic tax returns from the named plaintiffs who claim that they will have to file paper returns in the future. Accordingly, the claims of the 64 named plaintiffs who allege that they suffered non-monetary harms should be dismissed for lack of standing for this independent reason as well.

**B.      Plaintiffs Lack Standing To Bring Claims under the Laws of States and Territories in which No Plaintiff Resides or Claims To Have Entered into a Transaction with Home Depot.**

No named plaintiff resides in or claims to have engaged in a transaction in Connecticut, Hawaii, Idaho, Iowa, Montana, Nebraska, New Hampshire, Oregon, South Dakota, Vermont, Washington, Wyoming, Puerto Rico, or the District of Columbia. Yet Plaintiffs allege consumer fraud claims (Count I) under the laws of every state except for Wisconsin as well as the laws of the U.S. Virgin Islands and the District of Columbia and common law claims (Counts III, IV, V, and VI) under the laws of every state and territory of the United States. *Id.* ¶¶ 267, 271.

The named plaintiffs lack standing to assert any claims under the laws of states in which they do not reside and have suffered no injury. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) ("Where, as here, a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal."); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1056–57 (E.D. Mo. 2009) (holding Missouri plaintiff could not invoke other state's data breach notification statutes). No named plaintiff resides in, or has suffered any alleged injury in, 14 of the states and territories under whose laws they seek relief in Counts I and III–VI.[15] The named plaintiffs simply had no contacts with these states and territories. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985) (a state "must have a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class … in order to

---

[15] In Count II, Plaintiffs allege data breach notification claims under the laws of 25 states and Puerto Rico, the U.S. Virgin Islands, and the District of Columbia. Compl. ¶ 267–68. No named plaintiff resides in or claims to have engaged in a transaction with Home Depot in nine of these jurisdictions: the District of Columbia, Hawaii, Iowa, Montana, New Hampshire, Oregon, Puerto Rico, Washington, and Wyoming.

ensure that the choice of [that state's] law is not arbitrary or unfair.") (internal quotation omitted). Accordingly, the named plaintiffs do not have standing to pursue individual claims under those disparate state laws.

The named plaintiffs cannot cure their lack of standing by raising claims on behalf of absent class members who would have standing under those state laws. Article III's "individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class." *Griffin*, 823 F.2d at 1483 (internal quotation omitted); *see also Laird v. Tatum*, 408 U.S. 1, 14 n.7 (1972) ("a litigant has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others") (internal quotation omitted). For class claims to proceed, "the district court must determine that at least one *named class representative* has Article III standing to raise each class subclaim." *Prado-Steiman ex. rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (emphasis added). And a "named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs." *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) (internal quotation omitted); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996). The Court, therefore, should dismiss all claims under the laws of all 14 states and territories in which no named plaintiff resides or claims to have entered

into a transaction with Home Depot.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF.

Even if Plaintiffs had standing to pursue their claims (and they do not), the Complaint should still be dismissed for failure to state a claim.

### A. Plaintiffs Fail to State A Claim for Violation of State Consumer Fraud And Unfair and Deceptive Acts and Practices Laws.

Plaintiffs allege violations of state consumer fraud and unfair and deceptive practices laws (collectively, "consumer fraud claims") in 51 states and territories. Plaintiffs' consumer fraud claims rest on their rote allegation that "Home Depot's conduct constitutes unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices . . . ." Compl. ¶ 287. Yet Plaintiffs fail to allege any facts demonstrating that the named plaintiffs were exposed to any unfair or deceptive conduct, an essential requirement for a consumer fraud claim. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (finding California's UCL does not allow a consumer who was never exposed to an alleged misleading statement to recover damages). No named plaintiff alleges that he read Home Depot's privacy policy or any other statement regarding Home Depot's data security practices. The named plaintiffs merely allege that they swiped their payment cards at Home Depot — fair and routine consumer transactions. The thieves who stole the payment card data committed

29

fraud, not Home Depot. In addition, state consumer fraud laws vary considerably and those state laws impose additional pleading requirements that Plaintiffs have failed to meet, including the following:

- Plaintiffs have not alleged actual injury caused by Home Depot;

- Plaintiffs have not alleged any deceptive act;

- Plaintiffs have alleged no basis for a duty to disclose;

- Plaintiffs have not alleged a plausible basis for injunctive relief;

- Certain consumer fraud statutes provide no private right of action;

- Certain consumer fraud statutes do not authorize class claims; and

- No named plaintiff lives in or engaged in a transaction with Home Depot in many of the states under whose laws Plaintiffs seek relief.

1. <u>Plaintiffs have not plausibly alleged that they suffered any actual injury as a result of the alleged violation of a consumer fraud statute.</u>

All of the consumer fraud laws under which Plaintiffs assert claims require "ascertainable loss of money or property," "pecuniary loss," "monetary damage," or some other form of actual injury caused by the defendant as a result of an alleged statutory violation. *See* Appendix A.[16] As discussed previously, the vast majority (64) of the named plaintiffs have alleged no injury at all. The harm alleged by the remaining 21 of the named plaintiffs was either caused by the

---

[16] This excludes the five statutes addressed below that are limited to providing injunctive relief for imminent future harm, which is not pled here.

plaintiffs themselves or independent third parties, not Home Depot.  Thus, none of the named plaintiffs have plausibly alleged that they suffered an actual injury as a result of Home Depot's conduct.  Accordingly, all of Plaintiffs' damages claims under the consumer fraud laws should be dismissed.

2.    Plaintiffs have not plausibly alleged a deceptive act or practice.

Thirty of the consumer fraud laws identified in the Complaint apply to deceptive acts and practices.  *See* Appendix B.  To state a claim for a deceptive act or practice, Plaintiffs must identify some allegedly deceptive conduct.  *See, e.g.*, *Michaels Stores*, 830 F. Supp. 2d at 525 (holding that because plaintiffs identified no deceptive communication by defendant, plaintiff failed to allege that defendant engaged in a deceptive practice).  Moreover, to the extent these claims sound in fraud, Plaintiffs must satisfy a heightened pleading standard, by alleging with particularity deceptive acts or practices that form the basis of their claims.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) ("Under [N.Y. Gen. Bus. Law] § 349, specific allegations of deceptive conduct are essential to state a claim.").  Here, Plaintiffs merely allege in conclusory fashion that Home Depot represented that its "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" and that its "goods and services are of a particular standard,

quality or grade, [but] are of another." Compl. ¶ 288 a.–b. This formulaic recitation of the elements of a deceptive act claim does not state a plausible claim for relief under any standard, much less the heightened standard applicable to a claim sounding in fraud.

### 3. Plaintiffs allege no facts sufficient to establish the existence of a duty to disclose.

An omission is not actionable under 18 of the consumer fraud laws unless the defendant had a duty to disclose the allegedly omitted information. *See* Appendix C. As a general matter, "no duty to disclose exists when parties are engaged in arm's-length business negotiations; in fact, an arm's-length relationship by its nature excludes a confidential relationship." *Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144, 146 (Ga. Ct. App. 2005). The named plaintiffs do not allege they engaged in anything other than an arm's-length retail transaction with Home Depot. The Court should dismiss the named plaintiffs' claims under the 18 consumer fraud laws that require a duty to disclose. *See* Appendix C.

### 4. Plaintiffs cannot pursue consumer fraud claims under statutes that permit only injunctive relief.

Injunctive relief is the only remedy available under five of the asserted consumer fraud laws. *See* Appendix D. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and

ultimately proves, a real and immediate — as opposed to a merely conjectural or hypothetical — threat of future injury." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001) (internal quotation omitted).  As demonstrated above, the named plaintiffs' assertion that they face impending harm as a result of the breach is based on the flawed premise that criminals will use their cancelled payment card numbers to commit identity theft in the future.  This speculation is an insufficient basis for injunctive relief.  *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009) (plaintiff lacked standing for injunction where there was no alleged future injury).

5.  Plaintiffs' consumer fraud claims fail to satisfy additional state-specific pleading requirements.

Three additional categories of state-specific pleading requirements defeat a number of the named plaintiffs' consumer fraud claims.

***Two of the consumer fraud statutes under which the named plaintiffs bring claims do not provide for a private right of action.***  Neither Delaware's Uniform Deceptive Trade Practices Act nor Oklahoma's Deceptive Trade Practices Act creates a private right of action for consumers.  *See Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228 (W.D. Okla. 2008); *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993).  Plaintiffs' claims under these two statutes should be dismissed as well.

**The named plaintiffs may not pursue a class action under the consumer fraud statutes of 10 states identified in the Complaint.** The consumer fraud statutes of Alabama, Georgia, Kentucky, Louisiana, Mississippi, Montana, South Carolina, and Tennessee do not authorize class claims. *See* Appendix E. Moreover, the Ohio and Utah consumer fraud statutes authorize a class action only if the challenged act has been declared to be deceptive by a court in a final judgment or by the state attorney general. *See Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006) (consumer may not bring class action unless alleged violation is prohibited by judicial decision or administrative rule); *Miller v. Basic Research, LLC*, 285 F.R.D. 647, 654-55 (D. Utah 2010) (same). Plaintiffs have not identified any Ohio or Utah decision or rule involving a data breach sufficient to authorize a class action. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.* 996 F. Supp. 2d 942, 1006 (S.D. Cal. 2014) (*Sony II*) (Plaintiffs "conceded they were unable to locate an act 'substantially similar to an act or practice previously declared to be deceptive' by the Ohio Attorney General or an Ohio State court."). Multiple courts have dismissed class claims like the named plaintiffs' because the statutes at issue do not permit private class actions.[17] The claims here are no different and should be dismissed.

---

[17] *See, e.g., Stalvey v. Am. Bank Holdings, Inc.*, 2013 WL 6019320, at *4 (D.S.C.

***Plaintiffs cannot assert claims under the laws of states in which no named plaintiff resides or alleges to have engaged in a transaction with Home Depot.***

As explained above, no named plaintiff lives in or engaged in any transactions in fourteen of the states and territories under whose consumer fraud laws Plaintiffs purport to bring claims. *See supra* Section I.B. Plaintiffs' claims under the laws of these 14 states must be dismissed for this independent reason as well. *See, e.g.*, *Mazza*, 666 F.3d at 594 (holding that each putative class member's consumer fraud claim "should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."); *In re Sony Gaming Network & Customer Data Security Breach Litig.*, 903 F. Supp. 2d 942, 964–65 (S.D. Cal. 2012) (*Sony I*) (applying *Mazza* and dismissing statutory claims of non-residents). Thus the consumer fraud claims alleged under Connecticut, Hawaii, Idaho, Iowa, Montana,

---

Nov. 13, 2013) (dismissing class claims because "prohibitions against class actions ingrained in the very text of the [South Carolina Unfair Trade Practices Act] and [the] Consumer Protection code are substantive portions of South Carolina law and are not trumped by Federal Rule of Civil Procedure 23"); *In re Zappos.com, Inc*., 2013 WL 4830497, at *5 (D. Nev. Sept. 9, 2013) (dismissing class claim for violation of Alabama's Deceptive Trade Practices Act because "private class actions are not permitted for violations of this statute"); *Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) (striking class allegations because the "very statutory provision that authorizes a private right of action for a violation of the [Tennessee Consumer Protection Act] limits such claims to those brought 'individually'") (citation omitted).

Nebraska, New Hampshire, Oregon, South Dakota, Vermont, Washington, Wyoming, Puerto Rico, and District of Columbia law should be dismissed.

**B.      Plaintiffs Fail to State a Claim Under State Data Breach Statutes.**

Plaintiffs allege that Home Depot violated 28 data breach statutes. Plaintiffs fail to state a claim for breach of these statutes because 13 of the statutes do not provide for a private right of action, and Plaintiffs fail to plausibly allege any injuries resulting from the purportedly delayed notification.[18]

1.      <u>Plaintiffs cannot assert claims under data breach statutes that do not provide a private right of action.</u>

Thirteen of the data breach statutes identified in the Complaint do not provide for a private right of action. *See* Appendix G. Plaintiffs therefore cannot state a claim for violation of the data breach statutes of Colorado, Delaware, Georgia, Iowa, Kansas, Kentucky, Michigan, Montana, North Dakota, Oregon, Puerto Rico, Wisconsin, or Wyoming. *See, e.g., Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 637 (7th Cir. 2007) (dismissing data breach notification claim because statute did not provide for a private right of action).

---

[18] Plaintiffs' claims under the data breach notification statutes of nine states and territories fail for the independent reason that no named plaintiff resides there. The statutes in eight of these jurisdictions expressly apply only to residents, *see* Appendix F, and Plaintiffs have alleged no basis for applying the law of the ninth, New Hampshire, consistent with due process. *See, e.g.*, *Mazza*, 666 F.3d at 594, *Sony I*, 903 F. Supp. 2d 964–65.

2.  Plaintiffs cannot assert claims under many of the data breach statutes because they do not allege any cognizable harm as a result of the purportedly delayed notification.

At least 10 of the data breach notification statutes require that Plaintiffs allege damages as a result of the purportedly untimely notice. *See, e.g.*, *Sony II*, 996 F. Supp. 2d at 1010 ("[P]laintiff must allege actual damages flowing from the unreasonable delay (and not just the intrusion itself) in order to recover actual damages."); Appendix H. Plaintiffs fail to allege such injuries here.

At most, Plaintiffs allege that they could have "contacted their banks to cancel any affected cards, taken security precautions in time to prevent or minimize identity theft, or could have avoided using uncompromised payment cards during subsequent Home Depot purchases." Compl. ¶ 301. But none of the named plaintiffs who admit that they received notice of the breach allege that they took any steps to cancel their payment cards once they learned of the breach. Nor do the named plaintiffs allege that they used a payment card at Home Depot after Home Depot first learned of the breach and that their payment card information was compromised as a result. Thus, Plaintiffs do not plausibly allege any harm caused by any supposed delay in notification by Home Depot of the breach. For this reason, Plaintiffs' claims under the data breach notification statutes of California, the District of Columbia, Hawaii, Louisiana, New Hampshire, South

Carolina, Tennessee, the U.S. Virgin Islands, Virginia, and Washington fail and should be dismissed.

**C.** **Plaintiffs' Negligence Claims Fail Because They Have Not Alleged Damages Compensable in Tort or That Home Depot Breached Any Duty To Plaintiffs.**

"In the analysis of a negligence action, the plaintiff must satisfy the elements of the tort, that is, the plaintiff must show a duty, a breach of that duty, causation, and damages." *John Crane, Inc. v. Jones*, 604 S.E.2d 822, 825 (Ga. 2004).[19] Plaintiffs have failed to plead these necessary elements, namely, by failing to allege damages compensable in tort or that Home Depot breached any duty to Plaintiffs by failing to safeguard Plaintiffs' personal information. Plaintiffs' negligence claims thus fail as a matter of law.

*First*, none of the named plaintiffs have alleged "an existing compensable injury and consequent damages required to state a claim for negligence." *Pisciotta*, 499 F.3d at 634–35 (dismissing negligence claim in data breach suit because "the harm caused by identity information exposure, coupled with the attendant costs to guard against identity theft" is insufficient to state a claim for

---

[19] This memorandum demonstrates why Plaintiffs' negligence and other common law claims fail under Georgia law and the laws of several other illustrative states. Even if any of these claims survive the pleading stage, the differences in the laws of the 53 states and territories under which Plaintiffs seek relief would preclude class certification on Plaintiffs' common law claims.

negligence); *see also Krottner v. Starbucks Corp.*, 406 F. App'x 129, 130 (9th Cir. 2010) (holding pre-*Clapper* that while plaintiffs had standing, they insufficiently alleged the injury required for their negligence claims). "[A]ppreciable, non-speculative, present harm is an essential element of a negligence cause of action." *Sony I*, 903 F. Supp. 2d at 962; *see also MCI Commc's Servs. v. CMES, Inc.*, 728 S.E.2d 649, 652 (Ga. Ct. App. 2012) ("An injury to a person or damage to property is required for a tort to be actionable."). For the reasons discussed in section I.A, all 85 named plaintiffs have failed to allege any "harm [from] which damages can be reasonably assessed" as a result of Home Depot's alleged negligence, requiring dismissal of their negligence claims. *Amburgy*, 671 F. Supp. 2d at 1054–55.

**Second**, the negligence claims of 20 of the 21 named plaintiffs who allege a monetary loss are also barred under the economic loss doctrine.[20] Where a plaintiff alleges only economic losses stemming from an alleged breach, they are prevented from recovering in tort for those economic losses. *See Bates & Assoc., Inc. v. Romei*, 426 S.E.2d 919, 922 (Ga. Ct. App. 1993) ("[C]ourts adhere to the rule that purely economic interests are not entitled to protection against mere

---

[20] Plaintiff Tolliver lives in Mississippi, a state in which it is not clear if the economic loss rule applies. *See* Compl. ¶ 62. His negligence claim nonetheless fails for all of the other reasons addressed herein — he has not alleged a cognizable injury caused by Home Depot's breach of an established tort duty.

negligence."). These 20 named plaintiffs claim that they suffered economic losses in the form of "unreimbursed expenses," but do not allege that these losses were accompanied by either personal injury or physical injury to their property. Their negligence claims are barred by the economic loss doctrine. *See* Appendix I.[21]

Indeed, under this well-established doctrine, "[c]ourts addressing data breach cases have dismissed negligence claims … where the plaintiff has not suffered personal injury or property damage." *Willingham*, 2013 WL 440702, at *18 (applying Georgia law in data breach suit); *see also Michaels Stores*, 830 F. Supp. 2d at 531 (dismissing negligence claim under Illinois economic loss doctrine); *Sony II*, 996 F. Supp. 2d at 967, 973 (dismissing negligence claims under California and Massachusetts economic loss doctrine); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 178 (3d Cir. 2008) (dismissing negligence claim under Pennsylvania economic loss doctrine).

***Third***, all 85 named plaintiffs' negligence claims fail because they have not alleged Home Depot owed or breached any duty by purportedly failing to

---

[21] While some states recognize a limited exception to the economic loss doctrine where a special or confidential relationship exists, no such special relationship exists between Home Depot and any of the named plaintiffs. *See Sony II*, 966 F. Supp. 2d at 969 (holding that plaintiffs "failed to allege a special relationship with Sony beyond those envisioned in every day consumer transactions"); *Hannaford Bros.*, 613 F. Supp. 2d at 122-23 (finding no confidential relationship between a grocery store and its customers in a data breach case).

safeguard their personal information from a criminal attack or promptly notifying its customers of the breach. *See* Compl. ¶ 305. It is axiomatic that, "[u]nless a duty is owed, there is no negligence." *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897 (N.D. Ill. 2012) (internal quotation omitted). Plaintiffs' contention that Home Depot breached a duty created by industry standards is insufficient, because "commercial standards or general industry standards such as PCI-DSS" do not "create a legal duty running from [the defendant] to Plaintiffs." *See Willingham*, 2013 WL 440702, at *19 (rejecting similar argument based on industry standards). Further, there is no recognized common law duty to safeguard personal information. *See, e.g.*, *Worix*, 869 F. Supp. 2d at 897-98 (declining to recognize a new common law duty to safeguard sensitive information); *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, 2014 WL 2738220, at *3-4 (E.D. Pa. June 17, 2014) (concluding that plaintiffs failed to allege any common law duty "to properly secure and to protect [] customers' personal banking information and other information" or "to implement procedures and practices to prevent access and/or have in place appropriate data privacy and security safeguards to prevent disclosure to unauthorized third parties"). Finally, no common law duty to provide notice of a data breach exists. *Hannaford*, 613 F. Supp. 2d at 124 (Maine common law recognizes no duty "to advise customers of the theft"); *Amburgy*, 671 F. Supp.

2d at 1055 (no cause of action in negligence exists for the failure to provide adequate and timely notice of a data breach, and "[t]he Court will not create a claim where one does not exist").

The conclusion that Home Depot did not breach any duty to the named plaintiffs is bolstered by the fact that their alleged injuries, if any, were caused by third-party hackers who stole payment card information from Home Depot and other criminals who then allegedly purchased that information on Rescator.cc. *See Citizens Bank of Pa.*, 2014 Wl 2738220, at *3 (concluding that "[d]efendants are generally not held liable for wrongful acts by intervening third parties"). "It is well established that the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence." *Willingham*, 2013 WL 440702, at *19 (internal quotation omitted). For these reasons, courts have dismissed similar data-breach negligence claims, and this Court should dismiss the claims of all 85 named plaintiffs too. *Id.*; *see also Sony II*, 996 F. Supp. 2d at 966-73.

### D. Plaintiffs' Breach of Implied Contract Claims Fail Because There Was No Meeting of the Minds and No Cognizable Injury Caused by Home Depot.

A contract is a "an agreement founded upon a meeting of the minds…[that] is inferred, as a fact from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Teets v. Chromalloy Gas*

42

*Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996) (internal quotation and citation omitted). Plaintiffs must do more than provide a conclusory recitation of the elements of an implied contract claim; they are required to allege facts from which it is plausible to infer a meeting of the minds on the implied contract terms. *See Donaldson v. Olympic Health Spa, Inc.*, 333 S.E.2d 98, 100 (Ga. Ct. App. 1985) (holding that "[i]n the absence of this meeting of the minds," there can be no implied contract).

Here, the only contract sufficiently alleged by Plaintiffs is that "customers agreed to pay money [in exchange] for goods." *Zappos*, 2013 WL 4830497, at *3; *see also, e.g.*, Compl. ¶ 40 ("Plaintiff Garner shopped at a Home Depot retail store in Georgia between April 1 and September 18, 2014 by swiping his credit card through Home Depot point-of-sale devices to make payment."). Plaintiffs do not allege a breach of this contract. Rather, the named plaintiffs allege Home Depot breached an implied promise to protect their personal information and timely notify them in the event of a breach. Compl. ¶ 317. But Plaintiffs have failed to allege statements or conduct indicating a shared intent — at the time of their purchases — to enter into an implied contract for the protection of their personal information. *See Krottner*, 406 F. App'x 129, 131 (rejecting the argument that statements on a company's website were objective manifestations of its intent to enter into an implied contract to encrypt Plaintiffs' personal information); *Zappos*,

2013 WL 4830497, at *3 (dismissing contractual claims in data breach case premised on "unilateral statements" on defendant's website concerning data security). Indeed, no named plaintiff alleges such an intent. Plaintiffs' failure to allege a meeting of the minds, or conduct by Home Depot manifesting its intent to enter into an implied contract to protect the named plaintiffs' personal information, is fatal to their claims.

All 85 named plaintiffs' breach of implied contract claims also fail for the same reason as the rest of their claims: the named plaintiffs have not alleged any cognizable injury resulting from the alleged breach caused by Home Depot, an essential element of any contract claim. *See Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1132–33 (11th Cir. 2014) (rejecting contract claim where plaintiff failed to put forth evidence of damages caused by purported breach); *see also Pisciotta*, 499 F.3d at 635 (dismissing implied contract claim in data-breach for lack of injury); *Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) (same).

### E. Plaintiffs' Unjust Enrichment Claims Fail Because Home Depot Did Not Unjustly Receive Any Benefit From Plaintiffs.

Plaintiffs allege no facts suggesting that an "unrecompensed benefit [was] conferred" on Home Depot — the fundamental element of an unjust enrichment claim. *Zappos*, 2013 WL 4830497, at *5; *see also GMAC Mort., LLC v. Pharis*,

761 S.E.2d 480, 484 (Ga. Ct. App. 2014) (elements of an unjust enrichment claim); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (unjust enrichment turns on individualized facts).

**First**, Plaintiffs' contention that consumers would not have purchased products from Home Depot if they had known about the company's allegedly deficient security does not establish that an unjust benefit was conferred on Home Depot. Not one of the named plaintiffs alleges any specific facts in support of this claim; indeed, no named plaintiff says he or she stopped shopping at Home Depot following the breach. In any event, Plaintiffs' "would not have purchased" theory is insufficient to state an unjust enrichment claim given that they received the products they purchased and thus obtained the benefit of their bargain with Home Depot. *See, e.g.*, *In re Sony PS3 "Other OS" Litig.*, 551 F. App'x 916, 922 (9th Cir. 2014); *Zappos*, 2013 WL 4830497, at *5 ("[I]t appears undisputed that Defendant provided Plaintiffs a benefit in return (providing the goods) such that there is no unrecompensed benefit conferred"). Indeed, the "would not have purchased" theory is "too little too late—[plaintiffs] have already received the benefit from [the product], even if they now claim that they do not want that bargain." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007).

**Second**, Plaintiffs' contention that Home Depot has unjustly benefitted from the receipt of Plaintiffs' PII and payment card information fails because this information has no quantifiable monetary value and thus cannot form the basis of an unjust benefit. *See Sony II*, 996 F. Supp. 2d at 975 ("Plaintiffs' Personal Information does not have independent monetary value"); *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *3 (S.D. Fla. Oct. 18, 2012) ("Personal data does not have an apparent monetary value that fluctuates like the price of goods or services."). Moreover, Plaintiffs' information has not been devalued as a result of supplying the information to Home Depot. *See Nationwide*, 998 F. Supp. 2d at 660 (plaintiffs "failed to allege any facts explaining how their PII became less valuable to them (or lost all value) by the data breach"). There was simply nothing "unjust" about the benefits the named plaintiffs and Home Depot received when the named plaintiffs used a payment card at Home Depot; this claim too should be dismissed.

**F.     Plaintiff's Declaratory Judgment Claim Should Be Dismissed Because It Is An Attempt To Obtain A Breach of Contract Remedy Without Alleging A Breach of Contract.**

Plaintiffs seek a declaration that Home Depot's existing security measures are insufficient and that Home Depot must implement additional security measures. Compl. ¶ 341. This request should be denied because: (1) Plaintiffs lack standing; (2) Plaintiffs improperly seek an advisory opinion; and (3) Plaintiffs

46

have failed to state a claim for breach of contract.

To establish standing to bring a claim for declaratory relief, Plaintiffs must allege "not only an injury, but also a real and immediate threat of future injury in order to satisfy the injury in fact requirement." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (internal quotation omitted). For the same reasons the named plaintiffs have failed to allege Article III standing for their other claims, they have failed to allege an actual injury or real and immediate threat of future injury sufficient to state a claim for declaratory relief, much less one that is fairly traceable to Home Depot's alleged failure to live up to its purported "contractual obligations" regarding information security.

Plaintiffs' request for a declaratory judgment is in effect a request for an advisory opinion. Only where there is a "substantial continuing controversy between two adverse parties" that is "real and immediate, and creates a definite, rather than speculative threat of future injury" is a claim ripe for review. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (internal quotation omitted). Absent a live controversy, a decision on the merits of a claim for declaratory relief would constitute an impermissible advisory opinion. *See Clas v. Torres*, 549 F. App'x 922, 923 (11th Cir. 2013). No continuing controversy exists here. The named plaintiffs claim that they used a payment card

at Home Depot several months or over a year ago and suffered harm as a result. These past transactions involving now cancelled payment cards do not entitle Plaintiffs to an advisory opinion concerning the adequacy of Home Depot's *current* security measures.

Finally, Plaintiffs cannot avoid their obligation to plead all of the elements of a breach of contract by recasting that claim as one seeking a declaration that Home Depot has breached its contractual obligations. A claim which incorrectly "couches a breach of contract action as a request for declaratory judgment" falls outside the scope of the Declaratory Judgment Act. *Househould Fin. Servs., Inc. v. N. Trade Mortg. Corp.*, 1999 WL 782072, at *3 (N.D. Ill. Sept. 27, 1999). Here, Plaintiffs allege no current or imminent contractual dispute requiring court intervention. This is particularly so when Plaintiffs fail to plausibly allege all of the elements of a breach of contract claim for their past transactions — including the required element of damages. Plaintiffs cannot cure this failure by repackaging their insufficient allegations as a claim for declaratory relief.

### G. Plaintiffs' California Unfair Competition Law Claim Should Be Dismissed Because Plaintiffs Have Alleged No Injury.

Plaintiffs' California Customer Records Act and Unfair Competition Law claims fail because they have not alleged actual injury as a result of violation of these statutes. Plaintiffs seek relief pursuant to the law's injunctive remedy

48

provision — Section 1798.84(e).  To bring a claim under Section 1798.84(e), a plaintiff "must have suffered a statutory injury" caused by the defendant and this is the rule "regardless of the remedies he or she seeks." *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 466-67 (2013) (applying Section 1798.84(e) to California's "Shine the Light" law (Cal. Civ. Code § 1798.83), review denied (Mar. 12, 2014).  Plaintiffs must make a threshold showing that they have been "injured by a violation" of the statute to bring a private action, whether seeking injunctive relief or otherwise. *Id.* at 467.  No named plaintiff alleges actual injury or injury caused by Home Depot sufficient to make this showing.

Because Plaintiffs are unable to pursue their claim under the California Data Breach Notification Act, Plaintiffs also fail to allege any practice that is "unlawful" under the UCL. *See Haskins v. Symantec Corp.*, 2013 WL 6234610, at *7 (N.D. Cal. Dec. 2, 2013) (dismissing claims under UCL unlawful prong where plaintiff did not plead cause of action under any predicate statute).

### H.    Plaintiffs' Maryland Personal Information Protection Act and Consumer Protection Act Claims Fail Because Plaintiffs Have Alleged No Injury.

Plaintiffs' Maryland Personal Information Protection Act and Consumer Protection Act ("CPA") claims under Maryland Code, Commercial Law § 14-3503(a) also fail because the named plaintiffs have not alleged actual injury caused

by Home Depot as a result of a violation of the statutes. Although Maryland's CPA provides that "[a]ny practice prohibited by this title is a violation of this title, whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice," Md. Code Ann., Com. Law § 13-302, to bring a claim under Section 14-3503(a), a plaintiff must establish actual injury or loss caused by the defendant. *See Morris v. Osmose Wood Preserving*, 667 A.2d 624, 634 n.10 (1995). Plaintiffs therefore must show that they have sustained an injury or loss as a result of a practice prohibited by the Act to bring a suit. *Id.* No named plaintiff alleges actual injury or injury that is traceable to Home Depot sufficient to make this showing.

Because Plaintiffs are unable to pursue their claim under the Maryland Personal Information Protection Act, Plaintiffs also fail to allege an unlawful practice under the Maryland CPA. *See Hallowell v. Citaramanis*, 594 A.2d 591, 594 (Md. App. 1991) ("To establish a private action, a consumer must demonstrate 'injury or loss sustained ... as the result of a practice prohibited by this title.' CL § 13-408(a).").

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted, this 1st day of June, 2015.

/s/ Phyllis B. Sumner
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
J. Andrew Pratt
Georgia Bar No. 465311
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
psumner@kslaw.com
shaskins@kslaw.com
apratt@kslaw.com

*Counsel for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Memorandum was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 1st day of June, 2015.


*/s/ Phyllis B. Sumner*
Phyllis B. Sumner
Georgia Bar No. 692165

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on June 1, 2015 with the Court and served electronically through the CM-ECF (electronic case filing) system to all counsel of record registered to receive a Notice of Electronic Filing for this case.

/s/ Phyllis B. Sumner
Phyllis B. Sumner
Georgia Bar No. 692165