# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: The Home Depot, Inc., Customer Data Security Breach Litigation | |
| This document relates to: | **MDL No. 14-02583-TWT** |
| ALL FINANCIAL INSTITUTION CASES | |

**MEMORANDUM OF LAW IN SUPPORT OF HOME DEPOT U.S.A., INC. AND THE HOME DEPOT, INC.'S MOTION TO DISMISS THE FINANCIAL INSTITUTION PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

I.  SUMMARY OF THE COMPLAINT'S ALLEGATIONS ........................... 3

    A.  Payment Card Breach. ...................................................................... 3

    B.  The Banks' Alleged Injuries. ........................................................... 4

II.  OVERVIEW OF THE CARD BRAND NETWORKS ................................ 5

LEGAL STANDARD ........................................................................................ 6

ARGUMENT AND CITATION TO AUTHORITIES ......................................... 7

I.  THE BANKS LACK ARTICLE III STANDING. ...................................... 7

    A.  No Bank Has Identified a "Concrete, Particularized" Injury. ............. 8

    B.  Expenses Voluntarily Incurred to Protect Against Possible Future Harm Do Not Confer Standing. ............................................ 10

    C.  Claims Based on Lost Value to Account Numbers Fail to Satisfy Article III's Requirement of Injury-In-Fact. ......................... 12

II.  THE BANKS' NEGLIGENCE CLAIMS FAIL. ....................................... 13

    A.  The ELR Bars the Banks' Claims for Negligence and Negligence Per Se. ........................................................................ 14

1.    The Banks' Claims Fail Because They Seek to Recover
      for Purely Economic Losses.................................................. 14

B.    The Banks Fail to State a Claim for Negligence............................. 19

1.    There is No Common Law Duty to Protect The Banks
      from a Criminal Intrusion Perpetrated by a Third Party. ........ 20

2.    Home Depot Had No Special Relationship with The
      Banks and Thus Had No Duty to Protect the Banks from
      the Data Breach. .................................................................. 22

3.    Home Depot owed the Banks No Duty Based on Industry
      Standards (e.g., PCI-DSS)..................................................... 24

4.    The FTC Act Cannot Form the Basis of the Banks'
      Common Law Negligence Claim. .......................................... 25

C.    The Banks' Negligence Per Se Claim Fails..................................... 26

1.    Section 5 of the FTC Act Does Not Support a Claim for
      Negligence Per Se................................................................. 26

      a.    Section 5 does not impose a clear and concrete
            duty or standard of conduct......................................... 26

      b.    The Banks Do Not Fall Within the Class of
            Persons Congress Intended to Protect Under the
            "Unfair Practices" Prong of the FTC Act. ................... 29

2.    FTC Guidelines and Orders Do Not Carry the Force of
      Law and Fail to Support a Claim for Negligence Per Se. ....... 31

3.    Industry Standards Cannot Support a Negligence Per Se
      Claim .................................................................................... 33

III.   THE BANKS' CLAIM FOR INJUNCTIVE AND DECLARATORY
       RELIEF SHOULD BE DISMISSED. ...................................................... 34

A.    The Banks Fail to State a Claim for Injunctive Relief. ..................... 34

    1.    There is No Cognizable Claim for "Injunctive Relief". .......... 34

    2.    The Banks are Not Entitled to the Remedy of Injunctive Relief. ................................................................................... 35

B.    The Banks Fail To State A Claim For Declaratory Relief. ............... 37

    1.    The Banks' Declaratory Relief Claim Improperly Seeks a Determination of Past Liability. .............................................. 37

    2.    The Association Plaintiffs Do Not Have Standing to Pursue a Claim for Declaratory Relief. ................................. 39

IV.    THE BANKS' STATUTORY CLAIMS MUST BE DISMISSED............. 40

    A.    The Banks' Statutory Claims Fail for Lack of Standing. .................. 40

    B.    The Banks' Claims under the "Baby FTC Acts" Fail Because They Do Not Allege an Unfair or Deceptive Trade Practice. .......... 41

    C.    The Banks Fail to Plead the Essential Elements in Several State Statutes. ...................................................................................... 43

        1.    The Banks' Claims Fail Under California's UCL and CRA ................................................................................... 43

        2.    The Banks Fail to Plead a Valid Claim for Violation of the Connecticut Unfair Trade Practices Act. .......................... 45

        3.    The Banks Are Not "Consumers" under the Florida Deceptive and Unfair Trade Practices Act. ........................... 45

        4.    The Washington Sub-Class Has No Claim Under Either Washington Statute. ............................................................... 46

        5.    The Minnesota Sub-Class's Claim Fails as a Matter of Law. ...................................................................................... 47

V.   MANY OF THE BANKS' CLAIMS ARE NOT RIPE. ............................. 48

CONCLUSION ...................................................................................... 50

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*31 Foster Children v. Bush*,
    329 F.3d 1255 (11th Cir. 2003).........................................................................36

*A.F. King & Son v. Simmons*,
    131 S.E.2d 214 (Ga. Ct. App. 1963) ...............................................................27

*Abnet v. Coca-Cola Co.*,
    786 F. Supp. 2d 1341 (W.D. Mich. 2011) .......................................................29

*Adventure Outdoors, Inc. v. Bloomberg*,
    519 F. Supp. 2d 1258 (N.D. Ga. 2007)............................................................16

*Ala. v. U.S. Army Corps of Eng'rs*,
    424 F.3d 1117 (11th Cir. 2005)...............................................................35, 37

*Am. Fin. Sers. Ass'n v. F.T.C.*,
    767 F.2d 957 (D.C. Cir. 1985) .........................................................................28

*Amburgy v. Express Scripts, Inc.*,
    671 F. Supp. 2d 1046 (E.D. Mo. 2009) ...........................................................21

*Anderson v. City of Alpharetta*,
    770 F.2d 1575 (11th Cir. 1985).......................................................................13

*Annett Holdings, Inc. v. Kum & Go, L.C.*,
    801 N.W.2d 499 (Iowa 2011)..........................................................................18

*APAC-Se., Inc. v. Coastal Caisson Corp.*,
    514 F. Supp. 2d 1373 (N.D. Ga. 2007)..............................................................8

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*,
    947 A.2d 320 (Conn. 2008)..............................................................................45

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................passim

*Assoc. Health Sys., Inc. v. Jones*,
  366 S.E.2d 147 (Ga. Ct. App. 1998) ..............................................22

*Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*,
  799 P.2d 250 (Wash. 1990)..............................................................29

*Atl. Ref. Co. v. F.T.C.*,
  381 U.S. 357 (1965)..........................................................................28

*BancFirst v. Dixie Restaurants, Inc.*,
  No. CIV-11-174, 2012 WL 12879 (W.D. Okla. Jan. 4, 2012) ........................21

*Banknorth, N.A. v. BJ's Wholesale Club, Inc.*,
  442 F. Supp. 2d 206 (M.D. Pa. 2006)..............................................18

*Beatrice Foods Co. v. F.T.C.*,
  540 F.2d 303 (7th Cir. 1976)............................................................33

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................7, 40

*Blommer Chocolate Co. v. Bongards Creameries, Inc.*,
  No. 83 C 0536, 1984 WL 454 (N.D. Ill. Apr. 11, 1984) ..................................29

*Bolin v. Story*,
  225 F.3d 1234 (11th Cir. 2000)........................................................39

*Boutilier ex rel. Boutilier v. Chrysler Ins. Co.*,
  No. 8:99-CV-2270T26MAP, 2001 WL 220159 (M.D. Fla. Jan. 31, 2001).......25

*Bowen v. First Family Fin. Servs., Inc.*,
  233 F.3d 1331 (11th Cir. 2000)..........................................................9

*Brit Ins. Holdings N.V. v. Krantz*,
  No. 1:11 CV 948, 2012 WL 28342 (N.D. Ohio Jan. 5, 2012)..........................12

*Brock v. Avery Co., Inc.*,
  110 S.E.2d 122 (Ga. Ct. App. 1959) ..............................................28

*Brown v. Belinfante*,
  557 S.E.2d 399 (Ga. Ct. App. 2001) ...............................................................29

*Carolina Cas. Ins. Co. v. R.L. Brown & Assocs., Inc.*,
  No. 1:04-CV-3537, 2006 WL 3625891 (N.D. Ga. Dec. 11, 2006) ..................16

*Carroll v. Lowes Home Ctrs., Inc.*,
  No. 12-23996-CIV, 2014 WL 1928669 (S.D. Fla. May 6, 2014) ....................45

*Castaneira v. Perdue*,
  No. 1:10-CV-3385-TWT, 2010 WL 5115193 (N.D. Ga. Dec. 9, 2010)...........36

*Centr. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco
  Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005)............................................................................9

*Chamber of Commerce v. United States Dep't of Labor*,
  174 F.3d 206 (D.C. Cir. 1999) ......................................................................32

*Citizens Bank of Pa. v. Reimbursement Techs., Inc.*,
  No. 12-1169, 2014 WL 2738220 (E.D. Pa. June 17, 2014) ...........................20

*City of Atlanta v. Benator*,
  714 S.E.2d 109 (Ga. Ct. App. 2011) ..............................................................16

*Clapper v. Amnesty International USA*,
  133 S. Ct 1138 (2013)......................................................................1, 8, 10, 11

*Conn. v. Health Net, Inc.*,
  383 F.3d 1258 (11th Cir. 2004)........................................................................9

*Cumis Ins. Soc'y Inc. v. BJ's Wholesale Club, Inc.*,
  918 N.E.2d 36 (Mass. 2009) ..................................................................5, 6, 19

*Daanen & Janssen, Inc. v. Cedarapids, Inc.*,
  573 N.W.2d 842 (Wisc. 1998) .......................................................................17

*Dep't of Legal Affairs v. Rogers*,
  329 So.2d 257 (Fla. 1976)...............................................................................41

*Digital Props., Inc. v. City of Plantation*,
　121 F.3d 586 (11th Cir. 1997)..................................................................49

*Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*,
　780 A.2d 967 (Conn. App. 2001)..........................................................45

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
　438 U.S. 59 (1978)....................................................................................49

*E.J. v. United States*,
　No. 13-cv-01923, 2013 WL 6072867 (N.D. Cal. Nov. 14, 2013)....................29

*Edmunds v. Cowan*,
　386 S.E.2d 39 (Ga. Ct. App. 1989) ..........................................................21

*Elend v. Basham*,
　471 F.3d 1199 (11th Cir. 2006)...............................................................38

*F.T.C. v. Colgate-Palmolive Co.*,
　380 U.S. 374 (1965)..................................................................................29

*F.T.C. v. Sperry & Hutchinson Co.*,
　405 U.S. 233 (1972)...........................................................................30, 42

*Fanean v. Rite Aid Corp.*,
　984 A.2d 812 (Del. Super. Ct. 2009)......................................................34

*French v. Willman*,
　599 A.2d 1151 (Me. 1991)........................................................................29

*FTC v. Lights of Am., Inc.*,
　760 F. Supp. 2d 848 (C.D. Cal. 2010).....................................................42

*FTC v. Stefanchik*,
　559 F.3d 924 (9th Cir. 2009)....................................................................41

*Galaria v. Nationwide Mut. Ins. Co.*,
　998 F. Supp. 2d 646 (S.D. Ohio 2014)...................................................11

*Garrett v. RentGrow, Inc.*,
　No. 04 C 8309, 2005 WL 1563162 (N.D. Ill. July 1, 2005)..........................43

*Gen. Elec. Co. v. Lowe's Home Ctrs.*,
608 S.E.2d 636 (Ga. 2005) ........................................................................ 14, 16

*Giordano v. Wachovia Sec., LLC*,
No. 06–476, 2006 WL 2177036 (D.N.J. July 31, 2006) ................................... 12

*Goerlitz v. City of Maryville*,
333 S.W.3d 450 (Mo. 2011) (en banc) ........................................................... 35

*Goldstein v. Home Depot U.S.A., Inc.*,
609 F. Supp. 2d 1340 (N.D. Ga. 2009) ........................................................... 36

*Great–West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ....................................................................................... 35

*Green v. eBay Inc.*,
No. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015) ................................. 12

*Griglione v. Martin*,
525 N.W.2d 810 (Iowa 1994) ......................................................................... 34

*Groover v. Johnston*,
625 S.E.2d 406 (Ga. Ct. App. 2005) .............................................................. 29

*Hamilton v. Cannon*,
482 S.E.2d 370 (Ga. 1997) ............................................................................. 22

*Hansen v. Abrasive Eng'g & Mfg., Inc.*,
856 P.2d 625 (Or. 1993) ................................................................................. 34

*Harwood v. Glacier Elec. Co-op., Inc.*,
949 P.2d 651 (Mont. 1997) ............................................................................ 34

*Haskins v. Symantec Corp.*,
No. 13-cv-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ............... 44

*Henderson v. Alverson*,
123 S.E.2d 721 (Ga. 1962) ............................................................................. 37

*Horton v. HSBC Bank*,
  No. 1:11-CV-3210-TWT, 2013 WL 2452273 (N.D. Ga. June 5, 2013)
  (Thrash, J.)...................................................................................................25

*Huddle House, Inc. v. Two Views, Inc.*,
  No. 1:12-CV-03239-RWS, 2013 WL 1390611 (N.D. Ga. Apr. 4, 2013)....14, 15

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
  No. 1:13-md-2495-TWT, 2015 WL 114285 (N.D. Ga. Jan. 8, 2015)...............37

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
  No. 1:07-MD-1845-TWT, 2008 WL 2132233 (N.D. Ga. May 21, 2008).........14

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  613 F. Supp. 2d 108 (D. Me. 2009)...................................................................21

*In re Michaels Stores Pin Pad Litigation*,
  830 F. Supp. 2d 518, 531 (N.D. Ill. 2011).........................................................17

*In re Science Apps. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D. D.C. 2014) .....................................................................12

*In re Seven Springs Apartments Phase II*,
  34 B.R. 987 (N.D. Ga. 1983) ............................................................................49

*In re TJX Cos. Retail Sec. Breach Litig.*,
  564 F.3d 489 (1st Cir. 2009) .............................................................................15

*In re Zappos.com, Inc.*,
  No. 3:12-cv-00325, 2015 WL 3466943 (D. Nev. June 1, 2015) .......................11

*Jasty v. Wright Med. Tech., Inc.*,
  528 F.3d 28 (1st Cir. 2008) ...............................................................................43

*Jeter v. Credit Bureau, Inc.*,
  760 F.2d 1168 (11th Cir. 1985).....................................................................25, 30

*John Crane, Inc. v. Jones*,
  604 S.E.2d 822 (Ga. 2004).................................................................................19

*Joy v. Bell Helicopter Textron, Inc.*,
   999 F.2d 549 (D.C. Cir. 1993) ........................................................................28

*Laird v. Tatum,*
   408 U.S. 1 (1972)..............................................................................................9

*Leal v. Hobbs*,
   538 S.E.2d 89 (Ga. Ct. App. 2000) ................................................................25

*Louisiana-Pac. Corp. v. Knighton*,
   976 S.W.2d 674 (Tex. 1998)............................................................................28

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................7, 12, 13

*Magney v. Lincoln Mut. Sav. Bank*,
   659 P.2d 537 (Wash. App. 1983) ....................................................................41

*Malowney v. Fed. Collection Deposit Grp.*,
   193 F.3d 1342 (11th Cir. 1999)...................................................................36, 38

*Marion Healthcare LLC v. S. Ill. Healthcare*,
   No. 12-CV-00871-DRH-PMF, 2013 WL 451068 (S.D. Ill. Aug. 26,
   2013) ................................................................................................................33

*McCarty v. Covol Fuels No. 2, LLC*,
   978 F. Supp. 2d 799 (W.D. Ky. Oct. 16, 2013) ..............................................25

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
   775 F.3d 109 (1st Cir. 2014) ...........................................................................41

*McDonald v. Coldwell Banker*,
   543 F.3d 498 (9th Cir. 2008)............................................................................44

*McGinnis v. Am. Home Mortg. Servicing, Inc.*,
   Case No. 5:11-cv-284, 2012 WL 426022 (M.D. Ga. Feb. 9, 2012) .................31

*McLaughlin v. LVNV Funding, LLC*,
   971 F. Supp. 2d 796 (N.D. Ill. 2013)...............................................................40

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010)...........................................................................................8

*Morrison v. Allstate Indem. Co.*,
  228 F.3d 1255 (11th Cir. 2000)........................................................................7

*Newman v. J.P. Morgan Chase Bank, N.A.*,
  No. 14-2944, 2015 WL 321442 (D. Minn. Jan. 26, 2015) ...............................34

*Norman v. Jones Lang Lasalle Am., Inc.*,
  627 S.E.2d 382 (Ga. Ct. App. 2006) ...............................................................33

*Orkin Exterminating Co. v. F.T.C.*,
  849 F.2d 1354 (11th Cir. 1988).......................................................................29

*Parola v. Citibank (S. Dakota) N.A.*,
  894 F. Supp. 2d 188 (D. Conn. 2012) .............................................................43

*Pa. State Employees Credit Union v. Fifth Third Bank*,
  Civil No. 1:CV-04-1554, 2006 WL 1724574 (M.D. Pa. June 16, 2006).......6, 48

*Perea v. Walgreen Co.*,
  939 F. Supp. 2d 1026 (C.D. Cal. 2013) ...........................................................44

*Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*,
  No. 13-20803-CIV, 2013 WL 1786356 (S.D. Fla. Apr. 25, 2013)...................45

*Platt v. S. Photo Materials Co.*,
  60 S.E. 1068 (Ga. Ct. App. 1908) ...................................................................27

*Plourde Sand & Gravel Co. v. JGI E., Inc.*,
  917 A.2d 1250 (N.H. 2007) .............................................................................17

*Prohias v. Pfizer, Inc.*,
  485 F. Supp. 2d 1329 (S.D. Fla. 2007)............................................................40

*PSECU v. Fifth Third Bank*,
  398 F. Supp. 2d 317 (M.D. Pa. 2005).......................................................15, 17

*Ratliff v. McDonald*,
  756 S.E.2d 569 (Ga. Ct. App. 2014) ...............................................................23

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011)................................................................................12

*Remax The Mountain Co. v. Tabsum, Inc.*,
   634 S.E.2d 77 (Ga. Ct. App. 2008) ......................................................14, 16

*Remijas v. Neiman Marcus Grp., LLC*,
   No. 14 C 1735, 2014 WL 4627893 (N.D. Ill. Sept. 16, 2014) ..........12

*Rent Stabilization Assoc. v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993)................................................................................39

*Ridge v. Cessna Aircraft Co.*,
   117 F.3d 126 (4th Cir. 1997)........................................................................28

*Rivell v. Private Health Sys., Inc.*,
   887 F. Supp. 2d 1277 (S.D. Ga. 2012) ..................................................39

*Robins Dry Dock & Repair Co. v. Flint*,
   275 U.S. 303 (1927)..........................................................................................17

*S. Ry. Co. v. Allen*,
   77 S.E.2d 277 (Ga. Ct. App. 1953) ........................................................33

*Saunders v. Mich. Ave. Nat'l Bank*,
   278 Ill. App. 3d 307, 662 N.E.2d 602 (1996)....................................41

*Shanks v. Upjohn Co.*,
   835 P.2d 1189 (Alaska 1992)......................................................................28

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
   533 F.3d 162 (3d Cir. 2008)................................................................passim

*State v. O'Neill Investigations, Inc.*,
   609 P.2d 520 (Alaska 1980)........................................................................41

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)..............................................................................................9

*Strautins v. Trustwave Holdings, Inc.*,
   27 F. Supp. 3d 871 ..........................................................................................12

*Swoboda v. Brown*,
   196 N.E. 274 (Ohio 1935)..................................................................................28

*Tiller v. State Farm Mut. Auto. Ins. Co.*,
   549 F. App'x. 849 (11th Cir. 2013)..........................................................37, 38

*Tiller v. State Farm Mut. Auto. Ins. Co.*,
   No. 1:12–CV–3432–TWT, 2013 WL 451309 (N.D. Ga. Feb. 5, 2013) ...........37

*Trans Union Corp. v. F.T.C.*,
   245 F.3d 809 (D.C. Cir. 2001) ......................................................................33

*Turner v. S. Ry. Co.*,
   46 F.R.D. 71 (N.D. Ga. 1968) ......................................................................19

*United States v. E.I. du Pont de Nemours & Co.*,
   366 U.S. 316 (1961)......................................................................................33

*Valet Apartment Servs., Inc. v. Atlanta Journal and Constitution*,
   865 F. Supp. 828 (N.D. Ga. 1994) ................................................................25

*Warth v. Seldin*,
   422 U.S. 490 (1975)...............................................................................passim

*Weeks v. Harbor Nat. Bank*,
   388 Mass. 141, 445 N.E.2d 605 (1983).........................................................40

*Wells Fargo Bank, N.A. v. Jenkins*,
   744 S.E.2d 686 (Ga. 2013)............................................................................27

*Whitmore v. Fed. Sav. Bank of Brunswick*,
   484 S.E.2d 708 (Ga. Ct. App. 1997) .............................................................23

*Willingham v. Global Payments, Inc.*,
   No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ...............
   ...................................................................................................15, 20, 24

*Willis v. Jones*,
   81 S.E.2d 517 (Ga. Ct. App. 1954) ...............................................................28

*Worix v. MedAssets, Inc.*,
   869 F. Supp.2d 893 (N.D. Ill. 2012)................................................20

STATUTES

Alaska Stat. Ann. § 45.50.471 ........................................................42

Alaska Stat. Ann. § 45.50.531 ........................................................40

Cal. Bus. & Prof. Code § 17204 ......................................................40

Cal. Civil Code § 1798.84(b) ..........................................................40

Cal. Civil Code § 1798.80(c) ..........................................................44

Conn. Gen. Stat. § 42-110b(b) ........................................................41

Conn. Gen. Stat. § 42-110g(a)........................................................40

Fla. Stat. § 501.211 ........................................................................40

Minn. Stat. Ann. § 325E.64............................................................40, 47

O.C.G.A. § 13-6-11 ..........................................................................8

5 U.S.C. § 551(4)............................................................................32

15 U.S.C. § 45 ..........................................................................passim

15 U.S.C. § 57a(a)-(b)....................................................................32

Wash. Rev. Code Ann. §§ 19.86.090 .............................................40

Wash. Rev. Code Ann. § 19.255.020 .......................................40, 43, 46

OTHER AUTHORITIES

N.D. Ga. L.R. 5.1B ........................................................................50

N.D. Ga. L.R. 7.1D........................................................................50

Restatement (Third) of Torts........................................................27, 29

Fed. R. Civ. P. 12.................................................................................1, 6, 7, 14

S. Rep. No. 63-597 (1914) ....................................................................28

## INTRODUCTION

The Financial Institution Plaintiffs' ("Banks") Consolidated Class Action Complaint ("Complaint") is filled with rhetoric and sensational claims as well as legal conclusions couched as factual allegations. Noticeably absent is any plausible allegation of a concrete injury traceable to Home Depot U.S.A., Inc. or The Home Depot, Inc.[1] (collectively, "Home Depot") giving rise to Article III standing. No individual Bank alleges any harm that it specifically incurred as a result of the Home Depot data breach, and the majority of the types of damage the Banks seek to recover are expenses voluntarily incurred to protect against possible future harm. Under Supreme Court precedent, including *Clapper v. Amnesty International USA*, 133 S. Ct 1138 (2013), these expenses cannot confer standing.

In the Complaint, the Banks fail to acknowledge key contracts that govern the claims they assert here – such as contracts between the "Card Brands" (such as Visa and MasterCard) and the Banks and contracts between the Card Brands and Acquiring Banks – and the Card Brands' regulations, which also apply to the Banks. These contracts and regulations provide an important context, framework, and lens through which this litigation and the Banks' claims should be viewed and this Rule 12 motion evaluated. The contracts and regulations, which the Banks

---

[1] Home Depot reserves the right to move for summary judgment on the improper joinder of The Home Depot, Inc. as a defendant in this lawsuit.

voluntarily agreed to, provide specific processes for the reimbursement of certain fraud and operating expenses in the event of a data breach. In other words, the Banks seek to recover certain financial costs from Home Depot here that are also being sought from Home Depot in an ongoing "Card Brand Recovery Process" through the Card Brand contracts and their various regulations.

The Banks cannot avoid the impact of the Card Brand Recovery Process simply by failing to acknowledge it. The Banks' highly individualized claims for certain alleged losses subject to reimbursement in the Card Brand Recovery Process are not ripe for adjudication and should be dismissed. The Banks are not entitled to double recovery, and the Banks' claims here will be more clearly defined once the Card Brand Recovery Process is complete.

Even setting aside the standing and ripeness issues, the Banks' Complaint should be dismissed because the Banks have not stated a single actionable claim against Home Depot. Here, the Banks assert claims against Home Depot for negligence, negligence per se, violation of various state statutes, and declaratory and injunctive relief. But these claims all fail as a matter of law. Specifically:

- The Banks' negligence and negligence per se claims are barred by the economic loss rule;

- The Banks' negligence claim fail because Home Depot does not owe the Banks a legal duty to protect them against the alleged harm;

- None of the alleged violations of the FTC Act or the FTC's guidelines or orders supports a claim for negligence per se;

- The Banks cannot state a claim under any of the state statutes asserted; and

- The Banks' request for equitable relief fails because, among other reasons, the remedies sought are designed to protect against future harm while the Banks only claim harm from alleged prior negligent conduct.

## BACKGROUND

## I.   SUMMARY OF THE COMPLAINT'S ALLEGATIONS[2]

### A.   Payment Card Breach

As the nation's largest home-improvement retailer, Home Depot accepts a variety of different payment methods, including payment cards.  Compl. ¶¶ 84-85. The Banks allege that, in processing payment card transactions, Home Depot collects customers' names, account numbers, card security codes, card expiration dates and verification values, and PIN numbers for debit cards.  *Id.*  ¶ 88.

The Banks allege that, in or around April 2014, hackers accessed Home Depot's payment data systems using the credentials of a third-party vendor.  *Id.* ¶ 138.  The hackers then allegedly located Home Depot's self-checkout registers and installed malware on these terminals that siphoned off information when customers swiped their payment cards.  *Id.* ¶¶ 139-40.  From September 2 to

---

[2] Home Depot summarizes the Complaint's allegations because they must be taken as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Home Depot does not concede the veracity of the Complaint's allegations.

September 7, 2014, the Banks claim that the hackers attempted to sell the payment card information they allegedly stole from Home Depot on the website Rescator.cc, a foreign-based illegal online marketplace. *Id.* ¶¶ 146, 150, 152.

Home Depot allegedly first received information about unusual activity involving cards used at its stores on September 2, 2014. *Id.* ¶ 148. Home Depot publicly confirmed on September 8, 2014 that it had determined that its systems had been breached. *Id.* ¶ 154. The first Bank class action was filed eight days later.

### B.    The Banks' Alleged Injuries

No Bank has identified any specific loss or injury, and the vast majority of the general categories of losses alleged were – by the Banks' own admission – incurred by them when "taking steps to prevent future fraud." *Id*. ¶ 186. The Banks claim that they were forced to "cancel and reissue payment cards," "change or close accounts," "notify customers that their cards were compromised," "investigate claims of fraudulent activity," "increase fraud monitoring on potentially impacted accounts," "tak[e] steps to prevent future fraud," and "take other steps to protect themselves and their customers." *Id.* ¶¶ 186-87.

The Banks also allege that they incurred losses associated with refunding fraud charges and lost interest and transaction fees due to supposed reduced card

usage. *Id.* ¶ 187. The Banks claim they were further injured when "debit and credit cards belonging to class members and the Financial Institution Plaintiffs – as well as the account numbers on the face of the cards – were devalued." *Id.* The Banks do not allege, nor could they, that they have participated in the Card Brand Recovery Process to its conclusion and emerged with unreimbursed losses.

## II.   OVERVIEW OF THE CARD BRAND NETWORKS

The Banks provide only a limited explanation of payment card transactions in the Complaint. *See, e.g.*, Compl. ¶¶ 86-87. Additional background is necessary to understand the relationship between the Card Brands and the Banks in connection with the data breach. In basic terms, financial institutions that issue payment cards, such as the Banks here (often referred to as "Issuers"), do so pursuant to contracts with the Card Brands; the Card Brands contract with other financial institutions that facilitate payment card transactions ("Acquirers"); and the Acquirers contract with merchants, such as Home Depot, that accept payment cards from their customers to pay for transactions. *See Cumis Ins. Soc'y Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 40 n.6-9, 42 (Mass. 2009); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 164-65 (3d Cir. 2008).

The Card Brands have extensive regulations, which are incorporated into contracts executed with Issuers and Acquirers referred to as the Issuing Bank

Agreement and Acquiring Bank Agreement, respectively. *See* Compl. ¶¶ 93, 169; *Sovereign Bank*, 533 F.3d at 165; *Cumis*, 918 N.E.2d at 39-40, n.8-9, 42. Moreover, Acquirers must incorporate the Card Brands' regulations into their contracts with Merchants (the "Merchant Agreement"). *See id.*

The operative regulations expressly contemplate that events may occur that compromise payment card data. These regulations include procedures for Issuers to be reimbursed for certain overhead expenses and fraudulent charges arising from such events – i.e., the Card Brand Recovery Process. *See, e.g.*, *Pa. State Employees Credit Union v. Fifth Third Bank*, Civil No. 1:CV-04-1554, 2006 WL 1724574, at *4-*5 (M.D. Penn. June 16, 2006) (hereinafter "*PSECU*"). As part of this process, the Card Brands undertake to (1) determine whether a compromise event occurred and the financial scope of its impact; (2) impose assessments upon the responsible Acquirer; and (3) reimburse the Issuer for certain operating expenses and fraud losses. *Id.* at *5. The Acquirer, in turn, may attempt to seek indemnification from the Merchant under the Merchant Agreement.

## LEGAL STANDARD

Home Depot moves to dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Although the Court should take the Complaint's allegations as true in

reviewing such motions, it need not accept legal conclusions as true.  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Plaintiffs bear the burden of proving that subject-matter jurisdiction exists. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000).  That burden includes pleading sufficient factual information to support a finding of Article III standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Under Rule 12(b)(6), a court should dismiss a case if a plaintiff fails to plead sufficient allegations "to raise [his] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Claims have "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## ARGUMENT AND CITATION TO AUTHORITIES

## I.  THE BANKS LACK ARTICLE III STANDING.

Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "A federal court's jurisdiction therefore can be invoked only

when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Id.* at 499 (internal quotation marks and citation omitted). Not just any financial loss or injury will suffice to confer standing. Rather, to satisfy Article III, an injury must be "fairly traceable to the challenged action." *Clapper*, 133 S. Ct at 1147 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)).

No Bank has alleged any injury – specific to it – fairly traceable to Home Depot. Moreover, many of the general categories of injuries that the Banks identify, such as operating expenses voluntarily incurred to protect against a threat of future harm (e.g., card reissuance and enhanced fraud monitoring) and lost value to account numbers and cards, are insufficient to confer standing.[3]

## A.    No Bank Has Identified a "Concrete, Particularized" Injury.

None of the Banks has sufficiently pled injury-in-fact, and, for this reason alone, the Complaint should be dismissed. In paragraphs 12-79 of the Complaint, the Banks assert nothing but the name and headquarters of each Bank.

_____

[3] The Banks' suit lacks standing and is premature at best. Thus, their assertion that Home Depot "has been stubbornly litigious, and caused unnecessary trouble and expense" is particularly unfounded. *See* Compl., Prayer for Relief. O.C.G.A. § 13-6-11 permits recovery only if there is "'no bona fide controversy or dispute regarding liability for the underlying cause of action.'" *APAC-Se., Inc. v. Coastal Caisson Corp.*, 514 F. Supp. 2d 1373, 1382 (N.D. Ga. 2007) (internal citation omitted). The Banks' claim that there is not a bona fide controversy here is disingenuous, and their allegations under O.C.G.A. § 13-6-11 should be struck.

Accordingly, they have not established that any Bank has standing to bring the claims asserted. "Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a plaintiff's – or, in this case, the class plaintiffs' – claim[.]" *Centr. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). And when the court lacks jurisdiction, its only function is to dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Although eight months have passed since the first complaint was filed, none of the Banks has identified a specific loss. Rather, they all vaguely allege that they have suffered the same general categories of injuries. Compl. ¶¶ 187, 221. Bringing a class action does not abrogate the individualized standing requirement. *See Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339, n.6 (11th Cir. 2000); *Laird v. Tatum,* 408 U.S. 1, 14 n.7 (1972) (litigant may not seek redress for injuries done to others). Rather, "a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Conn. v. Health Net, Inc.*, 383 F.3d 1258, 1261 (11th Cir. 2004) (quoting *Warth*, 422 U.S. at 499). Because they fail to identify any specific injuries that they have suffered and cannot rely on alleged injuries suffered by absent class

members, the Banks do not have standing to bring the claims alleged.  *See Warth*, 422 U.S. at 501 ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

## B.     Expenses Voluntarily Incurred to Protect Against Possible Future Harm Do Not Confer Standing.

In *Clapper*, the Supreme Court rejected the notion that parties have standing when they "take costly and burdensome measures to protect" against potential future harm.  *Clapper*, 133 S. Ct. at 1151.  The Supreme Court specifically rejected the Second Circuit's position that "plaintiffs have established that they suffered *present* injuries in fact . . . stemming from a reasonable fear of *future* harmful government conduct."  *Id.*  After *Clapper*, it is clear that alleged losses, no matter how reasonable, are not "fairly traceable" to a defendant's actions if willingly incurred to protect against a possibility of future harm.  *Id.* at 1152-53.  The Banks "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Id.* at 1151.  "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear."  *Id.*

The vast majority of expenses the Banks seek to recover from Home Depot were willingly incurred to protect against hypothetical future harm.  The Banks

10

claim to have incurred costs for canceling and reissuing payment cards (including cards that had not incurred fraud charges), changing or closing accounts, notifying customers, investigating potentially fraudulent activity, and increasing fraud monitoring "on potentially impacted accounts." Compl. ¶¶ 4, 187, 214, 221. These are all operating expenses that the Banks made a business decision to incur to protect against "a fear of hypothetical future harm;" as such, they "are not fairly traceable" to any Home Depot actions. *See Clapper*, 133 S. Ct. at 1151. Many of these expenses, such as reissuing cards that had not incurred fraud charges, would have been sustained in any event; the timing of the costs simply may have changed due to the Banks' decisions to reissue now instead of during the normal course of their business.

Any expenses that the Banks chose to incur to protect against hypothetical future harm are no different than losses consumers incurred for the same purpose – and courts have overwhelmingly agreed that those are insufficient to confer standing. *See, e.g.*, *In re Zappos.com, Inc.*, No. 3:12-cv-00325, 2015 WL 3466943, at *10 (D. Nev. June 1, 2015) ("[C]osts incurred to prevent future harm is not enough to confer standing . . . 'even when such efforts are sensible'"); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 658 (S.D. Ohio 2014) (Plaintiffs "cannot create standing by choosing to make expenditures in order to

mitigate a purely speculative harm"); *accord Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876 n.9 (N.D. Ill. 2014); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011); *Green v. eBay Inc.*, No. 14-1688, 2015 WL 2066531, at *5 (E.D. La. May 4, 2015); *In re Science Apps. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014); *Remijas v. Neiman Marcus Grp., LLC*, No. 14 C 1735, 2014 WL 4627893, at *4 (N.D. Ill. Sept. 16, 2014); *Brit Ins. Holdings N.V. v. Krantz*, No. 1:11 CV 948, 2012 WL 28342, at *9 (N.D. Ohio Jan. 5, 2012); and *Giordano v. Wachovia Sec., LLC*, No. 06–476, 2006 WL 2177036, at *4 (D.N.J. July 31, 2006).

Like consumer plaintiffs, the Banks here cannot recover amounts spent for card reissuance, fraud monitoring, or other similar actions to protect against possible future harm. There is no justifiable basis for making a distinction. This is particularly so given that the Banks – financial institutions with billions of dollars in assets – already have a negotiated mechanism for making such claims through the Card Brand Recovery Process.

## C. Claims Based on Lost Value to Account Numbers Fail to Satisfy Article III's Requirement of Injury-In-Fact.

Article III's basic standing requirements include allegations by the Banks that they "have suffered an 'injury in fact' that is . . . concrete and particularized." *Lujan*, 504 U.S. at 560. A purported devaluation to debit and credit cards "as well

as the account numbers on the face of the cards" (Compl. ¶¶ 187, 214, 221) is far from a "concrete and particularized" injury. *Lujan*, 504 U.S. at 560.

The Complaint does not explain how debit and credit cards or their account numbers could ever have value to the Banks, much less how that supposed value could be monetized such that a reduction in value would actually result in a concrete injury to the Banks. Such "conclusory averments of standing" do not suffice. *Anderson v. City of Alpharetta*, 770 F.2d 1575, 1579 (11th Cir. 1985). And to the extent that the value was lost as a result of the cards being destroyed, as discussed above, that was a result of voluntary actions taken by the Banks. This alleged "injury" therefore falls far short of conferring standing on the Banks.

## II. THE BANKS' NEGLIGENCE CLAIMS FAIL.

Even if the Banks had Article III standing, which they do not, their negligence-based claims are barred as a matter of law. Specifically, the Banks' claims for negligence and negligence per se are barred by the economic loss rule ("ELR"). In addition, the Banks' negligence claim fails because Home Depot does not owe the Banks any duty of care. Finally, the Banks' negligence per se claim fails because, among other reasons, Section 5 of the FTC Act does not articulate a sufficiently concrete duty or standard of care, and the Banks do not fall within the class of individuals that Section 5 was intended to protect.

**A.    The ELR Bars the Banks' Claims for Negligence and Negligence Per Se.**

1.    The Banks' Claims Fail Because They Seek to Recover for Purely Economic Losses.

Under the ELR, there is no recovery in tort for economic losses unless they result from injury to person or property. *See Gen. Elec. Co. v. Lowe's Home Ctrs.*, 608 S.E.2d 636, 637 (Ga. 2005) (economic losses are recoverable in tort only if those losses "result[] from injury to his person or damage to his property"); *Remax The Mountain Co. v. Tabsum, Inc.*, 634 S.E.2d 77, 79 (Ga. Ct. App. 2008) (same); *Huddle House, Inc. v. Two Views, Inc.*, No. 1:12-CV-03239-RWS, 2013 WL 1390611, at *4 (N.D. Ga. Apr. 4, 2013) (same).[4]    The Banks' negligence claims should be dismissed because they do not allege personal injury, and none of their purported harm constitutes property damage.

Under Georgia law, "damage to property that is actionable in tort despite the economic loss rule is that which arises from accident or *other physical injury*."

---

[4] The Banks' negligence-based claims fail regardless of which state's law applies. Home Depot's Motion to Dismiss focuses on Georgia law because the Banks allege it controls and because at the Rule 12 stage, the Court is not required to conduct a rigorous choice of law analysis. *See In re ConAgra Peanut Butter Prods. Liab. Litig.*, No. 1:07-MD-1845-TWT, 2008 WL 2132233, at *1 (N.D. Ga. May 21, 2008) (Thrash, J).    However, Home Depot does not concede that the Banks' common law claims are governed exclusively by Georgia law and reserves its right to challenge choice of law at a later point. *See* Exhibit A.

*Huddle House, Inc.*, 2013 WL 1390611, at *5 (emphasis added).  The Banks do not allege damages arising from accident or other physical injury.  The damages they claim to have incurred flow from intentional criminal conduct and steps the Banks took to mitigate the risk of possible future harm.  *See, e.g.*, Compl. ¶¶ 1, 186.

Courts have soundly rejected the idea that damages flowing from the compromise of payment card information constitute property damage as required to avoid the ELR.  *See Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (report and recommendation) (courts "have dismissed negligence claims [in data breach litigation] based on the . . . [ELR] where the plaintiff has not suffered personal injury or property damage").  One court "disagree[d]" with the financial institution plaintiffs' argument that the ELR did not apply because the hacked retailer "cause[d] property damage to the cards that had to be replaced."  *PSECU v. Fifth Third Bank*, 398 F. Supp. 2d 317, 330 (M.D. Pa. 2005).  The court held that "the costs of replacing the cards [] are economic losses," not property damage, and dismissed the financial institutions' negligence claims.  *Id.*; *see also In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009) (dismissing negligence claim under Massachusetts's ELR because plaintiff did not allege "physical destruction of property"); *Sovereign Bank*, 533 F.3d at 176 (money allegedly lost

by issuing bank not property damage for purposes of Pennsylvania's ELR). The reasoning of these courts is sound, and this Court should reach the same conclusion.

The lack of direct contractual privity between the Banks does not preclude application of the ELR. Indeed, under Georgia law, direct contractual privity is not a prerequisite to the rule's application. *See Carolina Cas. Ins. Co. v. R.L. Brown & Assocs., Inc.*, No. 1:04-CV-3537, 2006 WL 3625891, at *5 (N.D. Ga. Dec. 11, 2006) ("The economic loss rule thus bars a plaintiff from recovering in tort where ***the party is not in privity with the defendant*** and the plaintiff's damages are purely economic.") (emphasis added).

In its *General Electric* opinion, for instance, the Georgia Supreme Court held that the ELR precluded Lowe's from recovering for lost profits allegedly caused by pollution from a nearby General Electric facility despite no suggestion that a contract existed between the parties. *Gen. Elec. Co.*, 608 S.E.2d at 638-39. *General Electric* is not an aberration but is consistent with a long line of Georgia authority. *See City of Atlanta v. Benator*, 714 S.E.2d 109, 116 (Ga. Ct. App. 2011) (affirming dismissal under the ELR despite lack of privity); *Remax The Mountain Co.*, 634 S.E.2d at 79 (same); *Adventure Outdoors, Inc. v. Bloomberg*, 519 F.

Supp. 2d 1258, 1275 (N.D. Ga. 2007) *rev'd on other grounds*, 552 F.3d 1290 (11th Cir. 2008) (same).

Courts applying other states' laws in data breach litigation have likewise held that contractual privity is not required under the ELR. In *In re Michaels Stores Pin Pad Litigation*, the court held that Illinois's ELR barred plaintiffs' claims for negligence and negligence per se despite any suggestion of contractual privity. 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011); *see also Sovereign Bank*, 533 F.3d at 180 (rejecting argument that the ELR did not apply because of a lack of contractual privity); *PSECU*, 398 F. Supp. 2d at 329-30 (same). These courts' holdings are consistent with a long line of authority from the U.S. Supreme Court and other courts holding that contractual privity is not a prerequisite to the ELR's application. *See, e.g.*, *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308-09 (1927) (applying the ELR despite the absence of direct contractual privity); *Plourde Sand & Gravel Co. v. JGI E., Inc.*, 917 A.2d 1250, 1254 (N.H. 2007) (same).

The Banks' claims here are the precise claims the ELR seeks to prohibit. A core rationale underlying the ELR is preventing parties that have bargained for an allocation of risks and rewards from evading that agreement by suing in tort. *See, e.g.*, *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842, 846 (Wisc.

17

1998) (one goal of the ELR is to "to protect commercial parties' freedom to allocate economic risk by contract"). This underpinning of the ELR applies with the same force when commercial parties have the opportunity to bargain for an allocation of risks or have entered into a chain of contracts similar to those involving the Card Brands, even if the parties are not in direct privity.

"[I]n a commercial context parties are expected to allocate the risk of loss through their contract, not supplement the contract with a tort remedy." *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 442 F. Supp. 2d 206, 213 (M.D. Pa. 2006). In that data breach litigation, the court held that the ELR barred plaintiffs' negligence claim, despite no contractual privity, because they had the opportunity to allocate the risk of fraudulent transactions. *See id.* Likewise, a payment system's "chain of contracts" supports application of the ELR to bar negligence claims. *See Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 504 (Iowa 2011) ("When parties enter into a chain of contracts, even if the two parties at issue have not actually entered into an agreement with each other, courts have applied the 'contractual economic loss rule' to bar tort claims for economic loss, on the theory that tort law should not supplant a consensual network of contracts.").

In addition to being required by black letter Georgia law, the Court should apply the ELR here because it would serve the ELR's underlying goals by holding

the Banks to their bargained for allocation of risk. As discussed above, the Banks are sophisticated commercial entities that voluntarily contracted with the Card Brands regarding these risks and determined what kinds of contractual recovery they could seek. The Banks consented to be bound by an "extensive set of 'Operating Regulations'" that govern "virtually every aspect of the . . . payment system, and impose both general and specific requirements on participants in the network." *Sovereign Bank*, 533 F.3d at 165 (internal citation omitted); *Cumis Ins. Soc'y Inc.*, 918 N.E.2d at 42 (Card Brands have "extensive" regulations). These policies expressly contemplate data breaches and, in fact, provide a procedure for the Banks to recover certain losses, if any. Accordingly, the Banks' negligence-based claims are barred by Georgia's ELR as well as the ELR as applied in a majority of the other state laws implicated here.[5]

### B. The Banks Fail to State a Claim for Negligence.

To state a claim for negligence, the Banks must allege (1) a duty flowing from Home Depot to the Banks; (2) a negligent act or omission by Home Depot; (3) injury to the Banks; and (4) a proximate relationship between the negligent act or omission and the resulting injury to the Banks. *See Turner v. S. Ry. Co.*, 46 F.R.D. 71, 73 (N.D. Ga. 1968); *John Crane, Inc. v. Jones*, 604 S.E.2d 822, 825

---

[5] *See* Exhibit A.

(Ga. 2004). The Banks' negligence claim must be dismissed because they fail to plausibly allege that Home Depot owed them any duty of care.

1.  There is No Common Law Duty to Protect the Banks from a Criminal Intrusion Perpetrated by a Third Party.

The Banks claim that Home Depot had a common law duty to "use reasonable measures to protect its customers' personal and financial information from hackers who perpetrated the 2014 data breach . . . ." Compl. ¶ 211. There is no common law duty to safeguard personal information under Georgia law. *See Willingham*, 2013 WL 440702, at *18 (credit card processor did not owe consumers a duty of care to protect them from data breaches). Courts applying other state's laws have reached the same result. *See, e.g.*, *Worix v. MedAssets, Inc.*, 869 F. Supp.2d 893, 897 (N.D. Ill. 2012) (no common law duty to safeguard sensitive information); *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, No. 12-1169, 2014 WL 2738220, at *2 (E.D. Pa. June 17, 2014) (no common law duty "to properly secure and to protect customers' personal banking information and other information" or "to implement procedures and practices to prevent access and/or have in place appropriate data privacy and security safeguards to prevent

disclosure to unauthorized third parties").[6]  Similarly, there is no common law duty

to provide notice of a data breach.  *See In re Hannaford Bros. Co. Customer Data*

*Sec. Breach Litig.*, 613 F. Supp. 2d 108, 124 (D. Me. 2009) (no common law duty

to "advise customers of the theft of their data once it occurred. . . ."); *Amburgy v.*

*Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (no negligence

claim exists for the failure to provide adequate and timely notice of a data breach).

The Banks' contention that the common law requires Home Depot to

safeguard and protect its customers' financial and personal information against

criminal attacks also contravenes established Georgia law that, as a general rule,

there is no legal duty to anticipate criminal acts of third parties or to control the

conduct of those third parties.  *See Edmunds v. Cowan*, 386 S.E.2d 39, 41 (Ga. Ct.

App. 1989) ("[O]ne is not generally required to anticipate criminal acts"); *see also*

*BancFirst v. Dixie Restaurants, Inc.*, No. CIV-11-174, 2012 WL 12879, at *4

(W.D. Okla. Jan. 4, 2012) (merchant owed no duty of care to issuing bank for harm

arising from criminal conduct of third party).

---

[6] The District of Minnesota's recent decision in *In re Target Corp. Customer Data*
*Security Breach Litigation* is an outlier among the majority of courts to consider
this issue.

2. <u>Home Depot Had No Special Relationship with the Banks and Thus Had No Duty to Protect the Banks from the Data Breach.</u>

There are no plausible allegations that support that a special relationship existed between the Banks and Home Depot whereby Home Depot owed the Banks a duty to protect them against third-party criminal conduct. No Georgia case law acknowledges a special relationship between merchants and issuing banks in a data breach scenario. In those cases where Georgia courts have found that a special relationship exists for purposes of establishing a negligence duty, the facts are readily distinguishable from those alleged here. *See, e.g.*, *Hamilton v. Cannon,* 482 S.E.2d 370, 375 (Ga. 1997) (special relationship existed between plaintiff and police officer who voluntarily assumed duty to act for plaintiff's protection at emergency scene); *Assoc. Health Sys., Inc. v. Jones*, 366 S.E.2d 147, 151 (Ga. Ct. App. 1998) (nursing home had special relationship with residents imposing duty upon it to protect them from unreasonable risk of harm and to supervise any known resident whose propensity to cause harm is known or should be known to management).

None of the conclusory allegations in the Complaint supports extending this special relationship case law under the alleged facts here. The Banks' allegation that they "entrusted" Home Depot with customer PII from the payment cards they issued rings hollow because it was Home Depot's customers, not the Banks, who

22

provided Home Depot with the payment card information in question. Compl. ¶ 208. Likewise, the Banks' allegation that only Home Depot was in a position to protect the Banks fails because the Banks voluntarily decided to join the Card Brand network and accepted the risks expressly contemplated in the Card Brand regulations. *Id.* Home Depot had no relationship with the Banks whatsoever. Indeed, Home Depot and the Banks were not even in an arm's length commercial relationship – their dealings were much further removed than that.

Even in cases where there is a direct relationship between the parties, a duty may arise only when the risk of third party criminal activity is foreseeable, and the defendant has superior knowledge that the criminal activity might occur. *See Whitmore v. Fed. Sav. Bank of Brunswick*, 484 S.E.2d 708, 711 (Ga. Ct. App. 1997) (existence of duty depends on foreseeability and superior knowledge of risk); *Ratliff v. McDonald*, 756 S.E.2d 569, 576 (Ga. Ct. App. 2014) ("true ground of liability" is superior knowledge of an unreasonable risk of harm). It is neither alleged nor plausible that Home Depot, as a merchant, had any greater knowledge of the risk of a data breach than the Banks did.[7]

---

[7] Indeed, the Banks are just as likely as Merchants to be subject to data breaches, as occurred with the JP Morgan data breach. *See* http:// www. usnews.com/news/articles/2014/10/03/jpmorgan-hack-hits-76-million-homes.

There is no common-law tort duty where the class of plaintiffs that the duty would protect (here, the Banks) have elected to accept the risk in question and have the ability to address that risk (in this instance, through the Card Brand Recovery Process). Given the parties' equal knowledge of the risk, as well as the Banks' ability to mitigate the risk by allocating remedies through the Card Brand Recovery Process, the Banks have no sound reason to ask this Court to create a common-law duty on the part of merchants like Home Depot.

### 3. Home Depot Owed the Banks No Duty Based on Industry Standards (e.g., PCI-DSS).

The Banks argue Home Depot owed a duty to them "because it is bound by" industry standards like PCI-DSS. *See* Compl. ¶ 210. There is no support for this argument. *See Willingham*, 2013 WL 440702, at *19. In *Willingham*, the court refused to find that "commercial standards or general industry standards such as PCI-DSS" could "create a legal duty running from" a payment processor to a card holder to safeguard their PII. *Id.* at *19. The same result should follow here because Home Depot's relationship to the Banks is even more attenuated.

The Banks' allegation that Home Depot "specifically assumed the duty to comply with industry standards, including PCI-DSS[,]" by way of certain language in its internal policies and procedures, is also without merit. *See* Compl. ¶ 207. A company's adoption of an internal guideline or policy and subsequent procedure to

24

follow that guideline does not create a duty. *See, e.g.*, *Leal v. Hobbs*, 538 S.E.2d 89, 92 (Ga. Ct. App. 2000) ("We find no authority for the proposition that violation of an internal policy can constitute negligence per se."); *McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799, 812-13 (W.D. Ky. Oct. 16, 2013) (defendant did not assume duty of care by establishing internal policies and procedures and allegedly failing to follow them); *Boutilier ex rel. Boutilier v. Chrysler Ins. Co.*, No. 8:99-CV-2270T26MAP, 2001 WL 220159, at *1 (M.D. Fla. Jan. 31, 2001) (adoption of internal corporate policy does not create a legal duty or cause of action for violation of the policy).

### 4. The FTC Act Cannot Form the Basis of the Banks' Common Law Negligence Claim.

There is no private right of action under Section 5 of the FTC Act. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 (11th Cir. 1985); *Horton v. HSBC Bank*, No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *9 (N.D. Ga. June 5, 2013) (dismissing plaintiffs' FTC Act Claim) (Thrash, J.); *Valet Apartment Servs., Inc. v. Atlanta Journal and Constitution*, 865 F. Supp. 828, 833 (N.D. Ga. 1994).

Yet, the Banks attempt to make an end-run around their lack of standing to pursue an FTC Act claim by arguing that the statute imposes on Home Depot a "duty to use reasonable care in protecting their customers' PII" that gives rise to their negligence claim. Compl. ¶ 210. Not a single case has recognized a common

law negligence claim based on "breach" of a defendant's duty to comply with the FTC Act, or held that "FTC publications and data breach security orders" may give rise to a duty between parties in no way connected to such orders. *Id.* at 209. The Court should not create a cause of action where Congress declined to do so, and the Banks' negligence claim, accordingly, should be dismissed.[8]

## C.    The Banks' Negligence Per Se Claim Fails.

The Banks base their claim for negligence per se on alleged violations of Section 5 of the FTC Act, industry standards, and unspecified FTC guidelines and orders. *See* Compl. ¶¶ 216-22. The Court should dismiss this claim because none of these allegations supports a cause of action for negligence per se.

### 1.    Section 5 of the FTC Act Does Not Support a Claim for Negligence Per Se.

#### a.    *Section 5 does not impose a clear and concrete duty or standard of conduct.*

The Banks claim that Home Depot violated the prohibition on "unfair . . . practices in or affecting commerce" in Section 5 of the FTC Act, 15 U.S.C. § 45, and thus is liable for negligence per se. There is not a single decision of record in which a court has held that a violation of Section 5's "unfair practices" prong

---

[8] Even if the FTC Act imposed a common law or statutory duty to act in accordance with its provisions, a breach of that duty must be analyzed under a claim for negligence per se, not negligence. As discussed *infra* Section III.C, the FTC Act fails to support Plaintiffs' negligence per se claim.

provides the basis for a negligence per se claim. Square pegs do not fit in round holes, and a violation of Section 5's unfair practices prong does not give rise to a claim for negligence per se.

Negligence per se is grounded in institutional comity: Where the legislature has determined that particular acts are unlawful, the "judgment of the legislature, as the authoritative representative of the community, takes precedence" over the determinations of individual juries. Restatement (Third) of Torts: Phys. & Emot. Harm § 14, cmt (c) (2010). Likewise, negligence per se promotes efficiency by eliminating the need for juries to deliberate repeatedly the propriety of "recurring conduct," which provides clarity as to the status of the law. *Id.* But where "duties remain undefined or defined only in abstract general terms a breach is not properly denominated negligence per se." *Platt v. S. Photo Materials Co.*, 60 S.E. 1068, 1070 (Ga. Ct. App. 1908).

For a statute or ordinance to give rise to a claim for negligence per se in Georgia (and in most, if not all, jurisdictions throughout the country), there must be a "concrete wrong" that is "expressly prohibited by law or ordinance." *Id.* That is, there must be "the alleged breach of a legal duty with some ascertainable standard of conduct." *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013). *See also A.F. King & Son v. Simmons*, 131 S.E.2d 214, 219 (Ga. Ct.

27

App. 1963) (statute requiring the exercise of "ordinary care" too vague and abstract to support a negligence per se claim); *Brock v. Avery Co., Inc.*, 110 S.E.2d 122, 126 (Ga. Ct. App. 1959) (violation of statute "would not constitute negligence per se as it is too indefinite for enforcement . . ."); *Willis v. Jones*, 81 S.E.2d 517, 519 (Ga. Ct. App. 1954) (jury charge of negligence per se inappropriate where the statute barred operating a vehicle at a speed that is "greater than is reasonable and safe").[9]

Section 5's unfair practices prong falls far short of establishing a concrete wrong or an ascertainable standard of conduct. Indeed, the statute's prohibition is vague and amorphous by design. Congress "intentionally left the term 'unfair' to the [Federal Trade] Commission rather than attempting to define" any specific practices. *See Atl. Ref. Co. v. F.T.C.*, 381 U.S. 357, 367 (1965) (quoting S. Rep. No. 63-597 at 13 (1914)); *Am. Fin. Sers. Ass'n v. F.T.C.*, 767 F.2d 957, 969 (D.C.

---

[9] Courts outside of Georgia have also refused to recognize claims for negligence per se based on amorphous or general statutory language. *See, e.g., Swoboda v. Brown*, 196 N.E. 274, 279 (Ohio 1935) ("[W]here the duty is defined "only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence per se has no application."); *accord Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 131 (4th Cir. 1997); *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 558 (D.C. Cir. 1993); *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1201 (Alaska 1992); *Louisiana-Pac. Corp. v. Knighton*, 976 S.W.2d 674, 675 (Tex. 1998).

Cir. 1985) (Congress "expressly declined to delineate" the "particular acts or practices" deemed unfair). "The Supreme Court has, on more than one occasion, recognized that the standard of unfairness is by necessity, an elusive one, which defies such a limitation." *Orkin Exterminating Co. v. F.T.C.*, 849 F.2d 1354, 1367 (11th Cir. 1988) (internal quotation marks and citations omitted); *accord F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965). Because Section 5's unfair practices prong is intentionally vague and amorphous, it does not delineate the requisite "concrete wrong" sufficient to support a claim for negligence per se.[10]

    b.    *The Banks Do Not Fall Within the Class of Persons Congress Intended to Protect Under the "Unfair Practices" Prong of the FTC Act.*

A universal element of a negligence per se claim is that the Banks "fall[] within the class of persons the legislation was intended to protect . . . ." *Groover v. Johnston*, 625 S.E.2d 406, 408 (Ga. Ct. App. 2005); *Brown v. Belinfante*, 557 S.E.2d 399, 403 (Ga. Ct. App. 2001); Restatement (Third) of Torts: Phys. & Emot. Harm § 14 ("An actor is negligent if, without excuse, the actor violates a statute

---

[10] Negligence per se is not recognized as a separate cause of action under the laws of California, Illinois, Maine, Michigan, and Washington. *See E.J. v. United States*, No. 13-cv-01923, 2013 WL 6072867, at *3 (N.D. Cal. Nov. 14, 2013); *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, No. 83 C 0536, 1984 WL 454, at *2 (N.D. Ill. Apr. 11, 1984); *French v. Willman*, 599 A.2d 1151, 1152 (Me. 1991); *Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1345 (W.D. Mich. 2011); *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 799 P.2d 250, 262 n.13 (Wash. 1990) (en banc).

that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect."). The FTC Act, as originally enacted, did not proscribe "unfair practices," only "unfair methods of competition." The "unfair . . . practice" prong the Banks seek to travel under here was added through amendment in 1938 which "made it clear that Congress, through § 5, charged the FTC with protecting consumers as well as competitors." *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972); *Jeter*, 760 F.2d at 1172 ("The FTC Act was enacted to protect unsophisticated consumers, not only 'reasonable consumers' who could otherwise protect themselves in the market place.").

The Banks are neither consumers nor competitors of Home Depot but instead sophisticated financial institutions. The Banks suggest that the Court should allow them to stand in the shoes of consumers because they "bear primary responsibility for reimbursing consumers for fraud losses." Compl. ¶ 219. There is no support for this proposition, and the Banks' suggestion that their interests are aligned with those of the consumers is belied by the fact that the two classes of plaintiffs are represented separately. Tellingly, the Banks do not allege that any recovery would be remitted to consumers, and the Banks all but disclaim that consumers have been harmed at all. *See* Compl. ¶ 186. Because the Banks are not

members of the class of individuals the unfair practices prong of the FTC Act was

designed to protect, the Banks' claim for negligence per se fails as a matter of law.

> 2. FTC Guidelines and Orders Do Not Carry the Force of Law and
> Fail to Support a Claim for Negligence Per Se.

The Banks' negligence per se claim likewise fails to the extent premised on

unidentified FTC guidelines and orders. Compl. ¶ 216. The Banks' burden of

establishing a plausible claim for relief requires them to identify the specific

guidelines and orders that they claim give rise to negligence per se liability. The

Banks fail to identify a *single* order Home Depot allegedly violated or any specific

guideline or order that establishes a duty of care. Throughout the Complaint, the

Banks do no more than reference general "guidelines" recommending that

businesses establish "reasonable data security practices" and "recommendations,"

such as the admonition that businesses should "protect the personal customer

information that they keep." Compl. ¶ 180. Nothing alleged approaches the type

of specific legislative duty necessary to support a negligence per se claim.[11]

---

[11] As a basic matter of pleading, the Banks' negligence per se claim fails to the
extent it is based on unidentified "similar statutes." Compl. ¶¶ 216-22. *See
McGinnis v. Am. Home Mortg. Servicing, Inc.*, Case No. 5:11-cv-284, 2012 WL
426022, at *7 (M.D. Ga. Feb. 9, 2012) (dismissing negligence per se claim based
on RESPA violation because the "allegation for a cause of action, by itself, is too
vague to provide the Court with any indication of what specific sections of RESPA
were violated"). Even if the Banks had identified a particular statute, it would not
save their claim. For the reasons set forth above, statutes with similarly amorphous

Moreover, neither FTC guidelines nor orders constitute legislative pronouncements carrying the force of law sufficient to serve as the basis for a negligence per se claim. Agency documents "designed to implement, interpret, or prescribe law" are considered to be "rules" under the Administrative Procedure Act. 5 U.S.C. § 551(4); *accord Chamber of Commerce v. United States Dep't of Labor*, 174 F.3d 206, 211-12 (D.C. Cir. 1999) (describing a rule as an agency pronouncement that "has a substantial impact upon private parties and puts a stamp of agency approval or disapproval on a given type of behavior") (internal quotation omitted). And "rules which define with specificity acts or practices which are unfair or deceptive acts or practices" can be promulgated by the FTC only pursuant to the procedural requirements of Section 18(b) of the FTC Act. 15 U.S.C. § 57a(a)-(b). The Banks fail to allege that any of the unspecified "guidelines" Home Depot allegedly violated have been promulgated pursuant to Section 18(b) of the FTC Act such that they are accorded the weight of law.

Likewise, FTC consent orders fail to establish a statutory duty for purposes of a negligence per se claim because, as the Supreme Court has explained, "[t]he circumstances surrounding . . . negotiated [consent] agreements are so different

---

prohibitions as Section 5 of the FTC Act are inadequate for purposes of a negligence per se claim.

that they cannot be persuasively cited in a litigation context."  *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 330 n.12 (1961); *see also Beatrice Foods Co. v. F.T.C.*,  540 F.2d 303, 312 (7th Cir. 1976) ("The entering of a consent decree, . . ., is not a decision on the merits and therefore does not adjudicate the legality of any action by a party thereto.  Nor is a consent decree a controlling precedent for later Commission action."); *Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 816-17 (D.C. Cir. 2001); *Marion Healthcare LLC v. S. Ill. Healthcare*, No. 12-CV-00871-DRH-PMF, 2013 WL 451068, at *10 n.3 (S.D. Ill. Aug. 26, 2013).

### 3.    Industry Standards Cannot Support a Negligence Per Se Claim.

The Banks' claim for negligence per se also fails to the extent it is based on an alleged violation of "applicable industry standards, including PCI-DSS." Compl. ¶ 217. Under Georgia law, a claim for negligence per se must be based upon a law – i.e., a statute or regulation – not privately created standards or industry norms.  *Norman v. Jones Lang Lasalle Am., Inc.*, 627 S.E.2d 382, 387 (Ga. Ct. App. 2006) ("[G]enerally, negligence *per se* arises when a statute or ordinance is violated.").   A violation of private rules does not give rise to a negligence per se claim.  *S. Ry. Co. v. Allen*, 77 S.E.2d 277, 286 (Ga. Ct. App. 1953).  No court – applying Georgia law or any other state's law – has ever held that a violation of PCI-DSS gives rise to a claim for negligence per se.

33

Moreover, courts across the country are in accord that the violation of industry standards or similar private rules fails to support a claim for negligence per se.  *See, e.g.*, *Hansen v. Abrasive Eng'g & Mfg., Inc.*, 856 P.2d 625, 628 (Or. 1993) (violation of industry customs does not support negligence per se claim); *Fanean v. Rite Aid Corp.*, 984 A.2d 812, 823-24 (Del. Super. Ct. 2009) (violation of the American Pharmaceuticals Association standards is not negligence per se); *Griglione v. Martin*, 525 N.W.2d 810, 812 (Iowa 1994) (violation of police operating procedures and private safety codes does not support a claim for negligence per se); *Harwood v. Glacier Elec. Co-op., Inc.*, 949 P.2d 651, 656 (Mont. 1997) (violation of non-statutory standards does not support a claim for negligence per se).  Accordingly, the Banks' claim for negligence per se fails as a matter of law and should be dismissed.

## III.   THE BANKS' CLAIM FOR INJUNCTIVE AND DECLARATORY RELIEF SHOULD BE DISMISSED.

The Banks have asserted a claim for equitable relief that is duplicative of their common law claims and should be dismissed.  *See* Compl. ¶¶ 278-85.

### A.   The Banks Fail to State a Claim for Injunctive Relief.

#### 1.   There is No Cognizable Claim for "Injunctive Relief."

The Banks may not pursue a standalone claim for "injunctive relief" because "[a]n injunction is a remedy, not a cause of action."  *Newman v. J.P. Morgan*

34

*Chase Bank, N.A.*, No. 14-2944, 2015 WL 321442, at *9 (D. Minn. Jan. 26, 2015) (citing *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211, n.1 (2002) ("[A]n injunction is inherently an equitable remedy")). "[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . . There is no such thing as a suit for a traditional injunction in the abstract." *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (internal quotation marks and citation omitted). The Banks' injunctive relief "claim" should therefore be dismissed.

2.     The Banks are Not Entitled to the Remedy of Injunctive Relief.

The remedy of "injunctive relief" is not available to the vast majority of the Banks, which assert only negligence and negligence per se claims. Injunctive relief is not a recognized remedy for these torts. Negligence and negligence per se claims "cannot support an injunction because a necessary element of a negligence claim is damage and an injunction seeks to prohibit future damage." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. 2011) (en banc); *see U.S. Army Corps of Eng'rs*, 424 F.3d at 1127 (because an injunction "is an extraordinary remedy, it is available . . . only when . . . there is no adequate legal remedy and . . . irreparable injury [will occur] if the injunction does not issue").

The Banks' request for injunctive relief also fails because it is based on a speculative future data breach. *See Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009) (no standing to pursue injunction where plaintiff did not allege possibility of future injury). For injunctive relief, any alleged future injury must be "imminent or 'real and immediate' and not merely conjectural or hypothetical." *Castaneira v. Perdue*, No. 1:10-CV-3385-TWT, 2010 WL 5115193, at *2 (N.D. Ga. Dec. 9, 2010) (Thrash, J.) (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003)). "There must be a 'substantial continuing controversy' between adverse parties and a 'substantial likelihood' that the plaintiff will suffer injury in the future as a result of the alleged unlawful actions." *Id.* (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346-47 (11th Cir. 1999)). Although the Banks vaguely allege – in the most conclusory form imaginable – that "[t]he risk of another such breach is real, immediate, and substantial," they have not pled a plausible "substantial likelihood" of harm. Compl. ¶ 282. The breach that gave rise to this litigation has been resolved. *Id.* ¶ 1. None of the Complaint's allegations makes it plausible that there is a "substantial likelihood" of an "imminent" injury to the Banks. And the Banks do not identify any "substantial continuing controversy" between them and Home Depot.

Furthermore, "[i]njunctive relief is only appropriate 'when [a] legal right asserted has been infringed,' and there will be irreparable injury 'for which there is *no adequate legal remedy.*'" *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-md-2495-TWT, 2015 WL 114285, at *2 (N.D. Ga. Jan. 8, 2015) (Thrash, J.) (quoting *U.S. Army Corp of Eng'rs*, 424 F.3d at 1127) (emphasis in opinion). Even if Home Depot were to fall victim to another future security breach, "[m]onetary damages would sufficiently compensate" the Banks for any losses there as well as any losses allegedly already suffered as a result of the prior security breach. *Id.* The Banks have alleged neither a basis nor a need for an injunction in this case, and their claim should therefore be dismissed.

**B.** **The Banks Fail To State A Claim For Declaratory Relief.**

1. The Banks' Declaratory Relief Claim Improperly Seeks a Determination of Past Liability.

The Banks' declaratory relief claim fails because it focuses on alleged past wrongs rather than the future relationship between the parties. As this Court has recognized, "[d]eclaratory relief is appropriate when it is necessary to 'protect the plaintiff from uncertainty and insecurity with regard to the propriety of *some future act or conduct.*'" *Tiller v. State Farm Mut. Auto. Ins. Co.*, No. 1:12–CV–3432–TWT, 2013 WL 451309, at *3 (N.D. Ga. Feb. 5, 2013) (quoting *Henderson v. Alverson*, 123 S.E.2d 721 (Ga. 1962)) (Thrash J.), *aff'd*, 549 F. App'x. 849 (11th

37

Cir. 2013) (emphasis added). "At the motion to dismiss stage, a 'prayer for . . . declaratory relief requires an assessment . . . of whether the plaintiff has sufficiently shown a real and *immediate threat of future harm*.'" *Id.* (quoting *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006)) (emphasis added).

The Banks' declaratory relief claim does not address any "threat of future harm" but instead is duplicative of their negligence claim. The Banks seek a declaration that (1) Home Depot owed them a duty; (2) Home Depot breached that duty; (3) the breach caused an injury to the Banks; and (4) the Banks suffered damage as a result of that breach. Compl. ¶ 280. In other words, the Banks seek a declaration that their negligence claim is meritorious. This is not an appropriate declaratory relief claim. "Injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is declaratory judgment." *Malowney*, 193 F.3d at 1348. The Banks complain that Home Depot failed to provide proper security leading up to the security breach, but if proven, "all of these acts took place in the past, and could be redressed through legal remedies." *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x. 849, 855 (11th Cir. 2013).[12]

---

[12] The Eleventh Circuit has held that "to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation [of the law], that there is a serious risk of continuing irreparable injury if the relief is not granted, and the

### 2. The Association Plaintiffs Do Not Have Standing to Pursue a Claim for Declaratory Relief.

In addition to other infirmities with their declaratory relief claim, the Association Plaintiffs do not have standing to assert this claim because individual participation of their members is required. When the "nature of the claim require[s the Court] to perform 'an *ad hoc* factual inquiry for each'" association member, the association does not have standing. *Rivell v. Private Health Sys., Inc.*, 887 F. Supp. 2d 1277, 1292 (S.D. Ga. 2012) (quoting *Rent Stabilization Assoc. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993)); *see also Warth*, 422 U.S. at 515-16.

Here, among other individualized issues, the Association Plaintiffs ask the court to rule that (1) Home Depot's alleged breach caused an injury to all association members and that (2) all association members suffered monetary damages in connection with that injury that Home Depot must reimburse. Compl. ¶ 280. These findings simply cannot be made without an inquiry into the facts about each association member. As such, the Association Plaintiffs' declaratory relief claim "requires the participation of individual members in the lawsuit" and should therefore be dismissed on standing grounds.

---

absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). The Banks have not – and cannot – allege an inadequate remedy at law because this claim mirrors their negligence claim.

## IV. THE BANKS' STATUTORY CLAIMS MUST BE DISMISSED.

In addition to their common law claims, the Banks assert state statutory claims on behalf of eight state subclasses in Alaska, California, Connecticut, Florida, Illinois, Massachusetts, Minnesota and Washington.[13]  Compl. ¶ 193.  The Banks' statutory claims fail for the reasons set forth below.

### A. The Banks' Statutory Claims Fail for Lack of Standing.

As an initial matter, these claims – like the Banks' other claims – fail because the Banks lack standing to assert them.  As detailed above, the Banks lack Article III standing, and all claims, including their state statutory claims, must be dismissed.  *See, e.g.*, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1339 (S.D. Fla. 2007).  Each of the statutes the Banks invoke requires that the Banks plead damages that are fairly traceable to Home Depot.[14]  Here, none of the Banks that seek to invoke application of the specific state statutes have adequately pled

---

[13] The Banks expressly assert each statutory claim only on behalf of putative class members located within the state.  Compl. ¶ 193.

[14] Alaska Stat. Ann. § 45.50.531; Cal. Bus. & Prof. Code § 17204; Cal. Civil Code § 1798.84(b); Conn. Gen. Stat. § 42-110g(a); Fla. Stat. § 501.211; *McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796, 802 (N.D. Ill. 2013) ("The failure to allege specific, actual damages precludes a claim brought under the ICFA."); *Weeks v. Harbor Nat. Bank*, 388 Mass. 141, 144, n.2, 445 N.E.2d 605 (1983) ("[D]amages are an essential element of the cause of action."); Minn. Stat. Ann. § 325E.64; Wash. Rev. Code Ann. §§ 19.86.090, 19.255.020.

damages or injury-in-fact traceable to Home Depot under the requirements of *Iqbal* or *Twombly*.

## B. The Banks' Claims under the "Baby FTC Acts" Fail Because They Do Not Allege an Unfair or Deceptive Trade Practice.

The Banks allege that Home Depot violated "Baby FTC Acts" in Alaska, Connecticut, Florida, Illinois, Massachusetts and Washington. *See* Compl. ¶¶ 223-77. Although elements and exceptions vary, each Baby FTC Act requires the Banks to plead that Home Depot committed a deceptive act, an act of unfair competition, or an unfair trade practice. These statutes look to the FTC Act and federal law interpreting that Act for guidance.[15]

First, the Banks have not alleged a deceptive act or an act of unfair competition under Section 5 of the FTC Act or the Baby FTC Acts. To establish a deceptive act under Section 5, the plaintiff must allege that the defendant made a material representation or omission, or engaged in a practice, that is "likely to mislead consumers." *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). These allegations are nowhere to be found in the Complaint. For instance, the Banks do

---

[15] *See State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 533-34 (Alaska 1980); Conn. Gen. Stat. § 42-110b(b); *Dep't of Legal Affairs v. Rogers*, 329 So.2d 257, 263 (Fla. 1976); *Saunders v. Mich. Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 313, 662 N.E.2d 602 (1996); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 116 (1st Cir. 2014); *Magney v. Lincoln Mut. Sav. Bank*, 659 P.2d 537, 545 (Wash. App. 1983).

not allege that Home Depot made a material misrepresentation or omission "likely to mislead consumers," much less one sounding in fraud upon which the Banks relied. And they also fail to allege any practice that likely misled consumers. *See FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010). The Banks likewise have not made a plausible claim that Home Depot engaged in unfair competition.[16]

The Banks also fail to plead a claim under the Baby FTC Acts' unfair trade practice prong.[17] For example, Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPCPA") has an updated list of 57 current violative acts, not one of which relates directly to the Banks' allegations. *See* Alaska Stat. Ann. § 45.50.471. Given the recent increased emphasis on data security and the Alaska legislature's demonstrated willingness to identify new violative acts, the failure to address data security in this context shows that the Alaska UTPCPA does not support a claim based on the Banks' allegations here.

---

[16] The Banks make only a half-hearted attempt to claim that Home Depot engaged in unfair competition in violation of some of these statutes. Compl. ¶ 237. Even more problematic than the paucity of the Banks' allegations is the fact that an unfair competition claim may only be asserted by an actual competitor, which the Banks are not. *See Sperry & Hutchinson Co.*, 405 U.S. at 244.

[17] Although interpretation and construction of these acts are guided by the federal FTC Act and related case law, the exact standard varies on a state-by-state basis.

Connecticut, Illinois and Massachusetts, unlike Alaska, decline to list specific deceptive or unfair acts. Nevertheless, the Banks do not allege that Home Depot committed the sort of conduct within the ambit of the Connecticut Unfair Trade Practices Act ("CUTPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), or the Massachusetts Consumer Protection Act ("MCPA"). Allegations of inadequate security do not satisfy an "established concept of unfairness" standard, nor are they "immoral, unethical, oppressive, or unscrupulous," and thus do not state a claim under the CUTPA, ICFA, or the MCPA. *Parola v. Citibank (S. Dakota) N.A.*, 894 F. Supp. 2d 188, 205 (D. Conn. 2012) (internal citations omitted); *Garrett v. RentGrow, Inc.*, No. 04 C 8309, 2005 WL 1563162, at *3, *4 (N.D. Ill. July 1, 2005); *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 37 (1st Cir. 2008).

Finally, the Banks' claim under the Washington CPA is based on an attempt to allege that Home Depot violated Wash. Rev. Code Ann. § 19.255.020. Compl. ¶¶ 273-77. However, as discussed below, these allegations fall flat.

### C. The Banks Fail to Plead the Essential Elements in Several State Statutes.

#### 1. The Banks' Claims Fail Under California's UCL and CRA.

The Banks fail to plead that Home Depot engaged in any unlawful, unfair, or fraudulent business act or practice, as required to state a claim under California's

Unfair Competition Law ("UCL").  An "unfair business practice" is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *See McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008).  Leaving aside that the Banks are not consumers, their allegations fall far short of meeting this standard.

The Banks also fail to plead a UCL claim based on an alleged violation of the California Customer Records Act ("CRA").  That statute may only be asserted by customers, defined as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business."  Cal. Civil Code §§ 1798.84(b), 1798.80(c).  An "individual," in turn, is defined as a "natural person" and therefore does not include the Banks, which were not customers of Home Depot in any event.  *Id.* at 1798.80(c)(d).  *See also Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013); *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 WL 6234610, at *7 (N.D. Cal. Dec. 2, 2013) (dismissing claims under the UCL's unlawful prong where plaintiff did not plead a cause of action under any predicate statute).  The Banks have failed to plead a violation of the CRA and, as a result, cannot state a claim under the UCL to the extent the UCL claim is premised on an alleged violation of the CRA.

2. The Banks Fail to Plead a Valid Claim for Violation of the Connecticut Unfair Trade Practices Act.

To state a claim under CUTPA where a plaintiff alleges *passive* conduct, there must be a legal duty between the plaintiff and the defendant to perform a particular act. *Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 780 A.2d 967, 975 (Conn. App. 2001). Here, the Banks allege passive conduct, but for the reasons set forth in Section II.B, they have failed to allege that Home Depot owed them a duty. Accordingly, the Banks' claim fails.

Even if the Banks sufficiently pled a duty, their CUTPA claim should still be dismissed to the extent that it is based on alleged mitigation damages. As set forth in Section I, those costs are not the proximate result of Home Depot's alleged conduct. *See Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 947 A.2d 320, 330 (Conn. 2008) (noting that a CUTPA claim requires the plaintiff to establish that "the ascertainable loss was caused by, or 'a result of,' the prohibited act").

3. The Banks Are Not "Consumers" under the Florida Deceptive and Unfair Trade Practices Act.

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") authorizes businesses to bring an action under the statute only if the alleged violative act occurred when the business was acting as a consumer. *See Carroll v. Lowes Home Ctrs., Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *4 (S.D. Fla.

May 6, 2014) (corporate plaintiff fails to allege that it has "engaged in the purchase of goods or services from [defendant]; therefore, the pleadings have not alleged [plaintiff is a] consumer under FDUTPA"); *see also Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, No. 13-20803-CIV, 2013 WL 1786356, at *2 (S.D. Fla. Apr. 25, 2013) (corporation has no standing under FDUTPA for claim against supplier). Here, the Consumer Plaintiffs, not the Banks, made purchases from Home Depot, and it is the Consumers' information that was allegedly the subject of the data breach. The Banks allege harm as a result of their corporate operations as payment card issuers, not as consumers. Because the Banks were not acting as consumers within the meaning of the statute, their FDUTPA claim fails.

4.  The Washington Sub-Class Has No Claim Under Either Washington Statute.

The Banks' Washington CPA claim rests entirely on allegations that Home Depot violated Wash. Rev. Code Ann. § 19.255.020, resulting in a per se violation of the CPA. Compl. ¶¶ 273-277. However, the plain language of § 19.255.020(2)(b) exempts a merchant from liability if:

> the processor, business, or vendor was certified compliant with the payment card industry data security standards adopted by the payment card industry security standards council, and in force at the time of the breach.

The Banks fail to plausibly allege that their claim falls outside of § 19.255.020's exemption for PCI-DSS compliance. The Banks plead that Home Depot hired a Qualified Security Assessor in 2011 and 2012 and some security concerns were identified by the auditors in 2011 and by Home Depot staff in 2012. *See* Compl. ¶¶ 177-78. But the Banks say no more. Section 19.255.020(2)(b) expressly states that a business cannot be liable under the statute if its PCI-DSS compliance "was validated by an annual security assessment, and if this assessment took place no more than one year prior to the time of the breach." The Banks stop noticeably short of mentioning Home Depot's October 2013 PCI-DSS certification.

5.   The Minnesota Sub-Class's Claim Fails as a Matter of Law.

To state a valid claim under the Minnesota Plastic Card Security Act ("MPCSA"), the Banks must plead that a breached party retained certain financial data subsequent to 48 hours after authorization of the transaction. Minn. Stat. Ann. § 325E.64. They specifically must allege that Home Depot retained consumers' card security code data, PIN verification code number, or the full contents of any track of magnetic stripe data. *Id*. The Banks do not meet this requirement.

Rather than expressly allege that Home Depot retained consumer data that the MPCSA's protects, the Banks list the types of personally identifiable information ("PII") that merchants, as a general proposition, conceivably could

retain, including the MPCSA's protected financial data. *See* Compl. ¶ 88. In the very next paragraph, the Banks state only that Home Depot retained "massive amounts of PII about its customers." *Id*. at ¶ 89. This imprecise pleading avoids identifying whether Home Depot allegedly stored the sort of financial data that the MPCSA seeks to protect for the statutory period and instead requests that the Court accept the Banks' pleading by implication. The Banks' only other allegations concerning the storage of PII are conclusory and do not support their claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). That is, the Banks state that Home Depot "inappropriately stored cardholder data," *see id*. at ¶ 171, and then track the language of the MPCSA to say Home Depot stored financial PII for the statutory period. *See id*. at ¶ 265. Because the Banks fail to plead an essential element of the MPCSA, their claim fails as a matter of law.

## V. MANY OF THE BANKS' CLAIMS ARE NOT RIPE.

Because a substantial portion of the "injuries" that the Banks allege – such as "refunding fraudulent charges"[18] – are potentially recoverable through the ongoing Card Brand Recovery Process (*see, e.g.*, *PSECU*, 2006 WL 1724574, at

---

[18] The cost of reissuing cards that have allegedly incurred fraud charges falls within the fraudulent charges category.

*4), the Banks' claims are not ripe and should be dismissed. No Bank alleges that it has completed the process and, therefore, no Bank can identify or plausibly allege any specific fraud losses or other expenses unreimbursed through the Card Brand Recovery Process. "The ripeness doctrine, which is somewhat related to the standing doctrine, requires the plaintiff to demonstrate that: (1) it will sustain injury from the challenged action, (2) this injury would be redressed by the relief requested, and (3) the court's ability to resolve the issues presented would not be advanced by waiting until [an] uncompleted even[t] occurs." *In re Seven Springs Apartments Phase II*, 34 B.R. 987, 998 (N.D. Ga. 1983) (citing *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 81-82 (1978)). "'The doctrine seeks to avoid entangling courts in the hazards of premature adjudication.'" *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citation omitted).

The Card Brand Recovery Process is not yet complete, and the Court's ability to ultimately assess liability, if any, would be advanced by waiting until it is completed. *See Digital Props.*, 121 F.3d at 589; *In re Seven Springs*, 34 B.R. at 999. It is of no import whether the Banks agree with the Card Brand Recovery Process. What matters is that, until that process plays out, no Bank can plausibly

allege that it has any unreimbursed fraud losses or other expenses. As a result, many of the Banks' claims are not ripe and should be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Home Depot's Motion and dismiss the Banks' claims with prejudice.

Respectfully submitted this 1st day of July, 2015.

By: */s/ Cari K. Dawson*
CARI K. DAWSON
Georgia Bar Number 213490
cari.dawson@alston.com
KRISTINE M. BROWN
Georgia Bar Number 480189
kristy.brown@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B. This Motion was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 1st day of July, 2015.

By: */s/ Cari K. Dawson*
CARI K. DAWSON
Georgia Bar Number 213490

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on July 1, 2015 with the Court and served electronically through the CM-ECF (electronic case filing) system to all counsel of record registered to receive a Notice of Electronic Filing for this case.

By: */s/ Cari K. Dawson*
      CARI K. DAWSON
      Georgia Bar Number 213490