## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

———————————————————

In re: The Home Depot, Inc., Customer      )     Case No.: 1:14-md-02583-TWT
Data Security Breach Litigation            )
                                         )     ALL CASES

———————————————————  )

### Joint Preliminary Report and Discovery Plan

Pursuant to Federal Rule of Civil Procedure 26, Local Rule 16.2, and Case Management Order No. 4 (ECF No. 107), the parties submit this Joint Preliminary Report and Discovery Plan as follows.

**1.    Description of Case:**

**(a)    Describe briefly the nature of this action.**

**<u>Plaintiffs' Description of the Nature of this Action:</u>**

Plaintiffs (Consumers and Financial Institutions) bring this action against Home Depot for its failure to secure and safeguard customer credit and debit card numbers, three-digit security codes and other payment card data ("PCD"), personally identifiable information ("PII")  such as the cardholder's names, mailing addresses, e-mail addresses and other personal information (collectively "Personal Information"), and for failing to provide timely and adequate notice that

Personal Information had been stolen and precisely what types of information were stolen.

The class actions consolidated in this proceeding are in two discrete categories:  (1) Consumer Cases and (2) Financial Institution Cases.  To manage the litigation most efficiently, the Court has created separate tracks for the consumer cases and financial institution cases and accordingly directed certain proceedings outlined herein.

**<u>Home Depot's Description of the Nature of the Actions:</u>**

Plaintiffs filed these actions against Home Depot to recover losses allegedly incurred as a result of the breach of Home Depot's payment data systems, which allegedly resulted in the compromise of the payment card data and personal information of certain Home Depot customers.  Plaintiffs allege that Home Depot failed to take adequate measures to ensure its data systems were protected and to prevent the data breach from happening, and that Home Depot failed to provide timely notice of the breach.

The Consumer Plaintiffs assert common law claims for negligence, breach of implied contract, and unjust enrichment as well as claims under various consumer protection and data breach notification statutes.  They purport to bring these claims under the common law of every state in the country and the statutes of

nearly every state and seek to represent a nationwide class and statewide classes in every state. The Consumer Plaintiffs seek damages, injunctive relief, and a declaratory judgment. Home Depot denies these claims and has filed a motion to dismiss the Consumer Plaintiffs' claims for lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) because, among other things, the Consumer Plaintiffs have not alleged any cognizable injury traceable to Home Depot's conduct sufficient to establish standing or the damages elements of their substantive claims.

The Financial Institution Plaintiffs assert common law claims for negligence and negligence per se as well as claims for injunctive and declaratory relief and claims under various consumer protection statutes. They purport to bring their common law and equitable relief claims on behalf of a nationwide class and their state consumer protection statutes on behalf of subclasses of financial institutions located in those states. The Financial Institution Plaintiffs seek damages, injunctive relief, and a declaratory judgment. Home Depot has filed a motion to dismiss the Financial Institution Plaintiffs' claims for lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).

Additional background is necessary to understand the relationship between the Card Brands (such as Visa and MasterCard) and the Financial Institution

Plaintiffs in connection with the data breach.  There are contracts between the Card Brands and the Finacial Institution Plaintiffs, contracts between the Card Brands and Acquiring Banks (financial institutions that facilitate payment card transactions), and "Operating Regulations," issued by the Card Brands, which also apply to the Financial Institution Plaintiffs.  The contracts and regulations, which the Financial Institution Plaintiffs voluntarily entered into, provide specific processes and procedures for the reimbursement of certain fraud and operating expenses in the event of a data breach.  This process is currently ongoing and may reimburse the Financial Institution Plaintiffs for certain fraud and operating expenses they seek in this litigation against Home Depot.

     **(b)**     **Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

**<u>Plaintiffs' Recitation</u>:**

Between April, 2014 and September, 2014, Home Depot was subject to one of the largest retail data breaches in our nation's history. Taking advantage of substantial weaknesses and vulnerabilities in the company's data security systems, hackers stole the personal and financial information of approximately 56 million Home Depot customers across the country. The stolen information was then sold on the internet to thieves who made fraudulent transactions on credit and debit cards issued to Home Depot customers.

Home Depot customers throughout the United States suffered real and imminent harm as a direct consequence of Home Depot's conduct, which include:

(a) unauthorized charges on their debit and credit card accounts;

(b) theft of their personal and financial information;

(c) costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

(d) loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

(e) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Home Depot data breach;

(f) the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their payment card and personal information being placed in the hands of criminals and already misused via the sale of Consumer Plaintiffs' and Class members' information on the Internet black market;

(g) damages to and diminution in value of their personal and financial information entrusted to Home Depot for the sole purpose of purchasing products and services from Home Depot and with the mutual understanding that Home Depot would safeguard Consumer Plaintiffs' and Class members' data against theft and not allow access to and misuse of their information by others;

(h) money paid for products and services purchased at Home Depot stores during the period of the Home Depot data breach in that Consumer Plaintiffs and Class members would not have shopped at Home Depot had Home Depot disclosed that it lacked adequate systems and procedures to reasonably safeguard customers' financial and personal information and had Home Depot provided timely and accurate notice of the Home Depot data breach;

(i) continued risk to their financial and personal information, which remains in the possession of Home Depot and which is subject to further reaches so long as Home Depot fails to undertake appropriate and adequate measures to protect Consumer Plaintiffs' and Class members' data in its possession.

The financial costs caused by Home Depot's misconduct have also been incurred by the institutions that issued the payment cards compromised by the breach. These costs include, but are not limited to, canceling and reissuing millions of compromised cards and reimbursing their customers for fraudulent charges. Industry sources estimate that community banks and credit unions – which together issued only a fraction of the compromised cards – incurred more than $150 million in reissuance costs alone. Industry sources further estimate that the total fraud losses for all financial institutions are in the billions of dollars.

The factual allegations and contentions of the parties are set out in specific detail in the Consumer Plaintiffs' Consolidated Class Action Complaint (ECF No. 93) and in the Financial Institution Plaintiffs' Consolidated Class Action Complaint (ECF No. 104).

## Home Depot's Recitation:

On September 2, 2014, Home Depot received reports from its banking partners and law enforcement authorities that suggested possible unauthorized access to its payment data systems. Home Depot immediately began working around the clock with leading IT security firms, its banking partners, and the Secret Service to gather facts, resolve the problem, and provide information to Home

Depot's customers.   That same day, Home Depot issued a public statement confirming that it was investigating the reported unusual activity.

On September 8, 2014, Home Depot issued a press release confirming the data breach.  In the press release, Home Depot informed its customers that its investigation was focused on payment card transactions in Home Depot's brick-and-mortar stores in the United States and Canada beginning in April 2014.  Home Depot further noted that it was taking aggressive steps to close off the hackers' method of entry and eliminate the malware used to perpetrate the attack, while protecting customer data in the interim.

On September 18, 2014, Home Depot issued a press release confirming that the malware used in the breach had been eliminated and announcing the implementation of additional security measures.  Home Depot reported that it had completed the rollout of enhanced encryption of payment data to all U.S. stores – which had begun in January 2014 – and confirmed that the rollout of similar measures in Canadian stores would be completed in 2015.

On November 6, 2014, Home Depot issued a press release summarizing the findings of its preliminary investigation into the data breach.  Home Depot's preliminary investigation revealed that criminals used a third-party vendor's user name and password to enter the perimeter of Home Depot's network.  From there,

the hackers acquired elevated rights that allowed them to navigate portions of Home Depot's network and deploy unique, custom-built malware on Home Depot's self-checkout systems in the United States and Canada. This malware enabled the hackers to access data for up to approximately 56 million unique payment cards as well as separate files containing approximately 53 million e-mail addresses. Home Depot's investigation has not revealed any evidence that the payment card data included debit PIN numbers or that the e-mail files included passwords, payment card information, or other sensitive personal information.

Beginning with its public statement on September 2, 2014, Home Depot informed its customers that if there was a breach, the customers would not be responsible for any fraudulent charges to their accounts and that Home Depot would offer free identity protection services to any potentially impacted customers. Home Depot confirmed this commitment in its September 8, 2014 press release and provided additional details about the services it was offering all customers who used a payment card at a Home Depot store beginning in April 2014. These free identity protection services provided by AllClear include credit monitoring and insurance for identity theft in an amount up to $1 million, as well as free access to identity repair services. Customers who wish to take advantage of these services can sign up by visiting Home Depot's website or calling a toll free number.

On September 4, 2014, only two days after the initial reports of a possible breach of Home Depot's payment data systems and before it was even confirmed, plaintiffs began filing putative class actions against Home Depot, alleging that Home Depot failed to take adequate steps to safeguard its customers' payment card data and personal information and that Home Depot failed to provide timely notice of the breach. Other lawsuits asserting a variety of claims purportedly arising out of the breach soon followed, and 53 related class actions have been filed and consolidated in this MDL proceeding.

**(c)** **The legal issues to be tried are as follows:**

**Plaintiff's Statement of Legal Issues:**

Duty, Breach, Causation and Damages.

**Defendant's Statement of Legal Issues:**

(1) Whether the Plaintiffs have suffered injury-in-fact sufficient to confer Article III standing;

(2) Whether any of the Plaintiffs' alleged injuries are fairly traceable to Home Depot's conduct;

(3) Whether any of the Plaintiffs' alleged injuries are redressable by a favorable ruling;

(4) Whether the Plaintiffs may raise claims under the laws of states in which no named plaintiff resides or claims to have entered into a transaction with Home Depot;

(5)    Whether the Plaintiffs have suffered any cognizable injury sufficient to satisfy the damages element of any of their substantive claims;

(6)    Whether Plaintiffs' tort claims are barred by the economic loss rule;

(7)    Whether Home Depot's alleged conduct constitutes negligence and the Plaintiffs can prove each element of such a claim;

(8)    Whether Home Depot's alleged conduct constitutes a violation of any state consumer fraud statute and the Consumer Plaintiffs can prove each element of such a claim, including demonstrating the availability of a private class action under applicable law;

(9)    Whether Home Depot's alleged conduct constitutes a violation of any state data breach notification statute and the Consumer Plaintiffs can prove each element of such a claim, including demonstrating the availability of a private class action under applicable law;

(10)    Whether Home Depot's alleged conduct constitutes breach of any purported implied contract and the Consumer Plaintiffs can prove each element of such a claim;

(11)    Whether the Consumer Plaintiffs can prove each element of an unjust enrichment claim;

(12)    Whether the Financial Institution Plaintiffs have any uncompensated losses, which they may recover as a matter of law, following the Card Brand Recovery Process;

(13)    Whether the Financial Institution Plaintiffs' claims are unripe given the pendency of the Card Brand Recovery Process;

(14)    Whether the Financial Institution Plaintiffs can show that they are entitled to protection under any statute that results in a viable negligence per se claim;

(15)   Whether Home Depot's alleged conduct constitutes a violation of any of the identified state consumer protection statutes and the Financial Institution Plaintiffs can prove each element of such a claim;

(16)   Whether the Association Plaintiffs have standing to pursue their claims;

(17)   Whether Plaintiffs can demonstrate that they are entitled to declaratory relief;

(18)   Whether Plaintiffs can demonstrate that they are entitled to injunctive relief; and

(19)   Whether Plaintiffs can meet their burden of proving they have satisfied all of the elements for certifying a class in accordance with FRCP 23.

**(d)   The cases listed below (include both style and action number) are:**

(1) Pending Related Cases:

Pursuant to a series of transfer orders issued by the Judicial Panel on Multidistrict Litigation, the following cases have been transferred to the Northern District of Georgia and consolidated for pre-trial proceedings.  These cases have been administratively closed by the Court.

- *Solak v. The Home Depot, Inc.*, 1:14-cv-02856-TWT (N.D. Ga.)

- *Farr v. The Home Depot USA, Inc.*, 2:14-cv-00248-TWT (N.D. Ga.)

- *Mazerolle v. The Home Depot, Inc.*, 1:14-cv-02887-TWT (N.D. Ga.)

- *O'Brien v. Home Depot, Inc.*, 1:14-cv-06975-TWT (N.D. Ga.)

- *O'Brien v. Home Depot U.S.A., Inc.*, 2:14-cv-05301-TWT (N.D. Ga.)

- *Murphy v. Home Depot, Inc.*, 1:14-cv-02909 -TWT (N.D. Ga.)

- *Hartman v. Home Depot U.S.A., Inc.*, 4:14-cv-01545-TWT (N.D. Ga.)

- *Marko v. Home Depot U.S.A., Inc.*, 3:14-cv-00981-TWT (N.D. Ga.)

- *Burris v. The Home Depot, Inc.*, 5:14-cv-00396-TWT (N.D. Ga.)

- *Khalaf v. Home Depot U.S.A., Inc.*, 3:14-cv-02175-TWT (N.D. Ga.)

- *Riveron v. Home Depot USA, Inc.*, 9:14-cv-81175-TWT (N.D. Ga.)

- *Dolemba v. Home Depot U.S.A., Inc.*, 1:14-cv-07220-TWT (N.D. Ga.)

- *Lovern v. Home Depot*, 1:15-cv-00029-RJL (D.D.C.)

- *Stern v. The Home Depot Incorporated*, 1:14-cv-03043-TWT (N.D. Ga.)

- *Earls v. The Home Depot, Inc. and Home Depot U.S.A., Inc.*, 3:14-cv-4315-TWT (N.D. Ga.)

- *Merritt v. Home Depot USA, Inc.*, 1:14-cv-03075-TWT (N.D. Ga.)

- *Scheuerman v. The Home Depot Inc.*, 1:14-cv-03053-TWT (N.D. Ga.)

- *Chorman v. Home Depot U.S.A., Inc.*, 3:14-cv-01180-TWT (N.D. Ga.)

- *Hernandez v. The Home Depot, Inc.*, 1:14-cv-03198-TWT (N.D. Ga.)

- *Moran v. Home Depot U.S.A., Inc.*, 3:14-cv-02375-TWT (N.D. Ga.)

- *Fenerjian v. The Home Depot, Inc.*, 1:14-cv-03271-TWT (N.D. Ga.)

- *Petersen v. The Home Depot, Inc.*, 1:14-cv-03477-TWT (N.D. Ga.)

- *Harnish v. The Home Depot, Inc.*, 1:14-cv-14075-TWT (N.D. Ga.)

- *Blomberg v. The Home Depot, Inc.*, 1:14-cv-09015-TWT (N.D. Ga.)

- *Hill, et al v. Home Depot, U.S.A. Inc.*, 1:14-cv-03845-TWT (N.D. Ga.)

- *Hickey v. The Home Depot, Inc. and Home Depot U.S.A., Inc.*, 4:14-cv-00235-TWT (N.D. Ga.)

- *Kimberlin v. The Home Depot, Inc. and Home Depot U.S.A., Inc.*, 8:15-cv-01079-TDC (D. Md.)

- *First Choice Federal Credit Union v. The Home Depot, Inc.*, 14-cv-02975-TWT (N.D. Ga.)

- *Southern Chautauqua Federal Credit Union v. The Home Depot, Inc.*, 14-cv-03020-TWT (N.D. Ga.)

- *Sound Community Bank v. The Home Depot, Inc.*, 1:14-cv-03148-SCJ (N.D. Ga.)

- *Savings Institute Bank and Trust Company v. The Home Depot, Inc.,* 1:14-cv-03178-TWT (N.D. Ga.)

- *Kenmore NY Teachers Federal Credit Union v. Home Depot U.S.A., Inc.*, 1:14-cv-03220-TWT (N.D. Ga.)

- *Cattaraugus County School Employees Federal Credit Union v. Home Depot U.S.A., Inc.*, 1:14-cv-03244-TWT (N.D. Ga.)

- *Anchor Bank, N.A. v. The Home Depot, Inc.,* 1:14-cv-03333- TWT (N.D. Ga.)

- *Hudson City Savings Bank v. The Home Depot, Inc.,* 1:14-cv-03387-TWT (N.D. Ga.)

- *Profinium, Inc. v. The Home Depot, Inc.,* 1:14-cv-03388-TWT (N.D. Ga.)

- *American Bank of Commerce v. The Home Depot, Inc.,* 1:14-cv-03391-TWT (N.D. Ga.)

- *Gulf Coast Bank & Trust Company v. Home Depot, Inc.,* 1:14- cv-03448-TWT (N.D. Ga.)

- *Animas Credit Union v. The Home Depot, Inc.,* 1:14-cv-03577-TWT (N.D. Ga.)

- *Kleinbank v. The Home Depot, Inc.,* 1:14-cv-03586-TWT (N.D. Ga.)

- *Greater Chautaqua Federal Credit Union v. Home Depot U.S.A., Inc.,* 1:14-cv-03629-TWT (N.D. Ga.)

- *Firefighters Credit Union v. The Home Depot, Inc.,* 1:14-cv-03656-TWT (N.D. Ga.)

- *Amalgamated Bank v. Home Depot U.S.A., Inc.,* 1:14-cv-03668-TWT (N.D. Ga.)

- *Salisbury Bank and Trust v. Home Depot U.S.A., Inc.,* 1:14-cv-03722-TWT (N.D. Ga.)

- *Pittsfield Cooperative Bank v. The Home Depot, Inc.,* 1:14-cv-03836-TWT (N.D. Ga.)

- *Northeastern Engineers Federal Credit Union v. Home Depot U.S.A. Inc.,* 1:14-cv-03951-TWT (N.D. Ga.)

- *Phenix-Girard Bank v. Home Depot U.S.A, Inc.,* 1:14-cv-03965-

TWT (N.D. Ga.)

- *First Financial Credit Union v. The Home Depot, Inc.,* 1:14-CV-03975-TWT (N.D. Ga.)

- *Prepaid Technologies LLC v. Home Depot U.S.A., Inc.,* 1:14-CV-03983-TWT (N.D. Ga.)

- *First National Bank, USA v. Home Depot USA, Inc.,* 1:14-cv-04058-TWT (N.D. Ga.)

- *ANECA Federal Credit Union v. Home Depot U.S.A., Inc.*, 1: 15-cv-00129-TWT (N.D. Ga.)

(2)    Previously Adjudicated Related Cases:  None.

**2.    This case is complex because it possesses one or more of the features listed below (please check):**

\_\_X\_\_  (1) Unusually large number of parties
\_\_X\_\_  (2) Unusually large number of claims or defenses
\_\_X\_\_\_ (3) Factual issues are exceptionally complex
\_\_X\_\_(4) Greater than normal volume of evidence
\_\_X\_\_\_ (5) Extended discovery period is needed
_____  (6) Problems locating or preserving evidence
\_\_X\_\_\_ (7) Pending parallel investigations or action by government
\_\_X\_\_\_ (8) Multiple use of experts
\_\_X\_\_\_  (9) Need for discovery outside United States boundaries
\_\_X\_\_\_ (10) Existence of highly technical issues and proof
\_\_X\_\_\_ (11) Unusually complex discovery of electronically stored information

**3.    Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Pursuant to ECF No. 60, the Court has appointed the following leadership for the Consumer Cases:

16

**<u>Consumer Plaintiffs' Counsel:</u>**

***Liaison Counsel***
Roy E. Barnes and John R. Bevis
Barnes Law Group, LLC
31 Atlanta Street
Marietta, Georgia 30060
T:  770 Barnes Law (227-6375)
Email:  Roy@barneslawgroup.com
Email:  Bevis@barneslawgroup.com

***Lead Counsel for Consumer Cases:***
David J. Worley and James M. Evangelista
Harris Penn Lowry LLP
400 Colony Square
1201 Peachtree Street, NE, Suite 900
Atlanta, Georgia 30361
T:  404-961-7650
Email: david@hpllegal.com
Email:  jim@hpllegal.com

Norman E. Siegel and Barrett J. Vahle
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
T:  (619) 400-5822
Email: siegel@stuevesiegel.com
Email:  vahle@stuevesiegel.com

John A. Yanchunis
Morgan & Morgan Complex Litigation Group
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T:  813-223-5505
Email: jyanchunis@forthepeople.com

Pursuant to ECF No. 62, the Court has appointed the following leadership

for the Financial Institution cases:

## Financial Institution Plaintiffs' Counsel Cases

***Co-Liaison Counsel for Financial Institution Cases:***
W. Pitts Carr
W. Pitts Carr and Associates, PC
4200 Northside Parkway, N.W.
Building 10
Atlanta, GA 30327
T:  404-442-9000
pcarr@wpcarr.com

Ranse M. Partin
Conley Griggs Partin LLP
1380 West Paces Ferry Road, N.W.
Suite 2100
Atlanta, GA 30327
T:  404-467-1155
ranse@conleygriggs.com

***Lead Counsel for Financial Institution Cases:***
Kenneth S. Canfield
Doffermyre Shields Canfield & Knowles, LLC
1355 Peachtree Street, N.E.
Suite 1600
Atlanta, GA 30309
T:  404-881-8900
kcanfield@dsckd.com

Joseph P. Guglielmo
Scott + Scott, Attorneys at Law LLP
405 Lexington Avenue
40th Floor
New York, NY 10174
T: 212-594-5300

jguglielmo@scott-scott.com

Gary F. Lynch
Carlson Lynch Sweet & Kilpela, LLP
PNC Park
115 Federal Street
Suite 210
Pittsburgh, PA 15212
T: 412-322-9243
glynch@carlsonlynch.com

The following constitute lead counsel for Defendants:

## Lead Consumer Case Counsel For Defendant

Phyllis B. Sumner
Georgia Bar No. 692165
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
psumner@kslaw.com

## Lead Financial Institution Counsel For Defendant

Cari K. Dawson
Georgia Bar No. 213490
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
cari.dawson@alston.com

## 4. Jurisdiction:

Is there any question regarding this Court's jurisdiction?
____Yes __X__No

## 5. Parties to This Action:

(a)  The following persons are necessary parties who have not been joined:  None

(b)   The following persons are improperly joined as parties:  The Home Depot, Inc. contends that it is improperly joined as a party. Plaintiffs contend that The Home Depot, Inc. is a proper party for the reasons set out in Joint Report of Consumer and Financial Institution Plaintiffs in Response to Case Management Order No. 2, (ECF No. 83).

(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:  None

(d) The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

## 6. Amendments to the Pleadings:

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15.  Further instructions regarding amendment are contained in LR 15.

(a)   List separately any amendments to the pleadings which the parties anticipate will be necessary:

No amendments are currently anticipated.

(b)   Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

## 7. Filing Times For Motions:

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below. All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a) *Motions to Compel*: Before the close of Fact Discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b) *Summary Judgment Motions*: Summary judgment motions shall be filed in accordance with the schedule established in Case Management Order No. 4.

(c) *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony*: Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

## 8. Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).

The parties' initial disclosures are being exchanged concurrently herewith.

## 9. Request for Scheduling Conference:

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

The Court has and will continue to conduct regularly scheduled periodic Status Conferences as necessary and/or requested by the parties.

**10. Discovery Period:**

Under Case Management Order No. 4 (ECF No. 107), the discovery period commences 30 days after the answer is filed in the consumer or financial institution class actions, whichever is later, and the parties have agreed to a nine-month discovery period.  In addition, the parties have begun the meet and confer process to identify custodians, sources, search terms and the scope of discovery. While the meet and confer process is ongoing, the parties have successfully negotiated and submitted the following for the Court's consideration and approval:

    a.    Stipulation and Order for the Production of Documents and ESI (ECF No. 109)

    b.    Case Management Order No. 5 (Discovery) (ECF No. 110)

    c.    Stipulation and Protective Order Regarding Expert Discovery (ECF No. 111.)

<u>Statement of the Subjects on Which Discovery May Be Needed:</u>

Consistent with Rule 26, the parties anticipate that they will endeavor to seek discovery only as to any non-privileged matter that is relevant to, or reasonably calculated to lead to admissible evidence as to, any party's claim or

defense.  Without conceding that the following fall within the proper scope of Rule 26, the matters on which the parties currently anticipate seeking discovery include:

1) The amount and nature of Plaintiffs' alleged losses, if any, and whether they are fairly traceable to any actions by Home Depot;

2) Any evidence supporting Plaintiffs claims;

3) The adequacy of the named Plaintiffs to serve as class representatives;

4) The circumstances surrounding the Consumer Plaintiffs' alleged transactions at Home Depot;

5) The circumstances surrounding the purported fraudulent transactions and other misuse of payment card and personal information the Consumer Plaintiffs allege;

6) Any actions taken by the Consumer Plaintiffs to secure their personal and payment card information;

7) Any actions taken by the Consumer Plaintiffs to prevent fraudulent use of their personal or payment card information;

8) The circumstances surrounding each named Consumer Plaintiff's receipt of notification of the breach;

9) The Financial Institution Plaintiffs' involvement in the Card Brand Recovery Process and any recovery made in connection with that process;

10) Security measures that the Financial Institution Plaintiffs had in place to mitigate the harm alleged in this litigation;

11) The nature and extent of the Home Depot data breach;

12) Circumstances surrounding the Home Depot data breach and security measures to prevent such an intrusion;

13)   Any actions taken by Home Depot to prevent fraudulent use of its customer's personal or payment card information;

14)   Any actions taken by Home Depot to secure their customers' personal and payment card information;

15)   The circumstances surrounding Home Depot's discovery and notification of the breach;

16)   Security measures that Home Depot had in place to mitigate the harm alleged in this litigation; and

17)   Security measures that Home Depot had in place to mitigate unauthorized access and intrusion into its data systems;

Other issues may arise as discovery proceeds.  These categories should not be considered to be exhaustive, and the parties are free to seek any discovery that is proper under the Federal Rules of Civil Procedure.

## 11. Discovery Limitation and Discovery of Electronically Stored Information:

(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

See response to Item Number 10 above.

(b) Is any party seeking discovery of electronically stored information?

____X_____ Yes _____ No

If "yes,"

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

See Stipulation and Order for the Production of Documents and ESI (ECF

No. 109).

## 12. Other Orders:

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

The parties have negotiated and the Court has approved the stipulations and

orders referenced in the response to Item 10 above.  In addition, the parties are

presently meeting and conferring and anticipate agreement on a proposed ESI

preservation order for presentation to the Court.  [The parties are also evaluating a

stipulation intended to minimize costs associated with authenticating documents

for use at trial.]

## 13. Settlement Potential:

(a)  Because the case is in its infancy, discovery has not commenced, and there have been no rulings on Home Depot's motions to dismiss, settlement discussions are premature.  However, the parties anticipate they may meet as appropriate to discuss the possibility of settlement as the cases progress.

 (b)  All parties were promptly informed of all offers of settlement and following

discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery.
(_____) A possibility of settlement after discovery.
(_____) A possibility of settlement, but a conference with the judge is needed.
(__X___) No possibility of settlement.

(c) Counsel (__X___) may or (_____)do not intend to hold additional settlement conferences among themselves prior to the close of discovery. Proposed date(s) of a settlement conference is not determined.

(d) The following specific problems have created a hindrance to settlement of this case. Discovery has not yet commenced, and Home Depot has moved to

dismiss Plaintiffs' complaints.

## 14. Trial by Magistrate Judge:

The parties do not consent to having this case tried before a magistrate

judge of this Court.

**[*Signatures on following page.*]**

/s/ David J. Worley

David J. Worley
James M. Evangelista
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, Georgia 30361
Telephone: (404) 961-7650
david@hpllegal.com
jim@hpllegal.com

*Co-Lead Counsel for Plaintiffs in
Consumer Cases*

/s/ Phyllis B. Sumner

L. Joseph Loveland
Georgia Bar No. 459350
Phyllis B. Sumner
Georgia Bar No. 692165
S. Stewart Haskins II
Georgia Bar No. 336104
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
jloveland@kslaw.com
psumner@kslaw.com
shaskins@kslaw.com

*Counsel for Home Depot in
Consumer Cases*

/s/ Kenneth S. Canfield

Kenneth S. Canfield
DOFFERMYRE SHIELDS
CANFIELD & KNOWLES, LLC
1355 Peachtree Street, N.E.
Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 881-8900
kcanfield@dsckd.com

*Co-Lead Counsel for Plaintiffs in
Financial Institution Cases*

/s/ Cari K. Dawson

Cari K. Dawson
Georgia Bar No. 213490
Kristine McAlister Brown
Georgia Bar No. 480189
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
cari.dawson@alston.com
kristy.brown@alston.com

*Counsel for Home Depot in
Financial Institution Cases*

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, as modified by the Case Management Orders entered by the Court:


Date: _____          _____
                                     Thomas W. Thrash, Jr.
                                     United States District Judge