# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

_____

|                                               |   |                                |
|-----------------------------------------------|---|--------------------------------|
|                                               | ) |                                |
| In re: The Home Depot, Inc., Customer         | ) | Case No.: 1:14-md-02583-TWT    |
| Data Security Breach Litigation               | ) |                                |
|                                               | ) |                                |
| This document relates to:                     | ) |                                |
|                                               | ) |                                |
| CONSUMER CASES                                | ) |                                |
| _____              | ) |                                |

## MEMORANDUM OF LAW IN SUPPORT OF
## CONSUMER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
## OF CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF
## SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, AND
## SCHEDULING OF A FINAL APPROVAL HEARING

## **TABLE OF CONTENTS**

**INTRODUCTION**……………………………………………………………… 1

**SUMMARY OF THE LITIGATION**…………………………………....…3

I.      The Data Breach ........................................................................3

II.     Case Organization ....................................................................4

III.    Consumer Plaintiffs' Claims and Home Depot's Motion to Dismiss ..........5

IV.     Discovery....................................................................................6

V.      Settlement Negotiations............................................................7

**ARGUMENT**……………………………………………………….... .8

I.   The Settlement Class ...................................................................8

II.  The Settlement Benefits..............................................................8

   A.  $13 Million Settlement Fund ................................................ 8

   B.  Identity Guard Monitoring Services...................................... 9

   C.  Injunctive Relief ................................................................. 10

III.  Distribution Plan.......................................................................12

IV.  Proposed Notice Plan ...............................................................13

V.   Payment of Administrative and Notice Costs ...........................14

VI.  Attorneys' Fees and Costs ........................................................14

VII.  Service Awards..........................................................................15

VIII. Release......................................................................................15

IX.  The Proposed Settlement Warrants Preliminary Approval............................15

   A.  The Proposed Settlement Is the Result of Good Faith Negotiations, Is Not Obviously Deficient, and Falls Within the Range of Reasonableness ........... 18

   B.  The *Bennett* Factors Support Preliminary Approval........................................... 20

      1.  The Settlement Benefits Outweigh the Uncertainty of Success at Trial.....20

2.   The Settlement is Within the Range of Possible Recoveries and is Fair, Adequate, and Reasonable ...................................................................21

3.   Continued Litigation Would Be Complex, Expensive, and Lengthy .........22

4.   The Substance and Degree of Opposition to the Settlement......................23

5.   The Stage of Proceedings Allowed Plaintiffs to Evaluate the Merits of the Case and the Settlement Relief .........................................................23

X.   The Court Should Certify the Proposed Settlement Class................................24

A.   The Settlement Class Satisfies the Requirements of Rule 23(a)..................... 25

1.   Numerosity .................................................................................25

2.   Commonality ...............................................................................26

3.   Typicality....................................................................................27

4.   Adequacy of Representation ..........................................................28

B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ............... 29

1.   Predominance ..............................................................................30

2.   Superiority ..................................................................................31

XI.   The Court Should Appoint Lead and Liaison Counsel as Class Counsel......31

XII.   The Court Should Approve the Proposed Notice Program ...........................32

CONCLUSION...................................................................................34

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**
*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997)................................................................. 24, 29, 30

**Federal Court Cases**
*Agan v. Katzman & Korr, P.A.,*
  222 F.R.D. 692 (S.D. Fla. 2004)......................................................... 31

*Anderson v. Garner,*
  22 F. Supp. 2d 1379 (N.D. Ga. 1997)................................................. 25

iii

*Ault v. Walt Disney World Co.*,
   692 F.3d 1212 (11th Cir. 2012) ........................................................... 28

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ............................................................. 17

*Burrows v. Purchasing Power, LLC*,
   2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ........................................ 20, 21, 24

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   258 F.R.D. 545 (N.D. Ga. 2007) .................................................... Passim

*Cooper v. Southern Co.*,
   390 F.3d 695 (11th Cir. 2004) ............................................................. 27

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................. 17

Hanlon v. Chrysler Corp.,
   150 F.3d 1011 (9th Cir. 1998) ............................................................. 30

*Hines v. Widnall*,
   334 F.3d 1253 (11th Cir. 2003) ........................................................... 27, 28

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 654 (S.D. Fla. 2011) .......................................................... 17, 18

*In re Conagra Peanut Butter Products Liab. Litig.*,
   251 F.R.D. 689 (N.D. Ga. 2008) .......................................................... 20

*In re Countrywide Financial Corp. Customer Data Security Breach Litig.*,
   2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .................................... Passim

*In re Domestic Air*,
   141 F.R.D. 535 (N.D. Ga. 1992) .......................................................... 33

*In re Hannaford Bros. Co. Customer Data Security Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ............................................................... 20

*In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.,*
   851 F. Supp. 2d 1040 (S.D. Tex. 2012).......................................................Passim

*In re Motorsports Merchandise Antitrust Litig.,*
   112 F. Supp. 2d 1329 (N.D. Ga. 2000)................................................... 16, 17, 20

*In re Target Corp. Customer Data Security Breach Litig.,*
   2015 WL 7253765 (D. Minn. Nov. 17, 2015)......................................... 19, 21, 24

*Ingram v. The Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001) ......................................................................... 18

*Leszczynski v. Allianz Insurance,*
   176 F.R.D. 659 (S.D. Fla. 1997)................................................................... 25, 26

*Lipuma v. American Express Co.,*
   406 F. Supp. 2d 1298 (S.D. Fla. 2005)............................................... 20, 21, 22, 23

*Melanie K. v. Horton,*
   2015 WL 1799808 (N.D. Ga. Apr. 15, 2015)....................................................... 15

*Meyer v. Citizens and Southern Nat'l Bank,*
   677 F. Supp. 1196 (M.D. Ga. 1988) .................................................................... 16

*Nelson v. Mead Johnson & Johnson Co.,*
   484 F. App'x 429 (11th Cir. 2012)....................................................................... 16

*Prado-Steinman v. Bush,*
   221 F.3d 1266 (11th Cir. 2000) .......................................................................... 27

*Saccoccio v. JP Morgan Chase Bank, N.A.,*
   297 F.R.D. 683 (S.D. Fla. 2014)......................................................................... 19

*Stewart v. Winter,*
   669 F.2d 328 (5th Cir. 1982) .............................................................................. 26

*Terrill v. Electrolux Home Products, Inc.,*
   295 F.R.D. 671 (S.D. Ga. 2013) ....................................................... 26, 28, 30, 31

v

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) .......................................................................... 26

*Walco Investments, Inc. v. Thenen,*
  168 F.R.D. 315 (S.D. Fla. 1996) .......................................................... 24

*Williams v. Mohawk Industries, Inc.,*
  568 F.3d 1350 (11th Cir. 2009) ........................................................... 26

*Woodward v. NOR-AM Chemical Co.,*
  1996 WL 1063670 (S.D. Ala. May 23, 1996) ...................................... 22

**Federal Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................ 25
Fed. R. Civ. P. 23(a)(2) ............................................................................ 26
Fed. R. Viv. P. 23(a)(3) ............................................................................ 27
Fed. R. Civ. P. 23(a)(4) ............................................................................ 28
Fed. R. Civ. P. 23(b)(3) ............................................................................ 29
Fed. R. Civ. P. 23(c)(2)(B) .................................................................. 33, 34
Fed. R. Civ. P. 23(e) ............................................................................ 15, 16
Fed. R. Civ. P. 23(e)(1)(B) ....................................................................... 32
Fed. R. Civ. P. 23(g)(1)(A) ....................................................................... 32

**Other Authorities**

4 William B. Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2015) ....... 16

Federal Judicial Center, Manual for Complex Litigation § 21.632 (4th ed. 2014)  24

**Exhibits**

Exhibit 1 – Settlement Agreement
Exhibit 2 – Declaration of Roy E. Barnes
Exhibit 3 – Declaration of Gerald W. Thompson

## **INTRODUCTION**

Consumer Plaintiffs move for preliminary approval of the Settlement[1] they have reached with Defendant Home Depot, Inc. ("Home Depot"). After seven months of negotiations with an experienced mediator, the parties have reached a proposed settlement that, if approved by the Court, will resolve Consumer Plaintiffs' claims against Home Depot arising from the data breach at issue in this litigation.  In support of this memorandum, Consumer Plaintiffs submit herewith the Settlement Agreement as Exhibit 1, the Declaration of Roy E. Barnes as Exhibit 2, and the Declaration of Gerald W. Thompson as Exhibit 3.

The Court should grant preliminary approval of the proposed Settlement because it addresses the reasonable objectives of the litigation without the uncertainties Class Members would otherwise face in continued litigation. The essential terms are these: Home Depot will establish a cash fund of $13 million to compensate Class Members for documented out-of-pocket losses, unreimbursed charges, and time spent remedying issues relating to the Home Depot data breach, up to $10,000, including up to five hours of documented time at $15 per hour. Class Members who submit claims for documented losses may also self-certify

---

[1] Unless defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement, attached hereto as Exhibit "A."

time spent remedying issues relating to the data breach at $15 per hour for up to two hours. Home Depot will separately fund 18 months of "identity protection" services available to all Class Members who had their payment card data compromised through Identity Guard's "Essentials" package,[2] which provides Social Security number monitoring, online black market monitoring, identity theft victim assistance, and identity theft insurance of $1 million, among other benefits. Home Depot will also adopt and implement new data security measures to protect the personal and financial information of its customers. Finally, and separate from the benefits provided to the Settlement Class, Home Depot will pay the costs of class notice, costs associated with administering the Settlement, and attorneys' fees and expenses.

Certification of the proposed Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). The Settlement Class includes approximately 40 million individuals who had their payment card data stolen, and 52-53 million individuals who had their email address stolen, with some overlap between the groups. Consumer Plaintiffs assert claims that give rise to issues of law and fact common to all consumers victimized by the data breach. Consumer Plaintiffs have vigorously pursued this litigation through experienced counsel. A

---

[2] Identity Guard offers identity theft protection and credit monitoring services to consumers.

class action is superior to individual actions, as individual actions are unrealistic and consumers likely have no interest in separately litigating their claims.

For the reasons stated herein, Consumer Plaintiffs respectfully request that the Court grant preliminary approval of the settlement, certify the Settlement Class, appoint Lead and Liaison Counsel as Settlement Class Counsel, authorize notice to the Settlement Class of the proposed settlement in the form and manner described herein, and schedule a Final Approval Hearing.

## SUMMARY OF THE LITIGATION

### I.      The Data Breach

In September 2014, Home Depot announced that its payment systems had been breached. Home Depot's investigation revealed that, between approximately April 10, 2014 and September 13, 2014, hackers used a third-party vendor's credentials to gain control of Home Depot's data systems. The hackers installed malware on Home Depot's self-checkout terminals to steal customers' personal and financial information, including names, debit and credit card numbers, expiration dates, and three-digit security codes. The same hackers also stole a separate file containing e-mail addresses only. Plaintiffs allege that following the data breach, the hackers sold the stolen data over the Internet, which allowed criminals to make fraudulent purchases and commit other forms of fraud.

## II.     Case Organization

After Home Depot announced the breach, affected customers filed class action lawsuits throughout the country asserting that Home Depot failed to implement adequate measures to protect its customers' financial and personal information. Financial institutions also filed suit against Home Depot relating to the breach. On December 11, 2014, the U.S. Judicial Panel on Multidistrict Litigation ("JPML") centralized all related cases before this Court for pretrial proceedings.

In order to manage the litigation most efficiently, the Court created separate litigation tracks for Consumer Cases and Financial Institution Cases (ECF No. 36), and appointed separate leadership for each track. (ECF Nos. 60 & 62). Counsel for the Consumer Plaintiffs unanimously agreed to this leadership structure: (1) Co-Lead Counsel David J. Worley and James M. Evangelista of Harris Penn Lowry, LLP, Norman E. Siegel and Barrett J. Vahle of Stueve Siegel Hanson LLP, and John A. Yanchunis of Morgan & Morgan Complex Litigation Group; (2) Liaison Counsel Roy E. Barnes and John R. Bevis of Barnes Law Group, LLC; and (3) a Steering Committee composed of Tina Wolfson of Ahdoot & Wolfson, P.C., William B. Federman of Federman & Sherwood, Daniel C. Girard of Girard Gibbs LLP, Gary S. Graifman of Kantrowitz, Goldhamer & Graifman, P.C., and Howard

T. Longman of Stull, Stull & Brody. The Court appointed the leadership group on February 13, 2015. (ECF No. 60.)

### III.   Consumer Plaintiffs' Claims and Home Depot's Motion to Dismiss

To prepare the consolidated complaint, Plaintiffs' Counsel extensively researched the law and facts surrounding the data breach. Among other things, Counsel interviewed former Home Depot employees, reviewed Home Depot's public announcements and communications to customers, privacy policies, annual reports, news articles, and retained experts in the area of privacy and cyber security to assist them in the litigation. Plaintiffs' Counsel also reviewed other data breach litigation and analyzed the statutory and common law of all U.S. states and territories. To ensure the viability of class treatment, Plaintiffs' Counsel interviewed and investigated potential class representatives from around the country.

After this extensive investigation, Plaintiffs filed a comprehensive 185-page Consolidated Class Action Complaint on May 1, 2015 ("Complaint"). (ECF No. 93.) The Complaint included 88 named plaintiffs ("Named Plaintiffs") asserting claims on behalf of themselves and all Home Depot customers in the United States whose financial and personal information was compromised in the data breach. The Complaint made detailed factual allegations concerning Home Depot's

technology and data security practices, the breach, Home Depot's post-breach

conduct, and the experiences of each of the Named Plaintiffs. The Complaint

asserted causes of action for violations of consumer laws in 51 U.S. jurisdictions,

violations of data breach notification statutes in 28 jurisdictions, and common law

claims including negligence, breach of implied contract, unjust enrichment, and

declaratory judgment.

Home Depot moved to dismiss the claims on June 1, 2015, arguing lack of

Article III standing and failure to state any claim for relief. (ECF No. 105.)

Consumer Plaintiffs opposed the Motion with principal and supplemental briefing.

(ECF Nos. 117 & 124.) Home Depot also filed a reply. (ECF No. 129.) The Court

heard oral argument on October 22, 2015, but has not ruled on Home Depot's

Motion.

## IV.   Discovery

To prepare for discovery, Consumer Plaintiffs' Counsel met and conferred

with counsel for the Financial Institution Plaintiffs and Home Depot's counsel on

over a dozen occasions. The parties negotiated a scheduling order (Case

Management Order No. 4, ECF No. 107), a discovery protocol (Case Management

Order No. 5, ECF No. 110), an expert discovery protocol (ECF No. 111), a

confidentiality protective order (ECF No. 132), and a joint motion governing the

authentication of documents. (*See* Case Management Order No. 6, ECF No. 155). At the time of Settlement, the parties were in the final stages of negotiating an ESI protocol. Further, with the Court's approval, Consumer Plaintiffs on behalf of themselves and jointly with the Financial Institutions propounded 126 document requests on Home Depot. The parties then held multiple conferences to negotiate the scope of the requests, search terms, and Home Depot's document custodians.

## V.    Settlement Negotiations

In August 2015, the parties agreed to mediate and engaged experienced mediator Jonathan B. Marks of MarksADR, LLC. The parties participated in two full-day mediation sessions with Mr. Marks on September 1 and 18, 2015. While the parties made significant progress at these sessions, they did not reach agreement. Using the information gained from these sessions, the parties researched their positions to prepare for further negotiations. For instance, Plaintiffs' Counsel investigated the possibility of providing identity theft monitoring services as a potential settlement benefit which would include an insurance policy to protect customers from future harm. After completing a competitive bidding process among four highly-rated companies in that field, Plaintiffs' Counsel strengthened the Plaintiffs' negotiating position by introducing the monitoring services as an additional form of possible relief.

In the following months, the parties continued extensive negotiations with the assistance of Mr. Marks. The parties executed a term sheet on January 26, 2016.

## TERMS OF THE PROPOSED SETTLEMENT

### I.   The Settlement Class

The proposed Settlement Class is defined as:

All residents of the United States whose Personal Information was compromised as a result of the Data Breach first disclosed by Home Depot in September 2014.

"Personal Information" means payment card data including payment card account numbers, expiration dates, card verification values, and cardholder names from payment cards used at self-checkout lanes at U.S. Home Depot stores between April 10, 2014 and September 13, 2014, and/or e-mail addresses compromised as a result of the Data Breach.

(Settlement Agt. ¶¶ 25, 16).

### II.   The Settlement Benefits

#### A.   $13 Million Settlement Fund

Home Depot will establish a $13 million Settlement Fund to compensate Settlement Class Members for out-of-pocket losses or unreimbursed expenses "fairly traceable" to the data breach, such as costs to purchase credit monitoring or to place a freeze or alert on credit reports. (Settlement Agt. ¶¶ 28, 32). The Fund will also provide reimbursement for any consequential expenses related to fraud or

identity theft, such as late fees, declined payment fees, and overdraft fees. Those Settlement Class Members with supporting documentation may also submit a claim for time spent remedying issues fairly traceable to the data breach to be compensated at $15 per hour for up to five hours. Settlement Class Members with documented out-of-pocket losses or unreimbursed charges who cannot separately document their time, may self-certify the amount of time they spent remedying issues fairly traceable to the data breach and file a claim for up to two hours at $15 per hour. Settlement Class Members who submit valid claim forms and documentation will be eligible for reimbursement up to a maximum of $10,000.

### B.    Identity Guard Monitoring Services

Home Depot will fund 18 months of identity protection services through Identity Guard's "Essentials" package available to all Class Members who had their payment card data compromised as a result of the data breach. (Settlement Agt. § VI). The Essentials package has a retail value of $9.99 per month which translates to a benefit of nearly $180 per enrollee. Identity Guard's services include Social Security number monitoring, online black market monitoring, identity verification alerts, account takeover alerts, identity theft victim assistance, lost wallet protection, password protection, and identity theft insurance up to $1 million. If the number of settlement class members eligible to enroll in Identity

Guard services is 40 million persons or fewer, Home Depot shall pay $6.5 million to cover all eligible settlement class members who elect to claim this benefit. (Settlement Agt. ¶¶ 28, 37-39; Thompson Dec., Ex. 3).

### C.   Injunctive Relief

Home Depot has agreed to adopt and implement, at a minimum, the following data security measures in its U.S. stores for two years from the effective date of the Settlement Agreement:

a. **Chief Information Security Officer**. Home Depot will maintain an executive position with responsibility to coordinate and be responsible for the company's programs to protect the security of customers' Personal Information.

b. **Product and Data Risk Assessments**. Home Depot will routinely perform risk assessments that identify material internal and external risks to the security of customer Personal Information stored on its systems, which at a minimum will consider risks associated with (1) employee training and management; (2) software design and testing; and (3) vendor data management and security practices.

c. **Safeguard Design Resulting from Risk Assessments**. Home Depot will design and implement reasonable safeguards to manage any risks that are identified through its risk assessments.

d. **Vendor Program**. Home Depot will develop and use reasonable steps to select and retain service providers capable of maintaining security practices consistent with the requirements set forth in the Settlement Agreement.

e. **Dynamic Security Program**. Home Depot will evaluate and adjust as reasonably necessary its systems on which and by which customers' Personal Information is stored in light of (1) the results of the testing and monitoring required by the Settlement, (2) any material changes to its operations or business arrangements, or (3) any other circumstances that it knows or has reason to know may have a material impact on the effectiveness of its security program.

f. **Notice**. Home Depot will maintain and make available to its customers clear written disclosures explaining that it stores certain customer information and describing how it uses that information.

g. **Employee Education**. Home Depot will maintain a program to educate and train its workforce on the importance of the privacy and security of its customers' Personal Information.

h. **Enhanced Security Measures**. With respect to all consumer credit and debit transactions made in Home Depot's U.S. stores, Home Depot will (1) encrypt all payment card data at the time that such data is input at the point of sale; (2) not retain the card security code data, the PIN verification code number, or the full contents of any track of magnetic stripe data, after the authorization of the transaction or in the case of a PIN debit transaction for more than 48 hours after authorization of the transaction; and (3) implement and utilize EMV chip card technology.

## III. Distribution Plan

In the event that the Settlement Fund is not exhausted after all valid claims are paid, the remaining funds will be applied to credit Home Depot in the following order: (1) up to the amount Home Depot paid to provide Identity Guard monitoring; and (2) then up to the amount it paid for notice and settlement administration costs. Any funds remaining thereafter will be distributed *pro rata* to

Settlement Class Members who made documented claims or as otherwise directed by the Court. (Settlement Agt. § V).

## IV.    Proposed Notice Plan

Subject to the Court's approval, the parties propose a Notice Program with four components: (1) E-Mail Notice, (2) Mail Notice, (3) Publication Notice, and (4) Notice on a Settlement Website. The Settlement Administrator will send E-Mail notice to all Settlement Class Members for whom Home Depot possesses email addresses. If an email address is unavailable or invalid, the Settlement Administrator will send Mail Notice if Home Depot can obtain a valid address from its records with reasonable effort. For notices that are returned as undeliverable, the Settlement Administrator will take appropriate steps to find updated address information (such as running the mailing address through the National Change of Address database) to re-mail the notices. (Settlement Agt. § IX; *see also* accompanying Exhibits B-E, G).

To ensure broad reach, the proposed Notice Program also provides for publication notice in People Magazine, substantially in the same form attached as Exhibit D to the Settlement Agreement, by May 2, 2016. (Settlement Agt. ¶ 49). The Settlement Administrator will also establish a settlement website in the form agreed to by the parties and the Court. In addition to the notices, the website will

include information about the Settlement, related case documents, and the Settlement Agreement. Class Members will be able to submit claims electronically. (Settlement Agt. § VIII). Additionally, the Settlement Administrator will further effectuate notice using a campaign of internet "banner ads." (Settlement Agt. ¶ 50).

## V.    Payment of Administrative and Notice Costs

Home Depot will pay the costs of providing Class notice and administering the Settlement benefits. Except as described in the Distribution Plan above, Home Depot will pay these costs separately from the other Settlement Class benefits. (Settlement Agt. ¶¶ 44, 53).

## VI.    Attorneys' Fees and Costs

Consumer Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees, costs, and expenses. Home Depot reserves its right to object to the fee request, but will waive its right to appeal an award not to exceed $8.475 million. Home Depot will not oppose Consumer Plaintiffs' Counsel's request for reimbursement of costs and expenses of up to $300,000. Home Depot has agreed to pay any attorneys' fees, costs, and expenses awarded by the Court separately from the relief for the Settlement Class Members. (Settlement Agt. ¶ 61).

## VII.   Service Awards

Consumer Plaintiffs' Counsel will apply for, and Home Depot agrees not to oppose, service awards of up to $1,000 for each Settlement Class Representative[3] and Consumer Plaintiff, which are intended to compensate such individuals for their efforts in the litigation and commitment on behalf of the Settlement Class. Any Court-approved service awards will be paid from the Settlement Fund. (Settlement Agt. ¶ 60).

## VIII.  Release

In exchange for the Settlement benefits, Consumer Plaintiffs and the Settlement Class Members will release Home Depot from any claims relating to the issues in this case. Home Depot will similarly release all claims against the Settlement Class and Class Counsel. (Settlement Agt. § XI).

## ARGUMENT

## IX.   The Proposed Settlement Warrants Preliminary Approval

If a class action settlement releases the claims of a certified class, it must be approved by the Court. Fed. R. Civ. P. 23(e). Class settlement approval is a two-step process. The Court must first determine whether the proposed settlement warrants preliminary approval. *See Melanie K. v. Horton*, No. 1:14-cv-710-WSD,

---

[3] Settlement Class Representatives are defined in Paragraph of 27 of the Settlement Agreement.

2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2015). Upon preliminary approval, the parties will provide Settlement Class Members with notice, and the Court may more fully weigh the settlement's strengths and weaknesses at the final approval hearing. *Id.*

There is a "strong judicial policy favoring settlement," and an "overriding public interest in favor of settlements." *Meyer v. Citizens and Southern Nat'l Bank*, 677 F. Supp. 1196, 1200 (M.D. Ga. 1988) (citation and internal quotations omitted). "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). The Court has broad discretion in approving a settlement. *Id.* Indeed, Rule 23(e) "provides no standard for the district judge to apply in considering a proposed settlement." *In re Motorsports*, 112 F. Supp. 2d at 1333.

At this stage, there is no need to "conduct a trial on the merits." *Id.* Instead, a "district court may rely upon the judgment of experienced counsel for the parties . . . [and] [a]bsent fraud, collusion, or the like, the district court 'should be hesitant to

substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Motorsports*, 112 F. Supp. 2d at 1333 ("It is, however, well-established that a settlement should be approved if it is fair, adequate, reasonable and free of fraud or collusion."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007).

Courts within the Eleventh Circuit have used two different standards when considering whether to preliminarily approve a proposed class action settlement. Some courts have found that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). Other courts have applied the factors used at the final approval stage, known as the *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 558-59 (quoting *Bennett v. Behring Corp.*, 737

F.2d 982, 986 (11th Cir. 1984)). The proposed Settlement warrants preliminary

approval under both standards.

> **A.    The Proposed Settlement Is the Result of Good Faith**
> **Negotiations, Is Not Obviously Deficient, and Falls Within**
> **the Range of Reasonableness**

Preliminary approval is appropriate because the proposed Settlement is the

product of good faith negotiations between informed counsel. *See In re Checking*

*Account Overdraft*, 275 F.R.D. at 661 ("Settlement negotiations that involve arm's

length, informed bargaining with the aid of experienced counsel support a

preliminary finding of fairness."). A mediator experienced in complex litigation

assisted in the parties' settlement negotiations. *See Ingram v. The Coca-Cola Co.*,

200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was

conducted under the auspices of . . . a highly experienced mediator, lends further

support to the absence of collusion."). The parties began seriously discussing

settlement after they had fully briefed Home Depot's motion to dismiss. Therefore,

the parties had devoted significant time to investigating the facts and legal issues.

The parties obtained further information about the merits of the claims and

defenses through their extensive discovery conferences. The parties exchanged

additional information throughout the course of settlement negotiations and were thus able to closely evaluate the respective merits of their case.

The proposed Settlement is reasonable. The Settlement confers significant monetary benefits, preventative relief in the form of identity theft monitoring services, and important injunctive relief related to Home Depot's data security practices. These benefits compare favorably with those of other settlements in data breach class actions that have been approved by courts. *See, e.g., In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *1 (D. Minn. Nov. 17, 2015) (approving settlement that provided $10 million settlement to pay for losses and time spent as a result of Target data breach, and injunctive relief, but no relief to address future harm); *In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, 851 F. Supp. 2d 1040, 1048-1069 (S.D. Tex. 2012) (approving settlement that provided up to $2.4 million to pay for out-of-pocket losses but no monitoring services); *In re Countrywide Financial Corp. Customer Data Security Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *1-4 (W.D. Ky. Dec. 22, 2009) (approving settlement that provided up to $1.5 million to pay out-of-pocket costs, up to $5 million to pay identity theft losses, and 2 years of free credit monitoring services).

### B.     The *Bennett* Factors Support Preliminary Approval

### 1.     The Settlement Benefits Outweigh the Uncertainty of Success at Trial

The trial court weighs the first *Bennett* factor, the likelihood of success at trial, "against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005)). This factor weighs in favor of approval where "success at trial is not certain for Plaintiff[s]." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013).

Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. The Court has not yet ruled on Home Depot's motion to dismiss, in which Home Depot challenged Plaintiffs' Article III standing and each of Plaintiffs' causes of action. Class certification is challenging in any case, especially in the MDL context. *See generally In re Conagra Peanut Butter Products Liab. Litig.*, 251 F.R.D. 689, 694 (N.D. Ga. 2008). Moreover, motions to certify data breach cases do not always clear the net due to potential individualized issues of causation and damages. *See, e.g., In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). The outcome of a trial can never be assumed. *See In re*

*Motorsports*, 112 F. Supp. 2d at 1334 ("[T]he trial process is always fraught with uncertainty."). In short, class litigation sorrows might come not as single spies, but in battalions. The proposed Settlement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

### 2.    The Settlement is Within the Range of Possible Recoveries and is Fair, Adequate, and Reasonable

The second and third *Bennett* factors—whether the settlement falls within the range of possible recoveries and is fair, adequate and reasonable—can be considered together. *Burrows*, 2013 WL 10167232, at *6. In considering these factors, "[t]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323; *see also Burrows*, 2013 WL 10167232, at *6 (noting that "even a settlement point below the range of possible recovery may qualify as fair, adequate, and reasonable"). The proposed Settlement provides three primary forms of relief: (1) a cash fund of $13 million to reimburse monetary losses and lost time; (2) Identity Guard monitoring services for 18 months which include a $1 million insurance policy; and (3) injunctive relief as described above. As discussed above, these benefits compare favorably to settlements in other data breach cases that received court approval. *See, e.g., Target,* 2015 WL 7253765, at *1; *In re*

*Heartland*, 851 F. Supp. 2d at 1048-1069; *Countrywide*, 2009 WL 5184352, at *1-4.

### 3.      Continued Litigation Would Be Complex, Expensive, and Lengthy

A "[s]ettlement [that] will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits preliminary approval. *Lipuma*, 406 F. Supp. 2d at 1324 (quoting *Woodward v. NOR-AM Chemical Co.*, No. Civ. 94-0780-CB-C, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996)). Several procedural hurdles, each fraught with risk to Plaintiffs, remained at the time the parties reached agreement. Home Depot's motion to dismiss – likely not its last dispositive motion – remains pending. Plaintiffs will have to move for class certification. Plaintiffs will need to develop substantial fact and expensive expert discovery will be necessary to prepare for trial. The cost of trial itself and any appeals would be significant and would delay the resolution of this litigation without the guarantee of any relief. The proposed Settlement, on the other hand, provides the Settlement Class with guaranteed and immediate recovery. This factor therefore weighs in favor of preliminary approval. *See Columbus Drywall*, 258 F.R.D. at 559-60 (finding that settlement was fair when "Plaintiffs [would] not

have any guarantee that they will receive a larger recovery from the Settling

Defendants were they to forego the settlement offer").

### 4. The Substance and Degree of Opposition to the Settlement

Courts do not consider this factor until notice has not been provided to

Settlement Class Members. *See Columbus Drywall*, 258 F.R.D. at 560.

### 5. The Stage of Proceedings Allowed Plaintiffs to Evaluate the Merits of the Case and the Settlement Relief

The purpose of this factor is "to ensure that Plaintiffs had access to sufficient

information to adequately evaluate the merits of the case and weigh the benefits of

settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Before

filing the Complaint, Plaintiffs' Counsel devoted significant time to investigating

the facts related to the data breach and Home Depot's subsequent response.

Counsel also extensively researched potential claims under the laws of the various

U.S. states and territories. After filing the Complaint, Counsel opposed the motion

to dismiss and engaged in protracted negotiations with Home Depot's counsel over

the scope of discovery and settlement terms. This work, combined with their

experience in successfully prosecuting similar data breach cases, gave Plaintiffs'

Counsel the necessary leverage to negotiate the best relief possible for the Class.

Like the other *Bennett* factors, this factor weighs in favor of preliminary approval.

### X.  The Court Should Certify the Proposed Settlement Class

When a settlement is reached before class certification, the court must determine whether the proposed settlement class is appropriate for certification. *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2014); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997). Certification of a settlement class is appropriate when the four requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See Columbus Drywall*, 258 F.R.D. at 553; *see also* MANUAL FOR COMPLEX LITIGATION § 21.632.

District courts have "broad discretion" to determine whether to certify a settlement class. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Courts routinely find that similar data breach cases are appropriate for settlement class treatment. *See, e.g., Corona v. Sony Pictures Entertainment Inc.*, No. 2:14-cv-09600-RGK-E (C.D. Cal. Nov. 24, 2015) (ECF No. 151); *Target*, 2015 WL 7253765, at *1; *Burrows*, 2013 WL 10167232, at *1-5; *Heartland*, 851 F. Supp. 2d at 1051-60; *Countrywide*, 2009 WL 5184352, at *1-4. Certification for settlement purposes is appropriate in this case as well.

### A.   The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.   Numerosity

Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class," not "that joinder is impossible." *Columbus Drywall*, 258 F.R.D. at 554 (quoting *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997)). "Practicability of joinder depends on factors such as the size of the class, ease of identifying its members and determining their addresses, ease of making service on them if joined, and their geographic dispersion." *Id.* Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Insurance*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Plaintiffs have learned through confirmatory discovery that the Settlement Class consists of approximately 40 million U.S. Home Depot customers who had their payment card data stolen, and 52-53 million individuals who had their email address stolen, with some overlap between the groups. Numerosity is easily satisfied.

### 2.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *Id*. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury," such that "all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The common questions must "generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotations omitted). "[C]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Products, Inc.*, 295 F.R.D. 671, 685 (S.D. Ga. 2013) (internal quotations omitted).

In this case, the Settlement Class Members are joined by the common questions of law and fact that arise from the same event—the data breach. These issues include: (1) whether Home Depot failed to adequately protect Settlement Class Members' personal and financial information; (2) whether Home Depot's conduct constituted unfair methods of competition and unfair, deceptive, or

unlawful acts actionable under applicable consumer protection laws; (3) whether Home Depot had a legal duty to adequately protect Settlement Class Members' personal and financial information; (4) whether Home Depot breached that legal duty; and (5) whether Home Depot knew or should have known that customers' personal and financial information was vulnerable to attack. These common issues all center on Home Depot's conduct, satisfying the commonality requirement. *See, e.g., Countrywide*, 2009 WL 5184352, at *3 ("All class members had their private information stored in Countrywide's databases at the time of the data breach."); *Heartland*, 851 F. Supp. 2d at 1059 ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

### 3.     Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *Id*. This requirement "measure[s] whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (quoting *Prado-Steinman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). "[F]actual differences among the claims of the putative class members do not defeat certification." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (internal quotations omitted). Typicality is satisfied where claims

"arise from the same event or pattern or practice and are based on the same legal theory." *Terrill*, 295 F.R.D. at 686 (quoting *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012)).

The Consumer Plaintiffs' claims are typical of those of the Settlement Class because they arise from the same data breach and Home Depot's conduct in connection with the data breach. They are also based on the same legal theory that Home Depot failed to protect their personal and financial information. Because there is a "sufficient nexus" between the Consumer Plaintiffs' claims and the claims of Settlement Class Members, the typicality requirement is satisfied. *Hines*, 334 F.3d at 1256.

### 4.    Adequacy of Representation

The adequacy requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, courts employ "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other the class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. "The fact that the named plaintiffs may have suffered greater damages does not indicate that named plaintiffs possess interests antagonistic to other plaintiffs." *Id.*

The Consumer Plaintiffs have fulfilled their responsibilities by working with their counsel to prepare and file complaints against Home Depot, providing documents related to the breach to Plaintiffs' counsel, and otherwise assisting in the prosecution of the litigation. They do not have any interests adverse to the interests of the other Settlement Class Members as their claims arise out of the same Data Breach. In addition, this Court previously appointed Plaintiffs' Counsel based on their qualifications and experience. Because Plaintiffs and Counsel have devoted considerable time and resources to the case, the adequacy requirement is satisfied.

### B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. Where, as here, a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

### 1.    Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Terrill*, 295 F.R.D. at 688. Predominance does not require that all questions of law or fact be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted).

The many common questions of fact and law that arise from Home Depot's conduct predominate over any individualized issues. These common questions include whether Home Depot failed to reasonably protect Class Members' personal and financial information, whether it had a legal duty to do so, and whether Home Depot failed to timely notify Class Members of the data breach. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues. *See, e.g., Countrywide*, 2009 WL 5184352, at *6-7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' personal

information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct"); *Sony*, No. 2:14-cv-09600-RGK-E (ECF No. 151) ("[C]ommon questions pertain to SPE's alleged negligent conduct, and uniformly apply to Plaintiffs and all Class Members.").

### 2.   Superiority

Because of the many common issues that predominate in this case, a class settlement is superior to other methods for fairly and efficiently adjudicating these claims. "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (internal quotations omitted). Judicial economy is best served by resolving Plaintiffs' claims as a class. *See Terrill*, 295 F.R.D. at 697 ("A single, coordinated proceeding is superior to hundreds of discrete and disjointed suits addressing the same facts and legal issues.").

### XI.   The Court Should Appoint Lead and Liaison Counsel as Class Counsel

In appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the

resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court appointed Lead and Liaison Counsel based on their qualifications and experience. *See* ECF No. 60. Since then, Lead and Liaison Counsel have worked cooperatively and efficiently and committed substantial time and resources to this case. This work has included (1) investigating the data breach, (2) researching and evaluating the appropriate legal claims to assert, (3) interviewing scores of customers about their experiences, (4) preparing and filing a consolidated complaint, (5) opposing the motion to dismiss, (6) coordinating with Financial Plaintiffs' counsel and negotiating with Home Depot's counsel on preliminary discovery matters, (7) preparing and negotiating multiple case management orders; (8) obtaining approval from the Court to transmit requests for production of documents; (9) participating in mediation sessions, and (10) negotiating the proposed settlement, preparing the settlement documentation, and moving for preliminary approval. Because Lead and Liaison Counsel have demonstrated their commitment to litigating these claims, the Court should appoint them to serve as Class Counsel.

## XII.   The Court Should Approve the Proposed Notice Program

Rule 23(e)(1)(B) requires that the court direct notice in a reasonable manner to all class members who would be bound by the proposed settlement." *Id.* Under

Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be reasonably identified through reasonable effort." *Id.* "[W]hat amounts to reasonable efforts under the circumstances is for the Court to determine after evaluation of the available information and the possible methods of identification." *In re Domestic Air*, 141 F.R.D. 535, 539 (N.D. Ga. 1992). The best notice practicable must "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id.* at 553 (internal quotations omitted).

The comprehensive Notice Program satisfies the requirements of Rule 23 and due process. It provides direct, individual notice to Settlement Class Members who can reasonably be identified from Home Depot's records. *See id.* at 539. In addition to direct notice, Settlement Class Members will be notified of the Settlement through publication in a national magazine, a dedicated website, and internet banners—methods intended to reach as many Settlement Class Members as possible. *Id.* at 549-553 (approving a proposed publication program that was "geographically broad and designed to reach the maximum number of class members").

The Notice will concisely and clearly state in plain, easily understood language the following information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses, (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). The proposed forms of notice also provide further details about the Settlement and its benefits. They are written in plain English and explain how Class Members can obtain further details and assistance.

## **CONCLUSION**

Consumer Plaintiffs respectfully request that the Court grant preliminary approval of the settlement, certify the Settlement Class, appoint Lead and Liaison Counsel as Settlement Class Counsel, authorize notice to the Settlement Class of the proposed settlement in the form and manner described in this motion, and schedule a Final Approval Hearing.

Dated: March 7, 2016                    Respectfully Submitted,

_____ /s John R. Bevis_____

David J. Worley                         Roy E. Barnes
James M. Evangelista                    John R. Bevis
**HARRIS PENN LOWRY, LLP**              **THE BARNES LAW GROUP, LLC**
400 Colony Square                       31 Atlanta Street
1201 Peachtree Street, NE, Suite 900    Marietta, GA 30060
Atlanta, GA 30361                       Telephone: 770-227-6375
Telephone: 404-961-7650                 Fax: 770.227.6373
Fax: 404-961-7651                       roy@barneslawgroup.com
david@hpllegal.com                      bevis@barneslawgroup.com
jim@hpllegal.com

*Consumer Co-Lead Counsel*              *Consumer Liaison Counsel*
*and Steering Committee Members*        *and Steering Committee Members*

John A. Yanchunis, Sr.                  Norman E. Siegel
**MORGAN & MORGAN**                     Barrett J. Vahle
**COMPLEX LITIGATION GROUP**            **STUEVE SIEGEL HANSON LLP**
201 N Franklin Street                   460 Nichols Road, Suite 200
Tampa, FL 33602                         Kansas City, MO 64112
Telephone: 813-223-5505                 Telephone: 816-714-7100
Fax: 813-223-5402                       Fax: 816-714-7101
jyanchunis@forthepeople.com             siegel@stuevesiegel.com
                                        vahle@stuevesiegel.com

*Consumer Co-Lead Counsel*              *Consumer Co-Lead Counsel*
*and Steering Committee Member*         *and Steering Committee Members*

Tina Wolfson
**AHDOOT AND WOLFSON, P.C.**
1016 Palm Avenue
West Hollywood, CA 90069
Telephone: 310-474-9111
Fax: 310-474-8585
twolfson@ahdootwolfson.com

*Consumer Plaintiffs'*
*Steering Committee Member*

William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma, OK 73120
Telephone: 405-235-1560
Fax: 405-239-2112
wbf@federmanlaw.com

*Consumer Plaintiffs'*
*Steering Committee Member*

Howard T. Longman
**STULL STULL & BRODY**
6 East 45th Street
New York, NY 10017
Telephone: 212-687-7230
Fax: 212-490-2022
hlongman@ssbny.com

*Consumer Plaintiffs'*
*Steering Committee Member*

Daniel C. Girard
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: 415-981-4800
Fax: 415-981-4846
dcg@girardgibbs.com

*Consumer Plaintiffs'*
*Steering Committee Member*

Gary S. Graifman
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Telephone: 201-391-7600
Fax: 201-307-1086
ggraifman@kgglaw.com

*Consumer Plaintiffs'*
*Steering Committee Member*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I served the above and foregoing on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which automatically sends a copy to all counsel of record.

 /s/ John R. Bevis                         
John R. Bevis

31 Atlanta Street
Marietta, GA  30060
Telephone: 770-227-6375
Fax: 770-227-6373
roy@barneslawgroup.com
bevis@barneslawgroup.com