EXHIBIT 1

SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement") is made and entered into on March 7, 2016, by and among (1) Settlement Class Representatives (as defined in Paragraph 27), for themselves and on behalf of the Settlement Class (as defined in Paragraphs 25-26), and (2) Home Depot U.S.A., Inc. and The Home Depot, Inc. (collectively "Home Depot"), and subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives and Home Depot enter into this agreement by and through their respective counsel. As provided herein, Home Depot and Settlement Class Representatives hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class Representatives and the Settlement Class (as defined in Paragraph 21) against Home Depot in the action titled *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. 1:14-md-02583-TWT (N.D. Ga.) (Consumer Cases) (the "Consumer Action"), shall be settled and compromised upon the terms and conditions contained herein. Settlement Class Representatives and Home Depot are collectively referred to herein as the "Parties."

## I.   RECITALS

A.     In September of 2014, Home Depot announced that its payment data systems had been breached, which could potentially impact customers who used their debit and credit cards to make purchases at Home Depot stores located in the United States (the "Data Breach").

B.     After announcement of the Data Breach, multiple putative class action lawsuits were filed against Home Depot in jurisdictions across the country for Home Depot's alleged inadequate data security practices and delay in notifying customers of the Data Breach ("Data Breach Cases").

C.     On December 11, 2014, the Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated the Data Breach Cases and all tag-along cases for coordinated pretrial proceedings in the United States District Court for the Northern District of Georgia.

D.     In order to manage the litigation most efficiently, the Court created separate litigation tracks for Consumer Cases and Financial Institution Cases (Dkt. No. 36), and appointed separate leadership for each track. (Dkt. Nos. 60 & 62.) The Court appointed Co-Lead and Liaison Counsel for the Consumer Cases to, among other duties, direct and manage pretrial proceedings and coordinate settlement discussions or other dispute resolution efforts on behalf of Consumer Plaintiffs (as defined in Paragraph 4). (*Id.*)

E.     On May 1, 2015, the Consumer Plaintiffs filed a Consumer Plaintiffs Consolidated Class Action Complaint (the "Complaint") (Dkt. No. 93) against Home Depot asserting claims for alleged violations of state consumer protection statutes, state data breach notification statutes, and other state-specific statutes, negligence, breach of implied contract, and unjust enrichment, and seeking a declaratory judgment. On June 1, 2015, Home Depot moved to

dismiss the Consolidated Class Action Complaint (the "Motion to Dismiss"). The Court heard oral arguments on the Motion to Dismiss on October 22, 2015.

F.      Between September 1, 2015 and January 25, 2016, the Parties participated in two formal mediation sessions with mediator Jonathan B. Marks of MarksADR, LLC, engaged in numerous telephone conferences with Mr. Marks, and negotiated directly among counsel.

G.      On January 26, 2016, the Parties reached an agreement in principle on a proposed settlement for the Consumer Action and executed a settlement term sheet requiring submission of a final settlement agreement to the Court for preliminary approval within 45 days. That same day, the Parties notified the Court's clerk of their agreement in principle. The Parties did not discuss attorneys' fees, costs, and expenses prior to executing the settlement term sheet which memorialized the essential terms of the Parties' settlement.

H.      The Parties now agree to settle the Consumer Action in its entirety, without any admission of liability, with respect to all Released Claims (as defined in Paragraph 56) of the Settlement Class. The Parties intend this Agreement to bind Settlement Class Representatives, Home Depot, and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Consumer Action be settled, compromised, and dismissed on the merits and with prejudice as to Home Depot, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

II.     **DEFINITIONS**

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

1.      "Claims Deadline" means 180 days after the Notice Deadline.

2.      "Claim Form" or "Claim" means the form Settlement Class Members must submit to be eligible for relief under the terms of the Settlement, the proposed form of which is attached hereto as Exhibit C.

3.      "Class Counsel" means the Court-appointed co-lead and liaison counsel in the Consumer Action:

Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112

Roy E. Barnes
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060

David J. Worley
James M. Evangelista
**HARRIS PENN LOWRY, LLP**
400 Colony Square
1201 Peachtree Street, NE, Suite 900
Atlanta, GA 30361

John A. Yanchunis, Sr.
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N Franklin Street
Tampa, FL 33602

4.     "Consumer Plaintiffs" means the plaintiffs named in the Complaint.

5.     "Court" means the United States District Court for the Northern District of Georgia.

6.     "Data Breach" means the data breach first disclosed by Home Depot in September 2014.

7.     "Effective Date" means the first business day after which all of the following events have occurred: (a) Class Counsel and Home Depot's counsel have executed this Agreement; (b) the Court has entered the Final Approval Order (as defined in Paragraph 9) without material change to the Parties' agreed-upon proposed Final Approval Order as described in Section X; and (c) the time for seeking rehearing, appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired. The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amounts that Class Counsel requests ("Fee Request"). Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Fee Request awarded to Class Counsel.

8.     "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards (as defined in Paragraph 60). In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

3

9.    "Final Approval Order" means the order and judgment that the Court enters upon Final Approval. In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

10.    "Net Settlement Fund" means the balance of the Settlement Fund after (1) deducting taxes on Settlement Fund, if any, and (2) the payment of any Service Awards.

11.    "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

12.    "Notice Deadline" means May 2, 2016.

13.    "Notice Program" means the notice plan and methods provided for in this Agreement and consists of (1) an e-mailed notice to those Settlement Class Members for whom Home Depot can ascertain an e-mail address from its records with reasonable effort ("E-Mail Notice"); (2) a direct-mail notice to those Settlement Class Members for whom Home Depot can ascertain a mailing address from its records with reasonable effort and for whom Home Depot did not provide an e-mail address ("Mail Notice"); (3) Publication Notice (as described in Paragraph 50); and (4) notice posted on the Settlement Website. The forms of notice shall be substantially in the forms attached as Exhibits D and E to this Agreement and approved by the Court. The Notice Program shall be effected in substantially the manner provided in Section IX.

14.    "Objection Deadline" means 75 days after the Notice Deadline.

15.    "Opt-Out Deadline" means 75 days after the Notice Deadline.

16.    "Personal Information" means payment card data including payment card account numbers, expiration dates, card verification values, and cardholder names from payment cards used at self-checkout lanes at U.S. Home Depot stores between April 10, 2014 and September 13, 2014, and/or e-mail addresses compromised as a result of the Data Breach.

17.    "Reasonable Documentation" means documentation supporting a claim for Substantiated Losses fairly traceable to the Data Breach. Non-exhaustive examples of Reasonable Documentation include credit card statements, bank statements, invoices, telephone records and receipts. Except as expressly provided in Paragraph 34, Substantiated Losses cannot be documented solely by a personal certification, declaration or affidavit from the claimant.

18.    "Releasing Parties" means the Settlement Class Representatives and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

19.    "Settlement" means the settlement into which the Parties have entered to resolve the Consumer Action. The terms of the Settlement are as set forth in this Agreement including the exhibits hereto.

20.    "Settlement Administrator" means KCC Class Action Services, LLC. Class Counsel and Home Depot may, by agreement, substitute a different Settlement Administrator, subject to approval by the Court. In the absence of agreement, either Class Counsel or Home Depot may move the Court to substitute a different Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

21.    "Settlement Class Members" or "Settlement Class" means all persons who fall within the settlement class definition set forth in Paragraph 25.

22.    "Settlement Fund" means thirteen million dollars ($13,000,000.00).

23.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice, the order preliminarily approving this Settlement, the Claim Form, the Complaint and such other documents as Class Counsel and Home Depot agree to post or that the Court orders posted on the website. These documents shall remain on the Settlement Website at least until Final Approval. The URL of the Settlement Website shall be agreed upon by Class Counsel and Home Depot. Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website. The Settlement Website shall not include any advertising and shall remain operational until at least 30 days after the Claims Deadline.

24.    "Substantiated Losses" means out-of-pocket losses, unreimbursed charges, and time spent remedying issues fairly traceable to the Data Breach for which the Settlement Class Member submits Reasonable Documentation. Non-exhaustive examples of Substantiated Losses include unreimbursed expenses related to fraud and identity theft, as well as any consequential expenses related to the fraud or identity theft including late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, card cancellation or replacement fees, credit-related costs related to purchasing credit reports, credit monitoring or identity theft protection, costs to place a freeze or alert on credit reports, costs to replace driver's license, state identification card, or social security number and time spent remedying the foregoing.

## III.    **<u>SETTLEMENT CLASS</u>**

25.    For settlement purposes only, the Parties agree that the Court should certify the following class pursuant to Fed. R. Civ. P. 23(b)(3), defined as:

> All residents of the United States whose Personal Information was compromised as a result of the Data Breach first disclosed by Home Depot in September 2014.

26.    Excluded from the Settlement Class is the judge presiding over this matter and any members of his judicial staff, the officers and directors of Home Depot, and persons who timely and validly request exclusion from the Settlement Class.

27.     For settlement purposes only, Class Counsel shall seek, and Home Depot shall not oppose the appointment of Class Counsel as settlement class counsel and appointment of the persons listed in Exhibit A as settlement class representatives ("Settlement Class Representatives"). The Settlement Class Representatives listed in Exhibit A include 87 of the plaintiffs named in the Complaint and Stephen Fenerjian, a Home Depot customer who had only his e-mail address compromised as a result of the Data Breach. Settlement Class Representatives will move for certification of the Settlement Class contemporaneously with their motion for preliminary approval of the Settlement. Home Depot agrees not to contest certification of the Settlement Class.

## IV.    SETTLEMENT CONSIDERATION

28.     Home Depot agrees to pay thirteen million dollars ($13,000,000.00), exclusive of Class Notice and Administrative Costs, Attorneys' Fees and Expenses to compensate Settlement Class Members who suffered out-of-pocket losses or unreimbursed charges fairly traceable to the Home Depot data breach and/or spent time remedying the foregoing, as set forth in Section V. Additionally, subject to the limitations set forth in Section VI, Home Depot will pay six and a half million dollars ($6,500,000.00) to fund 18 months of Identity Guard "Essentials" account monitoring services to Settlement Class Members who used a debit or credit card at a self-checkout lane at a U.S. Home Depot store between April 10 and September 13, 2014 that was compromised as a result of the Data Breach, who elect to enroll in this service.

29.     Establishment of Settlement Fund. Within fifteen (15) calendar days of the Effective Date, Home Depot shall deposit the sum of thirteen million dollars ($13,000,000.00) into an Escrow Account to create the Settlement Fund. Class Counsel and/or the Settlement Administrator shall timely furnish to Home Depot any required account information, wiring instructions or necessary forms before the payment is made.  The Settlement Fund shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. The Settlement Administrator shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Fund and the monies deposited into the Settlement Fund, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1 .468B-l. Home Depot shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Fund pursuant to Treas. Reg. § 1.468B- l. All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

30.     Distribution of the Settlement Fund. Disbursements from the Settlement Fund will be made to (a) pay any taxes due on the account as set forth in Paragraph 29; (b) pay Service Awards as the Court may approve as set forth in Paragraph 60; and (c) pay Settlement Class Members as set forth in Section V and in accordance with the Distribution and Allocation Plan attached as Exhibit B. If the amounts paid under Paragraphs 32-34 collectively do not exhaust the Settlement Fund, Home Depot shall receive a credit as set forth in Paragraph 36.

31. <u>Injunctive Relief</u>. Home Depot agrees to adopt and implement at least the following data security measures with regard to its U.S. stores for a period of two years following the execution of this Settlement Agreement:

a. <u>Chief Information Security Officer</u>. Home Depot will maintain an executive position with responsibility to coordinate and be responsible for the company's program(s) to protect the security of customers' Personal Information.

b. <u>Product and Data Risk Assessments</u>. Home Depot will perform on a routine basis a risk assessment that identifies material internal and external risks to the security of customers' Personal Information stored on Home Depot's systems. These risk assessments, at a minimum, will consider risks associated with: (i) employee training and management; (ii) software design and testing, and (iii) vendor data management and security practices.

c. <u>Safeguard Design Resulting From Risk Assessments</u>. Home Depot will design and implement reasonable safeguards to manage the risks, if any, identified through its risk assessments.

d. <u>Vendor Program</u>. Home Depot will develop and use reasonable steps to select and retain service providers capable of maintaining security practices consistent with the requirements set forth herein.

e. <u>Dynamic Security Program</u>. Home Depot will evaluate and adjust as reasonably necessary its systems on which and by which customers' Personal Information is stored in light of: (i) the results of the testing and monitoring required by this Agreement; (ii) any material changes to its operations or business arrangements; or (iii) any other circumstances that it knows or has reason to know may have a material impact on the effectiveness of its security program.

f. <u>Notice</u>. Home Depot will maintain and make available to its customers clear written disclosures explaining that it stores certain customer information and describing how the company uses that information.

g. <u>Employee Education</u>. Home Depot will maintain a program to educate and train its workforce on the importance of the privacy and security of its customers' Personal Information.

h. <u>Enhanced Security Measures</u>. With respect to all consumer credit and debit transactions in Home Depot's U.S. stores, Home Depot will: (i) encrypt all payment card data at the time that such data is input at the point of sale; (ii) not retain the card security code data, the PIN verification code number, or the full contents of any track of magnetic stripe data, after the authorization of the transaction or in the case of a PIN debit transaction, for more than 48 hours after authorization of the transaction; and (iii) implement and utilize EMV chip card technology.

## V.     DISTRIBUTION PLAN

The Net Settlement Fund shall be distributed as follows:

32.     <u>Documented Claims</u>. Settlement Class Members who submit a valid Claim Form and Reasonable Documentation of Substantiated Losses are eligible for reimbursement of Substantiated Losses and lost time (as set forth in Paragraphs 33-34) up to a maximum of $10,000. Settlement Class Members may only make a single claim under the fund.

33.     <u>Documented Time</u>. Settlement Class Members with Reasonable Documentation of Substantiated Losses for time spent remedying issues fairly traceable to the Data Breach may submit a claim for up to five hours of such time to be compensated at $15 per hour.

34.     <u>Self-Certified Time</u>. Settlement Class Members with Reasonable Documentation of Substantiated Losses for out-of-pocket losses or unreimbursed charges who cannot separately document their time remedying issues fairly traceable to the Data Breach may self-certify the amount of time they spent remedying the foregoing and file a claim for up to two hours at $15 per hour.

35.     <u>Pro-Rata Contingency</u>: To the extent verified claims exceed the Net Settlement Fund, the cash benefit to each Settlement Class Member shall be reduced and distributed by the Settlement Administrator on a *pro rata* basis.

36.     <u>Distribution of Remaining Funds</u>:

a.  If the amounts paid under Paragraphs 32-34 do not exhaust the Net Settlement Fund, then Home Depot shall receive a credit in the form of reimbursement from the Net Settlement Fund for the lesser of (a) an amount that exhausts the Net Settlement Fund or (b) the amount paid for Identity Guard Monitoring Services as set forth in Section VI.

b.  If the amounts paid under Paragraph 36a do not exhaust the Net Settlement Fund, then Home Depot shall receive a credit in the form of reimbursement from the Net Settlement Fund for the lesser of (a) an amount that exhausts the Net Settlement Fund or (b) the amount paid for Class Notice and Administrative Costs as set forth in Section IX.

c.  If the amounts paid under Paragraphs 36b do not exhaust the Net Settlement Fund, then any remaining funds shall be distributed *pro rata* to Settlement Class Members submitting Documented Claims as set forth in Paragraphs 32-34, or as otherwise directed by the Court.

## VI.   <u>IDENTITY GUARD MONITORING SERVICES</u>

37.   For Settlement Class Members who used a debit or credit card at a self-checkout lane at a U.S. Home Depot store between April 10 and September 13, 2014 that was compromised as a result of the Data Breach, Home Depot will fund 18 months of Identity Guard "Essentials" account monitoring services ("Identity Guard Monitoring Services") to those Settlement Class Members who elect to enroll as part of the settlement claims process. The Settlement Administrator shall establish a reasonably practical procedure to verify the claimant is a member of the Settlement Class who used a debit or credit card at a self-checkout lane at a U.S. Home Depot store between April 10 and September 13, 2014 that was compromised as a result of the Data Breach.

38.   If the number of Settlement Class Members eligible to enroll in Identity Guard Monitoring Services is 40 million persons or fewer, Home Depot shall pay six and a half million dollars ($6,500,000.00) to Intersections Inc., the provider of the Identity Guard Monitoring Services, to cover all eligible Settlement Class Members who elect to claim this benefit. If the number of Settlement Class Members eligible to enroll in Identity Guard Monitoring Services exceeds 40 million persons, the cost of the Identity Guard Monitoring Services shall increase at a rate of $16,250 for every 100,000 eligible Settlement Class Members above 40 million, to be paid by Home Depot.

39.   Identity Guard Monitoring Services offered under this Settlement include: (a) Social Security number monitoring; (b) online "black market" monitoring; (c) financial account identity verification alerts; (d) financial account takeover alerts; (e) identity theft victim assistance; (f) lost wallet protection; (g) online username and password protection; and (f) one million dollars ($1,000,000.00) in identity theft insurance.

## VII.   <u>PRELIMINARY APPROVAL</u>

40.   Upon execution of this Agreement by the Parties, Class Counsel shall promptly move the Court for an order granting preliminary approval of this Settlement ("Preliminary Approval Order"), substantially in the form of Exhibit F. The motion for preliminary approval shall request that the Court: (1) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notice; (4) approve the procedures set forth in Section IX for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay all proceedings in the Consumer Action unrelated to the Settlement pending Final Approval of the Settlement; (6) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim; and (7) schedule a Final Approval hearing for a time and date convenient for the Court, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses ("Final Approval Hearing").

41.     Within 10 days of the filing of the motion for preliminary approval, Home Depot, at its own expense, shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

## VIII.  SETTLEMENT ADMINISTRATOR

42.     The Settlement Administrator shall administer various aspects of the Settlement as described in Paragraph 43 and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, overseeing administration of the Settlement Fund; providing E-mail Notice and Mail Notice to Settlement Class Members as described in Section IX; effecting Publication Notice; establishing and operating the Settlement Website and a toll-free number; administering the Claims processes; and distributing cash payments according to the processes and criteria set forth herein and in Exhibits B through E and G.

43.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

    a.  Obtaining from Home Depot the name, mailing address, and/or e-mail address information of Settlement Class Members for the purpose of sending E-Mail Notice and Mail Notice to Settlement Class Members to the extent that such information is reasonably available from Home Depot's records;

    b.  Obtaining from Home Depot information necessary to establish a reasonably practical procedure to verify Settlement Class Members who used a debit or credit card at a self-checkout lane at a U.S. Home Depot store between April 10 and September 13, 2014, and had their Personal Information compromised, including a mechanism to verify such Settlement Class Members who do not have access to the their compromised payment card number;

    c.  Effecting the Publication Notice;

    d.  Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

    e.  Establishing and maintaining the Settlement Website;

    f.  Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

    g.  Responding to any mailed Settlement Class Member inquiries;

    h.  Processing all written notifications of exclusion from the Settlement Class;

     i.   Providing weekly reports and, no later than ten days after the Opt-Out Deadline, a final report to Class Counsel and Home Depot, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information as requested by Class Counsel and Home Depot's counsel;

     j.   In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

     k.   Reviewing, determining the validity of, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria set forth in Sections V and VI;

     l.   After the Effective Date, processing and transmitting distributions to Settlement Class Members in accordance with Sections IV and V;

     m.   Providing weekly reports and a final report to Class Counsel and Home Depot that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel and Home Depot's counsel; and

     n.   Performing any function related to Settlement administration at the agreed-upon instruction of both Class Counsel and Home Depot, including, but not limited to, verifying that cash payments have been distributed in accordance with Sections IV and V.

44.    All costs incurred by the Settlement Administrator shall be borne by and separately paid by Home Depot. These payments shall be made separate and apart from the Settlement Fund, subject to the Distribution of Remaining Funds provisions set forth in Paragraph 36.

## IX.   NOTICE, OPT-OUTS, AND OBJECTIONS

45.    Upon Preliminary Approval of the Settlement, at the direction of Class Counsel, the Settlement Administrator will implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information.

46.     The Notice Program has four components: (1) E-Mail Notice; (2) Mail Notice; (3) Publication Notice; and (4) Notice on the Settlement Website. The Settlement Administrator shall send E-mail Notice to all Settlement Class Members for whom Home Depot can ascertain an e-mail address from its records with reasonable effort. If an e-mail address cannot be ascertained or the Settlement Administrator learns (through an email bounce-back or otherwise) that the e-mail address in Home Depot's records is invalid, the Settlement Administrator shall send direct Mail Notice to all Settlement Class Members for whom Home Depot can ascertain a mailing address from its records with reasonable effort. For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified. The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable.

47.     The Notice shall include a procedure for Settlement Class Members to exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include the individual's name and address; a statement that he or she wants to be excluded from the Consumer Action; and the individual's signature. The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing. Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement.

48.     The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses. Objections to the Settlement or to the application for fees, costs, and expenses must be filed electronically with the Court, or mailed to the Clerk of Court, Class Counsel, and Home Depot's counsel. For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Home Depot's Counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth:

     a.   the name of the Consumer Action;

     b.   the objector's full name, address, email address, and telephone number;

     c.   an explanation of the basis upon which the objector claims to be a Settlement Class Member;

     d.   all grounds for the objection, accompanied by any legal support for the objection;

e. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Awards;

f. the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

g. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

h. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

i. any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

j. a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

k. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l. the objector's signature on the written objection (an attorney's signature is not sufficient).

49. The E-Mail and Mail Notice Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable.

50. The Settlement Administrator shall effectuate the Publication Notice by arranging for publication of the Publication Notice in an appropriate nationwide magazine substantially in a form as that attached as Exhibit D to this Agreement. The Settlement Administrator may also utilize other means of Publication Notice including through electronic media. Publication Notice shall be completed by the Notice Deadline.

51.     The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court. The Notice shall be posted on the Settlement Website by the Notice Deadline.

52.     Within seven (7) days after the Notice Deadline, the Settlement Administrator shall provide Class Counsel and Home Depot with one or more affidavits confirming that the E-mail Notice and Mail Notice Program, Publication Notice, and posting of Notice on the Settlement Website were completed in accordance with the Parties' instructions and the Court's approval. Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representatives' motion for final approval of the Settlement.

53.     Home Depot shall pay all costs and expenses associated with providing notice to Settlement Class Members including, but not limited to, the Settlement Administrator's fees. These payments shall be made separate and apart from the Settlement Fund, subject to the Distribution of Remaining Funds provisions set forth in Paragraph 36.

## X.     FINAL APPROVAL ORDER AND JUDGMENT

54.     Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. The Final Approval Hearing shall be scheduled no earlier than 90 days after the CAFA notices are mailed to ensure compliance with 28 U.S.C § 1715. By no later than 21 days prior to the Objection Deadline, Plaintiffs shall file a motion for final approval of the Settlement and a motion for attorneys' fees, costs, and expenses and for Service Awards. By no later than 14 days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards. At the Final Approval Hearing, the Court will consider Settlement Class Representatives' motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the application for attorneys' fees, costs, expenses and for Service Awards, provided the objectors filed timely objections that meet all of the requirements listed in Paragraph 48.

55.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and the Service Awards. The proposed Final Approval Order that will be filed with the motion for final approval shall be in a form agreed upon by Class Counsel and Home Depot. Such proposed Final Approval Order shall, among other things:

      a.   Determine that the Settlement is fair, adequate, and reasonable;

      b.   Finally certify the Settlement Class for settlement purposes only;

    c.   Determine that the Notice provided satisfied Due Process requirements;

    d.   Dismiss the Consumer Action with prejudice;

    e.   Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section XI, including during the pendency of any appeal from the Final Approval Order;

    f.   Release Home Depot and the Released Parties from the Released Claims, as set forth in Section XI; and

    g.   Reserve the Court's continuing and exclusive jurisdiction over Home Depot and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.   RELEASES

56.    As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Home Depot and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively the "Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Data Breach that were or could have been alleged in the Consumer Action, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the theft, exposure or disclosure of Settlement Class Members' Personal Information; (2) Home Depot's maintenance and storage of Settlement Class Members' Personal Information; (3) Home Depot's information security policies and practices; and (4) Home Depot's notice of the Data Breach to Settlement Class Members (the "Released Claims").

57.    For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 *et seq*., California Civil Code § 1750 *et seq*., California Civil Code § 1798.80 *et seq*., California Civil Code § 56.10 *et seq*., and any similar statutes or data breach notification statutes in effect in the United States or in any states in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether

fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief. The Released Claims do not include any claims arising from or relating to any conduct by Home Depot after the date the Agreement is executed.

58.     As of the Effective Date, the Released Parties will be deemed to have completely released and forever discharged the Releasing Parties and Class Counsel from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Consumer Action.

59.     Upon entry of the Final Judgment, the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## XII.   ATTORNEYS' FEES, COSTS, EXPENSES AND SERVICE AWARDS

60.     Service Awards. Class Counsel will ask the Court to approve, and Home Depot will not oppose, service awards not to exceed $1,000 for each Settlement Class Representative and Consumer Plaintiff, which are intended to compensate such individuals for their efforts in the litigation and commitment on behalf of the Settlement Class ("Service Awards"). Any Service Awards approved will be paid from the Settlement Fund. Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Agreement.

61.     Attorneys' Fees, Costs and Expenses. Home Depot agrees to pay the reasonable attorneys' fees, costs and expenses of counsel for the Consumer Plaintiffs separate from and in addition to the Settlement Fund. Class Counsel will make its application for such attorneys' fees, costs and expenses pursuant to a Fee Request at least 21 days before the Objection Deadline. Home Depot reserves the right to object to Class Counsel's request for attorneys' fees; provided, however, that Home Depot waives its right to appeal if the amount awarded by the Court in attorneys' fees does not exceed $8,475,000.00. In addition, Home Depot agrees not to oppose Class Counsel's request for reimbursement of reasonable costs and expenses up to $300,000.00. Any award of attorneys' fees, costs, and expenses shall be paid separate from and in addition to

the Settlement Fund. The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount on their Fee Request and shall not alter the Effective Date.

62.     Within ten (10) business days of the later of the Effective Date or a final order approving Class Counsel's Fee Request after the time for seeking rehearing, appellate or other review of the Fee Request has expired, Home Depot shall pay to Class Counsel all Court-approved attorneys' fees, costs, and expenses. In the event that the award of attorneys' fees, costs, and expenses is reduced on appeal, Home Depot shall only pay the reduced amount of such award. Class Counsel shall timely furnish to Home Depot any required tax information, account information or necessary forms before the payment is due.

63.     The payment of attorneys' fees, costs, and expenses pursuant to Paragraphs 61-62 shall be made through a wired deposit by Home Depot into the attorney client trust account to be designated by Class Counsel. After the attorneys' fees, costs, and expenses have been deposited into this account, Class Counsel shall be solely responsible for allocating such attorneys' fees, costs, and expenses and distributing each participating firm's allocated share of such attorneys' fees, costs, and expenses to that firm and Home Depot shall have no responsibility for distribution of attorneys' fees, costs, or expenses among participating firms.

64.     In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amounts that Class Counsel requests, the remaining provisions of this Agreement shall remain in full force and effect. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of attorneys' fees, costs, and expenses shall constitute grounds for cancellation or termination of this Agreement.

## XIII.  **TERMINATION**

65.     Home Depot shall have the sole discretion to terminate the Settlement Agreement if a certain percentage of the total number of Settlement Class Members submit valid requests to opt out as separately agreed to by the Parties and submitted to the Court for *in camera* review.

66.     This Settlement may be terminated by either Settlement Class Representatives or Home Depot by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 14 days (or such longer time as may be agreed between Class Counsel and Home Depot) after any of the following occurrences:

  a.  Class Counsel and Home Depot agree to termination before the Effective Date;

  b.  The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

  c.  An appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

d.   The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Approval Order, or the Settlement; or

e.   The Effective Date does not occur.

67.    In the event of a termination as provided in Paragraphs 65-66, this Agreement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Consumer Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIV.   <u>NO ADMISSION OF LIABILITY</u>

68.    Home Depot disputes the claims alleged in the Consumer Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Home Depot has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Consumer Action.

69.    Class Counsel and Settlement Class Representatives believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel and Settlement Class Representatives have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

70.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

71.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Consumer Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Consumer Action or in any proceeding in any court, administrative agency or other tribunal.

## XV.   **MISCELLANEOUS**

72.    Singular and Plurals. As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

73.    Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

74.    Cooperation of Parties. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

75.    Obligation To Meet And Confer. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

76.    Integration. This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

77.    No Conflict Intended. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

78.    Governing Law. The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Georgia, without regard to the principles thereof regarding choice of law.

79.    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

80.    Jurisdiction. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

81.   <u>Notices</u>. All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

        Norman E. Siegel
        Barrett J. Vahle
        **STUEVE SIEGEL HANSON LLP**
        460 Nichols Road, Suite 200
        Kansas City, MO 64112

        Roy E. Barnes
        John R. Bevis
        **THE BARNES LAW GROUP, LLC**
        31 Atlanta Street
        Marietta, GA 30060

        David J. Worley
        James M. Evangelista
        **HARRIS PENN LOWRY, LLP**
        400 Colony Square
        1201 Peachtree Street, NE, Suite 900
        Atlanta, GA 30361

        John A. Yanchunis, Sr.
        **MORGAN & MORGAN**
        **COMPLEX LITIGATION GROUP**
        201 N Franklin Street
        Tampa, FL 33602

All notices to Home Depot provided for herein, shall be sent by overnight mail to:

        Phyllis B. Sumner
        S. Stewart Haskins II
        **KING & SPALDING LLP**
        1180 Peachtree Street, NE
        Atlanta, Georgia 30309

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly

provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

82.    <u>Authority</u>. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

83.    <u>No Construction Against Drafter</u>. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

Date: March 7, 2016

_____
Norman E. Siegel
STUEVE SIEGEL HANSON LLP

_____
John R. Bevis
BARNES LAW GROUP

_____
David J. Worley
HARRIS PENN LOWRY LLP

_____
John Yanchunis
MORGAN & MORGAN
COMPLEX LITIGATION GROUP

_____
Phyllis B. Sumner
KING & SPALDING

_____
S. Stewart Haskins
KING & SPALDING

_____
William P. Barnette
Assistant General Counsel,
THE HOME DEPOT

_____
David Steele
Deputy General Counsel,
THE HOME DEPOT

provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

82. Authority. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

83. No Construction Against Drafter. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

Date: _____ , 2016

Norman E. Siegel
STUEVE SIEGEL HANSON LLP

John R. Bevis
BARNES LAW GROUP

David J. Worley
HARRIS PENN LOWRY LLP

John Yanchunis
MORGAN & MORGAN
COMPLEX LITIGATION GROUP

Phyllis B. Sumner
KING & SPALDING

S. Stewart Haskins
KING & SPALDING

William P. Barnette
Assistant General Counsel,
THE HOME DEPOT

David Steele
Deputy General Counsel,
THE HOME DEPOT

21

# EXHIBIT A

## SETTLEMENT CLASS REPRESENTATIVES

1.  Catherine Adams
2.  Laureen Anyon
3.  Luis Araujo
4.  Kitaisha Araujo
5.  Kim Barrett
6.  Richard Bergeron
7.  Brenda Blough
8.  Dennis Borrell
9.  Martha Brantley
10. Brandyon Brantley
11. James Burden
12. Todd Burris
13. Ronald Castleberry
14. Dany Champion
15. Charles Chorman
16. Kent Coulson
17. Pauline Cuff
18. Daniel Durgin
19. Shonna Earls
20. Lawrence Elledge
21. David Erisman
22. Stephen Fenerjian
23. Scott Ferguson
24. DeAnn Fieselman
25. Larry Flores
26. Matthew Forrester
27. Glenda Fuller
28. Claude Garner
29. Marilyn Geller
30. Gary Gilchrist
31. Mary Gorman
32. Mary Hope Griffin
33. Jasmin Gonzales
34. James Hansen
35. Jeffrey Hartman
36. Douglas Hinton
37. Bruce Holdridge
38. Katherine Holmes
39. John Holt, Sr.
40. Nicholas Hott
41. Michelle Jhingoor
42. Walid Khalaf
43. Royce Kitchens
44. William Lambert
45. Kristine Larson
46. Pamela Lee
47. Ronald Levene
48. Kelli LoBello
49. Gary Lowenthal
50. Michael Marko
51. Allen Mazerolle
52. Rebecca McGhee
53. Scott McGiffid
54. Sandra McQuaig
55. Julian Metter
56. Joshua Michener
57. Bridgett Moody
58. Joseph Moran
59. Vincent Murphy
60. Nathanial Newton
61. Alexandra O'Brien
62. Jason O'Brien
63. Kelsey O'Brien
64. Steve O'Brien
65. Scott Pelky
66. Alma Pineda
67. Brion Reilly
68. Paula Ridenti
69. Raina Rothbaum
70. Travis Russell
71. Stephen Sadler
72. Barbara Saffran
73. Sara Saffran
74. John Simon
75. Carlton Smith
76. Sandra Smith
77. Michael Snow
78. Sandra Sowell
79. Mary Stenart
80. Mario Tolliver
81. Doug Travers
82. Inocencio Valencia
83. Robert Vandertoorn
84. Ivonda Washington
85. Samuel Welch
86. Linda Werak
87. Lindsay Wirth
88. Gilda Wynne

# EXHIBIT B

**DISTRIBUTION AND ALLOCATION PLAN**

*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*,
Case No. 1:14-md-02583-TWT (N.D. Ga.)

## I.    CLAIMS

1. Claim Form. The Claim Form shall be substantially in the form attached as Exhibit C to the Settlement Agreement.

2. Documented Claims. Settlement Class Members who submit a valid Claim Form and Reasonable Documentation of Substantiated Losses for out-of-pocket losses, unreimbursed charges, or time spent remedying issues fairly traceable to the Home Depot data breach are eligible for reimbursement of Substantiated Losses up to a maximum of $10,000 ("Documented Claim"). Settlement Class Members may submit a documented claim for up to five hours of time spent remedying issues fairly traceable to the Home Depot data breach to be compensated at $15 per hour. Settlement Class Members may only make a single claim under the fund. Settlement Class Members who choose to submit a Documented Claim must complete the "DOCUMENTED CLAIMS FOR OUT-OF-POCKET LOSSES, UNREIMBURSED CHARGES, OR TIME SPENT REMEDYING ISSUES RELATING TO THE DATA BREACH" section of the Claim Form, and submit reasonable documentation as specified in the Claim Form and Paragraph 17 of the Settlement Agreement.

3. Self-Certified Time Claims. Settlement Class Members with Reasonable Documentation of Substantiated Losses for out-of-pocket losses or unreimbursed charges who cannot separately document their time remedying issues fairly traceable to the Home Depot data breach may self-certify the amount of time they spent remedying issues relating to the data breach and file a claim for up to two hours at $15 per hour ("Self-Certified Time"). Settlement Class Members who choose to a claim for Self-Certified Time must provide an attestation by signing and dating the "SELF-CERTIFIED CLAIMS FOR TIME" section of the Claim Form.

4. Identity Guard Monitoring Services. Settlement Class Members who used a debit or credit card at a self-checkout lane at a U.S. Home Depot store between April 10, 2014 and September 13, 2014 and whose payment card information was compromised are eligible to enroll in 18 months of free Identity Guard® "Essentials" account monitoring services ("Identity Guard Monitoring Services"). Eligibility to enroll in Identity Guard Monitoring Services is not dependent on submission of a Documented Claim. Settlement Class Members who choose to enroll in Identity Guard Monitoring Services must complete the "IDENTITY GUARD® ESSENTIALS MONITORING SERVICES" section of the Claims Form.

## II.    CLAIM VALIDATION PROCESS

5.  Verification by the Settlement Administrator: The Settlement Administrator, in its sole discretion to be reasonably exercised, will evaluate claims submitted to determine whether: (a) the claimant is a Settlement Class Member; (b) the claimant used a debit or credit card at a self-checkout lane at a U.S. Home Depot store between April 10, 2014 and September 13, 2014 and had his/her payment card information compromised in order to enroll in Identity Guard Monitoring Services; (c) the Claim Form is complete and accurate; (d) the Settlement Class Member signed the attestation as required to submit a claim for Self-Certified Time; (d) the claimant provided the information needed to evaluate the Claim Form; and (e) for Documented Claims, the information and documentation submitted, if true, could lead a reasonable person to believe that, more likely than not, the claimant has suffered Substantiated Losses.

6.  Determination by the Settlement Administrator: The Settlement Administrator, in its discretion to be reasonably exercised, will determine the amount of Substantiated Losses for Documented Claims and/or Self-Certified Time Claims, up to a maximum of $10,000 per Settlement Class Member. The Settlement Administrator's decision will be final, subject to the dispute resolution process in Section III below.

## III.   DISPUTE RESOLUTION FOR DOCUMENTED CLAIMS

7.  Notification: If the Settlement Administrator determines the Substantiated Losses are less than the amount requested by the claimant (including claims submitted with documentation, but for which the Settlement Administrator determines the Substantiated Losses are $0), the Settlement Administrator will notify the claimant by mail within 21 days of receipt by the Settlement Administrator.

8.  Dispute Procedures: Recipients will have 14 days from receipt to respond to the Settlement Administrator by reply mail stating whether he or she accepts or rejects the Settlement Administrator's determination. If the claimant rejects the offer, the Settlement Administrator will have 10 days to reconsider the original determination, make a final determination, and communicate the final determination to the claimant by mail. The claimant will have 10 days to reply back to the Settlement Administrator by mail to accept or reject the final determination. If the claimant approves the final determination or fails to send a timely response to any communication from the Settlement Administrator, then the approved amount will be the amount to be paid. If the final determination is timely rejected by the claimant, then the dispute will be resolved in accordance with the procedures set out in Paragraphs 9-12 below.

9.  Claim File: After receipt of the claimant's rejection of the final determination, the Settlement Administrator will provide Class Counsel and Home Depot's Counsel (together "Counsel") with a copy of the Claim Form and documentation submitted by the claimant, and the communications between the Settlement Administrator and the claimant (the "Claim File").

10. <u>Counsel Determination</u>: Counsel will confer regarding the amount of Substantiated Losses. If Counsel agree that the claimant is entitled to the amount of Substantiated Losses requested on the Claim Form, their determination will be final. Counsel will inform the Settlement Administrator of their determination, and the Settlement Administrator will provide notice of the decision to the claimant.

11. <u>Claim Referee</u>: If Counsel agree that the claimant is entitled to less than the amount of Substantiated Losses requested on the Claim Form, or if they cannot agree on the amount of Substantiated Losses, they will notify the Settlement Administrator by email ("Counsel's Notice") and the dispute will be submitted to one or more neutral third parties designated by agreement of the Parties to make final decisions about disputed claims (the "Claim Referee").

12. <u>Final Decision</u>: After receipt of Counsel's Notice, the Settlement Administrator will provide the Claim Referee with a copy of the Claim File. The Claim Referee will not consider any other documentation or information in making a decision. The Claim Referee will make a final determination of the amount of Substantiated Losses based on whether the claimed amount or some portion of the claimed amount is reasonably supported in fact and more likely than not caused by the Home Depot Data Breach. The Claim Referee's decision will be final and not subject to appeal or further review.

IV. **DISTRIBUTION ORDER AND DISTRIBUTION OF REMAINING FUNDS**

13. <u>Distribution Order</u>: The Settlement Administrator will distribute the Net Settlement Fund in the following order: (1) payments to Settlement Class Members who submitted valid Documented Claims and/or Self-Certified Time Claims; (2) Service Awards to Settlement Class Representatives awarded by the Court.

14. <u>Pro-Rata Contingency</u>. To the extent valid Documented Claims and/or Self-Certified Time exceed the Net Settlement Fund, the cash benefit to each Settlement Class Member shall be reduced and distributed by the Settlement Administrator on a *pro rata* basis pursuant to Paragraph 35 of the Settlement Agreement

15. <u>Distribution of Remaining Funds</u>: If the distributions set forth in Paragraph 13 do not collectively exhaust the Net Settlement Fund, then the remaining proceeds will be distributed as set forth in Paragraph 36 of the Settlement Agreement.

# EXHIBIT C

*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*,
Case No. 1:14-md-02583-TWT (N.D. Ga.)

| |
|---|
| COMPLETE AND SIGN THIS FORM AND<br>FILE ONLINE NO LATER THAN<br>**[due date]**<br>at www.settlementwebsite.com<br>or file by mail postmarked by **[due date]** |

## CLAIM FORM

### CLASS MEMBER INFORMATION

Full Name: _____

Mailing Address: _____

City: _____ State: _____ ZIP: _____

Telephone Number: _____

Email Address (optional): _____
(if provided, we will communicate primarily by email about your claim)

### SETTLEMENT OVERVIEW

### Documented Losses and Time
If you have documentation establishing that you suffered out-of-pocket losses, unreimbursed charges, or time spent remedying issues relating to the Home Depot data breach, you can make a claim for reimbursement up to $10,000, including up to 5 hours of documented time at $15 per hour. If you have documented out-of-pocket losses or unreimbursed charges, you will be eligible to self-certify your time spent remedying issues relating to the data breach at $15 per hour for up to 2 hours.

### Monitoring Services
If you used a credit or debit card at a self-checkout lane at a U.S. Home Depot store between April 10, 2014 and September 13, 2014, and your payment card information was compromised, you are eligible to enroll in 18 months of free Identity Guard® Essentials identity monitoring services, regardless of whether you are eligible to submit a claim for documented losses or time. You may make a claim for documented losses or time and also enroll in monitoring services.

*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*,
Case No. 1:14-md-02583-TWT (N.D. Ga.)

---

1.  Did you receive notice from the settlement administrator that your personal information was compromised as a result of the data breach announced by Home Depot in September of 2014?

    <u>Yes</u> ☐ (*Provide ClaimID number below and skip to Question No. 3*) <u>No</u> ☐ (*Proceed to Question 2*)

    <u>ClaimID</u>: __ __ __ __ __ __ __ __

---

2.  Did you use a credit or debit card at a self-checkout lane at a United States Home Depot store between April 10, 2014 and September 13, 2014?

    <u>Yes</u> ☐ If available, please provide the last six digits of your compromised credit or debit card here: __ __ __ __ __ __

    OR

    If you canceled your card or your card is no longer in your possession, please enter the location of the store where the card was used: _____

    (*Proceed to Question 3*)


    <u>No</u> ☐ (*You are not eligible to submit a claim*)

    **If you have questions about whether you are eligible to submit a claim, please contact the Settlement Administrator at 1-800-xxx-xxxx or visit www.settlementwebsite.com.**

---

<u>**DOCUMENTED CLAIMS FOR OUT-OF-POCKET LOSSES, UNREIMBURSED CHARGES, OR TIME SPENT REMEDYING ISSUES RELATING TO THE DATA BREACH**</u>

---

3.  Do you have documents supporting that you experienced out-of-pocket losses, unreimbursed charges, or time spent remedying issues relating to the Home Depot data breach?

    <u>Yes</u> ☐ (*Proceed to Question 4*) <u>No</u> ☐ (*You are not eligible to submit a documented claim; skip to Question No. 6*)

---

| Loss Type (Check all that apply) | Date of Loss | Amount of Loss | Description of Supporting Documentation (Identify what you are attaching and why) |
|---|---|---|---|

*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*,
Case No. 1:14-md-02583-TWT (N.D. Ga.)

| | | | |
|---|---|---|---|
| ☐ Unauthorized charges on credit or debit card that were not reimbursed | | | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges* |
| ☐ Costs and expenses spent addressing identity theft or fraud as a result of Home Depot data breach | | | *Examples: Receipt or account statement reflecting fuel costs for driving to bank or filing police report; Receipt for hiring service to assist you in addressing identity theft* |
| ☐ Losses caused by restricted access to funds (*i.e.*, costs of taking out a loan, ATM withdrawal fees) | | | *Examples: Account statement with ATM withdrawal highlighted; Loan agreement or bank statement with additional interest paid highlighted* |
| ☐ Preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review | | | *Example: Receipts or account statements reflecting purchases made for credit monitoring services or to place a credit freeze* |
| ☐ Losses caused by e-mail related fraud such as phishing scams | | | *Example: Documentation establishing that money was transferred as part of an email fraud (e.g., money sent to a fake charitable organization after being solicited by email)* |

*In re: The Home Depot, Inc., Customer Data Security Breach Litigation,*
Case No. 1:14-md-02583-TWT (N.D. Ga.)

| | | | |
|---|---|---|---|
| ☐ Late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees as a result of Home Depot data breach | | | *Example: Account statements reflecting overdraft fees* |
| ☐ Time spent remedying issues relating to the Home Depot data breach | | **Number of Hours Spent _____** | *Examples: Phone bill reflecting time spent on phone with bank; Receipt or account statement reflecting purchases for fuel used to drive to bank or file police report (provide detailed description here)* |
| ☐ Other (provide detailed description) | | | *Please provide detailed description* |

## SELF-CERTIFIED CLAIMS FOR TIME

| |
|---|
| 4.  Did you submit documentation supporting that you experienced out-of-pocket losses, unreimbursed charges, or time spent remedying issues relating to the Home Depot data breach?<br><br>Yes ☐ (*Proceed to Question No. 5*) No ☐ (*You are not eligible to self-certify a claim for time; skip to Question No. 6*) |
| 5.  Did you spend time or additional time other than what is documented above remedying issues relating to the Home Depot data breach?<br><br>Yes ☐ (*Please fill out the attestation section below*) No ☐ (*You are not eligible to self-certify a claim for time; skip to Question No. 6*) |

*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*,
Case No. 1:14-md-02583-TWT (N.D. Ga.)

## ATTESTATION AND SIGNATURE

I hereby attest that I spent (up to two) _____ hours remedying issues relating to the Home Depot data breach to be reimbursed at a rate of $15 per hour. I certify that the information I am providing in this claim form is true and correct.

Name: _____

Signature: _____

Date: _____

## IDENTITY GUARD® ESSENTIALS IDENTITY MONITORING SERVICES

6.  Did you use a credit or debit card at a self-checkout lane at a United States Home Depot store between April 10, 2014 and September 13, 2014 and have your payment card information compromised?

    <u>Yes</u> ☐ (*Proceed to Question No. 7*) <u>No</u> ☐ (*You are not eligible to enroll in monitoring services*)

    **If you have questions about whether you are eligible for monitoring services, please contact the Settlement Administrator at 1-800-xxx-xxxx or visit www.settlementwebsite.com.**

7.  You are eligible to enroll in 18 months of free Identity Guard® Essentials identity monitoring services. Do you wish to enroll?

    <u>Yes</u> ☐ By checking here, you will receive enrollment instructions shortly after final approval of the Settlement.  Please provide the email address where you would like to receive enrollment instructions: _____.

    <u>No</u> ☐ (*You have completed the claims process; thank you for participating*)

# EXHIBIT D

<u>LEGAL NOTICE</u>

# If You Used a Credit or Debit Card at a Self-Checkout Lane at a U.S. Home Depot Store Between April 10, 2014 and September 13, 2014 or Received Notice From Home Depot That Your Information Was Compromised, You May Be Eligible for Benefits from a Data Breach Class Action Settlement

A settlement has been proposed in lawsuits against The Home Depot, Inc. ("Home Depot") relating to Home Depot customers whose credit or debit card information or email information was stolen as a result of a data breach that was first disclosed in September 2014 ("Home Depot Data Breach").

## Who is included in the Settlement?

You are a member of the Settlement Class if: (1) you used your credit or debit card at a self-checkout terminal at a U.S. Home Depot store between April 10, 2014 and September 13, 2014 and your payment card information was compromised; or (2) you received notification that your e-mail address was compromised; or (3) you received an email notice stating that you are a Class Member. **If you are not sure whether you are included in the Settlement Class, call 1-8xx-xxx-xxxx.**

## What does the Settlement provide?

**Cash Fund:** A $13 million Settlement Fund will provide payments to consumers who have documented losses caused by the Home Depot Data Breach. If you are included in the Settlement Class, you may be entitled to receive reimbursement of your documented losses relating to the Home Depot Data Breach, as well as time spent remedying issues relating to the data breach, up to $10,000.

**Monitoring Services**: Regardless of whether you submit a claim for documented losses or time, if you used a credit or debit card at a self-checkout lane at a U.S. Home Depot store between April 10, 2014 and September 13, 2014 and your payment card information was compromised, you are eligible to enroll in 18 months of free Identity Guard® Essentials identity monitoring services.

You may make claims for **both** reimbursement under the Cash Fund and for Monitoring Services.

## How can I get a payment?

Submit a Claim Form online or by mail by **Month XX, 2016**.

## What are my rights?

Unless you exclude yourself, you will be bound by the Court's decisions and you will give up your right to sue Home Depot for the legal claims resolved by this Settlement. If you want to keep your right to sue Home Depot for the legal claims resolved by this Settlement, you must exclude yourself by **Month XX, 2016**. If you stay in the Settlement, you may object to it by **Month XX, 2016**. The U.S. District Court for the Northern District of Georgia will hold a hearing in this case (*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 1:14-md-02583-TWT) on **Month XX, 2016** to consider whether to approve the Settlement, a request for attorneys' fees of up to $8,475,000.00, to be paid by Home Depot separate from and in addition to the Cash Fund, reimbursement of reasonable costs and expenses, and service awards of up to $1,000 each for the Settlement Class Representatives. If you have not excluded yourself from the settlement, you or your own lawyer may appear and speak at the hearing at your own expense.

## For More Information: 1-8XX-XXX-XXXX
## www._____.com

# EXHIBIT E

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

# If You Used a Credit or Debit Card at a Self-Checkout Lane at a U. S. Home Depot Store Between April 10, 2014 and September 13, 2014 or Received Notice From Home Depot That Your Information Was Compromised, You May Be Eligible for Benefits from a Data Breach Class Action Settlement

For more information, visit www._____.com or call 1-8XX-XXX-XXXX.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

A settlement has been proposed in lawsuits against The Home Depot, Inc. and Home Depot U.S.A., Inc. ("Home Depot") relating to Home Depot customers whose credit or debit card information or email information was stolen as a result of a data breach that was first disclosed in September 2014 ("Home Depot Data Breach").

- Cash Fund: A $13 million Settlement Fund will provide payments to consumers who have documented losses caused by the Home Depot Data Breach. If you are included in the Settlement Class, you may be entitled to receive reimbursement of your documented losses relating to the Home Depot Data Breach, as well as time spent remedying issues relating to the data breach, up to $10,000.

- Monitoring Services: Regardless of whether you submit a claim for documented losses, if you used a credit or debit card at a self-checkout lane at a U.S. Home Depot store between April 10, 2014 and September 13, 2014 and your payment card information was compromised, you are eligible to enroll in 18 months of free Identity Guard® Essentials identity monitoring services. You may make claim for both reimbursement under the Cash Fund and for Monitoring Services.

Your legal rights are affected whether or not you respond. ***Read this notice carefully.***

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| FILE A CLAIM | The only way to get benefits under this settlement. |
| ASK TO BE EXCLUDED | Get no benefits. This is the only option that may allow you to sue Home Depot over the claims being resolved by this settlement. |
| OBJECT | Write to the Court about why you don't think the settlement is fair, reasonable, or adequate. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| IF YOU DO | Get no benefits. Give up your rights to sue Home Depot about the legal |

| NOTHING | claims in this case. |
|---------|----------------------|

- **Your rights and options—and the deadlines to exercise them—are explained in this notice**.

- The Court still must decide whether to approve the Settlement. No payments will be made until after the Court grants final approval of the Settlement and all appeals, if any, are resolved.

## BASIC INFORMATION

### 1.  Why is there a notice?

A Court authorized this notice because you have a right to know about a proposed settlement in several lawsuits against Home Depot, and all of your options, before the Court decides whether to give final approval to the settlement. This notice explains the nature of the lawsuits, the general terms of the settlement, and your legal rights and options.

The lawsuits were brought on behalf of consumers whose credit/debit card information or personal information was stolen as a result of the Home Depot Breach. Judge Thomas W. Thrash of the U.S. District Court for the Northern District of Georgia is overseeing this litigation. The litigation is known as *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. 1:14-md-02583-TWT. The consumers who sued are called the "Plaintiffs." Home Depot is the "Defendant."

### 2.  What is this lawsuit about?

In September 2014, Home Depot announced that it had been the victim of a data breach by third-party intruders who stole payment card data from consumers who made purchases using a self-checkout terminal at a U.S. Home Depot store between April 10, 2014 and September 13, 2014. The intruders also stole a separate email file which contained the email addresses of certain Home Depot customers. Plaintiffs claim that Home Depot did not adequately protect its payment card data and personal information and that Home Depot delayed in providing notice of the data breach. Home Depot denies any wrongdoing, and no court or other judicial entity has made any judgment or other determination of any wrongdoing.

### 3.  Why is this a class action?

In a class action, one or more people called "class representatives" sue on behalf of themselves and other people with similar claims. All of these people together are the "class" or "class members." One court resolves the issues for all class members, except for those who exclude themselves from the settlement class.

### 4.  Why is there a settlement?

The Court has not decided in favor of Plaintiffs or Home Depot. Instead, both sides agreed to a settlement. Settlements avoid the costs and uncertainty of a trial and related appeals, while

Questions? Go to www._____.com or call 1-8xx-xxx-xxxx

providing benefits to members of the settlement class ("Settlement Class Members"). The "Settlement Class Representatives" appointed to represent the class, and the attorneys for the Settlement Class ("Settlement Class Counsel," *see* Question 17) think the settlement is best for all Settlement Class Members.

## WHO IS PART OF THE SETTLEMENT?

**5.   How do I know if I am part of the settlement?**

You are a member of the Settlement Class and affected by the settlement if your personal information was stolen as a result of the Home Depot Data Breach.

You are a member of the Settlement Class if:

- You used your credit or debit card at a self-checkout lane at a U.S. Home Depot store between April 10, 2014 and September 13, 2014 and your payment card information was compromised;
- You received notification that your e-mail address was compromised; or
- You received a settlement notice by email stating that you are a Class Member.

Excluded from the settlement are:

- Officers and directors of Home Depot;
- The presiding judge and any judicial staff involved in the lawsuit; and
- Any Class Member who opts out (*see* Question 14).

**If you are not sure whether you are included in the Settlement Class, call 1-8xx-xxx-xxxx.**

## THE SETTLEMENT BENEFITS

**6.   What does the settlement provide?**

Home Depot will pay $13 million into a Settlement Fund to make payments to eligible Settlement Class Members and service payments to the Settlement Class Representatives (*see* Question 18). Home Depot has also agreed to pay attorneys' fees, costs, and expenses (*see* Question 18) and the costs of notifying the class and administering the settlement.

In addition, Home Depot will pay to provide for 18 months of Identity Guard® Essentials monitoring services for all Settlement Class Members who used a payment card at self-checkout lanes at U.S. Home Depot stores between April 10, 2014 and September 13, 2014 and had their payment card information compromised, who elect to enroll in the service.

Home Depot has also agreed to maintain and implement certain business practices relating to its information security program, including naming a high-level executive to coordinate the program, conducting regular data risk assessments, implementing reasonable safeguards to address issues raised in risk assessments, maintaining and making available to its customers clear

Questions? Go to www._____.com or call 1-8xx-xxx-xxxx

3

written disclosures explaining that Home Depot stores certain customer information and describing how the company uses that information, implementing an employee education program to educate and train its workforce on the importance of the privacy and security of customer information, and adopting enhanced encryption and security measures for all credit and debit card transactions. A more detailed description of these changes is available in the Settlement Agreement which is available at www._____.com.

## 7.   What can I get from the settlement?

<u>Cash Payments for Documented Losses and Time</u>: If you have documentation showing that you suffered out-of-pocket losses, unreimbursed charges, or time spent remedying issues relating to the Home Depot data breach, you can make a claim for up to $10,000 as reimbursement of those losses, including up to 5 hours of documented time at $15 per hour. If you have documented out-of-pocket losses or unreimbursed charges, you will be eligible to self-certify your time spent remedying issues relating to the Home Depot data breach at $15 per hour for up to 2 hours.

<u>Monitoring Services</u>: Regardless of whether you submit a claim for documented losses, if you are a Settlement Class Member who used a credit or debit card at a self-checkout terminal at a U.S. Home Depot store between April 10, 2014 and September 13, 2014 and your payment card information was compromised, you are eligible to enroll in 18 months of free Identity Guard® Essentials identity monitoring services.

You may make claim for <u>both</u> reimbursement under the Cash Fund and for Monitoring Services.

**If you have questions about whether you are eligible to submit a claim, please contact the Settlement Administrator at 1-800-xxx-xxxx or visit www.settlementwebsite.com**

## 8.   What do "out-of-pocket losses" "unreimbursed charges" and "documented time" include?

All Settlement Class Members who had their personal or financial information compromised can get reimbursed for losses caused by the data breach of up to $10,000. These losses may include:

- Unauthorized charges on credit or debit card that were not reimbursed;
- Costs and expenses spent addressing identity theft or fraud as a result of Home Depot data breach;
- Losses caused by restricted access to funds (*i.e.*, costs of taking out a loan, ATM withdrawal fees);
- Preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review;
- Losses caused by e-mail related fraud such as phishing scams;
- Late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees as a result of Home Depot data breach; and
- Any other losses that can be fairly traced to the Home Depot Data Breach.

Questions? Go to <u>www._____.com</u> or call 1-8xx-xxx-xxxx

If you have documents supporting the time spent remedying issues relating to the Home Depot data breach, you can receive $15 per hour for up to 5 hours. Documents reflecting time spent may include, for example, phone bills reflecting time spent on the phone with your bank. Settlement Class Members who have documented losses can self-certify their time spent remedying issues relating to the Home Depot data breach at $15 per hour for up to 2 hours. Class members without documented losses cannot self-certify claims for time.

**9.   What benefits does Identity Guard® Essentials provide?**

The Identity Guard® Essentials service is designed to help recover any financial losses and restore identities. Settlement Class Members will have access to a specific hotline maintained by Identity Guard ([PHONE NUMBER]) where you can speak to specialized fraud investigators, who will provide any appropriate remediation services at no cost, including contacting creditors and other involved parties to address and resolve issues such as unauthorized credit card charges and bank fees.

This service also includes: (a) Social Security number monitoring; (b) online "black market" monitoring; (c) financial account identity verification alerts; (d) financial account takeover alerts; (e) identity theft victim assistance; (f) lost wallet protection; (g) online username and password protection; and (f) one million dollars ($1,000,000.00) in identity theft insurance.

More information about Identity Guard® Essentials services is available at https://www.identityguard.com/service-details-essentials.

**10. How do I enroll in Identity Guard® Essentials for free?**

If you submit a valid Claim Form and are eligible to enroll in Identity Guard® Essentials services, you will receive enrollment instructions by email shortly after final approval of the Settlement.

**HOW TO GET BENEFITS**

**11. How do I get a payment?**

To get a payment, you will need to submit a Claim Form on the Settlement Website (www._____.com) by **October 29, 2016** or submit a Claim Form by mail, which must be postmarked by **October 29, 2016**. The Claim Form is available at www._____.com or by calling 1-800-000-0000.

**12. When will I receive my payment?**

If you submit a complete, accurate, valid, and timely Claim Form, the Settlement Administrator will send your payment to you after the settlement is finally approved and all appeals and other reviews have been resolved or exhausted.

Questions? Go to www._____.com or call 1-8xx-xxx-xxxx

5

**13. What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself from the settlement, you will give up your right to sue Home Depot or be part of any other lawsuit against Home Depot about the issues this settlement resolves. Unless you exclude yourself, all of the Court's decisions will bind you. The specific claims you are giving up against Home Depot are called "Released Claims". The Released Claims are described in Section XI of the Settlement Agreement which is available at www._____.com. The Settlement Agreement describes the Released Claims with specific and accurate legal descriptions, so read it carefully.

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

If you want to keep the right to sue or continue to sue Home Depot based on claims this settlement resolves, you must take steps to get out of the Settlement Class.

**14. How do I exclude myself from the settlement?**

To exclude yourself from the settlement, you must send a letter by U.S. Mail saying that you wish to do so. Your "Request for Exclusion" must include:

- The name of this proceeding (*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, or similar identifying words);
- Your name and address;
- The words "Request for Exclusion" at the top of the document or a statement requesting exclusion from the Class; and
- Your signature.

You must mail your exclusion request, postmarked no later than **July 18, 2016**, to:

[MAILING ADDRESS]

You cannot exclude yourself by telephone or by email. You cannot exclude yourself by mailing a notification to any other location or after the deadline of July 18, 2016. Your exclusion letter must be signed by you, personally, and not your lawyer or anyone else acting on your behalf.

**15. If I do not exclude myself, can I sue Home Depot for the same thing later?**

No. Unless you exclude yourself, you give up the right to sue Home Depot for the claims that this settlement resolves.

**16. If I exclude myself, can I still get a settlement payment and free credit monitoring?**

No. If you exclude yourself, you cannot receive a cash payment or credit monitoring from this settlement.

**THE LAWYERS REPRESENTING YOU**

**17. Do I have a lawyer in the case?**

Questions? Go to www._____.com or call 1-8xx-xxx-xxxx

6

Yes. The Court appointed the following attorneys to represent you and other Settlement Class Members as "Settlement Class Counsel."

Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112

David J. Worley
James M. Evangelista
**HARRIS PENN LOWRY, LLP**
400 Colony Square
1201 Peachtree Street, NE, Suite 900
Atlanta, GA 30361

Roy E. Barnes
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060

John A. Yanchunis, Sr.
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N Franklin Street
Tampa, FL 33602

You will not be charged by these lawyers for their work on the case. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 18. How will the lawyers be paid?

Settlement Class Counsel will ask the Court for attorneys' fees of up to $8,475,000.00, and reimbursement of reasonable costs and expenses. The Court will decide the amount of fees and costs and expenses to be paid. These fees and costs will be paid separately by Home Depot and will not reduce the amount of benefits provided to the Settlement Class. Settlement Class Counsel will also ask the Court for service payments of up to $1,000 for each of the 88 Settlement Class Representatives for helping the lawyers on behalf of the Settlement Class. These service payments will be paid out of the Settlement Fund. The Settlement Class Representatives and Settlement Class Counsel will make their requests to the Court for attorneys' fees and costs and service payments on or before June 27, 2016. These requests will be available on the Settlement Website or you can request a copy by contacting the Settlement Administrator.

## OBJECTING TO THE SETTLEMENT

## 19. How do I tell the Court that I don't like the settlement?

If you are a Settlement Class Member, you can object to the settlement if you don't think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a letter stating that you object to the settlement. Your objection must include:

- The name of this proceeding (*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, or similar identifying words);

Questions? Go to www._____.com or call 1-8xx-xxx-xxxx

- Your full name, address, email address, and telephone number;
- Information illustrating that you are a Settlement Class Member;
- The reasons for the objection, as well as any documents supporting the objection;
- The identity your attorneys, if applicable, including any former or current counsel who may be entitled to compensation for any reason related to the objection;
- A description of the number of times in which you or your lawyer has objected to a class action settlement within the previous five years, the caption of each case, and a copy of any court orders related to or ruling upon you or your lawyer's prior objections;
- Any and all agreements, written or verbal, between you or your lawyer and any other person or entity that relate to the objection or the process of objecting;
- A list of any persons you or your lawyer plan to call to testify at the Final Approval Hearing in support of your objection;
- Any evidence or other information you wish to introduce in support of your objections;
- A statement of whether you or your lawyer intends to appear and/or testify at the Final Approval Hearing; and
- Your signature on the written objection (an attorney's signature is not sufficient).

To be considered by the Court, your objection must be mailed, postmarked no later than July 18, 2016, to the following three recipients at the following addresses:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|-------|---------------|-----------------|
| XXXXXX | XXXXXX | XXXXXX |

## 20. What's the difference between objecting and excluding myself?

Objecting is simply telling the Court that you don't like something about the settlement. You can object to the benefits provided by the settlement or other terms of the settlement only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be included in the settlement. If you exclude yourself, you have no basis to object to the settlement and related releases because the settlement no longer affects you.

## FINAL APPROVAL HEARING

## 21. When and where will the Court decide to approve the settlement?

The Court will hold a Final Approval Hearing at TIME on DATE, in the Courtroom of Judge Thomas W. Thrash at the U.S. District Court for the Northern District of Georgia, located in Courtroom 2108 of the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Dr., SW, Atlanta, Georgia 30303-3309. This hearing date and time may be moved. Please refer to the Settlement Website for notice of any changes.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who appear at the hearing (*see* Question 22). The Court may also decide how much

Settlement Class Counsel will receive as attorneys' fees and costs and whether to award service payments to Settlement Class Representatives. After the Final Approval Hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 22. Do I have to come to the hearing?

No. Settlement Class Counsel will answer questions the Court may have. However, you are welcome to come at your own expense. If you submit a written objection, you don't have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

## IF I DO NOTHING

## 23. What happens if I do nothing?

If you are a Settlement Class Member and do nothing, you will not get any benefits from this settlement. And, unless you exclude yourself, you will not be able to start a lawsuit or be part of any other lawsuit against Home Depot about the claims resolved by this settlement, ever again.

## GETTING MORE INFORMATION

## 24. How do I get more information?

This notice summarizes the settlement. More details are in the Settlement Agreement itself. You can get a copy of the Settlement Agreement at www._____.com or from the Settlement Administrator by calling toll-free _____ or writing to Settlement Administrator at XXXXXXXXX. The status of the settlement, any appeals, any claims made, and the date of payments will be posted on the Settlement Website.

***Please do not contact the Court with questions about the settlement.***

9

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____

In re: The Home Depot, Inc., Customer
Data Security Breach Litigation

This document relates to:

CONSUMER CASES
 _____

)
) Case No.: 1:14-md-02583-TWT
)
)
)
)
)
)

**[PROPOSED] ORDER CERTIFYING A SETTLEMENT CLASS,
PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
AND DIRECTING NOTICE TO THE SETTLEMENT CLASS**

This matter came before the Court on Consumer Plaintiffs' Motion for

Certification of Settlement Class and Preliminary Approval of Class Action

Settlement.

Consumer Plaintiffs filed their Consolidated Class Action Complaint (ECF

No. 93) on May 1, 2015 ("Complaint"). In their Complaint, Consumer Plaintiffs

allege various claims against Defendants Home Depot U.S.A., Inc. and The Home

Depot, Inc. (collectively, "Home Depot") arising out of the breach of Home

Depot's payment data systems that Home Depot first announced in September

2014, including claims alleging violations of state consumer laws and state data

breach statutes, negligence, breach of implied contract, unjust enrichment, and

declaratory judgment claims. Following briefing on Home Depot's motion to

dismiss, the Court heard oral argument on that motion, which presently is under advisement.

Plaintiffs' counsel have conducted a thorough examination, investigation, and evaluation of the relevant law, facts and allegations sufficient to assess the merits of the claims and Home Depot's liability and defenses in the Consumer Actions. Consumer Plaintiffs, by Consumer Plaintiffs' co-lead and liaison Counsel, and Home Depot, by Home Depot's Counsel, have entered into a Settlement Agreement following good faith, arm's-length negotiations and mediation overseen by Jonathan B. Marks of MarksADR, LLC, in which the Parties have agreed to settle the Consumer Actions consolidated for pre-trial purposes in this MDL proceeding, pursuant to the terms of the Settlement, and subject to the approval and determination of the Court as to the fairness, reasonableness and adequacy of the Settlement which, if approved, will result in dismissal of the Consumer Actions with prejudice.

The Court having reviewed the Settlement Agreement and Release, including the exhibits attached thereto (together, the "Settlement Agreement" or "Settlement"), and all prior proceedings herein, and good cause appearing based on the record,

**IT IS HEREBY ORDERED**:

1.    **Class Certification for Settlement Purposes Only.** The Settlement

Agreement provides for a Settlement Class defined as follows:

> All residents of the United States whose Personal Information was compromised as a result of the Data Breach first disclosed by Home Depot in September 2014.

> "Personal Information" means payment card data including payment card account numbers, expiration dates, card verification values, and cardholder names from payment cards used at self-checkout lanes at U.S. Home Depot stores between April 10, 2014 and September 13, 2014, and/or e-mail addresses compromised as a result of the Data Breach.

> Excluded from the Settlement Class is the judge presiding over this matter and any members of his judicial staff, the officers and directors of Home Depot, and persons who timely and validly request exclusion from the Settlement Class.

The Consumer Actions are provisionally certified as a class action for

settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3) and

(e). The Court finds for settlement purposes that: (a) the Settlement Class is so

numerous that joinder of all Settlement Class Members would be impracticable; (b)

there are issues of law and fact common to the Settlement Class; (c) the claims of

the Settlement Class Representatives are typical of and arise from the same

operative facts and seek similar relief as the claims of the Settlement Class

Members; (d) the Settlement Class Representatives and Settlement Class Counsel

will fairly and adequately protect the interests of the Settlement Class as the

Settlement Class Representatives have no interest antagonistic to or in conflict with

the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

2.   **Settlement Class Representatives and Settlement Class Counsel.**

Class Members identified in Exhibit A attached to the Settlement Agreement are designated and appointed as the Settlement Class Representatives. The Court finds that the Settlement Class Representatives are similarly situated to absent Class Members and therefore typical of the Class and that they will be adequate Settlement Class Representatives.

The Court finds that the following counsel, previously appointed by the Court as interim co-lead or liaison counsel, are experienced and adequate counsel and are hereby designated as Settlement Class Counsel pursuant to Fed. R. Civ. P. 23(g): Norman E. Siegel and Barrett J. Vahle, Stueve Siegel Hanson LLP; Roy E. Barnes and John R. Bevis, The Barnes Law Group, LLC; David J. Worley and James M. Evangelista, Harris Penn Lowry, LLP; and John A. Yanchunis, Sr., Morgan & Morgan Complex Litigation Group.

3.   **Preliminary Settlement Approval.** Upon preliminary review, the Court finds that the proposed Settlement is fair, reasonable and adequate to warrant

providing notice of the Settlement to the Class and accordingly is preliminarily approved.

4. **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 332(d)(2), and personal jurisdiction over the Parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

5. **Final Approval Hearing.** A Final Approval Hearing shall be held on _____, 2016 at _____ in Courtroom 2108 of the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Dr., SW, Atlanta, Georgia 30303-3309, to determine, among other things, whether: (a) this matter should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (b) the Settlement should be approved as fair, reasonable and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) the Consumer Actions should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) the application of Settlement Class Counsel for an award of attorneys' fees, costs, and expenses (the "Fee Request") should be approved pursuant to Fed. R. Civ. P. 23(h); and (f) the application of Settlement Class Representatives for Service Awards (the "Service Awards Request") should be approved.

Plaintiffs' motion for final approval of the Settlement, Service Awards Request, and Fee Request shall be filed with the Court at least 21 days prior to the deadline for submission of objections specified in the Notice. By no later than 14 days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or the Service Awards Request and Fee Request.

6.     **Administration.** The Court appoints KCC Class Action Services, LLC as the Settlement Administrator, with responsibility for class notice and claims administration. Home Depot shall pay all costs and expenses associated with providing notice to Settlement Class Members including, but not limited to, the Settlement Administrator's fees. These payments shall be made separate and apart from the Settlement Fund, subject to the Distribution of Remaining Funds provisions set forth in Paragraph 36 of the Settlement Agreement.

7.     **Notice to the Class.** The proposed Notice Program set forth in the Settlement Agreement, and the Notice, Publication Notice, Claim Form, and Notice Plan attached to the Settlement Agreement as Exhibits C, D, E, and G satisfy the requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1) and are hereby approved. Non-material modifications to these Exhibits may be made without further order of the Court. The Settlement Administrator is directed to carry out the

Notice Program in conformance with the Settlement Agreement, including but not limited to sections VIII and IX thereof.

By May 2, 2016 (the "Notice Deadline"), the Settlement Administrator shall complete in the manner set forth in section IX of the Settlement Agreement the E-Mail and Mail Notice Program, Publication Notice, and posting of Notice on the Settlement Website.

Within 7 days after the Notice Deadline, the Settlement Administrator shall provide Settlement Class Counsel and Home Depot with one or more affidavits confirming that the E-mail Notice and Mail Notice Program, Publication Notice, and posting of Notice on the Settlement Website were completed in accordance with the Parties' instructions and the Court's approval. Settlement Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representatives' motion for final approval of the Settlement.

8. **Findings Concerning Notice.** The Court finds that the form, content and method of giving notice to the Class as described in Paragraph 7 of this Order and the Settlement Agreement (including the exhibits thereto): (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement, including but not limited to their rights to object to or exclude

7

themselves from the proposed settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including Fed. R. Civ. P. 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Class Members.

9. **Appointment for Identity Guard Monitoring Services**. The Court appoints Identity Guard, a subsidiary of Intersections, Inc., as the provider of monitoring services to eligible Settlement Class Members as set forth in the Settlement Agreement. The Court directs that Identity Guard effectuate the Settlement Agreement in coordination with Settlement Class Counsel, Home Depot, and the Settlement Administrator, subject to the jurisdiction and oversight of this Court.

10. **Class Action Fairness Act Notice.** Within 10 days after the filing of the motion for preliminary approval, Home Depot shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

11.   **Exclusion from Class.** Any Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written notification of the intent to exclude himself or herself from the Settlement Class to the Settlement Administrator at the address provided in the Notice, postmarked no later than July 18, 2016 (the "Opt-Out Deadline"). The written notification must include the individual's name and address; a statement that he or she wants to be excluded from the Consumer Action; and the individual's signature.

The Settlement Administrator shall provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Settlement Class Counsel may move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing.

Any Settlement Class Member who does not timely and validly exclude herself or himself from the Settlement shall be bound by the terms of the Settlement. If Final Judgment is entered, any Settlement Class Member who has not submitted a timely, valid written notice of exclusion from the Settlement Class shall be bound by all subsequent proceedings, orders and judgments in this matter, including but not limited to the Release set forth in the Final Judgment, including Settlement Class Members who have previously initiated or who subsequently initiate any litigation against any or all of the Released Parties relating to the

9

claims and transactions released in the Settlement Agreement. All Class Members who submit valid and timely notices of exclusion from the Settlement Class shall not be entitled to receive any benefits of the Settlement.

12.     **Objections and Appearances.** A Settlement Class Member who complies with the requirements of this paragraph may object to the Settlement, the Service Awards Request, or the Fee Request.

No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be received and considered by the Court, unless the objection is (a) electronically filed with the Court by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Home Depot's Counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth:

(a) the name of the Consumer Action;

(b) the objector's full name, address, email address, and telephone number;

(c) an explanation of the basis upon which the objector claims to be a Settlement Class Member;

(d) all grounds for the objection, accompanied by any legal support for the objection;

(e) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the Service Awards Request, or the Fee Request;

(f) the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

(g) the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

(h) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

(i) any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

11

(j) a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

(k) any evidence or other information the objector wishes to introduce in support of the objection;

(l) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

(m) the objector's signature on the written objection (an attorney's signature is not sufficient).

Any Settlement Class Member filing an objection may be required to sit for a deposition regarding matters concerning the objection. Any Settlement Class Member who fails to comply with the provisions in this Paragraph may waive and forfeit any and all rights he or she may have to object, and shall be bound by all the terms of the Settlement Agreement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the Release in the Settlement Agreement if Final Judgment is entered.

Any Settlement Class Member, including a Settlement Class Member who files and serves a written objection, as described above, may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to or comment on the fairness, reasonableness, or adequacy of the Settlement, the Service Awards Request, or the Fee Request.

If Final Judgment is entered, any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and shall be forever barred from making any such objections in the Consumer Actions or in any other proceeding or from challenging or opposing, or seeking to reverse, vacate, or modify any approval of the Settlement Agreement, the Service Awards Request, or the Fee Request.

13.   **Claims Process and Distribution and Allocation Plan.** Settlement Class Representatives and Home Depot have created a process for assessing and determining the validity and value of claims and a payment methodology to Settlement Class Members who submit a timely, valid claim form. The Court preliminarily approves the Distribution and Allocation Plan substantially in the form attached to the Settlement Agreement as Exhibit B, and directs that the Settlement Administrator effectuate the Distribution and Allocation Plan according to the terms of the Settlement Agreement.

Settlement Class Members who qualify for and wish to submit a claim form shall do so in accordance with the requirements and procedures specified in the Notice and the Claim Form. If Final Judgment is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Notice and the claim form shall be forever barred from receiving any such benefit, but will

13

in all other respects be subject to and bound by the provisions in the Settlement Agreement, the Release included in that Agreement, and the Final Judgment.

14. **Termination of Settlement.** This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with section XIII of the Settlement Agreement. In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

15. **Use of Order.** This Order shall be of no force or effect if Final Judgment is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Home Depot of any fault, wrongdoing, breach, or liability. Nor shall this Order be construed or used as an admission, concession, or declaration by or against any Settlement Class Representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claims he, she, or it may have in this litigation or in any other lawsuit.

14

16.     **Stay of Proceedings.** Except as necessary to effectuate this Order, the Consumer Actions and all deadlines set by the Court in the Consumer Actions are stayed and suspended pending the Final Approval Hearing and issuance of the Final Judgment, or until further order of this Court.

17.     **Continuance of Hearing.** The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

18.     **Summary of Deadlines.** The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing. Deadlines arising under the Settlement Agreement and this Order include but are not limited to:

**Notice Deadline**: May 2, 2016

**Motion for Final Approval**: June 27, 2016

**Motion for Service Awards, Attorneys' Fees and Costs**: June 27, 2016

**Opt-Out and Objection Deadlines**: July 18, 2016

**Replies in Support of Final Approval, Service Awards and Fee Requests**: [14 days before Final Approval Hearing]

**Final Approval Hearing**: [Friday August 12, 2016 or later date]

15

**Claims Deadline**: October 29, 2016


IT IS SO ORDERED this _____ day of __, 2016.


_____
The Honorable Thomas W. Thrash, Jr.
United States District Court Judge

# EXHIBIT G



**Legal Notification Services**

_____

# Settlement Notice Plan

## *In re: The Home Depot, Inc.*

## *Customer Data Security Breach Litigation*

## Case No. 1:14-md-02583-TWT

### United States District Court

### Northern District of Georgia

**Prepared: March 7, 2016**

_____

© 2016 KCC LLC
Proprietary and Confidential

# Table of Contents

|  | Page |
|---|---|
| Legal Notification Services | 3 |
| Our Experts | 4 |
| Relevant Case Experience | 5 |
| Expert Services | 6 |
| Media Terms | 7 |
| Media Resources | 8 |
| Program Overview | 9 |
| Target Analysis | 10 |
| Media Selection | 12 |
| Individual/Direct Notice | 13 |
| Consumer Magazines | 14 |
| Internet Banners | 15 |
| Response Mechanisms | 16 |
| Notice Design Strategies | 17 |
| Conclusion | 18 |

Attachment A – Legal Notice c.v.

© 2016 KCC LLC
Proprietary and Confidential

## Legal Notification Services

KCC's Legal Notice experts, Gina M. Intrepido-Bowden and Carla A. Peak, specialize in the design and implementation of class action notice programs devised to reach class members with clear, concise, plain language notices. With over a decade of legal notice consulting experience, Ms. Intrepido-Bowden and Ms. Peak have been directly responsible for more than 100 effective and efficient notice programs, including some of the largest and most complex in history, reaching class members or claimants around the globe and providing notice in over 35 languages.

Their programs satisfy due process requirements, as well as all applicable state and federal laws. Judges, including in published decisions, have recognized the reach calculation methodology and notice design strategies they use. Their notices follow the principles in the Federal Judicial Center's (FJC) illustrative model notices, which were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).

© 2016 KCC LLC
Proprietary and Confidential

## Our Experts

Consistent with the judicial standards set forth by *Daubert* and *Kumho* and as illustrated in the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, KCC's experts utilize the same practices and statistical analyses that are relied upon in the advertising industry when they design and measure the effectiveness of the notice programs they develop. Gina M. Intrepido-Bowden and Carla A. Peak have personally designed the "Notice Plan" (Plan) and proposed notice documents (Notice or Notices) that follow, and will directly oversee its implementation.

### Gina Intrepido-Bowden

With 25 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as VP, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has designed more than 90 judicially approved media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As a legal notice expert, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

### Carla Peak

With over a decade of industry experience, Carla A. Peak, also VP, Legal Notification Services, specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude.

## Relevant Case Experience[1]

Our experts have designed and implemented numerous notice programs targeting Consumer Class members, for example:

- Honorable Mitchell D. Dembin, *Lermin v. Schiff Nutrition International, Inc.*, (November 3, 2015) No. 3:11-CV-01056 (S.D. Cal.):
    - *According to Ms. Intrepido-Bowen, between June 29, 2015, and August 2, 2015, consumer publications are estimated to have reached 53.9% of likely Class Members and internet publications are estimated to have reached 58.9% of likely Class Members…The Court finds this notice (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise the putative Class Members of the pendency of the action, and of their right to object and to appear at the Final Approval Hearing or to exclude themselves from the Settlement, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with due process principles and Federal Rule of Civil Procedure 23.*

- Honorable Sara I. Ellis, *Thomas v. Lennox Industries Inc.*, (July 9, 2015) No. 1:13-CV-07747 (N.D. Ill.):
    - The Court approves the form and content of the Long-Form Notice, Summary Notice, Postcard Notice, Dealer Notice, and Internet Banners (the "Notices") attached as Exhibits A-1, A-2, A-3, A-4 and A-5 respectively to the Settlement Agreement. The Court finds that the Notice Plan, included in the Settlement Agreement and the Declaration of Gina M. Intrepido-Bowden on Settlement Notice Plan and Notice Documents, constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto, and that the Notice Plan complies fully with the requirements of Federal Rule of Civil Procedure 23 and provides Settlement Class Members due process under the United States Constitution.

- Honorable José L. Linares, *Demmick v. Cellco Partnership*, (May 1, 2015) No. 2:06-CV-2163 (D. N.J.):
    - The Notice Plan, which this Court has already approved, was timely and properly executed and that it provided the best notice practicable, as required by Federal Rule of Civil Procedure 23, and met the "desire to actually inform" due process communications standard of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)… The Court thus affirms its finding and conclusion in the November 19, 2014 Preliminary Approval Order that the notice in this case meets the requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States and/or any other applicable law. All objections submitted which make mention of notice have been considered and, in light of the above, overruled.

See **Attachment A** for additional recognition and example cases.

---

[1] Includes work performed by our experts when employed at other firms.

© 2016 KCC LLC
Proprietary and Confidential

## Expert Services

Our Legal Notification Services include:

**Pre-Settlement Consulting**
- Review and advise clients of any potential obstacles relative to class definition or legal notification processes
- Develop a noticing plan strategy
- Provide judicial decisions that are relevant to the case or terms of the settlement

**Demographic Analysis**
- Define the target audience through research and analysis of class demographics
- Identify the geographic location of potential class members giving specific consideration to the class period
- Research class member media usage to define the communication channels that will be most effective

**Notice Programs**
- Create custom notice programs that incorporate media such as newspapers, magazines, trade journals, radio, television, social media and the internet to meet due process requirements
- Develop press releases, social media enhancements, and broadcast public service announcements (PSAs) as needed
- Track media activity to verify the adequacy of placements

**Plain Language Communication**
- Consider audience's level of understanding and devise communications strategy accordingly
- Design, draft and distribute plain-language notices that capture attention and are easily understood by class members
- Incorporate response mechanisms, such as a toll-free number, case website address, and/or QR code into notice documents

**Expert Testimony**
- Provide defensible opinions and testimony from subject-matter experts to verify the effectiveness of notice programs
- Supply proof of performance for each notice served, as required by the Courts
- Provide evidence and judicial decisions to overcome objections

## Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (*e.g.*, from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (*e.g.*, subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

## Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

**Alliance for Audited Media (AAM)**

AAM is a nonprofit organization that connects North America's leading media companies, advertisers and ad agencies. Founded in 1914 as the Audit Bureau of Circulations, the AAM is the preeminent source of cross-media verification and information services, providing standards, audit services and data critical to the advertising industry. The organization independently verifies print and digital circulation, mobile apps, website analytics, social media, technology platforms and audience information for newspapers, magazines and digital media companies in the U.S. and Canada.

**GfK Mediamark Research & Intelligence, LLC (MRI)**

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer™* is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

**Nielsen Media Research (Nielsen)**

Nielsen is the leading provider of television audience measurement and advertising information services worldwide.

**Telmar**

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

## Program Overview

**Objective**

To design a notice program that will effectively reach Class members and capture their attention with notices communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

**Class Definition**

The Class (or Class members) consists of all residents of the United States whose Personal Information was compromised as a result of the Data Breach first disclosed by Home Depot in September 2014.

**Case Analysis**

The following known factors were considered when determining our recommendation:

1. The Settlement Class consists of approximately 40 million Class members who made credit or debit card purchases in Home Depot's U.S. stores from April 10 to September 13, 2014 ("POS Incident Class members"), and 53 million are who had their email compromised through the theft of a separate email file ("E-Mail File Incident Class members"). There is likely some Class member overlap between the two categories but for planning purposes, we assumed an overlap did not exist.
2. Class members are located throughout the U.S., including large cities and rural areas.
3. Contact information is available for at least 19.9 million POS Incident Class members and 53 million E-Mail File Incident Class members; however, a reasonable effort cannot identify and locate *all* Class members.
4. Effective reach and notice content is vital to convey the importance of the information affecting Class members' rights, as well as to withstand challenge and collateral review.

**Target Audience**

To verify the program's effectiveness, MRI data was studied among adults who have used any credit/debit card in the last 12 months and who have shopped at the Home Depot in the last 12 months ("Credit/Debit Card Home Depot Shoppers"), because this broad, over inclusive target group indicates and best represents the Class.

**Strategies**

The Notice Plan utilizes individual notice to reach the Class. The individual notice effort will be supplemented by paid notice in a well-read consumer magazine (*People*) and on a variety of websites.

**Plan Delivery**

The individual notice effort is expected to reach 74.5% of the Class. The notice placements in *People* magazine and on a variety of websites will increase the overall reach to 80.2%, exposing notice to likely Class members on average 1.2 times each.

© 2016 KCC LLC
Proprietary and Confidential

# Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

**Demographic Highlights**

Demographic highlights of Credit/Debit Card Home Depot Shoppers include the following:

- 98.6% speak English most often;
- 93.3% have graduated from high school and 70.4% have attended college or beyond;
- 92.4% are 25 years of age or older, 75.0% are 35 years of age or older, and 57.1% are 45 years of age or older;
- 90.5% live in a Metropolitan CBSA;[2]
- 89.0% live in a household consisting of two or more people, 73.4% live in a household consisting of two to four people, and 55.7% live in a household consisting of three or more people;
- 83.0% are white;
- 79.3% live in County Size A or B, with 48.1% living in County Size A;[3]
- 78.2% own a home;
- 76.6% have a household income of $50,000 or more, 68.9% have a household income of $60,000 or more, and 58.1% have a household income of $75,000 or more;
- 70.5% own a home valued at $100,000 or more and 59.2% own a home valued between $100,000-$499,999;
- 65.0% are married;
- 60.6% have lived at their current address for five years or more;
- 56.6% are working full time; and
- 52.2% are men.

---

[2] Core Based Statistical Areas (CBSAs) consist of the county or counties or equivalent entities associated with at least one core (urbanized area or urban cluster) of at least 10,000 population, plus adjacent counties having a high degree of social and economic integration with the core as measured through commuting ties with the counties associated with the core. The general concept of a CBSA is that of a core area containing a substantial population nucleus, together with adjacent communities having a high degree of economic and social integration with that core. CBSAs are defined by the U.S. Office of Management and Budget to provide a nationally consistent set of geographic entities for the United States and Puerto Rico for use in tabulating and presenting statistical data. Metropolitan Statistical Areas are CBSAs associated with at least one urbanized area that has a population of at least 50,000. The metropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting. Micropolitan Statistical Areas are CBSAs associated with at least one urban cluster that has a population of at least 10,000 but less than 50,000. The micropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting.

[3] Nielsen County Size classifications are based on Census household counts and metropolitan proximity. "A" counties are highly urbanized areas and belong to the 21 largest Metropolitan Statistical Areas. The combined counties contain 40% of United States households. "B" counties are counties not defined as A counties that have more than 85,000 households. The combined counties contain 30% of United States households. "C" counties are counties not defined as A or B counties that have more than 20,000 households or are in Consolidated Metropolitan Areas or Metropolitan Statistical Areas with more than 20,000 households. The combined counties contain 15% of United States households. "D" counties are all counties not classified as A, B, or C counties. They are considered very rural. The combined counties contain 15% of United States households.

© 2016 KCC LLC
Proprietary and Confidential

On average, Credit/Debit Card Home Depot Shoppers:[4]

- are 48 years of age;
- have a household income of $99,157; and
- own a home valued at $293,345.

Compared to the general adult population, Credit/Debit Card Home Depot Shoppers are:

- 57.1% more likely to own a home valued $500,000 or more, 39.9% more likely to own a home valued between $200,000-$499,999, and 7.0% more likely to own a home valued between $100,000-$199,999;
- 53.8% more likely to have a household income of $150,000 or more, 50.4% more likely to have a household income between $100,000-$149,999, and 35.5% more likely to have a household income of $60,000 or more;
- 48.7% more likely to work in management/business/finance operations, 36.4% more likely to work as professionals, and 5.1% more likely to work in sales/office occupations;
- 44.4% more likely to have graduated from college or beyond;
- 41.5% more likely to be managers/professionals;
- 22.0% more likely to be married;
- 18.0% more likely to own a home;
- 17.2% more likely to be working full time;
- 16.9% more likely to be 45-54 years of age, 15.1% more likely to be 55-64 years of age, and 6.1% more likely to be 35-44 years of age;
- 16.1% more likely to live in the West Census Region and 15.1% more likely to live in the North East Census Region;
- 15.4% more likely to live in County Size A and 5.1% more likely to live in County Size B;
- 12.8% more likely to speak a language other than English or Spanish and 5.8% more likely to speak a language other than English or Spanish most often;
- 10.2% more likely to be white;
- 8.2% more likely to be men;
- 8.0% more likely to have lived at their current address for five years or more;
- 7.9% more likely to be parents;
- 7.7% more likely to have lived in a household consisting of three or four people and 5.6% more likely to live in a household consisting of two people;
- 7.2% more likely to live in a Metropolitan CBSA; and
- 6.1% more likely to be working women.

*Source: 2015 MRI Doublebase Study*

---

[4] The average age for U.S. adults is 47, the average household income is $77,026, and the average home value is $253,020.

© 2016 KCC LLC
Proprietary and Confidential

## Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Broad national coverage into the largest cities as well as the smallest towns throughout the nation;

- Repeat notice exposures as a result of the overlapping media audiences;

- A written summary of key information that may be easily referred to or passed on to others as a result of the placement in *People* magazine, one of the largest and most well-read publications in the country;

- A direct link to the case website through the email notice and internet banner notices;

- Easy access to the notice documents through an established case website.

© 2016 KCC LLC
Proprietary and Confidential

## Individual/Direct Notice

**E-Mail Notice**

- An E-Mail Notice containing a summary of the settlement in the body of the email, as well as a link to the settlement website will be sent to all available email addresses.

- It is our understanding that email addresses are available for at least 19.9 million POS Incident Class members and all 53 million E-Mail File Incident Class members.

- Factoring in bounce backs, we estimate that approximately 74.5% of the Class (or 69,255,000 Class members) will be reached through the E-Mail Notice effort.

## Consumer Magazines

To further extend reach among the Class, a third-page notice will be placed in a leading consumer publication among Credit/Debit Card Home Depot Shoppers.



- Circulation: 3,486,478
- Adult Audience: 42,089,000
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Reaches 17.9% of Credit/Debit Card Home Depot Shoppers
- Readers are 1.1% more likely to be Credit/Debit Card Home Depot Shoppers, as compared to the general adult population
- Provides a large number of pass-along readers

© 2016 KCC LLC
Proprietary and Confidential

## Internet Banners

According to MRI data, 93.5% of Credit/Debit Card Home Depot Shoppers have access to the internet at home using a computer and 91.0% have looked at or used the internet in the last 30 days. Compared to the general adult population, Credit/Debit Card Home Depot Shoppers are 9.2% more likely to have access to the internet from home using a computer and 9.5% more likely to have looked at or used the internet in the last 30 days. Therefore, to extend reach among the Class, 10 million *unique* impressions will be purchased over a one-month period. The impressions will be targeted to credit card holders 18 years of age or older (Adult 18+ Credit Card Holders) and will include an embedded link to the case website.

Sample sites may include:

    

 

    

    

# Response Mechanisms

**Case Website**
- Allows Class members the ability to file a Claim Form online, as well as obtain additional information and documents including the Detailed Notice, Settlement Agreement, Preliminary Approval Order, Complaint, and any other information that the parties may agree to provide or that the Court may require
- Prominently displayed in all printed notice materials and accessible through a hyperlink embedded in the internet banner ads

**Toll-Free Telephone Support**
- Provides a simple way for Class members to obtain additional information about the settlement
- Allows Class members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Class members to request to have more information mailed directly to them
- Prominently displayed in all printed notice materials

.

## Notice Design Strategies

The design and content of all of the notice materials are consistent with the FJC's "illustrative" forms of model plain language notices, available at www.fjc.gov.

**Postcard and Publication Summary Notices**
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Spanish language sentence under the headline of the Publication Summary Notices directs Spanish speaking Class Members to the case website for a Spanish language notice
- Prominent notice size promotes attention, readership, and comprehension
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Detailed Notice**
- Prominent "Your Rights and Options" table on first page immediately informs readers of their rights and options in the case
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Concise plain language without "legalese" enhances comprehension
- Provides more detailed information than that of a Summary Notice
- Content includes all essential information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Internet Banner Notices**
- Simple rotating message alerts Class Members about the settlement
- An embedded link allows immediate access to the case website

© 2016 KCC LLC
Proprietary and Confidential

## Conclusion

Our recommended Notice Plan:

- Was designed by experts who are trained and experienced in their specific area of expertise
- Is consistent with other effective settlement notice programs
- Is consistent with the "desire to actually inform" due process communications standard of *Mullane*
- Provides the best notice practicable
- Meets due process requirements
- Provides the same reach and frequency evidence that Courts have approved, is recommended by the FJC, and that has withstood appellate scrutiny, other expert critiques, as well as collateral review
- Leaves no holes or vulnerabilities that would leave the parties open to challenge

# Attachment A



_____

KCC's Legal Notification Services team provides expert legal notice services in class action, mass tort and bankruptcy settings. We specialize in the design and implementation of notice programs with plain language notices; expert opinions and testimony on the adequacy of notice; and critiques of other notice programs and notices. With over a decade of experience, our legal noticing team has been involved in more than a hundred effective and efficient notice programs reaching class members and claimants in almost every country, dependency and territory in the world, and providing notice in over 35 languages. Our programs satisfy due process requirements, as well as all applicable state and federal laws. Some case examples our experts have been involved with include:

- ***Shames v. The Hertz Corporation***, No. 3:07-cv-02174 (S.D. Cal.) A national antitrust settlement involving several million class members who rented vehicles from a variety of car rental companies.

- ***In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, No. 11-MD-2247 (D. Minn.) A national products liability settlement providing reimbursement, repair and replacement of affected plumbing components.

- ***In re Trans Union Corp. Privacy Litigation***, MDL No. 1350 (N.D. Ill.) Perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement.

- ***In re TJX Companies, Inc., Customer Data Security Breach Litigation***, MDL No. 1838 (D. Mass.) One of the largest U.S. and Canadian retail consumer security breach notice programs.

- ***Grays Harbor Adventist Christian School v. Carrier Corp.***, No. 05-05437 (W.D. Wash.), ***Donnelly v. United Technologies Corp.*** No. 06-CV-320045CP (Ont. S.C.J.) and ***Wener v. United Technologies Corp.*** 500-06-000425-088 (QC. Super. Ct.) Product liability class action settlements involving secondary heat exchangers in high efficiency gas furnaces, affecting class members throughout the U.S. and Canada.

- ***In re Residential Schools Litigation***, No. 00-CV-192059 (Ont. S.C.J.) The largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

# Our Experts

### Gina M. Intrepido-Bowden

With 25 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as VP, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has designed more than 85 judicially approved media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As a legal notice expert, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude. Gina can be reached at gintrepidobowden@kccllc.com.

### Carla A. Peak

With over a decade of industry experience, Carla A. Peak, also VP, Legal Notification Services, specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude. Carla can be reached at cpeak@kccllc.com.

# Judicial Recognition

Following are some judicial comments recognizing the work of our expert(s):

**Honorable Mitchell D. Dembin,** *Lermin v. Schiff Nutrition International, Inc.*, (November 3, 2015) No. 3:11-CV-01056 (S.D. Cal.):

> *According to Ms. Intrepido-Bowen, between June 29, 2015, and August 2, 2015, consumer publications are estimated to have reached 53.9% of likely Class Members and internet publications are estimated to have reached 58.9% of likely Class Members…*The Court finds this notice (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise the putative Class Members of the pendency of the action, and of their right to object and to appear at the Final Approval Hearing or to exclude themselves from the Settlement, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with due process principles and Federal Rule of Civil Procedure 23.*

**Honorable Lynn Adelman,** *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprises Insurance Co.*, **(Direct Purchaser–Tong Yang & Gordon Settlements)**, (August 13, 2015) No.

2:09-CV-00852 (E.D. Wis.):

> The Court further finds that the Notice Plan, previously approved by the Court (See ECF Nos. 619 & 641) and as executed by the Court-appointed Claims Administrator, KCC, as set forth in the Declaration of Carla A. Peak on Implementation and Overall Adequacy of Combined Settlement Notice Plan ("Peak Declaration") is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class Members; and complied fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice (Peak Declaration Exhibits 1 and 2) are written in plain language, use simple terminology, and are designed to be readily understandable and noticeable by Settlement Class Members.

**Honorable Lynn Adelman, *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprises Insurance Co.*, (Indirect Purchaser–Gordon Settlement)**, (August 4, 2015) No. 2:09-CV-00852 (E.D. Wis.):

> The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 2–4, respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.

**Honorable Sara I. Ellis, *Thomas v. Lennox Industries Inc.*, (July 9, 2015) No. 1:13-CV-07747 (N.D. Ill.):**

> The Court approves the form and content of the Long-Form Notice, Summary Notice, Postcard Notice, Dealer Notice, and Internet Banners (the "Notices") attached as Exhibits A-1, A-2, A-3, A-4 and A-5 respectively to the Settlement Agreement. The Court finds that the Notice Plan, included in the Settlement Agreement and the Declaration of Gina M. Intrepido-Bowden on Settlement Notice Plan and Notice Documents, constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto, and that the Notice Plan complies fully with the requirements of Federal Rule of Civil Procedure 23 and provides Settlement Class Members due process under the United States Constitution.

**Honorable Lynn Adelman, *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.* (Indirect Purchaser–Tong Yang Settlement)**, (May 29, 2015) No. 2:09-CV-00852 (E.D. Wis.):

> The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 2–4, respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.

**Honorable Mitchell D. Dembin,** *Lerma v. Schiff Nutrition International, Inc.*, (May 25, 2015) No. 11-CV-01056 (S.D. Cal.):

> *The parties are to notify the Settlement Class in accordance with the Notice Program outlined in the Second Supplemental Declaration of Gina M. Intrepido-Bowden on Settlement Notice Program.*

**Honorable Lynn Adelman,** *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.* **(Direct Purchaser–Gordon Settlement)**, (May 5, 2015) No. 2:09-CV-00852 (E.D. Wis.):

> *The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla Peak ("Peak Decl.") at Exhibit 1 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members. The Notice Program set forth herein is substantially similar to the one set forth in the Court's April 24, 2015 Order regarding notice of the Tong Yang Settlement (ECF. No. 619) and combines the Notice for the Tong Yang Settlement with that of the Gordon Settlement into a comprehensive Notice Program. To the extent differences exist between the two, the Notice Program set forth and approved herein shall prevail over that found in the April 24, 2015 Order.*

**Honorable José L. Linares,** *Demmick v. Cellco Partnership*, (May 1, 2015) No. 2:06-CV-2163 (D. N.J.):

> *The Notice Plan, which this Court has already approved, was timely and properly executed and that it provided the best notice practicable, as required by Federal Rule of Civil Procedure 23, and met the "desire to actually inform" due process communications standard of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)… The Court thus affirms its finding and conclusion in the November 19, 2014 Preliminary Approval Order that the notice in this case meets the requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States and/or any other applicable law. All objections submitted which make mention of notice have been considered and, in light of the above, overruled.*

**Honorable Lynn Adelman,** *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.* **(Direct Purchaser–Tong Yang Settlement)**, (April 4, 2015) No. 2:09-CV-00852 (E.D. Wis.):

> *The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla A. Peak ("Peak Decl.") as Exhibit 2 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class Members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members.*

**Honorable Rhonda A. Isiran Nishimura,** *Charles v. Haskeo Homes, Inc.*, (February 24, 2015) No. 09-1-1932-08 (Cir. Ct. Hawai'i):

*The Court approves, as to form and content, the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice, and the Notice Plan that are attached as Exhibits 8-9 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak…The Court finds that the Hurricane Straps Class Notice, the Hurricane Straps Repose Subclass Notice, and the Notice Plan will fully and accurately inform the potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members of all material elements of the proposed Settlement, of their right to be excluded from the Hurricane Straps Class or Hurricane Straps Repose Subclass, and of each Hurricane Straps Class Member's or Hurricane Straps Repose Subclass Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice will (i) meet the requirements of the laws of the State of Hawai'i (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members.*

**Honorable Gary W.B. Chang,** ***Kai v. Haskeo Homes, Inc.***, (February 15, 2015) No. 09-1-2834-12 (Cir. Ct. Hawai'i):

*The Court approves, as to form and content, the PEX Class Notice and Notice Plan attached as Exhibit 10 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak. The Court finds that the PEX Class Notice and the Notice Plan will fully and accurately inform the potential PEX Class Members of all material elements of the proposed Settlement, of their right to be excluded from the PEX Class, and of each PEX Class Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the PEX Class Notice substantially in the manner and form set forth in this Order will (i) meet the requirements of the laws of the State of Hawai'i (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Class Members.*

**Honorable David O. Carter,** ***Cobb v. BSH Home Appliances Corp.***, (December 29, 2014) No. 8:10-CV-0711 (C.D. Cal.):

*The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out.*

**Honorable José L. Linares,** ***Demmick v. Cellco Partnership***, (November 19, 2014) No. 2:06-CV-2163 (D. N.J.):

*The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of*

*the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

*The Court further finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as to not be bound by the Settlement Agreement.*

**Honorable Christina A. Snyder, *Roberts v. Electrolux Home Products, Inc.*,** (September 11, 2014) No. 8:12-CV-01644 (C.D. Cal.):

*The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan…The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement…Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects…Any objections to the notice provided to the Class are hereby overruled.*

**Honorable David O. Carter, *Cobb v. BSH Home Appliances Corp.*,** (August 25, 2014) No. 8:10-CV-0711 (C.D. Cal.):

*…the Court also finding that the proposed notice plan and forms of notice are the best notice practicable under the circumstances and satisfy all requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(b)(2); and for good cause shown,*

*IT IS HEREBY ORDERED that Plaintiffs' Motion to Amend the Illinois Class Definition is GRANTED; and it is further ORDERED that Plaintiffs' Motion for Approval of Notice Plan and Proposed Forms of Notice is GRANTED.*

**Judge Gregory A. Presnell, *Poertner v. The Gillette Co. and The Procter & Gamble Co.*,** (August 21, 2014) No. 6:12-CV-00803 (M.D. Fla.):

*This Court has again reviewed the Notice and the accompanying documents and finds that the "best practicable" notice was given to the Class and that the Notice was "reasonably calculated" to (a) describe the Action and the Plaintiff's and Class Members' rights in it; and (b) apprise interested parties of the pendency of the Action and of their right to have their objections to the Settlement heard. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985). This Court further finds that Class Members were given a reasonable opportunity to opt out of the Action and that they were adequately represented by Plaintiff Joshua D. Poertner. See Id. The Court thus reaffirms its findings that the Notice given to the*

6

*Class satisfies the requirements of due process and holds that it has personal jurisdiction over all Class Members.*

**Honorable Curtis L. Collier,** *In re: Skelaxin (Metaxalone) Antitrust Litigation*, (August 5, 2014) No. 1:12-md-02343 (E.D. Tenn.):

> *The proposed form of Notice to End-Payor Settlement Class Members of the pendency and proposed settlement of this action ("Settlement Notice") set forth in the Notice Plan and Declaration of Carla Peak and the proposed method of dissemination of the Settlement Notice ("Notice Plan")—first to Third-Party Payors and then to Consumers—satisfy the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process, are otherwise fair and reasonable, and therefore are approved.*

**Honorable Christina A. Snyder,** *Roberts v. Electrolux Home Products, Inc.*, (May 5, 2014) No. 8:12-CV-01644 (C.D. Cal.):

> *The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects…*

**Honorable Jose L. Linares,** *In re Hypodermic Products Antitrust Litigation*, (March 17, 2014) MDL No. 1730, No. 2:05-CV-01602 (D. N.J.):

> *The Class Notice provides a description of the Indirect Purchaser Class, the procedural status of the litigation, a brief description of the plan of allocation, the court approval process for the proposed Settlement, and the significant terms of the Settlement. The Class Notice also fully informed members of the Indirect Purchaser Class of their rights with respect to the Settlement, including the right to opt out of, object to the Settlement, or otherwise be heard as to the resonableness and fairness of the Settlement. The Class Notice also informed members of the Indirect Purchaser Class of their right to object to Indirect Purchaser Plaintiffs' Lead Counsel's application for an award of attorneys' fees, an award of incentive fees, and reimbursement of expenses from the Settlement Fund.…The Class Notice met the statutory requirements of notice under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.*

**Honorable William E. Smith,** *Cappalli v. BJ's Wholesale Club, Inc.*, (December 12, 2013) No. 1:10-CV-00407 (D. R.I.):

> *The Court finds that the form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of these proceedings of the proposed Settlement, and of the terms set forth in the Stipulation and first Joint Addendum, and the notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Constitutional due process, and all other applicable laws.*

**Judge Gregory A. Presnell,** *Poertner v. The Gillette Co. and The Procter & Gamble Co.*,

(November 5, 2013) No. 6:12-CV-00803 (M.D. Fla.):

> The proposed Class Notice and Claim Form are approved as to form and content. The Court finds that the content of the Class Notice and the Claim Form satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and due process and accordingly approves them…The Court finds that compliance with the Notice Plan is the best practicable notice under the circumstances and constitutes due and sufficient notice of this Order to all persons entitled thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.

**Honorable Jose L. Linares,** *In re Hypodermic Products Antitrust Litigation*, (November 4, 2013) No. 2:05-CV-01602 (D. N.J.):

> Upon reviewing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification and Approval of Notice Plan and the Declarations of Karin E. Fisch, Esq. and Carla A. Peak and the documents attached thereto, it is hereby ORDERED, ADJUDGED AND DECREED as follows:…Proposed forms of Notice are attached hereto as Exhibit A. The Court finds that the form fairly and adequately: (i) describes the terms and effect of the Settlement Agreement and of the Settlement; (ii) notifies the Indirect Purchaser Class concerning the proposed plan of allocation and distribution; (iii) notifies the Indirect Purchaser Plaintiffs' Lead Counsel will seek attorneys' fees not to exceed one-third of the Settlement Fund, reimbursement of expenses and incentive fees; (iv) gives notice to the Indirect Purchaser Class of the time and place of the Fairness Hearing; and (v) describes how the recipients of the Notice may submit a claim, exclude themselves from the Settlement or object to any of the relief requested.

**Judge Marilyn L. Huff,** *Beck-Ellman v. Kaz USA, Inc.*, (June 11, 2013) No. 3:10-cv-02134 (S. D. Cal.):

> The Notice Plan has now been implemented in accordance with the Court's Preliminary Approval Order. The Publication Notice was designed to provide potential class members with information about the Settlement and their rights, in easy-to-comprehend language… The Notice Plan was specially developed to cause class members to see the Publication Notice or see an advertisement that directed them to the Settlement Website. KCC identified that the class members belong to a demographic group known as "Pain Relief Users." The Heating Pads are considered a Pain Relief product. The publications that KCC's Notice Plan used are publications and websites whose viewers and readers include a high percentage of Pain Relief product users…The Court concludes that the Class Notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.

**Judge Tom A. Lucas,** *Stroud v. eMachines, Inc.*, (March 27, 2013) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

> The Notices met the requirements of Okla. Stat. tit. 12 section 2023(C), due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto. All objections are stricken. Alternatively, considered on their merits, all objections are overruled.

**Judge Marilyn L. Huff,** *Beck-Ellman v. Kaz USA, Inc.* (January 7, 2013) No. 3:10-cv-02134 (S. D. Cal.):

> The proposed Class Notice, Publication Notice, and Settlement Website are reasonably calculated to inform potential Class members of the Settlement, and

*are the best practicable methods under the circumstances… Notice is written in easy and clear language, and provides all needed information, including: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their rights to opt-out or object; (5) an explanation that any claims against Kaz that could have been litigated in this action will be released if the Class member does not opt out; (6) the names of Class Counsel and information regarding attorneys' fees; (7) the fairness hearing date and procedure for appearing; and (8) the Settlement Website and a toll free number where additional information, including Spanish translations of all forms, can be obtained. After review of the proposed notice and Settlement Agreement, the Court concludes that the Publication Notice and Settlement Website are adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.*

**Judge Tom A. Lucas,** ***Stroud v. eMachines, Inc.***, (December 21, 2012) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

*The Plan of Notice in the Settlement Agreement as well as the content of the Claim Form, Class Notice, Post-Card Notice, and Summary Notice of Settlement is hereby approved in all respects. The Court finds that the Plan of Notice and the contents of the Class Notice, Post-Card Notice and Summary Notice of Settlement and the manner of their dissemination described in the Settlement Agreement is the best practicable notice under the circumstances and is reasonably calculated, under the circumstances, to apprise Putative Class Members of the pendency of this action, the terms of the Settlement Agreement, and their right to object to the Settlement Agreement or exclude themselves from the Certified Settlement Class and, therefore, the Plan of Notice, the Class Notice, Post-Card Notice and Summary Notice of Settlement are approved in all respects. The Court further finds that the Class Notice, Post-Card Notice and Summary Notice of Settlement are reasonable, that they constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and that they meet the requirements of due process.*

**Honorable Michael M. Anello,** ***Shames v. The Hertz Corporation***, (November 5, 2012) No. 3:07-cv-02174 (S.D. Cal.):

*…the Court is satisfied that the parties and the class administrator made reasonable efforts to reach class members. Class members who did not receive individualized notice still had opportunity for notice by publication, email, or both…The Court is satisfied that the redundancies in the parties' class notice procedure—mailing, e-mailing, and publication—reasonably ensured the widest possible dissemination of the notice…The Court OVERRULES all objections to the class settlement…*

**Judge Ann D. Montgomery,** ***In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, (July 9, 2012) No. 11-MD-2247 (D. Minn.):

*The objections filed by class members are overruled; The notice provided to the class was reasonably calculated under the circumstances to apprise class members of the pendency of this action, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;…*

**Judge Ann D. Montgomery,** ***In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, (June 29, 2012) No. 11-MD-2247 (D. Minn.):

*After the preliminary approval of the Settlement, the parties carried out the notice*

*program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each...The California Objectors also take umbrage with the notice provided the class. Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.*

**Honorable Michael M. Anello, *Shames v. The Hertz Corporation*, (May 22, 2012) No. 3:07-cv-02174 (S.D. Cal.):**

*The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually or collectively, the "Notice"), and finds that the e-mailing or mailing and distribution of the Notice and publishing of the Notice substantially in the manner and form set forth in ¶ 7 of this Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.*

**Judge Anthony Powell, *Molina v. Intrust Bank, N.A.*, (May 21, 2012) No. 10-CV-3686 (18th J.D. Ct., Kan.):**

*The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceeding to all persons entitled to such notice, and said notice fully satisfied the requirements of K.S.A. § 60-223 and due process.*

**Judge Ronald L. Bauer, *Blue Cross of California Website Securities Litigation*, (April 5, 2012) No. JCCP 4647 (Super. Ct. Cal.):**

*The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Person entitled to such notice, and said notice satisfied the requirements of California Rules of Court, Rule 3,766(e) and (f),  and due process.*

**Judge Ann D. Montgomery, *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, (January 18, 2012) No. 11-MD-2247 (D. Minn.):**

*The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing*

*to the Classes and all persons entitled to receive such notice as potential members of the Class…The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)…Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.*

**Judge Jeffrey Goering, *Molina v. Intrust Bank, N.A.***, (January 17, 2012) No. 10-CV-3686 (18th J.D. Ct. Ks.):

*The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Charles E. Atwell, *Allen v. UMB Bank, N.A.***, (October 31, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

*The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

**Judge Charles E. Atwell, *Allen v. UMB Bank, N.A.***, (June 27, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

*The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Jeremy Fogel, *Ko v. Natura Pet Products, Inc.***, (June 24, 2011) No. 5:09cv2619 (N.D. Cal.):

*The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

**Judge M. Joseph Tiemann, *Billieson v. City of New Orleans***, (May 27, 2011) No. 94-19231

11

(Civ. D. Ct. La.):

> *The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden and Carla A. Peak… IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

**Judge James Robertson,** *In re Department of Veterans Affairs (VA) Data Theft Litig.,* (February 11, 2009) MDL No. 1796 (D.C.):

> *The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.*

**Judge Louis J. Farina,** *Soders v. General Motors Corp.,* (December 19, 2008) No. CI-00-04255 (C.P. Pa.):

> *The Court has considered the proposed forms of Notice to Class members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.*

**Judge Robert W. Gettleman,** *In Re Trans Union Corp.,* (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> *The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…Accordingly, all objections are hereby OVERRULED.*

**Judge William G. Young,** *In re TJX Companies,* (September 2, 2008) MDL No. 1838 (D. Mass.):

> *…as attested in the Affidavit of Gina M. Intrepido…The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge David De Alba,** *Ford Explorer Cases,* (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

12

**Judge Kirk D. Johnson,** *Hunsucker v. American Standard Ins. Co. of Wisconsin*, (August 10, 2007) No. CV-2007-155-3 (Cir. Ct. Ark.):

> *Having admitted and reviewed the Affidavits of Carla Peak and Christine Danielson concerning the success of the notice campaign, including the fact that written notice reached approximately 86% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity* to *request exclusion to individual class members who had an earlier opportunity to request exclusion but failed to do so…Specifically, the Court received and admitted affidavits from Carla Peak and Christine Danielson, setting forth the scope and results of the notice campaign. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice and settlement website as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order was the best notice practicable under the circumstances to all members of the Settlement Class.*

# Speaking Engagements

*Ethics in Legal Notification*, accredited CLE Program, Gina Intrepido-Bowden, presented in Radnor at Kessler Topaz Meltzer & Check LLP (September 2015); Carla Peak & Patrick Ivie, presented in Philadelphia at Class Action Preservation Project (November 2014); Carla Peak & Robert DeWitte, presented in Philadelphia at Saltz, Mongeluzzi, Barrett & Bendesky, P.C. (August 2014); Gina Intrepido-Bowden & Patrick Ivie, presented in Utah at The St. Regis Deer Valley Resort (March 2014); Gina Intrepido-Bowden, Carla Peak & Steven Weisbrot, presented in New York at Morgan Lewis & Bockius (December 2012).

*Big Shoulders and High Standards. Can Plaintiffs Scale the Third Circuit's New Ascertainability Wall?* AMERICAN BAR ASSOCIATION 18th Annual National Institute on Class Actions, Gina Intrepido-Bowden presenter/panelist (October 2014).

*The Ethics of Class Action Settlements,* CHICAGO BAR ASSOCIATION, Class Litigation Committee, Carla Peak presenter/panelist (June 2014).

*Pitfalls of Class Action Notice and Settlement Administration,* accredited CLE Program, Carla Peak and Robert DeWitte, presented in Miami at Harke Clasby & Bushman LLP (March 2014); PRACTISING LAW INSTITUTE (PLI), Class Action Litigation 2013, Gina Intrepido-Bowden and Robert DeWitte presenters/panelists (July 2013).

*Designing a Settlement and Notice Program to Minimize Scrutiny and Objections,* AMERICAN CONFERENCE INSTITUTE (ACI), 16th National Conference on Consumer Finance Class Actions & Litigation, Gina Intrepido-Bowden presenter/panelist (July 2013).

*The Fundamentals of Settlement Administration* accredited CLE Program, Carla Peak and Steven Weisbrot, presented in Philadelphia at DLA Piper LLP (August 2013); Carla Peak and Robert DeWitte, presented in Illinois at Locke Lord LLP and broadcast to offices in California, Georgia, New York, Texas and London (April 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Skadden, Arps, Slate, Meagher & Flom LLP and Wexler Wallace LLP (January 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Hinshaw & Culbertson LLP (October 2012); Gina Intrepido-Bowden and Rob Taylor-Manning, presented in Pennsylvania at Spector Roseman Kodroff & Willis, P.C. (December 2011).

*Class Action Settlement Administration Tips & Pitfalls on the Path to Approval* accredited CLE Program, Carla Peak, Gina Intrepido-Bowden & Robert DeWitte, presented in Illinois at Jenner & Block and broadcast to offices in Washington DC, New York and California (October 2012).

*Perspectives from Class Action Claims Administrators: Innovations in Notification,* CLE

INTERNATIONAL, 8th Annual Class Actions Conference, Gina Intrepido-Bowden, presenter/panelist (May 2012).

*Innovations in Notification*, CHICAGO BAR ASSOCIATION, Class Litigation Committee Spring Seminar, Carla Peak, presenter (May 2012).

*Ethical Considerations in Canadian Class Actions*, accredited CLE Program, Gina Intrepido-Bowden and Robert Taylor-Manning, presented in Canada at Rochon Genova, LLP (April 2012).

*Reaching Class Members & Driving Take Rates*, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium, Gina Intrepido-Bowden, presenter/panelist (October 2011).

*Legal Notice Ethics*, accredited CLE Program, Gina Intrepido-Bowden, Carla Peak & Elizabeth Grande, presented in New York at Cohen Milstein Sellers & Toll PLLC and Milberg LLP (May 2010), in Illinois at Miller Law LLC (May 2010), in Pennsylvania at Berger & Montague, P.C., Anapol Schwartz, Lundy Law, and Dechert LLP, which was broadcast to offices in California, New Jersey, New York, North Carolina, Texas, Washington D.C., and London and sent via video to their office in China (October 2010), and in Minnesota at Heins Mills & Olson, P.L.C., Lockridge Grindal Nauen P.L.L.P., and Chestnut Cambronne (January 2011).

*Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, accredited CLE Program, Brian Christensen, Gina Intrepido & Richard Simmons, presented to Kansas Bar Association (March 2009).

# Articles

Carla Peak and Steven Weisbrot. *How to Design Your Notice to Minimize Professional Objectors,* Class Action Lawsuit Defense: Class Action Defense News, Developments and Commentary provided by BakerHostetler (www.classactionlawsuitdefense.com) (July 20, 2012).

Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011).

John B. Isbister, Todd B. Hilsee & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

# Legal Notice Case Examples

Following is a list of cases in which our expert(s) have been involved in the design and implementation of the notice program and/or notice documents:

| | |
|---|---|
| *Naef v. Masonite Corp (Hardboard Siding)* | Cir. Ct. Ala., CV-94-4033 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding)* | Cal. Super. Ct., CV-995787 |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion)* | N.J. Super. Ct., No. MID-L-8839-00 MT |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 01-2771 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Soders v. General Motors Corp. (Marketing Initiative)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Defrates v. Hollywood Entertainment Corp. (Extended Viewing Fees)* | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *West v. G&H Seed Co. (Crawfish Farmers)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Richison v. American Cemwood Corp. (Roofing Durability)* | Cal. Super. Ct., No. 005532 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Gordon v. Microsoft Corp. (Antitrust)* | D. Minn., No. 00-5994 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans Outreach)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring* | E.D. La., 2:04md1643 |
| *In re Serzone Products Liability* | S.D. W. Va., 02-md-1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Lupron Marketing & Sales Practices* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., NO. CJ-03-714 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |

| | |
|---|---|
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *In re Royal Ahold Securities and "ERISA"* | D. Md., 1:03-md-01539 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa., No. 2:05-CV-04951-AB |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *In re High Sulfur Content Gasoline Products Liability* | E.D. La., MDL No. 1632 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re Residential Schools Litigation* | Ont. Super. Ct., 00-CV-192059 CPA |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.* | N.D. Cal., No. C-05-04289-BZ |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities* | S.D. N.Y., 1:04-md-01653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Cir. Ct. Ark., No. 2007-154-3 |
| *Gunderson v. F.A. Richard & Associates, Inc. (FARA)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc. (Focus)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |
| *Donnelly v. United Technologies Corp.* | Ont. S.C.J., 06-CV-320045CP |
| *Wener v. United Technologies Corp.* | QC. Super. Ct., 500-06-000425-088 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Johnson v. Progressive* | Cir. Ct. Ark., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | Cir. Ct. W. Va., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Cir. Ct. Ark., No. CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Insurance)* | C.D. Cal., SACV06-2235-PSG (PJWx) |
| *Palace v. DaimlerChrysler (Neon Head Gaskets)* | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |
| *Beringer v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 8:07-cv-1657-T-23TGW |
| *Lockwood v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 2:07-CV-587-FtM-29-DNF |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Associates, Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Transmission, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |

| | |
|---|---|
| *Gunderson v. F.A. Richard & Associates, Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *In re Trans Union Corp. Privacy (Data Breach)* | N.D. Ill., MDL No. 1350 |
| *Gunderson v. F.A. Richard & Associates., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Bibb v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 041465 |
| *Carter v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 00-C-300 |
| *In re U.S. Department of Veterans Affairs (VA) Data Breach* | D. D.C., MDL 1796 |
| *In re Countrywide Financial Corp. Customer Data Security Breach* | W.D. Ky., MDL No. 3:08-md-1998 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CDs)* | Nos. 01-L-454 & 01-L-493 |
| *Griffin v. Dell Canada Inc.* | Ont. Super. Ct., No. 07-CV-325223D2 |
| *Plubell v. Merck & Co., Inc.* | Cir. Ct. Mo., No. 04CV235817-01 |
| *Billieson v. City of New Orleans* | Civ. D. Ct. La., No. 94-19231 |
| *Anderson v. Government of Canada* | Sup. Ct. NL, No. 2008NLTD166 |
| *Ko v. Natura Pet Products, Inc.* | N.D. Cal., No. 5:09cv02619 |
| *Allen v. UMB Bank, N.A.* | Cir. Ct. Mo., No. 1016-CV34791 |
| *Blue Cross of California Website Security Cases* | Sup. Ct. Cal., No. JCCP 4647 |
| *Alvarez v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2691-11 |
| *LaRocque v. TRS Recovery Services, Inc.* | D. Maine, No. 2:11cv00091 |
| *In re: Zurn Pex Plumbing Products Liability Litig.* | D. Minn., MDL No. 08-1958 |
| *Molina v. Intrust Bank, N.A.* | 18th Jud. D. Ct., 10-cv-3686 |
| *In Re: Uponor, Inc., F1807 Products Liability Litigation* | D. Minn, MDL No. 2247 |
| *Shames v. The Hertz Corporation* | S.D. Cal., No. 07cv2174-MMA |
| *Stroud v. eMachines, Inc.* | D. Ct. Cleveland Cnty, Okla., No. CJ-2003-968-L |
| *Holman v. Experian Information Solutions, Inc.* | N.D. Cal., No. 4:11cv00180 |
| *Beck-Ellman v. Kaz USA Inc.* | S.D. Cal., No. 10-cv-2134 |
| *Lee v. Stonebridge Life Insurance Company* | N.D. Cal., No. 3:11-cv-00043 |
| *Steinfeld v. Discover Financial Services* | N.D. Cal., No. 3:12-cv-01118 |
| *Cappalli v. BJ's Wholesale Club, Inc.* | D. R.I., No. 1:10-cv-00407 |
| *Poertner v. The Gillette Co. and The Procter & Gamble Co.* | M.D. Fla., No. 6:12-cv-00803 |
| *In re Hypodermic Products Antitrust Litigation* | D. N.J., No. 2:05-cv-01602 |
| *McCrary v. The Elations Company, LLC (class certification)* | C.D. Cal., No. 13-cv-00242 |
| *Lerma v. Schiff Nutrition International, Inc.* | S.D. Cal., No. 3:11-cv-01056 |
| *Charles v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2697-11 |
| *Kai v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2834-12 |
| *Roberts v. Electrolux Home Products, Inc.* | C.D. Cal., No. 8:12-cv-01644 |
| *Demereckis v. BSH Home Appliances Corporation* **(Certification)** | C.D. Cal., No. 8:10-cv-00711 |
| *In re Skelaxin (Metaxalone) Antitrust Litigation* | E.D. Ten., MDL 2343, No. 1:12-cv-194 |

| | |
|---|---|
| *Demmick v. Cellco Partnership d/b/a Verizon Wireless* | D. Ct. N.J., No. 06-cv-2163 |
| *Cobb v. BSH Home Appliances Corporation* | C.D. Cal., No. 8:10-cv-00711 |
| *Fond du Lac Bumper Exchange Inc. v. Jui Li Enterprise Co. Ltd. (Direct & Indirect Purchasers Classes)* | E.D. Wis., No. 2:09-cv-00852 |
| *Thomas v. Lennox Industries Inc.* | N.D. Ill., No. 1:13-cv-07747 |
| *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation* | N.D. Ill., No. 1:06-cv-07023 |
| *Chambers v. Whirlpool Corporation* | C.D. Cal., No. 8:11-cv-01733 |
| *Dial Corp. v. News Corp.* | S.D.N.Y., No. 1:13-cv-06802 |

Following is a list of cases in which our expert(s) were involved with a critique of the notice program and/or notices:

| | |
|---|---|
| *Barbanti v. W.R. Grace and Co. (Zonolite/Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |
| *In re W.R. Grace Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-3293-JCS |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Parsons/Currie v. McDonalds* | Ont. S.C.J., No. 02-CV-235958CP/No. 02-CV-238276 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |
| *Clark v. Pfizer, Inc. (Neurontin)* | C.P. Pa. Phila. Co., No. 9709-3162 |
| *In re Motor Fuel Temperature Sales Practices Litig.* | D. Kan., MDL No. 1840 |
| *Gallucci v. Boiron, Inc.* | S.D. Ca., No. 3:11-cv-02039 |
| *Tchoboian v. FedEx Office and Print Services, Inc.* | C.D. Cal., No.10-CV01008 |
| *In re Vitamin C Antitrust Litigation* | E.D. N.Y., No. 1:06-md-1738 |