# EXHIBIT 2

# DECLARATION OF ROY E. BARNES

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____

In re: The Home Depot, Inc., Customer    ) Case No.: 1:14-md-02583-TWT
Data Security Breach Litigation

This document relates to:

CONSUMER CASES

_____

)
)
)
)
)
)
)
)
)

**<u>DECLARATION OF ROY E. BARNES IN SUPPORT OF
CONSUMER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF
SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, AND
SCHEDULING OF A FINAL APPROVAL HEARING</u>**

Roy E. Barnes declares as follows, pursuant to 28 U.S.C. § 1746:

1.      I am a member of the Barnes Law Group LLC, Court-appointed liaison

counsel for the Consumer Cases in the above-captioned MDL. I am admitted to

practice before this Court.

2.      I have previously submitted a Declaration in support of Consumer

Plaintiffs' Joint Motion for Appointment of Consumer Plaintiffs' Leadership

Structure. (ECF No. 49-2, p. 5). In that Declaration, I set forth my experience in class

action and other complex cases. *See generally, id.*

3.     I have been actively involved in the prosecution of this case, am intimately familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my close supervision of and participation in the MDL.

4.     I respectfully submit this declaration in support of Consumer Plaintiffs' Motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for preliminary approval of Class Settlement of the claims of Consumer Plaintiffs (the "Settlement"),[1] preliminary certification of class settlement, approval of class notice, and scheduling of a final approval hearing.

5.     As part of my duties as Liaison Counsel, I have been involved in the settlement negotiations alongside Lead Counsel for Consumer Plaintiffs (collectively referred to as "Class Counsel").

6.     Based on my decades of experience serving as lead counsel in complex litigation and in serving as Liaison Counsel for this case, it is my opinion that the proposed Settlement is fair, adequate, and reasonable so as to satisfy the burden of preliminary and ultimately final approval.

**The Settlement Class and Benefits**

---

[1] This declaration is submitted in support of a negotiated settlement and is, therefore, subject to Rule 408 of the Federal Rules of Evidence and inadmissible in any proceeding, other than in connection with this Settlement. In the event the Court does not approve the proposed Settlement, this Declaration and the statements contained herein and in any supporting memoranda are made without prejudice to Consumer Plaintiffs' position on the merits.

7.     The proposed Settlement Class is defined as: "All residents of the United States whose Personal Information was compromised as a result of the Data Breach first disclosed by Home Depot in September 2014." "Personal Information" means payment card data including payment card account numbers, expiration dates, card verification values, and cardholder names from payment cards used at self-checkout lanes at U.S. Home Depot stores between April 10, 2014 and September 13, 2014, and/or e-mail addresses compromised as a result of the Data Breach.

8.     The Settlement Fund provides for various types of relief to the Consumer Plaintiffs, including substantial monetary relief. Home Depot will establish a $13 million fund to compensate Settlement Class Members for out-of-pocket losses, unreimbursed charges, and other "Substantiated Losses" as defined in paragraph 24 of the Settlement Agreement.

9.     Further, Settlement Class Members may submit a claim with supporting documentation to receive reimbursement for up to five hours, at $15 per hour, for time spent remedying issues relating to the data breach. Alternatively, Settlement Class Members who submit documentation for out-of-pocket losses or unreimbursed charges but cannot separately document their time spent remedying issues relating to the data breach, may self-certify the amount of time they spent without documentation and file a claim for up to two hours at $15 per hour. Settlement Class

3

Members who submit valid claim forms with documentation supporting their losses and lost time will be eligible for reimbursement up to a maximum of $10,000.

10.    Home Depot has also agreed to fund 18 months of identity protection in the form of Identity Guard's "Essentials" package available to all Class Members whose payment cards were compromised as a result of the data breach and enroll in the services. This product sells for $9.99 per month on the open market, or $179.82 for 18 months of service per person. The service provides Social Security number monitoring, online black market monitoring, identity verification alerts, account takeover alerts, identity theft victim assistance, lost wallet protection, password protection, and identity theft insurance of $1 million.

11.    Home Depot has also agreed to various forms of injunctive relief, including the adoption and implementation of the following data security measures in its U.S. stores for at least two years from the effective date of the Settlement Agreement: the creation of a Chief Information Security Officer executive position; routine product and data risk assessments; implementation of safeguards resulting from the risk assessments; standards for the selection and retention of service providers or vendors capable of maintaining security practices consistent with industry standards; a dynamic security program; written notice to store customers disclosing the storage and use of certain customer information; employee education and training regarding customer privacy and security of its customers' Personal

Information; and various enhanced security measures at the point of sale. The enhanced point-of-sale security measures will apply to all consumer credit and debit transactions made in Home Depot's U.S. stores, Home Depot will (1) encrypt all payment card data at the time that such data is input at the point of sale; (2) not retain the card security code data, the PIN verification code number, or the full contents of any track of magnetic stripe data, after the authorization of the transaction or in the case of a PIN debit transaction for more than 48 hours after authorization of the transaction; and (3) implement and utilize EMV chip card technology.

12.    In exchange for the above-referenced Settlement benefits, Consumer Plaintiffs and Settlement Class Members will release Home Depot from any claims relating to the issues in this case.

**Distribution of Class Benefits, Payment of Fees, and Service Awards**

13.    The parties have agreed to the following distribution plan: In the event that the Settlement Fund is not exhausted after all valid claims are paid, the remaining funds will be applied to (1) credit Home Depot up to the amount it paid to provide Identity Guard monitoring to the Settlement Class, and then (2) to credit Home Depot up to the amount it paid for notice costs and costs associated with administering the Settlement. Any remaining funds will be distributed *pro rata* to Settlement Class Members who made documented claims or as otherwise directed by the Court.

14.     Class Counsel negotiated relief for the class before engaging in any negotiation related to attorneys' fees. Home Depot has agreed to pay the reasonable attorneys' fees, costs and expenses of counsel for the Consumer Plaintiffs separate from and in addition to the Settlement Fund. Home Depot reserves the right to object to Class Counsel's request for attorneys' fees; provided, however, that Home Depot waives its right to appeal if the amount awarded by the Court in attorneys' fees does not exceed $8,475,000.00. In addition, Home Depot agrees not to oppose Class Counsel's request for reimbursement of reasonable costs and expenses up to $300,000.00. Any award of attorneys' fees, costs, and expenses will be paid separate from and in addition to the Settlement Fund.

15.     Consumer Plaintiffs' Counsel will apply for, and Home Depot agrees not to oppose, service awards of up to $1,000 for each Settlement Class Representative and each named Plaintiff in the Consolidated Amended Complaint in recognition of their commitment and the time and efforts they devoted to this case on behalf of the Settlement Class. Any Court-approved service awards will be paid from the Settlement Fund.

**Proposed Notice Program**

16.     Home Depot will pay the costs of providing notice to the Settlement Class, and all administrative costs associated with implementing the Settlement

6

benefits. These costs will be paid by Home Depot separately from the other Settlement Class benefits.

17.    The Notice proposed to be disseminated, pursuant to FRCP 23(c)(2)(B) and 23(e)(1), includes the following information: (i) the nature of the action; (ii) the definition of the class certified for settlement purposes; (iii) the class claims, issues, and defenses, (iv) that a class member may enter an appearance through an attorney if the class member so desires; (v) that the court will exclude from the class any class member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. The proposed forms of notice provide notice of these and additional details about the Settlement and its benefits.

18.    The Settlement proposes a Notice Program with four components: (1) E-Mail Notice, (2) Mail Notice, (3) Publication Notice, and (4) Notice on a Settlement Website. It provides individual notice to Settlement Class Members who can reasonably be identified from Home Depot's records. First, the Settlement Administrator will send E-Mail Notice to all Settlement Class Members for whom Home Depot possesses email addresses. If a Settlement Class Member's email address is unavailable or invalid, the Settlement Administrator will send Mail Notice if Home Depot can obtain a valid address from its records with reasonable effort. For notices that are returned undeliverable, the Settlement Administrator will take

appropriate steps to find updated address information (such as running the mailing address through the National Change of Address database) to re-mail the notices.

19.     To ensure an even broader reach, the proposed Notice Program also provides for publication notice to occur by May 2, 2016.

20.     The Settlement Administrator will also establish a settlement website to allow potential Settlement Class Members to view the notices, related case documents, and the Settlement Agreement, among other case information. The website will allow Settlement Class Members to submit a claim electronically.

**Evaluating the Settlement to Ensure that It Is Fair, Adequate, and Reasonable**

21.     Along with court-appointed Lead Counsel, I have determined that the Settlement is in the best interest of the Consumer Plaintiffs and warrants both preliminary and final approval. It is my determination that the Settlement is fair, adequate, reasonable, and free of fraud or collusion.

22.     First, the proposed Settlement is the product of extensive, good-faith negotiations between informed counsel. The parties' settlement negotiations were supervised by an experienced mediator, Jonathan B. Marks of MarksADR, LLC.

23.     The parties participated in two full-day mediation sessions supervised by Mr. Marks on September 1 and 18, 2015. While the parties made significant progress at these sessions, they did not reach agreement. Between the two mediation sessions and using the information gained from the first session, counsel for the

8

parties researched their positions to prepare for further negotiations, including the availability of identity-monitoring services.

24.    In the months following the formal mediation sessions, counsel for the parties continued to negotiate in person and by telephone with the assistance of Mr. Marks. During this period, Consumer Plaintiffs' Counsel investigated and priced identity theft monitoring services and used the information obtained to further their negotiating position. As a result of the parties' negotiations and Counsel's investigation, the parties executed a term sheet on January 26, 2016.

25.    By the time the parties began discussing settlement, they had devoted significant time to investigating the facts and legal claims. Among other things, Consumer Plaintiffs had filed their Consolidated Class Action Complaint, and the parties had fully briefed and argued Home Depot's Motion to Dismiss. (ECF No. 105). Participation in extensive discovery conferences provided further insight into the respective merits of the parties' positions. Finally, the parties exchanged additional information throughout the course of their settlement negotiations. As a result, at the time of Settlement, the parties were able to evaluate the relative merits of their claims and defenses.

26.    In conducting the settlement negotiations and in weighing the appropriateness of the proposed Settlement, Class Counsel was mindful of the *Bennett* factors described in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.

1984), which include (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. I am satisfied that the Settlement satisfies *Bennett* factors.

27.     First, although Class Counsel has a great deal of faith in the claims they have asserted, at this stage, Class Counsel had to weigh the risks involved in prosecuting this class action through trial. Ultimate success at trial is by no means assured.

28.     Home Depot filed a lengthy Memorandum in Support of its Motion to Dismiss, raising a number of arguments it contends warrants dismissal. Not only did Home Depot challenge the viability of each of Plaintiffs' causes of action, it also devoted a substantial portion of its brief to challenging Plaintiffs' Article III standing. Home Depot cited to several data breach cases where the plaintiffs were not able to satisfy the standing requirement. The Court has heard oral arguments on the Motion but has not yet ruled on the Motion.

29.     Class certification is challenging in any case, as district courts are instructed to undertake a "rigorous analysis" before granting certification. Moreover, some courts have declined to certify claims in data breach cases, citing

10

individualized issues relating to causation and damages. Similarly, nation-wide class certification within an MDL raises an additional procedural obstacle to certification.

30.     Additional procedural hurdles before trial include summary judgment motions and important discovery and *Daubert* motions would surely be filed.

31.     Success at trial is also always uncertain. We all know that trial lawyers who say they have never lost a trial simply have not tried that many cases.

32.     In light of the terms of the Settlement and the procedural hurdles that class members would have to overcome before any recovery, it is my view that the proposed Settlement fairly and efficiently provides meaningful relief.

33.     The Settlement satisfies the second and third *Bennett* factors—whether the settlement falls within the range of possible recoveries and is fair, adequate and reasonable. The Settlement confers significant monetary benefits, identity theft protection services, and important injunctive relief related to Home Depot's data security practices. It is significant to me that the Settlement will make Identity Guard services available to all Class Members whose payment cards were compromised in the breach. Based upon a review of Class Counsel's research, I have concluded that these benefits compare favorably with those of other settlements in data breach class actions that have been approved by courts.

34.     The fourth *Bennett* factor (the complexity, expense and duration of litigation) also weighs in favor of acceptance of the Settlement.

35.    As discussed above, several procedural hurdles, each presenting some risk to Plaintiffs, remained at the time the parties reached agreement. For instance, Home Depot's Motion to Dismiss remains pending. Plaintiffs will have to run the class certification gauntlet. Substantial fact and expert discovery will be necessary to prepare for trial, and Home Depot is likely to move for summary judgment.

36.    In addition, litigating this case to a conclusion would be costly. Plaintiffs anticipate that discovery would involve the production of a large number of documents, requiring significant time and expense to organize, store, review, and analyze. Expert witness discovery into such issues as data security systems and damages would likewise be costly.

37.    The cost of trial itself and any appeals would also be significant and would delay the resolution of this litigation without the guarantee of any relief. As this area of the law is not entirely settled, costly and time-consuming appeals are likely. The proposed Settlement, on the other hand, provides the Settlement Class with guaranteed and immediate recovery, including access to robust monitoring services.

38.    Courts generally do not consider the fifth *Bennett* factor—the substance and degree of opposition to the settlement—until notice has been provided to Settlement Class Members. It is my judgment that the proposed notice program constitutes the best notice that is practicable under the circumstances, especially after

12

Counsel had the opportunity to review multiple bids submitted for class administration and notice.

39. It is my judgment that the final *Bennett* factor—the stage of the proceedings at which the settlement was achieved—supports the approval of the Settlement.

40. At the time the Settlement was reached, the Consumer Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.

41. Even before filing the Consolidated Complaint, Class Counsel devoted significant time to investigating and analyzing the facts related to the data breach and Home Depot's conduct. Class Counsel researched potential claims under the laws of the various U.S. states and territories and defended these claims in opposing Home Depot's motion to dismiss.

42. Class Counsel engaged in protracted negotiations over not just settlement terms, but also the scope and method of discovery. These discussions resulted in numerous case management orders and discovery protocols.

43. This work, combined with their experience in successfully prosecuting similar data breach cases, allowed Class Counsel to fairly judge potential levels of relief, and to ultimately negotiate the best relief possible for the Class.

44.     For all the reasons stated herein, I believe that the proposed Settlement warrants preliminary approval.

I declare under penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 7th day of March 2016.

ROY E. BARNES