```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
 2                       ATLANTA DIVISION

 3

 4    IN RE:                              )
                                          )
 5    THE HOME DEPOT, INC., CUSTOMER      )
      DATA SECURITY BREACH LITIGATION,    ) Case No. 1:14-MD-2583-TWT
 6                                        )
                                          ) March 8, 2016
 7                                        ) 2:01 p.m.
      _____) Atlanta, Georgia
 8

 9

10           TRANSCRIPT OF THE SETTLEMENT CONFERENCE
         BEFORE THE HONORABLE THOMAS W. THRASH, JR.,
11                 U.S. DISTRICT COURT JUDGE

12

13
      APPEARANCES OF COUNSEL:
14
      On behalf of the Plaintiffs:   John Bevis
15                                   Norman Siegel
                                     Barrett Vahle
16                                   Marcio Valladares
                                     David Worley
17
      On behalf of the Defendant:    Phyllis Sumner
18                                   Stewart Haskins

19

20

21         Proceedings recorded by mechanical stenography
             and computer-aided transcript produced by
22
                    SUSAN C. BAKER, RMR, CRR
23                     2194 U.S. COURTHOUSE
                      75 SPRING STREET, S.W.
24                      ATLANTA, GA   30303
                          (404) 215-1558
25
```

1         (Proceedings held in Atlanta, Georgia, March 8, 2016,
2    2:01 p.m., in open court.)
3         THE COURT:  All right.  This is the case of In Re:
4    Home Depot Customer Data Security Breach Litigation, Case
5    Number 14-MD-2583.
6         First let me ask counsel for the parties to identify
7    yourselves for the record and the parties you represent if you
8    expect to participate in the hearing today.
9         MR. SIEGEL:  Good afternoon, Your Honor.  Norman
10   Siegel, Stueve Siegel Hanson, with my colleague, Barrett Vahle,
11   co-lead counsel for the Plaintiffs.  I will start us off this
12   afternoon.  Thank you.
13        THE COURT:  All right.
14        MR. WORLEY:  Good afternoon, Your Honor.  David
15   Worley of Harris Penn Lowry for the Plaintiffs.
16        THE COURT:  Good afternoon, Mr. Worley.
17        MR. BEVIS:  Good afternoon, Your Honor.  John Bevis,
18   liaison counsel for the consumer cases.
19        THE COURT:  Good afternoon, Mr. Bevis.
20        MR. VALLADARES:  May it please the Court, Your Honor.
21   Good afternoon.  My name is Marcio Valladares on behalf of
22   Morgan & Morgan here for John Yanchunis who's also co-lead.
23        THE COURT:  Good afternoon.
24        MR. VALLADARES:  Thank you, Your Honor.
25        MS. SUMNER:  Good afternoon, Your Honor.  Phyllis

1   Sumner and Stewart Haskins on behalf of The Home Depot.

2             THE COURT:  Good afternoon, counsel.

3             Anybody that's on the phone just monitoring the
4   hearing it's not necessary for you to identify yourself at this
5   time.

6             All right.  This is a hearing on the consumer
7   Plaintiffs' motion for preliminary approval of a class
8   settlement.

9             Mr. Siegel, you're going to start?

10            MR. SIEGEL:  Yes, Your Honor.  Thank you.

11            May it please the Court.  Your Honor, thank you for
12  seeing us on short notice.

13            As Your Honor is aware, last evening we filed papers
14  asking for preliminary approval of a settlement that would
15  resolve the consumer cases, the consumer cases track in this
16  MDL litigation.  As Your Honor knows, preliminary approval is
17  the first of a two-step process to approve a class action
18  settlement.  Today we're asking for the Court to enter the
19  proposed order we submitted that would preliminarily approve
20  this case pursuant to Rule 23.

21            The case law as it's developed in the Eleventh
22  Circuit suggests the Court should look at really two
23  fundamental factors, one, whether the agreement submitted at
24  this stage was made at arms length and, secondly, whether it at
25  least preliminarily appears to be fair, reasonable and adequate

1   with respect to the class.  If those standards are met, then --
2   and Your Honor signs the order, then notice would issue.  The
3   class would receive notice.  Participants would be able to make
4   their claims under the settlement.  And, of course, the
5   settlement class members would have the opportunity to object
6   or opt out of the settlement.
7          With respect to sort of the first standard, the
8   nature of the negotiations and whether they were arms length or
9   not, as Governor Barnes's declaration reveals, this was the
10  product of about seven months of negotiation with our
11  colleagues on the defense side here.  We had two separate
12  mediations with Jonathan Marks, a known mediator experienced in
13  this type of litigation.  We had an extensive back and forth on
14  just about every issue imaginable under -- that led to this
15  agreement.
16         Our colleagues on the defense side, Ms. Sumner,
17  Mr. Haskins, I would compliment.  Although we disagreed an
18  awful lot, we tried never to be disagreeable.  And I do think
19  we reached an agreement here that is in the best interest of
20  the settlement class.
21         With respect to the sort of second prong here, the
22  preliminary evaluation as to whether the settlement is fair,
23  reasonable and adequate, we plainly think it is as expressed in
24  our papers.  I'd like to briefly go through those elements.
25  And for us, as we approached these negotiations, we were

1    looking at what were our litigation goals here if we were to go
2    to trial.  The first thing we wanted to do was to make sure we
3    compensated those customers of Home Depot who had their card
4    information stolen that had some sort of financial loss.  We
5    wanted to make sure there was a mechanism for those folks to
6    make a recovery.
7         We also know from our experience in other damages
8    cases that people spend time trying to remedy these issues.
9    And whether or not they ultimately end up with a charge that
10   isn't reversed, they may have spent some time; and we wanted to
11   address those losses.  We also wanted to make sure there was a
12   mechanism to provide monitoring going forward.  So, obviously,
13   these debit and credit payment cards were compromised, sold in
14   the black market.  And we know through our consultation with
15   our experts that there are potentially carry-on breaches that
16   happened, and we wanted to give folks in the class an
17   opportunity to obtain monitoring to protect against just that.
18        Under the settlement, Home Depot also agrees to
19   change the way it monitors this type of data both with respect
20   to the professionals they will employ to oversee data
21   protection but also the systems in place.  And, again, that was
22   a component of the settlement that was a substantial goal of
23   ours and in consultation with our experts in the field formed
24   what we think is extensive non-monetary relief that benefits
25   the class.

1            Home Depot has also agreed to separately pay a notice
2    administration cost and agreed to separately pay reasonable
3    costs and attorneys' fees as awarded by the Court ultimately
4    when we make that motion.
5            With respect to the fund piece of it, the cash piece,
6    there's a $13 million fund established.  Again, class members,
7    settlement class members will have the opportunity to claim
8    against that fund by submitting documentation of losses
9    associated with the data breach.  They can make claims up to
10   $10,000.  With respect to the time component, settlement class
11   members that can document their time can claim five hours at
12   $15 an hour for $75 an hour.
13           And with respect to those types of financial losses,
14   that could be fees that were not or charges that were not
15   reversed by their bank, overdraft fees caused by their cards
16   being invalidated, delayed payment fees, late fees, and in the
17   claim form there's even the other.  There's another box.  So if
18   somebody has a unique situation where they suffered a loss that
19   was reasonably tethered to this breach, there's a mechanism for
20   that person to make a claim against that $13 million fund.
21           With respect to the monitoring, the monitoring will
22   be provided by Identity Guard.  We undertook a RFP of four of
23   the major data protection services available and closely
24   analyzed what was available out there to provide this type of
25   service that we could deliver to the class.  And this what we

1    have here in place in this settlement from Identity Guard
2    provides an extensive suite of monitoring of financial
3    accounts, Social Security number.  It provides a concierge
4    service if you do have your identity stolen through somebody
5    you can pick up the phone and call to seek assistance in
6    unwinding that.  And then there's also a million-dollar
7    insurance policy that wraps around that product.
8              This is a product that if you or I were to go out and
9    buy it at retail would be $10 a month.  The 18-month coverage
10   that we are providing through the settlement would be $180 of
11   benefit.  And, again, that would be made available to
12   settlement class members who had their payment card information
13   compromised as a result of the data breach.
14             I explained the non-monetary relief that was a
15   function of our consultation with our experts and I think by
16   any standard when viewed against the future risks of litigation
17   here the timing in terms of being able to deliver this relief
18   as soon as possible within the confines of Rule 23 that the
19   settlement is plainly fair, reasonable and adequate and
20   certainly also favorable in comparison to other consumer data
21   breach settlements which is also explained in Governor Barnes's
22   declaration.
23             So with respect to the first sort of thing to look
24   at, whether it's fair, reasonable and adequate, we believe what
25   we have presented the Court with respect to preliminary

1  approval plainly merits the next step which is to evaluate
2  whether the class should be certified for settlement purposes
3  as we explain in our papers.  We think the class here plainly
4  satisfies the elements of Rule 23.  There are tens of millions
5  of class members plainly satisfying numerosity.  We have issues
6  common to the class, including the nature and impact of the
7  breach at Home Depot.  The settlement class representatives are
8  typical of the class they seek to represent.  They are plainly
9  adequate.  As I hope we have demonstrated to the Court, counsel
10 is adequate as well.  And we believe that under the standards
11 of Rule 23 looking at those elements that certification is
12 appropriate for settlement purposes.
13         The next thing we'd ask the Court to do as explained
14 in the proposed order is reappoint the interim class counsel
15 Your Honor appointed at the outset of litigation, myself,
16 Mr. Vahle of my firm; Mr. Worley and Mr. Evangelista of the
17 Harris Penn Lowry firm; Governor Barnes and Mr. Bevis of
18 Mr. Barnes's firm -- Governor Barnes 's firm; and John
19 Yanchunis of Morgan & Morgan as settlement class counsel.  And
20 that's laid out in our papers in the proposed order.
21         The other sort of necessary appointments, Your Honor,
22 the next one is KCC.  KCC is the settlement administrator.  We
23 undertook in conjunction with counsel for Home Depot an RFP to
24 really find out what the best options were with respect to
25 settlement notice and administration for this class.  We

1   selected KCC.  They would, of course, need to be formally
2   approved by Your Honor.  And once that happens, notice would
3   issue pursuant to the notice plan that we have also asked the
4   Court to approve as part of the preliminary approval process.
5   KCC, very experienced -- I think both sides have worked with
6   KCC on many occasions.  And they have proposed a comprehensive
7   notice plan explained in detail that we believe should be
8   approved by the Court.
9            We have also asked the Court to appoint Identity
10  Guard as the provider for the monitoring services and basically
11  come under the authority of this Court for purposes of
12  executing the settlement that we have put before the Court this
13  afternoon.
14           With that, Your Honor, I will pause.  That is the
15  gist of our request to the Court this afternoon.  We have laid
16  out each of these elements in the proposed order that we have
17  submitted to the Court.  We understand that we submitted this
18  rather late in the evening as we were negotiating literally to
19  the 11th hour with Home Depot, and we appreciate the Court
20  seeing us on short notice.  But all of these elements are laid
21  out in this proposed order certifying the proposed class and
22  preliminarily approving the class action settlement to direct
23  notice to the class.
24           With respect to the schedule, Your Honor, you will
25  notice on the last page, second-to-last page before Your

1   Honor's signature line, there is a summary of deadlines we have
2   set forth that begin with the notice deadline and are triggered
3   off of that.  And we have populated those dates based on the
4   notice deadline.  The one variable, of course, is the final
5   approval hearing which is obviously a function of Your Honor's
6   calendar.
7           We've set forth here if Your Honor were to consider
8   this motion in the next day or so the timing would work out
9   that beginning sort of the first date that would work under the
10  schedule would be Friday, August 12th, 2016, for purposes of a
11  final approval hearing.  If Your Honor waited on issuing this
12  order, we would need to kick that date back to comply with the
13  time intervals provided for in the settlement agreement and to
14  ensure that there's a sufficient amount of time to get notice
15  out and an adequate amount of time for class members to object
16  or opt out of the settlement.
17          The other date that would need to be populated is
18  simply calculated 14 days before the date of final approval
19  which would be the date that we as Plaintiffs' counsel would
20  submit our final papers in support of the settlement, respond
21  to objections, if any, and ask for final approval of the
22  settlement.
23          So that, Your Honor, takes us through the proposed
24  order.  And I will pause there to see if the Court has any
25  questions about our motion this afternoon.

1                THE COURT:  I don't think so right now, Mr. Siegel.

2                MR. SIEGEL:  Thank you.

3                There is one housekeeping matter.  The settlement

4      provides for a mechanism that allows Home Depot to opt out of

5      the settlement if there's a specific number of class members

6      who elect to opt out who say they don't want to participate in

7      settlement.  It's a fairly typical term.  That specific number,

8      that threshold that would give Home Depot the unilateral right

9      to pull the settlement is something that we have agreed to

10     submit to the Court under seal.

11               Mindful of the conversation with the Court the last

12     time I was before Your Honor about the difficulty of submitting

13     things under seal, we want to inquire as to the Court as to the

14     best mechanism to provide that.  It is literally a one-page

15     document signed by both parties that provides this threshold

16     under seal.  But we can submit it in camera by letter or any

17     other mechanism that the Court thinks is appropriate.

18               THE COURT:  Well, what I would suggest you do is

19     simply e-mail Ms. Sewell a consent order allowing the filing

20     under seal of the document and attach a copy of the document to

21     the e-mail to Ms. Sewell.  But don't file it until you've

22     gotten a signed copy of the order allowing you to file it under

23     seal.

24               MR. SIEGEL:  Very well.  Thank you, Your Honor.  I'm

25     going to turn briefly.

```
1              Anything else?
2              If Your Honor doesn't have any other questions, that
3     concludes my presentation, Your Honor.
4              THE COURT:  All right, Mr. Siegel.
5              MR. SIEGEL:  Thank you.
6              THE COURT:  Ms. Sumner?  Or did anybody else on the
7     Plaintiffs' side want to speak?
8              Ms. Sumner?
9              MS. SUMNER:  Your Honor, on behalf of Home Depot, we
10    would just simply support that this was indeed an arms-length
11    negotiation that took many months to get where we are here
12    today.  And we are glad to be moving forward with a resolution
13    as the company has thought about its customers throughout this
14    process and are glad to be moving towards having this
15    litigation behind it.  And we are happy to answer any questions
16    that you may have.
17             THE COURT:  All right, Ms. Sumner.
18             Does anybody want to be heard at this time in
19    opposition to the motion for preliminary approval of the
20    settlement agreement?
21             (No response.)
22             THE COURT:  All right. Based on my review of the
23    papers that have been submitted, I'm going to preliminarily
24    approve the proposed settlement agreement.  It appears to me
25    that it was the result of arms-length negotiations and at least
```

1  preliminarily appears to be on its face a fair and reasonable
2  and adequate settlement in terms of the benefits provided to
3  the members of the class.
4              Mr. Siegel, the proposed order that I have in front
5  of me has part of Mr. Thompson's declaration on the back side
6  of the first page.  Are you okay with me signing that, or do
7  you want to submit a clean copy of it?
8              MR. SIEGEL:  Yeah.  Sorry about that.  Not sure how
9  that happened.  I have a clean copy for Your Honor.
10             THE COURT:  All right.
11             MR. SIEGEL:  The two tabs are just the final approval
12 hearing date, Your Honor.
13             THE COURT:  10:00 a.m. on August 12 suit you?
14             MR. SIEGEL:  Yes, Your Honor.
15             THE COURT:  All right.  Mr. Siegel, I've signed your
16 order.
17             MR. SIEGEL:  Thank you, Your Honor.
18             THE COURT:  Anything else we need to do today?
19             MR. SIEGEL:  Nothing from Plaintiffs, Your Honor.
20 Thank you.
21             MS. SUMNER:  No, Your Honor.  Thank you.
22             THE COURT:  Thank you very much.  I'll see you August
23 12th.
24             Court's in recess until further order.
25             (Proceedings adjourned at 2:21 p.m.)

14

1                          C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6          I hereby certify that the foregoing pages, 1 through

7    13, are a true and correct copy of the proceedings in the case

8    aforesaid.

9          This the 22nd day of March, 2016.

10

11

12

13                           _____

14                           Susan C. Baker, RMR, CRR
                             Official Court Reporter
15                           United States District Court

16

17

18

19

20

21

22

23

24

25