**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: The Home Depot, Inc., Customer Data Security Breach<br><br>This document relates to:<br><br>ALL FINANCIAL INSTITUTION CASES | MDL No. 14-02583-TWT |

### HOME DEPOT U.S.A., INC. AND THE HOME DEPOT, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH SUBPOENA

In the five months since the Court authorized "reasonable and appropriate discovery into what, if any, communications have gone out to non-named class members," (ECF No. 157, at 59:19-21), the Banks have deposed three Home Depot witnesses, five third parties, and have received document productions totaling more than 115,000 pages. The resulting evidentiary record disproves the Banks' opening theory that Home Depot was behind the allegedly misleading and coercive communications to MasterCard sponsored issuers that were the subject of the December 2015 hearing. Indeed, the Banks have all but conceded this point.

The Banks have now shifted gears to challenging the MasterCard premium, arguing it is illusory. But the Banks admit in their Motion that the *sworn testimony*

of MasterCard's witness (and Home Depot's witnesses) directly refutes this latest theory. Nevertheless, the Banks urge the Court to ignore this and other evidence directly on point so they can engage in even more discovery under the auspices of investigating whether this sworn testimony "holds water." (ECF. No. 199 at 7.) The Banks fishing expedition must come to an end. The Banks have had ample opportunity to investigate their theory that the premium calculation is illusory. The results of that investigation are in, and they show that it is the Banks' theory that does not hold water.

The Banks also resort to arguing that MasterCard misled them because they were unaware at the time they agreed to limit the scope of the subpoena that discussions regarding the assessment had occurred prior to October 1, 2015. This argument is baseless. Prior entering into the agreement with MasterCard, the Banks had deposed two Home Depot witnesses and were well aware of the relevant timeline.

The path forward is to wrap up discovery – not to allow it to continue on an endless loop based on rote speculation. The Banks' Motion should be denied.

## ARGUMENT AND CITATION OF AUTHORITIES

**I.     The Banks Have Conducted Extensive Discovery.**

The Banks are wrong that there is a blind spot into which they have been unable to obtain discovery. Since the December 2015 hearing, the Banks have launched a massive, far-reaching discovery campaign. Home Depot has responded to more than 70 document requests and two sets of interrogatories and has produced over 35,000 pages of documents. Third parties, including absent class members, have produced more than 72,000 pages of documents to the Banks. MasterCard alone produced more than 16,000 pages of documents.

In addition to written discovery, the Banks have taken eight depositions. Home Depot employees have had to sit for three depositions, including a deposition that the Banks insisted move forward two days before Christmas on December 23, 2015. The Banks have also deposed five third parties – Jack Henry & Associates, Fidelity, Vantiv, MasterCard and VISA. Third parties Fifth Third Bank, Fiserv and PSCU all received subpoenas as well. And the Banks have subpoenaed Home Depot's own counsel, Ropes & Gray, which Home Depot has moved to quash.

None of this discovery has produced evidence supporting the Banks' ever-changing theories. The Banks refuse to acknowledge this fact and instead seek even

more discovery. But enough is enough, and the Banks' conspiracy theories should not be indulged at the expense of Home Depot and multiple third parties.

## II. The Evidence Refutes the Banks' Illusory Premium Theory.

There is no need for additional discovery because, as the Banks admit, MasterCard – the most knowledgeable source – has provided sworn testimony explaining why it reduced Home Depot's assessment. MasterCard representative Marie Russo testified in her deposition that, after receiving the preliminary assessment, Home Depot informed MasterCard that it believed certain fraud losses were incorrectly included in the assessment. (M. Russo Depo. at 79:18-81:4, attached as Exhibit C to Gudmundson Decl.) More specifically, the assessment included fraud losses that could not have been caused by the breach because the losses predated the malware at issue. (*Id.* at 217:11-217:15.) MasterCard investigated and determined that the fraud used to calculate the preliminary assessment was "too high and . . . wasn't appropriately assigned to Home Depot." (*Id.* at 81:2-4.) As a result, MasterCard reduced the assessment by approximately $4.5 million.

MasterCard's testimony is consistent with testimony that Home Depot witnesses have provided to the Banks on three separate occasions. Michael Williams testified that the preliminary assessment amount was reduced because Home Depot

"highlighted that there appeared to be what I'm calling incremental fraud on cards that were ultimately deemed to have not been compromised as part of our event." (M. Williams Depo. at 76:16-76-18, attached as Exhibit A). He reiterated the same explanation at his second deposition. (Home Depot 30(b)(6) Depo. at 75:22-76:8, attached as Exhibit B). Dwaine Kimmet also provided this same explanation during his deposition. (D. Kimmet Depo. at 30:9-30:19, attached as Exhibit C).

Likewise, documents produced to the Banks confirm that the assessment reduction was an effort to resolve an error in calculating the preliminary assessment. In an email dated September 11, 2015, Eileen Simon of MasterCard emailed Dwaine Kimmet that they were "running revised calculations reflecting total liability of just about $38.16MM. This is the original $42.66MM less than the $4.5MM fraud adjustment." (Sept. 11, 2015 Email from E. Simon to D. Kimmet, attached as Exhibit D).

Out of the tens of thousands of pages of documents and hours of deposition testimony, the Banks point to a single document's use of the word "holdback" and argue that it suggests nefarious conduct. (ECF No. 199 at 16.) But MasterCard explained under oath that this term simply refers to the reduction Home Depot brought about by pointing out that the preliminary assessment was calculated incorrectly. Specifically, Ms. Russo testified that the reference to the holdback "was

referring to the 4.5 million that [MasterCard] had agreed that the fraud calculation should be reduced based on the various things that I had discussed with you previously" – i.e., the erroneous inclusion of fraud on cards never exposed in the breach. (M. Russo Depo. at 144:10-144:14, attached as Exhibit C to Gudmundson Decl.). This testimony is wholly consistent with both logic and Home Depot's explanation. Requiring even more discovery by third-party MasterCard – when it has already produced both documents and a witness for a deposition – will not change these facts.

### III. The Banks Agreed to Limit the MasterCard Subpoena with Full Knowledge of the Relevant Facts.

The Banks have not been misled. The Banks entered into the agreement with MasterCard on January 19, 2016. By that time, the Banks had deposed two Home Depot witnesses, and their testimony made it clear that discussions regarding the assessment had occurred prior to October 1, 2016. (*See* M. Williams Depo. at 44:16-44:23; 63:19-64:3). Home Depot witness Dwaine Kimmet also made this point on January 12, 2016 – five days before the Banks agreed to limit the scope of the subpoena – when he testified as follows:

> Q: And I'm not asking for a precise date, but what's your best recollection of when the final assessment was set?
>
> A: Yeah, and I would say this, if I may. I wouldn't say agreed upon either. You have to know that these were given to us.

>Q: Okay.  A So we took the preliminary assessment, we took the final assessment.  It was in September.
>
>Q: Okay.  **So from June 2015 through sometime September 2015, Home Depot was engaged in communications back and forth with Mastercard discussing the amount of the assessment**?
>
>A: For clarity, our discussions were around the inputs to the formula.

(D. Kimmet Depo. at 31:4-31:18, attached as Exhibit C) (emphasis added).  The result of this testimony is that the Banks could not have been misled by MasterCard.

Incredibly, the Banks acknowledge this testimony but persist with their argument that MasterCard misled them.  The Banks argue that they had "little time to investigate the underlying facts."  (ECF No. 199 at 17.)  This argument misses its mark because the relevant timeline the Banks claim they did not know about was the subject of extensive examination by the Banks at both depositions that occurred prior to the MasterCard agreement.  That is, no further investigation was necessary because the timeline was already known by the Banks.  The extensive examination of the relevant timeline also defeats the Banks' nonsensical argument that they knew that discussions were occurring prior to October 1, 2015, but that that knowledge is insufficient to hold them to their agreement because they did not know that those discussions also included "substantial, substantive negotiations."  (ECF No. 199 at

18.)[1]  Moreover, the Banks' attempt to magnify the significance of the pre-October 1, 2015 period by referring to the discussions as "substantial, substantive negotiations" falls flat.  Both Home Depot witnesses testified that these were not negotiations but discussions and that Home Depot simply "paid the bill."  (D. Kimmet Depo. at 73:22, attached as Exhibit C; *see* M. Williams Depo. at 54:14-54:17, attached as Exhibit A ("I wouldn't say there was a negotiation around the 42 million. There was a discussion around understanding the components of the 42 million."))  Without question, the record is clear that the Banks were armed with all of the relevant facts prior to entering the agreement with MasterCard and should therefore be required to honor that agreement.

## CONCLUSION

For these reasons, the Court should deny the Banks' Motion and require them to honor their agreement with MasterCard.

---

[1] The Court should reject the Banks' threat that they will engage in even more aggressive discovery if they are not permitted to walk away from an agreement they entered into with full knowledge of the relevant facts.  The effect of granting the Banks' Motion would be to discourage – not encourage – future compromise because the parties will lack confidence that any agreement they reach will be enforced.

Respectfully submitted this 12th day of May, 2016.

> By: */s/ Kristine M. Brown*
> CARI K. DAWSON
> Georgia Bar Number 213490
> KRISTINE MCALISTER BROWN
> Georgia Bar Number 480189
> **ALSTON & BIRD LLP**
> 1201 West Peachtree Street
> Atlanta, Georgia  30309-3424
> Telephone:  404-881-7000
> Facsimile: 404-881-7777
> cari.dawson@alston.com
> kristy.brown@alston.com
>
> *Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by LR 5.1B.  This Memorandum was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 12th day of May, 2016.

By: */s/ Kristine M. Brown*
KRISTINE MCALISTER BROWN
Georgia Bar Number 480189

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on May 12, 2016, with the Court and served electronically through the CM/ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case.

By: */s/ Kristine M. Brown*
KRISTINE MCALISTER BROWN
Georgia Bar Number 480189
