# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - x
                                            :
                                            :    MDL No. 14-02583-TWT
                                            :
In re: The Home Depot, Inc. Customer        :
Data Security Breach Litigation.            :
                                            :
                                            :
                                            :
                                            :
- - - - - - - - - - - - - - - - - - - - - - x
```

**MEMORANDUM OF LAW OF NON-PARTY MASTERCARD
INTERNATIONAL INCORPORATED IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL MASTERCARD'S
FURTHER RESPONSE TO SUBPOENA AND FOR COSTS
AND ATTORNEYS' FEES UNDER FRCP 37(a)(5)(B) & 45(d)(1)**

2492244

# TABLE OF CONTENTS

Page

Table of Authorities .................................................................................... ii

BACKGROUND.................................................................................... 5

PLAINTIFFS' FIRST SUBPOENA TO MASTERCARD ...................................... 5

PLAINTIFFS DEPOSE MICHAEL WILLIAMS ................................................. 6

PLAINTIFFS SERVE THREE MORE SUBPOENAS ........................................... 7

PLAINTIFFS' DEPOSE DWAINE KIMMET........................................................ 8

PLAINTIFFS AGREE TO A COMPROMISE WITH MASTERCARD ................ 9

PLAINTIFFS' FIFTH SUBPOENA AND MASTERCARD'S
PRODUCTION ........................................................................................... 11

PLAINTIFFS TAKE MASTERCARD'S 30(b)(6) DEPOSITION........................ 12

PLAINTIFFS CHANGE THEIR THEORY ........................................................... 13

MASTERCARD'S GOOD FAITH SUPPLEMENTAL PRODUCTION ............. 14

PLAINTIFFS CONTINUING DEMANDS ON MASTERCARD ........................ 14

ARGUMENT ......................................................................................................... 16

I.      APPLICABLE STANDARDS ..................................................................... 16

II.     PLAINTIFFS HAVE NOT ESTABLISHED RELEVANCE ...................... 17

III.    PLAINTIFFS' REQUEST WOULD IMPOSE UNDUE BURDEN
        AND EXPENSE ......................................................................................... 20

IV.    THERE IS NO BASIS TO EXPAND ON THE REASONABLE
       SCOPE THAT PLAINTIFFS PREVIOUSLY AGREED TO ..................... 22

V.     PLAINTIFFS' MOTION IS UNTIMELY ................................................... 24

VI.    PLAINTIFFS AND THEIR COUNSEL SHOULD BE REQUIRED TO
       PAY MASTERCARD'S COSTS AND ATTORNEYS' FEES .................. 24

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Androgel Antitrust Litig.*,
No. 1:09-MD-2084-TWT, 2015 WL 2193777 (N.D. Ga. May 11, 2015).. 17, 20

*Pinehaven Plantation Props., LLC v. Mountcastle Family LLC*,
No. 1:12-cv-62 (WLS), 2013 WL 6734117 (M.D. Ga. Dec. 19, 2013)............ 19

*Shannon v. Albertelli Firm, P.C.*,
610 Fed. App'x 866 (11th Cir. 2015) ................................................................ 18

RULES

FRCP 26 ........................................,.............................................................. 16, 18

FRCP 37 .................................................................................................... 1, 17, 24

FRCP 45 ................................................................................................. 1, 2, 17, 24

Non-party   MasterCard   International   Incorporated   ("MasterCard") respectfully submits this memorandum of law:  (i) in opposition to the Financial Institution Plaintiffs' ("Plaintiffs") motion to require MasterCard to expand its response to Plaintiffs' Subpoena by another four months; and (ii) in support of MasterCard's request for an award of costs and attorneys' fees, under FRCP 37(a)(5)(B) and 45(d)(1), in responding to this abusive and unnecessary motion.

### PRIMINARY STATEMENT

On December 14, 2015, this Court granted Plaintiffs one month of "reasonable and appropriate" discovery on a single issue:  whether communications from certain sponsoring issuers of MasterCard payment cards to their sponsored issuers about Phase I of a Settlement Agreement between Home Depot and MasterCard were "misleading and coercive." [ECF No. 157 at 59-60.]

On December 18, 2015, Plaintiffs served on non-party MasterCard a patently overbroad subpoena (consisting of 19 document requests and 11 deposition topics).  Before the meet and confer discussions that are at issue on this motion took place, Plaintiffs deposed two senior Home Depot executives -- Michael Williams and Dwaine Kimmet. Both executives confirmed that the communications in question were not written, sent, approved or seen by Home Depot prior to their transmittal.  Discovery has further confirmed that those communications likewise were never written, reviewed or seen, let alone

approved, by MasterCard before they were sent.

Notwithstanding the collapse of the theory that Plaintiffs posited to obtain limited discovery, and heedless of the constraints imposed by FRCP 45 with regard to discovery from non-parties, Plaintiffs obtained a 24-day extension (to February 24, 2016) of the discovery period, pressed ahead with their original subpoena to MasterCard without narrowing the requests one iota, served an amended subpoena that actually included an additional request, and attempted to serve two more subpoenas personally on senior MasterCard executives.

On January 19, 2016, following several meet and confer communications, Plaintiffs agreed to limit the time period of their subpoena (without cutting down the number of requests) to October through December 2015.  At the time they agreed to this limitation, Plaintiffs already had taken the two Home Depot depositions and knew full well that:  (i) in or about June 2015, MasterCard provided Home Depot with a preliminary estimate of Home Depot's liability to issuers arising from the data breach (approximately $42 million); (ii) Home Depot took issue with certain aspects of that estimate and asked MasterCard to review its calculations; and (iii) after review, MasterCard corrected the preliminary estimate and reduced the final liability amount to approximately $38 million.

MasterCard fully complied with its agreement, producing in excess of 8,000 pages and producing the head of its fraud group (Marie Russo) for a 7 hour

deposition in which she answered every question asked of her.

Having reached a dead end on their initial theory based on the negotiation of the settlement language and the communication of the settlement terms to issuers (there was no dispute that the settlement agreement accurately reflected the final liability amount), Plaintiffs abruptly changed course and came up with an entirely new theory upon which they sought to re-open another four months of discovery from MasterCard -- *viz.*, that Home Depot "conspired" with MasterCard to artificially reduce the preliminary estimate by approximately 10% to allow Home Depot to offer an allegedly "illusory" 10% premium in exchange for issuer releases. The problem with Plaintiffs' revisionist theory, as four depositions and thousands of documents have confirmed, is that there is no evidence to support it.

Plaintiffs painstakingly deposed Ms. Russo about the circumstances under which MasterCard corrected the preliminary estimate. She explained in detail that Home Depot had identified a calculation error (based on the manner in which the malware was installed and operated), which MasterCard later verified based on the forensic evidence, and that MasterCard accordingly adjusted its initial calculation downward to correct the error and arrive at a final liability amount. Yet, following Ms. Russo's deposition, Plaintiffs demanded that MasterCard produce all documents responsive to their overbroad subpoena for the time period of June-September 2015. The pretext for this request was the suggestion that counsel was

somehow misled during the meet and confer into believing that no discussions concerning the amount of the assessment had taken place before October 1. But Plaintiffs knew early on in discovery that such discussions had taken place in June 2015, and altered the focus of their discovery only after they changed their theory.[1]

Nevertheless, to put to rest Plaintiffs' baseless insinuation that the calculation of the final assessment was somehow a sham, MasterCard voluntarily produced documents from July 2015 reflecting MasterCard's calculations underlying the final liability amount (an additional 8,000 pages) plus a contemporaneous explanatory worksheet. These documents fully supported Ms. Russo's testimony. Upon receiving this good faith supplemental production, however, Plaintiffs professed not to understand the calculations and renewed their demand that MasterCard search for, review, and produce another four months of emails and other documents responsive to their overbroad subpoena.

There is no valid basis for Plaintiffs' request to be relieved from the agreement they knowingly entered into. Consistent with the testimony that Plaintiffs obtained before agreeing to the compromise, discovery has confirmed that: MasterCard independently performed the calculations based on the forensic evidence; once that calculation was finalized, Home Depot independently decided

---

[1] As shown in the Background section below, Plaintiffs' articulation of the meet and confer agreement with MasterCard has similarly changed over time to conform to Plaintiffs' changing theories.

to offer a 10% premium in exchange for releases; and the final liability amount was accurately reported to the Phase I issuers (several of whom chose to reject the settlement).

To the extent Plaintiffs' theory is now that the *preliminary estimate* should have been disclosed to issuers (and that the omission of a reference to the preliminary estimate somehow rendered the Phase I offer "misleading"), Plaintiffs cite no rule or other requirement that MasterCard disclose a preliminary estimate that, by its very nature, was subject to ongoing review and revision as MasterCard analyzed the forensic evidence). But, even if there were any such obligation (which there is not), that theory would not support Plaintiffs' demand for more discovery because there is no dispute that the estimate was not reported to issuers. Since this is purely a legal issue, not a factual one, no additional discovery is needed, let alone from a non-party that has already provided substantial discovery.

## BACKGROUND

### PLAINTIFFS' FIRST SUBPOENA TO MASTERCARD

Plaintiffs served their first subpoena, containing 19 document requests and 11 deposition topics, on MasterCard on December 18, 2015. The subpoena requested the production of voluminous documents by December 29, 2015 (the second business day after the Christmas weekend), and a 30(b)(6) deposition by January 5, 2016. Hyman Decl. ¶ 4, Ex. 1.

**PLAINTIFFS DEPOSE MICHAEL WILLIAMS**

On December 23, 2015, Plaintiffs deposed Home Depot's Director of Financial Services, Michael Williams. *Id.* ¶ 5, Ex. 2. As the transcript shows, Plaintiffs asked Mr. Williams about the settlement timeline and any discussions between Home Depot and MasterCard concerning the ADC liability calculations.

Mr. Williams testified that MasterCard provided a preliminary estimate of approximately $42 million in the summer of 2015. *Id.* Ex. 2 at 42:22-43:5; 44:16-23. He explained that, upon receiving the preliminary estimate, Home Depot and MasterCard discussed the estimate. These discussions did not constitute negotiations, but rather were an attempt by Home Depot to "understand[] the components of the 42 million." *Id.* Ex. 2 at 53:10-54:17; 61:23-65:16; 68:24-74:9.

Mr. Williams testified that his understanding of why the final liability amount of $38 million was less than the preliminary estimate was that Home Depot highlighted what it believed was an error in the number of accounts that MasterCard included in its calculations. *Id.* Ex. 2 at 70:19-73:23; 76:8-79:20. Plaintiffs asked Mr. Williams directly whether Home Depot and MasterCard engaged in any manipulation of the ADC liability figures, and he unequivocally testified no. *Id.* Ex. 2 at 94:7-23. As to Home Depot's decision to offer a 10% premium to issuers who signed releases, Mr. Williams testified that the only discussion within Home Depot about any relation between the 10% premium, on

the one hand, and the difference between MasterCard's preliminary estimate and final liability determination, on the other hand, related to Home Depot's accounting for its reserve. *Id.* Ex. 2 at 95:4-98:18.

## PLAINTIFFS SERVE THREE MORE SUBPOENAS

On December 28, 2015, MasterCard served Objections to Plaintiffs' December 18 subpoena.  Notwithstanding the myriad problems with the subpoena, MasterCard proposed a good faith compromise to attempt to give Plaintiffs the key documents they claimed to need within the initial time frame established by the Court:   MasterCard would produce all of its communications with non-named class members concerning the proposed settlements. *Id.* ¶¶ 6-7, Ex. 3.

On January 4, 2016, during a meet and confer call, Plaintiffs refused to narrow the subpoena in any way.  They vaguely stated that they were relying on the Williams deposition to support their requests.  The transcript was confidential, but counsel said they would try to provide it to MasterCard, and it was agreed that the meet and confer would resume following MasterCard's receipt of the transcript.  However, on January 6, before MasterCard received a copy of the Williams transcript, Plaintiffs sent a letter to MasterCard, threatening (after a single meet and confer call) to file a motion to compel if MasterCard did not withdraw its objections concerning the scope of its production. *Id.* ¶¶ 9-10, Ex. 5.

But there was more.

On January 7, 2016, Plaintiffs attempted, in the utmost bad faith, to serve two new subpoenas on MasterCard employees Eileen Simon and Marie Russo, even though their counsel had been informed that one of these executives would likely be MasterCard's 30(b)(6) witness.   Also on January 7, MasterCard responded to Plaintiffs' January 6 letter, asking Plaintiffs to explain the basis for their requests for documents going beyond the communications with non-named class members, and indicating willingness to meet and confer after receipt of the Williams transcript. *Id.* ¶¶ 11-12, Exs. 6 & 7.

On January 8, 2016, the Williams transcript was released to MasterCard's counsel.  On the same day, Plaintiffs served an amended subpoena that added a new document request and a new deposition topic, for a total of 20 document requests and 12 deposition topics. *Id.* ¶¶ 13-14, Ex. 8.

## PLAINTIFFS' DEPOSE DWAINE KIMMET

On January 12, 2016, Plaintiffs deposed Home Depot's Treasurer and Senior Vice President, Dwaine Kimmet.  Gudmundson Dec. Ex. N.  The transcript shows that, as with Mr. Williams, Plaintiffs thoroughly questioned Mr. Kimmet concerning the settlement timeline and any discussions between Home Depot and MasterCard concerning the calculation of the ADC liability.

Mr. Kimmet testified that he had a meeting with MasterCard in mid-June 2015 "to walk through the preliminary assessment." *Id.* Ex. N at 20:24-21:10;

22:24-24:1; 25:8-21.   He explained that Home Depot wanted to understand the inputs into MasterCard's formula "[s]o that it was as accurate coming out of their formula when it turned into a dollar amount." *Id.* Ex. N at 25:22-26:13.   He testified that his understanding of why the final liability amount was less than MasterCard's preliminary estimate was based on Home Depot having raised issues concerning the inputs into the formula. *Id.* Ex. N at 29:6-30:23.

Mr. Kimmet made clear that the assessment was not based on any agreement with MasterCard.   *Id.* Ex. N at 30:24-31:12.   He also testified that a group of Home Depot executives determined internally the amount of the premium that Home Depot would offer issuers in exchange for releases "based on where we thought the market needed to be to get the releases we sought." *Id.* Ex. N at 42:15-45:1.   Plaintiffs pointedly asked Mr. Kimmet if there was any manipulation of the ADC assessment or the premium, and he testified no.[2] *Id.* Ex. N at 45:2-10.

## PLAINTIFFS AGREE TO A COMPROMISE WITH MASTERCARD

On January 14, 2016, MasterCard objected to Plaintiffs' amended subpoena, again offering to produce all settlement communications with non-named class members and a 30(b)(6) witness.   On January 15, MasterCard objected to the subpoenas to Ms. Simon and Ms. Russo.  Hyman Decl. ¶¶ 17-18, Exs. 9 & 10.

---

[2] Plaintiffs took a third Home Depot deposition, of Michael Williams as a 30(b)(6) witness, on February 24, 2016.  The transcript of that later deposition has not been provided to MasterCard.

On January 19, 2016, MasterCard's counsel had yet another meet and confer call with Plaintiffs' counsel. During this call, a compromise was reached on the scope of MasterCard's production: MasterCard would search the email files of three custodians -- Ms. Simon, Ms. Russo, and the ADC Settlement mailbox (which MasterCard used to communicate with issuers concerning the proposed settlements) -- for the time period of October-December 2015. MasterCard also agreed to produce Ms. Russo as a 30(b)(6) witness. *Id.* ¶¶ 19-20.

When Plaintiffs agreed to the October-December time limitation, they knew full well from the Home Depot depositions that MasterCard and Home Depot had discussed the liability calculations in the summer of 2015. During the January 19 call, however, Plaintiffs' counsel did not express interest in those communications. Instead, they focused on the negotiation of the terms of the settlement agreement and the communication of the proposed settlement to non-named class members. Indeed, the document requests in Plaintiffs' Subpoena reveal Plaintiffs' focus at that time. The overwhelming bulk of the requests concern matters such as the settlement agreements and drafts thereof, the issuers to whom the settlement was proposed, the process by which settlement communications were formulated and sent, and the decision-making concerning the content and timing of communications with issuers. MasterCard's counsel accurately conveyed to Plaintiffs' counsel that negotiation of the settlement agreement and the settlement

communications with issuers did not begin until October 2015. *Id.* ¶¶ 21-23.

On January 21, 2016, Plaintiffs' counsel sent a letter purporting to set forth the compromise reached during the January 19 meet and confer call. Plaintiffs' counsel included a caveat in the letter: "while I understood you would be applying these time parameters to any electronic search and collection, if during the course of your activities you learned that *substantive documents* existed prior to this time that you would either produce those documents or get back to me with any burden issues" (emphasis added). Based on the discussions during the January 19 call, MasterCard's counsel understood this caveat to refer to the negotiation of the settlement agreement and communications with issuers, which had been Plaintiffs' focus during the call and in their subpoena. *Id.* ¶¶ 24-25, Ex. 11.

**PLAINTIFFS' FIFTH SUBPOENA AND MASTERCARD'S PRODUCTION**

On January 29, 2016, Plaintiffs issued a second "amended subpoena" to MasterCard, containing the same twenty document requests and twelve deposition topics as the previous subpoena, but providing for a production date of February 5 and a 30(b)(6) deposition on February 19 (the "Subpoena").[3] *Id.* ¶ 26, Ex. 12.

On February 5, 2016, MasterCard produced 8,134 pages of internal and

---

[3] MasterCard and Plaintiffs agreed that MasterCard's previous Objections would be incorporated by reference in response to the January 29 Subpoena and that MasterCard's production would be subject to the terms previously agreed to during the January 19 call. Hyman Decl. ¶ 28, Ex. 13.

external emails from Ms. Simon, Ms. Russo, and the ADC Settlement mailbox for the time period from October-December 2015, in accordance with the compromises reached during meet and confer. *Id.* ¶ 29, Ex. 14.

**PLAINTIFFS TAKE MASTERCARD'S 30(b)(6) DEPOSITION**

On February 19, 2016, Plaintiffs deposed MasterCard's 30(b)(6) witness, Ms. Russo, for 7 hours. Gudmundson Decl. Ex. C. Ms. Russo is a Group Head and Senior Vice President with responsibility for managing MasterCard's account data compromise team. *Id.* Ex. C at 20:6-14. She responded to all of Plaintiffs' questions, including those asking for an explanation of how MasterCard calculated the ADC liability and explained in detail why the preliminary estimate was greater than the final liability determination. *See, e.g., id.* Ex. C at 63:17-76:14.

In particular, Ms. Russo testified that: (i) Home Depot had pointed out that MasterCard's preliminary calculation included fraud that was outside the appropriate "at risk" time frame; (ii) MasterCard investigated Home Depot's contention by reviewing the findings of the forensic investigator; and (iii) Home Depot's contention was found to be valid.[4] *Id.* Ex. C at 79:18-89:7; 135:15-136:9;

---

[4] Ms. Russo testified that the forensic evidence supported Home Depot's argument that the malware was not on all of the checkout lanes, or was not active on all of the checkout lanes, for the entire duration of the at-risk time period. If a card was used on a lane prior to that lane having active malware, subsequent fraud on that account could not have been attributable to the Home Depot breach. Accordingly, fundamental fairness dictated that the at-risk time frames needed to be adjusted

217:16-219:23;  221:23-222:10.   Ms. Russo also testified that there was no agreement between MasterCard and Home Depot relating to Home Depot's decision to offer issuers a 10% premium, that she did not know how Home Depot came up with that number, and that she never discussed with Home Depot the manner in which that number was determined.  *Id.* Ex. C at 129:16-131:15.

## PLAINTIFFS CHANGE THEIR THEORY

In a letter dated February 22, 2016, Plaintiffs claimed that MasterCard's counsel had represented during the meet and confer that "*substantial activities* relating to the MasterCard settlement with Home Depot did not commence until October 2015" (emphasis added).  The letter requested that MasterCard "produce responsive documents from May 1, 2015 through December 31, 2015, including specifically any documents or data relating to the calculations and reductions of the assessment amounts."  Hyman Decl. ¶ 33, Ex. 15.

Plaintiffs' letter mischaracterized the meet and confer negotiations because the phrase "substantial activities" was not a parameter in the meet and confer. Nor, of course, did Plaintiffs proffer any definition of "substantial activities." Moreover, Plaintiffs' claim that they were misled about the timeline was disingenuous because they already had taken the Home Depot depositions and

---

based on the forensic evidence.  This resulted in a reduction of the number of impacted accounts, which in turn resulted in a lower ADC liability determination compared to the preliminary estimate.  Gudmundson Decl. Ex. C at 79:18-89:7.

knew precisely what was discussed. Rather than Ms. Russo having provided any factual revelation that was new or different from the Home Depot testimony, Plaintiffs simply decided to change their theory and shift the focus from the negotiation of the settlement language and communications with issuers, which had become a dead end, to trying to dig up evidence of collusion in connection with MasterCard's determination of the final liability amount. But the evidence did not support Plaintiffs' new theory. *Id.* ¶¶ 34-36.

## MASTERCARD'S GOOD FAITH SUPPLEMENTAL PRODUCTION

On March 4, 2016, MasterCard sent a response to Plaintiffs' counsel, explaining why they did not have a basis to re-open discovery from MasterCard. In a good faith effort to accommodate Plaintiffs' request for calculation documents while balancing the burden on MasterCard, however, MasterCard enclosed a supplemental production of another 8,014 pages. The production consisted of: documents from July 2015 showing MasterCard's actual calculation of the final ADC liability based on the revised scope of account data as to which Ms. Russo had testified; and contemporaneous explanatory worksheet.[5] *Id.* ¶ 38, Ex. 16.

## PLAINTIFFS CONTINUING DEMANDS ON MASTERCARD

After receiving MasterCard's supplemental production, Plaintiffs still were

---

[5] MasterCard made its supplemental production even though, on February 24, 2016, Plaintiffs' discovery deadline vis-à-vis MasterCard expired and had not been extended. Hyman Decl. ¶ 37.

not satisfied and continued to demand that MasterCard search for and produce all "responsive" documents from June through September 2015. MasterCard exchanged numerous meet and confer letters and emails with Plaintiffs, during which MasterCard pointed out, among other things, that Plaintiffs still had not shown any basis to support their latest request. *Id.* ¶¶ 40-43, Exs. 17-18.

Rather than attempting to provide any justification for the burdensome demand, on March 15, 2016, Plaintiffs stated that they would be making a motion to compel "for the limited purpose of obtaining the relevant emails from the summer of 2015 that you told me did not exist, but which clearly do exist." *Id.* ¶ 44, Ex. 18. Plaintiffs again mischaracterized the meet and confer discussions. MasterCard's counsel did not use, and would never have used, the terms "relevant emails" as the parameter under the Subpoena, since the parties had very different views concerning "relevance," and counsel never denied or misrepresented that MasterCard and Home Depot had discussions about the calculations in the summer of 2015. *Id.* ¶ 44. Plaintiffs had long been aware of these discussions, which only became "relevant" when they changed their theory.[6]

---

[6] Plaintiffs' motion papers attribute certain quoted language to MasterCard's counsel from the January 19 meet and confer call. It is unclear what they purport to rely on for these quotes. Martin Hyman and Matthew Daly participated in the call on behalf of MasterCard and have no recollection or record of having used the quoted language. Nor is it language they would have used. Hyman Decl. ¶ 45. Tellingly, in the various meet and confer correspondence that preceded this

During the week of March 21, 2016, Plaintiffs' counsel said they would confer internally and try to come up with a proposal to narrow their request in a final attempt to avoid Court intervention. Plaintiffs' "proposal," however, did not materially narrow their request nor address MasterCard's relevance or burden concerns. Plaintiffs simply said they want every "responsive" email (whatever that was intended to mean), including emails relating to the calculation of the final liability amount, from Ms. Simon and Ms. Russo from June-September 2015, but excluding only emails with Home Depot (which they presumably already had). Plaintiffs then made this motion pursuant to MasterCard's consent to have it heard in this MDL Court in lieu of the SDNY. *Id.* ¶¶ 48-49, Ex. 20.

## ARGUMENT

## I.   APPLICABLE STANDARDS

Under FRCP 26(b)(1), discovery must be:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Additionally, under Rule 26(b)(2)(C), the Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it

---

motion, Plaintiffs never referred to such quoted language, but rather attributed several *different* statements to MasterCard's counsel. *See id.* Exs. 11 ("substantive documents"), 15 ("substantial activities"), 17 ("relevant emails").

determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."

The Federal Rules require additional consideration when discovery is sought from a non-party.  Rule 45(d)(1) requires that a party and its attorney "must take reasonable steps to avoid imposing undue burden and expense on a person subject to the subpoena."  The Court "must . . . impose an appropriate sanction -- which may include lost earnings and reasonable attorneys' fees -- on any party or attorney who fails to comply."  FRCP 45(d)(1); *see also* FRCP 45(d)(2)(B)(ii) (court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance").

Additionally, if a motion to compel is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorneys' fees," unless the motion was "substantially justified or other circumstances make an award of expenses unjust." FRCP 37(a)(5)(B).

## II.   PLAINTIFFS HAVE NOT ESTABLISHED RELEVANCE

"The party seeking discovery has the burden of showing that the requested material is relevant."  *In re Androgel Antitrust Litig.*, No. 1:09-MD-2084-TWT, 2015 WL 2193777, at *3 (N.D. Ga. May 11, 2015) (internal quotes omitted).

Plaintiffs have not met their burden, and instead rely on speculation in the face of evidence that clearly contradicts their latest "theory."

Plaintiffs first argue that, "If, in fact, the settlement did not offer 100 percent of Home Depot's maximum liability or provide a ten percent premium over that amount, the communications were arguably misleading." Pls.' Mem. at 14. This argument relies on speculation that there was something improper in the calculations, but there is no evidence to support this theory, and Plaintiffs' already had ample opportunity to explore this issue -- both in the depositions and in the documents that already were produced -- within the time parameters established and extended by the Court. *See* FRCP 26(b)(2)(C). Plaintiffs offer no reason to believe that the deposition witnesses testified falsely about these matters.[7] *See Shannon v. Albertelli Firm, P.C.*, 610 Fed. App'x 866, 871 (11th Cir. 2015) (denying discovery as a "fishing expedition" where movant did not "offer any specific reason to doubt the accuracy of [an] affidavit").

Plaintiffs focus on an email, dated October 5, 2015, discussing Home

---

[7] Indeed, there is no evidence that MasterCard ever communicated with Home Depot about the re-calculation process between the time Home Depot identified the error in the initial estimate and the time MasterCard announced the final ADC assessment. Home Depot produced all of its communications with MasterCard about the calculations and Plaintiffs took depositions on this issue, yet there is no evidence of any discussions concerning what the final number should or would be. To the contrary, Mr. Kimmet testified that the numbers were never agreed on -- they were imposed by MasterCard. Gudmundson Decl. Ex. N at 30:24-31:12.

Depot's decision to offer a 10% premium. Pls.' Mem. at 16; Pls.' Ex. O. That email is fully consistent with the Home Depot testimony that Home Depot had already booked an accounting liability based on the amount of the preliminary estimate, and it realized that a 10% premium over the final liability number would not require it to change that accounting entry. Hyman Decl. Ex. 2 at 95:4-98:8. Moreover, Plaintiffs' counsel already exhaustively deposed MasterCard's 30(b)(6) witness about this specific email. Gudmundson Decl. Ex. C at 141:2-151:2.

> Plaintiffs also argue that:

> if MasterCard actually reduced the amount of Home Depot's assessment by excluding fraud reported by class members that the class members expected would be covered by the payments to be received under the card brand recovery process, class members received lower payments than they understood they would be getting. But it appears class members were never told about the reduction.

Pls.' Mem. at 14. This argument does not support Plaintiffs' request for additional discovery because Ms. Russo already explained in detail why MasterCard's final liability determination was less than the estimate. If Plaintiffs wish to argue that MasterCard's reasons were somehow improper or that Home Depot should have disclosed the estimate to issuers, Plaintiffs already have the information to make that argument. But Plaintiffs' professed inability to understand the calculations does not render them inauthentic or transform them into a sham. *See supra* at 5.

> Given the substantial discovery Plaintiffs already have obtained, their

speculative theory does not warrant another four months of discovery from non-party MasterCard. *See Pinehaven Plantation Props., LLC v. Mountcastle Family LLC*, No. 1:12-cv-62 (WLS), 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013) (denying motion to compel in part because movant "provided nothing more than speculation" and "could have inquired" about the subject area "through other discovery devices, such as depositions or interrogatories"); *see also In re Androgel*, 2015 WL 2193777, at *5 ("The Court is reluctant to place a significant burden on the FTC in order to ensure the production of information whose relevance to this litigation is questionable, at best.").

## III.   PLAINTIFFS' REQUEST WOULD IMPOSE UNDUE BURDEN AND EXPENSE

Plaintiffs already have imposed substantial burden and expense on non-party MasterCard, and requiring MasterCard to search for, review, and produce another four months of documents would be excessive.

Plaintiffs' piecemeal approach to discovery from MasterCard, their changing theories, and their failure to adhere to the applicable rules regarding the form and service of subpoenas has forced MasterCard to prepare four sets of written responses, prepare four meet and confer letters and many more meet and confer emails, and participate in meet and confer telephone calls to negotiate a compromise on the scope of the Subpoena (on which Plaintiffs have now

reneged). MasterCard's production within the agreed scope required it to collect and review over 4,900 documents within a very short time period to accommodate Plaintiffs' schedule, resulting in a production of over 8,000 pages. To accommodate Plaintiffs' request for additional documents, MasterCard searched its files for and produced another approximately 8,000 pages consisting of MasterCard's *contemporaneous* calculations. MasterCard also took a senior employee away from her responsibilities for an entire day (plus the additional time required for preparation) for her 30(b)(6) deposition, again on an expedited basis to accommodate Plaintiffs' schedule.

Plaintiffs' request that MasterCard search for, review, and produce another four months of documents is unreasonable and unwarranted. MasterCard expects that the document collection and review needed to cull through emails from June through September would be even larger than the October through December timeframe, not because there would be more responsive emails relating to the settlement, but because the forensic investigation (which the Court has already ruled is not within the scope of the expedited discovery[8]) was still ongoing at that

---

[8] *See* ECF No. 173, ordering that Home Depot need not produce the PFI Report. Notwithstanding the Court's ruling on the PFI Report, Plaintiffs' Subpoena to MasterCard demands "All Documents related to the Data Breach that have been generated or produced by any PFI." Hyman Decl. Ex. 12 [Request 19]. Plaintiffs appear to be attempting an end-run around the Court's Order by seeking the same information from non-party MasterCard.

time; Home Depot is a major acceptor of MasterCard payment cards and therefore its name comes up in various contexts that are irrelevant to these issues; and MasterCard was in the process of settling another major data breach at that time.

Granting Plaintiffs' application would impose substantial undue burden and expense on non-party MasterCard without justification.

## IV.   THERE IS NO BASIS TO EXPAND ON THE REASONABLE SCOPE THAT PLAINTIFFS PREVIOUSLY AGREED TO

Having reneged on the compromise they reached in meet and confer, Plaintiffs accuse MasterCard's counsel of making misrepresentations, argue that Plaintiffs' legion of lawyers did not have time to do their homework, and hypothesize that the Court's ruling on this motion could have "perverse" effects on the meet and confer process as a whole.  Each of these arguments is baseless.

First, MasterCard's counsel did not make any misrepresentations during meet and confer.  Plaintiffs' focus during the January 19 call was the negotiation of the *settlement agreement* and the communication of the settlement agreement to issuers, which is consistent with the focus of their Subpoena.  MasterCard's counsel accurately pointed out that those negotiations began in October.  Indeed, Home Depot did not provide MasterCard with a first draft of the settlement agreement until the late evening of September 29, 2015.  Hyman Decl. ¶ 22.

Second, Plaintiffs' argument that "[s]everal different teams of Plaintiffs'

lawyers were scrambling to complete discovery by the deadline" and therefore they purportedly were not aware of the testimony of Messrs. Williams and Kimmet, Pls.' Mem. at 19, should not be given any weight and does not mitigate the burden and expense on non-party MasterCard.   Plaintiffs' attorneys Joseph Guglielmo and Brian Gudmundson participated in the January 4 meet and confer call, and Brian Gudmundson also participated in the January 19 meet and confer call (along with several other Plaintiffs' attorneys).   Mr. Guglielmo *attended the Williams* deposition.   Moreover, during the January 4 call, Messrs. Guglielmo and Gudmundson repeatedly referred to the Williams transcript and Mr. Gudmundson expressly referred to it in his January 6 letter.   Additionally, Mr. Gudmundson's January 21 letter confirming the limitation of October-December 2015 was copied to Plaintiffs' attorney Gary Lynch, *who took the Williams* deposition, as well as to Mr. Guglielmo and four other Plaintiffs' attorneys.   *Id.* ¶¶ 9, 19, Exs. 5 & 11.

Finally, Plaintiffs make the alarmist argument that if the Court denies this motion, "parties" seeking discovery (presumably in other litigations) will be more "aggressive" and parties resisting discovery will believe that "their representations need not be accurate or truthful."   Pls.' Mem. at 19-20.   Plaintiffs are overreaching.   As a preliminary matter, the Court need not rely on the compromise agreed to in meet and confer to deny Plaintiffs' motion.   Plaintiffs' motion should be denied for the primary reasons that Plaintiffs already have had ample discovery

on the subject topics and have not met their burden of showing that the additional discovery they seek will be relevant and not cumulative, and the requested discovery would impose undue burden and expense on non-party MasterCard.

Additionally, no misrepresentations were made to Plaintiffs' counsel. Enforcing the compromise that Plaintiffs agreed to in meet and confer would only send the message that a party should do its homework and review what it already has before cavalierly seeking to impose substantial burdens on a non-party that happens to be a large company.   On the other hand, non-parties would be disinclined to agree to any compromise at all if a requesting party, having received what it agreed to accept, can renege on its agreement and demand more based simply on that party's positing of theories *seriatim*.

## V.   PLAINTIFFS' MOTION IS UNTIMELY

Plaintiffs' motion should be denied for the independent reason that it is untimely.  Plaintiffs' discovery deadline vis-à-vis MasterCard expired on February 24, 2016, and Plaintiffs never sought an extension of that deadline.

## VI.   PLAINTIFFS AND THEIR COUNSEL SHOULD BE REQUIRED TO PAY MASTERCARD'S COSTS AND ATTORNEYS' FEES

Rules 37(a)(5)(B) and 45(d)(1) warrant an award of MasterCard's costs and attorneys' fees incurred in responding to this motion.   This motion is not "substantially justified," and, to the contrary, has simply imposed another

unnecessary burden and expense on non-party MasterCard, because Plaintiffs previously agreed to limit the scope of MasterCard's production armed with knowledge of the timeline of events; they have already imposed substantial burden and expense on MasterCard; they have already obtained substantial discovery within the narrow scope of discovery that the Court authorized; and they are relying on speculation as the basis for this motion.   MasterCard's counsel has repeatedly advised Plaintiffs' counsel that their latest demand is unwarranted and at least twice put them on notice that if they made an unnecessary motion to compel, MasterCard would seek its cost and attorneys' fees (*see* Hyman Decl. Exs. 7 & 16), but they nevertheless filed this motion.

## CONCLUSION

Plaintiffs' motion should be denied and Plaintiffs and their counsel should be required to pay MasterCard's costs and attorneys' fees incurred in responding.

MasterCard respectfully requests oral argument.

Respectfully submitted,

Dated:   New York, New York
        May 12, 2016

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP

By: _____
       Martin S. Hyman
Matthew C. Daly
437 Madison Avenue
New York, New York 10022
(212) 907-7300

## CERTIFICATION

The undersigned hereby certifies, pursuant to Northern District of Georgia

Local Civil Rule 7.1D, that the foregoing document has been prepared with one of

the font and point selection (Times New Roman, 14 point) approved by the Court

in Local Civil Rule 5.1C.


Dated:   New York, New York     GOLENBOCK EISEMAN ASSOR BELL
         May 12, 2016        & PESKOE LLP

                        By: _____
                            Martin S. Hyman
                        Matthew C. Daly
                        437 Madison Avenue
                        New York, New York 10022
                        (212) 907-7300