# Exhibit 1
## (Declaration of Norman E. Siegel)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____

In re: The Home Depot, Inc., Customer
Data Security Breach Litigation

                               )
                               )  Case No.: 1:14-md-02583-TWT
                               )
                               )      CONSUMER CASES
_____  )

## DECLARATION OF NORMAN E. SIEGEL IN SUPPORT OF CONSUMER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL CERTIFICATION OF SETTLEMENT CLASS

I, Norman E. Siegel, declare:

1.     I am an attorney in good standing of the State Bar of Missouri and a partner in the law firm Stueve Siegel Hanson LLP. I am privileged to serve as the Court-appointed Co-Lead Counsel on behalf of Plaintiffs in the Consumer Cases in this litigation and submit this Declaration in support of Consumer Plaintiffs' Motion for Final Approval of Class Action Settlement. I have knowledge of the facts presented in this Declaration based on my extensive involvement in prosecuting this litigation since its inception.

2.     On February 13, 2015, the Court appointed the following leadership group to represent Consumer Plaintiffs in this litigation: (1) Co-Lead Counsel David J. Worley and James M. Evangelista of Harris Penn Lowry, LLP, Norman E. Siegel and Barrett J. Vahle of Stueve Siegel Hanson LLP, and John A.

Yanchunis of Morgan & Morgan Complex Litigation Group; (2) Liaison Counsel Roy E. Barnes and John R. Bevis of Barnes Law Group, LLC; and (3) a Steering Committee composed of Tina Wolfson of Ahdoot & Wolfson, P.C., William B. Federman of Federman & Sherwood, Daniel C. Girard of Girard Gibbs LLP, Gary S. Graifman of Kantrowitz, Goldhamer & Graifman, P.C., and Howard T. Longman of Stull, Stull & Brody. (ECF No. 60.)

3.      After appointment, I along with Co-Lead Counsel and Liaison Counsel (collectively "Class Counsel"), and in cooperation with the Steering Committee and other consumer plaintiff firms, developed and implemented a litigation strategy in anticipation of filing Consumer Plaintiffs' Consolidated Class Action Complaint.

4.      First, Class Counsel conducted in-depth factual research into the events leading to the Home Depot data breach. This factual investigation drew from public and non-public sources and included reviewing announcements by Home Depot concerning the data breach, reviewing news articles, including investigative reports, examining the causes of the data breach, conducting factual research into Home Depot's data security practices, including reviewing information about past breaches of Home Depot's and other retailers' systems and interviewing former employees knowledgeable about Home Depot's internal data

2

security practices, researching warnings and alerts issued by credit card issuers, studying industry standards governing data security, evaluating studies examining data security practices, breaches, risks and the impact of breaches, reviewing Home Depot's annual reports to shareholders, Securities and Exchange Commission (SEC) filings, and privacy policies, and retaining and communicating with knowledgeable consultants and experts on data security.

5.     Second, Class Counsel engaged in comprehensive legal research into potential claims that could be brought on behalf of Consumer Plaintiffs. This included in-depth research into the viability of Article III standing, reviewing claims asserted in previous data breach and consumer privacy litigation, and considering potential claims based on the statutory and common law of all 50 states and the District of Columbia. Class Counsel identified the elements of the claims and governing case law, assessed the viability of the claims through class certification and trial, identified the common evidence available to support each claim, and analyzed Home Depot's likely defenses based on defense theories advanced in other data breach cases.

6.     Third, because numerous consumer actions arising out of retailer data breaches have failed at the pleading stage, Class Counsel carefully identified and vetted potential class representatives, gathered and examined documents to

confirm their purchases during the relevant period and collected documentary evidence of consumer harm suffered as a result of the breach. The extensive plaintiff vetting process resulted in presenting to the Court a narrowed group of 88 named plaintiffs from across the United States that had suffered both actual and imminent harm resulting from the Home Depot breach and therefore had standing to assert viable claims on behalf of the Class. This important step narrowed the group of potential plaintiffs, benefited the Class, eased burdens on the Court and enhanced the efficiency and effectiveness of case prosecution.

7.     Fourth, Class Counsel developed and implemented an efficient case prosecution strategy. Rather than asserting every colorable claim, Class Counsel focused the case on a core set of claims. As a result of these efforts, on May 1, 2015, Consumer Plaintiffs filed a comprehensive 185-page Consolidated Class Action Complaint ("Complaint"). (ECF No. 93.) The Complaint included 88 named plaintiffs asserting claims on behalf of themselves and all Home Depot customers in the United States whose financial and personal information was compromised in the data breach. The Complaint made detailed factual allegations concerning Home Depot's technology and data security practices, the breach, Home Depot's post-breach conduct, and the experiences of each of the Named Plaintiffs. The Complaint asserted causes of action for violations of consumer laws

in 51 U.S. jurisdictions, violations of data breach notification statutes in 28 jurisdictions, and common law claims including negligence, breach of implied contract, unjust enrichment, and declaratory judgment.

8.     Fifth, Class Counsel developed and implemented a discovery strategy intended to focus on the remaining factual questions associated with the data breach. To prepare for discovery, Class Counsel met and conferred with counsel for the Financial Institution Plaintiffs and Home Depot's counsel on over a dozen occasions. The parties negotiated a scheduling order (Case Management Order No. 4, ECF No. 107), a discovery protocol (Case Management Order No. 5, ECF No. 110), an expert discovery protocol (ECF No. 111), a confidentiality protective order (ECF No. 132), and a joint motion governing the authentication of documents. (*See* Case Management Order No. 6, ECF No. 155). At the time of settlement, the parties were in the final stages of negotiating an ESI protocol. Further, with the Court's approval, Consumer Plaintiffs on behalf of themselves and jointly with the Financial Institutions propounded 126 document requests on Home Depot. The parties then held multiple conferences to negotiate the scope of the requests, search terms, and Home Depot's document custodians.

9.     Home Depot moved to dismiss the claims on June 1, 2015, arguing lack of Article III standing and failure to state any claim for relief. (ECF Nos. 105,

129.) Consumer Plaintiffs opposed the Motion with principal and supplemental briefing. (ECF Nos. 117 & 124.) The Court heard oral argument on the motion to dismiss on October 22, 2015.

10.   In August 2015, Class Counsel and Counsel for Home Depot agreed to mediate and jointly engaged mediator Jonathan B. Marks of MarksADR, LLC. Class Counsel met with Home Depot's counsel and Mr. Marks in Atlanta, Georgia to participate in two full-day mediation sessions on September 1 and September 18, 2015, respectively. While the parties did not reach agreement, they made significant progress at these sessions and agreed to exchange information that would be beneficial to settlement.

11.   Using the information gained from these sessions, the parties researched their positions to prepare for further negotiations. For instance, Class Counsel investigated the possibility of providing identity theft monitoring services as a potential settlement benefit which would include an insurance policy to protect customers from future harm. Class Counsel then conducted a competitive bidding process among four highly-rated companies in that field and shared their findings with Counsel for Home Depot. This strengthened the Plaintiffs' negotiating position by introducing the monitoring services as an additional form of possible relief to help class members detect and address any future harm.

12. In the following months, the parties continued extensive negotiations with the assistance of Mr. Marks including the exchange of proposed term sheets. As a result of these efforts, on January 26, 2016, the parties were able to reach an agreement in principle, subject to preparation and execution of a written settlement agreement, on the substantive elements of the settlement. The parties did not discuss attorneys' fees, costs, or expenses until they had reached an agreement in principle on the substantive elements of the settlement. No federal or state governmental agency provided any assistance to Class Counsel's prosecution of the case or contributed in any way to the achievement of the settlement.

13. The settlement includes three primary components intended to address past, present and future harm. First, Home Depot agreed to establish a cash fund of $13 million to compensate class members for documented out-of-pocket losses, unreimbursed charges, and time spent remedying issues relating to the Home Depot data breach, up to $10,000, including up to five hours of documented time at $15 per hour. Class members who submit claims for documented losses may also self-certify time spent remedying issues relating to the data breach at $15 per hour for up to two hours. Second, Home Depot agreed to separately fund 18 months of "identity protection" services available to all Class Members who had their payment card data compromised through Identity Guard's "Essentials" package,

which provides Social Security number monitoring, online black market monitoring, identity theft victim assistance, and identity theft insurance of $1 million, among other benefits. This service has a retail value of approximately $180 per enrollee and helps mitigate possible future harm caused by the breach. Third, Home Depot agreed to significantly upgrade its data security practices, including appointing a Chief Information Security Officer, conducting routine product and data risk assessments, designing and implementing reasonable safeguards to manage any risks identified through its risk assessments, selecting and retaining service providers capable of maintaining reasonable security practices, implementing a dynamic security program that addresses changing security concerns, maintaining clear written disclosures about the storage of customer information, and implementing enhanced employee training procedures and point-of-sale security measures. With respect to this injunctive relief, Class Counsel consulted with Dr. Larry Ponemon and John Jorgensen, two renowned experts in cyber security to ensure that Home Depot was undertaking best practices in modifying its data security under the settlement.

14.    Class Counsel believed that a relatively early settlement was especially warranted in this litigation because consumers benefit immediately from protections like identity theft monitoring services and injunctive relief. Indeed, the

settlement helps mitigate future harm by permitting Class Members to enroll in Identity Guard and receive protection from a $1 million insurance policy in case of identity theft or fraud. The longer this case was litigated, the more likely consumers were to suffer identity theft or fraud without having this additional protection in place. Moreover, consumers' personal information maintained by Home Depot will be significantly more secure once the injunctive relief goes into effect and Home Depot is contractually obligated to implement the data security measures summarized above.

15.    There were also significant risks to the Plaintiffs had they continued to litigate the case. There was a risk that Plaintiffs' claims would not have survived following a decision by the Court on Home Depot's motion to dismiss, or on a class-wide basis after a motion for class certification, or after one or more motions for summary judgment following the completion of fact and expert discovery.

16.    Risks further included establishing causation, an issue that Home Depot advanced and would have been challenging in this litigation. Additional risks related to proving damages for class members, both those who suffered unauthorized charges, loss of access to their accounts and costs such as late fees, card replacement fees and credit monitoring services, as well as those who claimed imminent, certainly impending harm from potential fraud and identity theft as a

result of the Home Depot data breach. The litigation entailed the further risk that neither side could be sure of a favorable jury verdict. There was also the inherent danger that Plaintiffs' claims would possibly be resolved through a battle between experts, the outcome of which is difficult to assess. Both sides also faced the uncertainties, risks, expense and significant delays associated with appeals that would inevitably be pursued following trial.

17.     I and my co-counsel who were actively involved in the negotiations took steps necessary to ensure that we had all the necessary information to advocate for a fair settlement that serves the best interests of the settlement class. Class Counsel closely studied settlements reached in other retailer data breach cases. A summary of the terms and benefits provided to the settlement classes in other data breach cases is contained in the attached Exhibit A submitted for the Court's consideration and convenience. As reflected in Exhibit A, many retail data breach cases settled for modest value after receiving unfavorable decisions in the litigation, and none include all of the settlement benefits offered here. The significant monetary and non-monetary benefits secured by the settlement in this case compare very strongly and favorably to those provided in the settlements involving other data breach lawsuits and provide compelling additional support for a determination as to the fairness, reasonableness, and adequacy of the settlement.

18.     Prior to moving for preliminary approval of the settlement class, Class Counsel undertook confirmatory discovery to determine the number of potential settlement class members and nature of the information compromised in the breach. On March 1, 2016, I interviewed Home Depot's corporate representative Michael Williams and confirmed that the settlement class consists of approximately 40 million U.S. Home Depot customers who had their payment card data stolen, and 52-53 million individuals who had their email address stolen, with some overlap between the groups. I was also able to confirm the dates when cardholders shopping at Home Depot would have been exposed to the breach and the card readers exposed to the breach.

19.     After reaching an agreement in principle, the parties worked diligently to craft settlement papers and select the Settlement Administrator, Kurtzman Carson Consultants ("KCC"). Thereafter, the parties worked closely with KCC to develop a comprehensive Notice Plan that included individual notice to all members who could be identified through reasonable effort, as well as a consumer-friendly claims process. The costs of notice and administration are approximately $750,000. This Court approved the Notice Plan and claims process plan in its Preliminary Approval Order. (ECF No. 185.) As set forth in the accompanying

Declaration of Kenneth Jue (KCC), Class Counsel has to date satisfied all of the elements of the Notice Plan approved by the Court.

20.     To date, no class members have objected to the requested service awards and one objection has been received related to the attorneys' fee request.

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I declare the foregoing is true and correct.

Dated: June 27, 2016 in Kansas City, Missouri

/s/ Norman E. Siegel_____

Norman E. Siegel

# Exhibit A to
# Siegel Declaration

## SUMMARY OF DATA BREACH SETTLEMENTS

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|------|---------------|----------------|---------------------|------------|-----------------------------------|
| *In re Target Corporation Customer Data Security Breach Litig.*, MDL No. 14-2522 (PAM/JJK) (D. Minn. 2015) | 110 million | Settlement fund: $10 million (all cash, no coupons or vouchers)<br><br>• $10 million into escrow account to pay approved class rep awards, documented loss claims (up to $10,000 per claim including 2 hours at $10/hr. of lost time by consumer dealing with particular types of loss (e.g., unauthorized charges, replacement of driver's license, etc.).<br><br>• Documentary Support Claims to include documentation that claimed losses were incurred and more likely than not arose from the data breach; reasonable documentation includes credit card statements, invoices, receipts. Documented support claims reimbursed up to $10,000, with minimum payment equal to equal share amount to be paid to Self-Certification claimants.<br><br>• Self-Certification Claims do not require documentary evidence of losses; eligible if claimant | No monitoring services. Injunctive relief including:<br><br>• Target to designate high level chief information security office to take responsibility for information security program entrusted with protection of consumers' personally identifiable information;<br><br>• Target to maintain written information security program – Target will identify internal and external risks to security of consumers' personally identifiably information and periodically review sufficiency of safeguards to control such risks, develop security metrics measuring its security program and ensure metrics periodically reviewed and approved by senior Target leadership;<br><br>• Target to maintain process to monitor for information | Court approved $6.75 million for attorney's fees, costs, and expenses. | $500 to non-deposed class representatives, and $1,000 each to class representatives who were deposed. |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|------|---------------|----------------|---------------------|------------|-----------------------------------|
| | | used a payment card at a U.S. Target store during breach period, 11/27/2013-12/18/2013, and/or received notice or otherwise believes personal information was compromised as a result of the data breach; Self-Certification claimants entitled to receive equal shares of the amount remaining in Settlement Fund after payment of approved Documentary Support Claims and class representative service awards approved by Court – benefit amount determined by dividing the amount remaining in the Settlement Fund by the total number of valid Self-Certification Claims. <br><br> • Distribution plan provides for claim validation process and criteria and dispute resolution process for Documentary Support Claims. <br><br> • No reversion—no part of the Settlement Fund reverts back to Target <br><br> • Target to pay, separate and in addition to the Settlement fund, | security events and respond to threats – Target to design and implement reasonable safeguards to control information security risks including through reasonable software security testing; <br><br> • Target to educate and train relevant employees of importance of security of consumers' personal identifying information. | | |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|---|---|---|---|---|---|
| | | costs of administration, class notice costs and attorney fees and expenses awarded by the Court. | | | |
| *Michael Corona, et al v. Sony Pictures Entertainment, Inc.* 14-CV-09600 RGK (C.D. Cal. 2016) | Estimated 435,000 | Settlement fund: $2 million to reimburse class members who paid for preventive measures and up to $2.5 million to compensate class members who experienced losses due to identity theft or misuse as a result of the breach that are not reimbursed through the insurance provided by AllClear ID.<br><br>• Sony to pay separately costs of notice program and settlement administration, as well as attorneys' fees, costs, and expenses for class counsel and plaintiff service awards | 2 years credit monitoring and identity theft insurance through AllClear ID. | Court approved $2.6 million in fees and costs (separate from settlement fund). | $3,000 for each of the eight named plaintiffs and $1,000 for nine additional plaintiffs who initially filed suit in state and federal courts. |
| *In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, 4:09-MD-2046 (S.D. Tex. 2012) (Consumer Track) | 130 million | Settlement fund: $1 million (with agreement to contribute additional $1.4 million if needed).<br><br>• $1 million settlement fund for payment of:<br><br>→up to $175 in reimbursement for out-of-pocket expenses or reasonable time expended (up to $50) for card | Defendant to report to plaintiffs' expert re remedial measures taken or planned to advance security of computer system and minimize likelihood of future breaches; plaintiffs' counsel can accept or reject (settlement conditioned on plaintiffs' acceptance of report). | Court approved $606,192 in fees and $35,000 in costs | Court denied awards. |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|---|---|---|---|---|---|
| | | cancellation/replacement, unauthorized charges, or identity theft losses, with documentation; claimant must demonstrate any expenses or lost time were more likely than not caused by the data breach.<br><br>→up to $10,000 in reimbursement for identity theft related charges (other than on the card compromised in the data breach) and losses caused by identity theft; claimant must demonstrate losses more likely than not caused by the data breach.<br><br>• Heartland to pay additional $1.4 million into settlement fund if necessary to pay valid claims.<br><br>• Remainder of original $1 million to be paid to *cy pres* recipients if fund balance remains after paying claims; additional $1.4 million funds not subject to *cy pres* and revert to Heartland if not used to pay claims. | | | |
| *Lim v. Vendini, Inc.*, 1-14-CV- | 3 million | Settlement fund: $3 million. | None. | Up to $900,000 (30% of settlement fund) in fees; | $2,500 service award to each named plaintiff. |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|------|--------------|----------------|---------------------|------------|-----------------------------------|
| 259897 (Cal. Sup. Ct. 2014) (case involved unauthorized access by third party to event, marketing and ticketing company's customers' personal identification information). | | • $3 million settlement fund for payment of claims, attorney fees, notice and administration costs, and class representative awards.<br><br>• Class members with unreimbursed identity theft losses eligible for reimbursement up to $3,000 if they can show losses more likely than not resulted from breach and provide documentation.<br><br>• Class members with other out-of-pocket losses eligible for reimbursement up to $1,000 if they can show losses more likely than not resulted from the breach. Various types of out-of-pocket expenses subject to various caps ranging from $20 to up to $50. | | up to $25,000 in costs. | |
| *In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*, 3:08-MD-01998-TBR (W.D. Ky. 2009) (case involved | Estimated 17.2 million | Claims made settlement: $6.5 million cap.<br><br>• Up to $50,000 per incident of identity theft losses shown by claimant to be more likely than not the result of the alleged theft of private information; | 2 years credit monitoring (plus credit insurance for consumers who accepted defendant's initial offer of credit monitoring). | $3.5 million fees and $100,000 costs (separate from settlement fund). | $500 for representative plaintiffs; $250 for named plaintiffs (separate from settlement fund). |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|------|---------------|----------------|---------------------|------------|-----------------------------------|
| theft by Countrywide employee and sale of Countrywide's customers' private information to third-parties). | | documentation required; payment subject to overall $5 million cap.<br><br>• Available identity theft insurance, including that offered as part of settlement, must be exhausted before identity theft claim is paid.<br><br>• Reimbursement for: (i) check printing costs of up to $90 required by opening of new bank account; (ii) up to $200 in costs to obtain credit monitoring and identity theft insurance before start of credit monitoring package offered by Countrywide; (iii) up to $60 in other out-of-pocket costs; (iv) costs of replacing driver's license. Documentation required. Overall cap of $1.5 million on claims. | | | |
| *In re TJX Companies Retail Security Breach Litig.*, 07-10162 (D. Mass. 2007) | Estimated 45.7 million | Claims made settlement: $10 million fund (combined voucher and cash alternative fund) and $7 million capped fund for payment of documented claims.<br><br>• $15 check or $30 store voucher for class members who certify | 3 years credit monitoring and identity theft insurance (2 years of credit monitoring for customers who accepted previous credit monitoring offer). | Up to $6.5 million in fees and up to $150,000 in costs and expenses (separate from settlement fund). | None. |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|---|---|---|---|---|---|
|  |  | they made a purchase at TJX and spent more than $5 or 30 minutes as a result of the data breach; subject to $10 million cap with checks and vouchers credited as $30 against cap.<br><br>• Additional $15 check or $30 voucher for documented claims; $7 million cap on checks; no cap on vouchers.<br><br>• Reimbursement of driver's license replacement cost for claimants who submit documentation of having replaced their driver's license due to breach.<br><br>• Reimbursement of unreimbursed losses greater than $60 resulting from identity theft for class members whose social security number is same as driver's license, military, tax or state identification number. Subject to $1 million cap.<br><br>• If valid claims exceed caps, amount of each benefit will be proportionately reduced. |  |  |  |
| *McGann v.* | 2.4 million | Claims made settlement: $2.1 | None. | Court approved $635,000 | $500 per class rep. |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|---|---|---|---|---|---|
| *Schnuck Markets, Inc.*, No. 1322-CC00800 (Mo. Cir. Ct., City of St. Louis) | | million cap.<br><br>• Defendant to pay up to $1.6 million for payment of the following claims:<br><br>   →Up to $175 per class member for certain unreimbursed out-of-pocket and lost time expenses; reasonable documentation required.<br><br>   →$10 payment for fraudulent charge, if supported by account statement showing fraudulent charge and reimbursement or reversal.<br><br>• Defendant may apply costs of notice and claims administration toward the $1.6 million cap once approved claims are paid.<br><br>• Up to $10,000 for identity theft losses if proven more likely than not to have resulted from the breach; documentation in form of police report related to the identity theft required; and class members must have exhausted all applicable insurance policies; | | fees and $10,061 in costs (separate from settlement fund). | (separate from settlement fund). |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|------|---------------|----------------|---------------------|------------|-----------------------------------|
| | | subject to $300,000 cap. | | | |
| *In re Michaels Stores Pin Pad Litig.*, No. 1:11-cv-03350 (N.D. Ill.) | 95,000 | Settlement Fund: $600,000 (Defendant to contribute additional $200,000, if needed).<br><br>• $600,000 settlement fund for payment of unreimbursed claims, credit monitoring, administrative and notice costs, incentive awards, and litigation costs and expenses (limited to maximum of $100,000). If fund is exhausted, Defendant to increase fund up by additional $200,000. | One year credit monitoring offered to class members; two years for class members with unauthorized charges. | $1.2 million fees and $55,565 costs (separate from settlement fund). | $2,500 per class rep. |
| *Curry v. AvMed, Inc.*, 10-cv-24513-JLK (S. D. Fla. 2013) | 460,000 | Settlement Fund of $3 million (for payment of claims, notice and administrative expenses, attorney fees and class representative awards).<br><br>• $250,000 allocated to pay documented claims from customers whose personal information was contained on stolen laptops and who suffered documented monetary loss attributable to the data breach.<br><br>• $10 per year, $30 max per class member who paid for insurance | Defendant to provide training to company employees on laptop security, upgrade company laptops and revise company procedures to enhance information security. | $750,000 in attorney fees (paid from settlement fund). | $5,000 to class representative (paid from settlement fund). |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|------|------|------|------|------|------|
| | | prior to data breach and whose personal information was contained on the stolen laptops.<br><br>• All unclaimed funds revert to Defendant. | | | |
| *Burrows v. Purchasing Power, LLC*, 1:12-cv-22800-UNGARO (S. D. Fla. 2013) | 43,565 | $225,000 settlement to pay following claims of class members:<br><br>• Class members who can demonstrate they were victims of tax refund fraud may claim compensation for actual damages plus 8% interest up to $500 per claim.<br><br>• Up to $100 per class member for payment of a fee to a tax preparer to assist in resolving issues relating to tax fraud.<br><br>• Up to $500 per class member who can demonstrate that they were victims of identity theft (other than tax refund fraud) or compensation for credit card charges attributable to the theft.<br><br>• To the extent claims exceed $225,000 settlement fund, benefit to each class member reduced on pro-rata basis. | Defendant must designate employee responsible for security program; perform risk assessment identifying internal and external risks to security of personal data; design and implement reasonable safeguards to control the risks identified; use reasonable steps to select service provider capable of maintaining appropriate security practices; and notify customers of data the company possesses and how it uses such information. | Court approved $200,000 in fees and $12,423 in costs. | $3500 to class representative |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|---|---|---|---|---|---|
| | | • Unclaimed funds revert to Defendant. | | | |
| *In re Sony Gaming Networks and Consumer Data Security Breach Litig.*, 11-MD-2258 AJB (S.D. Cal. 2014) | Estimated 24.6 million (per Sony in announcing breach) of estimated 77 million online gaming network users | Claims made settlement: $1 million cash reimbursement cap plus $14 million non-cash benefit cap plus additional uncapped benefits.<br><br>• Payment of up to $2,500 for class members with unreimbursed identity theft related charges (other than on the card accessed in the data breach), upon showing that charges more likely than not to have resulted from the breach. Total reimbursement capped at $1 million.<br><br>• Class members with $2 or more of credits in their Sony account at time of breach eligible to receive payment equal to any unused funds in their account.<br><br>• Class members in two subclasses eligible to receive free games or other network benefits, deemed to be worth estimated $9. One subclass is capped at $6 million and the other at $4 million, payable on | None. | Up to $2.75 million total fees and costs. | None. |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|---|---|---|---|---|---|
| | | first-come, first-serve basis, with subsequent claimants able to receive alternative network benefit.<br><br>• Additional subclass is eligible to receive one month of free music service (valued at $4.99).<br><br>• Class members in another subclass eligible to receive $4.50 in gaming credit. Total reimbursement for this category capped at $4 million. | | | |
| *In re Department of Veterans Affairs (VA) Data Theft Litig.*, 06-0506 (JR) (D.D.C. 2009) | 26.5 million | Settlement fund: $20 million (for payment of claims, attorney fees, costs and expenses).<br><br>• Up to $1,500 per class member, with minimum payment of $750 per class member, or reimbursement of actual expenses attributable to the data breach. Claim documentation required.<br><br>• Any remaining settlement fund amounts to be paid to *cy pres* beneficiaries. | None. | Court approved $3.6 million in fees and $157,076 in costs. (Both payable from settlement fund). | $18,000 to be distributed between 9 named plaintiffs. |
| *In re LinkedIn User Privacy* | 800,000 | Settlement fund: $1.25 million. | Defendant to employ additional encryption on passwords for | Up to $416,666 total fees and costs (1/3 of | Up to $7,500 for single class representative. |

| Case | Class Members | Monetary Value | Non-Monetary Relief | Fees/Costs | Class Representative Service Award |
|------|---------------|----------------|---------------------|------------|-----------------------------------|
| *Litig.*, No. 12-cv-03088 (N.D. Cal.) | | • $1.25 million paid into escrow to pay expenses, incentive awards and claims.<br><br>• Up to $50 per claim to any class member affirming that his decision to purchase LinkedIn services was influenced by LinkedIn statements about security protocols. Parties to meet with mediator to revise payment plan if pro rata shares are less than $10.<br><br>• Unused remainder in settlement fund to be paid to *cy pres* recipients. | five years. | settlement fund). | |