# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

_____ )

In re: The Home Depot, Inc., Customer )  Case No.: 1:14-md-02583-TWT
Data Security Breach Litigation )
 )
This document relates to: )
 )
CONSUMER CASES )
_____ )

## CONSUMER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES AND LITIGATION EXPENSE REIMBURSEMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

I.      INTRODUCTION ................................................................ 1

II.     THE SETTLEMENT BENEFITS ......................................... 3

        A.      $13 Million Settlement Fund ................................... 3

        B.      Identity Theft Protection ....................................... 3

        C.      Injunctive Relief ..................................................... 4

        D.      Claims Process ........................................................ 7

        E.      Costs of Notice and Attorneys' Fees Paid by Home Depot ................. 7

        F.      Mediated Settlement Negotiations ....................... 8

III.    THE REQUESTED SERVICE AWARDS FOR THE CLASS
        REPRESENTATIVES ARE REASONABLE AND APPROPRIATE ......... 9

IV.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS
        REASONABLE AND SHOULD BE APPROVED .................. 11

        A.      Legal Standards Governing Fee Requests ............ 11

        B.      Thoroughness and Efficiency in Case Prosecution ............ 13

        C.      The Fee Request is Reasonable Under Lodestar Analysis ......... 18

                1.      The Time and Labor Required ................. 25

                2.      The Novelty and Difficulty of the Issues and Potential
                        Risks ....................................................... 26

                3.      The Skill Required to Perform the Legal Services
                        Properly, and the Experience, Reputation, and Ability of
                        the Attorneys ......................................... 30

                4.      The Preclusion of Other Employment ...... 31

i

5.   The Customary and Contingent Nature of the Fee ..................31

6.   The Amount Involved and Results Achieved ..........................33

7.   Awards in Similar Cases ............................................37

8.   Reaction of the Settlement Class to Date.................................38

D.   Class Counsel's Fee Request is Alternatively Reasonable as a
     Percentage of the Benefit Conferred on the Class .............................40

V.   THE COURT SHOULD APPROVE CLASS COUNSEL'S
     REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES .......43

VI.  CONCLUSION.............................................................44

# TABLE OF AUTHORITIES

**CASES**

*9-M Corp. v. Spring Commc'ns Co.*,
   Civ. No. 11-3401 (DWF/JSM), 2012 WL 5495905
   (D. Minn. Nov. 12, 2012) ......................................................................42

*ACLU v. Barnes*,
   168 F. 3d 423 (11th Cir. 1999) ............................................................19

*Allapattah Servs., Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006)..................................................9

*Bell v. Acxiom Corp.*,
   No. 4:06-cv-00485-WRW, 2006 WL 2850042 (E.D. Ark. Oct. 3, 2006)...........37

*Blum v. Stenson*,
   465 U.S. 886 (1984).........................................................18, 22, 33

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).............................................................41, 42

*Camden I Condo. Ass'n v. Dunkle*,
   946 F. 2d 768 (11th Cir. 1991) ....................................................passim

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   No. 1:04-cv-3066-JEC, 2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) .......22, 30

*David v. American Suzuki Motor Corp.*,
   No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) .................10, 30

*Dikeman v. Progressive Exp. Ins. Co.*,
   312 Fed. App'x 168 (11th Cir. 2008) ................................................24

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011) ......................................................36

*Giordano v. Wachovia Sec., LLC*,
   No. 06-476 (JBS), 2006 WL 2177036 (D.N.J. July 31, 2006)...........................37

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307
    (S.D.N.Y. June 25, 2010)......................................................................................37

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)......................................................................................18, 40

*Hillis v. Equifax Consumer Servs., Inc.*,
    2007 WL 1953464 (N.D. Ga. June 12, 2007)......................................................34

*In re AT&T Corp., Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ................................................................................28

*In re Catfish Antitrust Litig.*,
    939 F. Supp. 493 (N.D. Miss. 1996).....................................................................24

*In re CertainTeed Fiber Cement Siding Litig.*,
    303 F.R.D. 199 (E.D. Pa. 2014).....................................................................10, 11

*In re Checking Account Overdraft Litig.*,
    1:09-MD-02036-JLK, 2013 WL 11319242 (S.D. Fla. Aug. 2, 2013)...........36, 44

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...........................................................9, 31

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) .........................................................................17

*In re Friedman's Inc. Sec. Litig.*,
    2009 WL 1456698 (N.D. Ga., May 22, 2009)..........................................32, 33, 38

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...........................................................................18, 42

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013)...............................................................................27

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..........................................................................39

*In re Indigo Sec. Litig.*,
    995 F. Supp. 233 (D. Mass. 1998) ......................................................................39

*In re Linerboard Antitrust Litig.*,
   No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004)..............................39

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ................................................................39

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   461 F. Supp. 2d 383 (D. Md. 2006)....................................................22

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014)..................................................32, 39

*In re Southern Ohio Corr. Facility*,
   175 F.R.D. 270 (S.D. Ohio 1997)......................................................10

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001)..............................................30

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015)..........37

*In re TJX Cos. Retail Sec. Breach Litig.*,
   584 F. Supp. 2d 395 (D. Mass. 2008)................................................37

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007).........................................................27

*In re Vitamin Cases*,
   No. 301803, 2004 WL 5137597
   (Cal. Super. Ct. S.F. Cnty. Apr. 12, 2004) .................................39, 40

*In re Vitamins Antitrust Litig.*,
   398 F. Supp. 2d 209 (D.D.C. 2005)....................................................40

*In re Xcel Energy, Inc., Sec., Derivatives & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)....................................10, 17, 24

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ...............................................passim

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (11th Cir. 1974) ..........................................................24

*Johnston v. Comerica Mortgage Corp.*,
   83 F.3d 241 (8th Cir. 1996) ..........................................................................18, 43

*Key v. DSW, Inc.*,
   454 F. Supp. 2d 684 (S.D. Ohio 2006) ..............................................................37

*Krottner v. Starbucks Corp.*,
   406 Fed. App'x 129 (9th Cir. 2010) ...................................................................37

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) ..............................................................22, 23

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983) ...........................................................................29

*Norman v. Housing Auth. of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) ..............................................................12, 19, 31

*Peters v. St. Joseph Servs. Corp*,
   74 F. Supp. 3d 847 (S.D. Tex. 2015) ..................................................................32

*Pinto v. Princess Cruise Lines Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) .........................................................22, 31

*Poertner v. Gillette Co.*,
   618 Fed. App'x 624 (11th Cir. 2015) ............................................................24, 36

*Poertner v. Gillette Co.*,
   6:12-CV-803-ORL-31DA, 2014 WL 4162771 (M.D. Fla. Aug. 21, 2014).........23

*Polanco v. Omnicell, Inc.*,
   988 F. Supp. 2d 451 (D.N.J. 2013) .....................................................................32

*Randolph v. ING Life Ins. & Annuity Co.*,
   486 F. Supp. 2d 1 (D.D.C. 2007) ........................................................................36

*Ressler v. Jacobson*,
   149 F.R.D. 651 (S.D. Fla. 1992).....................................................................passim

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992)....................................................................27

vi

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..........................................................................29

*Storm v. Paytime, Inc.*,
  90 F. Supp. 3d 359 (M.D. Pa. 2015).................................................................32

*U.S. Football League v. Nat'l Football League*,
  644 F. Supp. 1040 (S.D.N.Y. 1986) ................................................................29

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir.1993) .............................................................................24

*West Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) ................................................................29

## RULES

Fed. R. Civ. P 23(h) ..........................................................................................43

## OTHER AUTHORITIES

*Attorneys Fees and Expenses in Class Action Settlements 1993-2008*,
  7 Journal of Empirical Legal Studies 248 ........................................................23

*Principles of the Law of Aggregate Litigation*,
  § 3.13(b) (American Law Institute, 2010).........................................................36

## EXHIBITS

Exhibit 1 - Declaration of Roy Barnes

Exhibit 2 - Declaration of Michael L. McGlamry

Exhibit 3 - Declaration of John Jorgensen

Exhibit 4 - Declaration of Larry Ponemon

Class Counsel, on behalf of the Settlement Class Representatives and the Settlement Class, respectfully request the Court to consider and approve their request for Class Representative service awards, attorneys' fees and litigation expense reimbursements, the amounts of which are routinely authorized in class actions as fair, reasonable and supported by established class action jurisprudence. In support of this memorandum, Consumer Plaintiffs submit herewith the Second Declaration of Roy Barnes as Exhibit 1, the Declaration of Michael L. McGlamry as Exhibit 2, the Declaration of John Jorgensen as Exhibit 3, and the Declaration of Larry Ponemon as Exhibit 4.

## I.   <u>INTRODUCTION</u>

Consumer Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") (ECF No. 93) on May 1, 2015 advancing claims against Defendants Home Depot U.S.A., Inc. and The Home Depot, Inc. ("Home Depot") arising from the breach of Home Depot's computer systems first announced by Home Depot in September 2014. Such claims included, among others, violations of state consumer laws and state data breach statutes, as well as negligence and breach of implied and express contract. *Id.* More than a year after their appointment, on March 7, 2016, Class Counsel announced a proposed settlement on behalf of the Settlement Class and Home Depot.[1] The Settlement resolves all claims asserted in the Consumer

---

[1] The Settlement Agreement is attached as Exhibit 2 to Consumer Plaintiffs'

Cases centralized in this Court by the JPML. Under the Settlement, Home Depot has agreed to provide a Settlement Fund of $13 million to fund distributions to Settlement Class Members pursuant to the Distribution Plan preliminarily approved by the Court in its Preliminary Approval Order (ECF No. 185, ¶ 13); to provide an additional $6.5 million to pay the cost of identity theft protection monitoring for 18 months; to pay the costs of notice and administration; to pay any service awards to Settlement Class Representatives approved by the Court; and to pay the Plaintiffs' reasonable attorney fees, costs, and expenses. (Settlement Agreement, ¶¶ 29, 38, 44, 53, 60, 61.) As defined in the Settlement Agreement, the Settlement Class, certified by the Court in its Preliminary Approval Order, consists of:

> All residents of the United States whose Personal Information was compromised as a result of the Data Breach first disclosed by Home Depot in September 2014.[2]

(Settlement Agreement, ¶¶ 25, 16.)

On March 8, 2016, following briefing and a hearing, the Court entered its Order Certifying a Settlement Class, Preliminarily Approving Class Action Settlement and Directing Notice to the Settlement Class ("Preliminary Approval

---

Motion for Preliminary Approval of Class Action Settlement, Approval of Class Notice and Scheduling of Final Approval Hearing (ECF No. 181.) Consumer Plaintiffs adopt the defined terms as set forth therein.

[2] Excluded from the Settlement Class are the Court, any members of the Court's judicial staff, the officers and directors of Home Depot, and persons who timely and validly request exclusion from the Settlement Class. Settlement Agreement, ¶ 26; Preliminary Approval Order, ¶ 1.

Order") (ECF No. 185).

## II.   THE SETTLEMENT BENEFITS

### A.    $13 Million Settlement Fund

Home Depot will establish, within 15 calendar days of the effective date of the Settlement, a $13 million cash Settlement Fund to compensate Settlement Class Members for their out-of-pocket losses and unreimbursed charges fairly traceable to the data breach, such as costs incurred to purchase credit monitoring or to place a freeze or alert on credit reports. (Settlement Agreement, ¶¶ 28, 29.) Settlement Class Members who submit valid claim forms and documentation will be eligible to obtain reimbursement up to $10,000 each. (*Id.*, ¶ 32.) Those Settlement Class Members with supporting documentation may submit a claim for up to five hours, at $15 per hour, to compensate for time they spent remedying issues relating to the data breach. (*Id.*, ¶ 33.) Settlement Class Members with documented out-of-pocket losses or unreimbursed charges will be eligible to self-certify time spent remedying issues relating to the data breach at $15 per hour for up to two hours without additional documentation. (*Id.*, ¶ 34.)

### B.    Identity Theft Protection

The Settlement also provides for other significant relief that benefits each Class Member by providing identify theft protection services. Home Depot will pay $6.5 million to fund 18 months of identity protection services through Identity Guard's "Essentials" package available to all Class Members who had their

3

payment card data compromised as a result of the data breach. (*Id.*, ¶ 37.) The Essentials package has a retail value of $9.99 per month, which confers a benefit of nearly $180 to each Class Member. Identity Guard's services include Social Security number monitoring, online black market monitoring, financial account identity verification alerts, financial account takeover alerts, identity theft victim assistance, lost wallet protection, online user name and password protection, and identity theft insurance up to $1 million. (*Id.*, ¶ 39.)

### C.   Injunctive Relief

In addition to the monetary payments above, the important privacy interests of consumers are significantly advanced as the Settlement provides substantial non-monetary relief by requiring Home Depot to improve its data retention and security practices. Home Depot has agreed to adopt and implement, at a minimum, the following data security measures in its U.S. stores for two years from the effective date of the Settlement Agreement:

> a. **Chief Information Security Officer**. Home Depot will maintain an executive position with responsibility to coordinate and be responsible for the company's programs to protect the security of customers' Personal Information.
>
> b. **Product and Data Risk Assessments**. Home Depot will routinely perform risk assessments that identify material internal and external

risks to the security of customer Personal Information stored on its systems, which at a minimum will consider risks associated with (1) employee training and management; (2) software design and testing; and (3) vendor data management and security practices.

c. **Safeguard Design Resulting from Risk Assessments**. Home Depot will design and implement reasonable safeguards to manage any risks that are identified through its risk assessments.

d. **Vendor Program**. Home Depot will develop and use reasonable steps to select and retain service providers capable of maintaining security practices consistent with the requirements set forth in the Settlement Agreement.

e. **Dynamic Security Program**. Home Depot will evaluate and adjust as reasonably necessary its systems on which and by which customers' Personal Information is stored in light of (1) the results of the testing and monitoring required by the Settlement, (2) any material changes to its operations or business arrangements, or (3) any other circumstances that it knows or has reason to know may have a material impact on the effectiveness of its security program.

f. **Notice**. Home Depot will maintain and make available to its customers clear written disclosures explaining that it stores certain customer information and describing how it uses that information.

g. **Employee Education**. Home Depot will maintain a program to educate and train its workforce on the importance of the privacy and security of its customers' Personal Information.

h. **Enhanced Security Measures**. With respect to all consumer credit and debit transactions made in Home Depot's U.S. stores, Home Depot will (1) encrypt all payment card data at the time that such data is input at the point of sale; (2) not retain the card security code data, the PIN verification code number, or the full contents of any track of magnetic stripe data, after the authorization of the transaction or in the case of a PIN debit transaction for more than 48 hours after authorization of the transaction; and (3) implement and utilize EMV chip card technology.

(*Id.*, ¶ 31.) As explained in the Declarations of John Jorgensen and Larry Ponemon supporting Plaintiffs' Motion for Final Approval of Class Settlement and Final Certification of Settlement Class, these measures provide concrete and valuable benefits to class members. *See generally* Exhibits 3, 4.

### D.     Claims Process

The Settlement provides for a consumer-friendly process for Settlement Class Members to submit claims to the experienced Settlement Administrator, KCC Class Action Services, LLC, appointed by the Court. (Prelim. Approval Order, ¶ 6.) Class members may submit claims for processing online through the dedicated website, www.HomeDepotBreachSettlement.com, which was established by the Settlement Administrator and activated on April 21, 2016. Class members also have the option to submit claims by U.S. mail. (Settlement Agreement, Ex. C.)

### E.     Costs of Notice and Attorneys' Fees Paid by Home Depot

The Settlement further provides that Home Depot will pay all costs of providing notice to the Settlement Class and all costs of administering the Distribution Plan, including the Settlement Administrator's fees. (Settlement Agreement, ¶¶ 44, 53.) Home Depot's obligation to pay the costs of class notice and administration is an additional significant benefit to the Settlement Class, as it is independent of (and in addition to) the $13 million Settlement Fund, and the $6.5 million for identity theft protection services. As a result, class notice and administrative costs will not reduce the amount of the Settlement Fund and therefore will not decrease the amount of benefits distributed to any Class Member.

The Settlement also requires Home Depot to pay any attorneys' fees and expenses awarded by the Court to Class Counsel. (*Id*., ¶ 61.) As with

administrative costs and the costs of class notice, Home Depot's agreement to pay an award of attorneys' fees and expenses approved by the Court is in addition to the Settlement Fund and identity theft protection services, so any fee award will not decrease Class Members' benefits. Moreover, the Settlement's finality is not dependent on the Court awarding attorneys' fees and expenses. There is no "clear-sailing" agreement on attorneys' fees – Home Depot reserves the right to object to Class Counsel's request for attorneys' fees. (*Id.*) Finally, Home Depot agrees not to oppose Class Counsel's request for reimbursement of costs and expenses up to $300,000. (*Id.*) Like the attorneys' fees, reimbursement for costs and expenses will not reduce the benefits conferred to the class. (*Id.*)

In summary, the Settlement provides for significant monetary and non-monetary benefits to all Settlement Class Members, which is routinely recognized and approved by courts as fair, reasonable and adequate.

### F.    Mediated Settlement Negotiations

While aggressively prosecuting the litigation, Consumer Plaintiffs' Lead Counsel pursued good faith, arm's length and strongly contested negotiations with Home Depot's Counsel. Jonathan Marks, a nationally-respected mediator experienced in resolving complex cases conducted two mediation sessions and numerous intermediate conversations with the parties' counsel extending over five months from September 2015 to January 2016. No discussion regarding the issues

of service awards to the Class Representatives and Plaintiffs' attorneys' fees, costs, and expenses predated negotiation and agreement on the substantive settlement terms benefitting the class. The details of the mediation process are discussed in Consumer Plaintiffs' Memorandum in Support of Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement (ECF No. 181-1, at 7-8), and in the Declaration of Norman Siegel in Support of Consumer Plaintiffs' Motion for Final Approval of Class Settlement and Final Certification of Settlement Class ("Final Approval"), (*see* Exhibit 1 to Memorandum of Law in Support of Final Approval hereinafter, "Siegel Decl." at ¶¶ 10-12.)

III.   **THE REQUESTED SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE REASONABLE AND APPROPRIATE**

Any service awards awarded by the Court will be paid from the Settlement Fund. (Settlement Agreement, ¶ 60.) Lead Counsel seek service awards for each of the 88 Consumer Plaintiffs named in the Complaint and listed in Exhibit A of the Settlement Agreement (ECF No. 181-2), whom the Court has previously designated as the Settlement Class Representatives. (Preliminary Approval Order, ¶ 2.)

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D.

Fla. 2006)). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re Southern Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) (collecting cases)). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010); *see also In re Xcel Energy, Inc., Sec., Derivatives & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) (awarding $2,000 to each of three class representatives and noting that "the three plaintiffs reviewed pleadings, conferred with counsel, provided information about the plan, responded to discovery, and reviewed and consented to the settlement"); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 225 (E.D. Pa. 2014) (noting that "'[t]he purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws'") (citation omitted).

Each of the Settlement Class Representatives could have awaited the outcome of this litigation and received the same benefits as any other Settlement Class Member. Instead, they stepped forward to represent the interests of all Class

Members. They remained committed to and actively participated in this significant litigation of public importance against a formidable defendant on behalf of millions of similarly situated consumers. They provided Class Counsel with documents and information concerning their purchases at Home Depot, responded to numerous inquiries from Class Counsel about their experiences, and provided information and documents to Class Counsel relating to the harm they suffered as a result of the breach. (*See* Exhibit 1, ("Barnes Decl. II") at ¶ 3). Settlement Class Representatives have monitored the litigation through continued contact with counsel. (*Id*.)

The Detailed Notice to Class Members, available on the Settlement website since its activation on April 21, 2016, and approved by the Court (Preliminary Approval Order, ¶ 7), notified Class Members that Class Counsel would ask the Court for service awards of up to $1,000 for each Settlement Class Representative. To date, there have been no objections from any Class Members to the requested service awards. (Siegel Decl., ¶ 20.) The requested service payments for the Settlement Class Representatives are appropriate and should be awarded.

## IV.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A.   Legal Standards Governing Fee Requests.

A district court has "wide discretion" in exercising its judgment on the appropriate fee amount, though the court must articulate the decisions it makes,

give principled reasons for those decisions, and show the specific fee calculations. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). In the exercise of their discretion, courts may base an award of attorneys' fees on either the lodestar method or the percentage of the common benefit recovered. "Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards." *Camden I Condo. Ass'n v. Dunkle*, 946 F. 2d 768, 774 (11th Cir. 1991); *see also Ingram*, 200 F.R.D. at 696 (fee supported by percentage of common fund approach also fair and reasonable under lodestar approach).

In support of Class Counsel's request for fees and expense reimbursement, Class Counsel submit the Declaration of Michael L. McGlamry ("McGlamry Decl.", filed herewith as Exhibit 2), an Atlanta-based attorney from the firm of Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C., who possesses an extensive background, knowledge and experience in complex litigation, including MDL and class actions. Mr. McGlamry offers the Court the benefit of his personal experience and familiarity with the factual matters facing the Court in considering an appropriate award of fees and expenses and provides the opinion that the fee and expense reimbursement request is fair and reasonable under either the lodestar or

common fund methodologies.

### B.     Thoroughness and Efficiency in Case Prosecution

In applying for a leadership position in this case, Consumer Plaintiffs' Lead Counsel committed to work cooperatively and efficiently in handling this case, and have done exactly that prior to and after their appointment. (Transcript of Proceedings 4-5, Feb. 12, 2015, ECF No. 74.) That work included the significant initial task of coordinating and organizing the work of the more than two-dozen law firms and the many lawyers from across the country who filed at least 26 Consumer cases that were ultimately consolidated in these MDL proceedings. (Barnes Decl. II, ¶ 1.) Similarly, in transferring the cases to this District, the MDL Panel found that "centralization in the Northern District of Georgia will . . . promote the just and efficient conduct of this litigation." (Initial MDL Transfer Order, Dec. 11, 2014, ECF No. 1.)

After transfer by the JPML, this Court issued a series of case management orders designed to promote the fair, efficient and expedited prosecution of the claims of all Plaintiffs. Consistent with this mandate, Class Counsel have pursued this litigation aggressively with the goal of delivering relief to the Class in the most efficient manner possible. As a result, Class Counsel were able to move this case to a successful resolution providing significant benefits to the Class within just over twelve months of their appointment. The services provided by Class Counsel are

summarized below.

Before filing the Complaint on May 1, 2015 (ECF No. 93), Class Counsel, working cooperatively with members of the Steering Committee and other consumer plaintiff firms, investigated the facts and law to identify potential claims and develop a prosecution strategy. (Siegel Decl., ¶¶ 3, 4.) First, Class Counsel conducted in-depth factual research into the events leading to the Home Depot data breach. (*Id.*, ¶ 4.) This factual investigation drew from public and non-public sources and included reviewing announcements by Home Depot concerning the data breach; reviewing news articles, including investigative reports, examining the causes of the data breach; conducting factual research into Home Depot's data security practices, including reviewing information about past breaches of Home Depot's and other retailers' systems and interviewing former employees knowledgeable about Home Depot's internal data security practices; researching warnings and alerts issued by credit card issuers; studying industry standards governing data security; evaluating studies examining data security practices, breaches, risks and the impact of breaches; reviewing Home Depot's annual reports to shareholders, Securities and Exchange Commission (SEC) filings and privacy policies; and retaining and communicating with knowledgeable consultants and experts on data security. (*Id.*)

Second, Class Counsel directed and engaged in comprehensive legal

research into potential claims that could be brought on behalf of Consumer Plaintiffs. (*Id.*, ¶ 5.) This in-depth research included reviewing claims asserted in previous data breach and consumer privacy litigation and considering potential claims based on the statutory and common law of all 50 states and the District of Columbia. (*Id.*) Class Counsel identified the elements of the claims and governing case law, assessed the viability of the claims through class certification and trial, identified the common evidence available to support each claim, and analyzed Home Depot's likely defenses based on defense theories advanced in other data breach litigations. (*Id.*)

Third, because numerous consumer actions arising out of retailer data breaches have failed at the pleading stage, Class Counsel carefully identified and vetted potential class representatives, gathered and examined documents to confirm their purchases during the relevant period and collected documentary evidence of consumer harm suffered as a result of the breach. (*Id.* at ¶ 6.) This process narrowed the number of plaintiffs while ensuring that the plaintiffs were geographically dispersed across the United States and had suffered both actual and imminent harm resulting from the Home Depot breach and therefore had standing to assert viable claims on behalf of the Class. (*Id.*) This important step narrowed the group of potential plaintiffs, benefited the Class, eased burdens on the Court and enhanced the efficiency and effectiveness of case prosecution. (*Id.*)

Fourth, Class Counsel developed and implemented an efficient case prosecution strategy. (*Id*. at ¶ 7.) Rather than asserting every colorable claim, Class Counsel focused the case on a core set of claims. ( *Id*.) The resulting 185-page Complaint included detailed factual allegations concerning Home Depot's technology and data security practices, the breach, Home Depot's post-breach conduct, and the experiences of each of the Named Plaintiffs. (*See* ECF No. 93.) The Complaint asserted causes of action for violations of consumer laws in 51 U.S. jurisdictions, violations of data breach notification statutes in 28 jurisdictions, and common law claims including negligence, breach of implied contract, unjust enrichment, and declaratory judgment. (*Id.*)

Fifth, Class Counsel developed and implemented a discovery strategy intended to focus on the remaining factual questions associated with the data breach. (Siegel Decl., ¶ 8.) To prepare for discovery, Class Counsel met and conferred with counsel for the Financial Institution Plaintiffs and Home Depot's counsel on over a dozen occasions. (*Id*.) The parties negotiated a scheduling order (Case Management Order No. 4, ECF No. 107), a discovery protocol (Case Management Order No. 5, ECF No. 110), an expert discovery protocol (ECF No. 111), a confidentiality protective order (ECF No. 132), and a joint motion governing the authentication of documents. (*See* Case Management Order No. 6, ECF No. 155) (Siegel Decl., ¶ 8.) At the time of Settlement, the parties were in the

final stages of negotiating an ESI protocol. (*Id*.) Further, with the Court's approval, Consumer Plaintiffs on behalf of themselves and jointly with the Financial Institutions propounded 126 document requests on Home Depot. (*Id*.) The parties then held multiple conferences to negotiate the scope of the requests, search terms, and Home Depot's document custodians. (*Id*.)

On June 1, 2015, Home Depot moved to dismiss the Complaint arguing lack of Article III standing and failure to state any claim for relief. *See* ECF No. 105. Consumer Plaintiffs opposed the Motion with principal and supplemental briefing. (ECF Nos. 117 & 124.) Home Depot also filed a reply. (ECF No. 129.) The Court heard oral argument on October 22, 2015, which Class Counsel prepared for, attended and argued. The motion was still pending at the time Class Counsel negotiated the terms and reached this proposed settlement. Class Counsel's thoroughness and efficiency in framing and pursuing the claims consistent with Federal Rule 1 and in achieving a substantial settlement benefitting all class members supports Class Counsel's request for attorneys' fees as set forth below.[3]

---

[3] Prosecution of a case in a swift and efficient manner after sufficient time to evaluate the strengths and weaknesses of plaintiffs' claims supports a fee award. *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 352 (N.D. Ga. 1993). Some courts include efficiency in consideration of the time and labor expended. *See In re Xcel Energy, Inc., Sec., Derivatives & "ERISA" Litig*., 364 F. Supp. 2d 980, 1001 (D. Minn. 2005).

### C.     The Fee Request is Reasonable Under Lodestar Analysis

Courts generally regard the lodestar method, which uses the number of hours reasonably expended as its starting point, as the appropriate method in statutory fee-shifting cases. *See Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) (noting that the Third Circuit Task Force Report dated October 8, 1995, recommended the lodestar approach for statutory fee-shifting cases); *see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (noting that "[b]ecause the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class"). In their Complaint, Consumer Plaintiffs invoked fee-shifting consumer laws providing the basis for recovery of attorneys' fees and costs, (*e.g.*, Complaint, Count I, ¶¶ 290, 292), supporting the application of the lodestar approach in this case. *Camden I*, 946 F. 2d at 774.

Under the lodestar approach, "the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). "The second half of calculating the 'lodestar' is determining the 'reasonable hourly rate' for the

attorneys' services. A reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *ACLU v. Barnes*, 168 F. 3d 423, 436 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1299).

Application of this calculation is straightforward and supports the reasonableness of Class Counsel's requested fee. Both the overall hours expended by Class Counsel and the hourly rates are reasonable. *See generally* McGlamry Decl. As summarized above, although the litigation was handled as efficiently as possible, Class Counsel devoted substantial time and resources to pursuing this case. Moreover, Class Counsel managed the other law firms representing the Class to efficiently assign and perform tasks with a minimum of unnecessary duplication of effort. As summarized in the accompanying declaration of Roy Barnes, Plaintiffs' counsel collectively expended 10,186 hours in connection with the claims against Home Depot through June 15, 2016, resulting in a lodestar of $5,454,978.50. (Barnes Decl. II, ¶ 15.) This lodestar amount includes both time spent before February 12, 2015, when the Court appointed Lead and Liaison Counsel ($1,762,228.80), and time devoted to the case after leadership was appointed through June 15, 2016 ($3,692,749.70). (*Id.*)

At the outset of this MDL litigation, the Court directed all counsel to compile monthly time and expense reports and submit them quarterly to the Court

for its *in camera* review. (Order for Appointment of Lead Counsel, ECF No. 60, ¶¶ 8, 9). Liaison Counsel has regularly submitted to the Court itemized records of the tasks performed, the time spent performing those tasks, and the costs and expenses incurred by Consumer Plaintiff firms in this matter. (Barnes Decl. II, ¶ 9.) As part of Class Counsel's request for fees associated with this Motion, Class Counsel reviewed time entries submitted by all Consumer Case Counsel and exercised their billing judgment to require more detail. Time that appeared disproportionate or duplicative of other entries, was not authorized by Lead or Liaison Counsel, or did not materially advance the litigation or resulting settlement was disallowed. (*Id.*, ¶ 11.)

Moreover, in order to litigate this matter in an efficient and cost effective manner, Lead and Liaison Counsel developed billing protocols and required a uniform reporting format for all Consumer Case Counsel to use when submitting time reports. (*Id.*, ¶ 8.) Recognizing that the law firms and their respective personnel involved in the consumer case portion of this MDL have a wide range of experiences from varying parts of the country, with each firm and lawyer accustomed to using different hourly rates and fee structures based on their own business models and prevailing legal market rates in the areas of their practice and expertise, Lead and Liaison Counsel undertook to research and analyze historic and public data available in order to develop a standardized hourly rate schedule

suitable for similar complex litigation matters in the Atlanta legal market. This research and analysis resulted in the discussion, development, coordination and implementation of the following standardized hourly rates that were used by all Consumer Case Counsel during the pendency of this case:

| Position | Experience | Rate |
|---|---|---|
| Paralegal | (all inclusive) | $165.00 |
| Associate | 0-5 years | $350.00 |
| Associate | 5+ years | $400.00 |
| Partner/Counsel | 0-5 years | $475.00 |
| Partner/Counsel | 5-10 years | $550.00 |
| Partner/Counsel | 10-20 years | $600.00 |
| Partner/Counsel | 20-30 years | $675.00 |
| Partner/Counsel | 30+ years | $750.00 |

These standardized rates have been used in Class Counsel's periodic reporting of time, costs and expenses for the Court's *in camera* review and are consistent with the rates typically approved in complex litigation in Georgia. (Barnes Decl. II, ¶ 7; McGlamry Decl., ¶ 13.)[4]

---

[4] The standardized rates used in this case are commensurate with or below the rates used by peer defense-side law firms litigating matters of a similar magnitude. For example, according to a survey by the National Law Journal, in 2014, King & Spalding's partner hourly rates ranged from a low of $545 to a high of $995, with an average partner rate of $775. The average hourly rate for King & Spalding associates in 2014 was $460. *ALM Legal Intelligence, 2014 NLJ Billing Survey*,

After the lodestar is calculated, courts recognize that counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work. *See, e.g.*, *Pinto v. Princess Cruise Lines Ltd*., 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving a lodestar multiplier of less than 2 and noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5 while three appears to be the average."); *Ingram*, 200 F.R.D. at 694-96 (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 . . . is not unusual or unreasonable."); *Columbus Drywall & Insulation, Inc. v. Masco Corp*., No. 1:04-cv-3066-JEC, 2012 WL 12540344 at *4 (N.D. Ga. Oct. 26, 2012) (approving multiplier of 4).

Here, Class Counsel's fee request – if all time is considered – amounts to a multiplier of 1.55.[5] This multiplier will continue to shrink as time spent implementing the settlement after June 15, 2016, is considered.

---

Nat'l L.J. (2014), http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country. *See also Blum*, 465 U.S. at 896 n.11 (explaining that courts should consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *In re Royal Ahold N.V. Sec. & ERISA Litig*., 461 F. Supp. 2d 383, 386 n.6 (D. Md. 2006) (approving fees in securities class action and holding that rates were "within a reasonable range for the national firms that prosecuted the case").

[5] The multiplier is calculated by dividing the $8,475,000 fee request by the $5,454,978.50 lodestar of all Consumer Case Counsel.

Even if the Court excludes all pre-appointment time from consideration, the requested fee would reflect a modest multiplier of 2.3 – which again will decline as time after June 15, 2016, is considered. Such a modest multiplier is both appropriate and well within (indeed, at the lower end of) the range of multipliers frequently approved in this District and throughout the Eleventh Circuit. *See Pinto*, *Ingram*, *and Mashburn*, *supra*; *Poertner v. Gillette Co.*, 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *5 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 Fed. Appx. 624 (11th Cir. 2015), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453 (2016) ("Using a lodestar analysis, the requested fee represents a risk multiplier of 1.56, which is well within the range of reasonableness for a contingent fee complex class action case.").[6]

In *Camden I Condo. Ass'n v. Dunkle*, 946 F. 2d 768 (11th Cir. 1991), the Eleventh Circuit recommended that district courts consider the twelve so-called *Johnson* factors in assessing attorney fee applications, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

---

[6] Academic studies also support such a multiplier. Eisenberg and Miller's empirical study of all published class action settlements from 2003 to 2008 showed that the mean multiplier in 368 cases was 1.81 and the mean multiplier in consumer cases was 1.82. Theodore Eisenberg and Geoffrey Miller, *Attorneys Fees and Expenses in Class Action Settlements 1993-2008*, 7 Journal of Empirical Legal Studies 248, 272 table 14.

> fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and
> the results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability" of the
> case; (11) the nature and length of the professional
> relationship with the client; (12) awards in similar cases.[7]

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*,

488 F.2d 714 (11th Cir. 1974)); *see also Poertner v. Gillette Co.*, 618 Fed. App'x

624, 628 (11th Cir. 2015), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct.

1453 (2016)) (applying *Camden I*). "Whether the district court uses the lodestar or

the common-fund method, the district court should apply the twelve [*Johnson*]

factors . . . to determine the appropriate statutory fee or the percentage to be

utilized." *Dikeman v. Progressive Exp. Ins. Co*., 312 Fed. App'x 168, 172 (11th

Cir. 2008).

   *Camden I* recognized additional factors that a court may consider in

awarding a percentage fee award, including non-monetary relief, the time required

---

[7] Some of these factors do not apply in this case; for example, time limitations
imposed by the client, the undesirability of the case, or the nature and length of the
professional relationship with the client. "Plainly, not all of the individual *Johnson*
factors will apply in every case, so the court has wide discretion as to which factors
to apply and the relative weight to assign to each." *In re Xcel Energy*, 364 F. Supp.
2d at 993 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc*., 9 F.3d 849,
854 (10th Cir.1993) ("[R]arely are all of the *Johnson* factors applicable; this is
particularly so in a common fund situation." (citation omitted)); *In re Catfish
Antitrust Litig*., 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("Even though the
Johnson factors must be addressed to ensure that the resulting fee is reasonable, not
every factor need be necessarily considered.").

to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, and the economics involved in prosecuting a class action. *Camden I*, 946 F. 2d at 775. When the *Johnson* and *Camden I* factors are considered, Plaintiffs' fee request is well within the range of reasonableness approved by courts within the Eleventh Circuit.

### 1.    The Time and Labor Required

A review of the effort and time expended by Class Counsel supports the requested fee. Consumer Plaintiffs' Motion for Preliminary Approval of Class Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice and Scheduling of a Final Approval Hearing (ECF No. 181 at 4-7), and the Siegel and Barnes II Declarations, detail the breadth and depth of work by Plaintiffs' counsel to prosecute the claims against Home Depot, the time expended, and the diligence of those efforts. As shown *supra*, Plaintiffs' counsel expended 10,186 hours in connection with the claims against Home Depot from September 1, 2014, through June 15, 2016, resulting in a lodestar of $5,454,978.50. Class Counsel's work will continue beyond approval of the Settlement, with no additional compensation. Accordingly, the time and labor required amply demonstrate the reasonableness of the attorneys' fee request.

## 2.    The Novelty and Difficulty of the Issues and Potential Risks

Class Counsel faced several difficult issues and potential risks in prosecuting the claims against Home Depot. As reflected in the briefing on Defendant's motion to dismiss (pending at the time of settlement), this case involved many complex factual and legal issues. These issues include Home Depot's various challenges to Consumer Plaintiffs' standing; the basis for and Consumer Plaintiffs' entitlement to injunctive relief; Plaintiffs' ability to bring consumer protection claims in multiple jurisdictions; the application of state consumer laws and data breach statutes in multiple jurisdictions; issues involved in Consumer Plaintiffs' negligence claims (including whether Home Depot owed them a duty to reasonably safeguard sensitive customer data and to provide timely notice of the data breach, breach of duty, damages, and causation, as well as application of the economic loss doctrine in various jurisdictions); and the application of multiple state laws governing Consumer Plaintiffs' implied contract and unjust enrichment claims.

There was a risk that Plaintiffs' claims would not have survived following a decision by the Court on Home Depot's motion to dismiss, or on a classwide basis after a motion for class certification, or after one or more motions for summary judgment following the completion of fact and expert discovery. (Siegel Decl., ¶¶ 15-17.) Despite Class Counsel's firm belief that the record evidence identified and that would be marshaled for trial would establish Home Depot's liability and prove

damages on a class-wide basis, they faced multiple, ongoing and potentially case-ending risks. In particular, there were significant risks and challenges of obtaining and maintaining class certification through trial based on the claims that may or may not have survived Home Depot's motion to dismiss. Data breach class actions have been susceptible to failure of class certification. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013) and *In re TJX Cos. Retail Sec. Breach Litig*., 246 F.R.D. 389 (D. Mass. 2007).

Risks further included establishing causation, an issue that Home Depot advanced and would have been challenging for this litigation. (Siegel Decl., ¶ 16). Additional risks related to proving damages for class members, both those who suffered unauthorized charges, loss of access to their accounts and costs such as late fees, card replacement fees and credit monitoring services, as well as those who claimed imminent, certainly impending harm from potential fraud and identity theft as a result of the Home Depot data breach. (*Id*.) The fact that other prominent data breaches occurred before and after the Home Depot breach would make proving damages even more difficult.

The litigation entailed the further risk that neither side could be sure of a favorable jury verdict. (*Id*.) There was also the inherent danger that Plaintiffs' claims would possibly be resolved through a battle between experts, the outcome of which is difficult if not impossible to assess. (*Id*.) *See Ressler v. Jacobson*, 822

F. Supp. 1551, 1554 (M.D. Fla. 1992) ("In the 'battle of experts,' it is impossible to predict with any certainty which arguments would find favor with the jury."). There was the additional risk that further developments in the law or the factual evolution of the case could undermine Consumer Plaintiffs' claims and the risk that if class certification were achieved and maintained and the Class was successful in establishing liability at trial, the jury could award damages in an amount lower than that sought by the Class or the amount offered in the Settlement. Both sides also faced the uncertainties, risks, expense and significant delays associated with appeals that would inevitably be pursued following trial. (*See* Siegel Decl., ¶ 15.)

Also, no federal or state governmental agency provided any assistance to Class Counsel's prosecution of the case or contributed in any way to the achievement of the Settlement. (*Id*., ¶ 12.) This case did not follow on the heels of any guilty pleas following government investigations or prosecutions. The Settlement's substantial benefits to the Class are attributable solely to the efforts of Class Representatives and Class Counsel. *See In re AT&T Corp., Sec. Litig*., 455 F.3d 160, 173 (3d Cir. 2006) (absence of assistance from any government group supported district court's conclusion that the fee award to class counsel was fair and reasonable); *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (S.D. Fla. 1992) (that class litigated and obtained settlement without active assistance from any

government agency was significant fact supporting fee request).

Risks in complex class litigation are quite real. Indeed, there are many examples of cases in which plaintiffs succeeded at trial on liability but recovered little or no damages following a trial or an appeal. *See*, *e.g.*, *U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1174 (7th Cir. 1983) (antitrust judgment remanded for new trial on the issue of damages); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) (after two trips to the Second Circuit and one to the Supreme Court, plaintiffs and the proposed class recovered nothing). Even a victory at the trial stage is not a guarantee of success. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81.3 million in securities class action against accounting firm on loss causation grounds and judgment entered for defendant). As one court aptly remarked, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

The complexity of the factual and legal issues and the potential risks presented by this litigation strongly supports the reasonableness of Class Counsel's

requested attorneys' fee.

### 3. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The Court should also consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3. As discussed *supra*, this is a complex case involving difficult factual and legal issues. Moreover, the numerous contested issues required highly skilled counsel to represent the class and bring about the Settlement. Class Counsel are among the nation's preeminent law firms in class action litigation and have served as lead or co-lead counsel in major data breach and other complex class actions. Thus, the experience, reputation, and ability of Class Counsel were factors in obtaining the result achieved here.

This Court should also consider the "quality of the opposition the plaintiffs' attorneys faced" in awarding Class Counsel a fee. *Camden I*, 946 F. 2d at 772 n.3; *Columbus Drywall*, 2012 WL 12540344 at *4; *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001); *Ressler*, 149 F.R.D. at 654. Home Depot is represented by King & Spalding LLP, an experienced and nationally recognized

defense firm. The ability of Class Counsel to obtain such a favorable Settlement for the Settlement Class in light of such qualified legal opposition confirms the quality of the representation.

### 4. The Preclusion of Other Employment

Class Counsel and the other lawyers pursuing this litigation were forced to forgo other employment while working on this matter. This dynamic will continue well beyond final approval, as Class Counsel is duty bound to ensure proper distribution of the settlement proceeds and address any issues that arise following final approval.

### 5. The Customary and Contingent Nature of the Fee

Fees in class action lawsuits of this nature are contingent because virtually no individual possesses a sufficiently large stake in the litigation to justify paying their attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman*, 836 F.2d at 1299. Thus, the Court should give substantial weight to the contingent nature of Class Counsel's fees when assessing the fee request. Indeed, courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is '"perhaps the foremost" factor' in

determining an appropriate fee award"); *see also Ressler*, 149 F.R.D. at 654-55; *In re Friedman's Inc. Sec. Litig.,* 2009 WL 1456698, at *3 (N.D. Ga., May 22, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

Success in contingent litigation such as this is never guaranteed. In other data breach cases, plaintiffs' counsel have expended considerable effort in litigation, including time and expenses, yet received no compensation at all. *See, e.g., Storm v. Paytime, Inc.,* 90 F. Supp. 3d 359, 365-68 (M.D. Pa. 2015); *Peters v. St. Joseph Servs. Corp*, 74 F. Supp. 3d 847, 853-57 (S.D. Tex. 2015); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig*., 45 F. Supp. 3d 14, 23-28, 34 (D.D.C. 2014); *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469-71 (D.N.J. 2013).

> Here, Class Counsel undertook this litigation on a wholly contingent basis:
>
> Collectively, this leadership is comprised of highly skilled and experienced lawyers who were familiar with and understood the inherent risks and challenges associated with prosecuting one of the largest retailer data breaches in U.S. history. These lawyers united, assumed all the risks and financial burdens associated with the litigation, and worked productively on a solely contingency fee basis to secure common benefits for all Home Depot customers whose payment card data was compromised in the data breach. This effort required thousands of hours of attorney and staff time and extensive financial resources, without any guarantee counsel would be compensated.

(Barnes Decl. II, ¶ 2.)

As noted above, Class Counsel faced a number of hurdles that could have resulted in a smaller recovery or no recovery at all. *See supra*. Indeed, because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result. Thus, the contingent nature of the case and the substantial risks involved in this complex litigation strongly support Class Counsel's fee request. *Blum v. Stenson*, 465 U.S. 886, 902 (1984) (Brennan, J. concurring) (noting "the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee.").

### 6.    The Amount Involved and Results Achieved

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655; *see also Friedman's*, 2009 WL 1456698, at *3 (same). Here, Class Counsel secured substantial benefits for the Settlement Class that directly addressed Plaintiffs' litigation goals. As explained above, the Settlement Class is entitled to substantial cash relief to compensate for losses of money and time associated with the breach; access to identity protection services with an insurance policy that provides prospective protection; and material non-economic relief in the form of altering Home Depot's data protection.

The $13 million Settlement Fund will be distributed under a fair Distribution

Plan attached to the Settlement Agreement and preliminarily approved by this Court. The distribution process is consumer friendly, using a simple claim form and a claims submission process that is being ably administered online by the Settlement Administrator, KCC. And, the Settlement compensates for what is often the most frustrating impact of a data breach – the loss of time associated with things like canceling cards and resolving improper charges to accounts.

The identity theft protection services also provide valuable relief for Class Members. At $9.99 per month, the service confers a benefit of approximately $180 per class member – valued in the billions when aggregated across the eligible Class. *See Hillis v. Equifax Consumer Servs., Inc*., 2007 WL 1953464 at *5 (N.D. Ga. June 12, 2007) (settlement making class members eligible for 3 to 6 months of credit monitoring at retail value of $8.95 per month resulted in potential retail value of in-kind benefits of $100 to $221 million).

Besides significant monetary relief, the Settlement provides substantial benefits to all Class Members in the form of non-monetary relief designed to safeguard customers' sensitive information held by Home Depot. Dr. Larry Ponemon, an expert on data security, has submitted his opinion concerning the importance of these non-monetary relief measures:

> In my opinion, the equitable relief provided by this Settlement is of substantial value to the millions of consumers who are victims of the Home Depot data breach incident and to consumers whose credit or debit card data and/or personal information is maintained or in the

future will be maintained by Home Depot, in the following ways:

> Increases accountability and centralizes responsibility for data breach incident management;

> Improves the company's ability to quickly detect and contain security threats through aggressive monitoring and agile response;

> Raises the level of awareness and understanding about data security and privacy issues among the company's employees (who serve as the first line of defense); and

> Reduces the risk of future data breaches for customers, consumers, employees and other stakeholders.

(Ponemon Decl., ¶ 17.)

Dr. Ponemon further opines that "[w]hile a corporate information security or privacy program can never guarantee the mitigation of all privacy and data protection risks, I believe that implementation of the requirements included in the Settlement are important improvements in Home Depot's protection of customer data to the benefit of all members of the proposed Settlement Class . . . ." (*Id.* at ¶ 18.) Moreover, Dr. Ponemon opines that "the implementation of these requirements will benefit present and future Home Depot customers by reducing data breach incidents, thereby reducing the risk and likelihood of identity theft crimes for millions of individuals and their families." (*Id.* at ¶ 19.)

It is appropriate for the Court to consider this significant non-monetary relief provided under the Settlement that benefits each and every member of the

Settlement Class. "[D]istrict courts could also consider the twelve [*Johnson*] factors …[,] as well as [o]ther pertinent factors, including any non-monetary benefits conferred upon the class by the settlement and the economics involved in prosecuting a class action, in determining the reasonableness of a fee award." *Poertner*, 618 Fed. App'x at 628-29 (internal citations and quotations omitted); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011) (district court could consider compensation for class counsel based on non-monetary benefits, including changing business practices); *In re Checking Account Overdraft Litig.*, 1:09-MD-02036-JLK, 2013 WL 11319242, at *12 (S.D. Fla. Aug. 2, 2013) ("[A] percentage of the fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.") (quoting Principles of the Law of Aggregate Litigation, § 3.13(b) (American Law Institute, 2010)).

Finally, Home Depot will pay all administrative costs, class notice expenses and any attorneys' fees and expenses awarded by the Court, which are clear and direct benefits to the Class.

The result achieved here is particularly noteworthy considering the track record for data breach class actions. Many cases have failed at the motion stage either for lack of plaintiff standing or failure to assert valid claims. *See, e.g.*, *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 10 (D.D.C. 2007);

*Bell v. Acxiom Corp.*, No. 4:06-cv-00485-WRW, 2006 WL 2850042, at *2 (E.D. Ark. Oct. 3, 2006); *Key v. DSW, Inc.,* 454 F. Supp. 2d 684, 690 (S.D. Ohio 2006); *Giordano v. Wachovia Sec., LLC*, No. 06-476 (JBS), 2006 WL 2177036, at *5 (D.N.J. July 31, 2006); *Hammond v. Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *2 (S.D.N.Y. June 25, 2010); *Krottner v. Starbucks Corp*., 406 Fed. App'x 129, 130 (9th Cir. 2010). Cognizant of such rulings, Class Counsel carefully vetted Consumer Plaintiffs whose facts demonstrated standing, advanced solid standing theories and deliberately streamlined the litigation by focusing on a core set of the strongest legal claims. The fact that the Settlement compares favorably with settlements reached in other retailer data security breach cases, *see* Summary of Data Breach Settlements, Exhibit A to Siegel Decl., further underscores the significant benefits achieved for the Class under the Settlement.

### 7.    Awards in Similar Cases

As reflected in the Summary of Data Breach Settlements, the fees requested here are commensurate with attorneys' fees in data breaches of similar scale. *See, e.g., In re Target Corp. Customer Data Security Breach Litig*., No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *3 (D. Minn. Nov. 17, 2015) (awarding $6.75 million in fees in settlement providing for $10 million fund and injunctive relief with no ongoing monitoring offered); *In re TJX Cos. Retail Sec. Breach Litig*., 584

F. Supp. 2d 395, 408 (D. Mass. 2008) (approving $6.5 million in fees in settlement providing for $10 million fund and credit monitoring but no injunctive relief).

### 8.   Reaction of the Settlement Class to Date

Another factor that is appropriate to consider is the reaction of the Settlement Class. *Camden I* at 775. More than 60 million Notices were emailed to potential Settlement Class Members, over 10 million banner impressions promoted the settlement on the Internet, and the Summary Notice was published in *People*. (*See* Declaration of Kenneth Jue on Behalf of Settlement Administrator Regarding Notice (Exhibit 2 to Memorandum of Law in Support of Final Approval hereinafter, "Jue Decl.," at ¶¶ 4-6.)) The Notice stated that Lead Counsel would apply for fees of up to $8.475 million and reimbursement of expenses in an amount not to exceed $300,000. To date, only one objection to the requested fee and expense award has been received, and only 29 requests for exclusion have been received.[8] (Jue Decl., ¶ 8; Siegel Decl., ¶ 20.)

The favorable reaction of the Class provides further support for Class Counsel's fee request. "The lack of numerous objections is evidence that the requested fee is fair." *Friedman's*, 2009 WL 1456698, at *3; *Ressler*, 149 F.R.D. at 656 (noting that the lack of objections is "strong evidence of the propriety and acceptability" of the fee request); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194

_____

[8] Class Counsel will respond to any objections as part of its Reply in Support of Final Approval.

F.R.D. 166, 179 (E.D. Pa. 2000) (six objectors constituted an "extremely limited" number).

A final point on the application of lodestar analysis is in order. Consumer Plaintiffs' Lead Counsel intend to continue to exercise their responsibility of ensuring that unnecessary expenditures of time and of funds are avoided. This Court appropriately expects sound billing judgment and that only time and expenses authorized and incurred on matters that advance the litigation on behalf of all class members will be considered as compensable. Consumer Plaintiffs' Lead Counsel will carefully evaluate and scrutinize Consumer Case Counsels' time and expense reports in allocating any fee and expense award.[9] Lead counsel

---

[9] Courts recognize that "submission of a combined fee application with actual allocation to be made by lead counsel has generally been adopted by the courts." *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *17 (E.D. Pa. June 2, 2004). "[F]rom the standpoint of judicial economy, leaving allocation to such counsel makes sense because it relieves the Court of the 'difficult task of assessing counsel's relative contributions.'" *Id.* at *18 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 329 n. 96 (3d Cir. 1998)). Courts afford broad discretion to lead counsel in initially allocating attorneys' fee awards. *See In re Indigo Sec. Litig.*, 995 F. Supp. 233, 235 (D. Mass. 1998) (directing that "[a]ny and all allocations of attorneys' fees and expenses among counsel for all class representatives shall be made by lead counsel for the class, who shall apportion the fees and expenses based upon their assessment of the respective contribution to the litigation made by each counsel"); *In re Vitamin Cases*, No. 301803, 2004 WL 5137597, at *8 (Cal. Super. Ct. S.F. Cnty. Apr. 12, 2004) (stating that "[f]ederal courts nationwide have recognized that lead counsel are generally better suited than the trial court to decide the weight and merit of the relative contributions made by those performing common benefit work"). Courts may review the reasonableness of the allocation if a dispute arises. *See, e.g., In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 224 (D.D.C. 2005) (determining

recognize that just as the Supreme Court has held that the standard for evaluating fee awards is reasonableness, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), Class Counsel's allocation must be fair and reasonable. *See, e.g., Vitamin Cases*, 2004 WL 5137597, at *9. The Supreme Court has also cautioned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Should the Court award attorney fees and expenses in this matter, Lead Counsel will allocate the award on a fair and reasonable basis applying factors courts consider in awarding fees in class litigation, including each firm's contribution to the litigation for the benefit of the Settlement Class, the risks borne by counsel in litigating this complex case on a contingency fee basis, leadership and other roles assumed, lodestars, the quality of work performed, contributions made, the magnitude and complexity of assignments executed and the time and effort expended by counsel.

### D.   Class Counsel's Fee Request is Alternatively Reasonable as a Percentage of the Benefit Conferred on the Class

Although Plaintiffs have moved for a fee under the lodestar approach, the fee is also reasonable when considered as a percentage of the benefit conferred on the Class. To this end, the Supreme Court has "recognized consistently that . . . a

---

that co-lead counsel have broad authority to make initial allocation of fee award but once law firm objected co-lead counsel's decisions were subject to court review under an abuse of discretion standard). If there are any issues arising from Lead Counsel's initial allocation of any award of fees and expenses, Lead Counsel will first attempt to resolve them without seeking the Court's involvement.

lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

In *Camden I*, the Eleventh Circuit recognized that there "is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case," 946 F.2d at 774, but acknowledged 25% as a benchmark "which may be adjusted in accordance with the individual circumstances of each case . . . ." *Id*. at 775. Application of the same *Johnson* factors shown *supra* under the lodestar analysis warrants the fee request made here under a percentage of the fund approach.

Here, the Settlement includes several components that confer a substantial benefit to the class. In addition to the $13 million fund made available to class members, Home Depot has agreed to pay $6.5 million for 18 months of Identity Guard services for all class members electing to enroll.[10] Moreover, Home Depot will separately pay the cost of notice and administration (approximately $750,000) (Siegel Decl., ¶ 19), and Plaintiffs' costs and expenses of $163,581.93 and attorneys' fees awarded by the Court. If Plaintiffs' are awarded the requested fee of

---

[10] From the class's perspective, the *value* of Identity Guard, at approximately $180 per class member, results in an aggregate benefit conferred to the Class of well into the billions of dollars.

$8.475 million, then the total monetary benefit conferred to the class will be $28,888,581.93, of which the requested fee amounts to 29.33%. Additionally, when the value of the significant non-monetary relief is considered, the requested attorneys' fees drop as a percentage of the total benefit conferred.

It is appropriate to consider each of these components as directly benefiting each Class Member and therefore within the entire common benefit recovery. In a similar case, in awarding attorneys' fees representing 26% of the common fund, the court noted that the cash amount of the settlement ($1.103 million), attorney fees and expenses ($548,000) and administrative costs (estimated at $450,000) were all properly included within the common fund calculation:

> Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorney fees and expenses, and the expenses of administration. *See Boeing v. Gemert*, 444 U.S. 472, 479 (1980) ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.") (citation omitted).

*9-M Corp. v. Spring Commc'ns Co.*, Civ. No. 11-3401 (DWF/JSM), 2012 WL 5495905, at *2 (D. Minn. Nov. 12, 2012) (citing *In re Gen. Motors*, 55 F.3d at 821).

As the Eighth Circuit has explained:

42

> Although under the terms of each settlement agreement, attorney
> fees technically derive from the defendant rather than out of the
> class' recovery, in essence the entire settlement amount comes from
> the same source. The award to the class and the agreement on the
> attorney fees represent a package deal. Even if the fees are paid
> directly to the attorneys, those fees are still best viewed as an aspect
> of the class' recovery.

*Johnston*, 83 F.3d at 246.

Applying the *Johnson* factors under the common fund analysis shows that the fee request is well within the approved range of reasonableness in this Circuit and should be approved.

## V.   THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES

Rule 23(h) authorizes a district court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P 23(h). Home Depot has agreed not to oppose Plaintiffs' request for reasonable costs and expenses up to $300,000. (Settlement Agreement, ¶ 61.)

Class Counsel respectfully request reimbursement of the $163,581.93 of costs and expenses they have incurred to date in this litigation through June 15, 2016. These costs and expenses are summarized in the accompanying supporting declaration of Liaison Counsel and are based on the costs and expenses of all Consumer Case Counsel reported to the Court during the course of the litigation. (Barnes Decl. II, ¶ 15.) Class Counsel reasonably incurred these costs and expenses in the normal course of this litigation, all the while having no assurance of

repayment. Because costs and expenses were incurred without any guarantee of reimbursement, Class Counsel had a strong incentive to ensure that money was properly spent. Courts routinely approve costs and expenses incurred in the prosecution of complex cases. *See, e.g.*, *Poertner*, 618 Fed. Appx. At 630 (approving fee-and-cost award); *In re: Checking Account Overdraft Litig.*, 2013 WL 11319242, at *1 (same).

## VI.    CONCLUSION

Consumer Plaintiffs' Lead Counsel, on behalf of all Plaintiffs' Counsel and the Settlement Class, respectfully requests that the Court approve service awards in the amount of $1,000 for each of 88 Settlement Class Representatives, and that the Court approve an award of attorneys' fees in the amount of $8.475 million and costs and expenses in the amount of $163,581.93, the measure of which are fair, reasonable, adequate, and typically approved upon the application of all the applicable legal standards and guidelines.

Dated: June 27, 2016                    Respectfully Submitted,

                                        */s John R. Bevis*

David J. Worley                         Roy E. Barnes
James M. Evangelista                    John R. Bevis
**HARRIS PENN LOWRY, LLP**              **THE BARNES LAW GROUP, LLC**
400 Colony Square                       31 Atlanta Street
1201 Peachtree Street, NE, Suite 900    Marietta, GA 30060
Atlanta, GA 30361                       Telephone: 770-227-6375
Telephone: 404-961-7650                 Fax: 770.227.6373
Fax: 404-961-7651                       roy@barneslawgroup.com

david@hpllegal.com
jim@hpllegal.com

*Consumer Co-Lead Counsel*
*and Steering Committee Members*

John A. Yanchunis, Sr.
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N Franklin Street
Tampa, FL 33602
Telephone: 813-223-5505
Fax: 813-223-5402
jyanchunis@forthepeople.com

*Consumer Co-Lead Counsel*
*and Steering Committee Member*

Tina Wolfson
**AHDOOT AND WOLFSON, P.C.**
1016 Palm Avenue
West Hollywood, CA 90069
Telephone: 310-474-9111
Fax: 310-474-8585
twolfson@ahdootwolfson.com

*Consumer Plaintiffs'*
*Steering Committee Member*

William B. Federman
**FEDERMAN & SHERWOOD**

bevis@barneslawgroup.com

*Consumer Liaison Counsel*
*and Steering Committee Members*

Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: 816-714-7100
Fax: 816-714-7101
siegel@stuevesiegel.com
vahle@stuevesiegel.com

*Consumer Co-Lead Counsel*
*and Steering Committee Members*

Daniel C. Girard
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: 415-981-4800
Fax: 415-981-4846
dcg@girardgibbs.com

*Consumer Plaintiffs'*
*Steering Committee Member*

Gary S. Graifman
**KANTROWITZ, GOLDHAMER**

10205 N. Pennsylvania Avenue
Oklahoma, OK 73120
Telephone: 405-235-1560
Fax: 405-239-2112
wbf@federmanlaw.com


*Consumer Plaintiffs'*
*Steering Committee Member*

Howard T. Longman
**STULL STULL & BRODY**
6 East 45th Street
New York, NY 10017
Telephone: 212-687-7230
Fax: 212-490-2022
hlongman@ssbny.com


*Consumer Plaintiffs'*
*Steering Committee Member*

**& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Telephone: 201-391-7600
Fax: 201-307-1086
ggraifman@kgglaw.com


*Consumer Plaintiffs'*
*Steering Committee Member*