UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 5:11-CV-00379 EJD **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD** **[Re: Docket No. 191]** |

The instant case is a putative class action suit brought by former Netflix subscribers Jeff Milans and Peter Comstock (collectively "Plaintiffs") against Defendant Netflix, Inc. ("Netflix"). Presently before the Court is the Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees ("Final Approval Motion"). See Docket Item No. 191. Having reviewed the Settlement Agreement and the parties' and objectors' arguments and papers, the Court has determined that the present Motion will be GRANTED for the reasons set forth below.

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL
OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND
INCENTIVE AWARD

United States District Court
For the Northern District of California

1

## I.   Background

On January 26, 2011, Plaintiff Milans initiated this class action, claiming that Netflix unlawfully retained and disclosed his Entertainment Content Viewing History and other personally identifiable information ("PII") located on Netflix's website and that of thousands of other Netflix customers. See Docket Item No. 1. Among other claims, Milans alleged violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Id. A wave of similar suits followed, and on August 12, 2011, the Court consolidated six cases, granted Plaintiffs leave to file an Amended and Consolidated Class Complaint, and appointed Jay Edelson of Edelson McGuire, LLC as interim lead Class Counsel. See Docket Item No. 59.

After a mediation overseen by retired United States District Court Judge Layn R. Phillips, the parties reached a settlement agreement ("Settlement Agreement"). The parties notified the Court of settlement on February 10, 2012. See Docket Item No. 10. The full Settlement Agreement is attached as Exhibit A to Plaintiff's Final Approval Motion. See Docket Item No. 191 Ex. A. The Court will summarize the key terms of the Settlement Agreement for the purposes of the present Final Approval Motion:

- Class Definition. The class was defined as follows: "[A]ll Subscribers as of the date of entry of Preliminary Approval. Excluded from the Settlement Class are the following: (i) the Settlement Administrator, (ii) the Mediator, (iii) any respective parent, subsidiary, affiliate or control person of the Defendant or its officers, directors, agents, servants, or employees as of the date of filing of the Action, (iv) any judge presiding over the Action and the immediate family members of any such person(s), (v) persons who execute and submit a timely request for exclusion, and (vi) all persons who have had their claims against Defendant fully and finally adjudicated or otherwise released." Settlement Agreement § 1.38. The size of the class amounts to approximately 62 million individuals.

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

United States District Court
For the Northern District of California

- <u>Injunctive Relief</u>. The Settlement Agreement requires Netflix to decouple Entertainment Content Viewing Histories from customers' identification and payment methods within one year of the Effective Date of Settlement. <u>Id.</u> § 2.1.

- <u>Settlement Fund</u>. Netflix has agreed to pay a total amount of $9,000,000.00 into a Settlement Fund. <u>Id.</u> § 2.3. The Fund will be used for payment of Settlement Administration Expenses, a fee award to Class Counsel, and incentive award to the Class Representatives and Named Plaintiffs. <u>Id.</u> § 2.3. The balance of the Fund will be distributed to <u>cy pres</u> recipients. <u>Id.</u>

- <u>Settlement Administration Expenses</u>. Plaintiffs have calculated these costs to be $114,570.58 with additional expected costs of $35,000.00. <u>See</u> Final Approval Motion at 24.

- <u>Fee Award to Class Counsel</u>. Netflix has agreed to pay Class Counsel a fee award of up to 25% of the amount of Settlement Fund—$2,250,000.00—plus reimbursement of up to $25,000.00 of costs and expenses. <u>Id.</u> at 24.

- <u>Incentive Award to Class Representatives</u>. Netflix has agreed to pay Class Representatives Milans and Comstock as well as the named-plaintiffs in the Related Actions, a collective incentive award in the amount of $30,000.00. <u>See</u> Settlement Agreement § 9.2.

- <u>Cy Pres Distribution</u>. The parties have agreed to distribute the balance of the Settlement Fund to not-for-profit organizations, institutions, and programs for the purpose of educating "users, regulators, and enterprises regarding issues relating to protection of privacy, identity, and personal information through user control, and to protect users from online threats." <u>Id.</u> § 2.4.1. The parties have selected twenty such organizations which will "spend the funds solely on privacy protection and education efforts." Final Approval Motion at 23. A list of the twenty proposed <u>cy pres</u> recipients and explanation

3

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF <u>CY PRES</u> AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

1    of how they intend to use the funds is provided in the Final Approval Motion as well as

2    posted on the litigation website (www.videoprivacyclass.com). The precise

3    disbursement from the Settlement Fund to each of these organizations was filed with the

4    Court. See Notice of Proposed Cy Pres Award Recipients, Docket Item No. 193.

5    • Release of Claims. In exchange for the relief explained above, the Settlement

6      Agreement provides that Netflix and each of its related affiliates and entities will be

7      released from any claims arising out of, relating to, or regarding the alleged retention

8      and disclosure of Plaintiffs' and the Settlement Class's personally identifiable

9      information, Video Rental History, and other information, including but not limited to

10     all claims that were brought, alleged, argued, raised, or asserted in any pleading or court

11     filing in the Action. See Settlement Agreement §§ 1.31, 1.32, 1.33, 1.42, 3.

12   Plaintiffs moved the Court to preliminarily approve the settlement on May 25, 2012. See

13   Docket Item No. 76. The Court granted this motion on July 5, 2012. See Am. Order Grant'g Mot.

14   for Prelim. Approval of Class Action Settlement ("Preliminary Approval Order"), Docket Item No.

15   80. Pursuant to the Preliminary Approval Order, Class Notice, including notice of the hearing on

16   the final approval of the class action settlement, was sent to the Class. The Court received over 100

17   Objections to the settlement.

18   A hearing on the final approval of the settlement was held on December 5, 2012 where the

19   Court heard arguments of counsel as well as that of individual class member objectors. See Minute

20   Entry, Docket Item No. 233. Plaintiffs filed the present Final Approval Motion on October 31,

21   2012. See Docket Item No. 191. In addition, Plaintiffs and Defendant each filed responses

22   addressing the procedural and substantive issues raised by the objections. See Pls.' Reply Memo. in

23   Supp. of Final Approval Mot., Docket Item No. 226; Def.'s Response to Objections to Class

24   Action Settlement, Docket Item No. 225.

25

26

27                                               4

28   Case No.: 5:11-CV-00379 EJD
     ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL
     OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND
     INCENTIVE AWARD

## II.    Legal Standard

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Id. When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). "[J]udges have the responsibility of ensuring fairness to all members of the class presented for certification." Id.

The law favors the compromise and settlement of class action suits. See, e.g., Churchill Village, LLC. v. Gen. Elec., 361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

First, the district court must assess whether a class exists under Federal Rule of Civil Procedure 23(a) and (b). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997). Second, the district court must carefully consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable," pursuant to Federal Rule of Civil Procedure 23(e); recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citations omitted).

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

### III.   The Settlement Agreement

The Court reasserts its conclusion in the Preliminary Approval Order that the Settlement Agreement "appears fair, non-collusive and within range of possible final approval" and "was a product of arm's length negotiation before a mediator and does not appear to benefit those who participated in the mediation at the expense of any other parties." Preliminary Approval Order at 4. The Court also iterates the following: "In light of the minimal monetary recovery that would be realistically recoverable by individual Settlement Class members and the immediate benefits offered to the Class by the injunctive relief and cy pres donations, the Settlement Agreement is deserving of preliminary approval." Id.

#### A.  Class Certification

In accordance with first step for approving a class action settlement agreement, see Windsor, 521 U.S. at 620, the Court notes that class certification is appropriate for this litigation under Federal Rule of Civil Procedure 23. Because the Objections do not appear to raise a viable challenge to that conclusion, the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order. See Preliminary Approval Order at 4–6.

#### B.  Reasonableness of the Settlement Agreement

The Court now turns to the question of whether the Settlement Agreement is "fair, adequate, and reasonable" as prescribed under Federal Rule of Civil Procedure 23(e). In answering this question, district courts have been instructed to balance several factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

United States District Court
For the Northern District of California

6

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Hanlon, 150 F.3d at 1026; Churchill, 361 F.3d at 575.

Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel. See, e.g., Garner v. State Farm Mut. Auto. Ins. Co., No. 08-CV-1365-CW, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010). Because this Court has concluded that the settlement negotiations were conducted free of collusion, see Preliminary Approval Order at 4, and the Objections do not raise a viable challenge to this notion, the Court will evaluate each of eight Hanlon approval factors under the presumption of fairness and reasonableness.

### 1. Strength of Plaintiff's Case

In determining the probability and likelihood of a plaintiff's success on the merits of a class action litigation, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Officers for Justice, 688 F.2d at 625 (internal quotation marks omitted). There is no "particular formula by which that outcome must be tested." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." Garner, No. 08-CV-1365-CW, 2010 WL 1687832, at *9 (citing Rodriguez v. West, 563 F.3d at 965).

Plaintiffs have suggested that they intended to bring two theories in support of their VPPA violation claims which underlie the class action. The first of these theories is that Netflix had unlawfully disclosed customers' PII by providing that information to third-party analytics companies working to improve Netflix's recommendation algorithm or for other purposes. However, after the commencement of formal and informal discovery, Plaintiffs determined that

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

United States District Court
For the Northern District of California

Netflix had not been disclosing Netflix customers' PII to third parties. In addition, Plaintiffs concluded that the third-party services theory would be unlikely to succeed given the broad interpretation of the VPPA's "ordinary course of business" exception courts in this district have been employing. See, e.g., Rodriguez v. Sony Computer Entm't of Am. LLC, No. 11-CV-4084-PJH (N.D. Cal. Apr. 20, 2012) (granting defendant's motion to dismiss plaintiff's unlawful disclosure VPPA claim for this reason). With that, and other possible defenses Netflix might have raised—such as lack of Article III standing—Class Counsel has estimated that the "unlawful disclosure" claims would have a 5% chance of success on the merits.

The second of Plaintiffs' theories of the case was that Netflix had been unlawfully retaining customers' PII in violation of the VPPA. One particularly potent defense Netflix could bring in response to this theory is that numerous courts have found that Congress only intended for litigants suing under the VPPA to receive injunctive relief and not monetary damages. See, e.g., Rodriguez v. Sony Computer Entm't of Am. LLC, No. 11-CV-4084-PJH, 2012 WL 4464563 (N.D. Cal. Sept. 25, 2012) (dismissing with prejudice plaintiff's unlawful retention VPPA claims for this reason); Sterk v. Redbox Automated Retail, LLC, 672. F.3d 535 (7th Cir. 2012) (finding no private right of action for statutory damages for a violation of 18 U.S.C. § 2710(e), VPPA's unlawful retention prong); Daniel v. Cantrell, 375 F.3d 377 (6th Cir. 2004) (same). While this defense might have prevented a monetary damage award under the VPPA, Class Counsel still intended to bring suit under the "unlawful" prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, which could have provided for monetary damages. Taking into consideration other potential defenses—such as, again, lack of Article III standing—Class Counsel estimated a 55% change of succeeding on the merits under the "unlawful retention" theory.

Class Counsel has placed a net value of the case at $6,398,667 plus fees. See Final Approval Motion § III (outlining in detail the arrival at this figure). The calculation first estimates the amount of recovery in the event of success on the merits after surmounting all procedural and

United States District Court
For the Northern District of California

8

substantive obstacles of litigation as well as takes into account various costs and fees. The calculation then takes into account the time value of money at the appropriate discount rate. The Court has concluded that this figure, derived in the course of the settlement negotiations, is reasonable for the purposes of this factor of settlement approval. Because this figure is lower than the Settlement Fund disbursement (even after the deduction of attorneys' awards and fees, incentive awards, and other costs)—not to mention the value of the injunctive relief—this factor weighs strongly in favor of approval.

### 2. Risk of Continuing Litigation

Proceeding in this litigation in the absence of settlement poses various risks such as dismissal upon a dispositive motion, potentially potent defenses, increased costs and fees, and expiration of a substantial amount of time. Such considerations have been found to weigh heavily in favor of settlement. See Rodriguez v. West, 563 F.3d at 966; Curtis-Bauer v. Morgan Stanley & Co., Inc., No. 06-C-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). This is especially true here after taking into consideration the potential pitfalls of Plaintiffs' case, massive size of the Class, and substantial costs that would have to be incurred in order to disburse any de minimis monetary payments to Class members in the event of a litigation victory. As such, this factor weighs in favor of approval.

### 3. Risk of Maintaining Class Action Status

The notion that a district court could decertify a class at any time, Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982), is one that weighs in favor of settlement. Rodriguez v. West, 563 F.3d at 966. While this Court certified the Class in the Preliminary Approval Order—and is

9

United States District Court
For the Northern District of California

1    reaffirming that certification in this Order—this certification was for settlement purposes only. In

2    the absence of settlement, Netflix would likely vigorously oppose class certification and challenge

3    it before or during trial as well as on appeal. As such, the risk of losing class status in the absence

4    of settlement weighs in favor of approval.

5

6                              **4.  Amount Offered in Settlement**

7           The amount offered to the Settlement Fund for distribution totals $9,000,000.00 plus the

8    agreed-upon injunctive relief that seeks to undo and prevent the harm Plaintiffs have sought to

9    vindicate in bringing this class action suit. Class Counsel has valued the injunctive relief at

10   approximately $4,650,000.00. See Final Approval Motion at 19, 32 (explaining the arrival at this

11   figure). As noted, the value of the Settlement Agreement exceeds Class Counsel's total valuation of

12   the case in the absence of settlement, even after accounting for the requested fee awards.

13          The method of distribution of the cash settlement is pursuant to cy pres remedy of

14   distributing the funds to various institutions and organizations for the purposes of furthering

15   privacy research, protections, and education efforts. A cy pres remedy is a settlement structure

16   wherein class members receive an indirect benefit (usually defendant donations to a third party)

17   rather than a direct monetary payment." Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

18   The cy pres doctrine "allows a court to distribute unclaimed or non-distributable portions of a class

19   action settlement fund to the next best class of beneficiaries." Nachshin v. AOL, LLC, 663 F.3d

20   1034, 1036 (9th Cir. 2011) (internal quotation marks omitted). Cy Pres is employed where "proof

21   of individual claims would be burdensome or distribution of damages costly." Six Mexican

22   Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990)). A cy pres distribution is

23   reasonable where it "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the

24   underlying statutes, and the interests of the silent class members . . . ." Nachshin, 663 F.3d at 1036.

25

26

27

28   Case No.: 5:11-CV-00379 EJD
     ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL
     OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND
     INCENTIVE AWARD

United States District Court
For the Northern District of California

In <u>Lane v. Facebook</u>, the Ninth Circuit affirmed the approval of a <u>cy pres</u> settlement distribution similar to the one presently before this Court. That case, brought on behalf of a class of millions, involved claims of violations of the VPPA and other privacy statutes based on allegations that defendant Facebook had been gathering and disseminating the personal information of its members. 696 F.3d 811. The settlement agreement included a $9.5 million cash payout to a settlement fund which, after subtracting attorneys' fees and other awards and costs, would be used by Facebook to set up a new charity organization whose stated purpose would be to "fund and sponsor programs designed to educate users, regulators[,] and enterprises regarding critical issues relating to protection of identity and personal information online through user control, and the protection of users from online threats." <u>Id.</u> at 817. The Ninth Circuit concluded that this settlement warranted approval because, in addition to the $9.5 million pay-out being a "substantial" sum for this type of class action, "it would be burdensome and inefficient to pay the $6.5 million in <u>cy pres</u> funds that remain after costs directly to the class because each class member's recovery under a direct distribution would be <u>de minimis.</u>" <u>Id.</u> at 824–25 (internal quotation marks omitted). The <u>Lane</u> court also noted that the injunctive relief provided for under the settlement—which would terminate the complained-of activity—would provide reasonable and fair relief when coupled with the <u>cy pres</u> distribution. <u>Id.</u> at 825.

In <u>In re Google Buzz Privacy Litigation</u>, a court in this district approved a similar settlement agreement in a similar privacy-related putative class action. No. 10-00672-JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011). That case, brought on behalf of a class estimated to be in the tens of millions, included allegations that defendant Google Inc. had disseminated the private and personal information of users of its Google Buzz program in violation of federal privacy-related and stored communications statutes. <u>Id.</u> The settlement agreement in that case included an $8.5 million payout to be distributed to third-party <u>cy pres</u> recipients for the purpose of furthering consumer privacy protection and security efforts. <u>Id.</u> In approving the agreement, the <u>Google Buzz</u>

11

court found that the cy pres distribution would "provide[] an indirect benefit to the Class Members consistent with the Class Members' claims herein." Id. at *4.

Like in both Lane and Google Buzz, the present class action contains a very sizeable class amount. Given the sheer size of the Class (over 62 million Netflix members) each Class member would receive a de minimis payment in the event of a direct class cash payout. This amount would likely prove to be nullified by distribution costs. See Lane, 696 F.3d at 825. Unlike Lane, which essentially returned the cy pres funds back to the defendant for the purpose of having the defendant of set up a privacy-related organization, the present Settlement Agreement provides for distribution to already-existing third-party organizations.[1] See Notice of Proposed Cy Pres Award Recipients. The list of the cy pres recipient organizations—which the Court notes is similar to that of the Google Buzz cy pres distribution, see No. 10-00672-JW, 2011 WL 7460099, at *3—includes leading consumer and privacy advocacy groups and academic institutions. The organizations are located throughout the country so as to best benefit the far-reaching Class through outreach and education programs, litigation and public advocacy, development of privacy-protecting tools, and other methods.

Accordingly, the Court finds that the settlement amount—which includes the size of the cash distribution, the cy pres method of distribution, and the injunctive relief—to be a factor that weighs in favor of approval.

---

[1] Several judges on the Ninth Circuit have expresses disapproval of the Lane settlement, albeit in dissenting opinions. One of the reasons these judges took issue with that settlement involves that fact that the cy pres funds were to be used in part by the defendant to set up an organization to educate users about issues related to privacy and protection of their PII. See Lane v. Facebook, Inc., No. 10-16380, No. 10-16398, 2013 U.S. App. LEXIS 3935, at *4 (9th Cir. Feb. 26, 2013), denying petition for reh'g en banc 696 F.3d 811 (9th Cir. 2012) (Smith, J., dissenting) ("The 'charity' is simply a bespoke creation of this settlement."); Lane, 696 F.3d at 832 (Kleinfeld, J., dissenting) ("Every nickel of the remainder of the $9,500,000 . . . goes not to the victims, but to an entity partially controlled by Facebook and class counsel). The cy pres recipients in this case, unlike the settlement in Lane, are already-existing charitable organizations that provide educational as well as legal services related to online privacy issues and concerns.

12

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

United States District Court
For the Northern District of California

### 5. Extent of Discovery

Before settlement, discovery was on-going. Plaintiffs have propounded, and Netflix responded to, formal written discovery questions including interrogatories and requests for the production of documents. See Final Approval Motion Ex. C, Declaration of Jay Edelson ¶¶ 64. Class Counsel also engaged in informal discovery with Netflix's Vice President of Product Engineering and its Vice President of Marketing and Analytics. Id. These discovery efforts allowed Plaintiff's counsel to accurately valuate by compiling information ranging from the extent to which Netflix compiled and collected PII to the number of members that might fall into the Class. Id. ¶¶ 62–64. While formal discovery had not been completed, Class Counsel has established that they had acquired sufficient information to make an informed decision about the valuation of the case, potential obstacles and pitfalls, and likelihood of success so to as effectively engage in settlement negotiations. As such, this factor weighs in favor of settlement. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.").

### 6. Experience and Views of Counsel

The next factor the Court will consider is the experience and opinion of counsel. In evaluating this factor, the Court notes that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." Rodriguez v. West, 563 F.3d at 967 (citing In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995)). Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." (In re Omnivision Techns., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009) (quoting Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)). This factor weighs in favor of approval in light of Class Counsel's experience with these types of class

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

action cases rooted in issues involving online technology and consumer privacy. <u>See</u> Final

Approval Motion at 36–37. The Court also notes that Class Counsel was appointed as such by this

Court after a leadership fight among the seven plaintiffs' firms involved in this litigation. <u>See</u>

Order Appointing Interim Class Counsel, Docket Item No. 59.

### 7.  Presence of a Government Participant

Although no government entity was or is a party to this action, Netflix complied with the

notice requirement of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715 and provided the

requisite notice to government officials. <u>See</u> Pls.' Final Approval Mot. Ex. H. "Although CAFA

does not create an affirmative duty for either state or federal officials to take any action in response

to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will

raise any concerns that they may have during the normal course of the class action settlement

procedures." <u>Garner</u>, No. 08-CV-1365-CW, 2010 WL 1687832, at *14. The Court notes that the

Office Attorney General of the Texas sent a letter dated July 9, 2012, which expressed concerns

regarding the proposed settlement. <u>See</u> Letter from Wade Phillips, Assistant Attorney General of

Texas, to Hon. Edward J. Davila, Judge, Northern District of California (July 9, 2012) (on file with

the United States District Court, Northern District of California). This letter urged the Court not to

approve the settlement for similar reasons as do many of the class member Objections.[2] The Court

will address—and ultimately overrule—these Objections that contain such reasoning in Part IV of

this Order below.

---

[2] The letter expresses concerns with the <u>cy pres</u> nature of distribution, the fact that the individual class members do not receive monetary compensation, and that Class Counsel receives 25% of the $9,000,000.00 Settlement Fund as an award.

14

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL
OF <u>CY PRES</u> AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND
INCENTIVE AWARD

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### 8. Reaction of Class Members

The next factor the Court must consider is the reaction of the class to the proposed settlement. Hanlon 150 F.3d at 1026. The Settlement Class consists of some 62 million members. As of November 27, 2012, 2508 class members opted out of the settlement—approximately one in every 24,800 class members. See Exclusion List, Affidavit of Tore Hodne Ex. A. Approximately 110 class members filed objections with the Court[3]—approximately one in every 560,000 class members. Courts have considered relatively low numbers of objectors compared to the class size to weigh in favor of settlement. See, e.g., Churchill, 361 F.3d at 577 (affirming approval of class action settlement with 45 objections from a 90,000-person class); Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); In re TD Ameritrade Acc't Holder Litig., Nos. C 07–2852 SBA, C 07–4903 SBA, 2011 WL 4079226, at *7 (N.D. Cal. Sept. 13, 2011) (finding that reaction of a class was "positive" where there were "only 23 [objections] and less than 200 [opt-outs]" out of six million class members receiving notice); Browning v. Yahoo! Inc., No. 04-C-01463-HRL, 2007 WL 4105971, at *12 (N.D. Cal. Nov. 16, 2007) (concluding that a ratio of one objector for every 100,720 class members to be a "low" objection rate "even compared to objection rates in other, similar class action settlements"); Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). The Court agrees and concludes that this factor weighs in favor of settlement. See Lane, 696 F.3d 811; Google Buzz, No. 10-00672-JW, 2011 WL 7560099. Nevertheless, the Court will still consider and

---

[3] The properness of the filing of several objections is disputed by Plaintiffs. See Pls.' Reply Memo. in Supp. of Final Approval Mot. 1 n.1. For the purposes of this Order the Court has considered the substantive arguments of all objections, even those whose properness of filing is under dispute.

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

United States District Court
For the Northern District of California

1  address the substantive arguments raised by the Objections to the Settlement Agreement in Part IV

2  of this Order below.

3

4  **C. Notice**

5  Under Federal Rule of Civil Procedure 23(c), the parties need only provide notice

6  "reasonably certain to inform the absent members of the plaintiff class[.]" Silber v. Mabon, 18 F.3d

7  1449, 1454 (9th Cir. 1994) (internal quotation marks omitted). The notice need only "generally

8  describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

9  investigate and to come forward and be heard." Churchill, 361 F.3d at 575 (internal quotation

10  marks omitted); see also Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1351 (9th Cir. 1980)

11  ("Notice in a class suit may consist of a very general description of the proposed settlement.").

12  In this case the parties created and agreed to perform a Notice Plan, which was outlined in

13  the Preliminary Approval Order. See Settlement Agreement § 4; Preliminary Approval Order at 6–

14  8. This plan included providing class members with notice via email, creating and maintaining a

15  settlement website containing pertinent and detailed information regarding the settlement, and

16  notification via print and online publication. The Court finds that this plan has met the

17  requirements of Rule 23 and due process and that it has been fully and properly implemented by

18  the parties and the Settlement Administrator. Additionally, as noted, the Court has found that

19  notice had been properly given to the appropriate federal and state government officials in

20  accordance with CAFA.

21

22  **D. Attorneys' Fees**

23  Under the Settlement Agreement, Netflix has agreed to pay Class Counsel a fee award of up

24  25% of the Settlement Fund plus reimbursement of up to $25,000.00 of costs and expenses.

25  Settlement Agreement § 9.1. Accordingly, Class Counsel seeks attorneys' fees of $2,250,000.00

26

27

28

16

1    plus the $25,000.00 in costs and expenses. Final Approval Motion at 41. Class Counsel contends

2    that this fee request is appropriate under the percentage-of-the-fund analysis with the lodestar

3    cross-check.

### 1. Percentage-of-the-Fund

6    For common fund settlements, like the one before the Court, the Ninth Circuit has set a

7    "benchmark" fee award at 25% of the recovery obtained. Vizcaino v. Microsoft Corp., 290 F.3d

8    1043 (9th Cir. 2002); In re Bluetooth Headset Prods. Liab. Litig., 645 F.3d 935 (9th Cir. 2011). A

9    district court may depart from this benchmark after providing adequate explanation of "special

10   circumstances" so justifying. Id. at 942. "The Ninth Circuit has set forth a non-exhaustive list of

11   factors which may be relevant to the district court's determination of the percentage ultimately

12   awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of

13   work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5)

14   awards made in similar cases." Tarlecki v. bebe Stores, Inc., No. C 05-1777 MHP, 2009 WL

15   3720872, at *4 (N.D. Cal. Nov. 3, 2009) (citing Vizcaino, 290 F.3d at 1048–50).

16   The Court finds that Class Counsel's request for $2,250,000.00 meets the Ninth Circuit's

17   benchmark test and is appropriate under the present circumstances. The Court has taken into

18   account the complexity of this litigation, the novelty and risk of the claims and Plaintiffs' theory of

19   the case, potential potent defenses and weaknesses of the case, the favorable result Class Counsel

20   has achieved on behalf of Plaintiffs and the Class, and other factors in finding that no departure

21   from this benchmark is warranted. The Court also notes that this attorneys' award is similar to that

22   of similar settlements involving cy pres distribution. See, e.g., Google Buzz, No. 10-00672-JW,

23   2011 WL 7560099; Lane v. Facebook, Inc., No. C 08-3845 RS, 2010 WL 2076916 (N.D. Cal. May

24   24, 2010).

---

17

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL
OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND
INCENTIVE AWARD

### 2. Lodestar Comparison

"[W]hile the primary basis of the fee award remains the percentage method, the lodestar [method] may provide a useful perspective on the reasonableness of a given percentage award." Vizcaino, 290 F.3d at 1050. The "lodestar method" of calculating attorneys' fees "involves multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonably hourly rate." Staton, 327 F.3d at 965 (internal quotation marks omitted). The lodestar method is merely a "cross-check" to test the percentage figure's reasonableness under the circumstances of the case; the lodestar method's limitations lie in its creating a possible incentive for counsel to expend more hours than is necessary on a litigation or to delay settlement. Vizcaino, 290 F.3d at 1050 n.5.

Here, Class Counsel calculates attorneys' fees under the lodestar method to be $1,352,025 plus costs of $47,502.56. Final Approval Motion at 50. Counsel provides sufficient support for this calculation considering reasonable hours and rates. See id. at 50–52. Moreover, the Court agrees with Class Counsel's suggested lodestar multiplier of 1.66 which would equate attorneys' fees with the amount calculated under the percentage method. This multiplier figure is comparable to other multipliers in similar approved settlements. See, e.g., Google Buzz, No. 10-00672-JW, 2011 WL 7560099; Lane, No. C 08-3845 RS, 2010 WL 2076916. As such, the Court finds that the lodestar method of fee calculation confirms the reasonableness of the percentage-based calculation.

### E. Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977. In judging the appropriateness of incentive awards a district court should use "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. (internal quotation marks

2    omitted).

3         The Settlement Agreement provides that the Class Representatives and named Plaintiffs in

4    the Related Actions shall receive a total Incentive Award of $30,000 from the Settlement Fund.

5    Settlement Agreement § 9.2. The Agreement designates that "Class Counsel shall have the sole

6    responsibility of ensuring that the collective Incentive Award is distributed appropriately . . . ."

7    Id.§ 9.2. Class Counsel requests dividing this award as follows: $6000 to each of the four Class

8    Representatives and $3000 to each of the two named Plaintiffs in the Related Actions. Final

9    Approval Motion at 55. The Class Representatives and named Plaintiffs in this case assumed the

10   responsibilities and burdens of acting as representatives in this lawsuit, including expending time

11   participating in the litigation of the case with Class Counsel as well as facing public scrutiny

12   through media coverage of this high profile suit. Accordingly, the Court finds the incentive award

13   to be reasonable in light of the incentive award eligibility factors set forth in Staton.

14

15   **IV.     Objections to the Settlement Agreement and Awards**

16        The Court now turns to the substance of the Objections to the Settlement Agreement. The

17   Objectors bear the burden of proving any assertions they raise challenging the reasonableness of a

18   class action settlement. United States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990). The Court

19   iterates that the proper standard for approval of the settlement is whether it is fair, reasonable,

20   adequate, and free from collusion—not whether the class members could have received a better

21   deal in exchange for the release of their claims. See Hanlon 150 F.3d at 1027 ("Settlement is the

22   offspring of compromise; the question we address is not whether the final product could be prettier,

23   smarter or snazzier, but whether it is fair, adequate and free from collusion."). The Court also

24   reasserts that the proper notice procedures were followed in this case which allowed class members

25

26

27

28
     Case No.: 5:11-CV-00379 EJD
     ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL
     OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND
     INCENTIVE AWARD

to opt out of the Settlement Agreement and preserve their potential claims if they were unhappy with the results of the Agreement.

After reviewing the Objections the Court has determined that they are to be overruled.[4] The Court will provide an explanation of this determination with regard to some of the meritorious arguments raised in the Objections.

## A. Objections to the Cy Pres Nature of Funds Distribution

A majority of the Objections criticize the Settlement's use of the cy pres method of distribution of the Settlement Fund. Many of these Objections present philosophical and generalized attacks on the law providing for cy pres distribution in class action settlements. Similar Objections express disapproval that the charitable cy pres organizations, and not the class members, receive the monetary settlement funds. Objections of this nature find no support in the law; as the Court has explained, cy pres distribution has been found to be an appropriate relief mechanism. See, e.g., Lane, 696 F.3d at 819; Nachshin, 663 F.3d at 1036. Further, as noted, Plaintiffs have made a sufficient showing that the cost of distributing the settlement to the 62 million individual class members would exceed the size of the fund, thus making such a remedy cost-prohibitive and infeasible.

Other objections take issue with the process by which the cy pres recipients were selected, arguing that the individual class members should have been the ones making such decisions. Again, the law in this Circuit rejects this notion: "We do not require as part of that doctrine that settling parties select a cy pres recipient that the court or class members would find ideal. On the contrary, such an intrusion into the private parties' negotiations would be improper and disruptive

---

[4] Shortly before and after the Final Fairness hearing, there have been several requests to file and strike additional briefings in this matter. See Docket Item Nos. 231, 239, 243, 246, 253. Netflix's Motion to Strike, Docket Item No. 231, is GRANTED. Class Member Tanner's Motion for Leave to File Supplementary Memorandum, Docket Item No. 239, is DENIED. Netflix's Motion to file a Surreply, Docket Item No. 243, is DENIED. Netflix's Motion to Strike, Docket Item No. 246, is GRANTED. Class Counsel's Motion for Leave to File Instanter, Docket Item No. 253, is DENIED.

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

United States District Court
For the Northern District of California

to the settlement process." Lane, 696 F.3d at 820–21; see also Hanlon, 150 F.3d at 1027. In fact, contrary to the contentions of these types of Objections, Class Counsel set up an application system which included fielding input and suggestions from Class Members as to which organizations should be named as cy pres recipients.

A next line of argument raised by some of these Objections challenge the types of organizations selected as cy pres recipients. Some suggest that funds should be distributed to other charities for the purposes of helping the poor or needy. This argument does not take into account Ninth Circuit precedent, which requires that "[c]y pres distributions account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." Nachshin, 663 F.3d at 1036. On the opposite end of the spectrum, other Objections suggest there is not a sufficient nexus between the recipients and the claims alleged in this litigation. The Court rejects these arguments having found the cy pres recipients to be sufficiently related to the issues that form the core of this lawsuit. As noted, the organizations provide an array of consumer advocacy, protection, and education services in the field of online privacy. As such, the Court overrules these Objections.

## B. Objections Suggesting an "In-Kind" Form Relief

Several Objections suggest an alternative "in-kind" form of relief such as, among others, a reduction in Netflix member dues or a free month of Netflix services. These Objections have many flaws some of which include failing to demonstrate the economic feasibility of such a form of relief or failing to take into account class members who are no longer Netflix customers. But notwithstanding the weaknesses of these suggestions, the Court notes that these Objections merely suggest a different or arguably better settlement award rather than sufficiently calling into question the fairness or adequacy of the Agreement. Hanlon, 150 F.3d at 1027 ("Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this

21

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

1   possibility does not mean the settlement presented was not fair, reasonable or adequate.").

2   Accordingly, these types of Objections are overruled.

3

4   ## C. Objections to the Amount of the Settlement Fund

5       Several Objections call into question the amount of the Settlement Fund, claiming it is too

6   small. As explained above, the Court has found that the amount of the cash settlement to be fair

7   and adequate considering the strength of Plaintiffs' case, potential defenses, experience and

8   opinion of counsel, the settlement amount of similar class action litigations, and other factors.

9   Again, the Court has been instructed not to substitute its own judgment for that of the parties who

10  were the ones actually engaging in the negotiations. See Pac. Enterprises Sec. Litig., 47 F.3d at 378

11  ("Parties represented by competent counsel are better positioned than courts to produce a

12  settlement that fairly reflects each party's expected outcome in litigation.").

13

14  ## D. Objections to the Injunctive Relief

15      Another group of Objections takes issue with the injunctive relief provided for as part of the

16  Settlement Agreement. These Objections argue that the decoupling of information is reversible or

17  unconnected to the wrongs for which Plaintiffs sought relief in bringing this suit. Like with many

18  of the others, these Objections do not sufficiently show that the injunctive relief is inherently unfair

19  so as to disapprove of the Settlement Agreement. To the contrary, the injunctive relief seeks to

20  prevent Netflix from engaging in precisely the activity which underlies this class action. In Lane,

21  the Ninth Circuit approved of this type of injunctive relief despite objections suggesting that the

22  complained-of activity have already been ceased by the defendant in that case. See Lane 696 F.3d

23  at 825 (approving an injunction that required defendant Facebook to terminate the complained-of

24  Beacon program over objections that Beacon had already been terminated). As for the Objections'

25  suggestions that the decoupling is reversible, the Court notes that if it reversed the decoupling,

26

27

28  Case No.: 5:11-CV-00379 EJD
    ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL
    OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND
    INCENTIVE AWARD

United States District Court
For the Northern District of California

Netflix would be violating the Court-approved Settlement Agreement. As such, these Objections are overruled.

### E.  Objections to Attorneys' Fees and Incentive Wards

A sizeable group number of Objections challenge the Settlement Agreement's provisions with regard to attorneys' fees for Class Counsel and incentive awards to the Named Plaintiffs and Class Representatives. These objections amount to generalized quarrels with the law regarding such fees and awards in class action settlements, the processes used to calculate such fees, and whether the fees and awards are justified in light of Settlement Agreement. These arguments ignore the well-established Ninth Circuit law regarding attorneys' fees and incentive awards, which have been addressed above. Because the Court has found that the fees and awards are reasonable and proper under the law, these objections are rejected.

### V.    Conclusion and Order

For the foregoing reasons, the Court finds that the Settlement Agreement including the Award of Attorneys' Fees, Expenses, and Incentive Award, is fair, adequate, and reasonable; that it satisfies Federal Rule of Civil Procedure 23(e) and the fairness and adequacy factors of this Circuit; and that it should be approved and implemented as set out in this Court's Final Order and Judgment. The Final Approval Motion is therefore GRANTED.

Since this Order effectively disposes of the entire case, the Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

Dated: March 18, 2013

EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-CV-00379 EJD
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF CY PRES AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD

United States District Court
For the Northern District of California