**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____   )
                                         )
In re: The Home Depot, Inc., Customer  )  Case No.: 1:14-md-02583-TWT
Data Security Breach Litigation        )
                                         )
This document relates to:            )
                                         )
CONSUMER CASES             )
_____   )

**CONSUMER PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT**
**OF MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES AND**
**LITIGATION EXPENSE REIMBURSEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   ARGUMENT........................................................................................1

       A.    Home Depot's Argument that Plaintiffs' Lodestar Reflects
             Inefficiency and Duplication Is Not Supported by Facts......................1

             1.    Pre-Appointment Work Was Justified. ............................................4

             2.    The Post-Appointment Work Was Expressly Ordered by
                   the Court and  Efficiently Staffed. ...................................................5

             3.    There is No Basis to Reduce Plaintiffs' Lodestar. ..........................7

       B.    A Modest Upward Adjustment of the Lodestar is Justified..................9

             1.    The Settlement Was an Exceptional Result for the Class
                   in a Case with High-Level Risk. ....................................................9

             2.    Underlying State Law Claims Support a Multiplier. .....................11

             3.    The Fee is Reasonable Under a Common Fund Approach............13

       C.    The Requested Fee is Objectively Reasonable. ..................................14

III.  CONCLUSION.....................................................................................15

# TABLE OF AUTHORITIES

Cases

*ACLU of Ga. v. Barnes*,
  168 F.3d 423 (11th Cir. 1999) ..............................................................2

*Berry v. Volkswagen Group of America, Inc*.,
  397 S.W.3d 425 (Mo. banc 2013).........................................................12

*Carlson v. Lake Chelan Cmty. Hosp*.,
  75 P.3d 533 (Wash. Ct. App. 2003)......................................................12

*Davis v. Mutual Life Ins. Co. of New York*,
  6 F.3d 367 (6th Cir. 1993) ..................................................................12

*DeKalb Med. Ctr., Inc. v. Specialties & Paper Prod. Union No. 527 Health & Welfare Fund*, No. 1:13-CV-343-TWT,
  2015 WL 4231774 (N.D. Ga. July 13, 2015) .........................................1

*Eicher v. Mid Am. Fin. Inv. Corp*.,
  702 N.W.2d 792 (Neb. 2005) ..............................................................12

*First Citizens Bank & Trust Co. v. Hwy 81 Venture, LLC*,
  No. 1:10-CV-02126-JEC, 2012 WL 779894 (N.D. Ga. Mar. 6, 2012)..................2

*Florida Patient's Comp. Fund v. Rowe*,
  472 So. 2d 1145 (Fla. 1985) ...............................................................12

*In re Cendant Corp. Sec. Litig*.,
  404 F.3d 173 (3d Cir. 2005) .............................................................4, 7

*Johnston v. Comerica Mortg. Corp*.,
  83 F.3d 241 (8th Cir. 1996) ................................................................14

*Koontz v. Wells Fargo N.A*.,
  No. 2:10-CV-00864, 2013 WL 1337260 (S.D. W. Va. Mar. 29, 2013)...............12

*Mangold v. California Pub. Utilities Comm'n*,
  67 F.3d 1470 (9th Cir. 1995) ..............................................................12

*Norman v. Housing Authority of City of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) ............................................................3

*Northern Heel Corp. v. Compo Indus., Inc.*,
   851 F.2d 456 (1st Cir. 1988)................................................................12

*Rendine v. Pantzer*,
   661 A.2d 1202 (N.J. 1995) .............................................................12

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
   977 F.2d 47 (2d Cir. 1992) .............................................................12

*Webster Greenthumb v. Fulton Cty., Ga.*,
   112 F. Supp. 2d 1339 (N.D. Ga. 2000)..................................... 7, 8, 10

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (Cal. Ct. App. 2001).......................................12

*Wilson v. EverBank*,
   No. 14-CIV-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016)..........................14

# I.    INTRODUCTION

In this action, Class Counsel efficiently litigated and negotiated what is likely the most comprehensive retail data breach settlement in U.S. history. Yet, Home Depot argues that Plaintiffs' request for an $8.475 million fee award is excessive by downplaying Class Counsel's extensive work that led to the settlement and offering conclusory, unsupported statements about billing "inefficiencies" and unnecessary work.[1] But Class Counsel's frontloaded efforts are the very reason Class Counsel was able to negotiate an early settlement that sets the gold standard for retail data breach cases.[2] Based on time committed through July 31, 2016, Plaintiffs' fee request amounts to a modest 1.46 multiplier of their lodestar that is well within the range of reasonableness and will continue to decline as Counsel finalizes the Settlement. (*See* Siegel Dec., ¶ 9.) Plaintiffs' fee request is also reasonable under a percentage of the fund approach, as the requested fee amounts to a small fraction of the total benefit conferred on the Class.

# II.    ARGUMENT

## A.    Home Depot's Argument that Plaintiffs' Lodestar Reflects Inefficiency and Duplication Is Not Supported by Facts.

This Court has recognized that when objecting to a motion for attorneys' fees, "[p]arties 'opposing fee applications have obligations, too.'" *DeKalb Med.*

---

[1] Objectors Connors, Miorelli, Teleos and Daley generally contest the fee as excessive compared to the classwide relief. To the extent not addressed in Consumer Plaintiffs' Reply in Support of Final Approval (ECF No. 245), these objections are addressed here.

[2] In support of this reply, Plaintiffs submit the Declaration of David J. Worley as Exhibit 1 ("Worley Dec.") and the Declaration of Norman E. Siegel as Exhibit 2 ("Siegel Dec.").

*Ctr., Inc. v. Specialties & Paper Prod. Union No. 527 Health & Welfare Fund*, No. 1:13-CV-343-TWT, 2015 WL 4231774, at *3 (N.D. Ga. July 13, 2015) (quoting *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)). Indeed, "[t]hey must provide 'objections and proof concerning hours that should be excluded' which are 'specific and reasonably precise.'" *Id.* (internal punctuation omitted). Far from providing anything "specific" or "reasonably precise," Home Depot offers bare, conclusory observations about supposed inefficiencies and duplication in Plaintiffs' staffing and billing devoid of competent supporting evidence.

For example, Home Depot asserts that "Plaintiffs seek fees for multiple attorneys working on the same submissions and issues, attending the same meetings, and for repeatedly consulting or conferring with one another." (ECF No. 233 at 11.) But Home Depot does not point to specific "submissions" or "issues," it does not identify which meetings were allegedly overstaffed, and it does not explain even generally how "repeatedly consulting or conferring with one another" was not part of the good faith prosecution of this case.

These conclusory allegations, which are littered throughout Home Depot's Objection, do not constitute "specific" and "precise" proof concerning hours that should be excluded. As this Court has recognized time and again: "Mere argument in a brief is not evidence." *First Citizens Bank & Trust Co. v. Hwy 81 Venture, LLC*, No. 1:10-CV-02126-JEC, 2012 WL 779894, at *6 (N.D. Ga. Mar. 6, 2012). In fact, Home Depot's bare assertions violate this Court's local rules, which

mandate that "[i]f allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law." Local Rule 7.1(A)(1). Home Depot's unsupported allegations – meaning most of its brief – should not be considered.

Unable to provide specific and precise proof, Home Depot resorts to general proclamations about Plaintiffs' billing practices that have no basis in fact. For example, Home Depot claims that "major case activities were typically staffed by multiple Plaintiffs' counsel (presumably billing at 'partner' rates), yet it appears Plaintiffs made no effort to reduce such redundancies in their Fee Request." (ECF No. 233 at 15.) But instead of providing any support for this statement, Home Depot deceptively reorders a quotation from *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988), to suggest that the Court has an obligation to deduct hours whenever multiple attorneys are involved. Specifically, Home Depot asserts: "For example, 'the district court is charged with deducting for redundant hours,' which 'occur where more than one attorney represents a client.'" (ECF No. 233 at 10) (citing *Norman*, 836 F.2d at 1301). But the full paragraph Home Depot cites to actually reads:

> In making adjustment to hours claimed, the district court is charged with deducting from redundant hours. Redundant hours generally occur where more than one attorney represents a client. *There is nothing inherently unreasonable about a client having multiple attorneys*, and they may all be compensated if they are not *unreasonably* doing the same work and are being compensated for the distinct contribution of each lawyer.

*Norman*, 836 F.2d at 1301 (emphasis added).

Thus, even under its cited authority, Home Depot cannot claim inefficient and redundant hours by pointing to the number of attorneys that worked on the case in the absence of any evidentiary support that such work was *unreasonable*.

Moreover, Home Depot ignores the fact that Plaintiffs' counsel *did* take extensive efforts to review submitted time and deduct hours for duplicative and unauthorized work. (ECF 227-1 at 19-20.) Entries that did not comply with the billing guidelines or reflected duplicative or unauthorized time were cut at the discretion of Lead Counsel. (*See* Siegel Dec., ¶ 4.) Lead Counsel has dutifully fulfilled its obligations in this litigation to ensure "that unnecessary expenditures of time and expense are avoided." (ECF No. 60 at 3, ¶ 4.)

### 1. Pre-Appointment Work Was Justified.

Pre-appointment time amounts to $1,762,228, approximately 30% of the total lodestar. In deciding "who is entitled to attorneys' fees for pre-appointment work, the court's only consideration must be whether or not the attorney's work provided benefits to the class." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005). Home Depot argues that Plaintiffs' pre-appointment hours calculation should be discounted to reflect the "inherent inefficiency" in pre-appointment work in an MDL proceeding. (ECF No. 233 at 11.) Home Depot misses the mark for multiple reasons. First, eliminating pre-appointment time would fail to compensate the firms that undertook efforts to immediately investigate the case, research legal claims, vet potential named plaintiffs and file cases across the country. These efforts provided a benefit to the Class because

Lead Counsel was able to use this work product (including pre-vetted plaintiffs) to prepare the Consolidated Complaint. Second, to the extent there was duplication in pre-appointment work, Lead Counsel can adequately address that concern in allocating attorneys' fees among Plaintiffs' counsel. For example, Lead Counsel may compensate pre-appointment time at a multiplier less than 1 to reflect the fact that multiple firms undertook independent investigations of the breach.[3] This ensures that the efforts of counsel do not go uncompensated, while at the same time accounting for any pre-appointment duplication of effort.

### 2. The Post-Appointment Work Was Expressly Ordered by the Court and Efficiently Staffed.

Home Depot further argues that Plaintiffs' hours should be discounted for supposed "inefficient and unnecessary post-appointment work." (ECF No. 233 at 12.) In support, Home Depot points to the "pre-discovery" efforts undertaken by Plaintiffs' counsel, which Home Depot contends was a "needless effort" that should have waited until after a ruling on Home Depot's motion to dismiss. (*See id* at 14.) But at the May 27, 2015, status conference the Court expressly *ordered* the parties to undertake these very pre-discovery efforts:

> THE COURT: As far as the discovery is concerned, I agree with the Plaintiffs that serious preliminary discussions about discovery need to begin immediately and not wait until after I have ruled on any motions to dismiss. In AndroGel it took months to negotiate the search terms and the scope of discovery. I want those discussions to begin immediately,

---

[3] The corresponding increased multiplier that would apply to post-appointment time is still is well within the range of reasonableness, as discussed *infra*. If no pre-appointment time is considered, the requested fee is still reasonable, representing a multiplier of 2.10.

not wait until I have ruled on a motion to dismiss. So if the Plaintiffs succeed in going forward in this case, the discovery will be ready to be delivered if not immediately very quickly. So I do want those discussions to begin. And I want a report back at the next status conference of what's been agreed upon; what's disagreed upon; what, if any, process has been started to identify discovery that's going to be requested on both sides; what's going to be agreed to be produced; what's not going to be agreed to be produced; where objections are; where problems are.

*See* Transcript of May 27, 2017 Status Conference (pp. 21-22), Siegel Dec. Ex. A.

In light of the Court's clear mandate, Home Depot's argument that Plaintiffs violated the local rules by "insist[ing] that the parties draft and negotiate a number of discovery-related orders and meet and confer concerning Plaintiffs' 'preliminary' document requests" is disingenuous. (ECF No. 233 at 12.) Perhaps unsurprisingly given its admitted reluctance to comply with the Court's order,[4] the numerous meet and confer sessions that Home Depot now complains of were the direct result of Home Depot's unwillingness to meaningfully engage in *any* pre-discovery matters, despite this Court's instruction to the contrary. As extensively detailed in the attached Declaration of David Worley, Home Depot intentionally prolonged nearly every aspect of the pre-discovery process by refusing to respond to Plaintiffs' proposals, showing up to meet and confers unprepared to discuss

---

[4] In its Objection, Home Depot makes a number of gratuitous statements that highlight its ignorance of – or worse, contempt for – the Court's order. For example, Home Depot asserts that: "Plaintiffs also served 126 document requests and insisted on holding numerous calls to engage in premature negotiations concerning potential objections and responses *notwithstanding the fact that a motion to dismiss was pending*" and "Plaintiffs served preservation notices to at least eleven third parties, *prompting further unnecessary discussions*." (ECF No. 233 at 7) (emphasis added.)

agenda items, and objecting to standard requests regarding ESI protocol and the identification of custodians. *See generally*, Worley Dec. And, in almost every instance Home Depot had more attorneys participate in pre-discovery matters than did counsel for Consumer Plaintiffs, who often limited their participation to a single lawyer. (*See, e.g.*, *id.*, ¶ 9.)

Home Depot's claim that Plaintiffs have not identified "a single concrete benefit" of these efforts is also misguided. (ECF No. 233.) The efforts of Plaintiffs' counsel to aggressively and thoroughly pursue discovery from Home Depot provided Plaintiffs significant leverage in settlement negotiations. (*See* Siegel Dec., ¶ 10.) In Lead Counsel's view, a primary reason why this case settled was that Home Depot did not want damaging internal documents reflecting its poor data security practices to become public knowledge. Thus, Home Depot's looming discovery obligations were undoubtedly a major factor in the early resolution of this case—clearly a substantial "concrete benefit" to the Class. (*See id*.)

### 3. There is No Basis to Reduce Plaintiffs' Lodestar.

Deriving its authority from *Webster Greenthumb v. Fulton Cty., Ga.*, 112 F. Supp. 2d 1339, 1350-51 (N.D. Ga. 2000), Home Depot argues for an "across-the-board" 25% reduction in Plaintiffs' lodestar. But in *Webster*, this Court *declined* to implement an across-the-board reduction and instead reduced hours on a task-by-task basis. While no reduction is appropriate in this case, an across-the-board reduction is clearly unwarranted. In *Webster*, this Court declined to implement an across-the-board reduction because, among other reasons, "any such percentage

7

reduction would necessarily be somewhat more arbitrary than a by-the-hours analysis" especially where the Court had access to "detailed summary breakdowns" regarding hours spent on various tasks. *Id*. at 1351. Likewise here, any across-the-board reduction would be completely arbitrary, especially in light of the fact that this Court has before it the entire billing record of Plaintiffs' Counsel including the time eliminated based on Lead Counsel's billing judgment.

Home Depot's apparent authority for the 25% reduction is the *Target* case, where Plaintiffs' counsel sought $6.6 million in fees, an amount lower than their total lodestar of $8.9 million. In *Target*, a significant portion of the lodestar – about 43% – resulted from *pre*-appointment time of nearly $3.8 million generated by 48 separate law firms (compared to $5.1 million post-appointment), most of which involved vying for leadership. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, Doc. No. 483 at 24, ¶ 61; Doc. 483-3 (D. Minn.) (detailing lodestar for 48 separate firms). Because the pre-appointment time did not confer a significant benefit on the Class, Plaintiffs' counsel exercised its discretion to seek reimbursement for only its post-appointment time of $5.1 million with a multiplier of 1.29, equating to approximately $6.6 million. The *Target* court found this eminently reasonable. *See Target*, 2015 WL 7253765, at *3 (D. Minn. Nov. 17, 2015). By contrast here, Counsel's pre-appointment lodestar of $1,762,228 was only 30% of their total lodestar of $5,797,306. (Siegel Dec., ¶ 5.) Thus, unlike *Target*, the vast majority of time ($4,035,078) was incurred post-appointment.

**B.    A Modest Upward Adjustment of the Lodestar is Justified.**

As set forth in their motion, the 12 *Johnson* factors support Plaintiffs' application, including the fact that the settlement was overwhelmingly supported by the class and only four class members objected to the requested fee. (ECF No. 227-1 at 22-40.) Home Depot's arguments do not warrant a different finding.

**1.    The Settlement Was an Exceptional Result for the Class in a Case with High-Level Risk.**

Home Depot argues that a modest upward adjustment is not warranted in this case because the results were not "out of the ordinary" and Plaintiffs "do not identify any specific case" demonstrating that this settlement compares favorably to other data security breach cases. (ECF No. 233 at 16.) To the contrary, Plaintiffs attached as an exhibit to the Siegel Declaration in Support of Final Approval a summary of data breach settlements to provide the Court with a useful baseline for results in comparable litigation. (ECF No. 226-2 at 15-27.) Notably, this Settlement is the *only settlement on record* that addresses every possible harm resulting from a data breach, including: (a) a settlement fund large enough to reimburse Class Members for any type of out-of-pocket losses resulting from the breach; (b) reimbursement for time spent dealing with the repercussions of the breach; (c) 18 months of identity theft monitoring available to every Class Member who had his or her payment card data compromised; and (d) injunctive relief requiring Home Depot to significantly upgrade its data security practices and maintain those practices for years into the future. While Home Depot tries to equate this

Settlement with *Target*, the two are vastly different. The *Target* settlement involved more class members (110 million), a smaller fund ($10 million) and no form of identity theft monitoring to protect against future harm.

Moreover, as Home Depot has repeatedly pointed out, a number of data breach cases have been dismissed in their entirety at the pleading stage, resulting in no recovery to the class. In fact, throughout its Objection, Home Depot argues that Consumer Plaintiffs here did not have a viable case, asserting Plaintiffs' case would not have proceeded past the motion to dismiss stage because the Plaintiffs' suffered no injury and lacked standing to sue. (ECF No. 233 at 5.)

While Plaintiffs strongly disagree with this bleak assessment, Home Depot's argument cuts against its claim that the result for the Class was unremarkable. If, as Home Depot contends, Consumer Plaintiffs did not have standing to pursue a case, then Lead Counsel's ability to negotiate the most comprehensive data breach settlement in U.S. history was certainly out of the ordinary given Home Depot's prediction that dismissal was imminent.[5]

Home Depot also tries to downplay the amount of work necessary to achieve settlement[6] and makes the gratuitous argument that the Settlement "provid[es]

---

[5] Home Depot cites *Webster Greenthumb* for the proposition that an upward adjustment is not appropriate here because the results obtained "are not out of the ordinary, unusual, or rare." ECF No. 233 at 16. But in *Webster*, the Court declined to apply a lodestar multiplier because the dispositive issues in that case "simply [stood] on the solid ground of Supreme Court and Eleventh Circuit precedent." *Webster*, 112 F. Supp. 2d at 1377. As Home Depot argues, no such "solid ground" existed here.

[6] For example, Home Depot argues that "88 named plaintiffs [were not] necessary when

benefits similar to those Home Depot committed to provide to its customers in the days immediately following press reports of the breach." (ECF No. 233 at 18.) But Home Depot wildly overstates its benevolence – it did not commit to providing a $13 million cash fund and injunctive relief in the immediate aftermath of the breach. To the extent Home Depot is referring to its offer of one year of AllClear ID *credit* monitoring, Plaintiffs have already discussed at length how that product is ineffective in response to this type of breach, was not made available through a court-approved notice program, and does not offer the same protections offered as part of the Identity Guard monitoring services available as part of this Settlement. (ECF No. 245 at 8-11.) This Settlement represents the most comprehensive data breach settlement in history and constitutes an exceptional result for the Class.

## 2. Underlying State Law Claims Support a Multiplier.

Home Depot takes issue with several cases cited by Plaintiffs in favor of applying a multiplier because the fee award was calculated under a common fund approach with a lodestar crosscheck. (ECF No. 233 at 21-22.) As explained *infra*, these cases are inapposite because Plaintiffs' fee request is alternatively reasonable under a common fund approach. Moreover, Home Depot ignores the fact that

each plaintiff alleged his claims were typical of the claims of the alleged class." (ECF No. 233 at 16.) Home Depot cannot argue on one hand that Plaintiffs do not have injury sufficient to confer standing and on the other fault Plaintiffs' counsel for undertaking an exhaustive vetting process intended to find representative plaintiffs with varying degrees of injury. Not to mention that Home Depot moved to dismiss state-law claims where there was not a named plaintiff residing in that given state, incentivizing Plaintiffs' counsel to include named Plaintiffs from as many jurisdictions as possible.

Plaintiffs also have a legal basis to apply a multiplier under the laws of many states where they asserted claims resolved through this Settlement. Indeed, it is well-established that "[w]here a plaintiff moves for attorney fees on the basis of success on a state law claim, a federal court is to follow state law regarding both a party's right to fees and in the method of calculating fees." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477-79 (9th Cir. 1995) (affirming district court's use of a contingency-fee multiplier and holding that calculation of attorneys' fees is bound up in substantive state right).[7] Here, Plaintiffs brought claims under state consumer protection statues in 51 U.S. jurisdictions. (ECF No. 93.) Like California, many of these states expressly approve multipliers in calculating attorneys' fee awards in contingency cases.[8] Thus, application of relevant state law

---

[7] *See also Northern Heel Corp. v. Compo Indus., Inc*., 851 F.2d 456, 475 (1st Cir. 1988) (method of calculating fee award substantive); *Riordan v. Nationwide Mut. Fire Ins. Co*., 977 F.2d 47, 53 (2d Cir. 1992) (same); *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 382-83 (6th Cir. 1993) (permitting application of contingency enhancement based on state's authorization of the enhancement).

[8] *See, e.g*., *Berry v. Volkswagen Group of America, Inc*., 397 S.W.3d 425, 432-34 (Mo. banc 2013) (approving lodestar multiplier of 2.0 under Missouri's consumer protection statute); *Koontz v. Wells Fargo N.A*., No. 2:10-CV-00864, 2013 WL 1337260, at *24 (S.D. W. Va. Mar. 29, 2013) (applying West Virginia law to permit lodestar multiplier under state's consumer protection act); *Eicher v. Mid Am. Fin. Inv. Corp*., 702 N.W.2d 792, 806-07 (Neb. 2005) (approving multiplier under Nebraska's Consumer Protection Act); *Carlson v. Lake Chelan Cmty. Hosp*., 75 P.3d 533 (Wash. Ct. App. 2003) (upholding trial court's award of 1.5 multiplier); *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 255 (Cal. Ct. App. 2001) (under California law "[m]ultipliers can range from 2 to 4 or even higher."); *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985) (approving multiplier up to 3 in contingent fee cases); *Rendine v. Pantzer*, 661 A.2d 1202, 1231 (N.J. 1995) (approving "contingency enhancements in fee-shifting cases . . . between five and fifty-percent of the lodestar fee").

provides the Court with an additional and independent legal basis to apply a modest multiplier to Plaintiffs' fee request.

### 3. The Fee is Reasonable Under a Common Fund Approach.

Home Depot next grossly understates the value of the settlement and the benefit conferred on the Class to argue that Plaintiffs' fee request is not alternatively reasonable under a common fund approach.

As explained in Plaintiffs' motion, the monetary benefits of this Settlement alone include a $13 million fund, plus $6.5 million for 18 months of Identity Guard services, plus the separate costs of notice and administration (approximately $750,000) (ECF No. 226-2, ¶ 19), plus Plaintiffs' costs and expenses of $166,925.19, plus any attorneys' fees awarded by the Court. Home Depot points to what it argues are modest documented claims from the *Target* settlement to suggest documented claims will be paid at the same rate here. (ECF No. 233 at 24-25.) But Lead Counsel structured this settlement differently. Under the terms of this Settlement, Home Depot will pay a *minimum* of approximately $5.75 million to class members making documented claims – more than 10 times the amount Home Depot claims was distributed in *Target*. (*See* Siegel Dec., ¶¶ 6-8.) Similarly, identity theft monitoring offered through Identity Guard has a market value of $180 per enrollee, and the injunctive relief provides court-compelled restructuring of Home Depot's data management, which was designed by experts in the field. (*See* Declarations of Ponemon and Jorgenson, ECF Nos. 227-4 and 227-5.)

Moreover, Home Depot's argument that the attorneys' fee request should not

be included as part of valuing the settlement is the minority view. *See, e.g.*, *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); Manual for Complex Litig. § 21.75 (4th ed. 2008) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class."). Even so, Home Depot's failure to factor in the market value of Identity Guard monitoring and injunctive components of the Settlement undermines its understated value of the benefit conferred—it is well established that "courts rightly consider the value of injunctive and monetary relief together in assessing whether a class action settlement provides sufficient relief to the class." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *11 (S.D. Fla. Feb. 3, 2016).[9] Taking into account the monetary *and* non-monetary value of the Settlement, Plaintiffs' fee request is only a small percentage of the overall benefit to the Class.

### C.    The Requested Fee is Objectively Reasonable.

As part of this Settlement, Home Depot agreed to pay a "reasonable" fee. In determining whether the requested fee of $8.475 million is objectively reasonable, Class Counsel offers two additional reference points for the Court's consideration.

---

[9] Home Depot acknowledged as much in its Reply in Support of Final Approval, specifically stating that: "Home Depot has expended significant resources to implement the security measures included in the injunctive relief component of the Settlement, and these measures will provide a concrete benefit to all members of the Settlement Class. . . . The Complaint alleges that Home Depot failed to comply with industry standards, and Home Depot has now agreed to have those standards incorporated into a binding court order." (ECF No. 244 at 25.)

First, Home Depot has acknowledged that through May 1, 2016, it has spent *$263 million* to investigate the breach, provide credit monitoring services, increase call center staffing, and pay legal and professional services. *See* Siegel Dec., ¶¶ 11-12; Ex. B. In a very tangible way, Class Counsel delivered these same services to the Class resulting in a benchmark data breach settlement in which Class Counsel seeks about 3% of what Home Depot has spent on these same services.

Second, Class Counsel's $8.475 million fee request is not a random number generated from whole cloth, but rather a figure proposed by an experienced mediator who independently determined that amount was fair and reasonable. Specifically, Jonathan Marks, who oversaw five months of negotiations between the parties on the substantive settlement terms, concluded: "My Mediator's Proposal reflects my judgment about a fair compromise on this issue, taking into account the various substantive points made by each side about attorneys' fees" as well as "the negotiation history." (Siegel Dec., ¶ 14; Ex. C.) Home Depot accepted the mediator's proposal. (*See id.*, ¶ 15; Ex. C.) Thus, although Home Depot retained the right to oppose the requested fee, it does so with the record that it previously endorsed the mediator's assessment that a fee "up to $8,475,000" was a "fair compromise" of the dispute now before this Court. (*See id.*)

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Lead Counsel, on behalf of all Plaintiffs' Counsel and the Settlement Class, respectfully requests that the Court approve their fee request, reimbursement of reasonable expenses and services awards.

Dated: August 5, 2016

Respectfully Submitted,


_/s John R. Bevis_____

David J. Worley
James M. Evangelista
**HARRIS PENN LOWRY, LLP**
400 Colony Square
1201 Peachtree Street, NE, Suite 900
Atlanta, GA 30361
Telephone: 404-961-7650
Fax: 404-961-7651
david@hpllegal.com
jim@hpllegal.com

Roy E. Barnes
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
Fax: 770.227.6373
roy@barneslawgroup.com
bevis@barneslawgroup.com


*Consumer Co-Lead Counsel*
*and Steering Committee Members*
John A. Yanchunis, Sr.
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N Franklin Street
Tampa, FL 33602
Telephone: 813-223-5505
Fax: 813-223-5402
jyanchunis@forthepeople.com

*Consumer Liaison Counsel*
*and Steering Committee Members*
Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: 816-714-7100
Fax: 816-714-7101
siegel@stuevesiegel.com
vahle@stuevesiegel.com


*Consumer Co-Lead Counsel*
*and Steering Committee Member*

*Consumer Co-Lead Counsel*
*and Steering Committee Members*

Tina Wolfson
**AHDOOT AND WOLFSON, P.C.**
1016 Palm Avenue
West Hollywood, CA 90069
Telephone: 310-474-9111
Fax: 310-474-8585
twolfson@ahdootwolfson.com

*Consumer Plaintiffs'*
*Steering Committee Member*

William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma, OK 73120
Telephone: 405-235-1560
Fax: 405-239-2112
wbf@federmanlaw.com

*Consumer Plaintiffs'*
*Steering Committee Member*

Howard T. Longman
**STULL STULL & BRODY**
6 East 45th Street
New York, NY 10017
Telephone: 212-687-7230
Fax: 212-490-2022
hlongman@ssbny.com

*Consumer Plaintiffs'*
*Steering Committee Member*

Daniel C. Girard
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: 415-981-4800
Fax: 415-981-4846
dcg@girardgibbs.com

*Consumer Plaintiffs'*
*Steering Committee Member*

Gary S. Graifman
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Telephone: 201-391-7600
Fax: 201-307-1086
ggraifman@kgglaw.com

*Consumer Plaintiffs'*
*Steering Committee Member*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I served the above and foregoing on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which automatically sends a copy to all counsel of record.

This 5th day of August, 2016.

*/s John R. Bevis*
John R. Bevis