Andrew Dean Brooks
4642 Altadena Ave.
San Diego, CA 92115
andrewdbrooks@cox.net
(619) 265-5998

August 3, 2016

| | |
|---|---|
| U.S. District Court for the Northern District of Georgia<br>Richard B. Russell Federal Building<br>and United States Courthouse<br>75 Ted Turner Dr., SW<br>Atlanta, GA 30303-3309 | By US Mail |
| Norman E. Siegel<br>Barrett J. Vahle<br>STUEVE SIEGEL HANSON LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112 | By US Mail and Courtesy Email to<br>siegel@stuevesiegel.com<br>and<br>vahle@stuevesiegel.com |
| Roy E. Barnes<br>John R. Bevis<br>THE BARNES LAW GROUP, LLC<br>31 Atlanta Street<br>Marietta, GA 30060 | By US Mail and Courtesy Email to<br>Roy@barneslawgroup.com<br>and<br>Bevis@barneslawgroup.com |
| Phyllis B. Sumner<br>S. Stewart Haskins<br>KING & SPALDING LLP<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309 | By US Mail and Courtesy Email to<br>psumner@kslaw.com<br>and<br>psumner@kslaw.com |

Re:   *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. 1:14-md-02583

Dear Clerk of the Court and Counsel:

I believe I am member of the putative class in the above-referenced matter, both because I frequently shop at Home Depot, often using the self-checkout lanes, and because on July 27, 2016, I received an email from the claims administrator (attached as **Exhibit A** hereto) providing notice of the proposed settlement of this matter and advising me: "Unless you exclude yourself, you will be bound by the Court's decisions and you will give up your right to sue Home Depot for the legal

1

claims resolved by this Settlement. If you want to keep your right to sue Home Depot for the legal claims resolved by this Settlement, you must exclude yourself by July 18, 2016. If you stay in the Settlement, you may object to it by July 18, 2016." *See* **Exhibit A**.

With this letter I seek to object that notice to the class violates the requirements of Federal Rule of Civil Procedure 23 and is constitutionally deficient. As a member of the putative class, I first received notice of this action and its proposed settlement in an email from the claims administrator sent to me on July 27, 2016, in which the claims administrator first informed me that the deadline to object or opt out of the class-action settlement was July 18, 2016. See **Exhibit A**. I submit that notice dispatched only after the deadline for objecting or opting out deprives members of the class, such as me, of due process of law. I believe this was the first notice I received of this action.

Given that I received no notice until after the time for objecting had run, I respectfully ask the Court for leave to file this objection out of time. I am a member of the California bar in private practice. I write solely on behalf of myself and not on behalf of any client or other person. I have not previously filed an objection to any class-action settlement, nor have I represented objectors.

After receiving the settlement notice in this matter, I have consulted with Eric Alan Isaacson, a member of the California bar and a personal friend, about the logistics and basis for filing an objection in this matter. I have neither retained Mr. Isaacson to represent me nor entered into any agreement concerning attorneys' fees. I do reserve the right to retain Mr. Isaacson in the future, including in order to prosecute an appeal if that should become necessary. I understand Mr. Isaacson currently represents objectors in two pending matters: Chieftain Royalty Co. v. Enervest Fund XIII-A LP, et al., Nos. 16-6022 & 16-6025 (10th Cir.), and in In re BioScrip Inc. Sec. Litig., No. 13-cv-6922-AJN (S.D.N.Y.).

The claims administrator's email of July 27, 2016, clearly provided me with inadequate notice of the settlement of this matter. "'The fundamental requisite of due process of law is the opportunity to be heard.'" *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U. S. 385, 394 (1950). "Notice is provided in class action settlements to give members of the class the opportunity to object to the proposed settlement" of a class action." *White v. State of Ala.*, 74 F. 3d 1058, 1066 n.27 (11th Cir.1996). Class members whose rights are affected by a proposed settlement are entitled to "receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814 (1985) (quoting *Mullane*, 339 U.S. at 314-

2

315). In addition, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also Ortiz v. Fibreboard Corp.*, 527 US 815, 848 (1999) (quoting *Shutts*); *Eisen v. Carlisle & Jacquelin*, 417 U. S. 156, 174-175 (1974) ("notice and an opportunity to be heard [are] fundamental requisites of the constitutional guarantee of procedural due process"); *Hansberry v. Lee,* 311 US 32, 40 (1940) ("notice and opportunity to be heard are requisite to the due process which the Constitution prescribes").

Notice disseminated only after the time for objecting or opting out of a class-action settlement is manifestly deficient. Had I received timely notice, moreover, I could have prepared a detailed objection to the proposed settlement, to class counsel's application for attorneys' fees, and to the payment of incentive awards to class members.

It appears the proposed settlement primarily benefits class counsel and the Settlement Class Representatives rather than the class whose interests they are supposed to represent. The settlement creates a $13 million fund, of which $8.475 million will be consumed paying attorneys' fees and expenses, leaving only about $4.5 million for members of the injured class. The provision of "free" credit monitoring services is illusory, and of minimal value. The proposed settlement is unfair to the class.

The proposed award of attorneys' fees is grossly excessive. Class Counsel claim a disproportionate 65% of the $13-million common-fund recovery in this case by asking the Court to apply lodestar methodology to calculate their attorneys' fees. Although most circuits permit attorneys' fee awards to be calculated using either a percent-of-fund or lodestar methodology, the Eleventh Circuit does not. It holds "that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F. 2d 768, 774 (11th Cir. 1991).

Where, as here, a district court exercises diversity jurisdiction over claims arising under state law, an award of attorneys' fees might instead be governed by the law of the state in which the district court sits. But Georgia's Supreme Court follows Eleventh Circuit precedent on point, "hold[ing] that when assessing attorney fees in a common fund case, a percentage of the fund analysis is the preferred method of determining these fees, unless unusual circumstances would make its use unfair or impractical." *Friedrich v. Fidelity N.B.*, 247 Ga. App. 704, 545 S.E.2d 107, 109 (Ga. App. 2001).

The precedents have established a "benchmark" of 25%, which may be adjusted in accordance with the individual circumstances of each case, but which is generally subject to "an upper limit of 50%." *Camden I*, 946 F.2d at 775. The "majority of common fund fee awards fall between 20% to 30% of the fund." *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999); *see also Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) ("majority of fees in these cases are reasonable where they fall between 20-25% of the claims"). The requested award departs wildly from the benchmark, exceeding even the upper limit of 50%.

Even if a lodestar methodology were appropriate, the requested fee would still be grossly excessive. The attorneys' claimed lodestar comes to $5,454,978.50. DE227-1 at ECF p.27 (fee brief). Yet they ask for more than $3,000,000 more, which is clearly too much. The Supreme Court holds the unenhanced lodestar affords presumptively fair and adequate compensation to attorneys for taking a matter, such as this one, on a contingent-fee basis. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010); *City of Burlington v. Dague*, 505 U.S. 557, 562 (2006); *see In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 731 (2d Cir. 1992) ("in the context of attorneys' fee awards, we have demanded 'specific reasons' when a district court departs from the lodestar figure, which is 'strongly presumed to be reasonable'") (citations omitted), *on remand* 800 F.Supp. 1091, 1095-96 (E.D.N.Y. 1992) (awarding unenhanced lodestar from a common-fund recovery).

Class counsel say "the requested fee would reflect a modest multiplier of 2.3." DE227-1 at ECF p.31 (fee brief). A multiplier of two is anything but modest. Class counsel say that it is justified by the so-called *Johnson* factors. *Id.* at ECF pp. 31-46 (fee brief). Yet the Supreme Court has repudiated the *Johnson* factors both as too subjective, *Perdue*, 130 S. Ct. at 1672, and also for double-counting considerations that already are reflected in the attorneys' lodestar. *See Dague*, 505 U.S. at 562-63. It holds "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 130 S. Ct. at 1673. The Supreme Court has, for example, specifically "held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue*, 130 S. Ct. at 1673. Similarly, "the quality of an attorney's performance generally should not be used to adjust the lodestar '[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" *Perdue*, 130 S. Ct. at 1673 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 US 546, 566 (1986). Yet Class Counsel's motion cites precisely these factors in asking that their lodestar be more-than doubled. DE227-1 at ECF pp. 34-39 (fee brief).

4

Rather than authorizing enhancements of the sort sought by Class Counsel, the Supreme Court holds "there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue,* 130 S. Ct. at 1669; *see also Frazier v. Absolute Collection Serv., Inc.,* 767 F. Supp. 2d 1354, 1368 (N.D. Ga. 2011) (recognizing "'a "strong presumption" that the lodestar is the reasonable sum the attorneys deserve") (*quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565-66 (1986)). An unenhanced lodestar fee award is wholly appropriate in a common-fund class action such as this. *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000); *In re Bolar Pharm. Col. Sec. Litig.,* 800 F.Supp. 1091, 1095-96 (E.D.N.Y. 1992).

In addition, the settlement notice indicates that 88 Settlement Class Representatives will receive incentive awards of up to $1,000 each. Such payments are flatly prohibited by the common-fund doctrine established by the Supreme Court in *Trustees v. Greenough,* 105 U.S. 527 (1882), and *Central Railroad Banking Co. v. Pettus,* 113 U.S. 116 (1885), which the Supreme Court continues to apply. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The seminal decisions hold that a litigant whose efforts create a common fund may recover expenses reasonably incurred, including its reasonable attorneys' fees, *see id.,* but not incentive awards for services rendered, which *Greenough* condemns as "decidedly objectionable." *Greenough,* 105 U.S. at 537. "The reasons which apply to his expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses." Id. at 537. "It would present,' said Mr. Justice Bradley, speaking for the court, 'too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interests of creditors, and that, perhaps, only to a small amount, if they could calculate upon the allowance of a salary for their time and having all their private expenses paid.'" *Pettus,* 113 U.S. at 122 (quoting and following *Greenough,* 105 U.S. at 537-38); *see Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough*'s distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 379-80 (E.D.N.Y. 2013) (following *Greenough*).

Incentive bonuses also are offensive under Rule 23 precedents holding that "special rewards for counsel's individual clients are not permissible when the case is pursued as a class action. Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'" *Officers for Justice v. Civil Service Commission of the City and County*

5

*of San Francisco,* 688 F.2d 615, 632 (9th Cir.1982); *accord, e.g., Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Kincade v. General Tire Rubber Co.,* 635 F.2d 501, 506 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1175 (4th Cir. 1975).

The promise of incentive awards may help to explain the character of the settlement in this case: "If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp. 713, 720-21 (E.D.N.Y. 1989). The Sixth Circuit, in particular, has "expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.'" *Dry Max Pampers,* 724 F.3d 713, 722 (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir.2003)). They should be deemed barred both by the common-fund doctrine of *Greenough* and *Pettus,* and by Rule 23.

The settlement and attorneys' fee application may be objectionable for further reasons, but I received late notice and have not had time to give the matter close attention. I respectfully seek leave to submit the foregoing objections, and ask the Court to require that adequate notice be given to the class before any hearing is held on final approval of the proposed settlement, any attorneys' fee award, and any incentive bonuses.

I regret that I will not be able to attend the currently scheduled hearing on this matter.

Respectfully submitted,

*[signature]*
Andrew D. Brooks