FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 09 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: The Home Depot, Inc., Consumer Data Security Breach Litigation | ) Case No.: 1:14-md-02583-TWT |
| | ) |
| This Document Relates to: | ) |
| | ) |
| CONSUMER CASES | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTOR MIORELLI'S RESPONSE TO CONSUMER PLAINTIFFS' EMERGENCY MOTION TO STRIKE OBJECTION OF SAM A. MIORELLI, E.I., ESQ. OR IN THE ALTERNATIVE TO EXTEND THE PAGE LIMIT FOR CONSUMER PLAINTIFFS TIME TO REPLY AND COMPEL HIS ATTENDANCE AT THE FINAL HEARING AND DEPOSITION**

Pursuant to Federal Rule of Civil Procedure 27 and Local Rule 7.1, Objector Miorelli ("Mr. Miorelli") responds to the Emergency Motion (Dkt 239) and respectfully requests the Court deny the Emergency Motion in its entirety except that Mr. Miorelli does not oppose Class Counsel's request for additional pages to reply which the Court has already granted on July 28, 2016 (Dkt 241).

## ARGUMENT

I.  **An Objection to a Class Action Settlement is a "letter" and is neither a motion or a brief within the ambit of Local Rule 7.1D.**

Local Rule 7.1D, found in a section headed "LR 7.1 FILING OF MOTIONS AND RESPONSES; HEARINGS" reads in relevant part: "Absent prior

permission of the court, briefs filed in support of a motion or in response to a

motion are limited in length to twenty-five (25) pages."

The Local Rules make no mention of objections to class action settlements.

A. <u>An objection to a class action settlement is a letter.</u>

Mr. Miorelli filed an objection to final approval of a class action settlement.

(Dkt 237). Class action objections are not motions: they are their own creature of

civil procedure, created by Federal Rule of Civil Procedure 23 and governed

separately from typical motion practice. Motions are defined and regulated by

Federal Rule of Civil Procedure 7(b). Rule 7 requires a "motion" when a party

makes "a request for a court order …" Fed. R. Civ. P. 7(b)(1).

Objections to class action settlements are not requests for a court order as

objectors are not named parties to the suit. A member of the class cannot

independently file motions in the case. *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct.

1345, 1349 (2013) ("A nonnamed class member is not a party to the class-action

litigation before the class is certified.") Instead, objections to class action

settlements are created by Rule 23(e)(5) and are regulated independently. *See, e.g.*

Fed. R. Civ. P. 23(e)(5); Manual for Complex Litigation (4th) § 21.633. In fact, the

Federal Judicial Center, in its "Illustrative Forms of Class Action Notices,"

describes the required form of an objection as "a letter saying you object to [case

name]." (Exhibit A at 7 § 18; Exhibit B at 8 § 20). The long-form Class Notice in this case follows the same conception of an objection as a "letter." (Dkt 181-2 at 45). While objectors may choose a style for their objections which follow the local conventions for typesetting an objection, that choice is only one of style aimed at convenience for the Court, not one of substance. As with any other legal filing, the choice of a stylistic device cannot convert the filing from one type to another. The same applies in this case: no matter the objector's document formatting, he cannot change his Rule 23(e)(5) class action settlement objection into a Rule 7 motion as he is not permitted to make such a motion.

Since Mr. Miorelli's Objection was not a motion, the page limit from Local Rule 7.1D, by its own terms, did not apply.

B. Class Counsel is wrong about *Zepeda v. PayPal.*

Class Counsel's arguments regarding *Zepeda v. PayPal, Inc.* show his lack of investigation of that case. In *Zepeda,* the Court, *sua sponte* struck Mr. Miorelli's objection for timeliness and failure to follow the judge's civil standing order. *Zepeda v. PayPal, Inc.,* Case No. 10-cv-02500-SBA, Dkt 319 (N.D. Cal. May 13, 2016). Mr. Miorelli promptly began discussions in that case with counsel for the plaintiffs and defendants, who both agreed that the court's decision *on both points* was erroneous, and who did not oppose Mr. Miorelli's promptly-filed

3

Unopposed Motion for Leave to File Motion to Reconsider Order Striking Objection Filed by Sam A. Miorelli. (Exhibit C). On that basis, the *Zepeda* court vacated its prior order and granted Mr. Miorelli leave to refile his objection provided it not exceed 15 pages. (Exhibit D). Mr. Miorelli complied with the order and refiled his objection. *Zepeda v. PayPal, Inc.*, Case No. 10-cv-02500-SBA, Dkt 333 (N.D. Cal. Aug. 1, 2016).

Class Counsel attempts to convince the Court that the *Zepeda* case shows I have a "consistent disregard of federal court rules." (Dkt 239-1 at 4). This ridiculous claim misunderstands the local rules of this Court, the *Zepeda* litigation, and also ignores the monumental task faced by a careful objector. Between the Settlement Agreement, motions in support, orders, declarations, and the other prior filings in the case which directly apply to whether the Settlement Agreement is fair, reasonable, and adequate, a class action objector in this case has to respond to at least 947 pages of documents. Class Counsel himself has filed 407 pages with the Court just in the motion for preliminary approval, the motion for final approval, and the motion for fees, costs, and incentive awards (and the associated declarations and exhibits).

While Class Counsel had the ability to seek additional pages from the Court via motion for his filings, as explained *supra*, objectors such as Mr. Miorelli

are not entitled to file Rule 7 motions. Class Counsel must have a particularly inequitable view of the law to think that an objector should only have 25 pages to point out the litany of problems with a Settlement Agreement he needed 407 pages to support.

II.     **Even if the Court finds that Mr. Miorelli's Objection is governed by Local Rule 7.1D, the proper remedy is to grant a page extension and/or order it to be refiled.**

While Mr. Miorelli believes that his Objection was not subject to a twenty-five-page limit, even if it was, striking it without providing a means to cure the defect violates Federal Rule of Civil Procedure 83(a)(2).

A.   <u>Striking Mr. Miorelli's Objection would be an abuse of the Court's discretion.</u>

Rule 83(a)(2) prohibits any local rule formality requirement being enforced in such a way as to cause a party to lose a substantive right because of "a non willful failure to comply." Fed. R. Civ. P. 83(a)(2). As explained *supra*, Mr. Miorelli believes that the twenty-five-page limit did not apply to his Objection as objections to class action settlements under Rule 23 are not the same as motions governed by Rule 7. Additionally, Mr. Miorelli's view of the law was shared by attorneys for both sides of the case in *Zepeda*, who did not oppose his successful effort to convince the court in that case to correct its erroneous ruling. Consequently, Mr. Miorelli's noncompliance, if any, was non-willful.

The Supreme Court requires inherent powers such as the establishment of local rules to "be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45. The Eleventh Circuit requires that inherent powers only be exercised by a district court after making a finding of bad faith. *Kornhauser v. Comm. of Social Sec.*, 685 F.3d 1254, 1257 (11th Cir. 2012) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 2136 (1991)). Yet Class Counsel's "Emergency" Motion makes no argument that the length of Mr. Miorelli's Objection constitutes bad faith and the outcome in *Zepeda* shows that it certainly was not filed in bad faith.

Much of the case law on the enforcement of local rules relates to the ability of district courts to dismiss cases for violations. Striking Mr. Miorelli's Objection is the functional equivalent to a dismissal since Mr. Miorelli's Objection was his sole opportunity to be heard before the Court. (Dkt 185 at 13). In the Eleventh Circuit, district courts may only use dismissal as a sanction for failure to follow local rules "as a last resort, when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." *World Thrust Films, Inc. v. Int'l*

*Family Entm't, Inc.*, 41 F.3d 1454, 1456 (11th Cir. 1995). It bears mention that Class Counsel did not even address the *World Thrust Films* standard.

With regard to the first prong of the *World Thrust Films* standard, Class Counsel's argument that Mr. Miorelli has a track record for having objections struck for failure to follow local rules is conclusively refuted by the *Zepeda* court *vacating* its order striking his objection. Vacating its order is notable since Mr. Miorelli had merely sought leave to file a motion to reconsider, yet on further consideration, the court realized that striking the objection was an inappropriate remedy altogether.

Class Counsel has also not shown, or even argued, that striking Mr. Miorelli's Objection is the *only* sanction that would suffice, which would be the minimum required of him to meet the second prong of *World Thrust Films*. The outcome in the *Zepeda* case shows that even if Local Rule 7.1D did apply to Mr. Miorelli's objection (and Mr. Miorelli vociferously maintains that it does not), that striking the objection is not the least-punitive sanction available to the Court.

If this Court strikes Mr. Miorelli's objection, it would be on the basis of a motion that (a) does not evaluate the relevant law, (b) does not allege Mr. Miorelli has engaged in bad behavior in this case warranting such an action, and (c) does not argue, let alone show, that no lesser sanction would suffice.

Certainly this would be an abuse of discretion.

    B. <u>If the Court finds that Mr. Miorelli's Objection is governed by Local Rule 7.1D, Mr. Miorelli respectfully requests the Court grant a page extension, or, in the alternative, grand Mr. Miorelli leave and sufficient time to re-file his Objection in compliance.</u>

If the Court is persuaded by Class Counsel's argument that the page limit applied to Mr. Miorelli's Objection, then Mr. Miorelli herein requests the Court grant an extension of the page limit to accommodate his Objection as-filed. This would be equitable since Class Counsel split his Motion for Final Approval (Dkt 226) and Motion for Service Awards, Attorneys' Fees and Litigation Expense Reimbursement (Dkt 227), which combined with their memoranda of law (Dkt 226-1 and 227-1) consume 94 pages excluding tables of contents, tables of authorities, exhibits, and declarations in support.[1]

Alternatively, Mr. Miorelli argues that the Court has discretion to find that, if Local Rule 7.1D applies to class action objections, then the over-length Objection is such a slight and unimportant violation as to be overlooked in the interests of not causing a party before the Court to lose a substantive right due to

---

[1] As explained *supra*, Mr. Miorelli understands the law to only permit him a single filing in opposition to both. However, if, *arguendo*, the Court were to order Mr. Miorelli to re-file, Mr. Miorelli does not object if the Court would prefer Mr. Miorelli to file separately in opposition to each, with each filing having appropriate and equivalent page limits to the pages used by Class Counsel.

a non-willful failure to comply.

At the very least, however, if the Court decides that Local Rule 7.1D applies to Mr. Miorelli's Objection and is not inclined to find this particular violation to be unimportant or curable via the request for additional pages made herein, then the Court should do no less than the *Zepeda* court and grant Mr. Miorelli leave and time to re-file his objection in compliance with whatever page limit the Court deems applicable.

### III.   Mr. Miorelli has not and will not move for a continuance of the Final Fairness Hearing.

Class Counsel attempts to contort Mr. Miorelli's conditional notice that he would not attend the Final Fairness Hearing into a motion for the hearing to be continued. (Dkt 239-1 at 6). This is ridiculous on its face.

Mr. Miorelli is aware that often Final Fairness Hearings are continued due to late-breaking discoveries of defects in the notice or dissemination procedure. *See, e.g., Zepeda,* Case No. 10-cv-02500-SBA, Dkt 329 (N.D. Cal. July 6, 2016) (Attached as Exhibit E). As explained *supra,* the Objection was Mr. Miorelli's sole opportunity to address the Court regarding the Settlement Agreement and declare whether he would attend the Final Fairness Hearing. This creates a difficult paradox which Mr. Miorelli attempted to resolve by declaring that he would not attend the Final Fairness Hearing if it proceeded as planned on

August 12, 2016, yet reserved the potential that, if, like *Zepeda*, the Final Fairness Hearing was rescheduled, he would exercise his right to appear. (Dkt 237 at 3-4). Mr. Miorelli personally believes it is important to appear at the Final Fairness Hearing whenever possible, especially because of Class Counsel's propensity to engage in *ad hominem* attacks which are best addressed orally (*see, e.g.* Dkt 245 at 3) but is unaware of any law or rule requiring his appearance.

If an objector's personal attendance were required, one would assume that would be to protect the objector's right to appeal an adverse decision. Yet, the Supreme Court has settled that to have standing to appeal final approval of a class action settlement, an objecting class member like Mr. Miorelli needs only to "have objected in a timely manner to approval of the settlement at the fairness hearing…" *Devlin v. Scardelletti*, 536 U.S. 1, 14, 122 S.Ct. 2005, 2013 (2002). Subsequent to *Devin*, the courts of appeals have extensively considered what an objector must do to have standing to appeal final approval of a class action settlement. The Eleventh Circuit, in *Poertner v. Gillette Co.*, consolidated the appeals of five objectors, of which only objector Theodore Frank appeared at the final fairness hearing. *Poertner v. Gillette Co.*, 618 F.Appx. 624, 627 (11th Cir. 2015) *and Poertner v. Gillette Co.*, 2014 WL 4162771 at *3, Case No. 6:12-cv-803-Orl-31DAB (M.D. Fla. Aug. 21, 2014). The Eleventh Circuit held that all of the

objectors had standing to pursue their appeal. *Poertner*, 618 F.Appx. at 628. Every other appellate court has agreed that an objector need only file an objection to have the right to appeal. *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 40 (1st Cir. 2009); *Frankel v. Cole*, 490 F.Appx. 407, 408 (2d Cir. 2013) (rejecting argument against objector's standing to appeal in a summary order); *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 299 (3d Cir. 2005); *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638-39 (5th Cir. 2012); *Fidel v. Farley*, 534 F.3d 508, 511-12 (6th Cir. 2008) (objector may appeal when objector sent a letter objecting to the settlement to the judge which arrived five days after the final fairness hearing and objector did not appear at the hearing personally); *Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014) (holding that both absent and named objectors in a case have standing to appeal); *In re UnitedHealth Group, Inc. Shareholder Derivative Litig.*, 631 F.3d 913, 917 (8th Cir. 2011) ("a shareholder must file a timely and proper objection with the district court before appealing a settlement agreement."); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 573 (9th Cir. 204) ("A class member may appeal from an order approving a settlement to which the member objects."); *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1257 (10th Cir. 2004). None of these cases predicate attendance at the final fairness hearing on an objector's right to

11

appeal.

Since Mr. Miorelli does not forfeit any rights by his waiver of his right to attend the Final Fairness Hearing, he has not moved the Court to continue the hearing. If such attendance were required to protect any substantive or procedural right, he would certainly make such a motion. The courts of appeal have unanimously agreed that Mr. Miorelli loses no rights by failing to attend except the right to address the Court orally. Class Counsel cannot contort Mr. Miorelli's recognition of this fact into a motion which Mr. Miorelli has not made.

### IV.   No objector is required to attend a Final Fairness Hearing and the high quality of Mr. Miorelli's Objection does not change that.

Mr. Miorelli will not attend the Final Fairness Hearing due to his pre-existing paid enrollment in the Republican National Lawyers Association National Election Law Seminar, being held on August 12-13, 2016 at the Denver Marriott City Center, 1701 California Street, Denver, CO 80202. (Declaration of Sam A. Miorelli, E.I., Esq. in Support of Objector Miorelli's Response to Consumer Plaintiffs' Emergency Motion to Strike Objection of Sam A. Miorelli, E.I., Esq. or in the Alternative to Extend the Page Limit for Consumer Plaintiffs Time to Reply and Compel his Attendance at the Final Hearing and Deposition (the "Miorelli Declaration") at ¶ 12). Mr. Miorelli attempted to find flights which would allow him to attend the Final Fairness Hearing as well as the conference,

12

but none were available. *Id.* Further, in the face of Class Counsel's aggressive and often angry communications, Mr. Miorelli offered to move for leave of the Court to appear at the Final Fairness Hearing telephonically if such motion could be made without opposition. As Class Counsel has stated he would oppose such a motion and as counsel for Home Depot never replied to Mr. Miorelli's inquiry on the topic, Mr. Miorelli has not followed up on his request made in his Objection as he does not want to tie the Court up in further and unimportant disputes.

A. Class Counsel's request for the Court to order Mr. Miorelli to attend the Final Fairness Hearing is unsupported law.

Class Counsel asks the Court, without the support of any legal citation, to order Mr. Miorelli to attend the Final Fairness Hearing. (Dkt 239-1 at 6). This request is novel to say the least. Class Counsel, as the proponent of the Settlement Agreement, bears the burden of proving its fairness, reasonableness, and adequacy. *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011). Mr. Miorelli is unaware of (and Class Counsel cites to no case) that stands for the proposition that the proponents of a Settlement Agreement have any basis in law or equity to demand the personal attendance at the Final Fairness Hearing, at great cost of time and money, of an objector questioning whether they have carried their burden of proof.

The closest Class Counsel comes in his argument is to praise Mr. Miorelli's

objection's "depth and breadth." (Dkt 239-1 at 6). But that does not shift the burden, which always rests on Class Counsel. Mr. Miorelli is unaware of (and Class Counsel cites to no case) standing for the proposition that an objector presenting a sufficiently "good" objection can be compelled to attend the Final Fairness Hearing.[2] The Court should reject this ridiculous request.

V.     **Mr. Miorelli has worked in good faith to schedule a deposition as requested by Class Counsel but Class Counsel has not even provided minimal responses to Mr. Miorelli's proposals.**

Class Counsel's "Emergency" Motion hits peak absurdity in its argument that Mr. Miorelli has not been accommodating in scheduling a deposition. (Dkt 239-1 at 7). Mr. Miorelli engaged in two telephone discussions of a deposition with John A. Yanchunis, Consumer Co-Lead Counsel and Steering Committee Member regarding a potential deposition. (Miorelli Declaration at ¶ 2-5). In both calls Mr. Yanchunis was extremely vague and aggressive, insisting that Mr. Miorelli submit to a deposition on an extremely-short notice and vaguely claiming that the Court had issued protective orders which addressed any

---

[2] It bears pointing out that Class Counsel has not asked this Court to compel the attendance of any of the other objectors who similarly have stated their intention not to attend the final fairness hearing. Beyond his praise for the quality of Mr. Miorelli's objection, Class Counsel has provided no legal argument why Mr. Miorelli's attendance is so critical that it requires a novel and muscular use of the judicial power yet the nonattendance of other objectors is unimportant.

14

privacy concerns Mr. Miorelli could possibly have relating to such a deposition. *Id.* Throughout, Mr. Yanchunis would not give even as much description of the scope of such a proposed deposition as was provided in Class Counsel's "Emergency" Motion: "so that he may be cross-examined concerning the bases for his objection to the proposed settlement as well as his status as a professional objector in other class cases." (Dkt 239-1 at 7).

Despite Mr. Yanchunis not being able to provide even the name or docket number of any of the protective orders he believed would apply, Mr. Miorelli diligently researched the matter. (Miorelli Declaration at ¶ 6). Having experienced two uncomfortable and vague telephone calls, Mr. Miorelli was concerned that there was a serious potential for a misunderstanding between Mr. Miorelli and Mr. Yanchunis, largely arising out of Mr. Yanchunis' belligerent tone on the phone and vague answers to every question. *Id.* Consequently, Mr. Miorelli wrote Mr. Yanchunis a letter explaining his position that a deposition should be noticed no earlier than after 10 days discussion of a mutually-agreeable time and place to hold such a deposition in accordance with the Court's Case Management Order No. 5 and that such notice should arrive at least 14 days prior to any deposition in accordance with the practice, codified in Local Rule 3.02, of the U.S. District Court for the Middle District of Florida, which has

jurisdiction over the location Mr. Miorelli resides as well as the location where Mr. Yanchunis proposed to hold a deposition. (Dkt 239-2 at 6-7).

Mr. Miorelli's position on this was eminently reasonable since the Court's Case Management Order No. 5 provided almost no protection against the disclosure of personal information for an objector, who is already at heightened risk of identity theft due to the facts in this very case! In light of that, Mr. Miorelli prepared a proposed stipulated confidentiality agreement using as a template the stipulated confidentiality agreement used by the parties and Mr. Miorelli in *Legg v. Laboratory Corporation of America Holdings*, Case No. 14-61543-CIV-RLR, Dkt 42 (S.D. Fla. Dec. 11, 2014). (Miorelli Declaration at Exhibit C). Mr. Miorelli very quickly provided that draft to Class Counsel on June 25, 2016, the third business day after Mr. Yanchunis first made a vague telephone request for a deposition. *Id.* at ¶ 8. As of the date of this filing, Class Counsel has not provided a single substantive comment or proposed edit in response, despite Mr. Miorelli's repeated requests.

A. Class Counsel has not satisfied this Court's meet and confer requirements despite Mr. Miorelli's extensive constructive engagement.

Reasonable people may disagree as to the level of engagement to satisfy a court's meet and confer requirement regarding discovery (Dkt 110 at ¶ 18 and

30), certainly providing *no response* to an extensive substantive proposal cannot satisfy that requirement. While Mr. Miorelli proposed that no deposition should happen until a confidentiality agreement was agreed and that it should happen in accordance with Middle District of Florida Rules and this Court's Case Management Order No. 5, Class Counsel never proposed an alternative date or alternative confidentiality arrangement. Even in their "Emergency" Motion, other than attacking Mr. Miorelli's interpretation of the applicable orders and local rules, Class Counsel does not propose any concrete alternative date or confidentiality arrangement.

An endless string of "you're wrong, I'm right" does not satisfy meet and confer requirements. Class Counsel should not be allowed to stonewall Mr. Miorelli's attempts to amicably schedule a deposition with adequate protection of his personal information and travel schedule but then turn to this Court and claim an emergency.

B. Mr. Miorelli has never refused to submit to a deposition.

Mr. Miorelli has never refused to sit for a deposition. Class Counsel attempts to convert his dissatisfaction with the timing for a deposition of Mr. Miorelli into both "an emergency" and Mr. Miorelli supposedly violating the terms of the Settlement Agreement. Neither is true. In every single

communication with Class Counsel, Mr. Miorelli has expressed his willingness to sit for a deposition provided (a) there is an adequate confidentiality agreement and (b) the deposition is scheduled in accordance with this Court's Case Management Order No. 5 and the practice of noticing depositions at least 14 days in advance in the Middle District of Florida, as codified in Local Rule 3.02.

> C. <u>Class Counsel has admitted his proposed deposition would be a fishing expedition.</u>

This "Emergency" Motion shows Class Counsel's true intention: a wide-ranging fishing expedition focused not on the factual grounds of Mr. Miorelli's Objection, but rather, on Class Counsel's personal vendetta against Mr. Miorelli as a so-called "professional objector in other class cases." (Dkt 239-1 at 7). Class Counsel has expressly stated that his proposed inquiry is for Mr. Miorelli's conduct "in other class cases" and not the instant case. *Id.*

That is not a relevant inquiry under Federal Rule of Civil Procedure 27 which limits discovery to "any nonprivileged matter that is relevant to any party's claim or defenses and proportional to the needs of the case…" Fed. R. Civ. P. 27(b)(1). None of the Class' claims against Home Depot have anything to do with Mr. Miorelli's "status as a professional objector in other class cases." Class Counsel bears the burden of proving the Settlement Agreement is fair, reasonable, and adequate: that inquiry has nothing to do with Mr. Miorelli's

"status as a professional objector in other class cases." Neither does supposed "status as a professional objector" affect the merits of Mr. Miorelli's objection regarding the unfairness, inadequacy, and unreasonableness of the Settlement Agreement, the proposed incentive awards, or Class Counsel's outrageous proposed legal fee (which Home Depot joins Mr. Miorelli's in opposition).

Having admitted the purpose of their proposed deposition is to conduct an *ultra vires* inquiry, and having not satisfied the Court's meet and confer requirements for any such deposition, the Court should deny Class Counsel's motion to compel a deposition of Mr. Miorelli. While Mr. Miorelli remains today open to negotiation of a fair settlement to this discovery dispute with Class Counsel, he reserves the right to seek a protective order from the Court in the future in light of Class Counsel's dramatic admission of his intent to pursue a fishing expedition against Mr. Miorelli in a manner expressly in violation of the Federal Rules of Civil Procedure.

## VI. Class Counsel's "Emergency" Motion should be denied, at the very least, for failing to comply with the Court's meet and confer requirements.

Finally, even Class Counsel's "Emergency" Motion itself violates the Court's meet and confer requirements set forth in Case Management Order No. 5. (Dkt 110 at ¶ 30). Class Counsel never provided Mr. Miorelli notice he

intended to file such a motion. (Miorelli Declaration at ¶ 11). Class Counsel never raised his concerns regarding the length of Mr. Miorelli's Objection prior to filing his "Emergency" Motion. *Id.* Class counsel also never informed Mr. Miorelli that he believed Mr. Miorelli's attendance at the Final Fairness Hearing was indispensable or that they would move for the Court to compel his attendance. *Id.* As described *supra*, Class Counsel also never responded to Mr. Miorelli's substantive proposal for a confidentiality agreement to govern a proposed deposition.

Having made no attempt to follow the Court's order and having only engaged in an exercise of uncourteousness in his discussions with Mr. Miorelli, the Court should deny Class Counsel's "Emergency" Motion in its entirety, if for no other reason, than for its noncompliance with Case Management Order No. 5.

## VII.   Conclusion.

For the reasons stated herein, the Court should deny Class Counsel's "Emergency" Motion in its entirety except that Mr. Miorelli does not oppose the extension of pages this Court granted on July 28, 2016 (Dkt 241).

Respectfully submitted this 8th day of August, 2016.

_____

Sam A. Miorelli, E.I., Esq. *pro se*

20

**Exhibit A – Federal Judicial Center Illustrative Form of Class Action Notice for Securities Class Action Certification and Settlement: Full Notice**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF STATE

# If you bought XYZ Corporation stock in 1999, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement will provide $6,990,000 (17 ½ cents per share if claims are submitted for each share) to pay claims from investors who bought shares of XYZ Corporation stock during 1999.

- The settlement resolves a lawsuit over whether XYZ misled investors about its future earnings; it avoids costs and risks to you from continuing the lawsuit; pays money to investors like you; and releases XYZ from liability.

- Court-appointed lawyers for investors will ask the Court for up to $3,010,000 (7½ cents per share), to be paid separately by XYZ, as fees and expenses for investigating the facts, litigating the case, and negotiating the settlement.

- The two sides disagree on how much money could have been won if investors won a trial.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against XYZ, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ............................................................... **PAGE 3**
1.  Why did I get this notice package?
2.  What is this lawsuit about?
3.  Why is this a class action?
4.  Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ...................................................... **PAGE 4**
5.  How do I know if I am part of the settlement?
6.  Are there exceptions to being included?
7.  I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ................................... **PAGE 4**
8.  What does the settlement provide?
9.  How much will my payment be?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** .................... **PAGE 5**
10. How can I get a payment?
11. When would I get my payment?
12. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................. **PAGE 6**
13. How do I get out of the settlement?
14. If I don't exclude myself, can I sue XYZ for the same thing later?
15. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ............................................... **PAGE 7**
16. Do I have a lawyer in the case?
17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................................. **PAGE 7**
18. How do I tell the Court that I don't like the settlement?
19. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................................ **PAGE 8**
20. When and where will the Court decide whether to approve the settlement?
21. Do I have to come to the hearing?
22. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................. **PAGE 9**
23. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................................... **PAGE 9**
24. Are there more details about the settlement?
25. How do I get more information?

**UNDERSTANDING YOUR PAYMENT** ............................................... **PAGE 10**

# BASIC INFORMATION

### 1. Why did I get this notice package?

You or someone in your family may have purchased shares of XYZ Corporation stock during 1999.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *North et al v. XYZ Corporation and Anne Adams,* Case No. CV-00-5678. The people who sued are called Plaintiffs, and the company and the person they sued, XYZ and Anne Adams, are called the Defendants.

### 2. What is this lawsuit about?

The lawsuit claimed that XYZ and its Chief Executive Officer, Anne Adams, misled investors by intentionally overstating the profits that the company expected to earn in the future. The lawsuit also claimed that XYZ issued press releases and financial statements that had false and misleading information about XYZ's income and earnings per share for 1999, and that XYZ executives sold their personally held shares of XYZ stock at inflated prices during that time. XYZ and Ms. Adams deny they did anything wrong.

### 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case Mary North), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

### 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. The Plaintiffs think they could have won $3.03 per share if they won a trial. The Defendants think the Plaintiffs would not have won anything from a trial. But there was no trial. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for all Class Members.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

### 5. How do I know if I am part of the settlement?

Judge Jones decided that everyone who fits this description is a Class Member: *All people who purchased shares of XYZ Corporation stock during 1999.*

### 6. Are there exceptions to being included?

You are not a Class Member if you are an officer or director of XYZ, or were one during 1999. Also, immediate family members of XYZ officers and directors are not in the Class.

If one of your mutual funds owns shares of XYZ stock, that alone does not make you a Class Member. You are a Class Member only if you purchased shares of XYZ stock individually. Contact your broker to see if you have or held XYZ stock.

If you sold XYZ stock during 1999, that alone does not make you a Class Member. You are a Class Member only if you bought shares in 1999.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-000-0000 or visit www.XYZsettlement.com for more information. Or you can fill out and return the claim form described in question 10, to see if you qualify.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

### 8. What does the settlement provide?

XYZ has agreed to create a $6,990,000 fund to be divided among all Class Members who send in a valid claim form.

### 9. How much will my payment be?

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. Here's how it works:

There were about 40,000,000 shares of XYZ stock bought during 1999. For each day of that year, the settlement specifies that the stock price was "Artificially Inflated" by a certain amount. These amounts per share are listed on pages 11 and 12 of the "Understanding Your Payment" section of this Notice.

By following the instructions on page 10 of this Notice, you can calculate what is called your Net Recognized Loss. It's unlikely that you will get a payment for all of your Net Recognized Loss. After all Class Members have sent in their claim forms, the payment you get will reflect your Net Recognized Loss in relation to everyone's Net Recognized Loss. See the instructions on page 10 for more information on your Net Recognized Loss.

So those who bought more shares and have a larger Net Recognized Loss will get more money, and those who bought fewer shares and have a smaller Net Recognized Loss will get less. All of the $6.99 million available will be distributed.

If every eligible Class Member sends in a valid claim form, the average payment will be 17 ½ cents ($6,990,000 ÷ 40,000,000 shares) for each share bought in 1999. The number of claimants who send in claims varies widely from case to case. If less than 100% of the Class sends in a claim form, you could get more money.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

### 10. How can I get a payment?

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You may also get a claim form on the internet at www.XYZsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

### 11. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

### 12. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against XYZ about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue XYZ, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

### 13. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *North v. XYZ*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000** to:

> XYZ Exclusions
> P.O. Box 0000
> City, ST 00000-0000

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) XYZ in the future.

### 14. If I don't exclude myself, can I sue XYZ for the same thing later?

No. Unless you exclude yourself, you give up any right to sue XYZ for the claims that this settlement resolves. If you have a pending lawsuit speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

### 15. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against XYZ.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

The Court asked the law firm of Lawfirm LLP in City, ST, to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17. How will the lawyers be paid?

Class counsel will ask the Court to approve payment of up to $3,010,000 (7 1/2 cents per share) to them for attorneys' fees and expenses and payment of $10,000 to Mary North for her services as Class Representative. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. The Court may award less than these amounts. XYZ will separately pay the fees, expenses and payments that the Court awards. These amounts will not reduce the $6,990,000 available for Class Members. XYZ has agreed not to oppose these fees and expenses. XYZ will also pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

## 18. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to *North v. XYZ*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | John Simmons |
| United States District Court for the | Lawfirm LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

## 19. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 20.  When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 9:00 AM on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One.  At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  Judge Jones will listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay to Class Counsel.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

## 21.  Do I have to come to the hearing?

No.  Class Counsel will answer questions Judge Jones may have.  But, you are welcome to come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

## 22.  May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *North v. XYZ*."  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses in question 18.  You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 23.  What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement.  But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against XYZ about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

**24. Are there more details about the settlement?**

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.XYZsettlement.com.

**25. How do I get more information?**

You can call 1-800-000-0000 toll free; write to XYZ Settlement, P.O. Box 0000, City ST 00000-0000; or visit the website at www.XYZsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE:  MONTH 00, 0000.

# UNDERSTANDING YOUR PAYMENT

STEP 1: Go to the table on the next page, find the date you bought your XYZ shares, and see what the artificial inflation rate per share ("Artificial Inflation") was on that date.

STEP 2: Multiply the number of shares you bought by the Artificial Inflation for that date. This result is your Recognized Loss. Skip to STEP 6 if you did not sell this stock during the class period. If you sold any of your XYZ stock during 1999, continue with STEP 3.

> STEP 3: Go to the table on the next page, find the date you sold your shares of XYZ stock that you had purchased in 1999, and see the Artificial Inflation for that date.

> STEP 4: Multiply the number of shares you sold by the Artificial Inflation for that date.

> STEP 5: Subtract the amount calculated in STEP 4 from the amount calculated in STEP 2. This is your Net Recognized Loss. If your Net Recognized Loss is less than zero, you do not have a claim in this settlement.

STEP 6: Your Net Recognized Loss is a percentage of the total Net Recognized Losses from all Class Members claims. This percentage is the same percentage of the settlement fund that you will get. This amount can be estimated only after the claims administrator receives all the claim forms. If less than 100% of the Class sends in a claim form, you could get more money.

STEP 7: The claims administrator will calculate your payment from the settlement fund.

| EXAMPLE—PAYMENT CALCULATION | |
|---|---|
| **Suppose John Smith bought 500 shares of XYZ stock on March 31, 1999, and sold 400 shares of XYZ stock on August 27, 1999:** | |
| **STEP 1:** | On 3/31/99 the Artificial Inflation = $8.03 |
| **STEP 2:** | 500 shares bought x $8.03 = $4,015 Recognized Loss |
| **STEP 3:** | On 8/27/99 the Artificial Inflation = $5.89 |
| **STEP 4:** | 400 shares sold x $5.89 = $2,356 to deduct from John Smith's Recognized Loss |
| **STEP 5:** | $4,015 - $2,356 = $1,659, John Smith's Net Recognized Loss |
| **STEP 6:** | Suppose in this example that there is a total Net Recognized Loss of $20 million claimed by all Class Members who send in claim forms: $1,659 ÷ $20,000,000 = John Smith's Net Recognized Loss per share is .0000829 of the total. |
| **STEP 7:** | .0000829 x $6,990,000 = John Smith's payment would be $579.47 |

| Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share | Date | Artificial Inflation Rate Per Share |
|------|------|------|------|------|------|
| 01/02/1999 | $3.01 | 03/12/1999 | $5.74 | 05/19/1999 | $7.19 |
| 01/05/1999 | $2.67 | 03/13/1999 | $5.74 | 05/20/1999 | $7.08 |
| 01/06/1999 | $2.67 | 03/16/1999 | $5.72 | 05/21/1999 | $7.36 |
| 01/07/1999 | $2.62 | 03/17/1999 | $5.72 | 05/22/1999 | $7.35 |
| 01/08/1999 | $2.50 | 03/18/1999 | $5.93 | 05/26/1999 | $7.36 |
| 01/09/1999 | $2.41 | 03/19/1999 | $5.94 | 05/27/1999 | $7.36 |
| 01/12/1999 | $2.44 | 03/20/1999 | $5.83 | 05/28/1999 | $7.33 |
| 01/13/1999 | $2.52 | 03/23/1999 | $5.93 | 05/29/1999 | $7.38 |
| 01/14/1999 | $2.52 | 03/24/1999 | $6.13 | 06/01/1999 | $7.40 |
| 01/15/1999 | $2.48 | 03/25/1999 | $6.47 | 06/02/1999 | $7.42 |
| 01/16/1999 | $2.45 | 03/26/1999 | $6.95 | 06/03/1999 | $7.54 |
| 01/20/1999 | $4.11 | 03/27/1999 | $7.12 | 06/04/1999 | $7.69 |
| 01/21/1999 | $4.07 | 03/30/1999 | $7.57 | 06/05/1999 | $7.84 |
| 01/22/1999 | $4.15 | 03/31/1999 | $8.03 | 06/08/1999 | $8.29 |
| 01/23/1999 | $4.07 | 04/01/1999 | $7.95 | 06/09/1999 | $8.42 |
| 01/26/1999 | $3.94 | 04/02/1999 | $8.37 | 06/10/1999 | $8.67 |
| 01/27/1999 | $3.88 | 04/03/1999 | $7.95 | 06/11/1999 | $8.90 |
| 01/28/1999 | $4.18 | 04/06/1999 | $8.10 | 06/12/1999 | $9.03 |
| 01/29/1999 | $4.15 | 04/07/1999 | $8.08 | 06/15/1999 | $8.73 |
| 01/30/1999 | $4.09 | 04/08/1999 | $8.08 | 06/16/1999 | $8.67 |
| 02/02/1999 | $3.99 | 04/09/1999 | $8.18 | 06/17/1999 | $8.50 |
| 02/03/1999 | $3.96 | 04/13/1999 | $8.14 | 06/18/1999 | $8.41 |
| 02/04/1999 | $4.09 | 04/14/1999 | $8.16 | 06/19/1999 | $8.75 |
| 02/05/1999 | $4.35 | 04/15/1999 | $8.25 | 06/22/1999 | $8.90 |
| 02/06/1999 | $4.88 | 04/16/1999 | $8.25 | 06/23/1999 | $9.11 |
| 02/09/1999 | $4.94 | 04/17/1999 | $8.31 | 06/24/1999 | $9.64 |
| 02/10/1999 | $5.00 | 04/20/1999 | $8.14 | 06/25/1999 | $9.60 |
| 02/11/1999 | $5.02 | 04/21/1999 | $8.22 | 06/26/1999 | $9.77 |
| 02/12/1999 | $4.96 | 04/22/1999 | $8.07 | 06/29/1999 | $9.56 |
| 02/13/1999 | $5.19 | 04/23/1999 | $8.07 | 06/30/1999 | $8.86 |
| 02/17/1999 | $5.60 | 04/24/1999 | $7.97 | 07/01/1999 | $9.14 |
| 02/18/1999 | $5.53 | 04/27/1999 | $7.46 | 07/02/1999 | $9.20 |
| 02/19/1999 | $5.47 | 04/28/1999 | $7.35 | 07/06/1999 | $9.05 |
| 02/20/1999 | $5.30 | 04/29/1999 | $7.12 | 07/07/1999 | $9.01 |
| 02/23/1999 | $5.45 | 04/30/1999 | $7.50 | 07/08/1999 | $8.97 |
| 02/24/1999 | $5.43 | 05/01/1999 | $7.80 | 07/09/1999 | $8.92 |
| 02/25/1999 | $5.49 | 05/04/1999 | $7.95 | 07/13/1999 | $8.84 |
| 02/26/1999 | $5.87 | 05/05/1999 | $7.88 | 07/14/1999 | $8.90 |
| 02/27/1999 | $5.87 | 05/06/1999 | $7.72 | 07/15/1999 | $8.88 |
| 03/02/1999 | $5.53 | 05/07/1999 | $7.57 | 07/16/1999 | $8.86 |
| 03/03/1999 | $5.60 | 05/08/1999 | $7.46 | 07/17/1999 | $8.86 |
| 03/04/1999 | $5.53 | 05/11/1999 | $7.50 | 07/20/1999 | $9.69 |
| 03/05/1999 | $5.43 | 05/12/1999 | $7.46 | 07/21/1999 | $8.48 |
| 03/06/1999 | $5.41 | 05/13/1999 | $7.46 | 07/22/1999 | $8.25 |
| 03/09/1999 | $5.76 | 05/14/1999 | $7.36 | 07/23/1999 | $7.65 |
| 03/10/1999 | $5.64 | 05/15/1999 | $7.40 | 07/24/1999 | $7.76 |
| 03/11/1999 | $5.49 | 05/18/1999 | $7.42 | 07/27/1999 | $7.76 |

| Date | Artificial Inflation Rate Per Share |
|------|-------------------------------------|
| 07/29/1999 | $7.42 |
| 07/30/1999 | $7.50 |
| 07/31/1999 | $7.27 |
| 08/03/1999 | $7.06 |
| 08/04/1999 | $7.16 |
| 08/05/1999 | $7.46 |
| 08/06/1999 | $7.78 |
| 08/07/1999 | $7.93 |
| 08/10/1999 | $7.86 |
| 08/11/1999 | $7.55 |
| 08/12/1999 | $7.57 |
| 08/13/1999 | $7.55 |
| 08/14/1999 | $7.50 |
| 08/17/1999 | $7.50 |
| 08/18/1999 | $8.03 |
| 08/19/1999 | $8.08 |
| 08/20/1999 | $7.99 |
| 08/21/1999 | $7.82 |
| 08/24/1999 | $7.57 |
| 08/25/1999 | $7.08 |
| 08/26/1999 | $6.27 |
| 08/27/1999 | $5.89 |
| 08/28/1999 | $5.66 |
| 08/31/1999 | $5.13 |
| 09/01/1999 | $5.36 |
| 09/02/1999 | $6.19 |
| 09/03/1999 | $5.83 |
| 09/04/1999 | $5.77 |
| 09/08/1999 | $6.21 |
| 09/09/1999 | $6.02 |
| 09/10/1999 | $5.59 |
| 09/11/1999 | $5.47 |
| 09/14/1999 | $5.74 |
| 09/15/1999 | $6.04 |
| 09/16/1999 | $5.91 |
| 09/17/1999 | $5.93 |

| Date | Artificial Inflation Rate Per Share |
|------|-------------------------------------|
| 09/18/1999 | $6.44 |
| 09/21/1999 | $6.36 |
| 09/22/1999 | $6.78 |
| 09/23/1999 | $6.76 |
| 09/24/1999 | $6.53 |
| 09/25/1999 | $5.89 |
| 09/28/1999 | $5.72 |
| 09/29/1999 | $5.43 |
| 09/30/1999 | $5.15 |
| 10/01/1999 | $5.99 |
| 10/05/1999 | $4.20 |
| 10/06/1999 | $4.18 |
| 10/07/1999 | $3.90 |
| 10/08/1999 | $3.75 |
| 10/09/1999 | $3.64 |
| 10/12/1999 | $4.05 |
| 10/13/1999 | $3.98 |
| 10/14/1999 | $3.86 |
| 10/15/1999 | $3.86 |
| 10/16/1999 | $3.79 |
| 10/19/1999 | $3.84 |
| 10/20/1999 | $4.39 |
| 10/21/1999 | $3.90 |
| 10/22/1999 | $3.94 |
| 10/23/1999 | $3.64 |
| 10/26/1999 | $3.64 |
| 10/27/1999 | $3.84 |
| 10/28/1999 | $4.24 |
| 10/29/1999 | $4.37 |
| 10/30/1999 | $4.54 |
| 11/02/1999 | $4.81 |
| 11/03/1999 | $5.30 |
| 11/04/1999 | $5.60 |
| 11/05/1999 | $5.96 |
| 11/06/1999 | $5.98 |
| 11/09/1999 | $6.06 |

| Date | Artificial Inflation Rate Per Share |
|------|-------------------------------------|
| 11/10/1999 | $5.89 |
| 11/11/1999 | $5.72 |
| 11/12/1999 | $5.45 |
| 11/13/1999 | $5.51 |
| 11/16/1999 | $5.70 |
| 11/17/1999 | $5.76 |
| 11/18/1999 | $5.93 |
| 11/19/1999 | $6.10 |
| 11/20/1999 | $6.04 |
| 11/23/1999 | $6.06 |
| 11/24/1999 | $5.85 |
| 11/25/1999 | $5.76 |
| 11/27/1999 | $5.76 |
| 11/30/1999 | $5.83 |
| 12/01/1999 | $5.72 |
| 12/02/1999 | $5.68 |
| 12/03/1999 | $5.66 |
| 12/04/1999 | $3.49 |
| 12/07/1999 | $1.54 |
| 12/08/1999 | $1.58 |
| 12/10/1999 | $1.58 |
| 12/11/1999 | $1.65 |
| 12/14/1999 | $1.54 |
| 12/15/1999 | $1.61 |
| 12/16/1999 | $1.56 |
| 12/17/1999 | $1.54 |
| 12/18/1999 | $1.64 |
| 12/21/1999 | $1.70 |
| 12/22/1999 | $1.60 |
| 12/23/1999 | $1.63 |
| 12/24/1999 | $1.63 |
| 12/28/1999 | $1.72 |
| 12/29/1999 | $1.74 |
| 12/30/1999 | $1.76 |
| 12/31/1999 | $1.86 |

**Exhibit B – Federal Judicial Center Illustrative Form of Class Action Notice for Products Liability Class Action Certification and Settlement: Full Notice**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF STATE

# If you were ever exposed to asbestos in ABC Corporation products, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide $270 million to pay claims from those who are currently suffering from an asbestos-related disease, as well as those exposed but not sick, who need medical monitoring.

- To qualify, you must have been exposed to asbestos in ABC Corporation products. Your exposure may have happened in different ways:

  o **Homeowners may have had ABC's Xinsulation in their attics or walls.**
  o **Workers may have installed ABC building products like Xbestos.**

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against ABC, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ............................................... PAGE 3
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ...................................... PAGE 4
5. How do I know if I am part of the settlement?
6. Which ABC products are included?
7. If I was exposed but do not have any disease, am I included?
8. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ................... PAGE 5
9. What does the settlement provide?
10. What can I get from the settlement?
11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ...... PAGE 7
12. How can I get a payment?
13. When would I get my payment?
14. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................. PAGE 7
15. How do I get out of the settlement?
16. If I don't exclude myself, can I sue ABC for the same thing later?
17. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................ PAGE 8
18. Do I have a lawyer in the case?
19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................. PAGE 8
20. How do I tell the Court that I don't like the settlement?
21. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................ PAGE 9
22. When and where will the Court decide whether to approve the settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING** .............................................. PAGE 10
25. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................... PAGE 10
26. Are there more details about the settlement?
27. How do I get more information?

# BASIC INFORMATION

## 1. Why did I get this notice package?

You or someone in your family may have owned or lived in a home or other property with Xinsulation. Or you or a family member may have worked around Xbestos, Xinsulation, or other asbestos-containing products made or sold by ABC Corporation.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *Smith et al v. ABC Corporation*, Case No. CV-00-1234. The people who sued are called Plaintiffs, and the company they sued, ABC, is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The lawsuit claimed that exposure increased the risk of developing asbestosis, mesothelioma, lung cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies they did anything wrong.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case Frederick Smith), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for everyone who was injured or exposed.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

### 5. How do I know if I am part of the settlement?

Judge Jones decided that everyone who fits this description is a Class Member: *All people exposed to asbestos fibers in any ABC Corporation product any time before Month 00, 0000.*

### 6. Which ABC products are included?

If you're not sure whether you were exposed to ABC products, look at these pictures and captions:

#### DID YOU WORK AROUND OR INSTALL ABC BUILDING PRODUCTS?

ABC made Xbestos, Xinsulation, and other building products called Ybestos and Zbestos. These products were sprayed on during the construction of high-rise office buildings and many other structures and homes. You may have been exposed to asbestos by either installing the products directly, or simply by working at the site. You may have brought asbestos fibers home on your clothing, exposing your family.



#### DID YOUR HOME EVER HAVE XINSULATION?

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. It's shaped like a small cotton ball, varying from silver-blue to gray-black. It is layered with a glittery, puffy appearance that may have a translucent or brownish hue. After years in the attic, the granules may darken to black or gray. **Be careful not to disturb it.** It may be underneath other types of insulation. The settlement provides for someone to come and test it for you, if you call and ask.



**Did a family member ever work around ABC's asbestos products? He or she may be included.**

**Did your home or property ever have Xinsulation? You're included even if you don't live there anymore.**

### 7.  If I was exposed but do not have any disease, am I included?

Yes.  You don't have to have a disease to be part of this settlement.  The Class includes all those who have certain asbestos-related diseases.  The Class also includes those who were exposed but are not currently suffering from an asbestos-related disease and who may need medical monitoring—even those who haven't visited a doctor.  The settlement payments are different for sick and for healthy people.

### 8.  I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help.  You can call 1-800-000-0000 and ask for an independent inspector to come see if your insulation is Xinsulation.  **Some government agencies warn that the asbestos in Xinsulation is dangerous to your health, so do not disturb it.**  For more information, you can also visit the website, www.ABCsettlement.com.  Or you can fill out and return the claim form described on page 7, in question 12, to see if you qualify.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 9.  What does the settlement provide?

ABC has agreed to create an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and another $70 million Medical Monitoring Fund for assessing the health of those who were exposed but not currently suffering from an asbestos-related disease.  ABC will also pay claims for future injuries among Class Members already exposed who request medical monitoring.

### 10.  What can I get from the settlement?

## ARE YOU INJURED?

If you have been diagnosed with an asbestos-related disease, you may be eligible for payment from the Injury Compensation Fund.  These are the payment amounts for specific asbestos-related diseases:

| INJURY COMPENSATION FUND PAYMENTS | | | |
|---|---|---|---|
| Disease | Minimum | Maximum | Average |
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

If, after everyone sends in claim forms, the injury compensation claims total more than $200 million, the payments will be reduced.  If the injury compensation claims are less than $200 million, the payments will be increased.

Your payment will be based on how severe your disease is, your medical expenses, and your lost earnings.  To get the minimum payment in the table above, you do not have to detail your expenses or lost earnings.  To get larger amounts up to the maximum amount, you'll have to prove your medical expenses and document your lost earnings.

## WERE YOU EXPOSED TO ASBESTOS?  HAVE YOU BEEN TESTED?

If you were exposed to one or more of ABC's asbestos-containing products, but you are *not* currently suffering from an asbestos-related disease, you may be eligible for payment from the Medical Monitoring Fund according to this table:

| MEDICAL MONITORING FUND PAYMENTS | | |
|---|---|---|
| Exposure to Asbestos | Medical Expenses | Payment |
| You have evidence of exposure to asbestos in an ABC product. | You *do* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 or your actual expenses, whichever is greater. |
| | You *don't* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 |

If, after everyone sends in claim forms, the medical monitoring claims total more than $70 million, the payments will be reduced.  If the total medical monitoring claims are less than $70 million, the payments will be increased.

### 11.  What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**If you were exposed to asbestos in ABC products before Month 00, 0000, you must send in a claim form now, or you will not be able to get a payment under this settlement for injuries that develop in the future.**  If you do send a claim form now, and in the future you develop symptoms of the diseases listed in the table on page 5, in question 10, you will be eligible for a payment as shown in that table.

If, in the future, you determine that you need medical monitoring from exposure that took place *after* Month 00, 0000, then you are not bound by this settlement for those claims.  This means you can pursue your claims separately from this settlement with your own lawyer.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

### 12. How can I get a payment?

To qualify for payment, you must send in a claim form. A claim form is attached to this Notice. You can also get a claim form on the Internet at www.ABCsettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

For an injury compensation claim, you'll have to send in a statement from a doctor with a description of your current medical condition, including a diagnosis of one of the types of diseases in the table on page 5, in question 10. For a medical monitoring claim, you have to show that you were exposed to ABC products. You may be asked for additional documentation. Follow all the instructions on the claim form.

### 13. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement. If Judge Jones approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement. Please be patient.

### 14. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against ABC about the legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue ABC, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

### 15. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Smith v. ABC*. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **Month 00, 0000**, to:

ABC Exclusions
P.O. Box 0000
City, ST 00000-0000

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) ABC in the future.

### 16. If I don't exclude myself, can I sue ABC for the same thing later?

No. Unless you exclude yourself, you give up the right to sue ABC for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

### 17. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against ABC.

# THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

The Court asked the law firms of Lawfirm One LLP, of City, ST, and Lawfirm Two P.C., of City, ST, to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 19. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses up to $23,990,000, and a payment of $10,000 to the Class Representative, Frederick Smith. The Court may award less than these amounts. ABC will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payments to Class Members. ABC has agreed not to oppose these fees and expenses. ABC will also separately pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

### 20. How do I tell the Court that I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object,

you must send a letter saying that you object to *Smith v. ABC*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

### 21. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 10:00 a.m. on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

### 23. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 24. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Smith v. ABC*." Be sure to include

your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses on page 9, in question 20.  You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

### 25.  What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement.  But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against ABC about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

### 26.  Are there more details about the settlement?

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.ABCsettlement.com.

### 27.  How do I get more information?

You can call 1-800-000-0000 toll free; write to ABC Settlement, P.O. Box 000, City, ST 00000-0000; or visit the website at www.ABCsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE:  MONTH 00, 0000.

Exhibit C - Unopposed Motion for Leave to File Motion to Reconsider Order Striking Objection Filed by Sam A. Miorelli filed in *Zepeda v. PayPal, Inc.*, Case No. 10-cv-02500-SBA, Dkt 323 (N.D. Cal. June 2, 2016).

1    Sam A. Miorelli, E.I., Esq. (*Pro Se*)
2    764 Ellwood Avenue
     Orlando, FL 32804
3    Telephone: (352) 458-4092
     E-Mail: sam.miorelli@gmail.com
4

F I L E D

JUN - 2 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA – OAKLAND BRANCH

| | |
|---|---|
| MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN, BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PAYPAL, INC., a Delaware Corporation, <br><br> Defendant. | Case No.: 10-CV-02500-SBA <br><br> **UNOPPOSED MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER ORDER STRIKING OBJECTION FILED BY SAM A. MIORELLI** <br><br> Judge:     Hon. Saundra Brown Armstrong |

PLEASE TAKE NOTICE that class member Sam A. Miorelli, E.I., Esq., hereby moves for leave to file a Motion to this Court to reconsider its Order Striking Objection Filed by Sam A. Miorelli (Dkt 319). Mr. Miorelli, appearing in the instant case *pro se*, moves for leave to file a Motion to Reconsider pursuant to Local Rule 7-9 on the following grounds:

     1.      That Mr. Miorelli has shown reasonable diligence in bringing the instant motion; and

     2.      That the Order Striking Objection Filed by Sam A. Miorelli represents a manifest failure by the Court to consider material facts before the Court prior to its Order Striking Objection Filed by Sam A. Miorelli.

     DATED: June 1, 2016

                                       Sam A. Miorelli, E.I., Esq. (*pro se*)
                                       764 Ellwood Avenue
                                       Orlando, FL 32804
                                       Telephone: 352-458-4092
                                       E-Mail: sam.miorelli@gmail.com

# TABLE OF CONTENTS

I.      Introduction...................................................................................................... 1

II.     Mr. Miorelli has shown reasonable diligence in bringing the instant motion. ........ 1

III.    The Order Striking Objection Filed by Sam A. Miorelli represents a manifest failure
        by the Court to consider material facts before the Court prior to its Order Striking
        Objection Filed by Sam A. Miorelli. .................................................................... 1

        A.    The Order does not consider the express terms of the Class Notice regarding
              filing *or postmark* deadline for objections.................................................. 2

        B.    The Order does not consider that a class action objection is not a motion and
              thus not subject to the terms of the Standing Order......................................... 3

IV.     CONCLUSION................................................................................................... 4

UNOPPOSED MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER
ORDER STRIKING OBJECTION FILED BY SAM A. MIORELLI

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER ORDER STRIKING OBJECTION FILED BY SAM A. MIORELLI

### I.    Introduction.

Sam A. Miorell, E.I., Esq. is a member of the Claims Class and filed his *pro se* Objection in this case with a postmark of May 10, 2016. (Dkt 318 and Declaration of Sam Miorelli in Support of Motion for Leave to File Motion to Reconsider Order Striking Objection Filed By Sam A. Miorelli ("Miorelli Declaration")). This Court, *sua sponte*, struck Mr. Miorelli's Objection on the grounds that it was untimely, having been delivered to the Clerk on May 12, 2016, and for violating the Court's Standing Order. (Dkt 319, the "Order"). Mr. Miorelli herein moves, pursuant to Local Rule 7-9 for the Court to grant leave to file a motion to reconsider its decision.

### II.    Mr. Miorelli has shown reasonable diligence in bringing the instant motion.

Mr. Miorelli received the Court's Order on Wednesday, May 18, 2016. (Miorelli Declaration at ¶2). In compliance with the Court's Meet and Confer rule, Mr. Miorelli provided a draft of the instant motion to counsel for Plaintiffs and PayPal on Saturday, May 21, 2016. *Id.* at ¶4. Mr. Miorelli engaged in telephone and e-mail discussions with counsel for both sides almost every day, resulting in Plaintiffs stating they have no objection to the instant motion on May 25, 2016 and Defendants stating they have no objection to the Court withdrawing the Order on June 1, 2016. *Id.* The instant motion was transmitted by overnight delivery service the same day.

This speedy filing and Mr. Miorelli's compliance with the Court's meet and confer requirement in its Standing Order shows Mr. Miorelli's diligence in presenting the instant motion.

### III.    The Order Striking Objection Filed by Sam A. Miorelli represents a manifest failure by the Court to consider material facts before the Court prior to its Order Striking Objection Filed by Sam A. Miorelli.

As Mr. Miorelli will present in a more-thorough motion to reconsider, should the Court grant leave, Mr. Miorelli believes the Court's Order represents a manifest failure to consider material facts before the Court prior to issuing its Order.

-1-

A. The Order does not consider the express terms of the Class Notice regarding filing *or postmark* deadline for objections.

Specifically, the Order does not consider the fact that the Class Notice specifies the deadline for filing objections as follows:

> All objections must be in writing and must: (i) clearly identify the case name and number (Zepeda v. PayPal, Case Number 10-cv-02500-SBA); (ii) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, or by filing them in person at any location of the United States District Court for the Northern District of California; (iii) be filed and/or postmarked on or before May 10, 2016; (iv) include your name, address and telephone number; (v) include an e-mail address associated with your PayPal account(s); (vi) include a sentence confirming, under penalty of perjury, that you are a Settlement Class Member; (vii) identify the factual basis and legal grounds for the objection to the Settlement; (viii) identify any witnesses whom you may call to testify at the Final Approval Hearing; and (ix) include copies of any exhibits you intend to offer into evidence at the Final Approval Hearing.

Class Notice at 6, § 17.[1] Section (iii) clearly allows an objection to be *postmarked* on or before May 10, 2016. *Id.* It appears, having reviewed the Court's Order, that there is a discrepancy between the Class Notice, which requires a postmark by May 10, 2016, and the Order Setting Final Approval Schedule, which requires objections and requests to appear to be filed by May 10, 2016. *Compare* Class Notice at 6 *with* Dkt 290 at 3:10-11. As applied to Mr. Miorelli's Objection, these terms conflict. In the event, such as here, where there is an ambiguity between the terms of the Class Notice and other orders of the Court, Mr. Miorelli would argue in a permitted motion to reconsider that the Class Notice must prevail as it is the Class Notice which is communicated to the class members and forms the due process basis allowing those absent parties' claims to be resolved.

---

[1] It appears that the final version of the Class Notice posted on the settlement website at https://www.accountholdsettlement.com/Content/Documents/Notice.pdf has not been filed in the docket of the Court in the form of a declaration as of this time as the Court's deadline for such certification is not until "seven (7) days before the Final Approval Hearing." (Dkt 290 at 3:24). Citations to the "Class Notice" refer to the document posted on the settlement website as of the date of this filing.

-2-

Case 4:10-cv-02300-SBA   Document 323   Filed 08/02/16   Page 5 of 8

1    As the Class Notice had been presented to the Court and approved, the lack of consideration

2    of its express terms in the Court's Order represents a manifest failure of the Court to consider a

3    material fact before it at the time it issued its Order which Mr. Miorelli seeks leave to file a motion

4    for the Court to reconsider.

5          B.   <u>The Order does not consider that a class action objection is not a motion and thus not
     subject to the terms of the Standing Order.</u>

6

7    The Court's Standing Order, effective May 1, 2015, reads in relevant part: "Page Limits: All

8    noticed civil motions (other than motions for summary judgment) and any opposition thereto, shall

9    not exceed *fifteen (15) pages* in length, exclusive of the table of contents, table of authorities,

10   exhibits and declarations, if required." Senior U.S. District Judge Saundra Brown Armstrong,

11   "Standing Order – General" (May 1, 2015), http://www.cand.uscourts.gov/filelibrary/342/00%20-

12   %20SBA%20Standing%20Order%2005-01-15.pdf (the "Standing Order").

13   The Standing Order makes no mention of objections to class action settlements.

14   Additionally, the Court held that the Standing Order "clearly state[s] that briefs (other than those

15   relating to summary judgment motions) are limited to fifteen pages." (Dkt 319 at 1:15-16).

16   However, the Standing Order actually only uses the word "brief" or any variation thereof once, in

17   reference to a ten-page limit to reply briefs. It does not order a general limitation on the length of all

18   legal documents or memoranda presented to the Court. The fifteen-page limit in the Standing Order

19   only applies to "noticed civil motions (other than motions for summary judgment) and any

20   opposition thereto."

21   Mr. Miorelli believes that the failure of the Court to distinguish between a motion and an

22   objection to class action settlement is a manifest failure to consider the express terms of the

23   Standing Order and the unique nature of a class action objection under the Federal Rules of Civil

24   Procedure. If granted leave to file a motion to reconsider, Mr. Miorelli would present facts and law

25   to argue that an objection to final approval of a class action settlement is not a "motion" within the

26   Federal Rules of Civil Procedure's definition of the term. As such, Mr. Miorelli would argue that

27   the Standing Order's page limitation was inapplicable. In the alternative Mr. Miorelli would present

28   law and facts to argue that it was an abuse of the Court's discretion to strike his Objection entirely

1    as a sanction for non-willful noncompliance with the Standing Order and that Mr. Miorelli should

2    be at least granted leave to re-file the objection in compliance with the fifteen-page limitation.

3    **IV.    CONCLUSION**

4          For the reasons set forth above, Mr. Miorelli respectfully requests leave of the Court to file a

5    motion for the Court to reconsider its Order Striking Objection Filed by Sam A. Miorelli.

6    DATED: June 1, 2016

7

8                         Sam A. Miorelli, E.I., Esq. (*pro se*)

9                         764 Ellwood Avenue

                          Orlando, FL 32804

10                        Telephone: 352-458-4092

11                        E-Mail: sam.miorelli@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNOPPOSED MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER
ORDER STRIKING OBJECTION FILED BY SAM A. MIORELLI

1    **CERTIFICATE OF SERVICE**

2    The undersigned certifies that the foregoing Motion for Leave to File Motion to Reconsider

3    Order Striking Objection Filed by Sam A. Miorelli and Exhibits were transmitted this 1st Day of

4    June, 2016 via FedEx Express Overnight Delivery to:

5    Class Action Clerk
     United States District Court for the Northern District of California
6    1301 Clay Street
     Oakland, CA 94612
7

8    The undersigned further certifies that the foregoing Motion to Reconsider Order Striking

9    Objection Filed by Sam A. Miorelli and Exhibits were served this 1st Day of June, 2016 via U.S.

10   First Class Mail upon the following:

11   Michael Vincent Storti              Mark N. Todzo
     P.O. Box 369                        Lexington Law Group, LLP
12   Carlsbad, CA 92018                  503 Divisadero Street
                                         San Francisco, CA 94117
13
     Alfredo Torrijos
14   Arias Sanguinetti Stahle & Torrijos, LLP    Seth Michael Lehrman
     6701 Center Drive West, 14th Floor          Farmer, Jaffe, Weissing, Edwards, Fistos &
15   Los Angeles, CA 90045                       Lehrman, P.L.
                                                 425 North Andrews Avenue
16   Brian Stephen Kabateck             Suite 2
     Richard Kellner                    Fort Lauderdale, FL 33301
17   Kabateck Kellner LLP
18   644 South Figueroa Street          Marina Trubitsky
     Los Angeles, CA 90017              Law Office of Marina Trubitsky
19                                      11 Broadway
     Howard Judd Hirsch                 Suite 861
20   Lexington Law Group               New York, NY 10004
     1627 Irving Street
21   San Francisco, CA 94122-1813      Benjamin Taylor Potter
                                        David Wesley Moon
22   Jeffrey A Leon                     Julia B. Strickland
23   Quantum Legal LLC                  Stroock & Stroock & Lavan LLP
     513 Central Avenue                 2029 Century Park East Suite 1600
24   Suite 300                          Los Angeles, CA 90067-3086
     Highland Park, IL 60035
25                                      Matt Kurilich
26   Jonathan Shub                      17321 Irvine Blvd
     Kohn, Swift & Graf, P.C.           Suite 115
27   One South Broad Street             Tustin, CA 92780
     Suite 2100
28   Philadelphia, PA 19107

-5-

1   Anthony Albert Ferrigno
    Law Ofcs of Anthony A. Ferrigno                Pamela Elizabeth Havird
2   1116 Ingleside Ave                             Law Offices of Pamela E. Havird
    Athens, TN 37303                               P O Box 375
3                                                  La Jolla, CA 92038

4   John David Franklin
    Franklin & Franklin
5   402 West Broadway
    Suite 1140
6   San Diego, CA 92101

7

8                                                  Sam A. Miorelli, E.I., Esq.

9

10                        **MEET AND CONFER CERTIFICATION**

11          Mr. Miorelli contacted Class Counsel and counsel for PayPal regarding this Motion to

12   Reconsider Order Striking Objection Filed by Sam A. Miorelli. Class Counsel indicated he did not

13   object to the foregoing. Counsel for PayPal indicated he did not object to the foregoing and to the

14   ultimate withdrawal of the Order.

15                                                 Sam A. Miorelli, E.I., Esq.

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            -6-
                 UNOPPOSED MOTION FOR LEAVE TO FILE MOTION TO RECONSIDER
                   ORDER STRIKING OBJECTION FILED BY SAM A. MIORELLI

Exhibit D – Order Granting Unopposed Motion for Reconsideration issued in
*Zepeda v. PayPal, Inc.*, Case No. 10-cv-02500-SBA, Dkt 331
(N.D. Cal. July 26, 2016).

1                UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                    OAKLAND DIVISION

| | |
|---|---|
| MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN, BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>PAYPAL, INC., E-BAY INC., and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No: C 10-2500 SBA<br><br>Related to:<br>No. C 10-1668 SBA<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR RECONSIDERATION**<br><br>Dkt. 323 |

Having read and considered pro se attorney Sam Morelli's ("Morelli") unopposed motion for leave to file a motion for reconsideration,

IT IS HEREBY ORDERED THAT the motion is GRANTED IN PART and DENIED IN PART. The Court vacates its Order Striking Objection Filed by Sam A. Morelli, Dkt. 319. Morelli may refile his objection, provided that it does not exceed fifteen pages in length. Should Morelli elect to refile his objection, he shall do so by no later than August 1, 2016. The deadlines for the opposition and reply shall be in accordance with Civil Local Rule 7-3(a) and (c). Pursuant to the Court's Standing Orders, the page limits applicable to motions (other than motions for summary judgment) shall apply to the objection, opposition and reply. The Court may rule on Morelli's objection without oral argument. Civ. L.R. 7-1(b).

IT IS SO ORDERED.

Dated: 7/26/16

                               *Saundra B Armstrong*
                              SAUNDRA BROWN ARMSTRONG
                              Senior United States District Judge

Exhibit E – Stipulation and Order Vacating Final Approval Hearing Date and
Briefing Schedule issued in *Zepeda v. PayPal, Inc.*, Case No. 10-cv-02500-SBA,
Dkt 329 (N.D. Cal. July 6, 2016).

1   STROOCK & STROOCK & LAVAN LLP
    JULIA B. STRICKLAND (State Bar No. 083013)
2   DAVID W. MOON (State Bar No. 197711)
    2029 Century Park East, Suite 1800
3   Los Angeles, CA  90067-3086
    Telephone: 310-556-5800
4   Facsimile: 310-556-5959
    Email: *lacalendar@stroock.com*
5
    Attorneys for Defendants
6   PAYPAL, INC. and EBAY INC.

7

8

9                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA
10
                           OAKLAND DIVISION
11

12  MOISES ZEPEDA, MICHAEL SPEAR,          )  Case No. 10-CV-02500 SBA
    RONYA OSMAN, BRIAN PATTEE,             )
13  CASEY CHING, DENAE ZAMORA,             )  Related to : Case No. 10-CV-1668 SBA
    MICHAEL LAVANGA, and GARY              )
14  MILLER, on behalf of themselves and all others )
    similarly situated,                    )  **STIPULATION AND [PROPOSED]**
15                                         )  **ORDER SETTING FINAL APPROVAL**
                    Plaintiffs,            )  **HEARING DATE AND BRIEFING**
16                                         )  **SCHEDULE**
          v.                               )
17                                         )
    PAYPAL, INC., et al.,                  )
18                                         )
                    Defendants.            )
19  _____ )

20

21

22

23

24

25

26

27

28

──────────────────────────────────────────────────────────
    STIPULATION AND [PROPOSED] ORDER RE FINAL APPROVAL HEARING AND BRIEFING SCHEDULE
                                            CASE NO. 10-CV-02500 SBA
    LA 51997306V1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1  Plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae

2  Zamora, Michael Lavagna and Gary Miller (together, "Plaintiffs") and defendants PayPal, Inc.

3  ("PayPal") and eBay Inc. (together, "Defendants"), through their undersigned counsel of record,

4  stipulate as follows:

5  WHEREAS, on November 5, 2015, this Court entered an Order Granting Plaintiffs' Motion

6  for Preliminary Approval of Amended Class Action Settlement Agreement (ECF No. 281) and, on

7  January 28, 2016, entered an Order Setting Final Approval Schedule (the "Scheduling Order")

8  (ECF No. 290);

9  WHEREAS, a subset of Settlement Class Members were inadvertently not served with class

10  notice, in accordance with the Scheduling Order, on or before April 10, 2016 (the "Additional

11  Settlement Class Members");

12  WHEREAS, pursuant to the Scheduling Order, any responses to objections to the parties'

13  Settlement Agreement (ECF No. 275-2) and any papers in support of final approval thereof were to

14  be filed on or before June 13, 2016, and the Final Approval Hearing was scheduled to take place on

15  July 13, 2016 at 1:00 PM;

16  WHEREAS, the Scheduling Order provides, in pertinent part, that: "[t]he Final Approval

17  Hearing may be postponed, adjourned, or continued by order of the Court without further notice to

18  the Settlement Class";

19  WHEREAS, on June 10, 2016, the Court entered an Order (ECF No. 325) vacating the

20  Final Approval Hearing date and briefing schedule and directed the parties to submit a proposed,

21  revised schedule for the Final Approval Hearing and related dates and deadlines;

22  IT IS HEREBY STIPULATED, by and between Plaintiffs and Defendants, through their

23  respective counsel of record, as follows:

24  1.  The deadline for PayPal to provide summary Email Notice to Additional Settlement

25  Class Members, pursuant to paragraph 3 of the Scheduling Order, shall be extended until August

26  15, 2016.

27  2.  The deadline for the Settlement Administrator to provide Supplemental summary

28

-1-

1    Postcard Notice to Additional Settlement Class Members, pursuant to paragraph 6 of the

2    Scheduling Order, shall be extended until September 14, 2016.

3         3.    The deadline for Claim Forms to be submitted by Additional Settlement Class

4    Members, pursuant to paragraph 7 of the Scheduling Order, shall be extended until October 14,

5    2016.

6         4.    The deadline for Additional Settlement Class Members to exclude themselves from

7    the Claims Class by mailing a request for exclusion, pursuant to paragraph 8 of the Scheduling

8    Order, shall be extended until October 14, 2016.

9         5.    The deadline for Defendants to exercise their right to terminate the Settlement

10   Agreement, pursuant to paragraph 9 of the Scheduling Order, shall be extended until November 3,

11   2016.

12        6.    The deadline for Additional Settlement Class Members to object to the fairness,

13   reasonableness, or adequacy of the Settlement, the request for an award of fees and costs to Class

14   Counsel or the awards to the Settlement Class representatives, pursuant to paragraph 10 of the

15   Scheduling Order, is extended until October 14, 2016.

16        7.    Any responses to objections to the Settlement Agreement and any papers in support

17   of the Settlement shall be filed with the Court at least thirty (30) days before the Final Approval

18   Hearing.

19        8.    No later than seven (7) days before the Final Approval Hearing, Defendants or the

20   Settlement Administrator shall file with the Court a declaration verifying that notice has been

21   provided to the Settlement Class as set forth in the Scheduling Order and/or this Order.

22   ///

23   ///

24   ///

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

-2-

LA 51997306V1

9.    The Final Approval Hearing shall be held before the Honorable Saundra B. Armstrong, Courtroom 1, Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, on December 14, 2016 at 1:00 PM.  The Final Approval Hearing may be postponed, adjourned, or continued by order of the Court without further notice to the Settlement Class.

Dated: June 24, 2016                   Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP


By: /s/ David W. Moon
          David W. Moon

Attorneys for Defendants
PAYPAL, INC. and EBAY INC.

Dated: June 24, 2016                   LEXINGTON LAW GROUP


By: /s/ Mark Todzo
          Mark Todzo

Attorneys for Plaintiffs
MOISES ZEPEDA, MICHAEL SPEAR,
RONYA OSMAN, BRIAN PATTEE,
CASEY CHING, DENAE ZAMORA,
MICHAEL LAVANG and
GARY MILLER


## [PROPOSED] ORDER

PURSUANT TO THE STIPULATION, IT IS SO ORDERED.


Dated: July 6, 2016                    _____
                                       HON. SAUNDRA BROWN ARMSTRONG
                                       UNITED STATES DISTRICT JUDGE

STIPULATION AND [PROPOSED] ORDER RE FINAL APPROVAL HEARING AND BRIEFING SCHEDULE
CASE NO. 10-CV-02500 SBA

LA 51997306V1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086