FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 09 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: The Home Depot, Inc., Consumer Data Security Breach Litigation | ) Case No.: 1:14-md-02583-TWT ) ) |
| This Document Relates to: | ) ) |
| CONSUMER CASES | ) ) ) |

## DECLARATION OF SAM A. MIORELLI, E.I., ESQ. IN SUPPORT OF OBJECTOR MIORELLI'S RESPONSE TO CONSUMER PLAINTIFFS' EMERGENCY MOTION TO STRIKE OBJECTION OF SAM A. MIORELLI, E.I., ESQ. OR IN THE ALTERNATIVE TO EXTEND THE PAGE LIMIT FOR CONSUMER PLAINTIFFS TIME TO REPLY AND COMPEL HIS ATTENDANCE AT THE FINAL HEARING AND DEPOSITION

I, Sam A. Miorelli, E.I., Esq., declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am over 18 years old, a member in good standing of the Florida Bar, and reside at 764 Ellwood Avenue, Orlando, FL 32804.

2.      On July 21, 2016, John A. Yanchunis called me and we began a discussion of the terms under which I would be deposed in relation to the above-captioned case. I asked Mr. Yanchunis several questions regarding his planned deposition, but other than describing the location of his firm's offices in downtown Orlando, he did not answer any of my questions. Mr. Yanchunis insisted that a deposition must occur by Friday, July 29, 2016.

3.      I did not agree to that date or that week as I knew I would be traveling to San Francisco, CA on July 28, 2016 for the final fairness hearing in *In re Carrier IQ* before the U.S. District Court for the Northern District of California. That flight itinerary included me leaving Orlando at 6:10 a.m. on Delta Flight 1391, arriving in Oakland, CA at 10:33 a.m., attending the final fairness hearing at 1:30 p.m. in downtown San Francisco, and returning to Orlando on flights leaving San Francisco at 6:35 p.m., connecting through Salt Lake City, and arriving at Orlando International Airport at approximately 5:01 a.m., about 23 hours after I departed. Clearly that was going to be a long and exhausting day and nobody would want to attend a deposition just a few hours later, let alone defend their own deposition *pro se* a few hours later. A true and correct redacted copy of the receipt for those flights are attached as Exhibit A.

4.      During that call we did not agree to anything other than that we would talk again the following day and that whenever we had a deposition, that it would be at his firm's offices in downtown Orlando.

5.      On July 22, 2016, Mr. Yanchunis called me again. During this call Mr. Yanchunis insisted there was already a protective order in place that accommodated all of my confidentiality concerns. However, Mr. Yanchunis did not know, or at least would not provide, the docket number or name for such

purported protective orders in the docket of the above-captioned case. Mr. Yanchunis again would not answer any questions regarding the scope of his proposed deposition. Toward the end of the call, Mr. Yanchunis seemed agitated as I pressed for details and seemed to suggest he expected to conduct a deposition the following Friday before he ended the call abruptly.

6.      Concerned that the phone calls could lead to a misunderstanding, I researched the existing protective orders in the case and prepared a letter expressing my disagreement with Mr. Yanchunis' insisted timeline and also my concern regarding confidentiality, which I transmitted to Mr. Yanchunis by e-mail that day. A few minutes later I received an e-mail from a paralegal at Mr. Yanchunis' firm purporting to have a notice of deposition attached. I promptly replied to inform them of the obvious misunderstanding and to alert numerous people copied on the paralegal's e-mail to my communications with Mr. Yanchunis.

7.      Mr. Yanchunis initially replied claiming confusion from my letter and reiterating his mistaken belief that I had agreed to a deposition on a date which no rational person, having arrived in Orlando a few hours earlier on a red eye flight, would ever have agreed to. I attempted to calmly explain that we had a misunderstanding, apologized for whatever part I played in that

3

misunderstanding, and expressed my intention to constructively engage with Mr. Yanchunis in discussions of a more-fulsome confidentiality agreement. Mr. Yanchunis replied with an e-mail which showed an angry and pugnacious tone punctuated by spelling errors. A true and correct copy of the reply e-mail I received from Mr. Yanchunis, which below it shows the entire e-mail exchange beginning with my e-mail providing my letter described *supra*, is attached hereto as Exhibit B.

8.     On Monday, July 25, 2016, I provided Mr. Yanchunis and his co-counsel a proposed confidentiality agreement which I had worked over the weekend to prepare based on the agreement approved by the court in *Legg v. Laboratory Corporation of America Holdings*, Case No. 14-61543-CIV-RLR, Dkt 42 (S.D. Fla. Dec. 11, 2014). In an effort to encourage Mr. Yanchunis to engage, I sent the proposed confidentiality agreement in Microsoft Word format so Mr. Yanchunis could make any edits he believed proper. A true and correct copy of the proposed confidentiality agreement I sent is attached hereto as Exhibit C.

9.     Mr. Yanchunis' only response to my proposal was to point out that my proposal would have covered document production as well and to ask: "What  information do you contend that we are seeking that might be considered confidential ?" [sic – extra spaces as in original]. I interpreted the tone of this e-

4

mail to also be unnecessarily aggressive and unkind in tone. A true and correct copy of Mr. Yanchunis' reply to my e-mail providing the proposed confidentiality agreement, which also shows my e-mail which accompanied the proposed confidentiality agreement and Mr. Yanchunis' morning e-mail from the same day is attached hereto as Exhibit D.

10.     In three subsequent e-mails I sent Mr. Yanchunis, I addressed my concern with his tone and made further requests that he provide some sort of substantive response to my proposed confidentiality agreement. In Mr. Yanchunis' two replies he did not comment on the proposed confidentiality agreement at all and instead threatened to file a motion to compel my deposition. When I told Mr. Yanchunis I did not believe an order to compel was required since I had not refused to have a deposition, just had not agreed to let him railroad me into a deposition date which I had never agreed to, he did not reply and apparently he and his colleagues the "Emergency" Motion.

11.     No attorney from the Consumer Plaintiffs' Steering Committee contacted me regarding this matter other than Mr. Yanchunis until John Bevis served the "Emergency" Motion by e-mail. Beyond the matter of a deposition, Mr. Yanchunis never raised any of his other complaints about my objection raised in the "Emergency" Motion with me either orally or in writing.

12.     On August 12-13, 2016, I will be attending the Republican National Lawyers Association Election Law Seminar at the Denver Marriott City Center, 1701 California Street, Denver, CO 80202. A true and correct copy of the receipt for my payment of the $237.00 admission fee for the conference is attached hereto as Exhibit E. I was unable to find a flight schedule which would accommodate my attendance of the conference and also my attendance at the Final Fairness Hearing.

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I declare the foregoing is true and correct. Executed this 8th day of August, 2016.

Sam A. Miorelli, E.I., Esq. *pro se*

Exhibit A – Delta Flight Receipt

Receipts 2Delta Air Lines



Date of Purchase: Jul 13, 2016

# Orlando, FL ▶ to Salt Lake City, UT

Passenger Information

**SAM ANDREW MIORELLI**
SkyMiles#: ▮▮▮▮▮▮▮▮

Confirmation Number: ▮▮▮▮▮▮
Ticket Number: ▮▮▮▮▮▮5103

## FLIGHT

| Date and Flight | Status | Class | Seat/Cabin |
|---|---|---|---|
| MCO ▶ SLC | Thu 28Jul2016 | DL 1391 | | FLWN | X | 30D |
| SLC ▶ OAK | Thu 28Jul2016 | DL 1082 | | FLWN | X | 29D |
| SFO ▶ SLC | Thu 28Jul2016 | DL 1446 | | FLWN | U | 28C |
| SLC ▶ MCO | Thu 28Jul2016 | DL 1195 | | FLWN | U | 30D |

## DETAILED CHARGES

Air Transportation Charges
Base Fare:                                                                                      ▮▮▮▮ USD

**Taxes, Fees and Charges**
United States - September 11th Security Fee(Passenger Civil Aviation                            ▮▮▮▮ USD
Security Service Fee) (AY)
United States - Transportation Tax (US)                                                         ▮USD
United States - Passenger Facility Charge (XF)                                                  ▮USD
United States - Flight Segment Tax (ZP)                                                         ▮USD
**Total Price:**                                                                                ▮USD

Paid With American Express Ending 4007

## KEY OF TERMS

| | |
|---|---|
| # - Arrival date different than departure date | F - Food available for purchase |
| ** - Check-in required | L - Lunch |
| ***- Multiple meals | LV - Departs |
| *S$ - Multiple seats | M - Movie |
| AR - Arrives | R - Refreshments, complimentary |
| B - Breakfast | S - Snack |
| C - Bagels / Beverages | T - Cold meal |
| D - Dinner | V - Snacks for sale |

Check your flight information online at delta.com or call the Delta Flightline at 800.325.1999.
Baggage and check-in requirements vary by airport and airline, so please check with the operating carrier on your ticket.
Please review Delta's check-in requirements and baggage guidelines for details.
You must be checked in and at the gate at least 15 minutes before your scheduled departure time for travel inside the United States.
You must be checked in and at the gate at least 45 minutes before your scheduled departure time for international travel.
For tips on flying safely with laptops, cell phones, and other battery-powered devices, please visit http://SafeTravel.dot.gov
Do you have comments about service? Please email us to share them.

NON-REFUNDABLE / CHANGE FEE
When Using Certain Vouchers To Purchase Tickets, Remaining Credits May Not Be Refunded. Additional Charges And/Or Credits May Apply And
Are Displayed In The Sections Below.

This Ticket Is Non-Refundable Unless Issued At A Fully Refundable Fare. Any Change To Your Itinerary May Require Payment Of A Change Fee
And Increased Fare. Failure To Appear For Any Flight Without Notice To Delta Will Result In Cancellation Of Your Remaining Reservation.

All Delta Comfort+™ And Preferred Seats Are Nonrefundable.

TERMS & CONDITIONS

Air transportation on Delta and the Delta Connection® carriers is subject to Delta's conditions of carriage. They include terms governing for example:

- Limits on our liability for personal injury or death of passengers, and for loss, damage of delay of goods and baggage.
- Claim restrictions including time periods within which you must file a claim or bring action against us.
- Our right to change terms of the contract.
- Check-in requirements and other rules established when we may refuse carriage.
- Our rights and limits of our liability for delay of failure to perform service, including schedule change, substitution of alternative air carriers or aircraft, and rerouting.
- Our policy on overbooking flights, and your rights if we deny you boarding due to an oversold flight.

These terms are incorporated by reference into our contract with you. You may view these conditions of carriage on delta.com, or by requesting a copy from Delta.

You have received this email because you elected to receive your Electronic Ticket receipt sent to you via email. If you would like to take advantage of other Delta email programs featuring special fare, promotions, information and flight updates, please visit delta.com/emailprograms or flight notifications.

COPYRIGHT INFORMATION

This email message and its contents are copyrighted and are proprietary products of Delta Air Lines, Inc. Delta Blvd. P.O. Box 20706 Atlanta, GA 30320-6001. Any unauthorized use, reproduction, or transfer of this message or its contents, in any medium, is strictly prohibited.

© 2016 Delta Air Lines, Inc. All rights reserved.

Exhibit B – E-Mail Exchange July 22, 2016

 Gmail

Sam Miorelli <sam.miorelli@gmail.com>

---

**Miorelli Deposition Scheduling Letter**

---

John Yanchunis <JYanchunis@forthepeople.com>                                      Fri, Jul 22, 2016 at 7:00 PM
To: Sam Miorelli <sam.miorelli@gmail.com>
Cc: "david@hpllegal.com" <david@hpllegal.com>, Norm Siegel <siegel@stuevesiegel.com>, Roy Barnes
<roy@barneslawgroup.com>, John Bevis <bevis@barneslawgroup.com>


There was no wish understanding. You agreed to next Friday at 9 AM.

I will need to consult with my cocounsel as to whether or not I will withdraw the notice and reschedule the deposition
which you agreed to.yesterday

John Yanchunis
Morgan & Morgan Complex Litigation Group
201 North Franklin Street
7th Floor
TAMPA , Florida 33602
**Office** 813-275-5272
**Cell** 850-509-5641

On Jul 22, 2016, at 6:54 PM, Sam Miorelli <sam.miorelli@gmail.com> wrote:

> Mr. Yanchunis,
>
> I'm sorry but it appears we had a significant misunderstanding in our telephone discussions. I was of the
> impression that we were merely discussing potential availability dates and attempting to reach an
> understanding of the total time you would require of me for such a deposition as well as the topics on
> which you planned to inquire. Particularly after our extremely vague discussion of the standing protective
> order today, I realized that the lack of specificity in our telephone discussions was likely to lead to
> misunderstanding. As a result I researched the documents you mentioned and prepared the letter, which,
> as you can see, I wrote with care.
>
> To whatever extent I contributed to this misunderstanding on the phone, I sincerely apologize. I look
> forward to agreeing with you and the other plaintiffs' firms on a comprehensive confidentiality agreement
> next week and a mutually agreeable deposition date in accordance with my letter.
>
> Please confirm that you will withdraw your notice of deposition so I am not forced unnecessarily to seek a
> protective order.
>
> Thank you for your sincere attention to this matter and I hope you have a nice weekend,
>
> Sam Miorelli, E.I., Esq.
> 352-458-4092
>
> On Fri, Jul 22, 2016 at 5:00 PM, John Yanchunis <JYanchunis@forthepeople.com> wrote:
>
>> Mr. Miorelli, I am confused by your letter as you agreed yesterday to next Friday, nor did you raise an
>> objection to the date when we talked this morning. I have no problem agreeing to keep confidential
>> any information of a sensitive nature as you discuss in your letter.

**John Yanchunis**  |  Attorney at Law

<image001.png>

201 North Franklin Street, 7th Floor

Tampa, FL 33602

**Main Number:** (813) 223-5505

Direct Line:     (813) 275-5272

Cell:              (850) 509-5641

Facsimile:      (813)-222-4736

jyanchunis@forthepeople.com

**From:** Sam Miorelli [mailto:sam.miorelli@gmail.com]
**Sent:** Friday, July 22, 2016 4:53 PM
**To:** John Yanchunis x2191
**Subject:** Miorelli Deposition Scheduling Letter

Mr. Yanchunis,

Attached please find my letter to you regarding your proposed deposition, I will send a copy by U.S. First Class Mail.

Sam Miorelli, E.I., Esq.

352-458-4092

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to

which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.



**MORGAN & MORGAN** **image001.png**
COMPLEX LITIGATION GROUP          16K

<u>**Exhibit C – Proposed Confidentiality Agreement**</u>

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: The Home Depot, Inc., Consumer Data Security Breach Litigation | ) Case No.: 1:14-md-02583-TWT |
| | ) |
| | ) |
| This Document Relates to: | ) |
| | ) |
| CONSUMER CASES | ) |
| | ) |

## Stipulation Regarding Confidential Information

Plaintiffs, Objector Miorelli, and Defendant (together, the "Parties"), through their respective undersigned counsel or for themselves individually, agree and stipulate to entry of this Proposed Protective Order Regarding Confidential Information ("Protective Order") to govern the handling of documents, depositions, deposition exhibits, interrogatory responses, admissions, testimony, and any other information produced, given, or exchanged by and among the Parties and any non-parties in connection with the above-captioned matter (such information is hereinafter referred to as "Discovery Material").

1. **"Document"** means any of the items described or mentioned in Federal Rule of Civil Procedure 34(a) including, without limitation, all electronically stored information (ESI) and tangible things.

2. **"Testimony"** means testimony of any Party or witness in connection with the Litigation, including, but not limited to, deposition testimony.

3. **"Litigation"** means the above-captioned action.

4. **Use of Confidential Discovery Material.** All "Confidential" Discovery Material received by any Party from any other Party in the course of this Litigation or information derived therefrom, shall be used solely for the purposes of this Litigation, and shall not be used for any other purpose whatsoever, including, without limitation, any business or commercial purpose, any other litigation before any court, arbitration proceeding, or tribunal, and shall not be disclosed to any person except in accordance with the terms of this Protective Order.

5. **Designating Discovery Material as Confidential.** Any Party or non-party who provides or has provided Discovery Material in connection with this Litigation (a "Producing Party") may designate such Discovery Material as "Confidential" (collectively "Confidential Discovery Material"), under the terms of this Protective Order. Discovery Material may be designated "Confidential" if the Producing Party believes in good faith that the Discovery Material contains confidential, proprietary, or commercially or personally sensitive information that qualifies for protection under state and/or federal law (including, without limitation, the standards set forth

in Federal Rule of Civil Procedure 26(c)(1)). Such designations shall be conclusive as to the confidentiality of such materials, unless ordered otherwise by the Court.

6. **Manner of Designating Confidential Discovery Material.** The designation of Discovery Material as Confidential shall be made in the following manner:

    a.  In the case of documents (other than depositions or other pretrial testimony), the Producing Party shall affix the legend "Confidential" (or an equivalent marking for materials produced in electronic form), provided, however, that the failure to designate a document as "Confidential" at the time of production shall not constitute a waiver of the Producing Party's claim of confidentiality, and a Producing Party may designate a document as "Confidential" promptly after the document has been produced with the effect that the document shall be subject to the protections of this Protective Order (the Producing Party shall also produce a substitute document that is properly marked to reflect the designation); and

    b.  In the case of depositions or other pretrial testimony, a Producing Party may, during the deposition or within thirty (30) calendar days after receipt of the final deposition transcript, notify the other Parties

that the deposition includes or reveals Confidential Discovery Materials. The Party claiming confidentiality shall designate specific portions of the transcript by page and line as "Confidential." The Parties shall treat the entire transcript as Confidential until after the deadline for designation has passed; thereafter, only specifically designated testimony and exhibits shall be treated as "Confidential." For purposes of this paragraph, "final deposition transcript" means the transcript submitted by the court reporter to the witness for signature and/or correction, whether or not the witness has signed or corrected the transcript.

7. **Objections to Confidentiality Designations.** During the pendency of this Litigation, should any Party object to the designation of any Discovery Material or testimony as "Confidential," the objecting party shall notify the Producing Party in writing. The Parties shall meet and confer in good faith (which may be achieved by telephone conference) regarding the designation within fourteen (14) calendar days after the Producing Party receives any such written objection. If such conference does not resolve the objection or take place within fourteen (14) calendar days (unless mutually extended), any Party may apply to the Court, by motion, for determination as to whether the designation is appropriate. The burden of establishing

the appropriate level of confidentiality shall be on the moving party. The protection of the Confidential Discovery Material afforded by the Protective Order shall continue as originally designated until the Court issues an order on the motion.

8. **Persons to Whom Confidential Discovery Material May Be Disclosed.** Except as otherwise specifically provided in this Protective Order, Confidential Discovery Material may be disclosed, paraphrased, summarized, or otherwise communicated in whole or in part, only to the following persons, provided that such persons, other than those listed in subsections (a), (b), (d), (f), and (g) below and witnesses at a deposition or trial, sign an Agreement (in the form attached hereto as Exhibit A) that they have read this Protective Order and agree to be bound by its terms.

   a. In-house counsel for any Party engaged in the Litigation and the employees and personnel who work with such attorneys to whom it is reasonably necessary the material be shown for purposes of this Litigation;

   b. Outside counsel of record for the Parties who have appeared in the Litigation, including any attorneys in the law firms of such outside counsel assisting in the conduct of the Litigation and regular and temporary employees of such counsel assisting in the conduct of the

Litigation to whom it is reasonably necessary that the material be
shown for purposes of this Litigation;

c.  Any individual Party and employees of a corporate Party actively
engaged in assisting that Party's attorneys in the conduct of this
Litigation, to the extent reasonably necessary to enable the attorneys
for that Party to render professional services in the Litigation;

d.  Witnesses or potential witnesses in the Litigation to whom
disclosure is reasonably necessary for the purpose of factual
investigation, discovery, trial preparation, or testimony (including
depositions), provided that the witness or potential witness agrees
to treat any such Confidential Discovery Material in accordance with
this Protective Order;

e.  Experts or consultants, including litigation support vendors (*e.g.*
who provide copying, scanning, videotaping, and processing and
storing information and documents, including ESI, or other
services), who are not officers, directors, managers, or employees of
any Party but who are reasonably necessary to assist outside counsel
of record for any Party in the conduct of this Litigation ("Outside
Experts"), after such Outside Expert has signed and delivered to

counsel for the Party who engaged the Outside Expert a statement in the form annexed hereto as Exhibit A;

f.   The Court and Court personnel, including, without limitation, any settlement mediator; and

g.   Court reporters employed in connection with this Litigation.

Confidential Discovery Material may not be shared with any person other than those listed above absent court order or the written consent of the Party that produced the Confidential Discovery Material in question.

9. **Limits on Use of Confidential Discovery Material.** Every person given access to Confidential Discovery Material shall be advised by the person providing access to it that it is being disclosed pursuant to, and subject to the terms of, this Protective Order and may not be used or disclosed except in accordance with this Protective Order. No person shall make copies of Confidential Discovery Material except under the supervision of counsel (including in-house counsel) to one of the Parties. All such copies shall be designated as Confidential Discovery Material and shall be subject to this Protective Order to the same extent as the original documents or information.

10. **Use of Confidential Discovery Material in Court Proceeding.** Use of Confidential Discovery Material in any court proceeding in this Litigation

or any appeal therefrom shall not cause the Discovery Material to lose its

status as Confidential Discovery Material.

11. **Examination of Witnesses.** This Protective Order shall not be construed to

prevent examination of any person as a witness at trial or during

deposition concerning any Confidential Discovery Material. However, the

Parties agree that requests to Objector Miorelli for Discovery Material in

any form, including but not limited to depositions, shall be limited to the

following:

   a. Discovery Material tending to show or refute Objector Miorelli's

   membership in the Settlement Class; and

   b. Discovery Material directly relating to the arguments raised in

   Objector Miorelli's filings in this Litigation.

12. **Confidential Discovery Materials Filed With the Court.** If any document

filed with the Court contains Confidential Discovery Material, the

document shall be filed under seal in accordance with the Court's rules.

13. **No Prejudice to Parties' Other Rights and Obligations.** Entering into and

compliance with this Protective Order shall not expand or limit any rights

or obligations of the Parties not expressly covered by this Protective Order,

including, but not limited to, the rights or obligations of the Parties arising

out of prior Protective Orders of this court and the rights or obligations of

the Parties arising out of the Local Rules of this Court or the Court having

jurisdiction over any exchange of Discovery Materials, including the

taking of depositions.

14. **Parties' Use of Their Own Confidential Discovery Material.** This

Protective Order has no effect upon, and shall not apply to, a Party's use of

its own Confidential Discovery Material for any purpose, except that any

disclosure in Court filings of such material by the designating party

waives any obligation of other Parties to seek to file such material under

seal.

15. **Confidential Discovery Material Lawfully Obtained Outside the**

**Litigation.** Nothing herein shall impose any restrictions on the use or

disclosure by a Party of Confidential Discovery Material to the extent it

was (a) obtained lawfully by such Party independently of the discovery

proceedings in this Litigation, and (b) is not otherwise subject to

confidentiality restrictions.

16. **Responding to Subpoena or Compulsory Process.** If a person in

possession of Confidential Discovery Material receives subpoena or other

compulsory process seeking production or other disclosure of such

Confidential Discovery Material, that person shall give written notice to

counsel for the Party whose Confidential Discovery Material is sought

within three (3) business days after receipt of the subpoena or other
compulsory process. Such notice shall provide a copy of the subpoena or
other compulsory process. If the Producing Party timely seeks a protective
order, the person to whom the subpoena or other compulsory process is
directed shall not produce any Confidential Discovery Material absent a
court order or the written consent of the Producing Party. If Confidential
Discovery Material is produced in response to a subpoena or compulsory
process, the Parties shall continue to treat such Confidential Discovery
Material in accordance with this Protective Order. The person in
possession of Confidential Discovery Material who receives such subpoena
or other compulsory process seeking production or other disclosure of
such Confidential Discovery Material shall provide reasonable assistance
to the Producing Party in its motion for a protective order, including but
not limited to providing declarations in support of the Producing Party's
motion for a protective order.

17. **Clawback Provision for Inadvertently-Produced Privileged Matter.** If a
Producing Party learns it has inadvertently produced matter that is
privileged, the receiving party shall return the matter to the Producing
Party and destroy all copies of the same in the receiving party's possession
or control, promptly after receiving a written demand for the same from

the producing party that alerts the receiving party to the inadvertent

production. The demand will describe the document with sufficient

specificity to identify it. Within three (3) calendar days of the return of the

allegedly privileged matter, the Producing Party shall produce a privilege

log containing information sufficient to enable the receiving party and the

Court to evaluate the privilege claim. This paragraph does not affect the

receiving party's right to subsequently challenge the Producing Party's

assertion of the privilege in accordance with the rules for resolving

discovery issues.

18. **Procedure Upon Termination of Litigation.** Within sixty (60) calendar

days after receiving notice of the entry of an order, judgment, or decree

finally disposing of or resolving the Consumer Cases Track of the

Litigation, all persons who received Confidential Discovery Material shall

make a good faith effort to return to counsel for the Producing Party (or

the Producing Party himself) or destroy all such material and copies

thereof and shall certify that fact in writing to counsel for the Producing

Party (or the Producing Party himself). This includes the return or

destruction of Confidential Discovery Material provided to any person,

including outside experts. The Parties shall be entitled to retain court

papers and trial transcripts provided that such counsel and employees of

such counsel shall not disclose the court papers or trial transcripts to any person, except pursuant to a court order or agreement with the Producing Party.

19. **Provisions Survive Termination of Litigation.** Subject to the requirements of the Federal Rules of Civil and Appellate Procedure, the local civil rules of this Court, the local civil rules of the Court having jurisdiction over the location where any deposition or production of Discovery Material occurs, the provisions of this Protective Order shall continue to be binding throughout and after the conclusion of the Litigation (including, without limitation, any appeals therefrom), absent written permission from the affected Producing Party or further order of this Court.

20. **Stipulation Is Binding Pending Court's Entry of Protective Order.** The Parties agree to be bound by this Proposed Protective Order pending its entry by the Court, and any violation of its terms shall be subject to the same sanctions and penalties as if this proposed Protective Order had been entered by the Court.

Accordingly, the Parties' Stipulation and Protective Order shall govern the production and disclosure of Discovery Material produced or disclosed in the Litigation (as those terms are defined in this Protective Order), both before and after the entry of this Order.

DATED: _____, 2016


_____

Sam A. Miorelli, E.I., Esq. *pro se*
764 Ellwood Avenue
Orlando, FL 32804
352-458-4092
sam.miorelli@gmail.com


(Plaintiff and Defendant Signature Blocks)

## EXHIBIT A

## AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

1. I, _____, the undersigned, do hereby

   acknowledge that I have read the attached Stipulation and Protective

   Order Regarding Confidential Information in the matter of *In re: The Home

   Depot, Inc., Consumer Data Security Breach Litigation*, Case No. 1:14-md-

   02583-TWT, and agree to be bound by its terms. I understand that my

   execution of this Agreement to be Bound by Protective Order, indicating

   my agreement to be bound by the Protective Order is a prerequisite to my

   access to or review of any information or documents designated as

   Confidential Discovery Material pursuant to the Protective Order.

2. I will only make such copies of or notes concerning Confidential Discovery

   Material as are necessary to enable me to render the assistance required in

   connection with this Litigation. Upon the final determination of this action,

   I shall promptly destroy or delete all Confidential Discovery Material

   provided to me as well as any notes or derivations thereof. I understand

   that my obligation to honor the confidentiality of such material will

   continue even after this Litigation concludes.

3.  I understand that failure to comply with the terms of the Protective Order

    may be punishable by contempt of court and may result in civil liability to

    any party or person damaged thereby.

Dated this _____ day of _____, 20_____


_____

## Exhibit D – E-Mail Exchange July 25, 2016

 Gmail

Sam Miorelli <sam.miorelli@gmail.com>

---

## Home Depot

**John Yanchunis** <JYanchunis@forthepeople.com>                    Mon, Jul 25, 2016 at 5:21 PM
To: Sam Miorelli <sam.miorelli@gmail.com>
Cc: "david@hpllegal.com" <david@hpllegal.com>, "Siegel, Norm" <siegel@stuevesiegel.com>, "John Bevis (bevis@barneslawgroup.com)" <bevis@barneslawgroup.com>

Mr Miorelli, we did agree and after I told you it would be videotaped , you asked me if a stenographer would be present to which I responded that it would .

The local rules of the Middle  District of Florida do not apply to your deposition as the case is pending in the Northern District of Georgia.

Having read the draft of the stipulation which you circulated, we have not served any request for  documents. What  information do you contend that we are seeking that might be considered confidential ?

---

**John Yanchunis**  |  Attorney at Law

 **MORGAN & MORGAN**
COMPLEX LITIGATION GROUP
Mass Torts | Whistleblower | Class Action

201 North Franklin Street, 7th Floor

Tampa, FL 33602

Main Number: (813) 223-5505

Direct Line:   (813) 275-5272

Cell:          (850) 509-5641

Facsimile:     (813)-222-4736

jyanchunis@forthepeople.com

**From:** Sam Miorelli [mailto:sam.miorelli@gmail.com]
**Sent:** Monday, July 25, 2016 5:07 PM
**To:** John Yanchunis x2191
**Cc:** david@hpllegal.com; Siegel, Norm; John Bevis (bevis@barneslawgroup.com)
**Subject:** Re: Home Depot

Mr. Yanchunis,

I believe I have made my position regarding your imagined agreement of a Friday deposition clear: we never agreed. You saying we did over and over doesn't change the fact that we did not have such an agreement.

It would have been bizarre to agree to such a short date anyway when even as of our phone call on Friday you would not provide me anything but vague answers regarding protection of confidential information. I stand by my letter with regard to the first possible date for a deposition.

With regard to confidentiality, I do not believe the existing protective orders from the Court are sufficient considering the likely scope of your proposed deposition (a scope which you have yet to describe to me despite my requests in both phone calls last week). In light of that, I have diligently worked this weekend on the attached proposed agreement. I hope you will find it in order and assist in its completion with the appropriate signature blocks for the Plaintiffs' and Defendant's attorneys to execute.

Sincerely,

Sam Miorelli, E.I., Esq.

352-458-4092

On Mon, Jul 25, 2016 at 11:25 AM, John Yanchunis <JYanchunis@forthepeople.com> wrote:

I am in receipt of your letter of July 22, 2016.

As I have informed you , we are willing to maintain the confidentiality of any sensitive information , and enter into an agreement which would provide you the protection of the order entered by the Court. If this is unacceptable to you, please provide me with a draft of what you would like us to consider.

You agreed to the deposition this Friday, and I see no reason to cancel it now based on your insistence now that you be given 10 days notice, an issue that you did not raise nor did it seem to be a concern when you agreed to the date of your deposition.

**John Yanchunis**  |  Attorney at Law



## MORGAN & MORGAN
### COMPLEX LITIGATION GROUP
Mass Torts | Whistleblower · Class Action

201 North Franklin Street, 7th Floor

Tampa, FL 33602

Main Number: (813) 223-5505

Direct Line:   (813) 275-5272

Cell:   (850) 509-5641

Facsimile:   (813)-222-4736

jyanchunis@forthepeople.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Exhibit E – Republican National Lawyers Association 2016 National Election
Law Seminar Receipt

11

 Gmail

Sam Miorelli <sam.miorelli@gmail.com>

---

## Receipt for Your Payment to Republican National Lawyers Association

**service@paypal.com** <service@paypal.com>
To: Sam Miorelli <sam.miorelli@gmail.com>

Fri, Jul 15, 2016 at 9:20 PM

 **PayPal**

Jul 15, 2016 21:19:53 EDT
Transaction ID: ███████████████

Hello Sam Miorelli,

You sent a payment of $237.00 USD to Republican National Lawyers Association
(**thielen@republicanlawyer.net**)

It may take a few moments for this transaction to appear in your account.

**Merchant**
Republican National Lawyers Association
thielen@republicanlawyer.net
202-802-0437

**Instructions to merchant**
You haven't entered any instructions.

**Shipping address -** confirmed
Sam Miorelli
764 Ellwood Ave
Orlando, FL 32804-7320
United States

**Shipping details**
The seller hasn't provided any shipping details yet.

| Description | Unit price | Qty | Amount |
|---|---|---|---|
| 2016 National Election Law Seminar , Select Your Option Below: RNLA Members | $237.00 USD | 1 | $237.00 USD |

|  |  |
|---|---|
| Subtotal | $237.00 USD |
| **Total** | $237.00 USD |

| **Payment** | $237.00 USD |
|---|---|

Charge will appear on your credit card statement as "PAYPAL *RNLA"
Payment sent to thielen@republicanlawyer.net

**Issues with this transaction?**
You have 180 days from the date of the transaction to open a dispute in the Resolution Center.

⏲ Questions? Go to the Help Center at www.paypal.com/help.

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to
your PayPal account and click **Help** in the top right corner of any PayPal page.

You can receive plain text emails instead of HTML emails. To change your Notifications preferences, log in to your account,
go to your Profile, and click **My settings**.

Copyright © 1999-2016 PayPal. All rights reserved.