**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____
                                             )
In re: The Home Depot, Inc., Customer        )    Case No.: 1:14-md-02583-TWT
Data Security Breach Litigation              )
                                             )
This document applies to:                    )
FINANCIAL INSTITUTION CASES                  )
_____    )


**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND**
**SERVICE AWARDS TO THE CLASS REPRESENTATIVES**

After more than two years of hard-fought litigation, Class Counsel negotiated a settlement with cash benefits of $27.25 million and substantial improvements to Home Depot's data security measures.  Further, due to Class Counsel's efforts, Home Depot paid financial institutions through the card brand recovery processes $120 million, much more than would have been paid but for this litigation, and an additional $14.5 million in premiums to obtain releases of claims at issue here.  To compensate them for this success, Class Counsel request a fee of $18 million and reimbursement of $710,257.86 in expenses.

The requested fee – less than 30 percent of the easily ascertainable financial benefit (and even less if the Court considers the other benefits that are difficult to quantify) – is reasonable under the percentage method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).  The requested fee is also reasonable under a lodestar analysis, representing payment of Class Counsel's lodestar plus a multiplier of roughly 1.5.  And Class Counsel's expenses were reasonably and necessarily incurred.  The requested fees and expenses thus should be approved.

The Court also should approve service awards of $2,500 to each class representative, as provided by the settlement, to compensate them for their efforts on behalf of the class.  The awards are warranted legally and factually.

1

## FACTUAL BACKGROUND

The case background is set forth in Plaintiffs' final approval brief. This brief summarizes Class Counsel's work. A more detailed description is in declarations from Co-Lead Counsel (Ex. 1) and Co-Liaison Counsel (Ex. 2). Declarations are also submitted from Professor Brian Fitzpatrick, a national authority on class action fees (Ex. 3); Michael McGlamry, an Atlanta lawyer (Ex. 4); Hunter Hughes, a mediator (Ex. 5); and Chad Boeckmann, a data security expert (Ex. 6). Class Counsel also rely upon deposition testimony from Mike Williams of Home Depot (Ex. 7) and Marie Russo of MasterCard (Ex. 8).

After the data breach was discovered in September, 2014, financial institutions filed more than twenty-five class actions against Home Depot, which were centralized here, along with others brought by customers, by the Judicial Panel on Multidistrict Litigation. (Ex. 1, ¶ 7) The Court appointed leadership for the financial institutions, who after a massive team effort filed a 95 page complaint on behalf of 50 class representatives and 17 association plaintiffs. On July 1, 2015, Home Depot moved to dismiss. Class Counsel filed a 50 page opposition and Home Depot replied. The Court heard argument on October 22, 2015 and on May 18, 2016, denied the motion in virtually all respects. (*Id.,* ¶¶ 10, 13, 16)

During this time, Class Counsel worked on drafting initial disclosures for all

67 plaintiffs, preparing a joint preliminary report and discovery plan, and attending status conferences. Although discovery was formally stayed, Class Counsel moved aggressively to do as much preliminary work as possible so that once the stay was lifted meaningful discovery could begin immediately. They negotiated a discovery protocol and five case management orders; served 126 requests for production on Home Depot, prompting lengthy discussions regarding their scope, search terms, and custodians; responded to document requests from Home Depot; and served informational subpoenas on nearly 40 third-parties. Class Counsel also spent significant time working with the class representatives and forensic accounting experts to develop a methodology for and assembling the information needed to prove class-wide damages. (*Id., ¶¶* 17-20)

In the fall of 2015, Class Counsel's work expanded exponentially when Home Depot decided to use the card brand recovery processes to circumvent this litigation and solicit releases directly from class members. On October 23, 2015, Home Depot moved for approval of an order authorizing such solicitations and Plaintiffs opposed the motion in a brief filed November 6, 2015. Unbeknownst to Class Counsel, Home Depot was already communicating with class members. On November 25, 2015, the day before Thanksgiving, Class Counsel learned financial institutions were being given a few days to decide whether to release their claims,

but not information needed for an informed decision.  Class Counsel immediately sought relief, triggering another round of briefs leading up to a hearing on December 14, 2015 at which the Court noted the communications were coercive and misleading and opened discovery so Plaintiffs could uncover what Home Depot was doing and seek to challenge the releases.  (*Id.*, ¶¶ 21-22)

Home Depot, Visa, and MasterCard resisted discovery vigorously, objecting to virtually every request. Class Counsel were forced to repeatedly seek relief from the Court and had to respond to Home Depot's motions to depose co-lead counsel and quash a subpoena in the Southern District of New York, which Home Depot refused to transfer here until the Court intervened. Over the course of an intense several months, Class Counsel took seven depositions in four states; filed five briefs; negotiated repeatedly with counsel for Home Depot and third-parties; and reviewed thousands of documents.  (*Id.*, ¶ 23)

While discovery proceeded, Home Depot continued to solicit releases through the card brand recovery processes.  To ensure that financial institutions had adequate information about their options, Class Counsel advised each of the 50 class representatives and 17 association plaintiffs, had mass conference calls with hundreds of additional banks and credit unions, worked with industry associations to educate their members, and responded to questions from putative class

members.   Following  Class  Counsel's  efforts,  relatively  few  smaller  financial

institutions released their claims.   Nevertheless, mostly through settlements with

the  largest  banks,  Home  Depot  obtained  releases  covering  all  but  roughly  10

million of the 56 million compromised cards.   Through the card brand recovery

processes,  Home  Depot  paid  more  than  $134  million  to  financial  institutions,  of

which $14,528,000 was specifically paid for releases of the claims being asserted

here.   Home  Depot  separately  paid  millions  more  to  American  Express  and

Discover, which did not participate in the recovery processes. (*Id., ¶¶* 24-25).

In May, 2016, once the Court ruled on the motion to dismiss, Class Counsel

intensified their preparations for merits discovery, drafting written discovery and

finalizing  a  comprehensive  discovery  plan  during  a  two-day  meeting  of  the

steering committee.   Shortly after Home Depot answered the complaint on June 17,

2016,  the  parties  agreed  to  discuss  settlement,  Home  Depot  moved  for  leave  to

pursue an interlocutory appeal, and further proceedings were stayed. (*Id., ¶* 26)

Class  Counsel  prepared  extensively  for  the  mediation,  analyzing  Home

Depot's  information,  gathering  needed  data  from  their  clients,  and  working  with

experts to estimate damages. After two mediations with Judge Wayne Andersen of

Chicago were unsuccessful, the parties informed the Court on September 9, 2016

that settlement prospects were slight and the Court lifted the stay.   Nonetheless,

talks continued.  On October 6, 2016, the parties made some progress at a third
mediation with a new mediator, Judge Edward Infante, and continued discussions.
After an impasse, Judge Infante made a settlement proposal, which the parties
accepted.  Thereafter, the parties negotiated the many remaining issues (including
$2.25 million for sponsored entities), signed a terms sheet on January 10, 2017,
and executed the settlement agreement on March 8, 2017.  (*Id., ¶¶* 27-30)

## ARGUMENT AND CITATION OF AUTHORITY

## I.    THE REQUESTED FEE IS REASONABLE

In the settlement, Home Depot agreed to pay "reasonable attorneys' fees,
costs and expenses of counsel for the Financial Institution Plaintiffs separate from
and in addition to the Settlement Fund."  (Doc. 327.3, ¶ 62)  The parties were
unable to agree on what amounts were reasonable, leaving that determination to the
Court.  For the reasons set forth below, the requested fee of $18 million is
reasonable under both the common benefit doctrine and lodestar approach.

### A.   The Common Fund Doctrine and Eleventh Circuit Law

Counsel whose work results in a substantial benefit to a class is entitled to a
fee under the common benefit doctrine.  *Boeing Co. v. Van Gemert*, 444 U.S. 472,
478 (1980). The doctrine serves the "twin goals of removing a potential financial
obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably

distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989).  The doctrine also ensures those who benefit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478.

The controlling authority in this Circuit is *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991), which held that fees in common fund cases must be based on a percentage of the benefit.  Under *Camden I,* the Court has discretion to choose the percentage.  While noting awards typically range from 20 percent to 30 percent and some courts view 25 percent as a benchmark to be adjusted based on the circumstances, the Eleventh Circuit stated: "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case."   946 F.2d at 774.   In selecting the percentage, a court looks to the factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), and others deemed pertinent.  946 F.2d at 775.

In practice, following *Camden I,* awards in the Eleventh Circuit average around one-third of the benefit.  *Wolff v. Cash 4 Titles*, 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); *see, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344 at *6 and n. 6

(N.D. Ga. Oct. 26, 2012) (awarding a one-third fee and listing other similar cases). This assertion also is supported by Hunter Hughes, an Atlanta mediator who has negotiated fees in hundreds of cases and is well-versed in the applicable law:

> In my experience, the overwhelming number of class action settlements that I have mediated in the Eleventh Circuit where the fee was based on a common fund approach have provided for fees of one-third of the class settlement fund.  Indeed, my best estimate is that more than 90 percent of such settlements I have mediated in the Eleventh Circuit have provided for fees of approximately one-third of the class fund.  The remaining common fund cases have had fee awards as high as 40% of the fund down to approximately 25 percent.

(Hughes Decl., ¶10).  And it is supported by studies done by Professor Fitzpatrick and other academics.  (Ex. 3, ¶ 22 and n. 2)

**B.      The Benefit to the Class**

The starting point is to determine the benefit against which the selected percentage is applied.  Here, the benefit includes the following:

*(1)      The $27.25 Million Cash Component of the Settlement*

Home Depot has agreed to pay $25 million into a non-reversionary fund and up to an additional $2.25 million to sponsored entities that file a claim.[1]  This

---

[1] That the entire $2.25 million may not be claimed by sponsored entities does not impact the fee analysis.  *See, e.g., Van Gemert*, 444 U.S. at 480 (class members' "right to share the harvest of the lawsuit, whether or not they exercise it, is a benefit of the fund created by the efforts of ... class counsel"); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-97 (11th Cir. 1999) ("class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed,

$27.25 million goes directly to the class and thus is part of the class benefit.

### (2)   Fees, Expenses, and Administration Costs

The benefit also includes the separate amounts Home Depot will pay for fees, as this Court held in the consumer track (Doc. 261 at 6); expenses of $710,257.86; and notice and administration costs, which are estimated to be $125,000. (Ex. 1, ¶ 49)  *See, e.g., Johnston v. Comerica Mtg. Corp.,* 83 F.3d 241, 245-46 (8th Cir. 1996); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995); *In re Managed Care Litig.,* 2003 WL 22850070 at *6 (S.D. Fla. Oct. 24, 2003); *Manual for Complex Litigation* § 21.7 at 335 (4th ed.); Ex. 3, ¶ 14.  This only makes sense because, if not paid separately, the amounts would reduce the size of the fund and thus be borne by class members.

### (3)   The Value of Home Depot's Enhanced Security Measures

The class will also receive substantial value from the enhanced data security measures required by the settlement.  (Boeckmann Decl., ¶¶ 9-10)  While difficult to quantify, this value should be considered in evaluating the fee. (Ex. 3, ¶ 26)  *See Camden I,* 946 F. 2d at 755 (authorizing consideration of non-monetary benefits); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011).

### (4)   Other Amounts Paid by Home Depot

regardless of the amount actually claimed"). *Poertner v. Gillette Co*., 618 Fed. Appx. 624, 628-29 and n. 2 (11th Cir. 2015).

Finally, as the settlement agreement explicitly acknowledges, Home Depot has already paid $134 million through the card brand recovery processes, namely $120 million pursuant to the card brand rules and $14.5 million for releases of the claims in this case.  (Doc. 327.3, Recitals H and I)  These payments benefitted class members and resulted, in large part, from Class Counsel's efforts.  The Court thus should consider them in setting the fee.  (Ex. 3, ¶¶ 15-20)

There is no doubt this litigation was the impetus for the $14.5 million that Home Depot paid for releases.  Although the card brand recovery processes have been triggered thousands of times, a retailer has used them to solicit releases only four times, including this one.  Each time, the retailer faced liability in an MDL. (Ex. 1, ¶ 48)  Home Depot admits its goal in soliciting releases was to avoid legal exposure, including exposure for attorneys' fees that might have to be paid in a settlement.[2]  (Ex. 7, pp. 65-66)  By necessity, to accomplish its goal Home Depot targeted this MDL, where all of the claims against it by financial institutions were pending. Moreover, Home Depot's solicitations for the releases contained a two-page, single spaced description of this litigation and attached the consolidated complaint. (Ex. 1, ¶¶ 49-50)  And the releases themselves, which refer to this case

---

[2] Visa and MasterCard were so concerned that Class Counsel might be entitled to fees based on the claims being released that they asked Home Depot to indemnify them against the risk.  (Ex. 7, p. 63)

by name, explicitly cover the claims asserted here.  (*Id.*)

Similarly, but for this litigation, Home Depot likely would have paid less than the $120 million assessed by Visa and MasterCard and certainly would not have paid when it did.  Home Depot believed that it had no liability to the card brands and that the assessments were improper.  (Ex. 7, pp. 43, 45-46) Accordingly, when it first received the assessments, Home Depot discussed challenging their propriety, administratively or through a lawsuit.  (*Id.,* pp. 65-66, 123)  However, after deciding to use the card brands to solicit releases and being told that to be successful offering premiums was necessary, Home Depot agreed to pay the assessments in full.  (*Id.,* pp. 89, 91-92)  In so doing, Home Depot was the first merchant to pay 100 percent of an assessment as part of a settlement involving a release.  (Ex. 8, pp. 252-53)  Admittedly, Home Depot likely would have paid a portion of the assessments at some point.  But if Home Depot had not wanted to quickly obtain releases before the Court could certify a class – which would have precluded any communications with absent class members – it likely would have challenged the assessments and, at worst, settled at a substantial discount.  As a result, class members would have gotten less and not been paid as quickly.

Class Counsel are entitled to a percentage of Home Depot's payments resulting from their efforts under the common benefit doctrine, notwithstanding

that the payments were made before the proposed settlement was reached. According to the Eleventh Circuit, the doctrine permits a fee award to counsel under the following circumstances:

> (1) when litigation indirectly confers substantial monetary or nonmonetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members.

*Camden I,* 946 F.2d 771 (quoting H. Newberg, *Attorney Fee Awards* § 2.01 at 28-29 (1986)).  That is the situation presented here.  The litigation conferred benefits on an ascertainable class (that is, the financial institutions who were paid) and, because Home Depot is before the Court and has agreed to pay reasonable fees, the costs of obtaining the benefits can be spread proportionately.

Awarding a percentage of the payments for which Class Counsel are responsible serves the purposes of the common benefit doctrine, which derives from courts' equitable powers under principles of quantum meruit and unjust enrichment.  *Camden I,* 946 F.2d 771; *see also, e.g. In re Gould Sec. Litig*., 727 F. Supp. at 1202.  If Home Depot can circumvent the MDL process and no one is responsible for paying a fee based on the benefit conferred, Class Counsel will be deprived of compensation for their work, violating the principle of quantum meruit; the financial institutions that benefited and Home Depot (to the extent it

escapes paying a fee as it agreed to do) will be unjustly enriched.   (Ex. 4, ¶ 36)

Apart from the common benefit doctrine, several courts have adopted a "catalyst theory" to award fees in similar circumstances, namely where a common fund is created *and* other monetary relief is achieved.  *See, e.g., Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 96 (D.D.C. 2013); *Koppel v. Wien*, 743 F.2d 129 (2nd Cir. 1984).  *Kifafi* is directly on point.[3]  The plaintiff class challenged calculation of their pension benefits. In response, the defendant voluntarily ended one practice and plaintiffs later prevailed on other practices.  In awarding fees, the court included the value of the defendant's voluntary changes in calculating the common benefit, explaining that the changes responded to the complaint and the "catalyst theory allows recovery for success that comes through an 'out of court agreement' so long as it is 'caused in some way by court action' and 'potentially amount[s] to success on the merits.'" 999 F. Supp. 2d at 97-98.

While the Eleventh Circuit has never considered the catalyst theory in this context, it recognized the theory in a fee-shifting case, *Loggerhead Turtle v.*

---

[3] The Supreme Court has held the catalyst theory is unavailable where a statute allows fees to a "prevailing party" and no judgment on the merits or court-entered consent decree exists. *See Buckhannon Bd. & Care Home, Inc. v. West Virg. Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001).  However, nothing in the opinion precludes use of the catalyst theory here.  *See In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 279 (D.D.C. 2009) (noting the opinion is limited to federal statutes awarding fees to a "prevailing party").

*County Council of Volusia County, Fla.*, 307 F.3d 1318, 1321 (11th Cir. 2002),

holding that lawyers who obtain relief without a judgment are entitled to a fee if:

> (1) the defendant takes an action materially altering the legal relationship between the parties such that the plaintiffs achieve a significant goal of their suit; (2) their suit was the catalyst for such action; and (3) the plaintiffs' claim was colorable and enjoyed reasonable likelihood of success on its merits.

307 F.3d at 1321.  The same situation exists here.  Home Depot materially altered

its relationship with financial institutions in the putative class by paying them to

release their claims and agreeing to pay the assessments in full.  This litigation was

the catalyst for Home Depot's actions. And Plaintiffs' claims were colorable and

had a reasonable likelihood of success, having survived a motion to dismiss.[4]

    This Court also has the equitable power to award Class Counsel a percentage

of Home Depot's payments. *See Camden I,* 946 F.2d at 771, 775 (recognizing the

---

[4] In *McCabe v. Daimler AG*, 2015 WL 11199196, (N.D, Ga. August 19, 2015), the court declined to award attorneys' fees based on a catalyst theory, but the case is easily distinguished.  In *McCabe*, after NHTSA opened an investigation into leaks from fuel tanks in certain Mercedes Benz vehicles, plaintiffs filed a class action against Mercedes over the leaks.  Mercedes later sent NHTSA a letter offering to extend its warranty on the fuel tanks.  Plaintiffs sought attorneys' fees based on Mercedes's actions.  The court denied the request because the extended warranty was not a "fund;" the case was still active; it was unclear whether the plaintiffs' lawsuit rather than the NHTSA investigation was the catalyst; and "no class has been certified, no settlement reached, and no judgment has been entered.  As such, there has been no successful action on the part of the plaintiffs that would justify the imposition of attorneys' fees." *Id.* at *7.  These factors are not present here.

14

equitable power of a court to award a percentage of a benefit produced by counsel's work and specifically authorizing consideration of any "factors unique to a particular case which may be relevant to the district court's consideration.") Professor Fitzpatrick explains that courts have long counted payments to third-parties toward the class benefit; allowed fees to leadership in MDLs based on the benefit of their work to class members; and have a long history of considering public policy when awarding fees in class actions.  (Ex. 3, ¶¶17-20)  He also explains that depriving Class Counsel of a share of the payments resulting from Home Depot's efforts "to settle out from under them" would create a "collective action" problem and discourage lawyers from filing meritorious class actions.  (*Id.*)

### C.   The Requested Fee is Supported by the *Camden I* Factors

The value of the easily calculated benefits to the class under controlling precedent is at least $60,580,000 (the $27.25 million cash component of the settlement and $14.5 million paid by Home Depot for releases plus the requested fees, expenses and administrative costs).  (Ex. 3, ¶ 16)  The requested fee is 29.7 percent of that amount. (*Id.*) Indeed, the benefit would be higher – and the percentage correspondingly less – if the Court took into account the enhanced data security measures required by the settlement and the portion of the $120 million paid by Home Depot that resulted from Class Counsel's efforts. (Ex. 4, ¶36) ¶¶

15

But, even ignoring those benefits, the percentage is well supported by the *Camden I* and *Johnson* factors, which are discussed below.[5]

### (1)    The Time and Labor Involved

Class Counsel have spent more than 22,000 hours and will spend more time before the litigation is over. (Ex. 2, ¶ 9; Ex. 1, ¶¶ 41-42)  The work, detailed in Co-Lead Counsel's declaration, was justified, particularly given the manner in which the case was defended and the quality of the result. (*Id., ¶* 41*;* Ex. 4, ¶ 41)

### (2)    The Novelty and Difficulty of the Questions

As of the time this MDL was created, no financial institution had succeeded in a similar data breach case.  This case thus involved a host of difficult and novel issues.  *See Johnson,* 488 F.2d at 718 ("Cases of first impression generally require more time and effort on the attorney's part.")  These issues included whether Home Depot owed financial institutions a duty to protect their customers' financial information; whether Plaintiffs could state a claim for negligence per se based on Section 5 of the FTC Act (the Court's decision to permit the claim is evidently the

---

[5] Two of the factors do not apply in this case and thus can be disregarded, namely the undesirability of the case and the nature of the professional relationship with the client. *Johnson* noted that civil rights attorneys who accept unpopular cases may suffer hardships deserving of a higher fee.  Class Counsel did not suffer such hardship.  Further, Class Counsel did not have the type of relationship with the named plaintiffs that would have caused them to offer a volume discount or reduced fee to obtain future business as is often done in a commercial setting.

first to do so); whether the economic loss rule bars Plaintiffs' claims; whether a merchant can circumvent Rule 23 by using the card brand recovery processes; and whether a national class of financial institutions can be certified.  (Ex. 1, ¶ 31)

### (3)   The Skill Requisite to Perform the Legal Service Properly

Proper case management and effective representation in any complex class action, particularly one involving a national class of financial institutions, requires the highest level of experience and skill.  This case certainly was no different. Class Counsel had the necessary experience and skill. (*Id.,* ¶ 32; Ex. 4, ¶ 18)

### (4)   The Preclusion of Other Employment

If Class Counsel had not taken on this case, they would have spent significant time on other matters. (*Id.,* ¶ 33)

### (5)   The Customary Fee

Complex civil litigation of this magnitude, if brought at all, typically is handled on a contingent fee because all but the largest businesses are unwilling to pay the substantial hourly rate fees involved, particularly when the potential returns for any one business do not justify the risk and a class action is the only viable option.  Such fees typically range from one-third to 40 percent of the recovery.  (*Id.,* ¶ 34)  The requested fee is within this range.  Indeed, Class Counsel entered into agreements with some class representatives providing for a one-third

contingent fee.   (*Id.*) The willingness of class representatives to enter into such agreements is more evidence that the requested fee is reasonable. *See Blanchard v. Bergeron*, 489 U.S. 87 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness"); *Pharr v. Housing Auth.,* 704 F.2d 1216, 1218 (11th Cir. 1983) (such an agreement, although not binding, may be enforced if the fee agreed to is otherwise reasonable).

### (6)   Whether the Fee is Fixed or Contingent

This action was prosecuted on a contingent basis.  If Class Counsel had not achieved a recovery, they would have received nothing and, in fact, suffered a substantial out-of-pocket loss.  (Ex. 1, ¶ 35)  Such risk is a critical factor in the analysis, *see, e.g. Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 889 F.2d 21 (11th Cir. 1990), and justifies a higher fee:

> It is axiomatic that attorneys who work on a contingent fee must charge a higher fee than those who work on a noncontingent basis. . . . This "higher" fee … is not a bonus.
>
> From a pure dollars and cents economic view, this higher fee is the appropriate measure of a reasonable fee that is required in the marketplace of services, (1) to induce the attorney to agree to assume the risk that no compensation will be received unless he or she successfully achieves a benefit for the client, and (2) if ultimately successful to compensate for the costs suffered and investment income foregone by delay in payment.

H. Newberg, *Attorney Fee Awards* § 1.08 (1986); *see also* Ex. 4, ¶ 44.

### (7)  *Time Limitations Imposed by the Client or the Circumstances*

Class Counsel, at times, worked under considerable time pressure, such as during the Thanksgiving and Christmas holidays in 2015when they prepared the papers seeking relief from Home Depot's efforts to solicit releases from absent class members.  (Ex. 1, ¶ 36)

### (8)   *The Amount Involved and the Results Obtained*

The amount at issue and the result obtained justify the requested fee.  The settlement provides for $27.25 million in cash and reduces the risk of another data breach.  Class members can receive $2.00 per compromised card without documentation and up to 60 percent of their documented losses.  These benefits exceed those in the eight other data breach cases that have been resolved.  (Ex. 1, ¶ 47; Ex. 3, ¶ 24)   Home Depot also paid financial institutions $14.5 million for releases and was the first merchant to pay 100 percent of the assessments from Visa and MasterCard, a substantial portion of which was due to Class Counsel's efforts.  All told, financial institutions will receive at least 35 percent more than that afforded by the card brand recovery processes because of this litigation. (*Id.*, ¶ 27)  According to Professor Fitzpatrick, this result is "excellent."  (*Id.*; Ex. 4, ¶ 38)

### (9)  *The Experience, Reputation, and Ability of the Attorneys*

Plaintiffs' legal team includes many of the nation's preeminent class action

firms and lead counsel in all four data breach cases in which financial institutions prevailed.    As Professor Fitzpatrick puts it, "these are not mere 'benchmark' lawyers." (Ex. 3, ¶ 28) The team's experience, reputation and ability thus justify a higher fee.  (Ex. 1, ¶ 32; Ex. 4, ¶ 18)  Moreover, in evaluating this factor, the Court should consider the quality of opposing counsel.  *See Camden I*, 946 F.2d at 772 n. 3.  Home Depot was represented by skilled counsel from nationally prominent law firms, requiring equally competent representation for the class.  *See generally Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### (10) Awards in Similar Cases

The requested fee is consistent with fees in similar cases in this circuit and district, where courts routinely award one-third of the benefit.[6] *See Shaw v.*

---

[6] *See, e.g., Waters,* 190 F.3d at 1295; *Columbus Drywall,* 2012 WL 12540344 at *6 and n. 6; *Smith v. Floor & Decor Outlets of Am., Inc.,* No. 1:15-cv-04316-ELR (N.D. Ga. Jan. 10, 2017); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP (N.D. Ga. May 19, 2014; *In re Profit Recovery Group Int'l, Inc. Sec. Litig*., No. 1:00-cv-1416-CC (N.D. Ga. May 26, 2005); *In re Clarus Corp. Sec. Litig*., No. 1:00-CV-2841-CAP (N.D. Ga. Jan. 6, 2005); *In re Pediatric Servs. of Am., Inc. Sec. Litig*., No. 1:99-CV-0670-RLV (N.D. Ga. Mar. 15, 2002); *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006); *In re Managed Care Litig.,* 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003); *Gutter v. E.I. Dupont De Nemours & Co*., 95-2152-CIV-Gold (S.D. Fla. May 30, 2003); *In re Terazosin Hydrochloride Antitrust Litig.,* 99-1317-MDL-Seitz (S.D. Fla. Apr. 19, 2005).

*Toshiba Am. Info. Sys., Inc.*, 91 F. Supp.2d 942 (E.D. Tex. 2000) ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery"); *In re Checking Account Overdraft Litig.,* 2014 WL 11370115 at *18 (S.D. Fla. Jan. 6, 2014); (citing a 2010 study showing that awards in the Eleventh Circuit supported a fee of 30 percent of the settlement benefit); *see also* Ex. 3, ¶ 22 (citing academic studies); Ex. 4, ¶¶ 39-40.

### (11)   Other Factors Support the Requested Fee

Two other *Camden I* factors support the requested fee.   First, no class member has objected.  *See, e.g., Strube v. Am. Equity Inv. Life Ins. Co.,* 2006 WL 1232816 at *2 (M.D. Fla. May 5, 2006) ("The lack of objections to a proposed fee award is itself important evidence that the fee arrangement is reasonable.").

Second, the economics of class actions require that Class Counsel receive a fee commensurate with their risk. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 687 (M.D. Ala. 1988);  *Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985) ("If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear.") The risks were particularly daunting.  (Ex. 3, ¶ 25)  No similar case had succeeded and the only relevant authority in this district was adverse.  *See Willingham v. Global*

*Payments, Inc*., 2013 WL 440702 at \*18 (N.D. Ga. Feb. 5, 2013) (recommending dismissal of negligence claims in a data breach case because of the lack of a duty and the economic loss rule).   The risk is further illustrated by *McConnell v. Department of Labor,* 337 Ga. App. 447 (2016), *cert. granted* (Feb. 27, 2017), issued after this Court's ruling on Home Depot's motion to dismiss, which held that there is no general duty to protect personal information.   Class Counsel also undertook major financial risk, having committed to fund the litigation costs, which could have exceeded $5,000,000.  (Ex. 1, ¶ 35)

## II.   THE REQUESTED FEE IS REASONABLE UNDER THE LODESTAR APPROACH

Courts may use a lodestar analysis in lieu of the percentage method when a proposed settlement resolves claims under a fee-shifting statute. *Dikeman v. Progressive Express Ins. Co.,* 312 Fed. Appx. 168, 172 (11th Cir. 2008).   For example, the consumers' lawyers sought – and the Court awarded – fees based on their lodestar because the complaint invoked fee-shifting consumer laws.  (Doc. 227-1 at 26)   Under the same logic, because the complaint in this track asserted claims under fee-shifting statutes – state unfair and deceptive trade practices acts and O.C.G.A. § 13-6-11 (Doc. 104 at 73-88, 94) – the Court could use a lodestar analysis.  (Ex. 3, ¶ 30)  Lodestar may also be used as a cross-check in applying the percentage approach.  *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291,

1298 (11th Cir. 1999).

The requested fee is reasonable under the lodestar method, whether used as the primary means of analysis or a cross-check.  (Ex. 3, ¶ 30; Ex. 4, ¶ 41) As of July 31, 2017, Class Counsel spent 21,975 hours, which were documented in quarterly reports filed *in camera* with the Court.  (Ex. 2, ¶ 9)  Co-lead counsel personally reviewed roughly 30,000 entries and excluded 680 hours as duplicative, unauthorized, or of insufficient benefit. (*Id.,* ¶ 10; Ex. 1, ¶ 40)   The value of the remaining time is $11,523,932.35 calculated using the same standardized hourly rates used by the consumers' lawyers. (Ex. 1, ¶ 41)  These rates are reasonable (*Id.,* ¶ 38; Ex. 4, ¶ 13), as the Court determined in awarding a fee in the consumer track. (Doc. 261 at 2-3)  Combined with the time spent since July 31, 2017, and the estimated time to be spent before the settlement is consummated, Class Counsel's lodestar totals $11,773,932.35.  (Ex. 1, *¶* 43)

Courts typically apply a multiplier to reward counsel for their risk, the contingent nature of the fee, and the result obtained.  Here, the requested fee represents a modest multiplier of 1.53, which is well within – if not below – the accepted range.  *See, e.g.*, *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (multipliers "'in large and complicated class actions' range from 2.26 to 4.5 while three appears to be the average."); *Ingram*, 200

F.R.D. at 694-96 (multipliers range from less than two to more than five); *Mashburn,* 684 F. Supp. at 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 . . . is not unusual or unreasonable."); *Columbus Drywall & Insulation, Inc.,* 2012 WL 12540344 at *4 (approving a multiplier of 4); *see also* Ex. 3, ¶ 34.

Class Counsel are aware that the Court applied a 1.3 multiplier in the consumer track, which if used here would result in a $15,600,000 fee, not $18 million.  A higher multiplier should be used in this track, however, because the risk, investment, and success were all significantly larger.  (Ex. 1, ¶ 44; Ex. 3, ¶ 33; Ex. 4, ¶ 27)  Most data breach cases by financial institutions have foundered.  (Ex. 3, ¶ 33)  The consumers did not face the risk that Home Depot would use the card brand recovery processes to solicit releases, potentially causing the remaining claims to be financially unviable. (*Id., ¶* 19)  And because Home Depot solicited releases, Class Counsel spent substantial additional time on discovery and legal issues.  Also, claims by financial institutions' are inherently more complex and costly.  (Ex. 1, ¶ 43; Ex. 4, ¶ 27)

## III.   THE EXPENSE REQUEST IS APPROPRIATE

Home Depot has agreed to pay Class Counsel's reasonable costs and expenses.  Class Counsel request $710,257.86. (*Id.,* ¶ 44; Ex. 2, ¶ 14)  The expenses, summarized in Class Counsel's declaration, were reasonably and

necessarily incurred.  (*Id.*; Ex. 4, ¶ 45) Indeed, because Class Counsel advanced the expenses without assurance of reimbursement, they had every incentive not to spend unnecessarily.  The request thus should be approved.  *See, e.g., Waters,* F.3d at 1298 (class counsel are entitled to recover expenses as well as receive a fee); Fed. R. Civ. Proc. 23(h).

## IV.    THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED

Courts routinely approve service awards to compensate class representatives for their time and efforts on behalf of the class.  *See, e.g., Ingram,* 200 F.R.D. at 695-96; *In re Checking,* 2014 WL 11370115 at *12-13 ($10,000); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving awards from $5,000 to $100,000).   The proposed service awards of $2,500 are both modest and justified.  Each class representative devoted substantial time to this litigation.  Moreover, but for their service, other class members would receive nothing. (Ex. 1, ¶ 46)

## CONCLUSION

For the reasons set forth above, Class Counsel request that the Court approve $18 million in attorneys' fees, reimbursement of costs in the amount of $710,257.86, and service awards of $2,500 to each class representative.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
GA Bar No. 107744
DOFFERMYRE SHIELDS CANFIELD &
KNOWLES, LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Phone: 404-881-8900
Email: kcanfield@dsckd.com

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Phone: 212-223-4478
jguglielmo@scott-scott.com

*/s/ Gary F. Lynch*
Gary F. Lynch
CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP
1133 Penn Ave, 5th Floor
Pittsburgh, Pennsylvania 15222
Phone:  412-322-9343
glynch@carlsonlynch.com

*Co-Lead Counsel for Financial Institution
Plaintiffs*

26

_/s/ James J. Pizziusso_
James J. Pizzirusso
HAUSFELD, LLP
1700 K. Street, NW, Suite 650
Washington, DC 20006
Telephone: 859-225-3731
jpizzirusso@hausfeldllp.com

_Chair, Plaintiffs' Steering Committee for the Financial Institution Plaintiffs_

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, in compliance with Local Rule 5.1(c), that the foregoing motion and brief has been prepared using 14-point Times New Roman font.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield

## __CERTIFICATE OF SERVICE__

I hereby certify that on this 23rd day of August, 2017, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield