**Joint Declaration of Co-Lead Counsel**

# Exhibit D-3
**Exhibit to Letter of 01-04-16 from Cari Dawson**

*In re:  The Home Depot, Inc. Customer Data Security Breach Litigation*
*This Document applies to Financial Institution Cases*
U.S.D.C., N.D. Georgia, Atlanta Division
Civil Action No. 1:14-md-02583-TWT

SETTLEMENT AGREEMENT


Dated December 21, 2015

by and between

MASTERCARD INTERNATIONAL INCORPORATED

and

HOME DEPOT U.S.A., INC.

**HIGHLY CONFIDENTIAL**

**THDFI000074**

## TABLE OF CONTENTS

1. DEFINITIONS; CERTAIN RULES OF CONSTRUCTION.........................................2
   1.1 Definitions...................................................................................2
   1.2 Certain Rules of Construction..............................................................7

2. ACCOUNTING STATEMENT ...................................................................7

3. ALTERNATIVE RECOVERY OFFER............................................................7
   3.1 Terms of Conditions........................................................................7
   3.2 Alternative Recovery Amount ..............................................................8
   3.3 Issuer Releases.............................................................................8
   3.4 Adjusted ARAs for Partial Accepting Issuers ............................................11

4. ALTERNATIVE RECOVERY ACCEPTANCE REPORT; MASTERCARD
   REPRESENTATIONS; DELIVERY
   OF ISSUERS' RELEASES ....................................................................11
   4.1 Alternative Recovery Acceptance Report................................................11
   4.2 MasterCard Representations ..............................................................11
   4.3 Delivery of Issuers' Releases............................................................12

5. PAYMENT BY HOME DEPOT; DISTRIBUTION BY MASTERCARD ................12

6. RELEASES; CONSUMMATION DATE.......................................................13
   6.1 Home Depot Release......................................................................13
   6.2 MasterCard Release ......................................................................13
   6.3 Conditions to Consummation; Consummation Date ...................................13

7. TERMINATION................................................................................13
   7.1 Termination................................................................................13
   7.2 Effect of Termination.....................................................................14

8. REPRESENTATIONS AND WARRANTIES; MASTERCARD AND HOME DEPOT
   INDEMNIFICATION.........................................................................15
   8.1 Representations and Warranties..........................................................15
   8.2 MasterCard Indemnification .............................................................17
   8.3 Home Depot Indemnification ............................................................17

9. MISCELLANEOUS ...........................................................................17
   9.1 Notices  ..................................................................................17
   9.2 Succession and Assignment; No –Third Party Beneficiary ...........................19
   9.3 Amendments and Waivers.................................................................20
   9.4 Entire Agreement ........................................................................20
   9.5 Counterparts; Effectiveness .............................................................20
   9.6 Non-Severability .........................................................................20

i

| 9.7 | Headings | 20 |
| 9.8 | Construction | 20 |
| 9.9 | Survival of Covenants, Reliance, etc. | 21 |
| 9.10 | Governing Law | 21 |
| 9.11 | Jurisdiction; Venue and Limitation on Actions; Service of Process | 21 |
| 9.12 | Specific Performance | 22 |
| 9.13 | Waiver of Jury Trial | 22 |
| 9.14 | No Admission of Liability | 23 |
| 9.15 | SEC Filings; Public Announcements | 23 |

**HIGHLY CONFIDENTIAL**                                                                                      **THDFI000076**

# EXHIBITS

Exhibit 3          Form of ARO Communication

Exhibit A – Form of Standard Issuer Release

Exhibit B – Form of Alternative Issuer Release

Exhibit C – Form of ARO

Exhibit D – Information Regarding Putative Class Action Proceedings

Exhibit 6.1        Form of Home Depot and Home Depot Acquirers Release

Exhibit 6.2        Form of MasterCard Release

**HIGHLY CONFIDENTIAL**                                                    **THDFI000077**

## SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT dated as of December 21, 2015 (together with the attached Exhibits called this "Settlement Agreement"), by and between MASTERCARD INTERNATIONAL INCORPORATED, a Delaware corporation ("MasterCard"), and HOME DEPOT U.S.A., INC., a Delaware corporation, on behalf of itself and its subsidiaries and affiliates ("Home Depot").

WHEREAS, on September 8, 2014, Home Depot announced confirmation that it had experienced an intrusion into its computer systems (further defined below as the Home Depot Intrusion), during which payment card account data may have been compromised;

WHEREAS, on December 11, 2014, the United States Judicial Panel on Multidistrict Litigation entered an Order in MDL No. 14-2583 (TWT), *In re: The Home Depot Customer Data Breach Litigation* (the "MDL"), transferring all actions related to the Home Depot Intrusion, pending in various different federal district courts, to the United States District Court for the Northern District of Georgia for coordinated or consolidated pretrial proceedings;

WHEREAS, MasterCard has asserted the right under the MasterCard Operating Regulations (as defined below) to recover from the Home Depot Acquirers (as defined below) certain amounts representing losses and costs allegedly incurred by certain MasterCard Issuers (as defined below) in connection with the Home Depot Intrusion;

WHEREAS, to the extent MasterCard were to recover any such amounts from the Home Depot Acquirers, such Home Depot Acquirers would be entitled to seek indemnification from Home Depot;

WHEREAS, to the extent MasterCard were to recover any such amounts from the Home Depot Acquirers, MasterCard would intend to pay such amounts to said MasterCard Issuers;

WHEREAS, some or all of said MasterCard Issuers have asserted or may assert claims, including those in the MDL, to recover directly from the Home Depot Acquirers and/or Home Depot amounts representing losses and costs allegedly incurred by them in connection with the Home Depot Intrusion; and

WHEREAS, in order to settle claims and resolve other disputes among Home Depot and the Home Depot Acquirers, on the one hand, and MasterCard and certain MasterCard Issuers, on the other hand, with respect to the possible rights of MasterCard and MasterCard Issuers described above, and the actual and potential associated claims by MasterCard and MasterCard Issuers asserting such possible rights and other possible rights, Home Depot and MasterCard have entered into this Settlement Agreement;

NOW, THEREFORE, in consideration of the representations, warranties and covenants set forth in this Settlement Agreement, and subject to all the terms and conditions set forth in this Settlement Agreement, MasterCard and Home Depot agree as follows:

1

1.  DEFINITIONS; CERTAIN RULES OF CONSTRUCTION.

     1.1.   <u>Definitions</u>.   For purposes of this Settlement Agreement only, the following capitalized terms and non-capitalized words and phrases have the meanings respectively assigned to them below, which meanings are applicable equally to the singular and plural forms of the terms so defined:

"<u>Acceptance Deadline</u>" means March 25, 2016.

"<u>Accepting Issuer</u>" has the meaning set forth in Sections 3.3.1 and 3.3.2.

"<u>Accepting Sponsored Issuer</u>" means any Covered Sponsored Issuer that is not a Non-Accepting Sponsored Issuer.

"<u>Accounting Statement</u>" means a written statement (i) that sets forth MasterCard's calculation of the aggregate number of Alerted-On Accounts, the aggregate number of Covered Issuers' Alerted-On Accounts, and the aggregate number of Qualified Accounts, and that contains detail sufficient to confirm the accuracy of the MasterCard representations and warranties contained in clauses (c), (d), (e), (f), and (g) of Section 8.1.1.3; (ii) that includes an issuer-by-issuer breakdown identifying each ARO-Eligible Issuer by means of a numerical identifier rather than by name and each Pre-Accepted Issuer by name, and setting forth the fully de-duplicated number of Alerted-On Accounts and Qualified Accounts of each Eligible Issuer and its Sponsored Issuers; (iii) that sets forth the Issuer Operating Expense Recovery Amount and the Issuer Fraud Recovery Amount of each Eligible Issuer and its Covered Sponsored Issuers and shows that the sum of the Issuer Operating Expense Recovery Amounts of all the Eligible Issuers and their Covered Sponsored Issuers equals the ADC Operating Expense Recovery Amount and that the sum of the Issuer Fraud Recovery Amounts of all the Eligible Issuers and their Covered Sponsored Issuers equals the ADC Fraud Recovery Amount; and (iv) that sets forth the ARA of each Eligible Issuer and shows that the ARA of each Eligible Issuer is such issuer's Issuer Settlement Amount, and the sum of the ARAs of all the ARO-Eligible Issuers equals the Maximum Settlement Amount.

"<u>ADC Assessments</u>" means the preliminary financial liability determinations made by MasterCard with respect to the Home Depot Intrusion.

"<u>ADC Fraud Recovery</u>" means fraud recovery as provided for in Section 10.2.5.5 of the *Security Rules and Procedures*.

"<u>ADC Fraud Recovery Amount</u>" has the meaning set forth in clause (f) of Section 8.1.1.3.

"<u>ADC Operational Reimbursement</u>" means operational reimbursement as provided for in Section 10.2.5.4 of the *Security Rules and Procedures*.

"<u>ADC Operating Expense Recovery Amount</u>" has the meaning set forth in clause (e) of Section 8.1.1.3.

**HIGHLY CONFIDENTIAL**          **THDFI000079**

"ADC Recovery Amount" has the meaning set forth in clause (f) of Section 8.1.1.3.

"ADC Settlement Amount" means $14,791,984.79, which is the amount equal to the ADC Recovery Amount less the Issuer ADC Recovery Amounts of the Pre-Accepted Issuers (except that portion of the Issuer ADC Recovery Amounts of the Pre-Accepted Issuers that is attributable to the Non-Accepting Sponsored Issuers of the Pre-Accepted Issuers).

"Adjusted ARA" has the meaning set forth in Section 3.4.

"Affiliate Customer" has the meaning set forth in the Definitions Section of the *MasterCard Rules*.

"Affiliate Issuer" means any MasterCard Issuer that controls, is controlled by, or is under common control with, another MasterCard Issuer.

"Affiliated Person" means, as to any Person, the past, present, and future representatives, attorneys, agents, accountants, assigns, insurers, administrators, officers, directors, trustees, employees, retained contractors, parents, affiliates, subsidiaries, predecessors, and successors of the Person, and any other Persons acting on behalf of the Person, all in their capacities as such, including, in the case of Bank of America N.A., Banc of America Merchant Services, LLC, First Data Canada Ltd. and Wells Fargo Financial Corporation Canada.

"Affiliates" means, as to any entity, all other entities that either control, are controlled by, or are under common control with, such entity, including parents of such entity and each of their predecessors, successors, and assigns.

"Aggregate Non-Accepting Issuer ARA Amount" means the aggregate amount of (i) the ARAs of the Non-Accepting Issuers, and (ii) the Partial Accepting Issuer ARA Reductions of the Partial Accepting Issuers.

"Alerted-On Account" means (i) in general, any MasterCard Account with respect to which MasterCard or any of its Affiliated Persons issued an alert in connection with the Home Depot Intrusion, and (ii) with respect to each Covered Issuer, the group of MasterCard Accounts issued by such issuer with respect to which MasterCard or any of its Affiliated Persons issued an alert in connection with the Home Depot Intrusion.

"Alternative Issuer Release" has the meaning set forth in Section 3.3.2.

"Alternative Recovery Acceptance Report" has the meaning set forth in Section 4.1.

"ARA" has the meaning set forth in Section 3.1.

"ARO" has the meaning set forth in Section 3.1.

"ARO Communication" has the meaning set forth in Section 3.

"ARO Date" has the meaning set forth in Section 3.

3

"ARO-Eligible Issuers" means Eligible Issuers that are not Pre-Accepted Issuers.

"Business Day" means any day other than any Saturday, Sunday or other day on which commercial banks are authorized or required to close in New York City.

"Consummation Date" has the meaning set forth in Section 6.3.

"Covered Action" has the meaning set forth in Section 9.13.

"Covered Issuer" means each MasterCard Issuer that was the issuer of one or more Qualified Accounts.

"Covered Sponsored Issuer" means (A) in general, a Covered Issuer that is a Sponsored Issuer of an Eligible Issuer; and (B) with respect to any Eligible Issuer, any Covered Issuer that is a Sponsored Issuer of such Eligible Issuer.

"Eligible Issuer" means a Covered Issuer that is not an Affiliate Customer; provided, however, that in the event two or more Covered Issuers that are Affiliate Issuers of one another would be Eligible Issuers under the foregoing definition, then one and only one of such Covered Issuers (to be designated by MasterCard) shall be an Eligible Issuer.

"Final Settlement Amount" means the Maximum Settlement Amount less the Aggregate Non-Accepting Issuer ARA Amount.

"Form of Alternative Issuer Release" has the meaning set forth in Section 3.1.

"Form of Standard Issuer Release" has the meaning set forth in Section 3.1.

"Home Depot Acquirers" means Bank of America N.A., Banc of America Merchant Services LLC, First Data Canada Ltd., and Wells Fargo Financial Corporation Canada in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network.

"Home Depot Intrusion" means the Home Depot computer system intrusion(s) referenced in the MasterCard Alerts issued under case number ADC3868, ADC3869, ADC3870, ADC3871 and ADC3872, including all of their subparts.

"Home Depot Release" has the meaning set forth in Section 6.1.

"Independent Sponsored Issuer" means any Sponsored Issuer of an Eligible Issuer that is solely responsible and liable to MasterCard, and whose Eligible Issuer accordingly is not liable or responsible to MasterCard, for any and all transactions arising from the Sponsored Issuer's use of the Eligible Issuer's MasterCard Bank Identification Numbers associated with the Eligible Issuer's MasterCard ICAs that are linked or dedicated to that Sponsored Issuer.

4

HIGHLY CONFIDENTIAL                                         THDFI000081

"Issuer ADC Recovery Amount" means, as to any MasterCard Issuer, the sum of such issuer's Issuer ADC Fraud Recovery Amount and Issuer ADC Operating Expense Recovery Amount.

"Issuer ADC Fraud Recovery Amount" means, as to any MasterCard Issuer, the portion of the ADC Fraud Recovery Amount allocable to such issuer under the MasterCard Operating Regulations for ADC Fraud Recovery attributable to the Home Depot Intrusion, as determined by MasterCard.

"Issuer ADC Operating Expense Recovery Amount" means, as to any MasterCard Issuer, the portion of the ADC Operating Expense Recovery Amount allocable to such issuer under the MasterCard Operating Regulations for ADC Operational Reimbursement attributable to the Home Depot Intrusion, as determined by MasterCard.

"Issuer Settlement Amount" means, as to any Eligible Issuer, an amount equal to 10% of such issuer's Issuer ADC Recovery Amount.

"MasterCard Account" is defined herein as a payment card account utilized by a payment card bearing the MasterCard symbol or MasterCard brand mark, the MasterCard Electronic symbol or MasterCard Electronic brand mark, the Debit MasterCard symbol or Debit MasterCard brand mark, the Maestro symbol or Maestro brand mark, and/or the Cirrus symbol or Cirrus brand mark, and issued by or through a member of MasterCard (or by or through some other entity sponsored directly or indirectly by an Affiliated Person of a member of MasterCard), that enables the purchase of goods from a merchant.

"MasterCard ICA" means, as to any MasterCard issuer, that issuer's MasterCard Interbank Card Association number(s).

"MasterCard Issuer" means an issuer of a MasterCard Account.

"MasterCard Operating Regulations" means the governing bylaws, rules and regulations, published policies, and any other manuals of MasterCard prepared in connection with any program or service or activity of MasterCard and published to the members of MasterCard from time to time, for example, and not by way of limitation, the *MasterCard Rules*, the *Security Rules and Procedures*, and the *Chargeback Guide*, as currently or formerly in effect.

"MasterCard Release" has the meaning set forth in Section 6.2.

"Maximum Settlement Amount" has the meaning set forth in in clause (g) of Section 8.1.1.3.

"MDL" has the meaning set forth in the preamble hereto.

"Non-Accepting Issuer" means an ARO-Eligible Issuer that does not fully complete, duly execute, and timely deliver to MasterCard a Standard Issuer Release, Alternative Issuer Release, or Partial Alternative Issuer Release.

**HIGHLY CONFIDENTIAL**                                                      **THDFI000082**

"Non-Accepting Qualified Accounts" means, as to any Non-Accepting Issuer, all Qualified Accounts issued by such Non-Accepting Issuer and its Covered Sponsored Issuers, and, as to any Partial Accepting Issuer, all Qualified Accounts issued by the Non-Accepting Sponsored Issuers of such Partial Accepting Issuer.

"Non-Accepting Sponsored Issuer" as to any ARO-Eligible Issuer, has the meaning set forth in Section 3.4, and, as to any Pre-Accepted Issuer, means a Covered Sponsored Issuer that did not authorize its Pre-Accepted Issuer to accept the separate settlement agreement with Home Depot and MasterCard.

"Non-Independent Sponsored Issuer" means any Sponsored Issuer of an Eligible Issuer that is not an Independent Sponsored Issuer.

"Partial Accepting Issuer" as to any ARO-Eligible Issuer, has the meaning set forth in Section 3.3.3, and as to any Pre-Accepted Issuer, any Pre-Accepted Issuer that accepted its settlement agreement on behalf of itself and on behalf of some, but not all, of its Covered Sponsored Issuers.

"Partial Accepting Issuer ARA Reduction" means the difference between a Partial Accepting Issuer's ARA and such Partial Accepting Issuer's Adjusted ARA.

"Partial Alternative Issuer Release" has the meaning set forth in Section 3.3.3.

"Person" means any individual or any corporation, association, partnership, limited liability company, joint venture, joint stock or other company, business trust, trust, organization, governmental authority or other entity of any kind.

"Pre-Accepted Issuers" are Eligible Issuers that are parties to a separate settlement agreement with Home Depot and MasterCard and are identified in the Accounting Statement.

"Pre-Accepted Issuers Agreement" has the meaning set forth in Section 6.3.

"Pre-Accepted Issuers Event" has the meaning set forth in Section 6.3.

"Qualified Account" means an Alerted-On Account that MasterCard determined was eligible to be made the subject of issuer fraud recovery and/or issuer operating expense recovery under the MasterCard Operating Regulations, and that MasterCard included in its calculations of issuer fraud recovery and/or issuer operating expense recovery when determining the ADC Assessments.

"Reports on Compliance" means the following reports prepared for Home Depot in conjunction with the annual assessment of Home Depot's compliance with the Payment Card Industry Data Security Standards and/or other then existing data security standards:  Report on Compliance issued by Solutionary, Inc. on October 14, 2013.

**HIGHLY CONFIDENTIAL**                                                                                 **THDFI000083**

"Settlement" means the settlement embodied in this Settlement Agreement.

"Settlement Agreement" has the meaning set forth in the preamble hereto.

"Sponsored Issuer" means (A) in general, any MasterCard Issuer that is (i) an Affiliate Issuer of an Eligible Issuer or (ii) an Affiliate Customer of an Eligible Issuer or one of its Affiliate Issuers; and (B) with respect to any Eligible Issuer, any MasterCard Issuer (i) that is an Affiliate Issuer of such Eligible Issuer or (ii) an Affiliate Customer of such Eligible Issuer or one of its Affiliate Issuers.

"Standard Issuer Release" has the meaning set forth in Section 3.3.1.

"Termination Date" has the meaning set forth in Section 7.1.

    1.2.   Certain Rules of Construction.  Except as otherwise explicitly specified to the contrary, (a) references to a Section, Exhibit or Schedule means a Section of, or Schedule or Exhibit to, this Settlement Agreement, unless another agreement or document is specified, (b) the word "including" will be construed as "including without limitation," (c) references to a particular statute or regulation include all rules and regulations thereunder and any predecessor or successor statute, rules or regulation, in each case as amended or otherwise modified from time to time, (d) words in the singular or plural form include the plural and singular form, respectively and (e) references to a particular Person include such Person's successors and assigns to the extent not expressly prohibited by this Settlement Agreement.

    2.  ACCOUNTING STATEMENT.  Prior to the execution and delivery of this Settlement Agreement, MasterCard has delivered to Home Depot the Accounting Statement.

    3.  ALTERNATIVE RECOVERY OFFER.  By no later than January 25, 2016 (the "ARO Date"), MasterCard shall send to each ARO-Eligible Issuer the communication attached hereto as Exhibit 3 (the "ARO Communication"), appropriately completed for each ARO-Eligible Issuer.

    3.1.   Terms of Communication.  The ARO Communication shall (i) include an offer to the ARO-Eligible Issuer to which it is addressed (in the form appearing as Exhibit C to Exhibit 3 hereto), as an alternative to any recovery in regard to the Home Depot Intrusion that may otherwise be available to said ARO-Eligible Issuer and its Covered Sponsored Issuers, of a specified dollar amount (as to each ARO-Eligible Issuer, such offer being defined as such issuer's "ARO" and the specified dollar amount of such offer being defined as such issuer's "ARA"); (ii) recommend that each ARO-Eligible Issuer accept its ARO on behalf of itself and its Covered Sponsored Issuers; (iii) include the form appearing as Exhibit A to Exhibit 3 hereto (a "Form of Standard Issuer Release") for ARO-Eligible Issuers with no Sponsored Issuers, according to MasterCard's records, or whose Sponsored Issuers are exclusively Non-Independent Sponsored Issuers, according to MasterCard's records, or the form appearing as Exhibit B to Exhibit 3 hereto (a "Form of Alternative Issuer Release") for ARO-Eligible Issuers whose Sponsored Issuers include one or more Independent Sponsored Issuers, according to MasterCard's records; and (iv) provide (in the

7

form appearing as Exhibit D to Exhibit 3 hereto) information regarding the putative class action proceedings referenced in Sections 3.3.1, 3.3.2, and 3.3.3.

3.2.     Alternative Recovery Amount.  Each ARO-Eligible Issuer's ARO shall reflect an ARA equal to the ARO-Eligible Issuer's Issuer Settlement Amount, and the aggregate amount of all the ARO-Eligible Issuers' ARAs shall equal the Maximum Settlement Amount.

3.3.     Issuer Releases.

3.3.1.     Standard Issuer Release.  Any ARO-Eligible Issuer that receives a Form of Standard Issuer Release and desires to accept its ARO on behalf of itself, in the event that it has no Covered Sponsored Issuers, or on behalf of itself and all Covered Sponsored Issuers of such ARO-Eligible Issuer, in the event that it has one or more Covered Sponsored Issuers, must, on or before the Acceptance Deadline, fully complete, duly execute, and deliver to MasterCard said Form of Standard Issuer Release.  Each such Form of Standard Issuer Release so fully completed, duly executed and delivered as set forth in this Section 3.3.1 is herein called a "Standard Issuer Release," and each ARO-Eligible Issuer that delivers a Standard Issuer Release is herein called an "Accepting Issuer."  As provided in the Form of Standard Issuer Release, each Accepting Issuer on its own behalf, on behalf of each of its Covered Sponsored Issuers, and on behalf of its and their Affiliates (each solely in its capacity as an issuer of MasterCard-branded payment cards) irrevocably waives any right to assert against Home Depot; the Home Depot Acquirers; MasterCard; and the Affiliated Persons of each of them, and fully and finally releases Home Depot, the Home Depot Acquirers, MasterCard, and the Affiliated Persons of each of them from, any claim or right that the Accepting Issuer, its Covered Sponsored Issuers, or its or their Affiliates might be entitled to assert and any monetary recovery or other relief that the Accepting Issuer, its Covered Sponsored Issuers, or its or their Affiliates might be entitled to seek or receive, by reason of the Home Depot Intrusion: (i) in any litigation or other proceeding, whether currently pending, hereafter commenced, or hereafter amended (including without limitation the pending putative class action proceedings consolidated under the caption entitled *In re: The Home Depot Customer Data Breach Litigation*, MDL No. 14-2583 (TWT) pending in the United States District Court for the Northern District of Georgia), (ii) under any applicable laws, rules or regulations, or (iii) pursuant to any other contractual or legal theory, in connection with any injury or harm the Accepting Issuer, its Covered Sponsored Issuers, or its or their Affiliates may have incurred or may in the future incur in its capacity as an issuer of MasterCard-branded payment cards (whether or not the matter, occurrence, or event that forms the basis for such claim or right is known to the entity in question as of the date that the Standard Issuer Release is executed).  Notwithstanding anything to the contrary in the preceding sentence, the claims released in each Standard Issuer Release shall not include (i) any claim or right the Accepting Issuer, its Covered Sponsored Issuers, or its or their Affiliates might be entitled to assert, or any monetary recovery or other relief that any of them might be entitled to seek or receive, in its capacity as an issuer of payment cards other than MasterCard-branded payment cards; (ii) any claim or right of recovery that any Covered Sponsored Issuer of the Accepting Issuer may have with respect to Qualified Accounts, if any, that the Covered Sponsored Issuer in question issued under the MasterCard ICA of an Eligible Issuer other than the Accepting Issuer.  No ARO-Eligible Issuer shall be deemed to have timely and validly accepted its ARO on its behalf or on its own behalf and on behalf of

8

all of its Covered Sponsored Issuers and its or their Affiliates unless such ARO-Eligible Issuer shall have fully completed, duly executed, and timely delivered its Form of Standard Issuer Release and such fully completed, duly executed, and such timely delivered Standard Issuer Release shall in turn have been timely delivered to Home Depot by MasterCard.

3.3.2.   Alternative Issuer Release.  Any ARO-Eligible Issuer that receives a Form of Alternative Issuer Release and desires to accept its ARO on behalf of itself and all Covered Sponsored Issuers of such ARO-Eligible Issuer must, on or before the Acceptance Deadline, fully complete, duly execute, and deliver to MasterCard said Form of Alternative Issuer Release and confirm in Schedule II of such release that the ARO-Eligible Issuer has no Non-Accepting Sponsored Issuers.  Each Form of Alternative Issuer Release so fully completed, duly executed, and delivered as set forth in this Section 3.3.2 is herein called an "Alternative Issuer Release," and each ARO-Eligible Issuer that delivers an Alternative Issuer Release is herein called an "Accepting Issuer."  As provided in the Form of Alternative Issuer Release, each Accepting Issuer on its own behalf, on behalf of each of its Accepting Sponsored Issuers, and on behalf of its and their Affiliates (each solely in its capacity as an issuer of MasterCard-branded payment cards) irrevocably waives any right to assert against Home Depot; the Home Depot Acquirers; MasterCard; and the Affiliated Persons of each of them, and fully and finally releases Home Depot, the Home Depot Acquirers, MasterCard, and the Affiliated Persons of each of them from, any claim or right that the Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates might be entitled to assert and any monetary recovery or other relief that the Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates might be entitled to seek or receive, by reason of the Home Depot Intrusion: (i) in any litigation or other proceeding, whether currently pending, hereafter commenced, or hereafter amended (including without limitation the pending putative class action proceedings consolidated under the caption entitled *In re: The Home Depot Customer Data Breach Litigation*, MDL No. 14-2583 (TWT) pending in the United States District Court for the Northern District of Georgia), (ii) under any applicable laws, rules or regulations, or (iii) pursuant to any other contractual or legal theory, in connection with any injury or harm the Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates may have incurred or may in the future incur in its capacity as an issuer of MasterCard-branded payment cards (whether or not the matter, occurrence, or event that forms the basis for such claim or right is known to the entity in question as of the date that the Alternative Issuer Release is executed).  Notwithstanding anything to the contrary in the preceding sentence, the claims released in each Alternative Issuer Release shall not include (i) any claim or right the Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates might be entitled to assert, or any monetary recovery or other relief that any of them might be entitled to seek or receive, in its capacity as an issuer of payment cards other than MasterCard-branded payment cards; (ii) any claim or right of recovery that any Accepting Sponsored Issuer of the Accepting Issuer may have with respect to Qualified Accounts, if any, that the Accepting Sponsored Issuer in question issued under the MasterCard ICA of an Eligible Issuer other than the Accepting Issuer.  No ARO-Eligible Issuer shall be deemed to have timely and validly accepted its ARO on its behalf or on its own behalf and on behalf of all of its Accepting Sponsored Issuers and its or their Affiliates unless such ARO-Eligible Issuer shall have fully completed, duly executed, and timely delivered its Form of Alternative Issuer Release and such fully completed, duly executed,

9

and such timely delivered Alternative Issuer Release shall in turn have been timely delivered to Home Depot by MasterCard.

      3.3.3.    Partial Alternative Issuer Release. In the event that any ARO-Eligible Issuer that receives a Form of Alternative Issuer Release desires to accept its ARO on behalf of itself and on behalf of certain of its Sponsored Issuers that are Covered Sponsored Issuers, but not on behalf of one or more of its Covered Sponsored Issuers, such ARO-Eligible Issuer must, on or before the Acceptance Deadline, fully complete, duly execute, and deliver to MasterCard such Form of Alternative Issuer Release and confirm in Schedule II of such release that the ARO-Eligible Issuer has one or more Non-Accepting Sponsored Issuers. Each Form of Alternative Issuer Release so fully completed, duly executed, and delivered as set forth in this Section 3.3.3 is herein called a "Partial Alternative Issuer Release," and each ARO-Eligible Issuer that delivers a Partial Alternative Issuer Release is herein called a "Partial Accepting Issuer." As provided in the Form of Alternative Issuer Release, each Partial Accepting Issuer on its own behalf, on behalf of each of its Accepting Sponsored Issuers, and on behalf of its and their Affiliates (each solely in its capacity as an issuer of MasterCard-branded payment cards) irrevocably waives any right to assert against Home Depot; the Home Depot Acquirers; MasterCard; and the Affiliated Persons of each of them, and fully and finally releases Home Depot, the Home Depot Acquirers, MasterCard, and the Affiliated Persons of each of them from, any claim or right that the Partial Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates might be entitled to assert and any monetary recovery or other relief that the Partial Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates might be entitled to seek or receive, by reason of the Home Depot Intrusion: (i) in any litigation or other proceeding, whether currently pending, hereafter commenced, or hereafter amended (including without limitation the pending putative class action proceedings consolidated under the caption entitled *In re: The Home Depot Customer Data Breach Litigation, MDL No. 14-2583 (TWT)* pending in the United States District Court for the Northern District of Georgia), (ii) under any applicable laws, rules or regulations, or (iii) pursuant to any other contractual or legal theory, in connection with any injury or harm the Partial Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates may have incurred or may in the future incur in its capacity as an issuer of MasterCard-branded payment cards (whether or not the matter, occurrence, or event that forms the basis for such claim or right is known to the entity in question as of the date that the Partial Alternative Issuer Release is executed). Notwithstanding anything to the contrary in the preceding sentence, the claims released in each Partial Alternative Issuer Release shall not include (i) any claim or right the Partial Accepting Issuer, its Accepting Sponsored Issuers, or its or their Affiliates might be entitled to assert, or any monetary recovery or other relief that any of them might be entitled to seek or receive, in its capacity as an issuer of payment cards other than MasterCard-branded payment cards; (ii) any claim or right of recovery that any Accepting Sponsored Issuer of the Partial Accepting Issuer may have with respect to Qualified Accounts, if any, that the Accepting Sponsored Issuer in question issued under the MasterCard ICA of an Eligible Issuer other than the Partial Accepting Issuer. No Partial Accepting Issuer shall be deemed to have timely and validly accepted its ARO on its behalf or on its own behalf and on behalf of its Accepting Sponsored Issuers and its or their Affiliates unless such ARO-Eligible Issuer shall have fully completed, duly executed, and timely delivered its Form of Alternative Issuer

**HIGHLY CONFIDENTIAL**      **THDFI000087**

Release and such fully completed, duly executed, and timely delivered Partial Alternative Issuer Release shall in turn have been timely delivered to Home Depot by MasterCard.

3.4.　　Adjusted ARAs for Partial Accepting Issuers.　Each Partial Accepting Issuer's ARA shall be adjusted to account for the Qualified Accounts attributable to each of the Partial Accepting Issuer's Covered Sponsored Issuers that does not authorize its Partial Accepting Issuer to accept such Partial Accepting Issuer's ARO on such Covered Sponsored Issuer's behalf (any such Covered Sponsored Issuer that does not authorize its Partial Accepting Issuer to accept the ARO on its behalf is herein called a "Non-Accepting Sponsored Issuer"), as set forth in this Section 3.4.　Each Partial Accepting Issuer's ARA shall be reduced by an amount equal to (a) the ratio of the aggregate number of Qualified Accounts issued by the Partial Accepting Issuer's Non-Accepting Sponsored Issuers (as set forth in the Partial Accepting Issuer's Partial Alternative Issuer Release) to the total number of Qualified Accounts set forth in the Partial Accepting Issuer's ARO, multiplied by (b) the ARA set forth in the Partial Accepting Issuer's ARO (such reduced ARA for each Partial Accepting Issuer is herein called the Partial Accepting Issuer's "Adjusted ARA").　For example, if a Partial Accepting Issuer's ARA is $200 for 100 total Qualified Accounts, and 10 Qualified Accounts were issued by the Partial Accepting Issuer's Non-Accepting Sponsored Issuers in the Partial Accepting Issuer's Partial Alternative Issuer Release, the Partial Accepting Issuer's Adjusted ARA would be $180 (*i.e.*, $200 - [(10/100) x $200]).

4.　ALTERNATIVE RECOVERY ACCEPTANCE REPORT; MASTERCARD REPRESENTATIONS; DELIVERY OF ISSUERS' RELEASES.

4.1.　　Alternative Recovery Acceptance Report.　MasterCard shall deliver (as provided in clause (a) or (c) of Section 9.1) to Home Depot not later than 5:00 p.m., Eastern Time, five (5) Business Days following the Acceptance Deadline a written report (the "Alternative Recovery Acceptance Report") that sets forth the same information contained in the Accounting Statement together with the name, MasterCard ICA (and by the numerical identifier used for such ARO-Eligible Issuer in the Accounting Statement), and the number of Qualified Accounts of each Accepting Issuer and its Covered Sponsored Issuers and of each Partial Accepting Issuer and its Accepting Sponsored Issuers.　The Alternative Recovery Acceptance Report shall also set forth the ARA of each Accepting Issuer and each Partial Accepting Issuer; and MasterCard's calculation of the Adjusted ARA and the Partial Accepting Issuer ARA Reduction of each Partial Accepting Issuer, and the Final Settlement Amount.

4.2.　　MasterCard Representations.　The delivery of the Alternative Recovery Acceptance Report by MasterCard shall constitute a representation and warranty by MasterCard, and MasterCard shall be deemed to represent and warrant by such delivery, that (i) MasterCard has in the Alternative Recovery Acceptance Report correctly set forth the names and MasterCard ICAs of the Accepting Issuers and the number of Alerted-On Accounts and Qualified Accounts of each of the Accepting Issuers and their Sponsored Issuers, (ii) each Accepting Issuer identified as such in the Alternative Recovery Acceptance Report has timely provided MasterCard with a fully completed and duly executed Standard Issuer Release or Alternative Issuer Release, (iii) MasterCard has in the Alternative Recovery Acceptance Report correctly set forth the names and MasterCard ICAs of the Partial

11

Accepting Issuers and the number of Alerted-On Accounts and Qualified Accounts of each of the Partial Accepting Issuers and their Accepting Sponsored Issuers, (iv) each Partial Accepting Issuer identified as such in the Alternative Recovery Acceptance Report has timely provided MasterCard with a fully completed and duly executed Partial Alternative Issuer Release, (v) MasterCard has in the Alternative Recovery Acceptance Report correctly calculated each Partial Accepting Issuer's Adjusted ARA and Partial Accepting Issuer ARA Reduction, and the Final Settlement Amount, (vi) the numerical information contained in the Alternative Recovery Acceptance Report with respect to the Accepting Issuers and their Covered Sponsored Issuers accurately reflects such numerical information as it was provided to MasterCard by the Accepting Issuers in their Standard Issuer Releases or Alternative Issuer Releases, as applicable, and matches such numerical information as it was provided to MasterCard by the Accepting Issuers and their Covered Sponsored Issuers and as it was set forth as to the Accepting Issuers and their Covered Sponsored Issuers in the Accounting Statement, and (vii) the numerical information contained in the Alternative Recovery Acceptance Report with respect to the Partial Accepting Issuers and their Accepting Sponsored Issuers accurately reflects such numerical information as it was provided to MasterCard by the Partial Accepting Issuers in their Partial Alternative Issuer Releases, and accurately reflects the numerical information provided to MasterCard by the Partial Accepting Issuers and their Covered Sponsored Issuers and as it was set forth as to the Partial Accepting Issuers and their Covered Sponsored Issuers in the Accounting Statement, after adjusting for the Qualified Accounts issued by the Partial Accepting Issuers' Non-Accepting Sponsored Issuers, as set forth in the Partial Accepting Issuers' Partial Alternative Issuer Releases.

4.3.    <u>Delivery of Issuers' Releases</u>.  Not later than three (3) Business Days after MasterCard has delivered the Alternative Recovery Acceptance Report to Home Depot, MasterCard shall deliver to Home Depot a true and correct copy of the Standard Issuer Release, Alternative Issuer Release, or Partial Alternative Issuer Release, as applicable, of each ARO-Eligible Issuer identified as an Accepting Issuer or Partial Accepting Issuer in the Alternative Recovery Acceptance Report. Each such Standard Issuer Release, Alternative Issuer Release, and Partial Alternative Issuer Release shall have been fully completed, duly executed, and timely delivered by the ARO-Eligible Issuer.   The delivery of a Standard Issuer Release, Alternative Issuer Release, or Partial Alternative Issuer Release by MasterCard to Home Depot pursuant to this Section 4.3 shall constitute a representation and warranty by MasterCard, and MasterCard shall be deemed to represent and warrant by such delivery, that Schedule I of each Standard Issuer Release, and, collectively, Schedules I and II of each Alternative Issuer Release and Partial Alternative Issuer Release, accurately sets forth, as shown in MasterCard's records as of September 8, 2014, the Sponsored Issuer(s), including any Affiliate Issuer(s), of the Accepting Issuer or Partial Accepting Issuer, as applicable, that executed such Standard Issuer Release, Alternative Issuer Release or Partial Alternative Issuer Release.

5.  <u>PAYMENT BY HOME DEPOT; DISTRIBUTION BY MASTERCARD</u>.

5.1.    On the Consummation Date, Home Depot shall pay to MasterCard the ADC Settlement Amount.  The payment shall be made in same day funds (by federal wire transfer to a bank account specified by MasterCard below).

**HIGHLY CONFIDENTIAL**                                    **THDFI000089**

5.1.1.    MasterCard shall distribute the ADC Settlement Amount to MasterCard Issuers at the same time as the Final Settlement Amount in Section 5.2 is distributed to the Accepting Issuers.

5.2.    Within five (5) Business Days after the receipt of the Alternative Recovery Acceptance Report (described in Section 4.1), Home Depot shall pay to MasterCard the Final Settlement Amount (by federal wire transfer to a bank account specified by MasterCard on not less than two (2) Business Days advance written notice to Home Depot.   Within fifteen (15) Business Days thereafter, MasterCard shall pay each Accepting Issuer its ARA and shall pay each Partial Accepting Issuer its Adjusted ARA.

6.   RELEASES; CONSUMMATION DATE.

6.1.    Home Depot Release.  Prior to the Consummation Date, Home Depot shall make reasonable efforts to cause the Home Depot Acquirers to execute the form of release attached to this Settlement Agreement as Exhibit 6.1 or a version of that form of release otherwise acceptable to MasterCard and Home Depot.  On the Consummation Date, upon and subject to the satisfaction of all of the other conditions set forth in Section 6.3 below, Home Depot shall deliver to MasterCard a duly executed version of such form of release (the "Home Depot Release").

6.2.    MasterCard Release.   On the Consummation Date, upon and subject to the satisfaction of all of the other conditions set forth in Section 6.3 below, MasterCard shall deliver to Home Depot a duly executed version of the form of release attached to this Settlement Agreement as Exhibit 6.2 (the "MasterCard Release").

6.3.    Consummation Date.  The "Pre-Accepted Issuers Event" occurred when Eligible Issuers that, together with their Covered Sponsored Issuers, issued an aggregate number of 7,017,003 Qualified Accounts executed separate settlement agreements and releases related to the Home Depot Intrusion, pursuant to which the total amounts received by the Pre-Accepted Issuers was based on the same methodology for calculating the ARA plus Issuer ADC Recovery Amount of each ARO-Eligible Issuer (a "Pre-Accepted Issuers Agreement").   Provided that this Settlement Agreement has not earlier been terminated pursuant to Section 7, the "Consummation Date" shall be the date that is two (2) Business Days from the date on which Home Depot notifies MasterCard that the Home Depot Acquirers have executed the Home Depot Release.

7.   TERMINATION.

7.1.    Termination.  This Settlement Agreement may be terminated (the date on which the Settlement Agreement is terminated, the "Termination Date") at any time prior to the Consummation Date:

7.1.1.    by mutual written consent of Home Depot and MasterCard;

7.1.2.    by Home Depot or MasterCard by written notice to the other party, at any time after January 18, 2016 if the Consummation Date has not occurred by such date (unless the Consummation Date has not occurred as the result of one or more

13

breaches or violations of, or material inaccuracies in, any covenant, agreement, representation or warranty of this Settlement Agreement by the terminating party);

        7.1.3.     by Home Depot, by written notice to MasterCard, if either (i) there has been or will be a material breach of, or inaccuracy in, any representation or warranty of MasterCard contained in this Settlement Agreement as of the date of this Settlement Agreement or as of any subsequent date (other than representations or warranties that this Settlement Agreement expressly limits so as to speak only as of a specific date or time, with respect to which Home Depot's right to terminate will arise only in the event of a breach of, or inaccuracy in, such representation or warranty as of such specified date or time), provided, however, that in the event that any number in the Accounting Statement deviates from (x) the corresponding number in Section 8.1.1.3(c), (d), (e), (f), or (g) hereof, or (y) any corresponding number in the Alternative Recovery Acceptance Report after adjusting for the Qualified Accounts attributable to the Partial Accepting Issuer's Non-Accepting Sponsored Issuers as set forth in the Partial Accepting Issuer's Partial Alternative Issuer Release, any such deviation that is less than 0.25% shall not for purposes of this Section 7.1.3 in and of itself constitute or create a material breach of, or inaccuracy in, any representation or warranty of MasterCard contained in this Settlement Agreement relative to the number in question; or (ii) MasterCard has breached or violated any of its covenants and agreements contained in this Settlement Agreement; and

        7.1.4.     by MasterCard, by written notice to Home Depot, if either (i) there has been or will be a material breach of, or inaccuracy in, any representation or warranty of Home Depot contained in this Settlement Agreement as of the date of this Settlement Agreement or as of any subsequent date (other than representations or warranties that this Settlement Agreement expressly limits so as to speak only as of a specific date or time, with respect to which MasterCard's right to terminate will arise only in the event of a breach of, or inaccuracy in, such representation or warranty as of such specified date or time), or (ii) Home Depot has breached or violated any of its covenants and agreements contained in this Settlement Agreement.

Effective upon the execution of any mutual consent to termination or the giving of any termination notice in accordance with Section 7.1 (delivered as provided in Section 9.1), this Settlement Agreement shall terminate and be void and shall be of no further force or effect, except as provided in Section 7.2.

        7.2.     <u>Effect of Termination</u>.  If this Settlement Agreement is terminated as provided by or pursuant to the provisions of Section 7.1, such termination shall be effective as against both parties to this Settlement Agreement and shall be without liability of either party to the other party to this Settlement Agreement, except for liabilities arising in respect of breaches of representations and warranties and covenants under this Settlement Agreement by either party on or prior to the Termination Date. In the event of such termination it is agreed by the parties that, as provided in Section 9.14, none of MasterCard's agreement to present the AROs to ARO-Eligible Issuers, Home Depot's agreement to pay the Final Settlement Amount, or any other provision of this Settlement Agreement shall be cited in any way by MasterCard or Home Depot, or be deemed evidence of an admission on the part of either of the parties, in any subsequent dispute other than a dispute relative to the

14

enforcement of this Settlement Agreement.  The provisions of Section 7.2, Sections 8.2 and 8.3, and Section 9 shall survive any termination pursuant to Section 7.1.

8. REPRESENTATIONS AND WARRANTIES; MASTERCARD AND HOME DEPOT INDEMNIFICATION.

8.1.    Representations and Warranties.  Each of the parties to this Settlement Agreement hereby makes the following representations and warranties to the other party:

8.1.1.    Representations and Warranties of MasterCard.  In addition to its representations and warranties made in connection with the delivery of the Alternative Recovery Acceptance Report, the Standard Issuer Releases, the Alternative Issuer Releases, and Partial Alternative Issuer Releases as provided in Section 4.1 and Section 4.3 respectively, and the MasterCard Release as provided in Section 6.2, MasterCard hereby represents and warrants that:

8.1.1.1 Authorization.    The execution, delivery and performance of this Settlement Agreement, including the Exhibits to which MasterCard is a party, and the consummation by MasterCard of the transactions contemplated hereby and thereby, are within its corporate powers and have been duly authorized by all necessary corporate action.  This Settlement Agreement constitutes, and each of the Exhibits to which MasterCard is a party when executed and delivered by it will constitute, a valid and binding agreement of MasterCard, enforceable against MasterCard in accordance with its terms, except to the extent such enforceability may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting or relating to creditors' rights generally and by general principles of equity.

8.1.1.2 Non-Contravention.    The execution, delivery and performance by MasterCard of this Settlement Agreement and the Exhibits to which MasterCard is a party (a) do not and will not (i) violate the certificate of incorporation or by-laws of MasterCard, or (ii) require any consent that has not been given or other action that has not been taken by any Person under any instrument binding upon MasterCard, and (b) do not require any action by or filing with any domestic or foreign, federal, state or local governmental authority, department, court or agency.

8.1.1.3 Accounting Statement.

(a)    the Accounting Statement correctly sets forth the information required to be set forth therein by the terms of the definition of the term "Accounting Statement" in Section 1.1;

(b)    each entity identified in the Accounting Statement as an Eligible Issuer is an Eligible Issuer;

(c)    the Alerted-On Accounts constitute 12,495,061 unique MasterCard Accounts;

15

(d)     the Qualified Accounts constitute   10,795,390   unique MasterCard Accounts;

(e)     MasterCard has accurately determined, by applying the relevant MasterCard Operating Regulations in accordance with MasterCard's customary practices and procedures for interpreting and applying the relevant MasterCard Operating Regulations, that the award for  Operating Expense Recovery (as defined in the MasterCard Operating Regulations) attributable to the Home Depot Intrusion is **$12,417,826.13** (the "<u>ADC Operating Expense Recovery Amount</u>");

(f)     MasterCard has accurately determined, by applying the relevant MasterCard Operating Regulations in accordance with MasterCard's customary practices and procedures for interpreting and applying the relevant MasterCard Operating Regulations, that the award for Fraud Recovery (as defined in the MasterCard Operating Regulations) attributable to the Home Depot Intrusion is **$25,741,472.20** (the "<u>ADC Fraud Recovery Amount</u>" and, together with the ADC Operating Expense Recovery Amount, the "<u>ADC Recovery Amount</u>"); and

(g)     MasterCard has accurately determined, by applying the formula for calculating ARAs, that the aggregate amount of the ARAs for ARO-Eligible Issuers is an amount equal to **$1,437,122.86** (the "<u>Maximum Settlement Amount</u>") ;

(h)     the calculations and the numbers set forth in the Accounting Statement accurately reflect the results of MasterCard having applied the relevant MasterCard Operating Regulations in accordance with MasterCard's customary practices and procedures for interpreting and applying the relevant MasterCard Operating Regulations in calculating the ADC Assessments.

8.1.2.    <u>Representations and Warranties of Home Depot</u>.   Home Depot hereby represents and warrants that:

8.1.2.1 <u>Authorization</u>.    The  execution,  delivery  and performance of this Settlement Agreement, including the Exhibits to which Home Depot is a party, and the consummation by Home Depot of the transactions contemplated hereby and thereby, are within its corporate powers and have been duly authorized by all necessary corporate action.  This Settlement Agreement constitutes, and each of the Exhibits to which Home Depot is a party when executed and delivered by it will constitute, a valid and binding agreement of Home Depot, enforceable against Home Depot in accordance with its terms,

16

except to the extent such enforceability may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting or relating to creditors' rights generally and by general principles of equity.

8.1.2.2 Non-Contravention.    The execution, delivery and performance by Home Depot of this Settlement Agreement and the Exhibits to which Home Depot is a party (a) do not and will not (i) violate the certificate of incorporation or by-laws of Home Depot, or (ii) require any consent that has not been given or other action that has not been taken by any Person under any instrument binding upon Home Depot, and (b) do not require any action by or filing with any domestic or foreign, federal, state or local governmental authority, department, court or agency.

8.2.    MasterCard Indemnification.    MasterCard agrees to indemnify Home Depot and the Home Depot Acquirers and its and their respective Affiliated Persons against and shall hold each of them harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding whether involving a third-party claim or a claim solely between the parties hereto) incurred or suffered by Home Depot or any of the Home Depot Acquirers or any of its or their respective Affiliated Persons arising out of any misrepresentation or breach of warranty or breach of covenant or agreement made or to be performed by MasterCard pursuant to this Settlement Agreement.

8.3.    Home Depot Indemnification.    Home Depot agrees to indemnify MasterCard and the Home Depot Acquirers and its and their respective Affiliated Persons against and shall hold each of them harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding whether involving a third-party claim or a claim solely between the parties hereto) incurred or suffered by MasterCard or any of its Affiliated Persons arising out of any misrepresentation or breach of warranty or breach of covenant or agreement made or to be performed by Home Depot pursuant to this Settlement Agreement.

9.    MISCELLANEOUS.

9.1.    Notices.    All notices, requests, demands, claims and other communications required or permitted to be delivered, given or otherwise provided under this Settlement Agreement must be in writing and must be delivered, given or otherwise provided:

(a)        by hand (in which case, it will be effective upon delivery);

(b)        by overnight delivery by a nationally recognized courier service (in which case, it will be effective on the Business Day after being deposited with such courier service); or

17

(c)      by electronic mail (in which case it will be effective on transmission to each representative of a party for whom an email address is listed below, unless the party making delivery is notified that it was not received by such a representative of the other party);

in each case, to the address (or e-mail address) listed below:

If to MasterCard, to it at:

MasterCard International Incorporated
2000 Purchase Street
Purchase, NY 10577
Tim_Murphy@mastercard.com
Attention:  Timothy Murphy, Esq.

with a copy to:

MasterCard International Incorporated
2000 Purchase Street
Purchase, NY 10577
Marie_Russo@mastercard.com
Attention:  Marie Russo

and

Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue
New York, New York 10022
MHyman@golenbock.com
Attention: Martin S. Hyman, Esq.

If to Home Depot, to it at:

Attention: Michael Williams
The Home Depot
2455 Paces Ferry Road
Atlanta, GA 30339
Email address: Michael_T_Williams@homedepot.com

with a copy to:

Ropes & Gray LLP
800 Boylston Street
Prudential Tower
Boston, Massachusetts 02199
Douglas.Meal@ropesgray.com
Attention: Douglas H. Meal, Esq.

18

**HIGHLY CONFIDENTIAL**                                    **THDFI000095**

and

      Ropes & Gray LLP
      800 Boylston Street
      Prudential Tower
      Boston, Massachusetts 02199
      Seth.Harrington@ropesgray.com
      Attention: Seth C. Harrington, Esq.

Each of the parties to this Settlement Agreement may specify a different address or facsimile number or email address by giving notice in accordance with this Section 9.1 to each of the other parties. Any party delivering, giving, or otherwise providing any notice pursuant to clause (c) above shall follow up such notice by delivering a hard copy of such notice to the other party pursuant to clause (a) or (b) above; provided, however, that the failure of such party to deliver such a follow-up hard copy to the other party shall not affect the effectiveness of the notice in question.

      9.2.   Succession and Assignment; No Third-Party Beneficiary. This Settlement Agreement will be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns, each of which such successors and permitted assigns will be deemed to be a party for all purposes of this Settlement Agreement. No party may assign, delegate or otherwise transfer either this Settlement Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other party. This Settlement Agreement is for the sole benefit of the parties and nothing in this Settlement Agreement (whether expressed or implied) is intended to give or shall be construed to give any Person (including without limitation Covered Issuers), other than the parties, any legal or equitable rights in connection with this Settlement Agreement except that (i) the Home Depot Acquirers and their Affiliated Persons and the Affiliated Persons of Home Depot are intended beneficiaries of the provisions of Section 6.2 (including Exhibit 6.2) and Section 8.2 to the extent of enforcing the release and covenant and indemnity provided to them in these sections, (ii) the Home Depot Acquirers and their Affiliated Persons and the Affiliated Persons of Home Depot are intended beneficiaries of the Standard Issuer Releases, Alternative Issuer Releases, and Partial Alternative Issuer Releases and Section 9.15 to the extent of enforcing the release and covenant not to sue and indemnity provided to them therein, (iii) the Home Depot Acquirers and their Affiliated Persons and the Affiliated Persons of Home Depot are, together with Home Depot, intended beneficiaries of the representations and warranties made by MasterCard in Section 4.3, (iv) the Affiliated Persons of MasterCard are intended beneficiaries of the Standard Issuer Releases, Alternative Issuer Releases, and Partial Alternative Issuer Releases to the extent of enforcing the release and covenant not to sue and indemnity provided to them therein and the provisions of Section 8.3 to the extent of enforcing the release provided to them in the Home Depot Release and the indemnity provided to them in Section 8.3, and (v) the MasterCard Released Parties (as that term is defined in the Home Depot Release) are intended beneficiaries of such release to the extent of enforcing the release provided to them therein.

19

HIGHLY CONFIDENTIAL

THDFI000096

9.3.     Amendments and Waivers.   No amendment or waiver of any provision of this Settlement Agreement will be valid and binding unless it is in writing and signed, in the case of an amendment, by MasterCard and Home Depot, or in the case of a waiver, by the party against whom the waiver is to be effective.  No waiver by any party of any breach or violation of or default under or inaccuracy in any representation, warranty or covenant hereunder, whether intentional or not, will extend to any prior or subsequent breach or violation of, default under, or inaccuracy in, any such representation, warranty or covenant or affect in any way any rights arising by virtue of any such prior or subsequent occurrence. No waiver by any party of any condition to the consummation of the Settlement shall constitute a waiver by such party of any other right or remedy available to such party by reason of the circumstance causing the condition in question not to have been met.  No delay or omission on the part of any party in exercising any right, power or remedy under this Settlement Agreement will operate as a waiver thereof.

9.4.     Entire Agreement.   This Settlement Agreement, together with any documents, instruments and certificates explicitly referred to herein, constitutes the entire agreement among the parties with respect to the subject matter of this Settlement Agreement and supersedes any and all prior discussions, negotiations, proposals, undertakings, understandings and agreements, whether written or oral, with respect such subject matter (other than the parties' existing confidentiality obligations to one another with respect to such subject matter).

9.5.     Counterparts; Effectiveness.   This Settlement Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute but one and the same instrument.  A facsimile signature shall be deemed an original for purposes of this Settlement Agreement.   This Settlement Agreement will become effective as of the date first written above when duly executed by each party hereto.

9.6.     Non-Severability.   The parties to this Settlement Agreement have negotiated the provisions of this Settlement Agreement as an integral whole and would not have entered into this Settlement Agreement if the provisions hereof had not been written as they appear herein.  Accordingly, if at any time, whether before or after the Consummation Date, any term or provision of this Settlement Agreement or any document delivered pursuant to this Settlement Agreement should be held invalid or unenforceable by any court of competent jurisdiction, the parties intend that this Settlement Agreement may be terminated by either party by written notice to the other party referencing this Section 9.6 and delivered in accordance with Section 9.1, which notice shall have the same effect as if a termination notice pursuant to Section 7.1 had been delivered, as provided in Section 7.2, and that each party shall thereafter take such action as may be necessary to restore the other party to its position immediately prior to its execution of this Settlement Agreement.

9.7.     Headings.   The headings contained in this Settlement Agreement are for convenience purposes only and will not in any way affect the meaning or interpretation hereof.

HIGHLY CONFIDENTIAL                                              THDFI000097

9.8.     Construction.    The parties have participated jointly in the negotiation and drafting of this Settlement Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Settlement Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Settlement Agreement.  The parties intend that each representation, warranty and covenant contained herein will have independent significance.  If any party has breached or violated, or if there is an inaccuracy in, any representation, warranty or covenant contained herein in any respect, the fact that there exists another representation, warranty or covenant relating to the same subject matter (regardless of the relative levels of specificity) that the party has not breached or violated, or in respect of which there is not an inaccuracy, will not detract from or mitigate the fact that the party has breached or violated, or there is an inaccuracy in, the first representation, warranty or covenant.

9.9.     Survival of Covenants, Reliance, etc.  All covenants, agreements, representations and warranties made in this Settlement Agreement shall survive the execution and delivery of this Settlement Agreement, the delivery of the other instruments referenced herein as Exhibits, and if it should occur, the Consummation Date, provided that representations and warranties shall not be required to be true and correct on and as of any date after the Consummation Date.  No investigation made by any party and no knowledge of any breach of the other party obtained by any party or on its behalf shall impair the materiality or enforceability of any covenant, agreement, representation or warranty contained in this Settlement Agreement or the right of such party to rely upon each such covenant, agreement, representation and warranty notwithstanding such party's investigation or knowledge.

9.10.    Governing Law.  This Settlement Agreement, and the rights of the parties and all actions arising in whole or in part under it, will be governed by and construed in accordance with the domestic substantive laws of the State of New York, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

9.11.    Jurisdiction; Venue and Limitation on Actions; Service of Process.

9.11.1. Jurisdiction.  Each party to this Settlement Agreement, by its execution hereof, (a) hereby irrevocably submits to the exclusive jurisdiction of the state courts located in the Borough of Manhattan of the State of New York and the United States District Court located in the Southern District of New York for the purpose of any action brought by a party against the other party arising in whole or in part under or in connection with this Settlement Agreement, (b) hereby waives to the extent not prohibited by applicable law, and agrees not to assert, by way of motion, as a defense or otherwise, in any such action, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that any such action brought in one of the above-named courts should be dismissed on grounds of forum non conveniens, should be transferred or removed to any court other than one of the above-named courts, or should be stayed by reason of the pendency of some other proceeding in any other court other than one of the above-named courts, or that this Settlement Agreement or the subject matter

21

hereof may not be enforced in or by such court, and (c) hereby agrees not to commence any such action other than before one of the above-named courts. Notwithstanding the previous sentence a party may commence any action in a court other than the above-named courts solely for the purpose of enforcing an order or judgment issued by one of the above-named courts.

9.11.2.   Venue and Limitation on Actions.  Each party agrees that for any action brought by a party against the other party arising in whole or in part under or in connection with this Settlement Agreement, such party may bring actions only in the state courts located in the Borough of Manhattan or in the United States District Court for the Southern District of New York. Each party further waives any claim and will not assert that venue should properly lie in any other location within the selected jurisdiction. Notwithstanding anything to the contrary in any otherwise applicable law or statute, no action arising in whole or in part under or in connection with this Settlement Agreement may be brought unless such action is commenced within two years after the accrual of the claim that is the basis for such action.

9.11.3.   Service of Process.  Each party hereby (a) consents to service of process in any action brought by a party against the other party arising in whole or in part under or in connection with this Settlement Agreement in any manner permitted by New York law, (b) agrees that service of process made in accordance with clause (a) or made by registered or certified mail, return receipt requested, at its address specified pursuant to Section 9.1, will constitute good and valid service of process in any such action and (c) waives and agrees not to assert (by way of motion, as a defense, or otherwise) in any such action any claim that service of process made in accordance with clause (a) or (b) does not constitute good and valid service of process.

9.11.4.   Other Litigation.  Nothing in Section 9.11 shall limit any right either party otherwise would have to assert a claim against the other party (whether as a cross claim, third-party claim, counterclaim, or otherwise) in any action not initiated by the party asserting the claim.

9.12.   Specific Performance.  The parties will have such entitlement as may be provided under applicable law to seek and obtain an injunction or injunctions to prevent breaches or violations of the provisions of this Settlement Agreement and to enforce specifically this Settlement Agreement and the terms and provisions hereof in any action instituted in accordance with Section 9.11, in addition to any other remedy to which the parties may be entitled, at law or in equity.

9.13.   Waiver of Jury Trial.  TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, THE PARTIES HEREBY WAIVE, AND COVENANT THAT THEY WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING IN WHOLE OR IN PART UNDER OR IN CONNECTION WITH THIS SETTLEMENT AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS SETTLEMENT AGREEMENT, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR

HIGHLY CONFIDENTIAL                                              THDFI000099

OTHERWISE (A "<u>COVERED ACTION</u>").   THE PARTIES AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES IRREVOCABLY TO WAIVE THEIR RIGHTS TO TRIAL BY JURY IN ANY COVERED ACTION AND TO HAVE ANY COVERED ACTION INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

9.14.    <u>No Admission of Liability</u>.  Neither this Settlement Agreement nor the AROs, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the AROs:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any claim or right of recovery or cause of action against or by, or of any wrongdoing or liability of, either of the parties to this Settlement Agreement, the Home Depot Acquirers or the Affiliated Persons of any of them; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of either of the parties to this Settlement Agreement, the Home Depot Acquirers or the Affiliated Persons of any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Either of the parties to this Settlement Agreement may file this Settlement Agreement, the Home Depot Release, the MasterCard Release, the Standard Issuer Releases, the Alternative Issuer Releases, or Partial Alternative Issuer Releases in any action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.15.    <u>SEC Filings; Public Announcements</u>.  The parties agree that this Settlement Agreement may be filed by either of them with the Securities and Exchange Commission and each of the parties may also describe the terms of this Settlement Agreement in any report it files with the Securities and Exchange Commission to the extent such party determines that the inclusion of a description of the terms of this Settlement Agreement is required by applicable securities laws or regulations or the rules of any stock exchange upon which such party's securities are traded, <u>provided</u>, <u>however</u> that information or documents relating to MasterCard Issuers, including but not limited to, the names of ARO-Eligible Issuers that accept or do not accept their AROs, the names of their Sponsored Issuers, or any other information that may lead to the disclosure or identification of a MasterCard Issuer, shall not be publicly disclosed by either party under any circumstances, except as required by law or as necessary to enforce this Settlement Agreement or any document delivered pursuant thereto, and except that either party may provide on a confidential basis to the Home Depot Acquirers any document provided to such party by the other party pursuant to the terms and conditions of this Settlement Agreement.

[Remainder of page intentionally left blank]

23

**HIGHLY CONFIDENTIAL**                                                                 **THDFI000100**

IN WITNESS WHEREOF, each of the undersigned has executed this Settlement Agreement as an agreement under seal as of the date first above written.

MASTERCARD INTERNATIONAL INCORPORATED

By: _Eileen Simon_____

    Name:  Eileen Simon
    Title:   Chief Franchise Integrity Officer

HOME DEPOT U.S.A., INC.

By:_____

    Name:
    Title:

IN WITNESS WHEREOF, each of the undersigned has executed this Settlement Agreement as an agreement under seal as of the date first above written.

MASTERCARD INTERNATIONAL
INCORPORATED

By:_____

    Name:

    Title:

HOME DEPOT U.S.A., INC.

By:_____

    Name: Dwaine Kimmet

    Title: SVP Payments + Treasurer

**HIGHLY CONFIDENTIAL**

EXHIBIT 3

[ARO DATE]

Dear Home Depot Impacted MasterCard Issuer:

On December 21, 2015, MasterCard International Incorporated ("MasterCard") and Home Depot U.S.A., Inc ("Home Depot") entered into a Settlement Agreement ("Settlement Agreement") provisionally calling for a settlement ("Settlement") with regard to the Home Depot Intrusion (Case Nos. ADC3868, ADC3869, ADC3870, ADC3871 and ADC3872, including all of their subparts).   Click here to access the Settlement Agreement.   The objective of the Settlement is to resolve claims between MasterCard and certain of its issuers, on the one hand, and Home Depot and its acquirers, on the other hand, relating to the Home Depot Intrusion, including claims for fraud recovery and operating expenses incurred by MasterCard issuers as well as claims that might be asserted by MasterCard issuers in any litigation or other proceeding in connection with the Home Depot Intrusion.   Pursuant to the Settlement Agreement, Home Depot has agreed to pay eligible issuers the maximum amount that MasterCard has determined that such issuers may be entitled to recover under MasterCard's Standards ($38,159,298.33 in the aggregate).   In addition, for each eligible issuer that releases its claims as a MasterCard issuer relating to the Home Depot Intrusion, Home Depot has agreed to pay an additional 10% of the maximum amount that MasterCard has determined that each such eligible issuer may be entitled to recover under MasterCard's Standards.   As reflected in the Settlement Agreement, certain MasterCard issuers representing 72.17% percent of the number of accounts that MasterCard determined to be eligible for recovery under the MasterCard operating regulations by reason of the Home Depot Intrusion (the "pre-accepted issuers") already have entered into settlement agreements with MasterCard and Home Depot and released their claims as a MasterCard issuer relating to the Home Depot Intrusion.   Those issuers have received or will receive settlement

1

EXHIBIT 3

payments based on the same methodology as that used to calculate the amounts being offered in this Settlement, and, as a result, will not receive Alternative Recovery Offers pursuant to this Settlement.

This communication will summarize the principal components of the Settlement Agreement. You should, of course, read the Settlement Agreement in its entirety and feel free to ask questions. In this regard, please note that in the event of any inconsistency between this communication and the terms of the Settlement Agreement, the Settlement Agreement will control.

### Alternative Recovery Offers

In light of the magnitude and unique and complex nature of the Home Depot Intrusion, MasterCard has been working on behalf of its issuers to achieve an appropriate resolution of, and obtain a prompt and certain recovery on, their claims in their capacity as an issuer of a "MasterCard payment card" (*i.e.*, MasterCard, MasterCard Electronic, or Debit MasterCard), a Maestro payment card, or a Cirrus payment card (a "MasterCard issuer") arising from the Home Depot Intrusion. Rule 2.1 of the MasterCard Rules provides that MasterCard "has the right, but not the obligation, to resolve any dispute between or among Customers including, but not limited to, any dispute involving [MasterCard], the Standards, or Customers' respective Activities, and any such resolution by [MasterCard] is final and not subject to appeal, review, or other challenge."

In furtherance of its efforts to achieve a resolution, MasterCard has reached an agreement with Home Depot that would enable "eligible issuers" – that is MasterCard issuers that issued one or more of the accounts included in MasterCard's calculation of maximum operating expense reimbursement and/or fraud recovery in connection with the Home Depot Intrusion

**HIGHLY CONFIDENTIAL**

**THDFI000104**

EXHIBIT 3

(where each such account was alerted on in connection with the Home Depot Intrusion and is referred to herein as a "qualified account"), and that are not among the pre-accepted issuers that already have entered into settlement agreements with MasterCard and Home Depot – not only to receive a recovery of an amount equal to the amount that MasterCard has determined that such issuers may be entitled to recover under MasterCard's Standards but also to receive and decide upon an Alternative Recovery Offer ("ARO") that, if accepted by an eligible issuer, would provide for a greater recovery if the eligible issuer executes a release.  The ARO, which is attached to this communication, gives eligible issuers the option of electing to accept an Alternative Recovery Amount ("ARA") in lieu of any other form of relief or recovery to which they might be entitled in their capacity as a MasterCard issuer by reason of the Home Depot Intrusion.  MasterCard recommends that each eligible issuer accept its ARO on behalf of itself and, where applicable, all "covered sponsored issuers" (as defined in the Settlement Agreement).

If, however, one or more of an eligible issuer's covered sponsored issuers does not wish to participate in the settlement ("non-accepting sponsored issuers"), the eligible issuer (a "partial accepting issuer") and its covered sponsored issuers that are not non-accepting sponsored issuers (the "accepting sponsored issuers") may still accept the portion of the eligible issuer's ARO that is solely attributable to the partial accepting issuer and its accepting sponsored issuers.  In that event, any non-accepting sponsored issuer will not release any rights it may have to any other form of relief or recovery relating to the Home Depot Intrusion, and the partial accepting issuer's ARA will be reduced by a percentage equal to the (i) the qualified accounts held by the partial accepting issuer's non-accepting sponsored issuers, divided by (ii) the total number of qualified accounts attributable to the partial accepting issuer and its covered sponsored issuers, as set forth in the partial accepting issuer's ARO.

HIGHLY CONFIDENTIAL                                                    THDFI000105

EXHIBIT 3

Your ARO is attached to this email, including an Acceptance of ARO form ("Acceptance") that you will be required to complete, execute and timely return in order to accept the ARO (in whole or in part).

### MasterCard Recommendation

MasterCard believes that it would be in your interest to accept your ARO and therefore recommends that you do so. Issuers that fully accept their AROs will be assured of receiving their ARAs promptly and issuers that partially accept their AROs will be assured of receiving their adjusted ARAs promptly (expected to be during the second quarter of 2016 in both cases), without the added costs, burdens, delays and uncertainties associated with potentially protracted litigation. In contrast, Home Depot has indicated that, absent a settlement of the type proposed herein, it will contest all fraud recovery and operating expense reimbursement awards, and it will continue to oppose the claims brought by the putative class action plaintiffs' claims in the multidistrict litigation captioned, *In re: The Home Depot Customer Data Breach Litigation*, MDL No. 14-2583 (TWT) pending in the United States District Court for the Northern District of Georgia (the "MDL"). If Home Depot's acquiring banks prevail on any appeal with respect to MasterCard's assessment of operating expense reimbursement and fraud recovery with respect to the Home Depot Intrusion, the amount of any award for fraud recovery and/or operating expense reimbursement could be reduced or even eliminated entirely. Further, if Home Depot were to commence litigation following MasterCard's ruling on appeal, your receipt of any amount MasterCard might award to you could be significantly delayed (regardless of the ultimate outcome of the suit) and the amount of any such award, again, could be reduced or eliminated entirely. Similarly, any recovery that might be achieved through litigation in the MDL would likely take significantly longer than if you accept your AROs now.

4

**HIGHLY CONFIDENTIAL**                                          **THDFI000106**

EXHIBIT 3

The AROs reflect what MasterCard believes to be a reasonable resolution of your claims relating to the Home Depot Intrusion.  The Settlement Agreement ensures that all funds received from Home Depot or Home Depot's acquirers will be used to compensate issuers (in other words, no portion of the proceeds of this Settlement will be retained by MasterCard as a fee or otherwise).

Ultimately, of course, the decision of whether to participate in this Settlement is left to each eligible issuer and, where applicable, each covered sponsored issuer.

**Alternative Recovery Amounts**

In addition to the full amount of the issuer operating expense reimbursement and fraud recovery award that MasterCard has determined each eligible issuer will receive under MasterCard's Standards, the amount offered under each ARO represents an additional recovery amount equal to 10% of such award.

**Alternative Recovery Offer Acceptance Instructions**

Issuers wishing to accept their AROs must complete the steps described herein no later than 5:00 p.m. Eastern time on March 25, 2016 (as such date may be extended, the "Acceptance Deadline").  MasterCard has established the Acceptance Deadline to ensure that issuer payments can be completed promptly.   The Acceptance, including all Schedules thereto, must be completed and signed by a person who is authorized to bind not only the issuer receiving the ARO ("eligible issuer"), but also all of the issuer's covered sponsored issuers that have elected to "opt-in" to the Settlement.  *Please note that an eligible issuer's sponsored issuers will be assumed to be covered sponsored issuers unless an eligible issuer specifically identifies which of its sponsored issuers are* <u>*not*</u> *covered sponsored issuers (if any) on the appropriate Schedule(s) of the Acceptance.  Please further note that an eligible issuer with non-accepting*

5

EXHIBIT 3

*sponsored issuers must identify (list) all of its non-accepting sponsored issuers as well as the number of qualified accounts issued by each such non-accepting issuer on the appropriate Schedule of the Acceptance.* Acceptances received after the Acceptance Deadline will not be valid. In order for an Acceptance to be considered timely received, two original fully-completed and duly executed Acceptances, including all Schedules thereto, must be sent by overnight mail, next business day delivery, to:

> MasterCard International Incorporated
> 2000 Purchase Street
> Purchase, NY 10577
> Attn: Marie Russo

so as to be received no later than the Acceptance Deadline, and a PDF email of the fully-completed and duly executed Acceptance, including all Schedules thereto, should be sent to adc_settlement@mastercard.com at or before the Acceptance Deadline.

### Required Waiver and Release for Acceptance

Eligible issuers wishing to accept their AROs on behalf of themselves and, where applicable, on behalf of all or some of their covered sponsored issuers must waive their and all their accepting sponsored issuers' rights to receive any other form of recovery under MasterCard Rules based on the Home Depot Intrusion, with the exception of any such right to recovery that any accepting sponsored issuer of the eligible issuer may have with respect to qualified accounts, if any, that the accepting sponsored issuer issued under the MasterCard ICA of a different eligible issuer. Eligible issuers must release all claims in their capacity as MasterCard issuers against Home Depot, its acquirers and card processors, and MasterCard related to the Home Depot Intrusion, including claims that are being or could be asserted in pending class action litigations, including *In re: The Home Depot Customer Data Breach Litigation*, MDL No. 14-2583 (TWT) pending in the United States District Court for the Northern District of Georgia,

6

EXHIBIT 3

except for any claims that any accepting sponsored issuer of the eligible issuer may have with respect to qualified accounts, if any, that the accepting sponsored issuer issued under the MasterCard ICA of a different eligible issuer.  Click here to access a copy of the Consolidated Class Action Complaint for the Financial Institution Cases of *In re: The Home Depot Customer Data Breach Litigation* and a description of the pending class action.

## Risks of Required Waiver and Release

Any issuer that accepts the ARO will give up its and its accepting sponsored issuers' rights to participate in, or recover amounts in, the putative financial institution class actions described above or any other litigation or proceeding relative to the Home Depot Intrusion. Please note that accepting sponsored issuers will give up all such rights listed above, whether or not they are covered sponsored issuers of any other eligible issuer that does not accept the settlement on their behalf, with the exception of any such rights that an accepting sponsored issuer may have with respect to qualified accounts, if any, that the accepting sponsored issuer issued under the MasterCard ICA of an eligible issuer that did not accept the settlement on the accepting sponsored issuer's behalf.

## Non-Participating Issuers

If an eligible issuer does not complete the steps to accept its ARO by the Acceptance Deadline, that issuer will be deemed to have opted out of the Settlement and will not be entitled to accept its ARO.  Non-accepting issuers, as well as partial accepting issuers with respect to their non-accepting sponsored issuers, will receive 100% of the issuer operating expense reimbursement and fraud recovery award that MasterCard has determined each eligible issuer will receive under MasterCard's Standards, subject to any claim that could be asserted by Home Depot against such issuers.    MasterCard will distribute such issuer operating expense

7

EXHIBIT 3

reimbursement and fraud recovery award amounts to issuers at the same time that MasterCard distributes ARAs to issuers that accept their AROs.

## Questions/Contacts

If you have questions about the Settlement Agreement or the ARO process, please e-mail us at adc_settlement@mastercard.com.  If you wish to speak with us regarding your ARO, please be sure to include a phone number (including country code and area code).  A MasterCard Team member will contact you as soon as possible.

HIGHLY CONFIDENTIAL                                    THDFI000110

Standard Acceptance of ARO

**[Name of accepting MasterCard issuer]** (the "Issuer"), on its own behalf, on behalf of each of the Covered Sponsored Issuers listed on Schedule 1 attached to this Issuer Release, and on behalf of its and their Affiliates (collectively with Issuer and its Covered Sponsored Issuers, the "Issuer Releasing Entities") irrevocably waives any right of any of the Issuer Releasing Entities to assert against Home Depot U.S.A., Inc. ("Home Depot"); Bank of America N.A., Banc of America Merchant Services LLC, First Data Canada Ltd., and Wells Fargo Financial Corporation Canada in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network (collectively, the "Home Depot Acquirers"); MasterCard International Incorporated ("MasterCard"); and the Affiliated Persons of each of them (each, a "Releasee"), and fully and finally releases each and every Releasee from, any claim or right any of the Issuer Releasing Entities might be entitled to assert and any monetary recovery or other relief that any of the Issuer Releasing Entities might be entitled to seek or receive, by reason of the Home Depot Intrusion: (i) in any litigation or other proceeding, whether currently pending, hereafter commenced, or hereafter amended (including without limitation the pending putative class action proceedings consolidated under the caption entitled ***In re: The Home Depot Customer Data Breach Litigation,*** MDL No. 14-2583 (TWT) pending in the United States District Court for the Northern District of Georgia), (ii) under any applicable laws, rules or regulations, or (iii) pursuant to any other contractual or legal theory, in connection with any injury or harm the Issuer Releasing Entities may have incurred or may in the future incur in its capacity as an issuer of MasterCard-branded payment cards (whether or not the matter, occurrence, or event that forms the basis for such claim or right is known to the Issuer Releasing Entity in question as of this date) (collectively, the "Released Issuer Claims").

Notwithstanding anything to the contrary in the preceding paragraph, the Released Issuer Claims shall not include (i) any claim or right any of the Issuer Releasing Entities might be entitled to assert, or any monetary recovery or other relief that any of the Issuer Releasing Entities might be entitled to seek or receive, in its capacity as an issuer of payment cards other than MasterCard-branded payment cards; (ii) any claim or right of recovery that any Covered Sponsored Issuer of the Issuer may have with respect to Qualified Accounts, if any, that the Covered Sponsored Issuer in question issued under the MasterCard ICA of an Eligible Issuer other than the Issuer.

The Issuer represents and warrants that (i) this Release has been duly authorized, executed and delivered by the Issuer; (ii) no assignment to another person or entity has been made of, and no other person or entity has become subrogated to or otherwise acquired any interest in any right or claim that is, was, or otherwise would be a Released Issuer Claim; (iii) Schedule I hereto contains a complete and accurate list of the Issuer's Sponsored Issuers, and the Issuer has accurately identified on Schedule I hereto which of its Sponsored Issuers are Covered Sponsored Issuers; (iv) the Issuer is authorized to execute and deliver this acceptance on behalf of its Covered Sponsored Issuers; (v) none of Issuer's Qualified Accounts were issued by any of the Issuer's Sponsored Issuers other than the Issuer's Covered Sponsored Issuers; (vi) the Issuer has received and reviewed the information set forth in Exhibit D to Exhibit 3 of the accompanying Settlement Agreement executed by and between Home Depot and MasterCard dated December 21, 2015; and (vii) Issuer has provided a copy of the ARO Communication to

1

each of those of its Covered Sponsored Issuers whose authority to execute this acceptance it sought and obtained.

The Issuer agrees to indemnify each Releasee against and shall hold each of them harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding whether involving a third-party claim or a claim solely between or among the Parties hereto) incurred or suffered by such Releasee arising out of any misrepresentation or breach of warranty made by the Issuer in this Issuer Release or any breach of any covenant or agreement made or to be performed by the Issuer Releasing Entities pursuant to this Issuer Release.

This Issuer Release, the rights of any person or entity hereunder, and any action arising hereunder, will be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to any choice or conflict of law provision that would cause the application of the laws of any other jurisdiction.

Dated: [_____], 2015

[Name of Accepting MasterCard Issuer]

By:_____

2

Schedule I

**[MasterCard to list names of Issuer's Sponsored Issuers; Issuer to identify which of its Sponsored Issuers are Covered Sponsored Issuers]**

| Schedule I | |
|---|---|
| | Issuer |
| Place an X next to any Sponsored Issuer that is not a Covered Sponsored Issuer (i.e., a Sponsored Issuer that did not issue any of the Issuer's Qualified Accounts)<br><br>Please note that all Sponsored Issuers will be assumed to be Covered Sponsored Issuers that are automatically covered by the ARA unless you indicate otherwise by placing an X next to one or more of such Sponsored Issuers in this Schedule I | Sponsored Issuers of the Issuer |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

3

**HIGHLY CONFIDENTIAL**

**THDFI000113**

Alternative Acceptance of ARO

**[Name of accepting MasterCard issuer]** (the "Issuer"), on its own behalf, on behalf of each of its Accepting Sponsored Issuers, and on behalf of its and their Affiliates (collectively the "Issuer Releasing Entities") irrevocably waives any right of any of the Issuer Releasing Entities to assert against Home Depot U.S.A., Inc. ("Home Depot"); Bank of America N.A., Banc of America Merchant Services LLC, First Data Canada Ltd., and Wells Fargo Financial Corporation Canada in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network (collectively, the "Home Depot Acquirers"); MasterCard International Incorporated ("MasterCard"); and the Affiliated Persons of each of them (each, a "Releasee"), and fully and finally releases each and every Releasee from, any claim or right any of the Issuer Releasing Entities might be entitled to assert and any monetary recovery or other relief that any of the Issuer Releasing Entities might be entitled to seek or receive, by reason of the Home Depot Intrusion: (i) in any litigation or other proceeding, whether currently pending, hereafter commenced, or hereafter amended (including without limitation the pending putative class action proceedings consolidated under the caption entitled *In re: The Home Depot Customer Data Breach Litigation*, MDL No. 14-2583 (TWT) pending in the United States District Court for the Northern District of Georgia), (ii) under any applicable laws, rules or regulations, or (iii) pursuant to any other contractual or legal theory, in connection with any injury or harm the Issuer Releasing Entities may have incurred or may in the future incur in its capacity as an issuer of MasterCard-branded payment cards (whether or not the matter, occurrence, or event that forms the basis for such claim or right is known to the Issuer Releasing Entity in question as of this date) (collectively, the "Released Issuer Claims").

Notwithstanding anything to the contrary in the preceding paragraph, the Released Issuer Claims shall not include (i) any claim or right any of the Issuer Releasing Entities might be entitled to assert, or any monetary recovery or other relief that any of the Issuer Releasing Entities might be entitled to seek or receive, in its capacity as an issuer of payment cards other than MasterCard-branded payment cards; or (ii) any claim or right of recovery that any Accepting Sponsored Issuer of the Issuer may have with respect to Qualified Accounts, if any, that the Accepting Sponsored Issuer in question issued under the MasterCard ICA of an Eligible Issuer other than the Issuer.

The Issuer represents and warrants that (i) this Release has been duly authorized, executed and delivered by the Issuer; (ii) no assignment to another person or entity has been made of, and no other person or entity has become subrogated to or otherwise acquired any interest in any right or claim that is, was, or otherwise would be a Released Issuer Claim; (iii) Schedule I hereto contains a complete and accurate list of the Issuer's Non-Independent Sponsored Issuers and Independent Sponsored Issuers, and the Issuer has accurately identified on Schedule I hereto which of its Non-Independent Sponsored Issuers and Independent Sponsored Issuers are Covered Sponsored Issuers; (iv) the Issuer has accurately identified on Schedule II hereto which, if any, of its Covered Sponsored Issuers are "Non-Accepting Sponsored Issuers" (such term being defined as those of the Issuer's Sponsored Issuers that are Covered Sponsored Issuers and that have not authorized the Issuer to accept the Issuer's ARO on their behalf); (v) the Issuer is authorized to execute and deliver this acceptance on behalf of its Covered Sponsored Issuers that are not identified on Schedule II hereto as Non-Accepting Sponsored Issuers (such Covered Sponsored Issuers being defined as the Issuer's "Accepting Sponsored Issuers"); (vi) none of Issuer's Qualified Accounts were issued by any of the Issuer's

1

**THDFI000114**

Sponsored Issuers other than the Issuer's Covered Sponsored Issuers; (vii) Schedule II hereto contains a complete and accurate list of the number of Qualified Accounts issued by each such Non-Accepting Sponsored Issuer; (viii) the Issuer has received and reviewed the information set forth in Exhibit D to Exhibit 3 of the accompanying Settlement Agreement executed by and between Home Depot and MasterCard dated December 21, 2015 and (vii) Issuer has provided a copy of the ARO Communication to each of those of its Covered Sponsored Issuers whose authority to execute this acceptance it sought and obtained.

Subject to this acceptance having become effective, the Issuer agrees to indemnify Home Depot and the Home Depot Acquirers and its or their respective Affiliated Persons against and shall hold each of them harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding whether involving a third-party claim or a claim solely between the parties hereto) incurred or suffered by Home Depot or any of the Home Depot Acquirers or any of its or their respective Affiliated Persons arising out of any misrepresentation or breach of warranty made by the Issuer in this acceptance or any breach of any covenant or agreement made or to be performed by the Issuer or any of its Accepting Sponsored Issuers or any of its or their respective Affiliated Persons pursuant to this acceptance.

This Issuer Release, the rights of any person or entity hereunder, and any action arising hereunder, will be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to any choice or conflict of law provision that would cause the application of the laws of any other jurisdiction.

Dated: [_____], 2015

[Name of MasterCard Issuer]

By:_____

HIGHLY CONFIDENTIAL                                          THDFI000115

Schedule I

**[MasterCard to list names of Issuer's Non-Independent Sponsored Issuers and Independent Sponsored Issuers; Issuer to identify which of such Sponsored Issuers are Covered Sponsored Issuers]**

| Schedule I | |
|---|---|
| | Issuer |
| Place an X next to any Non-Independent Sponsored Issuer that is not a Covered Sponsored Issuer (i.e., a Sponsored Issuer that did not issue any of the Issuer's Qualified Accounts)<br><br>Please note that all Non-Independent Sponsored Issuers will be assumed to be Covered Sponsored Issuers that are automatically covered by the Maximum Settlement Amount unless you indicate otherwise by placing an X next to one or more of such Sponsored Issuers in this Schedule I | Non-Independent Sponsored Issuers of the Issuer |
| | |
| | |
| | |
| | |
| | |
| Place an X next to any Independent Sponsored Issuer that is not a Covered Sponsored Issuer (i.e., a Sponsored Issuer that did not issue any of the Issuer's Qualified Accounts)<br><br>Please note that all Independent Sponsored Issuers will be assumed to be Covered Sponsored Issuers that are automatically covered by the Maximum Settlement Amount unless you indicate otherwise by placing an X next to one or more of such Sponsored Issuers in this Schedule I | Independent Sponsored Issuers of the Issuer |
| | |
| | |
| | |
| | |
| | |
| | |

3

**HIGHLY CONFIDENTIAL**                                         **THDFI000116**

Schedule II

**[Issuer to List Names of the Issuer's Sponsored Issuers That (a) are Covered Sponsored Issuers and (b) Have Not Authorized the Issuer to Accept the Issuer's ARO on Their Behalf, and the number of Qualified Accounts issued by each such Sponsored Issuer]**

| Schedule II | Issuer |
|---|---|
| | |
| Number Of Qualified Accounts Issued By Each Non-Accepting Sponsored Issuer | Covered Sponsored Issuers that have not authorized the Issuer to accept the Issuer's Alternative Recovery Offer on their behalf (each a "Non-Accepting Sponsored Issuer")<br><br>Please note that only Sponsored Issuers that are Covered Sponsored Issuers, as designated on Schedule I, are eligible for inclusion on this Schedule II |
| | |
| | |
| | |
| | |

4

**HIGHLY CONFIDENTIAL**                                                          **THDFI000117**

EXHIBIT C to EXHIBIT 3

# ARO

## ICA: xxxx
## Name: [Bank]

**Summary:**

Please refer to the Settlement Agreement dated December 21, 2015, between MasterCard International Incorporated ("MasterCard") and Home Depot U.S.A., Inc. ("Home Depot"), a copy of which is incorporated in the MasterCard communication dated [ARO DATE]. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Settlement Agreement.

The MasterCard issuer(s) having the above ICA(s) and its/their Sponsored Issuers (collectively "[Bank]") had [# of alerted on cards] Alerted-On Accounts in connection with the Home Depot Intrusion, each of which is a Qualified Account.  MasterCard has determined [Bank's] Issuer Settlement Amount as set forth below and, subject to the contingencies described in the Settlement Agreement, makes [Bank] the following ARO:

**Results of MasterCard's Determination of Issuer Settlement Amount:**

[Bank's] Issuer Operating Expense Recovery Amount is:

> Total: **[Bank's Issuer Operating Expense Recovery Amount]**

[Bank's] Issuer Fraud Recovery Amount is:

> Total: **[Bank's Issuer Fraud Recovery Amount]**

[Bank's] Issuer ADC Recovery Amount is:

> Total: **[Bank's Issuer ADC Recovery Amount]**

**ARO:**

Under [Bank's] ARO, the TOTAL ARA for the MasterCard issuer(s) having the above ICA(s) and its/their Sponsored Issuers is 10% of the  [Bank's] Issuer ADC Recovery Amount, which is:

**[Bank's] ARA:  [Bank's ARA]**

**TOTAL:  [Bank's Issuer ADC Recovery Amount] + [Bank's ARA]**

**[Bank] will receive its Issuer ADC Recovery Amount, [Bank's Issuer ADC Recovery Amount], whether or not it accepts this ARO.**

1

EXHIBIT D to EXHIBIT 3

<u>Information Regarding Putative Class Action Proceeding</u>

On December 11, 2014, the United States Judicial Panel on Multidistrict Litigation entered an Order in MDL No. 14-2583, *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*, to transfer all actions related to the Home Depot Intrusion, pending in various different federal district courts, to the United States District Court for the Northern District of Georgia for coordinated or consolidated pretrial proceedings. On January 16, 2015, the transferee District Court in the Northern District of Georgia (the "Court") entered a case management order separating the cases into two groups: the consumer cases and the financial institution cases (the "Financial Institution Track"). The Financial Institution Track includes all those cases brought by banks, credit unions, and other financial institutions seeking to recover damages allegedly caused by the Home Depot Intrusion. The Court appointed Kenneth S. Canfield of Doffermyre Shields Canfield & Knowles, LLC, Joseph P. Guglielmo of Scott + Scott, Attorneys at Law LLP, and Gary Lynch of Carlson Lynch Sweet and Kilpela, LLP, as Co-Lead Counsel for the Financial Institution Track.

The Consolidated Class Action Complaint for the Financial Institution Track, which incorporated claims from various of the transferred cases, was filed on May 27, 2015 ("FI Complaint"). The named plaintiffs in the FI Complaint purport to represent a nationwide class of "[a]ll banks, credit unions, financial institutions, and other entities in the United States (including its Territories and the District of Columbia) that issued payment cards (including debit or credit cards) used by customers to make purchases from Home Depot during the period from April 1, 2014 to the present."

The FI Complaint asserts counts for negligence, negligence per se, and violations of the Alaska Unfair Trade Practices and Consumer Protection Act, California Unfair Competition Law and Customer Records Act, Connecticut Unfair Trade Practices Act, Florida Deceptive and Unfair Trade Practices Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Massachusetts Consumer Protection Act, Minnesota Plastic Card Security Act, and various Washington state statutes governing breaches of security that compromise personal information. The FI Complaint seeks to obtain 1) a money judgment in favor of the members of the class to compensate them for injuries they have suffered together with pre-judgment and post-judgment interest, including treble damages and penalties where appropriate; 2) declaratory judgment that Home Depot owes a legal duty to secure its customers' personal and financial information and to notify financial institutions of a data breach, that Home Depot breached this legal duty by failing to employ reasonable measures to secure its customers' personal and financial information, that this breach of its legal duty proximately caused the data breach, and that class members that reissued payment cards and were forced to pay for fraudulent transactions as a result of the Home Depot data breach are legally entitled to recover the costs they incurred from Home Depot; 3) an injunction requiring Home Depot to employ security protocols consistent with industry standards to protect its customers' personal and financial information; 4) an award of reasonable attorneys' fees and costs of suit, including fees and expenses on the ground that Home Depot has acted in bad faith, has been stubbornly litigious, and caused unnecessary trouble and expense; and 5) an award of any further relief that the court deems just and proper.

**HIGHLY CONFIDENTIAL**                    **THDFI000119**

On July 1, 2015, after the FI Complaint was filed, Home Depot filed a motion to dismiss the FI Complaint in its entirety with prejudice. Briefing on the motion to dismiss was complete on September 25, 2015, and a motions hearing was held on October 22, 2015, after which the Court took the motion to dismiss under advisement.  Discovery in the case will not commence until the Court rules on Home Depot's motion. Home Depot has stated that it intends to defend the action vigorously.

This document contains an Alternative Recovery Offer that allows issuers to recover certain of the losses that they may have incurred as a result of the Home Depot Intrusion.  Any issuer that accepts the optional Alternative Recovery Offer will sign and release any rights such issuer would otherwise have had to obtain any recovery from Home Depot (as well as the Home Depot Acquirers and MasterCard) by reason of the Home Depot Intrusion from or in either the putative Financial Institution Track class action litigation described above or any other litigation or other proceeding, with respect to the Released Issuer Claims as expressly defined and limited in the Issuer Release. However, issuers will preserve all claims other than Released Issuer Claims. Issuers are not required to accept this offer and may continue to remain a part of the class pursuing the case against Home Depot in federal court.  In determining whether to accept this offer, note that the offer represents a lesser recovery than an issuer may potentially recover if it remains a party to the class action and are successful in that litigation.

**Any issuer that executes an Issuer Release will waive and release any right such issuer would otherwise have had to obtain any recovery from Home Depot (as well as the Home Depot Acquirers and MasterCard) by reason of the Home Depot Intrusion from or in either the putative Financial Institution Track class action litigation described above or any other litigation or other proceeding, with respect to the Released Issuer Claims as expressly defined and limited in the Issuer Release.  However, issuers will preserve all claims other than Released Issuer Claims.**

HIGHLY CONFIDENTIAL          THDFI000120

EXHIBIT 6.1

### Home Depot's and the Home Depot Acquirers' Release of MasterCard Relating to the Home Depot Intrusion

Home Depot U.S.A., Inc. ("Home Depot") and Bank of America N.A., Banc of America Merchant Services LLC, First Data Canada Ltd., and Wells Fargo Financial Corporation Canada (collectively, the "Home Depot Acquirers"), solely in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network, hereby grant the full, complete and final release, discharge, and covenant not to sue set forth in detail below, on their own behalf and, to the extent any of the following persons or entities purports to assert any Claim(s) (as defined below) of Home Depot or the Home Depot Acquirers, on behalf of each of their past, present and future representatives, attorneys, associates, parents, subsidiaries, affiliates, agents, assigns, insurers, administrators, trustees, officers, directors, employees, retained contractors, predecessors, successors, and any other person or entity claiming on behalf of either of them. Capitalized terms not otherwise defined herein have the meanings set forth in the Settlement Agreement dated December 21, 2015 between MasterCard International Incorporated ("MasterCard") and Home Depot, to which this release is an exhibit (the "Settlement Agreement").

For purposes of this release, the "MasterCard Released Parties" are MasterCard, MasterCard Worldwide, MasterCard Issuers that validly and timely accept their AROs and those of their Covered Sponsored Issuers that are not Non-Accepting Sponsored Issuers (such MasterCard Issuers and their Covered Sponsored Issuers being defined collectively as the "Released MasterCard Issuers"), and (in their capacities as such) MasterCard's and any such Released MasterCard Issuer's past, present, and future representatives, attorneys, agents, accountants, assigns, insurers, administrators, officers, directors, trustees, employees, retained contractors, parents, affiliates, subsidiaries, predecessors, successors, and any other person or entity acting on behalf of any of them; provided, however, that the MasterCard Released Parties do not include (i) MasterCard Issuers that are not eligible to receive, or that do not validly and timely accept their, AROs, or (ii) any Sponsored Issuer that is not a Covered Sponsored Issuer of a MasterCard Issuer that timely and validly accepted its ARO, or (iii) any Non-Accepting Sponsored Issuer (the issuers described in clauses (i), (ii), and (iii) of this sentence being defined herein as the "Non-Released MasterCard Issuers").

For purposes of this release, the term "Claims" shall mean any and all claims, causes of action, suits at law or in equity, assertions of wrongdoing or fault, liabilities, awards, judgments, demands, debts, defenses, losses and expenses, damages, obligations, attorney fees, costs and/or sanctions, of whatever kind or nature, whether now known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, including even those Claims that, if known as of the date of this release, may have materially affected Home Depot's decision to agree to the settlement reflected in the Settlement Agreement or Home Depot and the Home Depot Acquirers' decision to grant this release.

By this release, Home Depot and the Home Depot Acquirers (in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network) release the MasterCard Released Parties from any and all Claims that Home Depot and the Home Depot Acquirers ever had, now have, or may have in the future against MasterCard, or any of the other MasterCard Released Parties in their capacities as

**HIGHLY CONFIDENTIAL**                                                                                 **THDFI000121**

EXHIBIT 6.1

such, by reason of any act, omission or occurrence before the date hereof on the part of MasterCard or any Released MasterCard Issuer related to the Home Depot Intrusion, whether those Claims are (a) affirmatively made against MasterCard or a Released MasterCard Issuer, (b) made as a defense to any acts or omissions by MasterCard or a Released MasterCard Issuer relating to MasterCard's Operating Regulations, or (c) assertions of MasterCard's or a Released MasterCard Issuer's fault as a defense to allegations by a third party, including but not limited to MasterCard Issuers (all the Claims described in this sentence as having been released being defined herein as the "Released Claims").

Notwithstanding anything to the contrary in the preceding paragraphs, the Released Claims do not include (i) any objection, dispute, or Claim that Home Depot or the Home Depot Acquirers might otherwise be entitled to assert with respect to ADC Fraud Recovery and/or ADC Operational Reimbursement with respect to the Home Depot Intrusion for any MasterCard Issuer where the ADC Fraud Recovery or ADC Operational Reimbursement was assessed *after the date of the Settlement Agreement*; (ii) any right Home Depot or the Home Depot Acquirers otherwise would have to assert or seek to establish, as a defense to any claim asserted against it by a MasterCard Issuer in litigation or otherwise, the facts or results of any actions or inactions involving MasterCard or a Released MasterCard Issuer; (iii) any Claim that Bank of America or Wells Fargo may have in their capacities as issuing banks in the MasterCard payment card network; or (iv) any of the rights and obligations created by or under the Settlement Agreement or any Claim arising under or based upon any such rights and obligations.

This release, the rights of any person or entity hereunder, and any action arising hereunder, will be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to any choice or conflict of law provision that would cause the application of the laws of any other jurisdiction.

4

EXHIBIT 6.1

Dated: _____, 2015         On behalf of Home Depot U.S.A., Inc.

By:    Officer's Signature
         Officer's Name and Title

Dated: _____, 2015         On behalf of Bank of America N.A.

By:    Officer's Signature
         Officer's Name and Title

On behalf of Wells Fargo Financial Corporation Canada

Dated: _____, 2015

By:    Officer's Signature
         Officer's Name and Title

Dated: _____, 2015         On behalf of Banc of America Merchant Services LLC
By:    Officer's Signature
         Officer's Name and Title

On behalf of First Data Canada Ltd.

Dated: _____, 2015         By:    Officer's Signature
         Officer's Name and Title

5

HIGHLY CONFIDENTIAL                                        THDFI000123

### MasterCard Release

MasterCard International Incorporated ("MasterCard") hereby grants the full, complete and final release, discharge, and covenant not to sue set forth in detail below. Capitalized terms not otherwise defined herein have the meanings set forth in the Settlement Agreement dated December 21, 2015 between MasterCard and Home Depot, U.S.A., Inc. ("Home Depot"), to which this release is an exhibit (the "Settlement Agreement").

MasterCard hereby agrees that no non-compliance assessments or case management fees will be imposed by MasterCard or any of its Affiliated Persons based upon or in connection with the Home Depot Intrusion, and MasterCard hereby releases and agrees that neither it nor any of its Affiliated Persons will assert any claim, demand, cause of action, amount, or assessment of any kind (including any claim or assessment seeking to recover any amount that MasterCard or any of its Affiliated Persons may award or allow on, or otherwise asserting any rights or obligations or demanding any payment in connection with or by reason of, any claim heretofore or hereafter asserted under the MasterCard Operating Regulations by or on behalf of any MasterCard Issuer, whether or not such MasterCard Issuer receives or accepts an ARO) that otherwise might be asserted by MasterCard or any of its Affiliated Persons against Home Depot or Bank of America N.A., Banc of America Merchant Services LLC, First Data Canada Ltd., and Wells Fargo Financial Corporation Canada (collectively, the "Home Depot Acquirers"), in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network, or any of its or their Affiliated Persons (a) with respect to the Home Depot Intrusion (whether or not such claim or assessment or the facts, events, or occurrences giving rise thereto were known, suspected, or anticipated by MasterCard as of the date of this Settlement Agreement and may have materially affected MasterCard's decision to agree to this Settlement Agreement if known) or (b) by reason of any alleged non-compliance by Home Depot or the Home Depot Acquirers or any of its or their Affiliated Persons with any of the data security requirements of the MasterCard Operating Regulations on or before the date of this Settlement Agreement (an "Alleged Non-Compliance") to the extent such Alleged Non-Compliance relates to the Home Depot Intrusion (whether or not such Alleged Non-Compliance was known, suspected or anticipated by MasterCard as of the date of this Settlement Agreement and may have materially affected MasterCard's decision to agree to this Settlement Agreement if known) or was known to MasterCard as of the date of this Settlement Agreement or had been disclosed in one of the Reports on Compliance (whether or not such Alleged Non-Compliance relates to the Home Depot Intrusion). The release and covenant provided by MasterCard in clause (b) of the preceding sentence shall not be interpreted to extend to any claim or assessment by MasterCard (i) where an Alleged Non-Compliance is alleged to have continued after the date of this Settlement Agreement and such claim or assessment is asserted or imposed with respect to that portion of the Alleged Non-Compliance that is alleged to have occurred or continued after the date of this Settlement Agreement, (ii) where an Alleged Non-Compliance is alleged to have resulted in an actual or possible account data compromise event and such alleged account data compromise event was not known to MasterCard as of the date of this Settlement Agreement and such claim or assessment is asserted or imposed with respect to such account data compromise event, (iii) where such claim or assessment is the return of a transaction by a MasterCard Issuer to an Home Depot Acquirer as a chargeback pursuant to the MasterCard *Chargeback Guide*, or (iv) where such claim or assessment is based upon an Alleged Non-Compliance by an Home Depot Acquirer that concerns an entity other than Home Depot and its Affiliated Persons.

EXHIBIT 6.1

Dated: _____, 2015

MasterCard International Incorporated

By: __Officer's Signature_____

　　　Officer's Name and Title

**HIGHLY CONFIDENTIAL**　　　　　　　　　　　　　　　　　　　　　　**THDFI000125**