**Plaintiffs' Motion for Attorneys' Fees,
Expense, and Service Awards to the
Class Representatives**

# Exhibit 4
## Declaration of Michael L. McGlamry

*In re:  The Home Depot, Inc. Customer Data Security Breach Litigation*
*This Document applies to Financial Institution Cases*
U.S.D.C., N.D. Georgia, Atlanta Division
Civil Action No. 1:14-md-02583-TWT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

In re: The Home Depot, Inc. Customer,
Data Security Breach Litigation

This document relates to:

FINANCIAL INSTITUTION CASES

Case No.:  1:14-md-02583-TWT

## DECLARATION OF MICHAEL L. MCGLAMRY

Pursuant to 28 U.S.C. § 1746, Michael L. McGlamry, declares as follows:

1.      I am a shareholder, Officer and Director of the law firm of Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. (d/b/a Pope McGlamry), 3391 Peachtree Road, NE, Suite 300, Atlanta, Georgia 30326.

2.      I graduated Magna Cum Laude with a B.A. from Wake Forest University in 1978 and graduated Cum Laude with a J.D. from the University of Georgia in 1982.

3.      I began practicing law in 1982 and have practiced continually since then in state and federal courts in Georgia and around the country.

4.      I have been active in representing plaintiffs in personal injury, wrongful death, products and pharmaceutical liability, class actions and mass torts actions and have represented plaintiffs and defendants in individual complex litigation matters.

5.      I am a member in good standing of the State Bar of Georgia and have been admitted to the U.S. Supreme Court; U.S. Court of Appeals, Third and Eleventh Circuits; U.S. District Court, Northern, Middle and Southern Districts of Georgia; U.S. District Court, Southern District of Alabama; U.S. District Court, Eastern and Western Districts of Arkansas; U.S. District Court, Northern and Southern Districts of Illinois; U.S. District Court, Northern District of Ohio; U.S. Court of Federal Claims; Supreme Court of Georgia; and Georgia Court of Appeals.

6.      I am also a member of the American Bar Association; American Association of Justice (Leader's Forum); American Academy of Trial Attorneys; Georgia Trial Lawyers Association; Federal Bar Association; Georgia Legal Services Foundation (member, Board of Directors); National Trial Lawyers; Attorneys Information Exchange Group (AIEG); and Georgia Appleseed (member, Board of Directors).

7.      I have served in a wide variety of MDL leadership roles as follows:

- *In Re: National Football League Players' Concussion Litigation*, U.S. District Court, Eastern District of Pennsylvania, MDL No. 2323.
     - Plaintiff Steering Committee
     - Co-Lead, Discovery Committee
     - Communications Committee

- *In Re: Wright Medical Technology, Inc. Conserve Hip Implant Products Liability Litigation*, U.S. District Court, Northern District of Georgia, MDL No. 2329.

- Co-Lead Counsel

- *Wright Hip System Cases*, Superior Court of the State of California, County of Los Angeles, Judicial Council Coordination Proceeding No. 4710.
    - Co-Lead Counsel

- *In Re: Biomet M2a Magnum Hip Implant Products Liability Litigation*, U.S. District Court, Northern District of Indiana, Cause No. 3:12-md-2391.
    - Plaintiffs Steering Committee

- *In Re: Stryker Rejuvenate Hip Stem and ABG II Modular Hip Stem Litigation*, Superior Court of New Jersey, Law Division, Bergen County, Case Code 296, Master Case No. BER-L-936-13.
    - Plaintiffs Steering Committee

- *In Re: WellNx Marketing and Sales Practices Litigation*, U.S. District Court, Eastern Division of Massachusetts, MDL No. 07-md-1861.
    - Plaintiffs Steering Committee

- *In Re: Stryker LFIT CoCr V40 Femoral Heads Hip Implant Litigation*, Superior Court of New Jersey, Law Division: Bergen County, Case No. 624, Master Case No. BER-L-

8.   I have also participated and been involved in the following MDL cases as counsel for consumers:

- *In Re: Actos Product Liability Litigation*, U.S. District Court, Western District of Louisiana, MDL No. 6:11-md-2299.

- *In Re: DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation*, U.S. District Court, Northern District of Ohio, Western Division, MDL No. 1:10-md-2197.

- *In Re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Product Liability Litigation*, U.S. District Court, Northern District of Texas, Dallas Division, MDL No. 2244.

- *In Re: Stryker Rejuvenate and ABG II Hip Implant Products Liability Litigation*, U.S. District Court, Minnesota, MDL No. 13-2441.

9.     I have also been extensively involved in class action litigation for several decades in numerous capacities in the following matters, including but not limited to the designation or appointment as class counsel:

- *Walter H. Adams, et al. v. Southern Farm Bureau Life Insurance Company*, U.S. District Court, Middle District of Georgia, Columbus Division, Civil Action No. 4:98-CV-20.

- *Russell D. Anderson, et al. v. Fidelity and Guaranty Insurance Underwriters, Inc., et al.*, Superior Court of Muscogee County, State of Georgia, Civil Action File No. SU2000CV-4571.

- *Ronald M. Bagley, et al. v. Auto-Owners Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV2273.

- *Peggy Bailey, et al. v. Tennessee Farmers Mutual Insurance Company*, Circuit Court for Jefferson County, Tennessee at Dandridge, Civil Action File No. 17,792-IV.

- *Carol A. Bechtel, et al. v. Georgia Farm Bureau Mutual Insurance Company, et al.*, Superior Court of Walker County, Georgia, Civil Action File No. 03CV62596.

- *Terri L. Bickerstaff, et al. v. Alfa Insurance Corporation and Alfa General Insurance Corporation*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV2287.

- *Betty R. Black, et al. v. State Farm Mutual Automobile Insurance Company*, Law Court of Johnson City, Tennessee, Civil Action File No. 20932.

- *Karla Bristol, et al. v. Allstate Insurance Company, et al.*, U.S. District Court, Middle District of Georgia, Case No. 4:04-CV-126-3.

- *David Brookes, et al. v. Grange Mutual Casualty Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU01CV325.

- *Lawrence Brown, et al. v. Liberty Mutual Fire Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU2002DM2077.

- *Carter v. First Tennessee Bank, et al.*, Circuit Court of Fayette County, Tennessee, Civil Action No. 3894.

- *Francis H. Case, Jr. and Gloria Case, et al. v. GuideOne Elite Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV2033.

- *Kenneth P. Chung, et al. v. Superior Insurance Company*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV1922.

- *Walter R. Colquitt, et al. v. Southern Guaranty Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV2651.

- *Jarrett L. Cudd and Leah Cudd, et al. v. American Home Assurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV1783.

- *Miranda C. Daughtry, et al. v. Direct General Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV1380-7.

- *Esther J. Earl, et al. v. Allstate Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU2001CV193.

- *Charles M. Granberry, et al. v. AMEX Assurance Company*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV1923.

- *Michael W. Griffin, et al. v. Gateway Insurance Company*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV2588-7.

- *William R. Hamrick, et al. v. Southern General Insurance Company*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV1889.

- *William P. Head, Jr., William W. Hamlet, et al. v. Georgia Farm Bureau, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU2000CV4573.

- *Russell Henderson, et al. v. Scientific-Atlanta, Inc.*, U.S. District Court, Northern District of Georgia, Atlanta Division, Civil Action File No. 1:88-CV-2208.

- *Robbie Hillis, et al. v. Equifax Consumer Services, Inc. and Fair Isaac, Inc.*, U.S. District Court, Northern District of Georgia, Atlanta Division, Civil Action File No. 1:04-CV-3400.

- *William R. Hole, et al. v. Metropolitan Property and Casualty Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV364.

- *Mary Alice Humes, et al. v. The Continental Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV2275.

- *M. Jay Hyatt, et al. v. Cotton States Mutual Insurance Company*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU01CV3783-9.

- *In Re: Consolidated "Non-Filing Insurance" Fee Litigation*, U.S. District Court, Middle District of Alabama, Northern Division, MDL No. 1130.

- *In Re: Consolidated Non-Filing Insurance Fee Litigation*, 431 F.App'x 835 (11th Cir. 2011).

- *Johnson v. Team Vaden Imports, Inc.*, Superior Court of Chatham County, Georgia, Civil Action No. CV021036KA.

- *Jacqueline Lovelace, et al. v. Vesta Insurance Corporation*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV2035.

- *Rudine Mabry, et al v. State Farm Mutual Automobile Insurance Company*, Superior Court of Muscogee County, State of Georgia, Case No. SU-99-CV-4915.

- *Paul Martin, Clinton and Lee Francis Wicker, et al. v. Government Employees Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU01CV312.

- *Kari McLean, et al. v. Progressive Casualty Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU01CV1030.

- *Michael McMahan, et al. v. Allstate Insurance Company*, Circuit Court for Jefferson County, Tennessee at Dandridge, Civil Action File No. 17,873-IV.

- *Roy C. McMahan, et al. v. Nationwide Mutual Insurance Company*, Circuit Court for Jefferson County, Tennessee at Dandridge, Civil Action File No. 26,935-II.

- *Mary Joyce Meier, et al. v. Hartford Casualty Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV2416-7.

- *Elizabeth R. Meyer, et al. v. Citizens and Southern National Bank*, U.S. District Court, Middle District of Georgia, Columbus Division, Case No. 84-103.

- *George R. Miller, et al. v. Horace Mann Insurance Company*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV1295-7.

- *Larry Miller, et al. v. Travco Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU2002CV255.

- *Willie Charles Moore, et al. v. Massachusetts Bay Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU04CV316-7.

- *Myers v. Home Cable Concepts of Tennessee, Inc. and First Tennessee Bank, N.A.*, U.S. District, Middle District of Alabama, Northern Division, Civil Action File No. CV96A783N.

- *Harold Nash, et al. v. American Economy Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV1972.

- *Larry C. Oldham, et al. v. Nationwide Mutual Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU01CV4132-7.

- *Larry L. Oldham, et al. v. American Manufacturers Mutual Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV2271.

- *Patterson v. CUNA Mutual Insurance Society, Inc.*, United States District Court, Northern District of Georgia, Atlanta Division, Civil Action File No. 1:98-CV-0983.

- *Elizabeth S. Pettet, et al. v. State Farm,* U.S. District Court, Eastern District of North Carolina, Eastern Division, Civil Action File No. 4:09-CV-00031.

- *Mark L. Potts and Karen Potts, et al. v. Metropolitan Property and Casualty Insurance Company d/b/a MetLife Auto & Home,* Circuit Court for Jefferson County, Tennessee at Dandridge, Civil Action File No. 17,839-II.

- *Linda Powell, et al. v. National General Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV1924.

- *Ajile A. Pressley, et al. v. Chicago Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV2059.

- *Christy Slack, et al. v. Fair Isaac Corporation and MYFICO Consumer Services, Inc.*, U.S. District Court, Northern District of California, Civil Action File No. 3:05-CV-00257.

- *David Spangler, et al. v. Atlanta Specialty Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. S02CV1075.

- *Ronnie Stahl, et al. v. St. Paul Fire & Marine Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU01CV1032.

- *Theda Tauscher, et al. v. Allstate Insurance Company*, Circuit Court for Sullivan County, Tennessee at Blountville, Civil Action File No. C2830.

- *Theater of the Stars*, U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, Case No. 13-75022.

- *Robert V. Townes, IV, et al. v. Trans Union, LLC and Truelink, Inc.*, U.S. District Court, District of Delaware, Civil Action File No. 04-1488.

- *Myron G. Walker, et al. v. American National General Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU03CV2058.

- *Ardrenia Walton, et al. v. United Services Automobile Association, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU01CV1732-7.

- *Edmund H. Yodlowski, et al. v. Merastar Insurance Company, et al.*, Superior Court of Muscogee County, Georgia, Civil Action File No. SU02CV2272.

10.   I have previously testified and been regarded as an expert on attorneys' fees in other class action litigation and have been asked to review pertinent file materials in this case to provide my opinion as to the reasonableness of the petition of Class Counsel's fees and litigation costs presently pending before the Court.

11.    In formulating my opinions in this case I have reviewed the following information and materials[1]:

- Consumer Plaintiffs' Consolidated Class Action Complaint*
- Plaintiffs' Memorandum in Support of Consumer Plaintiffs' Motion for Preliminary Approval of Class Settlement, Preliminary Certification of Settlement Class, and Approval of Class Notice*
- Order Certifying A Settlement Class, Preliminarily Approving Class Action Settlement and Directing Notice to the Settlement Class*
- Application for Consumer Case Leadership*
- Notice of Pendency and Notice of Proposed Settlement provided to Class Members*
- Defendants' Motion to Dismiss for Failure to State a Claim*
- Consumer Plaintiffs' Response in Opposition to Motion to Dismiss*
- Consumer Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss*
- Defendants' Reply Brief in Support of Motion to Dismiss*
- Declaration of Larry Ponemon, Ph.D.*
- Affidavit of John Jorgenson*
- Declaration of Roy E. Barnes*
- Declaration of Norman E. Siegel*
- Settlement Agreement*
- Application for Award of Reasonable Attorneys' Fees and Reimbursement of Expenses and for Class Representative Incentive Awards*
- Quarterly Time & Expense Reports Submitted *in Camera* to Court*
- Summary of Consumer Plaintiffs' Time and Expense Records Maintained by Plaintiffs' Liaison Counsel*
- Various materials and articles related to prevailing attorneys' fees in complex litigation

---

[1] The first 17 documents noted above, marked with an asterisk (*), were documents I reviewed in the Consumer Case. I used them for comparative purposes herein.

- Various materials and articles related to Home Depot Data Breach
- Time and Expense Summaries Inception - 1st Quarter 2015
- Time and Expense Report Inception - February 2015
- Time and Expense Report - February 13-28, 2015
- Time and Expense Report - March, 2015
- Time and Expense Report - April, 2015
- Time and Expense Report - May, 2015
- Time and Expense Report - June, 2015
- Time and Expense Summary - 3rd Quarter, 2015
- Time and Expense Report - July, 2015
- Time and Expense Report - August, 2015
- Time and Expense Report - September, 2015
- Time and Expense Summary - 4th Quarter, 2015
- Time and Expense Report - October, 2015
- Time and Expense Report - November, 2015
- Time and Expense Report - December, 2015
- Time and Expense Summary -1st Quarter, 2016
- Time and Expense Report - January, 2016
- Time and Expense Report - February, 2016
- Time and Expense Report - March, 2016
- Time and Expense Summary - 2nd Quarter, 2016
- Time and Expense Report -  April, 2016
- Time and Expense Report - May, 2016
- Time and Expense Report - June, 2016
- Time and Expense Summary - 3rd Quarter, 2016
- Time and Expense Report - July, 2016
- Time and Expense Report - August, 2016
- Time and Expense Report - September, 2016
- Time and Expense Summary - 4th Quarter, 2016
- Time and Expense Report - October, 2016
- Time and Expense Report - November, 2016
- Time and Expense Report - December, 2016
- Time and Expense Summary - 1st Quarter, 2017
- Time and Expense Report - January, 2017
- Time and Expense Report - February, 2017
- Time and Expense Report - March, 2017

- Time and Expense Summary - 2nd Quarter, 2017
- Time and Expense Report - April, 2017
- Time and Expense Report - May, 2017
- Time and Expense Report - June, 2017
- Case Management Order No. 2
- Application of the "Consensus Group" to Serve as Co-Lead Counsel, Plaintiffs' Steering Committee, and Co-Liaison Counsel for the Financial Institution Plaintiffs
- Order Appointing Plaintiffs' Leadership for the Financial Institution Cases
- Financial Institution Plaintiffs' Consolidated Class Action Complaint
- Case Management Order NO. 5
- Motion to Dismiss the Complaint
- Financial Institution Plaintiffs' Memorandum in Opposition to Home Depot's Motion to Dismiss
- Reply Brief in Further Support of Home Depot U.S.A., INC. and the Home Depot, INC'S Motion to Dismiss the Financial Institution Plaintiffs' Consolidated Class Action Complaint
- Motion for Entry of Order Regarding Communications with Potential Members of the Financial Institution Putative Class
- Plaintiffs' Response to Defendants' Motion for Entry of Order Regarding Communications with Potential Members of the Financial Institution Putative Class
- Reply in Support of Motion for Entry of Order Regarding Communications with Potential Members of the Financial Institution Putative Class
- Sur-Reply in Support of Motion for Entry of Order Regarding Communications with Potential Members of the Financial Institution Putative Class
- Plaintiffs' Motion for Injunctive Relief
- Home Depot U.S.A., INC. and the Home Depot, INC'S Response in Opposition to the Financial Institution Plaintiffs' Motion for Injunctive Relief
- Order Regarding Communications with Potential Members of the Financial Institution Putative Class
- Amended Order Regarding Communications with Potential Members of the Financial Institution Putative Class

- Second Amended Order Regarding Communications with Potential Members of the Financial Institution Putative Class
- Order Regarding Discovery Issues
- Memorandum of Law in Support of Home Depot U.S.A., INC. and the Home Depot, INC'S Motion for Leave to Take the Deposition of Gary F. Lynch, Kenneth Canfield or Joseph Guglielemo
- Plaintiff's Opposition to Defendants' of Plaintiffs' Counsel
- Reply in Brief of Home Depot's Motion for Leave to Take the Deposition of Gary F. Lynch, Kenneth Canfield or Joseph Guglielmo
- Memorandum of Law in Support of Plaintiffs' Motion to Enforce Compliance with Subpoena
- Home Depot U.S.A., INC. and the Home Depot, INC.'S Response in Opposition to Plaintiff's Motion to Enforce Compliance with Subpoena
- Home Depot U.S.A., INC. and the Home Depot, INC'S Response in Opposition to Plaintiffs' Motion to Enforce Compliance with Subpoena
- Opinion and Order
- Memorandum of Law of Non-Party Mastercard International Incorporated in Opposition to Plaintiffs' Motion to Compel Mastercard's Further Response to Subpoena and for Costs and Attorney's Fees Under FRCP 37(a)(5)(B) & 45(d)(1)
- Order
- The Home Depot, INC. and Home Depot U.S.A., INC'S Answer and Affirmative Defenses to the Financial Institution Plaintiffs' Consolidated Class Action Complaint
- Consumer Plaintiffs' Motion for Final Approval of Class Settlement and Final Certification of Settlement Class
- Consumer Plaintiffs' Motion for Service Awards, Attorneys' Fees and Litigation Expense Reimbursement
- Defendants Home Depot U.S.A., INC. and the Home Depot, INC.S' Motion to Certify Order for Interlocutory Appeal
- Home Depot's Objection to Consumer Plaintiffs' Motion for Service Awards, Attorneys' Fees and Litigation Expense Reimbursement

- Consumer Plaintiffs' Reply Memorandum in Support of Motion for Service Awards, Attorneys' Fees and Litigation Expense Reimbursement
- Order Granting Consumer Plaintiffs' Motion for Service Awards, Attorneys' Fees and Litigation Expense Reimbursement
- Financial Institution Plaintiffs' Memorandum in Opposition to Home Depot's Motion to Certify Order for Interlocutory Appeal
- Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Notice Program, and Scheduling of Final Approval Hearing
- Preliminary Approval Order
- Joint Motion for Preliminary Approval of a Modification to the Parties' Settlement Agreement and Revision of the Court's Preliminary Approval Order
- Supplemental Order Relating to Preliminary Approval of Class Action Settlement
- Defendant's Response to Financial Institution Plaintiffs' Statement Regarding Local Rule 23.1
- Memo of January 11, 2016 from Visa to Visa Client GCAR Contact re: Optional Alternative Recovery Offer for The Home Depot Compromise Event
- Joint Declaration of Co-Lead Counsel
- Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives
- Chart of Comparable Data Breach Litigation

12.     Based on my review of the case information that has been presented, and my personal experience and familiarity with the applicable law, rules, practical considerations and prevailing rates governing an award of attorneys' fees in class actions, it is my opinion that Class Counsel's application for fees and litigation

costs and expenses presented in this case are extremely fair and reasonable, for at
least the following reasons:

### The Hourly Rates and Time Expended Are Reasonable

13.    Upon their appointment, Leadership for the Financial Institution
Plaintiffs in this case developed a uniform billing protocol that was required to be
used by all participating counsel for submitting time and expense reports pursuant
to the Court's directive.   They also developed the following standardized hourly
rate schedule which was implemented after research and analysis of publically
available information for comparable litigation and experience in the Atlanta legal
market:

| Position | Experience | Rate |
|----------|-----------|------|
| *Paralegal* | *(all inclusive)* | *$165.00* |
| *Associate* | *0-5 years* | *$350.00* |
| *Associate* | *5+ years* | *$400.00* |
| *Partner/Counsel* | *0-5 years* | *$475.00* |
| *Partner/Counsel* | *5-10 years* | *$550.00* |
| *Partner/Counsel* | *10-20 years* | *$600.00* |
| *Partner/Counsel* | *20-30 years* | *$675.00* |
| *Partner/Counsel* | *30+ years* | *$750.00* |

As I am generally familiar with the range of hourly rates charged by lawyers,
hourly published in various legal articles, and hourly rates approved by courts in

complex litigation in the Atlanta legal market, the standardized rates developed by Leadership are consistent with (if not actually below) the prevailing market rates in the Atlanta legal community and are imminently reasonable for use and application in this case.

14.     Financial Institution Case Counsel made contemporaneous monthly time and expense reports to the Co-Liaison Counsel, which consolidated the submissions for the Court's *in camera* review throughout this litigation.  After the proposed settlement received the Court's Preliminary Approval, it is my understanding that Class Counsel reviewed each time entry to ensure compliance with directives provided by the Court, required by the billing protocols developed for use in this case, and generally accepted timekeeping practices in MDL and other complex litigation matters.

15.     It is my understanding at the outset, that Plaintiffs' Leadership Counsel established policies to prevent excessive and inappropriate billing that, among other things, precluded anyone from billing time for work that had not been approved in advance by co-lead counsel, limited the number of people who could participate in certain tasks, and barred the use of contract lawyers.

16.     Class Counsel is seeking compensation for collectively having expended approximately 22,000 hours in pursuit of the claims raised in this MDL, resulting in a loadstar of $11,523,932.35 in fees.  After the estimated additional

time that Class Counsel will send before the case is over, their lodestar will be approximately $11,775,000. The Class Counsel's fee application includes a "lodestar multiplier" of roughly 1.5 for a total fee request of $18,000,000.00. *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 1:04-CV-3066-JEC, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008) ("Multipliers of three and higher appear to be common.").

17.   This case involved over 10,000 financial institution putative class members.   The Financial Institution Case Counsel had to conduct a thorough factual investigation while analyzing scores of jurisdictions in a highly fluid area of the law.   They devoted considerable time and effort to identify qualified Class Representatives and the MDL Leadership coordinated the efforts of approximately 100   different attorneys plus staff support personnel from across the country to ensure the necessary work was efficiently performed and materially advanced the litigation.   The Financial Institution Case Leadership also coordinated their efforts with counsel for the Consumer cases, which were proceeding on a parallel litigation track, to ensure that the litigation across both tracks of this case ran as efficiently as possible to the extent there were overlapping issues.

18.   According to the papers submitted with the leadership application, the Financial Institution Case Counsel are highly accomplished.   Personally, I am familiar with Co-Lead Counsel, Co-Liaison Counsel and many of the attorneys on

the Plaintiffs' Steering Committee, and many are the top attorneys in this type of litigation in the country. Notably, they were able to match the resources and legal arguments advanced by a large publicly traded corporation with a litigation team consisting of experienced and highly respected defense firms, which I have litigated against myself. Notwithstanding the logistical, legal, and practical challenges, the Financial Institution Case Leadership was able to achieve a very favorable settlement in just two years after their appointment. For these reasons, based on my personal experiences, it is my opinion that the amount of time expended litigating this case is reasonable and commensurate with the results obtained.

19.    I have personally been involved in numerous MDL litigations and on the Plaintiffs' side, this is a very complex, time-consuming, and highly engaged commitment by the lawyers in Plaintiffs' Leadership. Even in the best complex MDL, the many and various lawyers must come together and form (or petition to form) a leadership team to prosecute the MDL on behalf of individual plaintiffs, or as here, putative class members.

20.    The process that leads to Plaintiffs' Leadership Counsel is not easy. As here, there are lawyers from all over the country who represent individual plaintiffs and each have their own personalities, perspectives, experience, abilities and resources. A certain level of negotiating and manipulation is necessary to go

from 100 or more lawyers to a leadership structure of local counsel, liaison counsel and a Plaintiff Steering Committee ("PSC").

21.     Those firms that ultimately are appointed to leadership are required to demonstrate to the others a commitment, both financially and in terms of manpower, to litigate, from the outset to the very end (sometimes to the bitter end). Each member must agree to making capital contributions to fund the prosecution, and each member must agree to commit its lawyers and staff and leverage its reputation in the legal community.

22.     MDL litigation is considerably different than individual case prosecution.   The Judicial Panel on Multi-District Litigation ("JPML") must determine that the litigation is appropriate for consolidation and, if so, determine a proper transferee count.  Once that takes place, the litigation takes on a life of its own.   Case Management Orders ("CMOs") must be considered for the administrator of multiple cases/plaintiffs within the MDL.  Direct filing, service, preliminary disclosures, fact sheets, short form and master complaints must be addressed.  In addition, on the Plaintiffs' side, mechanisms must be put in place to provide notice and information to other counsel of the status of the litigation and any court decisions related thereto.  Management policies, billing and reporting guidelines must be established.

23.     More importantly, in an MDL, the dynamic is such that from the

outset, Plaintiffs' Leadership Counsel must treat the litigation as if it will continue to trial. Subcommittees are appointed. Here, I understand that there were 6 such subcommittees: law and briefing, experts and damages, investigation, Plaintiffs coordination and discovery, Defendants' discovery, and 3rd party discovery. Enormous amounts of time are necessarily expended to set up these various aspects of the case prosecution, no matter how long the litigation lasts. Vendors must be engaged and paid for document and data handling, Electronically Stored Information ("ESI"), auditing, etc. Experts must be engaged and retained for liability (data breach/security), damages models, etc. Research and investigation must all be done in the front end to develop the case, discovery plans, etc., and sets of discovery (interrogatories, requests for production and request for admission, deposition notices, etc.) are developed even though, in some cases, the discovery never takes place. That happened with me in the NFL Concussion litigation.

24.     Specifically in this litigation, I can see that all of this necessary work was taking place. An investigation was undertaken to identify and work with financial institutions. Research and drafting took place for various legal issues, discovery protocols and processes. Experts were engaged for liability and damages models. And Leadership had to fight Home Depot in extended discovery battles and a complicated motion to dismiss before engaging in a lengthy mediation process

25.     I understand that a huge focus of the work during the spring of 2015 was preparing the consolidated complaint, which was filed on May 27, 2015. Preparing a consolidated complaint of this nature in an MDL is a critical task because the decisions made during the process will determine the future course of the litigation.   Class Counsel thus were justified in spending so much time putting it together.    One of the key decisions they made was to identify class representatives in as many states as they could so that the case could be prosecuted on behalf of state-specific classes if the Court declined to certify a national class.  I understand that the plaintiffs' coordination and discovery committee spent several months vetting roughly one hundred financial institutions, developing a common questionnaire, gathering client-specific data and documents, and following up with interviews of key employees.  This was a massive task.  In my view, the decision to pursue alternative state-specific classes was a reasonable and appropriate strategy, reflecting well on the diligence of Class Counsel.

26.     The consolidated complaint also contains extensive and quite specific factual allegations, presenting a compelling case of negligence at Home Depot. This clearly was the result of an extensive, comprehensive and time-consuming factual investigation.  That Class Counsel was able to successfully conduct such an investigation is further evidence of their competence and diligence.

27.   I served as an attorney and fee expert in the Consumer Case against Home Depot.   Although that involved an enormous and successful effort by Plaintiffs' Counsel, this litigation was much more complex.   The nature and dynamic of the plaintiffs and putative class members was inherently more complex, requiring more time, coordination and administration.   The legal issues were also more complex.   However, what I see as even more complex, and therefore time and resource intensive, was the card brand recovery processes. Research, writing, argument, communications, experts, discovery, travel, etc. was a different dynamic than in the Consumer Case.

28.   Also, inherently in a MDL litigation, there is a great deal of overlap and duplication of efforts.   Class Counsel here have reduced the lawyer time submitted in an effort to acknowledge and account for duplicative efforts. However, I would argue that duplicative time and effort are what makes the Plaintiffs' consolidated prosecution better and more effective.   Having numerous lawyers looking at this case, the issues it presents, the problems it presents, and generate ideas, approaches perspectives, etc., is invaluable and immeasurable.   It undoubtedly produces better direction, work product and results.

## The Results Are Excellent.

29.   Based on my experience, the requested amount of attorney's fees are reasonable under the "common fund" or "common benefit" approach.   The

requested attorneys' fees are also reasonable if considered in a lodestar approach (either independently (as per fee structure statutes) or as a cross check to the common fund approach). *See Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. Appx. 168, 172 (11th Cir. 2008) ("Whether the district court uses the lodestar or the common-fund method, the district court should apply the twelve [*Johnson*] factors … to determine the appropriate statutory fee or the percentage to be utilized."). These factors include:

a)   The time and labor required;

b)   The novelty and difficulty of the question involved;

c)   The skill required to perform the legal service properly;

d)   The preclusion of other employment by the attorney as a consequence of his involvement in the case;

e)   The customary fees;

f)   Whether the fee is fixed or contingent;

g)   Time limitations imposed by the client or the circumstances;

h)   The amount involved and the results obtained;

i)   The experience, ability, and reputation of the attorney;

j)   The "undesirability" of the case;

k)   The time required to reach settlement;

l)   Fee awards in similar cases;

m)   The nature and length of the relationship with the client;

23

n)   Whether there are substantial objections by class members or other parties to the settlement terms or the fees requested;

o)   Any non-monetary benefits conferred on the class by the settlement;

p)   The economics of prosecuting a class action; and

q)   Additional unique factors.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 718 (5th Cir. 1974).  *See also, Camden Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).   In my opinion, most of these factors that are applicable to this litigation favor the award of the requested fee.

30.   These cases indicate that the single most significant factor in a common fund or common benefit case is the relief achieved and the benefit conferred.  Although the *Johnson* factors are applicable and should be reviewed by both the Court and counsel for purposes of the fee application, the contingent nature of the representation, the novelty and difficulty of the questions addressed and the professional skill required to address those questions, the economics involved in prosecuting a class action, the preclusion of other employment, and the results, including non-monetary benefits, achieved for the class are significantly more important than several of the other *Johnson* factors, specifically including the mere accumulation of professional hours.

**The Direct Settlement Benefits for the Class**

31.   The settlement compensates financial institutions that have not already released their claims and sponsored entities whose claims were released by their sponsors in connection with MasterCard's ADC program.  Except for those sponsored entities, financial institutions that already have released their claims are not in the class.  The direct benefits of the settlement include a $25 million fund to go to those with unreleased cards, up to $2.25 million to eligible sponsored entities, and new data security measures to be implemented by Home Depot.

(1)   **The $25 Million Settlement Fund**

32.   Home Depot will pay $25 million into a fund to be distributed to financial institutions that have not released all of their claims.   Under the Distribution Plan that governs payments from the fund, a copy of which is attached as Exhibit 1 to the Settlement Agreement, class members that file a valid claim will receive a "fixed payment award" estimated to be $2.00 per compromised card without having to prove their losses and regardless of whether the amount of compensation they already have received from another source. (Settlement Agt., ¶ 39)

33.   Class members that submit proof of their losses and the compensation they already have received, if any, are eligible for an additional "documented damages award" from the fund of up to 60 percent of their uncompensated losses

from the data breach.  (*Id.*)  Documented damages awards will be paid from the money remaining after payment of all fixed payment awards.  If there is not enough money remaining, each documented damages award will be reduced pro rata.  If there is money available after all fixed payment and documented damages awards have been funded, all awards will be increased pro rata.  No money in the fund will revert to Home Depot.  (*Id.*)

### (2)   $2.25 Million to Sponsored Entities

34.    Home Depot has also agreed to pay up to $2.25 million to sponsored entities whose claims were released by their sponsor in connection with MasterCard's ADC program.   Plaintiffs have challenged the validity of these releases on the grounds that the sponsors lacked authority to enter into them and that the communications sent to the sponsored entities were misleading and coercive.  Eligible sponsored entities that submit a valid claim will be entitled to a payment of $2.00 per compromised card.  If the valid claims exceed the $2.25 million cap, the actual payments will be reduced pro rata so that the cap is not exceeded.  No fund will be created.  So if the valid claims are less than $2.25 million, Home Depot will only be obliged to pay the amount of the valid claims. (*Id.* at ¶ 40)

### (3)   Additional Security Measures

35.    For at least two years, Home Depot has agreed to implement the

following data security measures, which are in addition to those measures Home

Depot agreed to adopt in the settlement in the Consumer Track:

a. *Safeguard Design Resulting From Risk Exception Process.* Home Depot will design and implement reasonable safeguards to manage the risks identified through its data security risk assessments. Home Depot will track and manage its data security risk assessments utilizing a risk exception process that involves Home Depot's leadership and will be reviewed periodically to evaluate the current risk of a data breach.

b. *Vendor Program.* Home Depot will develop and use reasonable steps to select and retain information technology vendors capable of maintaining appropriate and conduct assessments to ensure that vendors having access to payment card information comply with Home Depot's security practices.

c. *Industry Standard Adoption.* Home Depot will implement an appropriate industry recognized security control framework.

36.     The requested fee is less than 30 percent of the easily calculated

benefit of the litigation to financial institutions, which includes the $27.25 million

in cash and $14.5 million in premiums paid by Home Depot plus fees, expenses

and administrative costs. If the other benefits that cannot be valued as easily (the

injunctive relief and the portion of the $120 million Home Depot paid through the

card brand recovery process that was triggered by Class Counsel's efforts) are

considered, the percentage would be even lower. At 30 percent, the requested fee

is well supported by the *Johnson* factors and the other criteria of *Camden I.*

Although the $14.5 million in premiums was paid by Home Depot before the

proposed settlement was negotiated, in my view it should be considered along with

the other easily quantifiable, direct financial benefits attributable to Class Counsel's efforts and thus should be included in the fee calculation. The financial institutions that released their claims were in the putative class and in paying them to release their claims Home Depot afforded them relief that was being sought in this litigation for the purpose of reducing Home Depot's potential liability. There is even evidence to suggest that Home Depot's strategy was motivated, at least in part, to save having to pay fees on the claims that were released. If deprived of a fee on the money paid for releases, Class Counsel will not be fairly rewarded for the benefits that their services provided. And, the financial institutions that received the benefits without having to pay a fee – fees that will be borne by the financial institutions that did not release their claims – would be unjustly enriched. Of course, since Home Depot has agreed to pay the fees, the beneficiary of the unjust enrichment would be Home Depot. Not including the $14.5 premiums in the fee calculation thus would undercut the purpose of the common benefit doctrine, which according to the Eleventh Circuit in *Camden I* is derived from principles of quantum meruit and unjust enrichment. Moreover, under *Camden I,* courts are to consider the economics of a class action in awarding fees. Failing to award Class Counsel a percentage of the $14.5 million Home Depot paid for releases would adversely impact the economics of class action practice by substantially increasing the risks of the litigation after suit is filed by

28

reducing the damages that are at issue through no fault of their own and for reasons beyond their control.  As a result, if fees are not awarded in situations like this one, competent counsel will be less likely to undertake similar class actions and injured parties will find it more difficult to find counsel.

37.    Moreover, Home Depot has agreed to pay the costs of notice and settlement administration, service awards and reasonable attorney fees and expenses.    Home Depot's obligation to pay the costs of class notice and administration, fees, and expenses is independent of (and in addition to) the $27.25 million Settlement Fund and the additional security measures. As a result, these costs, fees, and expenses will not reduce the amount of the Settlement Fund available to any Class Member.

38.    To ensure that the injunctive relief secured in this case was meaningful, Counsel for Financial Institution Plaintiffs consulted with experts in the field of data security who have also endorsed the injunctive relief secured by Class Counsel.  In my own experience as class counsel, it is often difficult to secure meaningful injunctive relief that effectively changes the corporate practices being challenged. Home Depot's agreement to make these changes as result of this case provides concrete benefits. All in all, the results of this case, particularly when compared to the outcome of other efforts by financial institutions to hold merchants accountable for their losses in a data breach, are excellent.

**Class Counsel's fee application is in line with the amounts routinely approved by other courts in similar types of complex litigation.**

39.     Considering the results obtained and the fees awarded in similar cases, it is my opinion that the fee request of $18 million is immanently reasonable. Counsel's request amounts to approximately 30% of the total monetary benefit that has been conferred, if one considers the $27.25 million settlement fund, the additional security measures, costs associated with notice and administration, and the approximately $14.5 million specially paid for releases of the claims asserted in this case.  This percentage does not even account for the substantial and hard-fought non-monetary relief secured by this settlement and is squarely in line with what other courts have approved when faced with similar fee petitions in complex class cases.  Although there is no set rule governing what constitutes a reasonable fee, I am aware of cases in the Eleventh Circuit that have routinely awarded fees equal to or exceeding the percentage being requested in this case.[2]  It is further my

---

[2]  *See, e.g., see also Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453 (2016)) (applying *Camden I*) (specifying typical range of attorney fee in common fund cases); *Almanzar v. Select Portfolio Servicing, Inc.*, 1:14-CV-22586-FAM, 2016 WL 1169198, at *4 (S.D. Fla. Mar. 25, 2016) ("[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases.") (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1210 (S.D.Fla.2006)); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of 33-1/3% attorneys' fee from common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-SEITZ 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) (awarding 33-1/3% of $72.5 million

experience that Judges in the Northern District of Georgia commonly approve fee awards of 33.33% in similarly complex matters. *See, e.g., Columbus Drywall*, 2012 WL 12540344, at *6, n.6 (collecting cases and noting that "[a] review of common fund cases confirms that courts in the Eleventh Circuit and others have awarded percentages equal to and in some cases more than [33 -1/3 % of fund]"); *c.f. In re Friedman's, Inc. Sec. Litig.*, 1:03-CV-3475WSD, 2009 WL 1456698, at *2 (N.D. Ga. May 22, 2009) ("While there is no set rule governing what constitutes a reasonable fee, common fund cases in district courts in the Eleventh Circuit have awarded fee percentages within a range close to the 30% requested here.").

---

settlement fund in class action); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at **11-17 (D.N.J. Nov. 9, 2005) (awarding 33-1/3% of $75 million settlement fund in class action); *In re Busporine AntitrustLitig.*, No. 01-MD-1410 (S.D.N.Y. Apr. 11, 2003) (awarding 33-1/3% of $220 million settlement fund in class action); *In re Relafen Antitrust Litig.*, No. 01-12239-WGY (D. Mass. Apr. 9, 2004) (awarding 33-1/3% of $175 million settlement fund); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. July 16, 2001) (awarding approximately 33-1/3% of $365 million settlement fund in class action); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131-41 (W.D. La. 1997) (awarding 36% of $127 million common fund in complex case); *In re Apollo Group Secs. Litig.*, 2012 U.S. Dist. LEXIS 55622, at **24-25 (D. Ariz. Apr. 20, 2012) (awarding 33-1/3% of $145 million settlement; upward departure warranted due to exceptional result in extremely risky and lengthy case); *In re Wellbutrin XL Antitrust Litig.*, No. 2:08-cv-2431, slip op. at 8 (ECF No. 485) (E.D. Pa. Nov. 7, 2012) (awarding one-third fee on settlement of $37.5 million); *In re Metoprolol Succinate Antitrust Litig.*, No. 06-52-MPT, slip op. at 9 (ECF No. 194) (D. Del. Feb. 21, 2012) (awarding one-third fee on settlement of $20 million); *Rochester Drug Coop, Inc. v. Braintree Labs., Inc.*, C.A. No. 07-142-SLR, slip op. at 9 (ECF No. 243) (D. Del. May 31, 2012) (awarding one-third fee on settlement of $17.5 million).

40.     Bottom line, courts in this district routinely award one-third of the benefit as attorney's fees. *See, e.g., Waters v. Int'l Precious Metals Corp.,*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee of 33-1/3 percent of $40 million fund most of ultimately reverted to the defendant); *Columbus Drywall*, 2012 WL 12540344 at *2 and n. 2 (awarding a one-third fee and listing similar awards); *Smith v. Floor & Décor Outlets of Am., Inc.*, No. 1:15-cv-04316-ELR (N.D. Ga. Jan. 10, 2017) (awarding one-third of a $14 million settlement); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP (N.D. Ga. May 19, 2014) (approving 1/3 fee of $7,750,000 fund); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.,* Civil Action No. 1:00-cv-1416-CC (N.D. Ga. May 26, 2005) (33-1/3%); *In re Clarus Corp. Sec. Litig.*, Civil Action No. 1:00-CV-2841-CAP (N. D. Ga. Jan. 6, 2005) (33-1/3 percent); *In re Pediatric Servs. Of Am., Inc. Sec. Litig.*, No. 1:99-CV-0670-RLV (N.D. Ga. Mar. 15, 2002) (33-1/3 percent; *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) ("courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases" and citing supporting examples) (emphasis added); *In re Managed Care Litig. V. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5% on settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.,* 95-2152-CIV-Gold (S.D. Fla. May 30, 2003) (33-1/3% of $77.5 million settlement); *In re*

*Terazosin Hydrochloride Antitrust Litig., 99-1317-MDL-Seitz* (S.D. Fla. Apr. 19, 2005) (33-1/3% on settlement of over $30 million); *Tapken v. Brown*, 90-0691-CIV-Marcus (S.D. Fla. 1995) (33% of $10 million settlement).

41.    The requested fee of $18,000,000.00 is reasonable under the lodestar method, whether it is used as the primary means of analysis or as a cross-check. As of July 31, 2017, Class Counsel spent in excess of 21,000 hours, which were documented in the *in camera* reports they filed quarterly with the Court.  To ensure this time was appropriately billed, co-lead counsel personally reviewed each timekeeper's entries and excluded 680 hours as duplicative, unauthorized, or of insufficient benefit to the class.  The value of the remaining time – calculated using the same standardized hourly rates used by adopted by the consumers' lawyers that the Court has determined were reasonable, is nearly $12,000,000.  Combined with the value of the time they have spent since July 31, 2017 and the time they estimate they will spend before the settlement is consummated, Class Counsel's lodestar totals $11,773,932.35.    The time included in this lodestar in my opinion is consistent with what I would have expected given my review of the record and Class Counsel's work product, particularly given the aggressive way in which the case was defended and the quality of the result.

42.    After lodestar is calculated, courts typically apply a multiplier to reward counsel for their risk, the contingent nature of the fee and the result

obtained.  Here, the requested fee represents a multiplier of 1.5, which is below

what I would I believe to be justified and reasonable.  Multipliers of as much as 4

or more are routinely used.  *See, e.g., Pinto v. Princess Cruise Lines Ltd.*, 513 F.

Supp. 2d 1334, 1344 (S.D. Fla. 2007) ("'in large and complicated class actions

[multipliers] range from 2.26 to 4.5 while three appears to be the average.");

*Ingram*, 200 F.R.D. at 694-96 (multipliers range from less than two to more than

five).  In my opinion, a reasonable multiplier for this litigation would be over 2,

due to its complexity and uncertainty.  )

### The level of complexity of this case warrants approval of the Class Counsel's Application.

43.    This is a highly complex case deserving of special consideration of

the fee application.  C.f. *In re Chicken Antitrust Litig.*, 560 F. Supp. 963, 969 (N.D.

Ga. 1980) (noting that improper approach to fees "may reward inefficiency and

penalize efficiency").  As the pleadings and motions practice occurring in this case

bear out, the subject matter of this case is unusually complex and dynamic.  These

features required Class Counsel to be abreast of fast-moving changes in technology

and evolving legal precedent.  As with most MDLs, the case was full of legal

complexity, uncertainty and potential pitfalls, which include:

- Choice of law and conflicts of law
- Interpretation and application of the common law and statutory law of dozens of different jurisdictions
- Article III standing of Class Members and unpredictability of rapidly evolving legal landscape in data breach cases

- Causation and Proximate Cause Issues
- Establishing Damages
- Viability of class certification
- Novelty

The presence of any one of these issues would deter many competent attorneys from choosing to litigate this case to conclusion.  Setting forth a viable Complaint takes all these factors into consideration and requires a high degree of skill, diligence, and experience. Taken together, it is clear that the Financial Institution Plaintiffs faced serious obstacles to success and an ultimate recovery.  However, Class Counsel were prepared and able to frame the issues so as to achieve the prompt, positive results specified in the Settlement Agreement.

### This case was brought on a contingency basis.

44.    Financial Institution Plaintiffs began filing these cases shortly after the announcement of the Data Breach in September 2014.  Both before and after appointment of leadership, Class Counsel devoted significant time and resources to this case. As set forth above, Class Counsel and their staff devoted thousands of hours and funded significant litigation costs and expense, with no certainty that their costs would be recovered.  Public policy and class action jurisprudence widely favor awarding fees to attorneys who achieve a meaningful resolution of complex and costly litigation and courts have routinely recognized that attorneys who act as a private attorneys general to right a perceived wrong are vital to the enforcements mechanisms and objectives of the law.  Likewise, courts across the

nation agree that appropriate awards of attorneys' fees encourage lawyers to take cases that seek redress for wrongs as a means to discourage others from the same alleged misconduct.   Class Counsel agreed to prosecute this case on an entirely contingent basis and in so doing, assumed significant risk of investing their time, efforts and money with no promise of a recovery.

### Class Counsel's request for litigation costs is reasonable.

45.   In the course of my practice, I am also familiar with the litigation costs associated with complex long-term class litigation such as this.   Given the complexity, activity, and number of lawyers involved in this litigation, the case expenses reported by Class Counsel in the amount of approximately $710,000 appear usual and customary in type, and are less than I would ordinarily expect in amount.   This indicates to me that Class Counsel have been efficient and cost-conscious in the prosecution of this matter.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 22nd day of August, 2017.

Michael L. McGlamry

36