**Plaintiffs' Unopposed Motion for Final Approval of the Settlement, Certification of the Settlement Class, and Incorporated Memorandum of Law**

# Exhibit 1
### Settlement Agreement and Release

*In re: The Home Depot, Inc. Customer Data Security Breach Litigation*
*This Document applies to Financial Institution Cases*
U.S.D.C., N.D. Georgia, Atlanta Division
Civil Action No. 1:14-md-02583-TWT

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement") is made and entered into on March 8, 2017, by and among (1) Settlement Class Representatives, for themselves and on behalf of the Settlement Class, and the Association Plaintiffs and (2) Home Depot U.S.A., Inc. and The Home Depot, Inc. (collectively "Home Depot"), and subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives and Home Depot enter into this agreement by and through their respective counsel. As provided herein, Home Depot and Settlement Class Representatives hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class Representatives and the Settlement Class (as defined in this Agreement) against Home Depot in the action titled *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. 1:14-md-02583-TWT (N.D. Ga.) (the "Financial Institution Cases" or the "Financial Institution Action"), shall be settled and compromised upon the terms and conditions contained herein. Settlement Class Representatives, the Association Plaintiffs, and Home Depot are collectively referred to herein as the "Parties."

## I.     RECITALS

A.     In September of 2014, Home Depot announced that its payment data systems had been breached, which could potentially impact customers who used their debit and credit cards to make purchases at Home Depot stores located in the United States (the "Data Breach").

B.     After announcement of the Data Breach, multiple putative class action lawsuits were filed against Home Depot by final institutions seeking damages and other relief from Home Depot allegedly resulting from inadequate data security practices at Home Depot ("Data Breach Cases").

C.     On December 11, 2014, the Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated the Data Breach Cases and all tag-along cases for coordinated pretrial proceedings in the United States District Court for the Northern District of Georgia.

D.     In order to manage the litigation most efficiently, the Court created separate litigation tracks for Consumer Cases and Financial Institution Cases and appointed separate leadership for each track. The Court appointed Co-Lead, Co-Liaison Counsel and a Plaintiffs' Steering Committee for the Financial Institution Cases to, among other duties, direct and manage pretrial proceedings and coordinate settlement discussions or other dispute resolution efforts on behalf of Financial Institution Plaintiffs.

E.     On May 27, 2015, the Financial Institution Plaintiffs filed their "Financial Institution Plaintiffs Consolidated Class Action Complaint" (the "Complaint") against Home Depot asserting claims for alleged negligence, negligence per se, violations of various state unfair and deceptive trade practices statutes, and injunctive and declaratory relief. On July 1, 2015, Home Depot moved to dismiss the Complaint (the "Motion to Dismiss"). The Court heard oral arguments on the Motion to Dismiss on October 22, 2015.

F. On May 18, 2016, the Court issued an order granting in part and denying in part the Motion to Dismiss. In June, 2016, the Court agreed to stay discovery to allow the Parties an opportunity to reach a settlement. In July and August, 2016, the parties participated in two formal mediation sessions before mediator Hon. Wayne Andersen (Ret.), which were unsuccessful. The Parties continued to discuss a possible resolution and agreed to another formal mediation before the Hon. Edward Infante (Ret.). On September 9, 2016, the Parties informed the Court of the status of their settlement discussions and requested that the discovery stay be lifted because the prospects of reaching settlement did not justify a continued stay. The Parties met with Judge Infante in Atlanta in October, 2016, but no settlement was reached. Thereafter, the Parties continued to engage in settlement discussions directly with each other.

G. On January 10, 2017, the Parties reached an agreement in principle on a proposed settlement for the Financial Institution Action and executed a settlement terms sheet. The Parties did not discuss attorneys' fees, costs, and expenses prior to executing the settlement term sheet which memorialized the essential terms of the Parties' settlement.

H. During the pendency of the Financial Institution Action, Home Depot entered into settlement agreements in which financial institutions that issued payment cards compromised in the Data Breach released, in whole or in part, claims being asserted in this action on behalf of those financial institutions. These settlements and releases were obtained as a result of negotiations among the affected financial institutions, the various card brands, and Home Depot, and included payments made by Home Depot in connection with MasterCard's ADC program and Visa's GCAR program that exceeded the assessments issued by MasterCard and Visa. The amount of the payments in excess of the assessments was approximately $11,527,000 in connection with the GCAR program and approximately $3,001,000 in connection with the ADC program. After Plaintiffs challenged the validity of these releases and sought to have the releases invalidated, the Court allowed discovery into the facts and circumstances relating to how the releases were obtained. The Court has not yet ruled upon Plaintiffs' challenges to the releases.

I. Financial institutions have also received compensation for injuries allegedly resulting from the Data Breach under the ADC and GCAR programs for which they were not required to release any of their legal claims. This compensation was approximately $79 million under the GCAR program and $41 million under the ADC program. The Court has not ruled upon the legal impact, if any, of this compensation on the claims of the financial institutions that received it.

J. The Parties now agree to settle the Financial Institution Action in its entirety, without any admission of liability, with respect to all Released Claims (as defined below) of the Settlement Class. The Parties intend this Agreement to bind Settlement Class Representatives, Association Plaintiffs, Home Depot, and all Settlement Class Members that do not timely and properly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Financial Institution Action be settled, compromised, and dismissed on the merits

and with prejudice as to Home Depot, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## II.    **DEFINITIONS**

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

1.    "Alerted-on Payment Card" means any payment card (including debit or credit cards) that was identified as having been at risk as a result of the Data Breach in an alert issued by Visa, MasterCard, Discover or American Express.

2.    "Association Plaintiffs" mean Credit Union National Association, California and Nevada Credit Union League, Georgia Credit Union League, Illinois Credit Union League, Indiana Credit Union League, Maine Credit Union League, Montana Credit Union Network, Michigan Credit Union League, Mississippi Credit Union League, Mountain West Credit Union Association, New York Credit Union Association, Credit Union Association of the Dakotas, Ohio Credit Union League, Cornerstone Credit Union League, Utah Credit Union Association, Virginia Credit Union League, and Wisconsin Credit Union League.

3.    "Claims Deadline" means 120 days after the Notice Deadline.

4.    "Claim Form" means any of the forms that Settlement Class Members must submit to be eligible for a payment under the terms of the Settlement. There are two different claim forms, namely the Settlement Fund Claim Form and the Sponsored Entity Claim Form.

5.    "Class Counsel" means the Court-appointed co-lead counsel and the Chair of the Plaintiffs Steering Committee in the Financial Institution Action:

> Kenneth S. Canfield
> DOFFERMYRE SHIELDS
>   CANFIELD & KNOWLES, LLC
> 1355 Peachtree St., NE, Suite 1900
> Atlanta, Georgia  30309
>
> Gary F. Lynch
> CARLSON LYNCH SWEET
>   & KILPELA, LLP
> PNC Park, Suite 210
> 115 Federal Street
> Pittsburgh, Pennsylvania 15212
>
> Joseph P. Guglielmo
> SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
> The Helmsley Building
> 230 Park Avenue, 17th Floor

New York, NY 10169

James J. Pizzirusso
HAUSFELD, LLP – DC
1700 K. Street, NW, Suite 650
Washington, DC 20006

6. "Compromised Payment Card" means any payment card (including debit or credit cards) that was used to make purchases at Home Depot during the period from April 10, 2014 to September 13, 2014 on a self-checkout kiosk where the malware that gave rise to this Data Breach was present. The parties will agree upon a list of all Compromised Payment Cards and provide it to the Settlement Administrator at least five days before the Notice Deadline.

7. "Financial Institution Plaintiffs" means the plaintiffs named in the Complaint, that is Army Aviation Center Federal Credit Union, Denali Alaskan Federal Credit Union, Alcoa Community Federal Credit Union, Coasthills Credit Union, Redwood Credit Union, Aventa Credit Union, Savings Institute Bank & Trust, Delaware Alliance Federal Credit Union, Democracy Federal Credit Union, Suncoast Credit Union, Atlanta Postal Credit Union, Georgia's Own Credit Union, Big Island Federal Credit Union, Idaho Central Credit Union, University of Illinois Employees Credit Union, Elements Financial Federal Credit Union, First Gateway Credit Union, Credit Union of America, First NBC Bank, Maine Highlands Federal Credit Union, State Employees Credit Union of Maryland, Pittsfield Cooperative Bank, Charlevoix State Bank, Profinium Financial, Inc., Navigator Credit Union, K.C. Police Credit Union, Valley Federal Credit Union, Financial Horizons Credit Union, Bellwether Community Credit Union, Hudson City Savings Bank, First Financial Credit Union, Amalgamated Bank, High Point Bank, Greater Cincinnati Credit Union, WEOKIE Credit Union, Oregon Community Credit Union, American Heritage Federal Credit Union, First Columbia Bank and Trust Company, Navigant Credit Union, Greenville Heritage Federal Credit Union, Electric Service Credit Union, American Airlines Federal Credit Union, American Bank of Commerce, Deseret First Federal Credit Union, Pentagon Federal Credit Union, United Bank (VA), Sound Community Bank, United Bank (WV), Firefighters Credit Union, and Atlantic City Federal Credit Union..

8. "Court" means the United States District Court for the Northern District of Georgia.

9. "Data Breach" means the data breach first disclosed by Home Depot in September 2014.

10. "Distribution Plan" means the method by which the Settlement Fund will be distributed to Settlement Class Members that file valid claims. The Distribution Plan is attached to this Agreement as Exhibit 1.

11. "Effective Date" means the first business day after which all of the following events have occurred: (a) Class Counsel and Home Depot's counsel have executed this Agreement; (b) the Court has entered the Final Approval Order without material change to the

Parties' agreed-upon proposed Final Approval Order as described in this Agreement; and (c) the time for seeking rehearing, appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired. The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amounts that Class Counsel requests ("Fee Request"). Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Fee Request awarded to Class Counsel.

12. "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards. In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

13. "Final Approval Order" means the order and judgment that the Court enters upon Final Approval. In the event that the Court issues separate orders addressing the matters constituting Final Approval, the Final Approval Order includes all such orders.

14. "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

15. "Notice Deadline" means the date by which the Settlement Administrator is required to send out Mail and Sponsored Entity Notices, namely thirty (30) days after entry of the Preliminary Approval Order.

16. "Notice Program" means the notice plan and methods provided for in this Agreement and consists of (1) a direct mail notice to those Settlement Class Members for which a mailing address is reasonably available; ("Mail Notice"); (2) notice posted on the Settlement Website; and (3) such other notice as is required by due process and Rule 23 of the Federal Rules of Civil Procedure. The Notice Program shall be effected in substantially the manner provided in this Agreement.

17. "Objection Deadline" means 60 days after the Notice Deadline.

18. "Opt-Out Deadline" means 60 days after the Notice Deadline.

19. "Plaintiffs" means the Association Plaintiffs and the Financial Institution Plaintiffs.

20. "Reasonable Documentation" means documentation supporting a claim for Substantiated Losses fairly traceable to the Data Breach.

21. "Released Card" means any Alerted-on Payment Card or Compromised Payment Card that is subject to a release obtained by Home Depot as a result of negotiations among the affected financial institutions, the various card brands, and Home Depot, and that received payment by Home Depot of an Alternative Recovery Offer under the MasterCard card brand recovery process or an Alternative Recovery Amount under the Visa GCAR program. Released Cards include cards issued by financial institutions that executed Settlement Agreements directly with Home Depot and any non-independent sponsored issuers of those financial institutions, in connection with Alternative Recovery Offers made by MasterCard

22. "Releasing Parties" means the Settlement Class Representatives and all Settlement Class Members that do not timely and properly exclude themselves from the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

23. "Service Award" means a payment not to exceed $2500, subject to the Court's approval, to each class representative in compensation for their involvement in this litigation and service on behalf of other financial institutions. Service Awards will be paid out of the Settlement Fund.

24. "Settlement" means the settlement into which the Parties have entered to resolve the Financial Institution Action. The terms of the Settlement are as set forth in this Agreement including the exhibits hereto.

25. "Settlement Administrator" means the entity to be selected by the Parties and approved by the Court to administer the Settlement and Notice Program. After selection of the Settlement Administrator, Class Counsel and Home Depot may, by agreement, substitute a different Settlement Administrator, subject to approval by the Court. In the absence of agreement, either Class Counsel or Home Depot may move the Court to substitute a different Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

26. "Settlement Class Members" or "Settlement Class" means all persons that fall within the settlement class definition set forth in this Agreement.

27. "Settlement Class Representatives" mean Army Aviation Center Federal Credit Union, Denali Alaskan Federal Credit Union, Alcoa Community Federal Credit Union, Coasthills Credit Union, Redwood Credit Union, Aventa Credit Union, Savings Institute Bank & Trust, Delaware Alliance Federal Credit Union, Democracy Federal Credit Union, Suncoast Credit Union, Atlanta Postal Credit Union, Georgia's Own Credit Union, Big Island Federal Credit Union, Idaho Central Credit Union, University of Illinois Employees Credit Union, Elements Financial Federal Credit Union, First Gateway Credit Union, Credit Union of America, First NBC Bank, Maine Highlands Federal Credit Union, State Employees Credit Union of Maryland, Pittsfield Cooperative Bank, Charlevoix State Bank, Profinium Financial, Inc., Navigator Credit Union, K.C. Police Credit Union, Valley Federal Credit Union, Financial Horizons Credit Union, Bellwether Community Credit Union, Hudson City Savings Bank, First Financial Credit Union, Amalgamated Bank, High Point Bank, Greater Cincinnati Credit Union, WEOKIE Credit Union, Oregon Community Credit Union, American Heritage Federal Credit

Union, First Columbia Bank and Trust Company, Navigant Credit Union, Greenville Heritage Federal Credit Union, Electric Service Credit Union, American Airlines Federal Credit Union, American Bank of Commerce, Deseret First Federal Credit Union, Pentagon Federal Credit Union, United Bank (VA), Sound Community Bank, United Bank (WV), Firefighters Credit Union, and Atlantic City Federal Credit Union.

28.     "Settlement Fund" means a non-reversionary fund in the amount of twenty five million dollars ($25,000,000.00) to be used to pay claims of Settlement Class Members that have not previously released all of their claims against Home Depot.

29.     "Settlement Fund Claim Form" is the claim form, which is attached as an exhibit to the Distribution Plan, Settlement Class Members must submit to be eligible to receive a payment from the Settlement Fund.

30.     "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following preliminary approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notices, the order preliminarily approving this Settlement, the Claim Forms, the Complaint and such other documents as Class Counsel and Home Depot agree to post or that the Court orders posted on the website. These documents shall remain on the Settlement Website at least 60 days after the Effective Date. The URL of the Settlement Website shall be agreed upon by Class Counsel and Home Depot. Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website. The Settlement Website shall not include any advertising and shall remain operational until at least 60 days after the Effective Date. The Settlement Website shall also offer Settlement Class Members an option to file an electronic claim.

31.     "Sponsored Entities" means entities that received payments from Home Depot after accepting an Alternative Recovery Offer from MasterCard and whose claims were released by a sponsoring entity that does not share a corporate affiliation with the Sponsored Entity whose claims were released.

32.     "Sponsored Entity Claim Form" means the form Sponsored Entities must submit to be eligible to receive a payment from the Sponsored Entity Settlement Amount, the proposed form of which is attached hereto as Exhibit 4.

33.     "Sponsored Entity Settlement Amount" means the aggregate total amount up to two million two hundred and fifty thousand dollars ($2,250,000) that will be paid by Home Depot to independent Sponsored Entities that file a claim for compensation under this Settlement. No settlement fund shall be created to pay the Sponsored Entity Settlement Amount. Settlement Class Members that are Sponsored Entities will only be paid out of the Sponsored Entity Settlement Amount. In no event shall Home Depot be required to pay more than the Sponsored Entity Settlement Amount, in the aggregate, to Settlement Class Members that are Sponsored Entities.

34.    "Substantiated Losses" means out-of-pocket losses, unreimbursed charges, and time spent remedying losses fairly traceable to the Data Breach for which the Settlement Class Member submits Reasonable Documentation.  Non-exhaustive examples of Substantiated Losses include unreimbursed expenses related to investigation and payment of fraudulent payment card transactions, cancellation and reissuance of payment cards, additional fraud monitoring, communications with customers, other activities intended for the purpose of mitigating losses or responding to the Data Breach, and internal administrative and labor costs associated with these activities.

35.    "Unreleased Card" means any Alerted-on Payment Card or Compromised Payment Card that is not a Released Card.

## III.    SETTLEMENT CLASS

36.    For settlement purposes only, the Parties agree that the Court should certify the following class pursuant to Fed. R. Civ. P. 23(b)(3), defined as:

> All banks, credit unions, financial institutions, and other entities in the United States (including its Territories and the District of Columbia) that issued Alerted-on Payment Cards.  Excluded from the class are entities that have released all of their claims against Home Depot, but not excluded from the class are independent sponsored entities whose claims were released in connection with Alternative Recovery Offers made by MasterCard.

37.    Also excluded from the Settlement Class are Home Depot and all entities that timely and validly request exclusion from the Settlement Class.

38.    For settlement purposes only, Class Counsel shall seek, and Home Depot shall not oppose, the appointment of Class Counsel as settlement class counsel and appointment of the Financial Institution Plaintiffs named in the Complaint as class representatives.  Settlement Class Representatives will move for provisional certification of the Settlement Class contemporaneously with their motion for preliminary approval of the Settlement.  Home Depot agrees not to contest certification of the Settlement Class.

## IV.    SETTLEMENT CONSIDERATION

39.    Settlement Fund.   Home Depot agrees to pay twenty five million dollars ($25,000,000.00), exclusive of Class Notice and Administrative Costs, Attorneys' Fees and Expenses, into a fund to compensate Settlement Class Members for their alleged injuries fairly traceable to the Data Breach on the following terms:

> a.  Within fifteen (15) calendar days of the Effective Date, Home Depot shall deposit the sum of twenty five million dollars ($25,000,000.00) into an Escrow Account established by the Settlement Administrator to create the Settlement Fund.  Class Counsel and/or the Settlement Administrator shall timely furnish to Home Depot any required account information, wiring

instructions or necessary forms before the payment is made. The Settlement Fund shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. The Settlement Administrator shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Fund and the monies deposited into the Settlement Fund, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1 .468B-l. Home Depot shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Fund pursuant to Treas. Reg. § 1.468B- l. All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

b. Disbursements from the Settlement Fund will be made to pay (i) any taxes due on the account; (ii) Service Awards as the Court may approve; and (iii) benefits to Settlement Class Members as set forth in the Distribution Plan. Under the Distribution Plan, all Settlement Class Members are eligible to receive a "Fixed Payment Award" without further proof or deduction for compensation received from other sources. In addition, Settlement Class Members that submit documentation and provide other information are eligible to receive a "Documented Damages Award" of additional compensation of up to 60 percent of their uncompensated damages resulting from the Data Breach if proven in the manner so specified (after reduction for any Fixed Payment Award received by the Settlement Class Member).

c. The Parties intend that the entire Settlement Fund be distributed pursuant to the claims administration process and that once that process is complete there will be no remaining funds. Nonetheless, to the extent any funds remain after the claims administration process is completed, no portion of the Settlement Fund will be returned to Home Depot. If after payment of the Fixed Payment Amounts and the Documented Damages Awards the Distribution Fund is not exhausted, then the remaining amounts (the "Supplemental Remainder") will be distributed pro rata to all Settlement Class Members that submitted a valid Settlement Fund Claim Form based on the number of Alerted-on Payment Cards or Compromised Payment Cards for which they submitted claims.

40. Sponsored Entity Settlement Amounts. In addition to the Settlement Fund, Home Depot will pay up to two million two hundred and fifty thousand dollars ($2,250,000) to independent Sponsored Entities subject to the following terms and conditions:

a. To be eligible for a Sponsored Entity Settlement Amount, independent Sponsored Entities must submit a valid Sponsored Entity Claim Form. Independent Sponsored Entities that submit a valid claim will be entitled to a payment of $2 for each Released Card that they issued. If the total amount of valid claims submitted by these Sponsored Entities exceeds $2,250,000,

each valid claim shall be reduced on a pro rata basis so that the total of all claims is equal to $2,250,000. In no event shall Home Depot be required to pay more than an aggregate total of $2,250,000 to Sponsored Entities for the Sponsored Entity Settlement Amount.

b. No settlement fund shall be created to pay Sponsored Entity Settlement Amounts. Within fifteen (15) calendar days after the Claims Deadline, the Settlement Administrator shall inform Home Depot and Class Counsel of the total amount due to Sponsored Entities that have submitted valid claims. And within twenty-five (25) calendar days of the Claims Deadline, Home Depot shall transfer funds to the Settlement Administrator sufficient to pay the valid claims from Sponsored Entities. Under no circumstances shall Home Depot's liability for Sponsored Entity Settlement Amounts exceed $2,250,000.

41. <u>Injunctive Relief</u>. Home Depot agrees to adopt and implement the following data security measures with regard to its U.S. stores for a period of two years following the execution of this Settlement Agreement:

a. <u>Safeguard Design Resulting From Risk Exception Process.</u> Home Depot will design and implement reasonable safeguards to manage the risks, if any, identified through its data security risk assessments. Home Depot will track and manage its data security risk assessments utilizing a risk exception process which will include the involvement of Home Depot's leadership. The risk exception process shall be reviewed annually in connection with past risk determinations for consideration and evaluation of Home Depot's current risk level.

b. <u>Vendor Program.</u> Home Depot will develop and use reasonable steps to select and retain information technology service providers and other vendors capable of maintaining security practices consistent with the requirements set forth herein. Home Depot service providers or vendors who have access to payment card information of Home Depot's customers, shall be assessed annually, including an on-premise visit, where appropriate, by a Home Depot representative to validate compliance with the security practices implemented above.

c. <u>Industry Standard Adoption.</u> Home Depot's information security program will design and implement an industry recognized security control framework as appropriate for the Home Depot environment.

## V. **PRELIMINARY APPROVAL**

42. Upon execution of this Agreement by the Parties, Class Counsel shall promptly move the Court for an order granting preliminary approval of this Settlement ("Preliminary Approval Order"), substantially in the form of Exhibit 2. The motion for preliminary approval

shall request that the Court: (1) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notice; (4) approve the procedures set forth in this Agreement for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay all proceedings in the Financial Institution Action unrelated to the Settlement pending Final Approval of the Settlement; (6) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim; and (7) schedule a Final Approval hearing for a time and date convenient for the Court, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses ("Final Approval Hearing").

43.     Within 10 days of the filing of the motion for preliminary approval, Home Depot, at its own expense, shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

## VI.     SETTLEMENT ADMINISTRATOR

44.     The Settlement Administrator shall administer various aspects of the Settlement and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, overseeing administration of the Settlement Fund; providing Notice to Settlement Class Members as described in Section IX; establishing and operating the Settlement Website and a toll-free number; administering the Claims processes; and distributing cash payments according to the processes and criteria established by this Agreement.

45.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

    a.  Implementing the Notice Program required by this Agreement;

    b.  Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

    c.  Establishing and maintaining the Settlement Website;

    d.  Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members that call with or otherwise communicate such inquiries;

    e.  Responding to any mailed Settlement Class Member inquiries;

f. Processing all written notifications of exclusion from the Settlement Class;

g. Providing weekly reports and, no later than ten days after the Opt-Out Deadline, a final report to Class Counsel and Home Depot, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information as requested by Class Counsel and Home Depot's counsel;

h. In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member that timely and properly provided written notification of exclusion from the Settlement Class;

i. Reviewing, determining the validity of, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria established by this Settlement Agreement;

j. After the Effective Date, processing and transmitting distributions to Settlement Class Members;

k. Providing weekly reports and a final report to Class Counsel and Home Depot that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel and Home Depot's counsel; and

l. Performing any function related to Settlement administration at the agreed-upon instruction of both Class Counsel and Home Depot, including, but not limited to, verifying that cash payments have been distributed in accordance with this Agreement.

46. All costs incurred by the Settlement Administrator shall be borne by and separately paid by Home Depot. These payments shall be made separate and apart from the Settlement Fund and the Sponsored Entity Settlement Amount.

## VII.   NOTICE, OPT-OUTS, AND OBJECTIONS

47. Upon Preliminary Approval of the Settlement, at the direction of Class Counsel, the Settlement Administrator will implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final

Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information.

48.    The Notice Program has two components: (1) Mail Notice; and (2) Notice on the Settlement Website. The Notice Program is to be implemented as follows:

    a.  Within fourteen (14) days after entry of the Preliminary Approval Order, Home Depot and Class Counsel will provide the Settlement Administrator with contact information in their possession for banks, credit unions and other financial institutions that are potentially Settlement Class Members, including without limitation lists of potential Settlement Class Members that received payments under a card brand recovery process or released their claims against Home Depot. Based upon information obtained from the Parties and from other reasonably available sources, the Settlement Administrator will prepare a final list of potential Settlement Class Members to which notice will be issued.

    b.  Mail Notice will be sent to those on the final list by the Notice Deadline. The Mail Notice shall consist of the long-form notice in the form attached hereto as Exhibit 3 and the Claim Forms. The Mail Notice shall contain a link to the Settlement Website and inform Settlement Class Members that claims can be filed electronically on the website or by mail. For any Mail Notices that are returned as undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified. The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable.

    c.  The Settlement Administrator will send out one reminder mailing by postcard to those Settlement Class Members and Sponsored Entities that have not yet filed claims.

    d.  The Settlement Administrator will establish a toll-free number to respond to inquiries from Settlement Class Members.

    e.  The Settlement Administrator will create and maintain the Settlement Website, which will contain the information and documents required by this Agreement. The Settlement Website will be configured so that Settlement Class Members may file claims electronically.

f.  The Parties agree to provide any additional notice that the Court determines is necessary to meet the requirements of due process or Rule 23 of the Federal Rules of Civil Procedure.

49.    The Notice shall include a procedure for Settlement Class Members to exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude them from the Settlement Class. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must identify the Settlement Class Member and this action; state that the Settlement Class Member has chosen to opt-out or exclude itself from the Settlement Class; and contain the name, address, position, and signature of the individual who is acting on behalf of the Settlement Class Member. The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all that have timely and validly excluded themselves from the Settlement Class, which will be filed with the Court before the Final Approval Hearing. Any Settlement Class Member that does not timely and validly exclude itself shall be bound by the terms of the Settlement.

50.    The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses, and Service Awards to the class representatives. Objections to the Settlement or to the application for fees, costs, and expenses and Service Awards must be filed electronically with the Court, or mailed to the Clerk of the Court, Class Counsel, and Home Depot's counsel. For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Home Depot's Counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth:

a.  the name of the Financial Institution Action;

b.  the name of the Financial Institution objector and the full name, address, email address, and telephone number of the person acting on its behalf;

c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.  all grounds for the objection, accompanied by any legal support for the objection;

e.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Awards;

f.  the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

g. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

h. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

i. if the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include (i) a description of the attorney's legal background and prior experience in connection with class action litigation; (ii) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (iii) a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; (iv) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (v) the attorney's hourly rate.

j. any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

k. a description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a summary of the expected testimony from each witness, and a copy of any documents or other non-oral material to be presented;

l. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

m. the objector's signature on the written objection (an attorney's signature is not sufficient).

51.     The Notice shall be sent by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable and any reminder mail and email notices to be sent during the claims period.

52.    At least thirty (30) days before the Final Approval Hearing, the Settlement Administrator shall provide Class Counsel and Home Depot with one or more affidavits confirming that the Notice Program was completed in accordance with the Parties' instructions and the Court's approval. Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representatives' motion for final approval of the Settlement.

53.    Home Depot shall pay all costs and expenses associated with providing notice to Settlement Class Members including, but not limited to, the Settlement Administrator's fees. These payments shall be made separate and apart from the Settlement Fund.

## VIII.   FINAL APPROVAL ORDER AND JUDGMENT

54.    Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. The Final Approval Hearing shall be scheduled no earlier than 90 days after the CAFA notices are mailed to ensure compliance with 28 U.S.C § 1715. By no later than 30 days prior to the Final Approval Hearing, Plaintiffs shall file a motion for final approval of the Settlement and a motion for attorneys' fees, costs, and expenses and for Service Awards. Objectors, if any, shall be served by email and shall file any response to Plaintiffs' motions no later than 17 days prior to the Final Approval Hearing. By no later than 10 days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards. By no later than 10 days prior to the Final Approval Hearing, Home Depot shall also file its Response to Plaintiffs' Application for Attorneys' Fees, Expenses and Service Awards. At the Final Approval Hearing, the Court will consider Settlement Class Representatives' motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who objects to the Settlement or to the application for attorneys' fees, costs, expenses and for Service Awards, provided the objectors filed timely objections that meet all of the requirements listed in this Agreement.

55.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and the Service Awards. The proposed Final Approval Order shall be in a form agreed upon by Class Counsel and Home Depot and will be filed with the Court before the Final Approval Hearing. Such proposed Final Approval Order shall, among other things:

   a.  Determine that the Settlement is fair, adequate, and reasonable;

   b.  Finally certify the Settlement Class for settlement purposes only;

   c.  Determine that the Notice provided satisfied Due Process requirements;

d. Dismiss the Financial Institution Action with prejudice;

e. Bar and enjoin the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order;

f. Release Home Depot and the Released Parties from the Released Claims; and

g. Reserve the Court's continuing and exclusive jurisdiction over Home Depot and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## IX.   RELEASES

56.   As of the Effective Date, the Releasing Parties, each on behalf of itself and any other predecessors, successors, or assigns shall automatically be deemed to have fully and irrevocably released and forever discharged Home Depot and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively the "Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Data Breach that were or could have been alleged in the Financial Institution Action, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) Home Depot's information security policies and practices; (2) Home Depot's response to and notices about the Data Breach; (3) the fraudulent use of any Compromised Payment Card; (4) the cancellation and reissuance of any Alerted-on Payment Card or Compromised Payment Card; and (5) any expenses incurred investigating, responding to, or mitigating potential damage from the theft or illegal use of any Alerted-on Payment Card or Compromised Payment Card or information relating to such a card (the "Released Claims").

57.   For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 *et seq.*, California Civil Code § 1750 *et seq.*, California Civil Code § 1798.80 *et seq.*, California Civil Code § 56.10 *et seq.*, and any similar statutes or data breach notification statutes in effect in the United States or in any states in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary

duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief. The Released Claims do not include any claims arising from or relating to any conduct by Home Depot after the date the Agreement is executed.

58.    As of the Effective Date, the Released Parties will be deemed to have completely released and forever discharged the Releasing Parties and Class Counsel from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Financial Institution Action.

59.    Home Depot shall fully and irrevocably release and forever discharge the Plaintiffs, the other members of the Settlement Class, and Settlement Class Counsel ("Plaintiff Released Parties"), from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Financial Institution Action.

60.    Upon entry of the Final Judgment, the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## X.    ATTORNEYS' FEES, COSTS, EXPENSES AND SERVICE AWARDS

61.    <u>Service Awards</u>. Class Counsel will ask the Court to approve, and Home Depot will not oppose, Service Awards not to exceed $2,500 for each Settlement Class Representative to compensate them their efforts in the litigation and commitment on behalf of the Settlement Class. Any Service Awards approved by the Court will be paid from the Settlement Fund. Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Agreement.

62.   _Attorneys' Fees, Costs and Expenses._  Home Depot agrees to pay the reasonable attorneys' fees, costs and expenses of counsel for the Financial Institution Plaintiffs separate from and in addition to the Settlement Fund.  Class Counsel will make its application for such attorneys' fees, costs and expenses pursuant to a Fee Request at least 30 days before the Final Approval Hearing.  Home Depot reserves the right to object to Class Counsel's request for attorneys' fees and to appeal any Order granting Class Counsel's request for attorneys' fees.  In addition, Home Depot agrees to pay Class Counsel's reasonable costs and expenses.  Home Depot reserves the right to object to Class Counsel's request for costs and expenses and to appeal any Order granting Class Counsel's request for costs and expenses.  Any award of attorneys' fees, costs, and expenses shall be paid separate from and in addition to the Settlement Fund.  The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount on their Fee Request or costs and expenses request and shall not alter the Effective Date.

63.   Within ten (10) business days of the later of the Effective Date or a final order is entered approving Class Counsel's Fee Request Home Depot shall pay to Class Counsel all Court-approved attorneys' fees, costs, and expenses and any Service Awards to the class representatives.  An order approving Class Counsel's Fee Request will be considered final for purposes of this provision when the time for seeking rehearing, appellate or other review of the order on Class Counsel's Fee Request has expired or, if rehearing, appellate or other review of the order is requested, after such rehearing, appellate or other review of the order is concluded and, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  In the event that the award of attorneys' fees, costs, and expenses is reduced on appeal, Home Depot shall only pay the reduced amount of such award.  Class Counsel shall timely furnish to Home Depot any required tax information or account information and provide any reasonable and necessary forms before the payment is due.  If an appeal is taken from an order approving Class Counsel's fee request, Home Depot will pay interest on the amount awarded, as ultimately approved or reduced on appeal, at the same rate as applicable to any final judgment.

64.   The payment of attorneys' fees, costs, and expenses and Service Awards shall be made through a wired deposit or electronic funds transfer by Home Depot into the attorney client trust account to be designated by Class Counsel.  After the attorneys' fees, costs, and expenses have been deposited into this account, Class Counsel shall be solely responsible for allocating such attorneys' fees, costs, and expenses and distributing each participating firm's allocated share of such attorneys' fees, costs, and expenses to that firm and Home Depot shall have no responsibility for distribution of attorneys' fees, costs, or expenses among participating firms.

65.   In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amounts requested by Class Counsel, the remaining provisions of this Agreement shall remain in full force and effect.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of attorneys' fees, costs, and expenses shall constitute grounds for cancellation or termination of this Agreement.

## XI.    TERMINATION

66.    This Settlement may be terminated by either Settlement Class Representatives or Home Depot by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 14 days (or such longer time as may be agreed between Class Counsel and Home Depot) after any of the following occurrences:

      a.    Class Counsel and Home Depot agree to termination before the Effective Date;

      b.    The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

      c.    An appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

      d.    The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Approval Order, or the Settlement; or

      e.    The Effective Date does not occur.

67.    In the event of a termination as provided in this section, this Agreement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Financial Institution Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XII.    NO ADMISSION OF LIABILITY

68.    Home Depot disputes the claims alleged in the Financial Institutions Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Home Depot has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Financial Institution Action.

69.    Class Counsel and Settlement Class Representatives believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel and Settlement Class Representatives have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

70.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

71.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Financial Institution Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Financial Institution Action or in any proceeding in any court, administrative agency or other tribunal.

## XIII.    MISCELLANEOUS

72.    <u>Singular and Plurals</u>. As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

73.    <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

74.    <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement, including without limitation cooperating on identifying the number of Compromised Payment Cards and using commercial reasonable efforts to identify the financial institutions that issued them.

75.    <u>Obligation To Meet And Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

76.    <u>Integration</u>. This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

77.    <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

78.    <u>Governing Law</u>. The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Georgia, without regard to the principles thereof regarding choice of law.

79. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

80. <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

81. <u>Notices</u>. All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

Kenneth S. Canfield
DOFFERMYRE SHIELDS
    CANFIELD & KNOWLES, LLC
1355 Peachtree St., NE, Suite 1900
Atlanta, Georgia 30309

Gary F. Lynch
CARLSON LYNCH SWEET
    & KILPELA, LLP
PNC Park, Suite 210
115 Federal Street
Pittsburgh, Pennsylvania 15212

Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

James J. Pizzirusso
HAUSFELD, LLP – DC
1700 K. Street, NW, Suite 650
Washington, DC 20006

All notices to Home Depot provided for herein, shall be sent by overnight mail to:

Cari K. Dawson
Kristine McAlister Brown
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

82.    <u>Authority</u>. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

83.    <u>No Construction Against Drafter</u>. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

[SIGNATURES ON NEXT PAGE]

Date: March 8, 2017

_____

Kenneth S. Canfield
DOFFERMYRE SHIELDS CANFIELD
& KNOWLES LLC

_____

Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP

_____

Gary F. Lynch
CARLSON LYNCH SWEET
& KILPELA, LLP

_____

James J. Pizzirusso
HAUSFELD, LLP – DC

*Counsel for Plaintiffs*

_____

Cari K. Dawson
ALSTON & BIRD LLP

_____

Kristine McAlister Brown
ALSTON & BIRD LLP

_____

William P. Barnette
Assistant General Counsel,
THE HOME DEPOT

*Counsel for Defendants*

Date: March 8, 2017

_____
Kenneth S. Canfield
DOFFERMYRE SHIELDS CANFIELD
& KNOWLES LLC

_____
Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP

_____
Gary F. Lynch
CARLSON LYNCH SWEET
& KILPELA, LLP

_____
James J. Pizzirusso
HAUSFELD, LLP – DC

*Counsel for Plaintiffs*

*Cari K. Dawson*
Cari K. Dawson
ALSTON & BIRD LLP

*Kristine McAlister Brown*
Kristine McAlister Brown
ALSTON & BIRD LLP

_____
William P. Barnette
Assistant General Counsel,
THE HOME DEPOT

*Counsel for Defendants*

Date: March 8, 2017

_____
Kenneth S. Canfield
DOFFERMYRE SHIELDS CANFIELD
& KNOWLES LLC

_____
Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP

_____
Gary F. Lynch
CARLSON LYNCH SWEET
 & KILPELA, LLP

_____
James J. Pizzirusso
HAUSFELD, LLP – DC

*Counsel for Plaintiffs*

_____
Cari K. Dawson
ALSTON & BIRD LLP

_____
Kristine McAlister Brown
ALSTON & BIRD LLP

_____
William P. Barnette
Assistant General Counsel,
THE HOME DEPOT

*Counsel for Defendants*

**Exhibit 1 to the Settlement Agreement**

**Exhibit 1 to the Settlement Agreement between Home Depot and the Financial
Institution Plaintiffs:  Distribution Plan for the $25,000,000 Settlement Fund**

**1.	Definitions.** Terms defined in the Settlement Agreement to which this document is
an exhibit are incorporated herein by reference. In addition, as used herein, the terms set
forth in this section in boldface type will have the meaning described below.  Additional terms
are defined at various points in this Distribution Plan.

1.1	**Claim Referee.** This term means a person selected by the Parties to handle certain
disputes relating to claims.  A Claims Referee need not be selected or approved
until and unless a dispute arises that cannot otherwise be resolved pursuant to the
procedure set forth in Section 5 below.

1.2	**Claimed-On Account.** An account involving an Alerted-on Payment Card or
Compromised Payment Card that is (a) eligible for compensation under the
Settlement and (b) was issued by a Settlement Class Member that submits a claim
relating to such account.

1.3	**Claimed-On Account Costs.** Fraud reimbursement charges for Compromised
Payment Cards and payment card reissuance costs associated with a Settlement
Class Member's Alerted-on Payment Cards or Compromised Payment Cards that
the Settlement Class Member incurred between September 1, 2014 and December
31, 2014 and that have not been reimbursed, through the Visa Global
Compromised Account Recovery program or the MasterCard Account Data
Compromise program, or any issuer reimbursement program administered by
Discover or American Express, plus any other costs that a Settlement Class
Member contends it incurred as a result of the Data Breach between September 1,
2014 through December 31, 2014.  Settlement Class Members may not recover
fraud reimbursement charges for accounts that were not used to make purchases at
Home Depot during the period from April 10, 2014 to September 13, 2014 on a
self-checkout kiosk where the malware that gave rise to this Data Breach was
present even if the cards were identified in alerts issued by Visa, MasterCard,
Discover or American Express.

1.4	**Disputed Claim.** This term has the meaning set forth in Section 5.1.

1.5	**Distribution Fund.** This term has the meaning set forth in Section 4.1

1.6	**Documented Damages Award.**  This term has the meaning set forth in Section
2.2.

1.7	**Documented Damages Issuer.**  This term has the meaning set forth in Section
2.2.

1.8	**Documented Damages Issuer Total.** This term has the meaning set forth in
Section 4.3.2.

1.9 **Fixed Payment Award.** This term has the meaning set forth in Section 2.1.

1.10 **Issuer Reimbursement Assessment Amount.** The amount if any that a Settlement Class Member has received or is entitled to receive, directly or indirectly, with respect to its Claimed-On Accounts by reason of the Data Breach pursuant to the Visa Global Compromised Account Recovery program, the MasterCard Account Data Compromise program, or any issuer reimbursement program administered by Discover or American Express.

1.11 **Maximum Potential Claim Amount.** This term has the meaning set forth in Section 4.3.1.

1.12 **Post-Fixed Payment Remainder.** This term has the meaning set forth in Section 4.2.

1.13 **Supplemental Remainder.** This term has the meaning set forth in Section 4.4.1.

**2. Claims.** All Settlement Class Members that submit a valid Settlement Fund Claim Form and properly complete Part I of the form are eligible to receive a Fixed Payment Award without proof of their Claimed-On Account Costs. In addition, Settlement Class Members that submit a valid Settlement Fund Claim Form, properly complete Part II of the form, and provide documentation of their Claimed-On Account Costs less any Issuer Reimbursement Assessment Amounts for those Claimed-On Accounts are eligible to receive a Documented Damages Award.

2.1 **Fixed Payment Awards.** A Settlement Class Member can seek a fixed payment based on the number of Alerted-on Payment Cards that the Settlement Class Member issued. To be eligible to receive a Fixed Payment Award, a Settlement Class Member must submit a valid Settlement Fund Claim Form and properly complete Part I of the form. Settlement Class Members do not need to submit evidence of costs that they incurred with respect to their Claimed-On Accounts or of their Issuer Reimbursement Assessment Amounts in order to be eligible to receive a Fixed Payment Award. Each Settlement Class Member that submits a valid Settlement Fund Claim Form and properly completes Part I of the form will be eligible for (1) a payment in the amount of $2.00 per Alerted-on Payment Card issued by such Settlement Class Member, subject to a potential pro rata reduction, as described below ("Fixed Payment Award"); and (2) a possible additional supplemental payment if funds remain in the Settlement Fund after (a) any taxes have been paid and Service Awards have been paid; (b) all Fixed Payment Awards have been paid, and (c) all Documented Damages Awards have been paid.

2.2 **Documented Damages Awards.** A Settlement Class Member can seek an additional award based on its total Claimed-On Account Costs and Issuer Reimbursement Assessment Amount (each such Settlement Class Member being referred to as a "Documented Damages Issuer" and the amount of the additional award being referred to as a "Documented Damages Award"). A Documented Damages Issuer will need to submit evidence of its Claimed-On Account Costs

and evidence of its Issuer Reimbursement Assessment Amount (if any) to be eligible for a Documented Damages Award.  As set forth in more detail below, the award ultimately received by any particular Documented Damages Issuer that submits a valid claim for a Documented Damages Award will be subject to a potential pro rata reduction, depending on the total value of the Documented Damages Awards and the total amount of Fixed Payment Awards.  Documented Damages Issuers are also eligible for a possible additional supplemental payment if funds remain in the Settlement Fund after any taxes, Service Awards, and all Fixed Payment and Documented Damages Awards have been paid.

2.3     **Claim Form.** The Settlement Fund Claim Form to be used by Settlement Class Members seeking Fixed Payment Awards and Documented Damages Awards is attached as Exhibit A.  To receive a Fixed Payment Award, Settlement Class Members must complete and sign Part I of the Settlement Fund Claim Form.  Settlement Class Members that choose to submit a claim for a Documented Damages Award must also complete and sign Part II of the Settlement Fund Claim Form and submit reasonable documentation as specified in the Settlement Fund Claim Form.

## 3.     Claim Validation Process

3.1     All Settlement Fund Claim Forms must be submitted in the manner and by the deadline specified in the Settlement Agreement.

3.2     The Settlement Administrator will begin evaluating timely submitted Settlement Fund Claim Forms on or after the Effective Date.  The Settlement Administrator may require supplementation of a Settlement Fund Claim Form or additional information necessary to validate or audit a claim. To the extent that a Settlement Class Member fails to provide any supplementation or additional information so requested, the Settlement Administrator may determine that the Settlement Class Member failed to submit a valid claim and therefore reject that claim.

3.3     **Claims for Fixed Payment Awards**

3.3.1   The Settlement Administrator, in its discretion to be reasonably exercised, will evaluate claims submitted for Fixed Payment Awards to determine whether: a) the claimant is a Settlement Class Member; b) Part I of the Settlement Fund Claim Form is complete and accurate; and c) the Settlement Class Member signed the Settlement Fund Claim Form as required.

3.4     **Claims for Documented Damages Awards**

3.4.1   The Settlement Administrator, in its sole discretion to be reasonably exercised, will evaluate claims for Documented Damages Awards to determine whether: a) the claimant is a Settlement Class Member; b) Part II of the Claim Form is complete and accurate; c) the Settlement Class

Member signed the Settlement Fund Claim Form as required; and d) the claimant provided the information needed to evaluate the validity of the claim for a Documented Damages Award.

3.4.2 The Settlement Administrator's determination of each Settlement Class Member's award will be final, subject to the dispute resolution process in Section 5 below.

**4.** **Distribution of the Settlement Fund.** Following the Claim Validation Process, the Settlement Administrator will distribute the Settlement Fund as follows:

4.1 **Funds Available for Distribution to Settlement Class Members**. The amount of the Settlement Fund available for distribution to Settlement Class Members (the "Distribution Fund") shall equal (i) the amount of the Settlement Fund, less (ii) any taxes and Service Awards as further described in the Settlement Agreement.

4.2 **Payment of Fixed Payment Awards.** Each Settlement Class Member that submits a valid claim will receive a Fixed Payment Award equal to $2.00 per Claimed-On Account issued by the Settlement Class Member, provided that the Distribution Fund is greater than or equal to $2.00 multiplied by the total number of eligible Claimed-On Accounts validly claimed by Settlement Class Members. Any amount remaining in the Distribution Fund after payment of Fixed Payment Awards is the "Post-Fixed Payment Remainder." In the event that the Distribution Fund is less than $2.00 multiplied by the total number of such Claimed-On Accounts, each Settlement Class Member that filed a valid claim will receive a pro rata share of the Distribution Fund based on the number of Claimed-On Accounts issued by the Settlement Class Member as compared to the total number of Claimed-On Accounts issued by all Settlement Class Members that filed valid claims for a Fixed Payment Award.

4.3 **Payment of Documented Damages Awards.** Documented Damages Awards for Documented Damages Issuers that submit valid claims will be paid from the Post-Fixed Payment Remainder and determined as follows:

4.3.1 The Settlement Administrator will determine each Documented Damages Issuer's "Maximum Potential Claim Amount," which, for each Documented Damages Issuer that submitted a valid claim, is the amount equal to (i) the sum total of the Documented Damages Issuer's Claimed-On Account Costs; (ii) reduced by $2.00 per Claimed-On Account reflecting the Fixed Payment Award for which it is eligible; (iii) further reduced by forty percent (40%); and (iii) further reduced by the Documented Damages Issuer's Issuer Reimbursement Assessment Amount (if any). In the event that a claim for a Documented Damages Award is less than $0.00, which could occur for example if a

4

Documented Damagers Issuer had received an Issuer Reimbursement Assessment Amount that exceeds 60 percent of the alleged documented damages, the Documented Damage Issuer's Maximum Potential Claim Amount shall be $0.00. The Maximum Potential Claim Amount for any Documented Damagers Issuer that fails to submit a valid claim for a Documented Damages Award shall be $0.00.

4.3.2 If the aggregate total of all Documented Damages Issuers' Maximum Potential Claim Amounts (the "Documented Damages Issuer Total") is less than the Post-Fixed Payment Remainder, then each Documented Damages Issuer will be paid its Maximum Potential Claim Amount.

4.3.3 If the aggregate total of all Documented Damages Issuers' Maximum Potential Claim Amounts is greater than the Post-Fixed Payment Remainder, then each Documented Damages Issuer that submits a valid claim for a Documented Damages Award will be paid its pro rata share of the Post-Fixed Payment Remainder based on the amount of its Maximum Potential Claim Amount in comparison to the total amount of the Post-Fixed Payment Remainder. If there is no Post-Fixed Payment Remainder, Documented Damages Awards will be zero.

4.4.1 If after payment of the Fixed Payment Amounts and the Documented Damages Awards the Distribution Fund is not exhausted, then the remaining amounts (the "Supplemental Remainder") will be distributed pro rata to all Settlement Class Members that submitted a valid Settlement Fund Claim Form based on the number of Claimed-On Accounts that they issued.

5. **Dispute Resolution**

5.1 If the Settlement Administrator determines that (i) a Settlement Class Member's number of Claimed-On Accounts is fewer than the number claimed by such issuer in its Settlement Fund Claim Form, (ii) a Documented Damages Issuer's Claimed-On Account Costs are less than the amount claimed by the Documented Damages Issuer, or (iii) a Documented Damages Issuer's Issuer Reimbursement Assessment Amount is greater than that claimed by the Documented Damages Issuer (each, a "Disputed Claim"), the Settlement Administrator will notify the claimant by email to the email address identified in the Settlement Fund Claim Form (or a mailing address for those that do not provide an email address).

5.2 Each recipient of any notice pursuant to Section 5.1 herein will have ten (10) days from receipt of such notice to respond to the Settlement Administrator by reply email (or regular mail for those that did not provide an email address) by stating whether the claimant accepts or rejects the Settlement Administrator's determination regarding the Disputed Claim.

5.2.1  If the claimant rejects the Settlement Administrator's determination regarding the Disputed Claim, the Settlement Administrator will have ten (10) days to reconsider the original determination, make a final determination, and communicate the final determination to the claimant by email (or regular mail for those that did not provide an email address). The claimant will have 10 days to reply back to the Settlement Administrator to accept or reject the final determination.

5.2.2  If the claimant approves the final determination or fails to send a timely response to any communication from the Settlement Administrator pursuant to Sections 5.1 and 5.2.1 herein, then the Settlement Administrator's final determination regarding the Disputed Claim will be used in calculating the Settlement Class Member's Fixed Payment Award or the Documented Damages Issuer's Maximum Potential Claim Amount, as appropriate. If the final determination regarding the Disputed Claim is timely rejected by the claimant, then the Disputed Claim will be resolved in accordance with the procedures set out in Sections 5.3 and 5.4 below.

5.3  After receipt of a claimant's rejection of a final determination regarding a Disputed Claim, the Settlement Administrator will provide Settlement Class Counsel and Home Depot's Counsel (together "Counsel") with a copy of the Settlement Fund Claim Form and any documentation submitted by the claimant, and the communications between the Settlement Administrator and the claimant (the "Claim File").

5.3.1  Counsel will confer regarding the Disputed Claim.

5.3.2  If Counsel agree, as applicable, that a claimant issued the number of Claimed-On Accounts claimed on its Claim Form, incurred the Claimed-On Account Costs claimed on its Settlement Fund Claim Form, or had the Issuer Reimbursement Assessment Amount claimed on its Settlement Fund Claim Form, Counsel's determination will be final. Counsel will inform the Settlement Administrator of their determination by email, and the Settlement Administrator will provide notice of the decision to the claimant.

5.3.3  If Counsel agree, as applicable, that a claimant issued fewer than the number of Claimed-On Accounts claimed on its Settlement Fund Claim Form, incurred fewer than the Claimed-On Account Costs claimed on its Settlement Fund Claim Form, or had an Issuer Reimbursement Assessment Amount greater than was claimed on its Settlement Fund Claim Form, then Counsel will notify the Settlement Administrator by email ("Counsel's Notice") and, if the Settlement Class Member continues to dispute Counsel's determination, the Disputed Claim at issue will be submitted to the "Claim Referee". The Parties need not select a Claim Referee unless and until such time as one is needed.

5.3.4   If Counsel disagree, as applicable, during the inquiries described in 5.3.2 or 5.3.3, the Disputed Claim(s) at issue will be submitted to the Claim Referee.

5.4     After receipt of Counsel's Notice, the Settlement Administrator will provide the Claim Referee with a copy of the Claim File. The Claim Referee will make a final determination regarding the Disputed Claim. All such final determinations will be made by the Claim Referee based on whether the number or amount at issue in the Disputed Claim, or some portion thereof, is reasonably supported in fact. The Claim Referee's decision will be final.

**Exhibit A to Distribution Plan**

*Home Depot Data Security Breach Settlement*
# SETTLEMENT FUND CLAIM FORM

COMPLETE AND SIGN THIS FORM AND SUBMIT ONLINE NO LATER THAN _____, 2017 at
HomeDepotBankSettlement.com
or
SUBMIT BY MAIL POSTMARKED BY ___, 2017 at
Home Depot Data Breach Settlement, c/o_____, Settlement Administrator,
_____

- Use this form if your financial institution is a Settlement Class Member who is entitled to claim into the $25,000.000 Settlement Fund.

- This form has two parts. You should fill out Part I if your financial institution wants to receive a fixed payment estimated to be $2.00 per card in addition to any recovery amount offered through your payment card network (e.g., Visa's GCAR or MasterCard's ADC program). No documentation is needed to fill out Part I. In order to receive a fixed payment award, you do not need to fill out Part II.

- You should fill out Part II if your financial institution wants to be eligible to receive an additional award of up to 60 percent of your unreimbursed losses between September 1, 2014 and December 31, 2014 on payment card accounts that were alerted-on as a result of the Home Depot Data Breach. To receive an additional award under Part II you will need to provide documentation of your losses and furnish further information. The amount of the additional award your financial institution will receive under Part II will depend on the value of all valid submitted claims.

Note: If your financial institution is an independent Sponsored Entity that received payment in connection with an Alternative Recovery Offer under the MasterCard ADC program, that felt it did not have sufficient time or information to appropriately consider the Alternative Recovery Offer when originally presented with it, and whose claims against Home Depot were released on its behalf by its sponsor, your financial institution may be eligible for a payment from the Sponsored Entity Settlement Amount of $2,250,000 so long as your financial institution does not share a corporate affiliation with its sponsor. To claim this payment, you must complete and submit a Sponsored Entity Claim Form.

**Materials to Gather to Complete this Form for a Fixed Payment Award (Part I):**
1) The number of payment card accounts your financial institution issued that were included in alerts relating to the Data Breach.
2) The number of alerted-on payment card accounts with regard to which you or anyone acting on your behalf already signed a release through a prior settlement (for example by accepting Visa's ARO offer).

**Materials to Gather to Complete this Form for a Documented Damages Award (Part II):**

You need to provide the information identified in 1 and 2 above. Additionally you need to provide:

1) The amount of fraud charges your financial institution incurred on unreleased, alerted-on cards that were actually compromised in the Home Depot data breach and the account numbers for any such compromised cards. Note that some alerted-on cards were not compromised by the data breach because it was later determined that the malware was implemented on Home Depot's systems at different times. Only fraud losses committed using compromised cards were caused by the data breach. Accordingly, you will only be able to recover fraud charges for those cards used to make purchases at Home Depot during the period from April 10, 2014 to September 13, 2014 on a self-checkout kiosk where the malware that gave rise to this Data Breach was present. If you have any questions regarding whether an alerted-on card was compromised, please contact the Settlement Administrator, who has a list of the compromised cards and can answer your questions.
2) The amount of fraud charges for which you already received reimbursement due to chargebacks from card-not-present fraud
3) The amount of reissuance costs your financial institution incurred on unreleased alerted-on cards.

# SETTLEMENT FUND CLAIM FORM

4) The amount of any other costs you contend your financial institution incurred in responding to the Home Depot Data Breach related to your alerted-on accounts.
5) The amount that your financial institution has received or is entitled to receive through a payment card brand reimbursement program relating to the Data Breach (*e.g.*, Visa's GCAR or MasterCard's ADC program).

# PART I

## SETTLEMENT CLASS MEMBER INFORMATION

**Name of Financial Institution / Settlement Class Member**

**Name of Person Filling Out This Form**

**Your Title in the Financial Institution**

**Mailing Address**

**City**  **State**  **Zip Code**

**Daytime Phone**

**E-Mail Address (if provided, we will communicate primarily by email about your claim)**

## CERTIFICATION OF PAYMENT CARDS: Please complete all questions below:

1. Is your financial institution the issuer of one or more payment cards that were identified in any of the categories of alerts below?
   (Check All Applicable Boxes Below.)

   If you check "YES" for any category of alert(s), indicate how many payment card accounts your financial institution issued that were identified in the referenced alert(s). For purposes of completing this form, please note that a payment card number can have only one corresponding payment card account, even if your financial institution issued multiple payment cards bearing the card number.

| | |
|---|---|
| (a) Visa alert(s) in the US-2014-1072-PA series | ☐ YES  ☐ NO |
| Number of Issued Accounts Identified in These Alerts | |

| | | YES | NO |
|---|---|---|---|
| (b) MasterCard alert(s) in the ADC3868-US-14 series, the ADC3869-US-14 series, or the ADC3871-US-14 series | | ☐ | ☐ |
| Number of Issued Accounts Identified in These Alerts: | | | |

| | | YES | NO |
|---|---|---|---|
| (c) Discover cards alert(s) relating to the Home Depot data breach, including alert(s) in the DCA-US-2014-0635 series | | ☐ | ☐ |
| Number of Issued Accounts Identified in These Alerts: | | | |

| | | YES | NO |
|---|---|---|---|
| (d) American Express alert(s) relating to the Home Depot data breach | | ☐ | ☐ |
| Number of Issued Accounts Identified in These Alerts: | | | |

**If you are unable to answer YES to any part of Question 1 then your financial institution is not a Class Member and is not eligible to participate in this Settlement. Please stop and do not submit a form.**

2. Have your financial institution, or has any person or entity acting on its behalf, signed a release of its legal claims against Home Depot relating to the Data Breach, for example by accepting a premium over the amount that was paid under a card brand compensation program such as Visa's GCAR program, or by entering into a settlement agreement directly with Home Depot, with respect to any of the payment cards identified in Question 1 above? (Check All Applicable Boxes Below.)

   If you check "YES" in any category, indicate for how many of the alerted-on accounts identified in response to Question 1 are subject to a release in favor of Home Depot. If your financial institution released its claims as to all of the payment cards identified in the alerts below, write "ALL."

| | | YES | NO |
|---|---|---|---|
| (a) Visa alert(s) in the US-2014-1072-PA series | | ☐ | ☐ |
| Number of Alerted-On Accounts Subject to a Release: | | | |

| | | YES | NO |
|---|---|---|---|
| (a) MasterCard alert(s) in the ADC3868-US-14 series, the ADC3869-US-14 series, or the ADC3871-US-14 series | | ☐ | ☐ |
| Number of Alerted-On Accounts Subject to a Release: | | | |

| | | YES | NO |
|---|---|---|---|
| (b) Discover alert(s) relating to the Home Depot data breach, including alert(s) in the DCA-US-2014-0635 series | | ☐ | ☐ |
| Number of Alerted-On Accounts Subject to a Release: | | | |

| | | |
|---|---|---|
| (c) American Express alert(s) relating to the Home Depot data breach | ☐ YES | ☐ NO |
| Number of Alerted-On Accounts Subject to a Release: | | |

3. Please indicate the total of all payment card accounts you listed in response to Question 1.

(Total of Alerted-On Accounts Listed in Response to Question 1)

4. Please indicate the total of all payment card accounts subject to a release as identified in respo[nse] to question 2.

(Total of Released Accounts Listed in Response to Question 2)

5. Please subtract your answer to Question 4 from your answer to Question 3.

(Total Alerted-On Accounts Minus Released Accounts)

If your answer to Question 5 is zero or blank, then your financial institution is not eligible to receive compensation from the Settlement Fund. However, if your financial institution is an independent Sponsored Entity that does not share a corporate affiliation with its sponsor, that certifies it did not have sufficient time or information to appropriately consider the Alternative Recovery Offer when originally presented with it, and whose claims against Home Depot were released by its sponsor after acceptance of an Alternative Recovery Offer under the MasterCard ADC program, your financial institution may be entitled to compensation if you complete and submit a Sponsored Entity Claim Form.

IF YOU ARE NOT PLANNING TO FILL OUT PART II OF THIS CLAIM FORM, PLEASE REMEMBER TO SIGN THE FORM ON THE BOTTOM OF PAGE 5. IF YOU DO NOT SIGN THE FORM, YOUR CLAIM MAY BE REJECTED AS INVALID.

## PART II

**Please fill out Part II if you wish to provide documentation and become eligible for an additional award of up to 60 percent of your documented losses resulting from the Data Breach (less the estimated payment you will receive as a result of filing out Part I):**

6. For the payment card accounts included in your answer to question 5 (*i.e.*, payment card accounts that are not subject to a release in favor of Home Depot), did your financial institution incur unreimbursed costs between September 1, 2014 and December 31, 2014 associated with any of the following? (Check All Applicable Boxes Below)

Reimbursement of unauthorized (fraudulent) charges ☐ YES ☐ NO

Reissuance of payment cards ☐ YES ☐ NO

Other costs you contend your financial institution incurred in responding to the Home Depot data breach ☐
YES ☐ NO

7. Do you have proof to support a claim for the costs identified in response to question 6?

☐ YES Complete page 6

☐ NO

8. For any payment card accounts included in your answer to question 5 (*i.e.*, payment card accounts that are not subject to a release), has your financial institution received or is it entitled to receive, directly or indirectly, any compensation for your losses from any of the following? If YES, please indicate the total amount your financial institution has received and/or are entitled to receive on page 6. (Check All Applicable Boxes Below and Fill In Applicable Amounts on page 6.)

| | | |
|---|---|---|
| Visa's Global Account Recovery Program | ☐ YES Complete Page 7 | ☐ NO |
| MasterCard's Account Data Compromise Program | ☐ YES Complete Page 7 | ☐ NO |
| Discover, under any reimbursement program | ☐ YES Complete Page 6 | ☐ NO |
| American Express, under any reimbursement program | ☐ YES Complete Page 6 | ☐ NO |

If you are unable to check any of the boxes under Question 6, you are unable to answer YES in response to Question 7, or the amount of compensation from the sources you identify in response to Question 8 is greater than 60 percent of the losses you allege your financial institution suffered from the Data Breach, your financial institution is not eligible to receive a payment in addition to the fixed payment available to your financial institution under Part I. As a result, you should not continue to complete Part II.

Note if your financial institution received compensation as an independent Sponsored Entity under the MasterCard ADC program, but certifies that it did not have sufficient time or information to appropriately consider the Alternative Recovery Offer when originally presented with it, and if its claims against Home Depot were released on its behalf by a sponsoring entity with which it does not share a corporate affiliation, your financial institution may still be entitled to receive a supplemental payment under the settlement. To be eligible for the supplemental payment, you must complete and submit a Sponsored Entity Claim Form.

## SIGN CLAIM FORM

# SETTLEMENT FUND CLAIM FORM

By submitting this Settlement Fund Claim Form, the above-named Settlement Class Member certifies that it is eligible to make a claim in this settlement and that the information provided in this claim form is true and correct. The above-named Settlement Class Member understands that this claim may be subject to audit, verification, and Court review.

_____     _____
Signature of Duly Authorized Representative of Settlement Class Member      Date

_____     _____
Print Name                                                              Title


NOTE: IF YOU ARE SUBMITTING A DOCUMENTED DAMAGES CLAIM UNDER PART II OF THIS FORM TO RECOVER AN ADDITIONAL AMOUNT OF UP TO 60 PERCENT OF YOUR DOCUMENTED LOSSES, YOU MUST COMPLETE THE FOLLOWING PAGES OF THIS FORM WHICH PERTAIN TO THE PROOF AND DOCUMENTATION YOU HAVE IN SUPPORT OF YOUR LOSSES.


## CLAIM SUBMISSION REMINDERS

- You may submit your claim by mail or through the website at HomeDepotBankSettlement.com. If you submit your claim through the website, you will need to submit the documentation supporting your Documented Damages Claim via PDF upload or by mail with a copy of your online claim confirmation.

- Please keep a copy of this claim form and any documentation if submitting by mail.

- Claims must be submitted through the website by _____, **2017**, or mailed so they are postmarked, by _____, **2017**.

- If filing a paper form, , return the form to:

  <u>Mail:</u>                                              <u>Courier:</u>
  Home Depot Data Breach Settlement         Home Depot Data Breach Settlement


## SUPPORTING PROOF AND DOCUMENTATION (REQUIRED FOR CLAIM TO BE VALID)

Please fully complete the below tables, providing the dates, amounts, and descriptions of the supporting documentation for each cost and payment that you list. Please attach all supporting documentation.

*The above-named Class Member had expenses with respect to its Claimed-On Accounts (i.e., the accounts included for purposes of responding to question 5) that were incurred between September 1, 2014 and December 31, 2014, and that were not reimbursed except through one or more of the payment card brand issuer reimbursement programs referenced below:*

| Cost Type | Date(s) of Cost | Amount |
|---|---|---|
| Reimbursement of Fraudulent Charges | ___ ___/___ ___/___ ___ ___ ___ | $_____ |

**Description of Supporting Documentation:** *(Identify what you are attaching and why)*
*(Example: internal documents showing fraud charges during the relevant time period, the account number suffering the fraud, the type of fraud, the amount of fraud, and alerts showing the affected account was alerted by a card brand as part of a network alert (such as CAMS alert or MasterCard alert); do not include amounts or documentation for fraud items for which your financial institution has been reimbursed, such as Card Not Present fraud)*

Note: your financial institution may only recover fraudulent charges for "compromised cards," that is cards used to make purchases at Home Depot during the period from April 10, 2014 to September 13, 2014 on a self-checkout kiosk where the malware that gave rise to this Data Breach was present. In order to recover fraudulent charges, you must identify the account number and the specific fraud losses associated with each account number. Questions about whether a particular card was "compromised" should be asked of the Settlement Administrator, who has a list of all compromised cards.

| Cost Type | Date(s) of Cost | Amount |
|---|---|---|
| Reissuance of Payment Cards | ___ ___/___ ___/___ ___ ___ ___ | $_____ |

**Description of Supporting Documentation:** *(Identify what you are attaching and why)*
*(Example: invoices from processors or elsewhere or any other documentation establishing costs your financial institution paid in connection with reissuing cards, including the cost of canceling Claimed-on Accounts)*

| Cost Type | Date(s) of Cost | Amount |
|---|---|---|
| Other Costs You Contend Your Financial Institution Incurred in Responding to the Home Depot Data Breach | ___ ___/___ ___/___ ___ ___ ___ | $_____ |

**Description of Supporting Documentation:** *(Identify what you are attaching and why)*
*(Example: Invoices, payment records, overtime payroll records and the like sufficient to show payment for other costs specifically associated with the Home Depot Data Breach)*

# SETTLEMENT FUND CLAIM FORM

*The above-named Class Member received or is entitled to receive, directly or indirectly, payments from one or more payment card brand issuer reimbursement programs relative to the Home Depot data breach with respect to its Claimed-On Accounts, which payments are listed below:*

| Program / Payment Card Brand | Date(s) of Payment | Amount |
|---|---|---|
| Visa's Global Account Recovery Program | ___ /___ /___ ___ ___ | $_____ |

**Description of Supporting Documentation:** *(Identify what you are attaching and why)*
*(Example: Correspondence from Visa, your processor, or someone else informing you that your financial institution is entitled to receive a reimbursement amount related to the Home Depot Data Breach)*

_____

| Program / Payment Card Brand | Date(s) of Payment | Amount |
|---|---|---|
| MasterCard's Account Data Compromise Program | ___ /___ /___ ___ ___ | $_____ |

**Description of Supporting Documentation:** *(Identify what you are attaching and why)*
*(Example: Correspondence from MasterCard, your processor, or anyone else informing you that your financial institution is entitled to receive a reimbursement amount related to the Home Depot Data Breach)*

_____

| Program / Payment Card Brand | Date(s) of Payment | Amount |
|---|---|---|
| Discover, under any program similar to the foregoing | ___ /___ /___ ___ ___ | $_____ |

**Description of Supporting Documentation:** *(Identify what you are attaching and why)*
*(Example: Correspondence from Discover, your processor, or anyone else informing you that your financial institution is entitled to receive a reimbursement amount related to the Home Depot Data Breach)*

_____

| Program / Payment Card Brand | Date(s) of Payment | Amount |
|---|---|---|
| American Express, under any program similar to the foregoing | ___ /___ /___ ___ ___ | $_____ |

**Description of Supporting Documentation:** *(Identify what you are attaching and why)*
*(Example: Correspondence from American Express, your processor, or anyone else informing you that your financial institution is entitled to receive a reimbursement amount related to the Home Depot Data Breach)*

_____

**Exhibit 2 to the Settlement Agreement**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

_____
                        )
In re: The Home Depot, Inc., Customer   )     Case No.: 1:14-md-02583-TWT
Data Security Breach Litigation        )
                        )
This document applies to:           )
FINANIAL INSTITUTION CASES    )
_____)

## PRELIMINARY APPROVAL ORDER

This matter is before the Court for consideration of whether the settlement reached by the parties should be preliminarily approved, the proposed settlement class preliminarily certified, and the proposed plan for notifying the class approved. Having reviewed the proposed settlement agreement, together with its exhibits, and based upon the relevant papers and all prior proceedings in this matter, the Court has determined the proposed settlement satisfies the criteria for preliminary approval, the proposed settlement class should be preliminarily certified, and the proposed notice plan approved. Accordingly, good cause appearing in the record, **IT IS HEREBY ORDERED THAT**:

## Provisional Certification of The Settlement Class

(1)    The Court provisionally certifies the following settlement class:

> All banks, credit unions, financial institutions, and other entities in the United States (including its Territories and the District of Columbia) that issued Alerted-on Payment Cards. Excluded from the class are entities that have released all of their claims against Home Depot, but not excluded from the class are independent sponsored entities whose claims were released in connection with Alternative Recovery Offers made by MasterCard.

Also excluded from the settlement class are Home Depot and the financial institutions that timely and validly opt out. This settlement class is provisionally certified for purposes of settlement only.

(2) The Court determines that for settlement purposes the proposed settlement class meets all the requirements of Federal Rule of Procedure Rule 23(a) and (b)(3), namely that the class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the class representatives are typical of absent class members; that the class representatives will fairly and adequately protect the interests of the class as they have no interests antagonistic to or in conflict with the class and have retained experienced and competent counsel to prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

(3)    The class members designated as "Settlement Class Representatives" in Paragraph 26 of the settlement agreement are designated and appointed as the representatives of the proposed class.

(4)    The following lawyers, who were previously appointed by the Court as interim Co-lead Counsel or Chair of the Plaintiffs' Steering Committee, are designated as Settlement Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Kenneth S. Canfield of Doffermyre Shields Canfield & Knowles, LLC; Joseph P. Guglielmo of Scott+Scott, Attorneys at Law, LLP; Gary F. Lynch of Carlson Lynch Sweet & Kilpela, LLP; and James J. Pizzirusso of Hausfeld, LLP - DC.  The Court finds that these lawyers are experienced and will adequately protect the interests of the settlement class.

## Preliminary Approval of the Proposed Settlement

(5)    Upon preliminary review, the Court finds the proposed settlement is fair, reasonable and adequate, otherwise meets the criteria for approval, and warrants issuance of notice to the settlement class.  Accordingly, the proposed settlement is preliminarily approved.

## Final Approval Hearing

(6)    A Fairness Approval Hearing shall take place before the Court on _____, 2016, at ___ a.m./p.m. in Courtroom 2108 of the Richard B. Russell

Federal Building and United States Courthouse, 75 Ted Turner Dr., SW, Atlanta, Georgia 30303-3309, to determine, among other things, whether: (a) the proposed settlement class should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (b) the settlement should be finally approved as fair, reasonable and adequate and, in accordance with the settlement's terms, this matter should be dismissed with prejudice; (c) the application of Settlement Class Counsel for an award of attorneys' fees and expenses should be approved; and (d) the application for the class representatives to receive service awards should be approved. Any other matters the Court deems necessary and appropriate will also be addressed at the hearing.

(7)     Settlement Class Counsel shall submit their application for fees and expenses and the application for services awards to the class representatives thirty days before the Final Approval Hearing. Home Depot shall submit its Response to Plaintiffs' Application for Attorneys' Fees, Expenses and Service Awards no later than ten days before the Final Approval Hearing.

(8)     Any settlement class member that has not timely and properly excluded itself from the settlement class in the manner described below, may appear at the Final Approval Hearing in person or by counsel and be heard, to the extent allowed by the Court, regarding the proposed settlement; provided,

4

however, that no class member that has elected to exclude itself from the class shall be entitled to object or otherwise appear, and, further provided, that no class member shall be heard in opposition to the settlement unless the class member complies with the requirements of this Order pertaining to objections, which are described below.

## Administration

(9)    Angeion Group is appointed as the Settlement Administrator, with responsibility for class notice and claims administration.  Home Depot shall pay the Settlement Administrator's fees, as well as all other costs and expenses associated with notice and administration as provided in the settlement agreement.

## Notice to the Class

(10)   The notice program set forth in the settlement agreement and the forms of notice and claim forms attached as exhibits to the settlement agreement satisfy the requirements of Federal Rule of Civil Procedure 23 and thus are approved.  Non-material modifications to the exhibits may be made without further order of the Court.  The Settlement Administrator is directed to carry out the notice program in conformance with the settlement agreement and to perform all other tasks that the settlement agreement requires.

(11)   The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits:  (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements.  The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members.

### Exclusions from the Class

(12)   Any settlement class member that wishes to be excluded from the settlement class must mail a written notification of the intent to exclude itself to the Settlement Administrator at the address provided in the notice, postmarked no later than _____ (the "Opt-Out Deadline").  The written notification must identify the settlement class member and this action; state that the settlement class member has chosen to opt-out or exclude itself from the settlement class; and

contain the name, address, position, and signature of the individual who is acting on behalf of the settlement class member.

(13)   The Settlement Administrator shall provide the parties with copies of all opt-out notifications, and a final list of all that have timely and validly excluded themselves from the settlement class, which should be filed with the Court before the Final Approval Hearing.

(14)   Any settlement class member that does not timely and validly exclude itself from the settlement shall be bound by the terms of the settlement.  If final judgment is entered, any settlement class member that has not submitted a timely, valid written notice of exclusion from the settlement class shall be bound by all subsequent proceedings, orders and judgments in this matter, including but not limited to the release set forth in the settlement and final judgment.

(15)  All those that submit valid and timely notices of exclusion shall not be entitled to receive any benefits of the settlement.

## Objections to the Settlement

(16)   A settlement class member that complies with the requirements of this Order may object to the settlement, the request of Settlement Class Counsel for an award of fees and expenses to Settlement Class Counsel, or the request for service awards to the class representatives.

(17)   No settlement class member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any settlement class member shall be received and considered by the Court, unless the objection is (a) electronically filed with the Court by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Home Depot's Counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice. Objections shall not exceed twenty five (25) pages.  For the objection to be considered by the Court, the objection shall set forth:

(a)   The name of this action and reference that the objection applies to the Financial Institution cases;

(b)   The name of the objector and the full name, address, email address, and telephone number of the person acting on its behalf;

(c)   An explanation of the basis upon which the objector claims to be a settlement class member;

(d)   All grounds for the objection, accompanied by any legal support for the objection;

(e)   The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement, the fee application, or the

application for service awards;

(f)     The identity of all counsel representing the objector who will appear at the Final Approval Hearing;

(g)     The number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders relating to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each case;

(h)     The number of times in which the objector's counsel and the counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior objections that were issued by the trial and appellate courts in each case;

(i)     If the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include (i) a description of the attorney's legal background and prior experience in connection with class action litigation;

(ii) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (iii) a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; (iv) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (v) the attorney's hourly rate;

(j)    Any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

(k)    A description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a summary of the expected testimony  from each witness, and a copy of any documents or other non-oral material to be presented;

(l)    A statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and,

(m)    The objector's signature on the written objection (an attorney's signature is not sufficient).

(18)   In addition, any settlement class member that objects to the proposed settlement must make itself available to be deposed regarding the grounds for its

objection and must provide along with its objection the dates when the objector will be available to be deposed during the period from when the objection is filed through the date five days before the Final Approval Hearing.

(19)   Any settlement class member that fails to comply with the provisions in this Order will waive and forfeit any and all rights it may have to object, and shall be bound by all the terms of the settlement agreement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the release in the settlement agreement if final judgment is entered.

## Claims Process and Distribution Plan

(20)   The settlement agreement establishes a process for assessing and determining the validity and value of claims and a methodology for paying settlement class members that submit a timely, valid claim form. The Court preliminarily approves this process, including specifically the Distribution Plan attached as Exhibit 1 to the settlement agreement, and directs that the Settlement Administrator effectuate the claims and distribution process according to the terms of the settlement agreement.

(21)   Settlement class members that qualify for and wish to submit a claim form shall do so in accordance with the requirements and procedures specified in the notice and the claim forms.  If final judgment is entered, all settlement class

members that qualify for any benefit under the settlement but fail to submit a claim in accordance with the requirements and procedures specified in the notice and claim forms shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions of the settlement agreement, including the release included in that agreement, and the final judgment.

## Termination of the Settlement and Use of this Order

(22)   This Order shall become null and void and shall be without prejudice to the rights of the parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the settlement is not finally approved by the Court or is terminated in accordance with the terms of the settlement agreement.  In such event, the settlement and settlement agreement shall become null and void and be of no further force and effect, and neither the settlement agreement nor the Court's orders, including this Order, relating to the settlement shall be used or referred to for any purpose whatsoever.

(23)   This Order shall be of no force or effect if final judgment is not entered or there is no Effective Date under the terms of the settlement agreement; shall not be construed or used as an admission, concession, or declaration by or against Home Depot of any fault, wrongdoing, breach, or liability; shall not be

construed or used as an admission, concession, or declaration by or against any settlement class representative or any other settlement class member that its claims lack merit or that the relief requested is inappropriate, improper, unavailable; and shall not constitute a waiver by any party of any defense or claims it may have in this litigation or in any other lawsuit.

## Stay of Proceedings

(24)   Except as necessary to effectuate this Order, this matter and any deadlines set by the Court in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the final judgment, or until further order of this Court.

## Continuance of Final Approval Hearing

(25)   The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the settlement class.  If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

## Summary of Deadlines

(26)   The settlement agreement, as preliminarily approved in this Order, shall be administered according to its terms pending the Final Approval Hearing.

Deadlines arising under the settlement agreement and this Order include but are not limited to the following:

Notice Deadline: [30 days after entry of this Order]

Objection and Opt-Out Deadline: [90 days after entry of this Order]

Claims Deadline: [150 days after entry of this Order]

Final Approval Hearing: [a date to be set by the Court no earlier than 100 days after the date of the preliminary approval order]

Application for Attorneys' Fees, Expenses and Service Awards: [30 days before the Final Approval Hearing]

Home Depot's Response to Plaintiffs' Application for Attorneys' Fees, Expenses and Service Awards: [10 days before the Final Approval Hearing]

Motion for Final Approval of the Settlement: [30 days before the Final Approval Hearing]

IT IS SO ORDERED this _____ day of _____, 2017.

_____
The Honorable Thomas W. Thrash Jr.
United States District Court Judge

**Exhibit 3 to the Settlement Agreement**

# If your financial institution issued payment cards that were subject to card brand alerts as a result of the 2014 Home Depot data breach, it could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement has been proposed to resolve lawsuits against Home Depot U.S.A., Inc. and The Home Depot, Inc. (collectively, "Home Depot") brought by financial institutions seeking to recover damages resulting from the payment card data breach announced by Home Depot in September 2014 (the "Data Breach").

- The lawsuits, referred to as *In re: The Home Depot, Inc. Customer Data Security Breach Litigation,* Case No. 1:14-md-2583-TWT (N.D. Ga.), assert that Home Depot is legally responsible for the Data Breach because it failed to maintain adequate data security practices and its failure to do so was negligent, negligent as a matter of law, and in violation of several states' unfair and deceptive trade practices statutes. Home Depot denies these allegations and that it is liable in any amount to the financial institutions.

- Under the settlement, Home Depot will pay $25,000,000 into a Settlement Fund to be distributed to Settlement Class Members who timely submit valid claims. All class members are eligible to receive a fixed payment estimated to be $2 for each payment card that was alerted-on as a result of the Data Breach without providing any documentation of their losses. Class members who provide documentation also are eligible to recover up to 60 percent of their uncompensated losses.

- Home Depot also will pay up to $2,250,000 to compensate certain independent Sponsored Entities whose legal claims against Home Depot were released by their non-affiliated sponsors in 2015 as part of the MasterCard ADC program and that certify they did not have sufficient time or information to appropriately consider the Alternative Recovery Offer from MasterCard when originally presented with it. Sponsored Entities that file a valid claim will receive up to $2 for each eligible payment card that was released.

- In addition, Home Depot has agreed to improve its data security practices to reduce the chances of a future data breach and to pay separately the costs of notice, administration and, if approved by the court, reasonable attorneys' fees and expenses. Service awards of up to $2500 to each class representative will be paid out of the Settlement Fund if approved by the court

**Your financial institution's legal rights are affected whether you act or don't act. Read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
| --- | --- |
| **SUBMIT A CLAIM FORM** | If eligible, your financial institution will receive a cash payment. This is the only way to get compensation from the settlement. |
| **EXCLUDE YOUR FINANCIAL INSTITUTION** | If you ask to be excluded, you will not receive a cash payment, but you may be able to file your own lawsuit against Home Depot for the same claims. This is the only option that leaves your financial institution the right to file its own lawsuit against Home Depot for the claims that are |

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

| | being resolved by this settlement. |
|---|---|
| **OBJECT** | Your financial institution can remain in the class and file an objection telling the Court why you do not like the settlement. If your objections are overruled, your financial institution will be bound by the settlement. |
| **DO NOTHING** | Get no compensation and forfeit your financial institution's right to ever sue Home Depot to recover for the losses it suffered from the Data Breach. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**Basic Information**.................................................................................................................. **Page 3**

1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**Who is Part of the Settlement** ...................................................................................... **Pages 3-4**

5. How do I know if I am part of the settlement?
6. Are there exceptions to being included?
7. I am still not sure if I am included.

**The Settlement Benefits**................................................................................................. **Pages 4-5**

8. What does the settlement provide?
9. How much will my financial institution's payment be?

**How To Get a Payment-Submitting a Claim Form** .................................................... **Pages 5-6**

10. How can my financial institution get a payment?
11. When would my financial institution get its payment?
12. What is my financial institution giving up to get a payment or remain in the Class?

**Excluding Your Financial Institution from the Settlement** ..................................... **Pages 6-7**

13. How can my financial institution opt out of the settlement?
14. If my financial institution doesn't exclude itself, can it sue Home Depot for the same thing later?
15. If my financial institution excludes itself, can it get money from this settlement?

**The Lawyers and Financial Institutions Representing You** .......................................... **Page 7**

16. Does my financial institution have a lawyer in the case?
17. How will the lawyers and financial institutions representing the class be paid?

**Objecting to the Settlement**.......................................................................................... **Pages 7-8**

18. How does a financial institution tell the Court that it doesn't like the settlement?
19. What's the difference between objecting and excluding/opting out?

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

**The Court's Final Approval Hearing**..................................................................................**Page 8**

    20.  When and where will the Court decide whether to approve the settlement?
    21.  Does my financial institution have to attend the hearing?

**If You Do Nothing**..........................................................................................................**Page 8**

    22.  What happens if my financial institution does nothing at all?

**Getting More Information** ..............................................................................................**Page 9**

    23.  How do I get more information?

# BASIC INFORMATION

| 1.    Why did I get this notice package? |
| --- |

Your financial institution may have issued payment cards identified in one of the alerts sent out by the card brands (Visa, MasterCard, Amex, or Discover).  In addition, your financial institution may be a Sponsored Entity entitled to compensation even if it released its legal claims against Home Depot.

The Court authorized this notice because you have a right to know about your financial institution's rights under a proposed class action before the Court decides whether to approve the settlement.  If the Court approves the settlement, and after objections and appeals are resolved, a settlement administrator appointed by the Court will make the cash payments that the settlement allows.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of Georgia, and the case is known as *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*, Case No. 14-md-2583-TWT. The financial institutions who sued are called "Plaintiffs," and the company they sued, Home Depot, is the "Defendant."

| 2.    What is this lawsuit about? |
| --- |

In September of 2014, Home Depot announced that hackers had breached its computer systems and stolen credit and debit card information from some customers who shopped at Home Depot from April 10, 2014 to September 13, 2014.  Plaintiffs claim that the Data Breach occurred because Home Depot negligently failed to provide sufficient data security, allowing the hackers to steal its customers' financial information.  Plaintiffs also claim that Home Depot violated various states' unfair and deceptive trade practices acts and that Home Depot committed negligence *per se* because its failure to provide sufficient data security violated Section 5 of the FTC Act.  The lawsuits seek to recover the losses incurred by financial institutions, such as the expense of reissuing cards, amounts paid to cover fraudulent charges, and other costs incurred responding to the Data Breach. Home Depot denies any wrongdoing. The Court has not decided whether Home Depot has any legal liability.

After this lawsuit was filed, many financial institutions received compensation for their losses through a card brand reimbursement process, such as the MasterCard ADC program and Visa's GCAR program, without releasing their legal claims against Home Depot.  In these processes, under agreements negotiated with MasterCard and Visa, Home Depot offered to pay a premium to financial institutions in exchange for a release of legal claims.  Many financial institutions accepted this offer themselves or their sponsor accepted the offer on their behalf.  In the lawsuit, Plaintiffs have challenged the validity of many of these releases and seek to have them invalidated by the Court on the ground that the releases were obtained based upon misleading and coercive communications.  Home

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

3

Depot contends the releases are all valid. The Court has not yet decided whether to invalidate any of the releases that Plaintiffs have challenged.

| 3. Why is this a class action? |
| --- |

In a class action, one or more entities called "class representatives" sue on behalf of themselves and other entities with similar claims. All of these entities together are the "class" or "class members." One court resolves the issues for all class members, except for those who exclude themselves from the settlement class.

| 4. Why is there a settlement? |
| --- |

The Court has not decided in favor of Plaintiffs or Home Depot. Instead, both sides agreed to a settlement. Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to members of the settlement class. The class representatives and the attorneys for the settlement class think the settlement is best for all class members.

# WHO IS PART OF THE SETTLEMENT

| 5. How do I know if I am part of the settlement? |
| --- |

Your financial institution is a member of the Class and affected by the settlement if:

- Your financial institution is a financial institution in the United States, including its territories and the District of Columbia;

- Your financial institution issued one or more payment cards that were identified as having been at risk as a result of the Home Depot Data Breach by (i) Visa, in an alert in the US-2014-1072-PA series; (ii) MasterCard, in an alert in the ADC3868-US-l4 series, the ADC3869-US-l4 series, or the ADC3871-US-l4 series; (iii) Discover, in an alert in the DCA-US-2014-0635 series; or (iv) American Express in an alert similar to the foregoing Visa and MasterCard alerts; and

- Your financial institution has not settled directly with Home Depot or previously released its claims against Home Depot with respect to its alerted-on accounts, for example, by signing a release while participating in a settlement offered by Visa or MasterCard. However, if your financial institution is an independent Sponsored Entity, its claims against Home Depot were released by its sponsor in connection with MasterCard's ADC program, and it does not share a corporate affiliation with its sponsor, your financial institution is still a class member and may be entitled to benefits if you certify that your Financial Institution did not have sufficient time or information to appropriately consider the Alternative Recovery Offer from MasterCard when originally presented with it.

| 6. Are there exceptions to being included? |
| --- |

If your financial institution excludes itself from the settlement, it is no longer part of the settlement class and will no longer be eligible to receive any of the settlement benefits. This process of excluding your financial institution is also referred to as "opting out" of the settlement.

| 7. I am still not sure if I am included. |
| --- |

If you are still not sure whether your financial institution is included, you can ask for free help. You can call 1-XXX-XXX-XXXX or visit HomeDepotBankSettlement.com for more information. Or you can fill out and return one of the claim forms described in Question 10, to see if you qualify.

# THE SETTLEMENT BENEFITS

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

Home Depot will pay $25,000,000 into a Settlement Fund to compensate class members who have not released all of their legal claims against Home Depot.  In addition, Home Depot will pay up to $2,250,000 to Sponsored Entities whose claims against Home Depot were released by their sponsor in connection with MasterCard's ADC program so long as the Sponsored Entities are independent, do not share a corporate affiliation with their sponsor, certify they did not have sufficient time or information to appropriately consider the Alternative Recovery Offer from MasterCard when originally presented with it, and submit valid claims.

Separate and apart from these amounts, Home Depot has agreed to take certain steps to improve its data security practices in the future; pay the cost of notifying the class and administering the settlement; and, subject to the Court's approval, to pay the reasonable fees and expenses of the lawyers who represent the class.  Service awards of up to $2500 each to the class representatives will be paid from the Settlement Fund if the Court approves.

If your financial institution is eligible to participate in the settlement and does not "opt out" of this settlement, it may be eligible for benefits under the settlement.  If your financial institution issued alerted-on payment cards that are not the subject of a release, it may be eligible for a payment from the $25 million Settlement Fund.  If your financial institution is a Sponsored Entity whose claims were released by its sponsor in connection with MasterCard's ADC program, it may be eligible to receive a payment from Home Depot, which will pay up to an additional $2,250,000 for this purpose, so long as it is independent, does not share a corporate affiliation with its sponsor, and certifies that it did not have sufficient time or information to appropriately consider the Alternative Recovery Offer when originally presented with it.  These payments are described further below:

**A.       Payments from the $25 Million Settlement Fund**

**(1) Fixed Payment Awards.**  All class members who file a valid claim are eligible to get a cash payment from the Settlement Fund estimated to be $2.00 per each alerted-on payment card that is not subject to a release in favor of Home Depot.  This cash payment, which is called a Fixed Payment Award, is in addition to any compensation that may already have been paid under Visa's GCAR program, MasterCard's ADC programs, or any other card brand reimbursement program.  The estimated payment may be subject to a *pro rata* reduction if there is insufficient money in the Settlement Fund to pay all valid claims, although this possibility is not considered likely.  The amount actually paid MAY increase if money remains in the Settlement Fund after payment of all Fixed Payment Awards, all Documented Damages Awards, and service awards to the class representatives approved by the Court. You are not required to submit any documentation or evidence of your financial institution's losses to receive a Fixed Payment Award.

**(2) Documented Damages Awards.**  In addition to receiving a Fixed Payment Award, all class members that file a valid claim and provide documentation are eligible to get a supplemental payment of up to 60 percent of their provable, unreimbursed losses, including the costs of reissuing compromised or alerted-on cards, paying fraudulent charges made on compromised cards, and any other expenses that can be tied to the data breach.  (Not all alerted-on cards were compromised.  A "compromised card" is a payment card that was used to make purchases at Home Depot during the period from April 10, 2014 to September 13, 2014 on a self-checkout kiosk where the malware that gave rise to the data breach was present.  Only fraud losses incurred on compromised cards were caused by the data breach. Please contact the Settlement Administrator if you have any questions regarding whether any cards issued by your financial institution were compromised.)  Subtracted from class members' provable losses will be any compensation received under Visa's GCAR program, MasterCard's ADC programs, or any other card brand reimbursement program as well as the amount of the Fixed Payment Award paid under this settlement.  These supplemental payments, which are called Documented Damages Awards, will be funded with the money remaining in the Settlement Fund after payment of all Fixed Payment Awards and all services awards to the class representatives approved by the Court.  The amount to be paid will be subject to a pro rata reduction if there is not enough money remaining in the Settlement Fund to pay all Documented Damages Awards in full.

The proof you will need to collect and submit to receive a Documented Damages Award includes:

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

5

1. The expenses your financial institution incurred between September 1, 2014 and December 31, 2014 for reimbursement of fraud on its eligible accounts (but only to the extent your financial institution did not receive reimbursement for those expenses, for example, through card-not-present fraud chargebacks). The fraud losses that can be recovered in this settlement will also be reduced by any amounts your financial institution already received or will receive from payment card brand reimbursement programs.

2. Your financial institution's actual costs of reissuing payment cards for eligible accounts between September 1, 2014 and December 31, 2014 to the extent it has not already been reimbursed. Your financial institution's card reissuance costs that can be recovered in this settlement will be reduced by any amounts your financial institution received or will receive from a card brand reimbursement program.

3. The amount of any other costs you contend your financial institution incurred on its eligible accounts in responding to the Home Depot Data Breach between September 1, 2014 and December 31, 2014.

4. The amounts of any payments your financial institution has received or will receive from a card reimbursement program related to the Home Depot Data Breach.

**B.**     **Payments to Sponsored Entities**

Sponsored Entities are entities that received payments from Home Depot in connection with an Alternative Recovery Offer from MasterCard under MasterCard's ADC program and whose claims were released by a sponsoring entity that does not share a corporate affiliation with the Sponsored Entity whose claims were released. An independent Sponsored Entity that submits a valid claim is eligible to receive to a payment estimated to be $2.00 for each alerted-on payment card that was so released by its sponsor. If the total amount of valid claims submitted by Sponsored Entities exceeds $2,250,000, each valid claim shall be reduced on a pro rata basis so that the total of all claims is equal to $2,250,000.

## HOW TO GET A PAYMENT-SUBMITTING A CLAIM FORM

**10.  How can my financial institution get payment?**

To qualify for a payment, you must validly complete and submit a claim form. There are two types of claim forms in this settlement: (1) a Settlement Fund Claim Form and (2) Sponsored Entity Claim Form. Both are included with this Notice. You may also get these claim forms on the internet at HomeDepotBankSettlement.com.

All class members that wish to obtain compensation for payment cards that are not subject to a release given to Home Depot must complete and submit the Settlement Fund Claim Form. All class members with unreleased payment cards should properly complete and timely submit Part I of the Settlement Fund Claim Form, which will make your financial institution eligible to receive a Fixed Payment Award without providing proof of its losses. Class members who wish to be eligible to receive a Documented Damages Award must properly complete and timely submit Part I and Part II of the Settlement Fund Claim Form.

If your financial institution is a Sponsored Entity, you must properly complete and timely submit a Sponsored Entity Claim Form to obtain a payment from Home Depot.

To properly complete and timely submit a claim form, you should read the instructions carefully, include all information and documents required by the claim form, sign it, and either submit the signed claim form electronically through HomeDepotBankSettlement.com by _____, 2017 or mail it to the Settlement Administrator postmarked no later than _____, 2017.

Upon receipt of your claim, the Settlement Administrator will audit your claim to determine the amount of your financial institution's payment.

**11.  When would my financial institution get its payment?**

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

The Court will hold a hearing on _____ to decide whether to approve the settlement. If the Court approves the settlement, there may be appeals, which could take more than a year to resolve. Payments to class members will be made after the settlement is finally approved and any appeals or other required proceedings have been completed. You may visit HomeDepotBankSettlement.com for updates on the progress of the settlement. Please be patient.

| **12. What is my financial institution giving up to get a payment or remain in the Class?** |
| --- |

Unless you exclude your financial institution from the settlement, your financial institution cannot sue Home Depot or be part of any other lawsuit against Home Depot about the issues this settlement resolves. Unless your financial institution excludes itself, all of the decisions by the Court will bind it. The specific claims your financial institution is giving up against Home Depot are described in the settlement agreement. The terms of the release are described in Section IX of the settlement agreement. Read it carefully. The settlement agreement is available at HomeDepotBankSettlement.com.

If you have any questions, you can talk to the law firms listed in Question 16 for free, or you can, of course, talk to your own lawyer if you have questions about what this means.

If your financial institution wants to keep its rights to sue or continue to sue Home Depot based on claims this settlement resolves, your financial institution must take steps to exclude itself from the settlement class (*see* Questions 13-15).

# EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT

| **13. How can my financial institution opt out of the settlement?** |
| --- |

To exclude your financial institution from the settlement, or "opt out," you must send a letter by U.S. Mail that includes:

- The name of this proceeding (*In re: The Home Depot, Inc. Customer Data Security Breach Litigation*);
- Your financial institution's full name, address, and phone number;
- The words "Request for Exclusion" at the top of the document or a statement in the body of the letter requesting exclusion from the Class; and
- A signature of a person authorized to make such decisions for your financial institution

Financial institutions that seek exclusion from the settlement through a letter are also asked to provide:

- The number of eligible accounts that the financial institution issued.

You must mail the completed Request for Exclusion form or above-described letter, postmarked no later than ____, 2017, to:

Home Depot Data Breach Settlement
c/o _____
P.O. Box _____
_____

If you ask to be excluded, your financial institution will not get any payment as part of this settlement, and you cannot object to this settlement. You will not be legally bound by anything that happens in these lawsuits. Your financial institution may be able to sue (or continue to sue) Home Depot in the future. If you object to the settlement and seek to exclude your institution, you will be deemed to have excluded your financial institution.

| **14. If my financial institution doesn't exclude itself, can it sue Home Depot for the same thing later?** |
| --- |

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

No. Unless you exclude your financial institution from the settlement, your financial institution gives up any right to sue Home Depot for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that case immediately. Your financial institution must exclude yourself from this Class to continue its own lawsuit. Remember, the exclusion deadline is _____, 2017.

**15. If my financial institution excludes itself, can it get money from this settlement?**

No. If you exclude your financial institution, do not send in a claim form asking for a payment.

## THE LAWYERS AND FINANCIAL INSTITUTIONS REPRESENTING YOU

**16. Does my financial institution have a lawyer in the case?**

Yes. The Court appointed to represent your financial institution and other members of the settlement class the following law firms: Doffermyre, Shields, Canfield & Knowles, LLC in Atlanta, Georgia; Carlson, Lynch, Sweet, & Kilpela, LLP, in Pittsburgh, Pennsylvania; Scott+Scott, Attorneys at Law, LLP, in New York, New York; and Hausfeld, LLC-DC in Washington, D.C. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**17. How will the lawyers and financial institutions be paid?**

Home Depot has agreed to pay reasonable fees to the lawyers who have prosecuted the lawsuits and to reimburse them for their expenses in amounts to be determined by the Court, subject to Home Depot's right to appeal those awards. You will not be asked to pay any of the lawyers' fees or expenses. The amounts paid by Home Depot will not affect the benefits you are eligible for under the settlement.

In early 2015, the Court appointed a legal team to represent the Plaintiffs comprised of 17 law firms from around the country. None of the lawyers has yet received any payment for their time or expenses. During the course of the lawsuit, the lawyers have reported to the Court on a quarterly basis the number of hours they have expended on the case, the value of their time calculated at certain hourly rates, and the amount of their expenses. Through December 31, 2016, the lawyers reported they collectively spent time having a value exceeding $11 million and had expenses of more than $700,000. The lawyers intend to ask the Court to approve an award of up to $18 million in attorneys' fees to compensate them for their time and the financial risk that they undertook when they agreed to represent the Plaintiffs on a contingent basis, which means that they would receive a fee only if the lawsuit was successful. In addition, the lawyers intend to ask the Court to reimburse them for all of the expenses they have incurred.

The settlement class is represented by 50 financial institutions from 44 states. In addition to the benefits they will receive as members of the settlement class and subject to the approval of the Court, Home Depot has agreed to pay service awards of up to $2,500 to each class representative for the efforts that they have expended on behalf of the settlement class. The amount of the service awards approved by the Court will be paid from the Settlement Fund.

The Court will determine whether to approve the amount of fees and expenses requested by Settlement Class Counsel and the proposed service awards to the class representatives at the Final Approval Hearing scheduled for _____, 2017. Settlement Class Counsel will file an application for fees, expenses, and service awards 30 days before the fairness hearing. The application will be available on the settlement website (HomeDepotBankSettlement.com) or you can request a copy by contacting the Settlement Administrator (*see* Question 23).

## OBJECTING TO THE SETTLEMENT

**18. How does my financial institution tell the Court that it does not like the settlement?**

If your financial institution is a settlement class member, you can object to the settlement if you do not think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. The Court will

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

8

consider your views. If you object to the settlement and seek to exclude your institution, your financial institution will be deemed to have excluded itself.

To object, you must do so in writing and serve the objection on the Court, Settlement Class Counsel and the lawyers for Home Depot at the addresses set forth below: Your objection shall not exceed -twenty five (25) pages and must include:

- The name of this proceeding (*In re: The Home Depot, Inc. Customer Data Security Breach Litigation*);
- Your financial institution's full name, address, and phone number;
- A written statement of your objections, as well as the specific reason for each objection, including any legal or factual support you wish to bring to the Court's attention;
- Any evidence or other information you wish to introduce in support of your objections;
- A statement of whether you or your counsel intends to appear and argue at the Final Approval Hearing (*see* Question 20); and
- Evidence or other information showing your financial institution is a member of the Settlement Class.
- All other information specified in the Preliminary Approval Order (available on the settlement website, HomeDepotBankSettlement.com).

If you hire a lawyer to represent you in preparing a written objection or appearing at the Final Approval Hearing, your counsel must provide additional information as specified in the Preliminary Approval Order.

Mail the Objection to these three different places, postmarked no later than ___, 2017:

| Court | Settlement Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court<br>USDC, Northern District of Georgia<br>Richard B. Russell Federal Building<br>2211 United States Courthouse<br>75 Ted Turner Drive, SW<br>Atlanta, GA 30303-3309 | Kenneth S. Canfield<br>DOFFERMYRE SHIELDS<br>CANFIELD & KNOWLES, LLC<br>1355 Peachtree St., NE, Suite 1900<br>Atlanta, Georgia 30309<br><br>Gary F. Lynch<br>CARLSON LYNCH SWEET<br>& KILPELA, LLP<br>PNC Park, Suite 210<br>115 Federal Street<br>Pittsburgh, Pennsylvania 15212<br><br>Joseph P. Guglielmo<br>SCOTT+SCOTT, ATTORNEYS<br>AT LAW, LLP<br>The Helmsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br><br>James J. Pizzirusso<br>HAUSFELD, LLP – DC<br>1700 K. Street, NW, Suite 650<br>Washington, DC 20006 | Cari K. Dawson<br>Kristine McAlister Brown<br>ALSTON & BIRD LLP<br>1280 West Peachtree Street, NE<br>Atlanta, Georgia 30309-3424 |

## 19. What is the difference between objecting and excluding/opting out?

Objecting is simply telling the Court that you don't like something about the settlement. You can object to the benefits provided by the settlement or other terms of the settlement only if your financial institution stays in the settlement class. Excluding your financial institution or "opting out" is telling the Court that you don't want to be included in the settlement. If your financial institution excludes itself, you have no basis to object to the settlement and related releases because the settlement no longer affects you.

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

# THE COURT'S FINAL APPROVAL HEARING

### 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at _____ 2017, in Courtroom 2108 before Judge Thomas W. Thrash, Jr. of the United States District Court for the Northern District of Georgia, located at 2211 Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309. This hearing date and time may be moved. Please refer to the settlement website (HomeDepotBankSettlement.com) for notice of any changes.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate; how much Settlement Class Counsel will receive as fees and expenses; and whether to approve service awards to the class representatives. If there are objections, the Court will consider them. The Court will listen to people at the hearing who file in advance a timely notice of their intention to appear (*see* Question 18). At or after the Final Approval Hearing, the Court will decide whether to approve the settlement. There is no deadline by which the Court must make its decision.

### 21. Does my financial institution have to attend the hearing?

No. Settlement Class Counsel will answer questions the Court may have. You are welcome, however, to come at your own expense. If you submit a written objection, you do not have to come to the Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

# IF YOU DO NOTHING

### 22. What happens if my financial institution does nothing at all?

If your financial institution is a settlement class member and does nothing, it will remain a part of the settlement class but will not get any payments from the settlement. And, unless your financial institution excludes itself, it will not be able to sue Home Depot about the claims being resolved through this settlement ever again.

# GETTING MORE INFORMATION

### 23. How do I get more information?

This notice summarizes the settlement. More details are in the settlement agreement itself. You can get a copy of the settlement agreement at HomeDepotBankSettlement.com or from the Settlement Administrator by calling toll-free XXX-XXX-XXXX or writing to Home Depot Data Breach Settlement, c/o _____. The status of the settlement, any appeals, any claims made, and the date of payments will be posted on the settlement website.

***Please do not contact the Court with questions about the settlement.***

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit HomeDepotBankSettlement.com**

10

**Exhibit 4 to the Settlement Agreement**

# SPONSORED ENTITIES CLAIM FORM

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN _____, 2017 at
HomeDepotBankSettlement.com
or
FILE BY MAIL POSTMARKED BY _____, 2017 at
Home Depot Data Breach Settlement, c/o_____, Settlement Administrator,
_____

Under the settlement agreement, Home Depot will pay up to a total of $2,250,000 in additional compensation to certain Sponsored Entities whose legal claims against Home Depot were released by their sponsor in connection with the acceptance of an Alternative Recovery Offer under the MasterCard ADC program and who certify that they did not have sufficient time or information to appropriately consider the Alternative Recovery Offer when they were originally presented with it. This compensation offered to these Sponsored Entities is separate and apart from the $25 million Settlement Fund that will be used to compensate financial institutions that have not released their legal claims against Home Depot.

If your financial institution is an independent Sponsored Entity that does not share a corporate affiliation with its sponsor and whose claims were released by its sponsor in connection with the MasterCard ADC program, your financial institution is eligible to receive what is anticipated to be $2.00 for each payment card that was subject to the release if you certify that your Sponsored Entity did not have sufficient time or information to appropriately consider the Alternative Recovery Offer from MasterCard when originally presented with it. To be eligible to receive this amount, you must complete, sign, and submit this form. The actual amount your financial institution receives may be less than $2.00 per card if the $2,250,000 cap would otherwise be exceeded.

If your financial institution is not a Sponsored Entity and has not released all of its legal claims against Home Depot, it may be eligible for compensation from the $25 million Settlement Fund. To receive such compensation, you will need to complete and submit a Settlement Fund Claim Form. Further information is available at HomeDepotBankSettlement.com.

**Use this form if your financial institution is an independent Sponsored Entity (i.e., a Sponsored Entity that does not share a corporate affiliation with its sponsor) that issued payment cards compromised in the Data Breach and whose claims against Home Depot were released by its sponsor in connection with the MasterCard ADC Program and you want to:**

- Receive an anticipated payment of $2.00 for each card that was subject to a release provided by your financial institution's sponsor to Home Depot in connection with MasterCard's ADC program.
- Provide information regarding the number of payment cards that your financial institution issued and that were released

**Information to Gather to Complete this Form**

1) The number of payment card accounts your financial institution issued that were subject to an alert from MasterCard related to the Data Breach
2) The number of alerted-on payment card accounts your financial institution issued that are subject to a release provided to Home Depot by its sponsor in connection with MasterCard's ADC program

## SETTLEMENT CLASS MEMBER INFORMATION

**Name of Financial Institution / Settlement Class Member**

| | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | | | | | | |

*Home Depot Data Security Breach Settlement*

## RED ENTITIES SETTLEMENT AMOUNT CLAIM FORM

**Name of Person Filling Out This Form**

**Your Title in the Financial Institution**

**Mailing Address**

**City**   **State**   **Zip Code**

**Daytime Phone**

**E-Mail Address (if provided, we will communicate primarily by email about your claim)**

## CERTIFICATION OF PAYMENT CARDS:  Please complete all questions below:

1.  Is your financial institution the issuer of one or more payment cards that were identified in any of the alerts below? (Check All Applicable Boxes Below.)

    If you check "YES," state how many payment card accounts your financial institution issued that were identified in the referenced alert(s).  For purposes of completing this form, please note that a payment card number can have only one corresponding payment card account, even if your financial institution issued multiple payment cards bearing the card number.

    | | |
    |---|---|
    | MasterCard alert(s) in the ADC3868-US-14 series, the ADC3869-US-14 series, or the ADC3871-US-14 series | ☐ YES ☐ NO |
    | Number of Issued Accounts Identified in These Alerts: | |

**If you are unable to answer YES to Question 1 then your financial institution is not eligible for compensation as a Sponsored Entity.  However, your financial institution may be entitled to compensation from the Settlement Fund if you submit a Settlement Fund Claim Form.**

**If you answered "YES" to any part of question 1, please proceed.**

2.  Is your financial institution an independent sponsored issuer of its sponsor that does not share a corporate affiliation with the sponsor?  If so, please check "YES" in the box below.  If your financial institution is not an independent sponsored issuer or shares a corporate affiliation with its sponsor, please check "NO" in the box below.

Must be filed online or postmarked by \_\_\_\_\_, 2017

Is your financial institution an independent sponsored issuer of its sponsor that does not share a corporate affiliation with the sponsor?  ☐ YES  ☐ NO

**If you answer NO to Question 2 then your financial institution is not eligible for compensation as a Sponsored Entity.  However, your financial institution may be entitled to compensation from the Settlement Fund if it issued any compromised payment cards that are not subject to a release and you submit a Settlement Fund Claim Form.**

3.  Did your financial institution receive payment in connection with an Alternative Recovery Offer under MasterCard's ADC program and under which its sponsor released your financial institution's legal claims against Home Depot relating to any of the payment cards identified in response to Question 1?

Did your financial institution receive payment in connection with an Alternative Recovery Offer under MasterCard's ADC program?  ☐ YES  ☐ NO

**If your answer to Question 3 is "NO," your financial institution is not eligible to receive compensation as a Sponsored Entity.  However, your financial institution may be entitled to compensation from the Settlement Fund if it issued any compromised payment cards that are not subject to a release and you submit a Settlement Fund Claim Form.**

## SIGN CLAIM FORM

By submitting this Sponsored Entity Claim Form, the above-named Settlement Class Member certifies that the information provided is true and correct.  The above-named Settlement Class Member further certifies that, while it accepted money from MasterCard in connection with the Alternative Recovery Offer under MasterCard's ADC Program, it did not have sufficient time or information to appropriately consider the Alternative Recovery Offer when it was originally presented with it.  The above-named Settlement Class Member understands that this claim form may be subject to audit, verification, and Court review.

_____          _____
Signature of Duly Authorized Representative of Settlement Class Member          Date

_____          _____
Print Name          Title

## CLAIM SUBMISSION REMINDERS

- You may submit your Claim Form through the website at HomeDepotBankSettlement.com.

- Please keep a copy of this Claim Form if submitting by mail.

*Home Depot Data Security Breach Settlement*

# _____RED ENTITIES SETTLEMENT AMOUNT CLAIM FORM

- Claims must be completed and submited through the website by ___, **2017**, or mailed so they are postmarked, by _____, **2017**.

- If filing a paper form, return the form to:

Mail:
Home Depot Data Breach Settlement
ADDRESS

Courier:
Home Depot Data Breach Settlement
ADDRESS