# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

_____
                                        )
In re: The Home Depot, Inc., Customer   )   Case No.: 1:14-md-02583-TWT
Data Security Breach Litigation         )
                                        )
This document applies to:               )
FINANCIAL INSTITUTION CASES             )
_____ )


## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Class Counsel, who negotiated the best result for financial institutions in a data breach class action to date, seek their expenses, service awards for the class representatives, and an $18 million fee commensurate with their success. Home Depot does not oppose the expenses and service awards, but does oppose the fee, arguing Class Counsel are entitled to only $5,631,804 – 48 percent of their lodestar and 25 percent less than the award in the consumer track even though the consumer lawyers (who achieved success in their own right) spent less than half the time, incurred 24 percent of the expenses, took no formal discovery, did not have to contend with the card brand recovery processes, and achieved a smaller recovery. Home Depot's argument should be seen for what it is – an attempt to throw out as low a figure as possible in the hope the Court will split the proverbial baby. The argument ignores controlling precedent, seeks to redo the law on attorneys' fees in the Eleventh Circuit, rests on unsupported factual assertions, and relies on nonsensical claims. Plaintiffs' motion thus should be granted and the requested fee, expense reimbursement and service awards approved.

## ARGUMENT

**I. The Requested Fee is Well-Justified under the Percentage Approach**

### A. Home Depot's Wrongly Asserts this is Not a Common Fund Case

The Eleventh Circuit mandateS use of the percentage approach in common

fund cases and reserves the lodestar method for statutory fee-shifting cases. *See, e.g., Camden I Condo. Assoc. v. Dunkle,* 946 F. 2d 768, 74 (11th Cir. 1991); *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1362-63 (S.D. Fla. 2011). Courts in this circuit thus routinely use the percentage approach when benefits are recovered for a class, regardless of whether the fee is paid separately and even if no common fund is created. *See, e.g., Saccoccio v. J.P. Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 694-95 (S.D. Fla. 2014) ("The 'common fund' analysis is appropriate even where the fee award will be paid separately"); *Poertner v. Gillette Co.,* 618 Fed. Appx. 624 (11th Cir. 2015) (percentage method used when benefits were paid through a claims process, not a fund); *Marty v. Anheuser-Busch Companies, LLC,* 2015 WL 6391185 at *2 (S.D. Fla. Oct. 22, 2015) (same).

Home Depot argues this settlement is different because there is no agreement regarding the amount of fee it will pay. According to Home Depot, when the parties agree the defendant will pay fees separately but cannot agree on the amount, the Court must use a lodestar analysis. Nothing in logic or law supports this argument. The Eleventh Circuit adopted the percentage approach because it more closely aligns the interests of client and attorney; more faithfully adheres to market practice; is more efficient; and eliminates incentive for class

counsel to drag out the litigation to increase their fees. *Camden I,* 946 F. 2d at 772-74; *In re Checking,* 830 F. Supp. 2d at 1362-63. These reasons for favoring the percentage over the lodestar approach do not depend on both parties *agreeing* upon the appropriate percentage. If the parties don't agree, the Court decides.[1]

Home Depot does not offer any cogent rationale for ignoring *Camden I* when the parties do not agree. Although Home Depot vaguely suggests using a lodestar approach would protect the class against collusion or abuse when fees are paid separately (Doc. 339 at 14), that suggestion is nonsensical. Collusion and abuse occur when parties enter into agreements that conflict with the best interest of the class, not when they leave the amount of the fee entirely to the Court. On the other hand, adopting Home Depot's approach would create real mischief by giving each party the unilateral ability to require a lodestar-based fee by refusing to agree, which would incentivize behavior that could adversely affect the class such as negotiating fees simultaneously with the merits.

Home Depot cites only one case for its proposal, *DeLoach v. Philip Morris Cos.,* 2003 WL 23094907 (M.D.N.C. Dec. 19, 2003), an outlier best explained by the absence of a clear legal standard (the Fourth Circuit gives no guidance on when

---

[1] It is the rare case in which the parties leave the amount of the fee entirely to a court. Customarily, corporate defendants condition settlement upon reaching an agreement on the amount of fees that will be sought – or at least a cap on that amount – because they want to know the full amount of their potential liability.

to use a lodestar or percentage approach) and a court's struggle to set a fee in a mega-fund case with over $1 billion in benefits.  Its holding that no common fund exists when fees are paid separately, requiring a lodestar analysis, conflicts with Eleventh Circuit law and has not even been followed by courts in the Fourth Circuit, which have awarded percentage-based fees when paid separately and the amount is left up to the court.  *See, e.g., Land v. Sprint Communications Company, LP,* 2013 WL 12155046 at *1-3 (D.S.C. Aug. 6, 2013).

While not required to do so, this Court has discretion to use a lodestar analysis here (as it did in the consumer track) because the underlying claims involve fee-shifting statutes.  *See Dikeman v. Progressive Exp. Ins. Co.,* 312 Fed Appx. 168, 172 (11th Cir. 2008).  If the Court uses a lodestar analysis, *DeLoach* hardly helps Home Depot.  *DeLoach* applied a 4.5 multiplier, which if applied to the lodestar Home Depot concedes is proper would result in a fee of $25,343,118 (or more than $52 million using the all of Class Counsel's lodestar).

## B.    The Court Can Consider the ARO Payments in Awarding Fees

Home Depot argues that the Court cannot consider the payments it made through the card brand recovery processes for three reasons.  None has merit.

*First,* Home Depot asserts the Court can only consider payments that benefit the settlement class.  Yet, that is the case here.  Sponsored entities, by definition,

received ARO payments, and all class members received a share of the $120 million Home Depot paid without obtaining releases, a substantial portion of which likely would not have been paid but for this litigation.  (Doc. 336 at 11)  That the amount of these benefits cannot be calculated precisely does not mean the Court cannot consider them.  Under *Camden I*, the Court can consider all benefits, even those that cannot be precisely measured.

Further, while typically a percentage is applied to the benefits received by settlement class members, *Camden I* does not so require.  To the contrary, under *Camden I,* a court may award a percentage-based fee whenever benefits flow to an "ascertainable class" and the court's jurisdiction over the subject matter and the defendant makes possible an award that spreads the litigation costs proportionately. 946 F. 2d at 771.  Such an ascertainable class exists here, namely the banks that received ARO payments; the Court has jurisdiction over the subject matter and Home Depot; and requiring Home Depot to pay fees based on the released claims will properly spread the costs. Similarly, the catalyst theory applies, regardless of whether the recipients are current class members, so long as the ARO payments resulted at least in part from Class Counsel's efforts. (Doc. 336 at 13-14)

Finally, this settlement presents an extraordinary situation in which outside of the Court's jurisdiction a defendant engaged in a wholesale effort to settle the

case through mass communications with absent class members, a situation that at least in the data breach context has only occurred four times.  (Doc. 336 at 10) Under *Camden I*¸ this Court has the equitable power to take these extraordinary circumstances into account and consider the relevant public policy concerns if Home Depot were able to avoid paying fees on the ARO payments it made to class members.  (*Id.* at 12-13; Doc. 336-12 at 11-12)

***Second,*** Home Depot's assertion this litigation played no role in its decision to use the card brand recovery processes to solicit releases – and that "Plaintiffs seek a bounty based on the fact that they happened to file a lawsuit around the time this process was taking place" (Doc. 339 at 8) – is misguided.  This litigation began nearly a year before Home Depot started negotiating with the card brands; the card brand recovery processes do ***not*** require financial institutions to release their claims to receive compensation; Home Depot initially balked at participating but changed its mind when the card brands agreed to allow it to solicit releases from the claims in this litigation; and the solicitations and releases contain detailed descriptions of this litigation and the claims being asserted.  (Doc. 336 at 10-11) Home Depot cannot ignore these facts that contradict its position.

Further, Home Depot's arguments that the impetus for it to seek releases was the data breach, not this litigation, and that the big banks released their claims

because they didn't want to be represented by Class Counsel don't hold up.  But for this litigation and the claims being asserted by Class Counsel, Home Depot would have had no reason to be the first merchant in history to pay 100 percent of the card brands' assessments as part of a settlement involving releases (*Id.* at 10). And, but for its desire to pare down the size of the putative class in this litigation, Home Depot would have had no reason to pay – and financial institutions (whether large or small) would have had no basis to demand – ARO premiums.[2]

**Third,** Home Depot's claim that Class Counsel fought against the ARO payments is wrong.  Class Counsel fought against misinformation and a coercive process that, for example, gave class members a few days to review detailed papers over the Thanksgiving holiday. When asked, Class Counsel advised financial institutions that they believed the litigation would result in a better recovery (advice that turned out to be correct).  However, Class Counsel never sought to prevent financial institutions from receiving compensation for their losses, but rather to prevent misleading and coercive communications, ensure an orderly process, and provide class members with the information necessary to make an

---

[2] Contrary to Home Depot's suggestion, ARO payments were not limited to large banks but were also paid to smaller financial institutions.  Moreover, it is unclear what significance Home Depot attributes to Mr. Guglielmo's statement that it did not negotiate with "our clients."  While the named plaintiffs were smaller financial institutions, there is no question the large banks were putative class members who took advantage of this litigation to extract ARO premiums from Home Depot.

informed decision.  Regardless, the financial institutions that released their claims benefitted directly from this litigation and Class Counsel's services.  Home Depot should not be able to ignore these benefits, particularly when it acknowledged them in the recitals to the settlement agreement.  (Doc. 327-3 at 2)

### C.     The Amount of the Fee Awarded is Part of the Class Benefit

This Court (in the consumer track), other courts around the country, and the Manual on Complex Litigation *all* treat the amount of a fee as part of the class benefit, even if the fee is paid separately by the defendant.  (Doc. 336 at 9)  The rationale for this nearly universal approach has been explained as follows:

> While it may seem curious to include separately-paid attorney's fees as a "benefit to the class" when the class has no entitlement to them, the reason is that if the fees were not separately paid, then they would be paid out of the amounts otherwise available to the class, thereby diminishing the class recovery. Therefore, even if indirectly, attorney's fees paid directly by the defendant are a benefit to class.

*Zink v. First Niagara Bank, N.A.,* 2016 WL 7473278 at *8 (W.D. N.Y. Dec. 29, 2016) (internal citations omitted).  Accordingly, in calculating the class benefit here, Class Counsel included the requested fee.  If the Court decides to award a different fee, the amount the Court selects obviously should be included instead.

Home Depot evidently agrees an appropriate fee should be included in the class benefit, but contends the only amount appropriate for inclusion is the fee that

it thinks should be awarded.[3]  Thus, Home Depot includes the $5,631,804 lodestar-based fee it believes is proper, making the class total benefit $33,592,062 for purposes of its percentage analysis.  (Doc. 339 at 12-15)  This circular approach makes no sense for at least two reasons.  First, for purposes of determining the benefit to the class, whether Home Depot agrees to the fee is irrelevant.  The class benefit derives from the fee actually awarded by the Court, which otherwise would diminish the class recovery.  Second, under *Camden I,* the fee is based on a percentage of the total class benefit without regard to Class Counsel's lodestar. Home Depot's approach gets things backwards, first setting a lodestar-based fee and then using the percentage method to determine if the lodestar-based fee falls within the *Camden I* guidelines.

In short, the fee awarded by this Court should be included in the class benefit along with Class Counsel's expenses, administrative costs, the $27.25 million fund, and $14.5 in ARO payments.  The requested fee is 29.7 percent of

---

[3] Home Depot cites three "constructive common fund" cases for the proposition that the reason fees paid separately are added to the class benefit is to "serve as a cross-check where there is an agreed upon fees amount."  (Doc. 339 at 14-15). However, that is not the law and none of the cases so hold.  Two of the cases simply note that recognizing a "constructive common fund" – i.e., the total of all benefits to the class, including fees paid separately by the defendant – is useful to prevent collusive conduct in negotiating the amount of the separate fee.  The other, *In re Am. Equity Annuity*, simply applied a percentage to the constructive common fund as a cross-check on a lodestar-based fee.

that benefit.  (Doc. 336 at 15)  If the Court would like to do the calculations with other percentages and a different class benefit, a simple mathematical formula is useful.  The formula is set out in Exhibit A to this brief.

### D.   The Requested Fee is Supported by the *Camden I* Factors

In arguing the *Camden I* factors do not support the requested fee, Home Depot contends the fee represents 53 percent of the class benefit.  This contention is based on its flawed methodology described above and simply wrong.  Other than asserting 53 percent is too high (an assertion with which Plaintiffs agree), Home Depot never states what percentage it believes is appropriate here.  Yet, the *Camden I* factors (including particularly the risk, the extent of the effort, the result, awards in other cases, and the contingent nature of the fee) easily support one-third or more of the class benefit.  Because of space limitations, Class Counsel will not address each argument to the contrary, but want to make the following points:

(1)   The evidence before the Court is that, in practice, awards in the Eleventh Circuit after *Camden I* average around one-third of the benefit, (Doc. 336 at 7-8), which is confirmed by the most recent study showing the median award is 33 percent.  (Doc. 336-12 at 13 n. 2)  There is no good reason why Class Counsel should be awarded less than the usual percentage.  To the contrary, application of the *Camden I* factors support a higher percentage here.  (Doc. 336 at 16-22).

Among other reasons, most common fund cases – about 75 percent – do not obtain any injunctive or non-monetary relief. (Doc. 336-12 at ¶ 26) Here, Class Counsel obtained not only stronger security measures, but also extra benefits such as enhanced payments under the card brand recovery processes.

(2)   Home Depot contends that much of Class Counsel's work was "premature" because merits discovery never occurred and "should never have been allowed" because Plaintiffs lacked standing to sue and Home Depot owed them no legal duty. Yet, Plaintiffs *prevailed* on the motion to dismiss, justifying the time that they spent, and the work preparing for discovery was both necessary (Class Counsel had no assurance the case would settle if Home Depot lost its motion to dismiss) and likely a substantial factor in bringing Home Depot to the table. Similarly, Class Counsel's discovery regarding the card brand assessments and the ARO offers should not be disregarded as "directly contrary to the interests of the banks they purported to represent." The discovery was authorized by the Court, revealed information of use to class members in deciding whether to accept the offers, and provided the basis for obtaining $27.25 million in relief for the class.

(3)   Home Depot's suggestion that if given access to Class Counsel's billing records it could identify other unnecessary work should be rejected out of hand. Home Depot never even asked for Class Counsel's billing records, a tactical

decision likely influenced by its knowledge that Class Counsel in return would ask for defense counsel's billing records.   Those records undoubtedly would have shown Home Depot paid its own lawyers far *more* than the fee requested here.  *See generally* Home Depot 2016 Form 10-k at 19 (disclosing that through March 24, 2016 the company had spent $261 million for legal and professional fees, investigation costs, and providing identity protection services and increased call center   staffing   as   a   result   of   the   data   breach)   (available   at http://ir.homedepot.com/financial-reports/sec-filings).

(4)   Home Depot curiously claims the settlement was a poor one because of an allegedly low participation rate, but supports approval of the settlement as fair, reasonable and adequate.  This claim should be rejected on its face.  *See, e.g. Hamilton v. SunTrust Mtg., Inc.,* 2014 WL 5419507, at *7 (S.D. Fla. Oct. 24, 2014) ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims"); *Waters v. Int'l. Precious Metals Corp.,* 190 F.3d 1291, 1295-97 (11th Cir. 1999) ("class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.")  In any event, the results of the claims process were robust – 1427 financial institutions filed claims against the $25 million fund valued at $34,192,803.33 and 92 sponsored entities filed claims valued at $254,270.

(Suppl. Decl. of Settlement Admin. at ¶ 9, attached as Ex. B) This response is equivalent to or better than that in the other three data breach settlements involving financial institutions. (J. Guglielmo Decl. at ¶ 6, attached as Ex. C) Moreover, *all but four class representatives filed claims*, (Ex. B at ¶ 9d), and two of those class representatives no longer exist, having been acquired by larger entities that didn't assemble the proof for what likely was, to them, a small amount. (Ex. C at ¶ 7)

(5) Home Depot wrongly cites *Perkins v. Mobile Hous. Bd.,* 847 F. 2d 735, 738-39 for the proposition that an enhancement for the contingent nature of a fee is rarely appropriate. That case involved a fee-shifting award, which is governed by entirely different principles.

## II. The Requested Fee is Justified Under the Lodestar Approach

A party objecting to a fee application must provide specific and reasonably precise objections and proof concerning any hours it seeks to exclude from a lodestar analysis. *See DeKalb Med. Ctr., Inc. v. Specialties & Paper Prod. Union No. 527 Health & Welfare Fund,* 2015 WL 4231774, at *3 (N.D. Ga. July 13, 2015). Home Depot has utterly failed to point to specific hours that should be disallowed (never having requested Class Counsel's billing records), but instead argues Class Counsel's lodestar should be no larger than that of the consumer lawyers, an argument that rests on the unsupported notion the lawyers' work in the

two tracks was equivalent.  Similarly, its assertion that Class Counsel are not entitled to a multiplier rests on the equally unsupported notion that the consumer lawyers achieved a better result and had greater risk.[4]

In fact, while the consumer lawyers faced their own unique issues and were litigating a different case, Class Counsel's work was more complicated.  Mike McGlamry, an expert who studied the records in both tracks, concluded the financial institution track was "inherently more complex" because of the nature of the plaintiffs, the legal issues, and the card brand recovery processes.  (Doc. 336-13, ¶ 21)  Further, Class Counsel achieved a larger recovery for their clients and their settlement was one of the first of its kind.  And, Class Counsel's risk was significantly larger because of the more difficult legal hurdles financial institutions faced (Doc. 336-12 at 19), their larger investment in time (nearly 22,000 hours compared to 10,186 in the consumer track), and their larger out-of-pocket investment ($710,000 compared to $163,000).  Indeed, the risk differential is illustrated by the fact that, unlike in the consumer track, which settled before a

---

[4] The lawyers' work in the two tracks was materially different for many reasons, including the following:  (a) active litigation in this track has lasted far longer than in the consumer track; (b) client communications, investigation, discovery, proof of damages, and other matters is far more complex for a class of financial institutions, which each have voluminous documents, massive amounts of electronic data, and potentially dozens of knowledgeable employees; and (c) the consumer lawyers did not have to contend with the card brand recovery processes.

ruling on the motion to dismiss, Home Depot required Class Counsel to prove their claims could survive a motion before it would even begin settlement negotiations.

Class Counsel have shown their lodestar is $11,773,932, the lodestar was justified and consistent with that expected in a case of this nature (Doc. 336-13, ¶ 41), and the requested fee reflects application of a modest multiplier of 1.53 to compensate them for their risk, the result, and the contingent nature of the fee.  The requested fee also is appropriate, even using the lodestar that Home Depot concedes is proper, if the Court applies a multiplier akin to those typically applied in similar cases.  (Doc. 336 at 23-24)  *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (multipliers usually "range from 2.26 to 4.5 while three appears to be the average").[5]  If the Court decides to use the same multiplier as in the consumer track, the result would be a fee of $15.3 million (not $15.6 million as erroneously stated in Plaintiffs' opening brief).

## CONCLUSION

For the reasons set forth above and in their opening brief, Plaintiffs request that their motion for fees, expenses and service awards be granted.

---

[5] Home Depot only has itself to blame for the size of Class Counsel's lodestar, which would have been less if Home Depot had not adopted a scorched Earth defense strategy, particularly in resisting discovery, and if Home Depot had brought Class Counsel into the settlement process sooner, rather than using the card brand recovery processes to try to pick off class members.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
GA Bar No. 107744
Doffermyre Shields Canfield & Knowles,
LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Phone: 404-881-8900
Email: kcanfield@dsckd.com

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Phone: 212-223-4478
jguglielmo@scott-scott.com

*/s/ Gary F. Lynch*
Gary F. Lynch
CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP
1133 Penn Ave, 5th Floor
Pittsburgh, Pennsylvania 15222
Phone:  412-322-9343
glynch@carlsonlynch.com

*Co-Lead Counsel for Financial Institution
Plaintiffs*

*/s/ James J. Pizzirusso*
James J. Pizzirusso
HAUSFELD, LLP
1700 K. Street, NW, Suite 650
Washington, DC 20006
Telephone: 859-225-3731
jpizzirusso@hausfeldllp.com

*Chair, Plaintiffs' Steering Committee for the*
*Financial Institution Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, in compliance with Local Rule 5.1(c), that the foregoing motion and brief has been prepared using 14-point Times New Roman font.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of September, 2017, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield