**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| In Re: The Home Depot, Inc., Customer Data Security Breach Litigation<br><br>This Document Relates to:<br>All Financial Institution Cases | ) | Case No. 1:14-md-02583-TWT |
|---|---|---|

**FINAL ORDER REGARDING**
**ATTORNEYS' FEES AND EXPENSES**

On August 23, 2017, Plaintiffs filed their Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives. [Doc. 336] Home Depot filed its opposition brief on September 12, 2017. [Doc. 339] Plaintiffs replied on September 20, 2017. [Doc. 341] On October 11, 2017, this Court entered an order awarding attorneys' fees of $15.3 million and expenses of $710,257.86 to Plaintiffs' counsel. [Doc. 345] Home Depot appealed the order and Plaintiffs filed a conditional cross-appeal.

On July 25, 2019, the Eleventh Circuit issued its opinion affirming in part, vacating in part, and remanding for further proceedings consistent with its opinion. *In re Home Depot, Inc. Customer Data Security Breach Litigation,* 931 F.3d 1065 (11th Cir. 2019) (hereinafter cited as "*Home Depot*"). After receiving the mandate and hearing the parties' differing views about its meaning, this Court directed

Plaintiffs to file a motion seeking whatever relief they felt was appropriate and set a briefing schedule on the motion. [Doc. 372]

On September 23, 2019, in accordance with the Court's direction, Plaintiffs filed a supplemental brief on remand in support of their request for attorneys' fees. [Doc. 373] Home Depot filed its opposition brief on October 21, 2019. [Doc. 377] Plaintiffs replied on November 14, 2019. [Doc. 381] Moreover, on September 23, 2019, Home Depot filed a motion to enforce the settlement agreement, arguing that the agreement limited this Court's discretion on remand. [Doc. 374] Plaintiffs opposed that motion on September 27, 2019. [Doc. 375] And, Home Depot filed a reply in support of the motion on October 11, 2019. [Doc. 376]

Upon consideration of the parties' written submissions, their oral arguments at a hearing on December 10, 2019, the proposed orders prepared by each party after the hearing, and all other relevant factors, the Court hereby grants Plaintiffs' motion for attorneys' fees as supplemented by their brief on remand and denies Home Depot's motion to enforce the settlement agreement. The Court explained its reasoning on the record at the conclusion of the hearing and further sets forth the grounds for its determinations below.

(1) The present controversy stems from the settlement of the financial institution cases that arose out of one of the largest payment card data breaches in history. At the time the litigation began in 2014, no financial institution had ever

prevailed in a similar case. After several years of litigation, this case settled. The settlement agreement provided $27.25 million in cash to the class and required Home Depot to take numerous steps to improve its data security. In addition, class counsel's efforts caused Home Depot to provide additional monetary relief to financial institutions affected by the breach, including an extra $14.5 million to obtain releases from putative class members of their claims in this litigation.

(2) The settlement agreement provided that Home Depot would pay a reasonable fee in an amount to be determined by the Court, separate and apart from the settlement fund. The settlement agreement does not specify how that fee is to be calculated.[1] In their motion filed on August 23, 2017, class counsel sought an $18

[1] The relevant provisions of the settlement agreement are as follows:

> 62. Attorneys' Fees, Costs and Expenses. Home Depot agrees to pay the reasonable attorneys' fees, costs and expenses of counsel for the Financial Institution Plaintiffs separate from and in addition to the Settlement Fund. Class Counsel will make its application for such attorneys' fees, costs and expenses pursuant to a Fee Request at least 30 days before the Final Approval Hearing. Home Depot reserves the right to object to Class Counsel's request for attorneys' fees and to appeal any Order granting Class Counsel's request for attorneys' fees. In addition, Home Depot agrees to pay Class Counsel's reasonable costs and expenses. Home Depot reserves the right to object to Class Counsel's request for costs and expenses and to appeal any Order granting Class Counsel's request for costs and expenses. Any award of attorneys' fees, costs, and expenses shall be paid separate from and in addition to the Settlement Fund. The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel

million fee, contending that amount was justified under either the percentage of the recovery approach (representing what they contended was 29.7 percent of the easily quantifiable class benefit) or the lodestar approach (reimbursing their $11.773 million lodestar plus a 1.55 multiplier). In response, Home Depot argued there was no common fund in the case and thus the lodestar approach, not the percentage approach, should be used. Home Depot argued for a lodestar-based fee of

---

> any particular amount on their Fee Request or costs and expenses request and shall not alter the Effective Date.
>
> 63. Within ten (10) business days of the later of the Effective Date or a final order is entered approving Class Counsel's Fee Request Home Depot shall pay to Class Counsel all Court-approved attorneys' fees, costs, and expenses and any Service Awards to the class representatives. An order approving Class Counsel's Fee Request will be considered final for purposes of this provision when the time for seeking rehearing, appellate or other review of the order on Class Counsel's Fee Request has expired or, if rehearing, appellate or other review of the order is requested, after such rehearing, appellate or other review of the order is concluded and, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired. In the event that the award of attorneys' fees, costs, and expenses is reduced on appeal, Home Depot shall only pay the reduced amount of such award. Class Counsel shall timely furnish to Home Depot any required tax information or account information and provide any reasonable and necessary forms before the payment is due. If an appeal is taken from an order approving Class Counsel's fee request, Home Depot will pay interest on the amount awarded, as ultimately approved or reduced on appeal, at the same rate as applicable to any final judgment.

[Doc. 327-3, ¶¶ 62, 63]

$5,631,804, asserting class counsel's hours were excessive for several reasons, a multiplier was unjustified by the risk, and a percentage-based fee was not allowable.

(3) In its initial fee award entered on October 11, 2017, the Court adopted Home Depot's argument that the lodestar approach should be used in the first instance to calculate the amount of a reasonable fee to compensate class counsel for their efforts. [Doc. 345 at 2] The Court awarded a $15.3 million fee, rejecting Home Depot's argument that class counsel's hours should be reduced, and finding that a 1.3 multiplier (rather than the 1.55 multiplier requested by Plaintiffs) was justified by "the exceptional litigation risk that class counsel took in litigating this case." The Court also conducted a cross-check using the percentage method. Finding that the total class benefit was $42.5 million and awarding one-third of that benefit to class counsel, the Court determined a percentage-based fee would be $14.1 million and concluded the cross-check supported the reasonableness of the lodestar-based award.

(4) Home Depot appealed, raising four issues. As described by the Eleventh Circuit, those issues were:

> First, whether it was an abuse of discretion for the District Court to apply a multiplier. Second, whether it was an abuse of discretion to compensate Class Counsel for time spent litigating about the card-brand recovery process. Third, whether it was an abuse of discretion to compensate Class Counsel for time spent soliciting class representatives. And fourth, whether the District Court's order fails to provide sufficient detail for meaningful appellate review.

*Home Depot* at 1077-78. Plaintiffs conditionally cross appealed, which the Eleventh Circuit described as follows:

> Class Counsel asks us to reach their cross-appeal only if, in response to Home Depot's appeal, we reverse or modify the attorney's fee award and remand to the District Court for reconsideration. In that event, Class Counsel challenges the District Court's decision not to include attorney's fees in the class benefit when it conducted the percentage cross-check. Thus, if we remand the case, Class Counsel asks us to instruct the District Court to include attorney's fees in the class benefit when it performs the percentage method—either as a crosscheck or in the first instance.

*Id.* at 1078.

(5) In its July 25, 2019 opinion, the Eleventh Circuit stated: "We affirm the District Court's decision in all respects except one: it was an abuse of discretion to use a multiplier to account for risk in a fee-shifting case." *Home Depot* at 1072. The appellate court affirmed this Court's rulings that class counsel were entitled to be paid for time spent on the card brand recovery process and vetting class representatives and rejected Home Depot's argument that this Court's opinion was insufficiently detailed to provide meaningful review. The Eleventh Circuit also rejected Home Depot's argument that this Court erred by accepting class counsel's lodestar without doing a detailed analysis of the time entries, finding that such an analysis was unnecessary because Home Depot did not object to any specific entries but simply gave "general reasons" why the time allegedly was excessive.

(6) The Eleventh Circuit, however, determined that this Court had abused its discretion by using a multiplier to enhance class counsel's lodestar for risk.[2] In reaching this conclusion, the appellate court first determined that this case does not involve a classic common fund or constructive common fund because the parties did not agree on the amount of the separate fee or a cap on the amount that could be awarded. The appellate court then construed the language in the settlement agreement providing that Home Depot would pay a separate attorneys' fee as a contractual fee-shifting provision. While disagreeing with Home Depot that Supreme Court cases construing federal fee-shifting statutes are binding in these circumstances, the Eleventh Circuit noted:

> [T]his is a contractual fee-shifting case, not a common-fund case. As such, it is more closely related to the Supreme Court precedent governing fee-shifting statutes. And just because precedent is not technically binding does not mean we should blithely disregard it. To promote consistency in the law, we should adhere to precedent where its reasoning applies.

---

[2] Home Depot never argued to this Court that class counsel's lodestar could not be enhanced with a risk multiplier as a matter of law. Home Depot argued a risk multiplier was not justified factually because the case purportedly presented little risk. On appeal, Home Depot advanced a "new argument … based on a different line of precedents" that was "inconsistent with" and "contradictory" to its position before this Court. *Home Depot* at 1086. As the Eleventh Circuit explained, Home Depot made "a different pitch: it's not that the level of risk did not justify a multiplier; it's that the District Court cannot use a multiplier to account for risk, period." *Id.* This Court did not have the opportunity to consider Home Depot's different pitch. The initial fee award was based upon the law as this Court understood it to be and as presented by the parties. Had Home Depot made the same argument to this Court as it made on appeal, the initial award might have been different and the lodestar method might not have been used.

*Home Depot* at 1085. Accordingly, in order to "promote consistency in the law," the Eleventh Circuit decided to apply the reasoning of Supreme Court cases construing fee-shifting statutes here. *Id*. Because those decisions hold that risk is largely subsumed in a lawyer's lodestar, the appellate court concluded that the "prohibition on enhancements for risk applies to contractual fee-shifting cases when courts use the lodestar method." *Id.* at 1086.

(7) Having determined that this Court incorrectly calculated the lodestar-based fee award, the Eleventh Circuit turned to the conditional cross-appeal. While acknowledging "that there is some truth" to Plaintiffs' argument that this Court should have included their fee in its percentage cross-check, the appellate court explained "it simply does not work as a practical matter" where there has been no agreement on the amount. *Id.* at 1092. Addressing class counsel's complaint that their compensation would be unfairly reduced if the fee were excluded from the class benefit, the court pointed out that, unlike in common fund cases, class counsel are entitled to recover for time spent pursuing their fees, which "fairly balances things out." *Id.* at 1093. The court then considered and rejected Home Depot's argument that the $14.5 million it paid for releases should have been excluded from the percentage analysis. *Id.* at 1093-94.

(8) Having affirmed this Court's award in part and reversed in part, the Eleventh Circuit remanded for further proceedings consistent with its opinion. The

appellate court did not specify the amount of the fee that this Court should award on remand or direct the methodology that this Court should use in re-calculating the fee. The Eleventh Circuit, moreover, specifically did not decide whether the lodestar or percentage method is appropriate in a contractual fee shifting case such as this one, explaining that it did not question this Court's use of the lodestar approach because both parties agreed that the approach could be used.

(9) On remand, the parties disagree about the task before this Court. Plaintiffs contend that the Court has discretion to recalculate the amount of a reasonable fee in light of the legal standard set by the Eleventh Circuit and consistent with the appellate court's findings of fact and conclusions of law with regard to issues that were explicitly or implicitly decided on appeal. According to Plaintiffs, this Court may award a fee using either the lodestar or percentage method, and that, if the lodestar method is used: (a) their lawyers are entitled to compensation for the additional work they have done since filing the initial fee application, including finalizing and administering the settlement and litigating the amount of their fee; and (b) their current, individual market rates should be used, rather than standardized rates from 2015, in the lodestar calculation to account for the delay in payment, or, alternatively the Court should enhance their historical lodestar for factors other than litigation risk. According to Plaintiffs, under the percentage method, the fee should be $14.1 million, which is the amount the Court previously found was appropriate

as a cross-check of its initial award, and under the lodestar method, if the appropriate adjustments described above are made, the fee would exceed $15 million.

(10) Home Depot, on the other hand, contends that this Court has no discretion on remand to do anything other than award a fee of $11.773 million – representing the lodestar originally awarded without a multiplier – plus interest from the date of the original award because the Eleventh Circuit affirmed the initial award in all respects but for this Court's use of a multiplier. Home Depot also argues that this Court's discretion is limited by Paragraph 63 of the settlement agreement, which provides in part that "[i]n the event that the award of attorneys' fees, costs, and expenses is reduced on appeal, Home Depot shall only pay the reduced amount of such award" plus interest. According to Home Depot, because the fee award was reduced on appeal, contractually it can only be required to pay the reduced amount. That argument was the basis for Home Depot's motion to enforce the settlement agreement. [Doc. 374] Further, Home Depot takes issue with the manner in which class counsel seeks compensation for the additional time they have spent since July 31, 2017 (the cutoff date for time in their initial fee application), use of current rates, and enhancement of their lodestar, contending among other things that class counsel's requests are barred by the doctrines of judicial estoppel and law of the case. Finally, Home Depot continues to maintain that no percentage-based award is

appropriate because this is not a common fund case and thus only a lodestar-based fee can be awarded.[3]

(11) The Court disagrees with Home Depot's position regarding the scope of this Court's discretion on remand. If the Eleventh Circuit had intended that this Court simply enter an order awarding class counsel $11.773 million plus interest, as Home Depot contends, this Court believes the appellate court would have said so explicitly. But, the Eleventh Circuit did not say that. To the contrary, every indication is that the Eleventh Circuit intended for this Court to exercise its discretion in reconsidering the amount of a reasonable fee.

(12) Under the law of the case doctrine and the Eleventh Circuit's mandate, this Court retains discretion to determine the amount of a reasonable fee so long as

---

[3] Home Depot's arguments include the following: (1) "The award of attorneys' fees was reduced on appeal when the Eleventh Circuit affirmed this Court's order in all respects except for the use of the 1.3 multiplier." [Doc. 374 at 7]; (2) Paragraph 63 of the parties' settlement agreement, which states that "[i]n the event that the award of attorneys' fees, costs, and expenses is reduced on appeal, Home Depot shall only pay the reduced amount of such award" and "interest on the amount awarded, as ultimately approved or reduced on appeal, at the same rate as applicable to any final judgment" required the Court to order that Home Depot "only pay the reduced amount of the award, or $11,733,000, plus interest 'at the same rate as applicable to any final judgment.'" [Doc. 374 at 7]; (3) Plaintiffs are barred from arguing for a recalculation of the attorneys' fees award under "the doctrines of judicial estoppel and law of the case." [See, e.g., Doc. 377 at 15]; and (4) Under the Eleventh Circuit's mandate rule, the Eleventh Circuit's "affirmance of this Court's decision in all respects, except one, means that all aspects of the district court's attorneys' fees awards that were affirmed cannot be litigated further." [12/10/19 Transcript at 30] The Court rejects each of these arguments to the extent that they are inconsistent with this order.

the correct legal standard is used and the award otherwise is consistent with the appellate court's findings of fact and conclusions of law. *See, e.g., Transamerica Leasing, Inc. v. Institute of London Underwriters,* 430 F.3d 1326, 1331 (11th Cir. 2005) ("'[T]he trial court is free to address, as a matter of first impression, those issues not disposed of on appeal . . . .'") (quotation omitted); *Dorsey v. Continental Casualty Co.*, 730 F2d 675, 678 (11th Cir. 1984) ("Where a judgment is vacated for a new determination, findings previously made that are integral to that judgment are likewise vacated and are thus not subject to the law of the case doctrine.")

(13) Further, leaving the amount of the fee for this Court to decide on remand is consistent with the approach the Eleventh Circuit has followed in other cases – that is, when a trial court has erred in exercising its discretion, the appellate court does not try to exercise that discretion itself but remands so the trial court can reconsider its earlier decision using the correct legal standard. *See Rakip v. Paradise Awnings Corp.* 514 Fed Appx 917, 917 (11th Cir 2013) ("As a general rule, 'if a district court has abused its discretion, the court of appeals should not decide how to exercise [that] discretion; instead, it should remand the matter so that the district court can exercise its discretion free from the error of law.'") (quotation omitted); *Gray v. Bostic*, 625 F.3d 692, 693 (11th Cir. 2010) (Carnes, J., concurring in denial of rehearing en banc) (after determining the trial court erred in awarding a fee to the plaintiffs' counsel, the appellate court remanded so the trial court could decide the

free under the correct legal standard rather than setting the amount of the fee directly). Moreover, if the Eleventh Circuit did not intend for this Court to exercise its discretion to reconsider the amount of the initial award, there would have been no reason for the appellate court to have decided the merits of Plaintiffs' conditional cross-appeal, which it acknowledged would be necessary only if "we reverse or modify the attorney's fee award and remand to the district court for reconsideration." *Home Depot* at 1078.

(14) The Court also rejects Home Depot's argument that the settlement agreement precludes this Court from reconsidering its initial award because the amount of the award was "reduced" on appeal. The simple response is that the Eleventh Circuit did not reduce the amount of the award; rather, the appellate court reversed the award and remanded for reconsideration, as discussed above. Regardless, Home Depot's construction of Paragraph 63 of the settlement agreement is unpersuasive. The previous paragraph unambiguously provides that Home Depot will pay a fee as determined by the Court without any limit on its amount. Paragraph 63 largely deals with the payment of the fee once the Court's award is final and all appeals have been exhausted. From its context, the sentence on which Home Depot relies simply means that if the Eleventh Circuit reduced the award to a specific amount and the award is final, Home Depot would only have to pay the final amount, as reduced, plus interest. To read it otherwise also would conflict with the statutory

rules of construction that a provision must be read in light of the entire agreement and be construed against the party undertaking the obligation. *See* O.C.G.A. § 13-2-2.

(15) Home Depot's construction of the settlement agreement is further undercut by considering other scenarios that might have occurred. For example, what if this Court had initially awarded a percentage-based fee of $18 million without considering class counsel's lodestar and, on appeal, the Eleventh Circuit had reversed and remanded for reconsideration, agreeing with Home Depot that the lodestar method should have been used and directing this Court to recalculate the fee using that method. Under Home Depot's construction of the settlement agreement, the fee award would have been "reduced" on appeal. However, because the appellate decision did not specify a reduced amount, the alleged mandate of the settlement agreement – that Home Depot only pay the "reduced" amount – would be impossible to carry out, and it also would conflict with the appellate mandate directing that a lodestar-based fee be awarded. This example, and many others that might have occurred, demonstrate that the parties did not intend the sentence on which Home Depot relies to have anything to do with the situation presented here, namely what would happen if the appellate court remanded for reconsideration without setting the specific amount of the fee to be awarded on remand.

(16) In short, this Court is not required on remand to award the initial lodestar amount plus interest, as Home Depot advocates. To the contrary, the Court finds that it has discretion, consistent with the appellate decision and mandate, to award Plaintiffs' counsel a reasonable fee as set forth in Paragraph 62 of the settlement agreement.

(17) At the time the original fee award was entered on October 11, 2017, the Court believed it had discretion to use either the lodestar or percentage method to determine a reasonable attorneys' fee. Given the highly unusual circumstances of this case, the Court determined that the best way to calculate the fee was to use the lodestar method with an appropriate enhancement for litigation risk. Because the fee was to be paid separately and there was no agreement relating to the amount, this case did not present a classic common fund or constructive common fund situation, making calculation of the class benefit in a percentage-based analysis more difficult.

(18) The Plaintiffs' lawyers undertook extraordinary litigation risk in pursuing this case and investing as much time and effort as they did. The significance of that risk has only become more apparent since the Court entered its initial fee award as a result of the recent decision of the Georgia Supreme Court in *Georgia Dept. of Labor v. McConnell*, 815 S.E.2d 639 (Ga. 2019). In light of the Eleventh Circuit's decision in this case, this Court is not permitted to enhance a

lodestar-based fee to account for litigation risk and thus must examine the entirety of all the factors that bear upon what is a reasonable fee.

(19) The Court believes that a lodestar-based award of $11.773 million plus interest does not reasonably or appropriately compensate class counsel for their efforts in this case, the excellent result that they obtained (what was then the largest recovery in a data breach case for a class of financial institutions), and the substantial additional work they have done, or properly account for other factors, such as the delay in payment or the fact that the original lodestar calculation used standardized rates based on each attorney's years in practice rather than individualized market rates that have been approved in other litigation.

(20) If the Court were to engage in the lodestar analysis suggested by Plaintiffs, the Court believes that such calculations would be complicated and there would be considerable room for error as the Court would have to decide such issues as the meaning of the settlement agreement, what rates to use, whether to use current rates rather than historical rates to account for delay, whether to enhance lodestar calculated using historical rates for reasons other than risk, and whether to compensate the lawyers for their work on appeal, even though the Plaintiffs were only partially successful on appeal. While Plaintiffs have cited substantial authority that would support awarding an increased fee under the lodestar method, *see, e.g., In re Sears Roebuck & Co. Front-Loading Washer Prods. Liability Litigation,* 2018

WL 3797804 (N.D. Ill. Aug. 3, 2018) (authorizing a supplemental lodestar-based fee for additional work done after the initial fee award despite the fact that the initial award was reversed and the trial court was directed to enter a specific fee on remand), Home Depot has asserted numerous defenses.[4] Moreover, Home Depot contends that recalculating the lodestar amount will necessitate additional briefing and has "reserved the right" to challenge the reasonableness of the original lodestar amount, which likely would result in Plaintiffs seeking to obtain the billing records of all of Home Depot's lawyers, and lead to still more disputes for the Court to resolve. It thus appears likely that litigating these issues and calculating a lodestar-based fee would require an enormous expenditure of the Court's time and that of the parties.

(21) The Court finds that it is appropriate to use the percentage method instead of the lodestar method to determine a reasonable fee. As the Eleventh Circuit determined in *Camden I Condo. Assoc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991), the

[4] Home Depot's defenses, in turn, trigger additional arguments that Plaintiffs may make and that this Court would have to decide. For example, Home Depot contends that Plaintiffs are judicially estopped from asking this Court to use current rates to calculate their lodestar to account for the delay in payment. Plaintiffs respond that the judicial estoppel doctrine is inapplicable and contend that, if Home Depot had previously argued that the use of a risk multiplier was barred as a matter of law, they would have taken steps to build an appropriate record to deal with the possibility that such an argument might have succeeded and should not be penalized by not having done so. The Court is sympathetic to Plaintiffs' position, but has decided to use the percentage method on remand, in part, to avoid having to resolve disputes of this nature.

percentage method has many advantages over the lodestar method. For example, the percentage method more closely aligns the interests of the class and its attorneys; better adheres to the practice in the market where contingent fees based on a percentage of the recovery are typically used when clients do not or cannot pay hourly rates on an ongoing basis; is more efficient and easier to apply; avoids the need for a court to scrutinize voluminous billing records; and eliminates incentive for class counsel to drag out the case to increase their fees. For these reasons, empirical studies have shown that the lodestar method is only applied in a small percentage of class action cases and the consensus among class action scholars is that the percentage method should generally be used when the settlement's value can be reliably calculated and the lodestar method is not statutorily required. (Doc. 336-12, ¶¶ 10, 12)

(22) While the Eleventh Circuit determined that this case involves a contractual fee-shifting provision, not a common fund or constructive common fund situation, the advantages of the percentage method and the corresponding disadvantages of the lodestar method remain the same regardless of whether the parties reached any agreement regarding the amount of the separate fee (which is the only factor that distinguishes this case from a constructive common fund case in which the percentage method would have to be used).

(23) Use of the percentage rather than the lodestar method has particular advantages in this case. The percentage method rewards class counsel for the benefit they achieved for the class rather than the time they spent on the litigation. Paying them a percentage more equates with what would happen in private litigation, better compensates them for the substantial risk they undertook, and thus results in a fairer, more reasonable fee. Awarding a percentage-based fee will allow the Court and the parties to avoid what could be protracted, complicated litigation under the lodestar approach. And, a percentage-based fee also makes sense since class counsel's efforts resulted in the creation of a common fund, and this Court has already determined the amount of a percentage-based fee and the Eleventh Circuit has approved the Court's methodology.

(24) The Court rejects Home Depot's argument that the appellate mandate precludes use of the percentage method on remand. The Eleventh Circuit neither specified the methodology that this Court must follow nor decided that the lodestar methodology is required. Whether the lodestar or percentage method should be used in the unusual circumstances of this case was not an issue decided or raised on appeal because neither party challenged the use of the lodestar method, albeit for different reasons. Home Depot asserted that the lodestar method must be used. Plaintiffs asserted that this Court had discretion to use either method. The Eleventh Circuit, as noted above, did not decide the issue, explaining: "Class Counsel may be right

that the District Court had discretion to choose . . . . Nevertheless, because the parties do not challenge the District Court's use of the lodestar method, we do not question it." *Home Depot* at 1082.

(25) Further, on appeal, Home Depot requested that the Eleventh Circuit limit use of the percentage method on remand to a cross-check and not allow it as a tool for calculating the fee in the first instance. Home Depot's Second Brief at 50. The Eleventh Circuit did not grant Home Depot's request. Instead, the appellate court noted Plaintiffs' argument that this Court could use the percentage method in the first instance on remand, and, as requested by Plaintiffs, emphasized that the propriety of the lodestar approach was not an issue on appeal. The Eleventh Circuit stated:

> To be clear, neither Home Depot nor Class Counsel challenges the District Court's use of the lodestar method. Class Counsel maintains that the District Court had discretion to use either the percentage or lodestar method in the proceedings below. See *infra* part II.A.3. Class Counsel simply notes that, absent a decision from us to the contrary, the District Court continues to have such discretion on remand.

*Home Depot* at 1078 n. 9. Because the Eleventh Circuit did not direct that the lodestar method be used exclusively on remand, and especially taking into account the entire appellate record as described above, this Court does not construe the mandate to limit its discretion to use the percentage method in the first instance as Home Depot urges.

(26) Under the percentage approach, as this Court previously determined, the benefit from the settlement includes the $27.25 million in cash made available to class members, the expenses awarded to class counsel, the costs of notice and administration, and the $14.5 million that Home Depot paid to financial institutions under the card brand recovery processes in exchange for the release of claims asserted in this litigation. The total benefit to the class for fee purposes is thus $42.5 million. The Court will award to the Plaintiffs' attorneys one-third of that amount, or $14.1 million.

(27) The Court has substantial discretion in determining the appropriate percentage awarded under a percentage analysis. *Camden I* does not require that a court use a particular percentage. 946 F.2d at 774-75 ("There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case."); *see also, e.g.*, *Waters v. Int'l. Precious Metals Corp.*, 190 F.3d 1291, 1294 (1999). In *Camden I,* the Eleventh Circuit noted the majority of awards range from 20 percent to 30 percent and that 25 percent is considered to be the "benchmark." *See Camden I*, 946 F.2d at 775; *see also Home Depot* at 1076 (referring to 20 to 30 percent as the "benchmark range"). The Eleventh Circuit has instructed that, to determine the appropriate percentage to apply in a particular case, a district court should analyze the factors derived from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as well any other pertinent considerations. *Camden I*, 946 F.2d at

775. Awarding a fee of one-third of the class benefit here is supported by the factors set out in *Camden I*. The Court's analysis of those factors follows:

(a) Time and Labor Required. This case required an immense amount of time and labor by counsel for the Plaintiffs, not only the time and labor that would be expected in an ordinary case, but specifically the time and labor involved in the fight over whether Home Depot, MasterCard and/or Visa could request releases from the banks in connection with the card brand recovery process. This work was reasonable and contributed directly to the successful result.

(b) The Novelty and Difficulty of the Questions. The claims of the Plaintiffs in this case were novel. The law is still evolving, particularly here in the State of Georgia in light of the Georgia Supreme Court's decision in the *McConnell* case cited above.

(c) The Skill Requisite to Perform the Legal Services Properly. Plaintiffs' counsel exercised the skill needed to perform the legal services in this case. They did so competently and well.

(d) Preclusion of Other Employment. The Court determines that this factor is not applicable.

(e) The Customary Fee. In the Eleventh Circuit, percentage fees between 25 percent and one third are not unusual. So this fee is on the higher

end of that range, but not out of the ordinary. Moreover, the customary fee in private, contingent fee litigation is one-third or more of the recovery.

(f) Whether the Fee was Fixed or Contingent. This case was handled on a contingent fee basis. If the Plaintiffs lost, their lawyers would have received nothing and in fact would have not recovered the amounts that they advanced for litigation expenses.

(g) Time Limitations Imposed by the Client or the Circumstances. The Plaintiffs' lawyers were challenged in that they had to find sufficient financial institutions to establish standing and do so under a fairly expedited time frame. In addition, the litigation relating to the card brand recovery process was handled in an expedited time frame. This factor thus supports a higher fee.

(h) The Amount Involved and the Results Obtained. The $42.5 million recovery, as calculated by this Court and as approved by the Eleventh Circuit, was an excellent result. Furthermore, the settlement provides additional non-monetary benefits, including payment in full of the assessments made by Visa and MasterCard during the card brand recovery process and business practice changes that have benefitted the class by reducing the risk of another data breach. Such non-monetary relief justifies a higher fee. *See, e.g., Camden I*, 946 F.2d at 774-775; *Poertner v. Gillette Co.*, 618 Fed. App'x. 624, 628-29 (11th Cir. 2015), *cert. denied sub nom. Frank v. Poertner*, 136 S.Ct. 1453

(2016); *George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1379-80 (N.D. Ga. 2019); *In re Checking Account Overdraft Litigation*, 2013 WL 11319244, at *12 (S.D. Fla. Aug. 2, 2013). Even though the non-monetary benefits achieved here have not been quantified and thus are not included in the class benefit to which the percentage is applied, they are a factor in selecting the percentage and thus support a higher percentage of the benefits that can be valued.

(i) The Experience, Reputation and Ability of the Attorneys. The Plaintiffs had excellent, well-respected, and able attorneys representing them in this case from beginning to end. This factor supports the one-third award.

(j) The Undesirability of the Case. That is not a factor here.

(k) The Nature and Length of the Professional Relationship with the Client. That is not a factor here.

(l) Awards in Similar cases. An award of one-third of the amount of the recovery in this unusual case, where the Defendant agreed in the settlement agreement to an open-ended award of attorneys' fees, is well within the ballpark of awards in similar cases. *See, e.g.*, *Wolff v. Cash 4 Titles,* 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in this Circuit are "roughly one-third"); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L. Rev. 937, 947,

951 (2017) (empirical study of class action fees from 2009 through 2013 finding that in the Eleventh Circuit the average fee was 30% and median fee was 33%).

(28) The Court also notes that it used one-third of the class benefit in calculating a percentage-based fee for purposes of a cross-check in its initial award. While Home Depot appealed from the inclusion in the class benefit of the $14.5 million it paid to putative class members, Home Depot did not challenge on appeal the Court's decision to use one-third of the recovery as a cross-check in its initial lodestar-based award.

(29) The Court thus hereby awards to the Plaintiffs' lawyers a fee of $14.1 million as described above. The Court further reaffirms its decision that the Plaintiffs' lawyers are entitled to reimbursement of their litigation expenses in the amount of $710,257.86, which Home Depot has never contested. In addition, under the settlement agreement, the Plaintiffs' lawyers are entitled to interest on those amounts from October 11, 2017 through the date of this order. Interest on the fee is $431,315.69, making the total fee award $14,532,418.31. Interest on the expenses is $21,652.21, making the total expense award $731,986.71.

WHEREFORE, it is hereby ORDERED that Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives, [Doc. 336], as supplemented by additional briefing, is granted and Home Depot's motion to enforce

the settlement agreement, [Doc. 374], is denied. It is further ORDERED that Home Depot pay to Plaintiffs' counsel in accordance with the terms of the settlement agreement the sum of $14,532,418.31 in attorneys' fees and $731,986.71 in expenses.

SO ORDERED, this 23 day of January, 2020.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge